## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC,<br>Individually And On Behalf Of All<br>Other Similarly Situated, | )<br>)<br>) Case No. 07 CV 3371 |
| Lead Plaintiff, | )<br>)<br>) |
| v. | ) Hon. Charles P. Kocoras<br>)<br>) |
| GOOGLE INC., OVERSEE.NET,<br>SEDO LLC, DOTSTER, INC., AKA<br>REVENUEDIRECT.COM<br>INTERNET REIT, INC. d/b/a/ IREIT, INC.;<br>and JOHN DOES 1-X, | ) Magistrate Judge Geraldine Soat Brown<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

## GOOGLE, INC'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS

Dated: August 10, 2007

Michael H. Page
Joseph C. Gratz
Keker & Van Nest, LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200

Dockets.Justia.com

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................1

II.  Pleading Standards ....................................................................................................3

III.  Argument ....................................................................................................................3

    A.  Federal Claims ..................................................................................................4

        1.  Vulcan's federal trademark infringement claims (Counts 4 and 10)
            fail because the complaint does not allege that Google knew or
            should have known of any infringement.................................................4

        2.  Vulcan's RICO claims (Counts 1 and 2) fail because Vulcan lacks
            standing under the alleged predicate offenses. ..........................................10

        3.  Vulcan's cybersquatting claim (Count 3) fails because it does not
            allege that Google owns or operates any allegedly infringing
            domains ...................................................................................................12

        4.  Vulcan's claim for false designation of origin (Count 5) fails
            because it does not allege that Google uses the domain names
            at issue "on or in connection with any goods or services." ......................13

        5.  Vulcan's dilution claim (Count 6) fails because it does not allege
            that each of the marks at issue is famous. .................................................15

    B.  State Law Claims ............................................................................................16

        1.  Because all of Vulcan's claims under federal law should be
            dismissed, the court should decline to exercise pendent
            jurisdiction over its state-law claims.........................................................16

        2.  Vulcan's claim for intentional interference with prospective
            economic advantage (Count 11) fails because it does not allege
            a business expectancy with a specific third party. .....................................17

        3.  Vulcan's claim for intentional interference with contractual
            relations (Count 11) fails because it does not identify a contract
            with which Google is alleged to have interfered. ......................................18

        4.  Vulcan's Illinois deceptive practices claim (Count 7) and its
            common law trademark claim (Count 9) fail for the same
            reason its Lanham Act claims do. ..............................................................18

        5.  Vulcan's unjust enrichment claim (Count 12) fails because Vulcan
            has alleged an adequate remedy at law. .....................................................19

    C.  Vulcan's declaratory judgment claim (Count 8) must be dismissed
        because it is redundant and because the complaint fails to allege facts
        supporting declaratory relief. ...........................................................................20

IV.  Conclusion ................................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Avery Dennison Corp. v. Sumpton*
189 F.3d 868 (9th Cir. 1999) ..................................................................................16

*Bell Atlantic Corp. v. Twombly*
___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007) ........................................................3

*Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*
357 F. Supp. 127 (N.D. Ill. 1973), aff'd, 499 F.2d 1183 (7th Cir. 1974)....................18

*Century 21 Real Estate Corp. of Northern Illinois v. R.M. Post, Inc.*
8 U.S.P.Q. 2d 1614 (N.D. Ill. 1988) ..........................................................................7

*Christensen v. County of Boone*
483 F.3d 454 (7th Cir. 2007) ..................................................................................16

*D 56 Inc. v. Berry's Inc.*
1996 WL. 252557 (N. D. Ill. May 10, 1996)..............................................................18

*Dial One of the Mid-South, Inc.*
269 F.3d 523 (5th Cir. 2001) ....................................................................................8

*Gucci America, Inc. v. Hall & Associates*
135 F. Supp. 2d 409 (S.D.N.Y. 2001)........................................................................8

*Inwood Laboratories v. Ives Laboratories*
456 U.S. 844 (1982) ..................................................................................................9

*Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*
61 F.3d 1250 (7th Cir. 1995) ........................................................................3, 10-12

*James Burrough Ltd. v. Sign of Beefeater, Inc.*
540 F.2d at 274-75 (7th Cir. 1976) ..........................................................................19

*Kennedy v. National Juvenile Detention Association*
187 F.3d 690 (7th Cir. 1999) ..............................................................................14-15

*Lockheed Martin Corp. v. Network Solutions, Inc.*
985 F. Supp. 949 (C.D. Cal. 1997) ..........................................................................10

*Manville Sales Corp. v. Paramount System, Inc.*
917 F.2d 544 (Fed. Cir .1990)....................................................................................9

*Masson v. New Yorker Magazine, Inc.*
501 U.S. 496 (1991)....................................................................................................8

*McKinney v. Indiana Michigan Power Co.*
113 F.3d 770 (7th Cir. 1997) ......................................................................................9

*NBA Properties v. Untertainment Records LLC*
1999 WL 335147 (S.D.N.Y. 1999) ..................................................................8

*Neitzke v. Williams*
490 U.S. 319 (1989) ........................................................................................3

*New York Times v. Sullivan*
376 U.S. 254 (1964) ......................................................................................7-8

*North Shore Medical Center, Ltd. v. Evanston Hospital Corp.*
1995 WL 723761 (N.D. Ill. Dec. 5, 1995) ......................................................12

*O'Shea v. Littleton*
414 U.S. 488 (1974) ........................................................................................3

*Phoenix Bond & Indemnity Co. v. Bridge*
477 F.3d 928 (7th Cir. 2007) ........................................................................11

*Shepherd v. U.S. Olympic Committee*
464 F. Supp. 2d 1072 (D. Colo 2006) ............................................................20

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*
202 F.3d 489 (2d Cir. 2000) ..........................................................................13

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*
192 F.3d 633 (7th Cir. 1999) ........................................................................16

*Walker v. S.W.I.F.T. SCRL*
___ F. Supp. 2d ___, 2007 WL 1704293 (N.D. Ill. June 12, 2007)....................3

*Watts v. Network Solutions, Inc.*
1999 WL 994012 (7th Cir. 1999) ....................................................................9

*World Wrestling Federation, Inc. v. Posters, Inc.*
58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000) ..............................................................8

*Wright v. Associated Insurance Cos. Inc.*
29 F.3d 1244 (7th Cir. 1994) ..........................................................................5

## STATE CASES

*Du Page Aviation Corp. v. Du Page Aviation Authority*
594 N.E.2d 1334 (Ill. Ct. App. 1992) ............................................................17

*Fellhauer v. City of Geneva*
568 N.E.2d 870 (Ill. 1991) ............................................................................17

*Founding Church of Scientology of Washington, D. C. v. American Medical Association*
377 N.E.2d 158 (Ill. Ct. App. 1978) ..............................................................18

*Guinn v. Hoskins Chevrolet*
836 N.E.2d 681 (Ill. Ct. App. 2005) ..............................................................19

*Nesby v. Country Mutual Insurance Co.*
805 N.E.2d 241 (Ill. Ct. App. 2004) ..............................................................................19

*People ex rel. Hartigan v. E & E Hauling, Inc.*
607 N.E.2d 165 (Ill. 1992) ..............................................................................................19

*Schuler v. Abbott Laboratoriess*
639 N.E.2d 144 (Ill. Ct. App. 1993) ..............................................................................17

*Season Comfort Corp. v. Ben A. Borenstein Co.*
655 N.E.2d 1065 (Ill. Ct. App. 1995) ............................................................................19

*Swager v. Couri*
395 N.E.2d 921 (Ill. 1979) ..............................................................................................18

## FEDERAL STATUTES

18 U.S.C. § 1341 ......................................................................................................... 10-11

18 U.S.C. § 1343 ......................................................................................................... 10-11

28 U.S.C. § 1367(c)(3) .....................................................................................................16

18 U.S.C. § 1961(1) ..........................................................................................................10

18 U.S.C. § 1962(c) ..........................................................................................................10

18 U.S.C. § 1962(d) ..........................................................................................................10

Fed. R. Civ. P. 8(a)(2) ........................................................................................................3

Fed. R. Civ. P. 9(b) .............................................................................................................3

## STATE STATUTES

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA")
815 ILCS 505/2...........................................................................................................18, 19

Illinois Deceptive Trade Practices Act ("IDTPA")
815 ILCS 510/2...........................................................................................................18, 19

## LEGISLATIVE MATERIALS

Remarks of Subcommittee Chairman Robert Kastenmeier,
134 Cong. Rec. H10420 (Oct. 19, 1988) .........................................................................7

H. R. Rep. No. 106-412 at 13-14 (1999) ........................................................................13

## I.     Introduction

Vulcan's prolix (to put it mildly)[1] Complaint is a sweeping but misguided attempt to state a range of trademark, cybersquatting, RICO, and related state claims against five separate companies.  Four of those companies are in the business of acquiring, managing, and/or operating hundreds of thousands of "parked" domain names.  As set forth in Vulcan's Complaint, one of those four companies has operated two domains that Vulcan alleges are confusingly similar to its own.  Whether the conduct of the four "Parking Company Defendants" ("PCDs") violates any law is open to serious question.

There is no question, however, about the fifth defendant.  In addition to naming the four PCDs, Vulcan's Complaint purports to state claims against Google Inc. ("Google") based on Google's provision of advertising text that is displayed on domains owned or operated by the PCDs.  Those claims fail for myriad reasons.  Most fundamentally, no trademark claim can lie against Google because Google makes no use of Vulcan's trademarks whatsoever.  Google neither owns nor operates any of the domain names of which Vulcan complains.  Neither does Google (or its advertisers, for that matter) use Vulcan's claimed marks (or anything similar) in the text of any advertisements.  Through its AdSense advertising programs, including AdSense for Domains ("AFD") at issue here, Google merely distributes third party advertisements not containing Vulcan's marks to entities such as the PCDs for display.

Neither can Google be contributorily liable for the claimed actions of the PCDs.  In order to establish contributory trademark liability, Vulcan would have to allege that Google *knowingly* assisted in infringing its rights.  Vulcan makes no such allegation, and cannot, for a simple and compelling reason:  Google's sweeping trademark protection policies provide that Google will immediately remove any allegedly infringing domains from its AFD program at the request of the trademark holder.[2]

---

[1] Vulcan's complaint tips the scales at a Rule-8-busting 121 pages and 638 paragraphs, not including the five exhibits.

[2] *See* AdSense for Domains Trademark Complaint Procedure, *at*

Why, then, were the allegedly infringing domains a part of the AFD program when Vulcan filed its complaint?  Because Vulcan, prior to filing its complaint, *never bothered to tell Google it objected to those domains.*  Indeed, prior to filing its complaint, Vulcan had never communicated with Google about the domains in any fashion.  Had it done so, taking a moment to put Google on notice of Vulcan's position would have immediately ceased the "harm" Vulcan alleges.[3]  Putting aside the obvious failure-of-mitigation issues, Vulcan's failure to allege any effort to contact Google is fatal to any claim of contributory infringement, as it precludes any claim that Google *knowingly* assisted the PCDs in infringing Vulcan's alleged trademark.

The inability to allege knowledge would be fatal to any claim of contributory trademark infringement.  It is doubly fatal to a claim against Google, however, because Google is subject to the Lanham Act's *express* immunity for publishers of advertisements.  Because Google does nothing more than electronically publish the advertisements of others, Section 1114 of the Lanham Act provides complete immunity unless Google were found to have published false material with *New York Times* actual malice.   Because Vulcan can allege no notice to Google, it cannot state a claim that survives Section 1114 immunity.

Neither can Vulcan state a cybersquatting claim against Google.  Unlike the PCDs, Google is not alleged to own or operate any of the allegedly infringing domain names.  Vulcan's cybersquatting claims can be stated (if at all) only against the owners of the domains, not against the company (Google) that provides advertising content to those domains.

Vulcan's other claims similarly fail.  As each of Vulcan's federal claims fails, this Court can and should decline to exercise pendent jurisdiction.   And, as set forth below, even if the Court chose to exercise jurisdiction, the claims each fail on their merits as well.

Finally, Vulcan's hyperbolic RICO claims are barred by Seventh Circuit law.  Vulcan's

---

http://www.google.com/tm_complaint_afd.html.  This policy is not cited in the complaint, and is cited here as evidence that Vulcan cannot cure the defects of its complaint by amendment.

[3] Google has treated Vulcan's Complaint as trademark notification, has removed the allegedly infringing domains from AFD, and has advised Vulcan that, should it want any other Vulcan-related sites blocked, it need only ask.

RICO claims are based on the alleged confusion and deception of consumers as a result of PCDs registering and using names similar to Vulcan's.  But as the *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995) (Easterbrook, J.) court has held, one cannot state a RICO claim against a competitor based on the alleged deception or confusion of one's customers or prospective customers.  Instead, "firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO."  *Id.*

As Vulcan has failed to state any viable claim, and as the defects in Vulcan's Complaint cannot be cured by amendment, this Court should dismiss all claims against Google with prejudice.

## II.     Pleading Standards

Rule 12(b)(6) permits courts to dismiss meritless cases that waste judicial resources and result in unnecessary discovery.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  The complaint must contain allegations "showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and accordingly must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (May 21, 2007).  "Factual allegations must be enough to raise a right to relief above the speculative level" such that they "raise a reasonable expectation that discovery will reveal evidence of [the claim or element]"  *Id.* at 1965.  "'[P]rior rulings and considered views of leading commentators' can assist in assessing the plausibility of the plaintiffs' allegations."  *Walker v. S.W.I.F.T. SCRL*, ___ F. Supp. 2d ___, 2007 WL 1704293 (N.D. Ill. June 12, 2007) (Holderman, C.J.) (quoting *Twombly*, 127 S.Ct. at 1966).  Fraud claims must be pleaded with particularity.  FED. R. CIV. P. 9(b).

## III.     Argument

For each of its twelve claims, Vulcan[4] fails to meet even liberal pleading standards,

---

[4] Vulcan may not assert a claim on behalf of a class if Vulcan itself may not pursue that claim. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Accordingly, in the 12(b)(6) context, the class action issues (which are severe) are not relevant; the only issue is whether **Vulcan** has stated a

making no plausible factual allegations that might support a finding of liability.  Neither are any

of the defects in Vulcan's Complaint mere pleading errors, and thus leave to amend would be

futile.  For the Court's convenience, Google has attached a one-page Chart of Claims with Key

Grounds for Dismissal as Appendix A.

In addition to the arguments set forth below, Google joins in all other arguments for

dismissal applicable to Google made by the other defendants in this case.

## A.    Federal Claims

Vulcan's complaint contains seven federal claims: RICO (Counts 1 and 2),

Cybersquatting (Count 3), Trademark Infringement (Count 4), False Designation of Origin

(Count 5), Trademark Dilution (Count 6), Contributory Trademark Infringement (Count 9).

Each must be dismissed.

### 1.    Vulcan's federal trademark infringement claims (Counts 4 and 10) fail because the complaint does not allege that Google knew or should have known of any infringement.

Vulcan alleges that Google infringed Vulcan's trademarks directly (Count 4) and

contributorily (Count 10).  Vulcan alleges neither that Google knew of the infringing nature of

the domains nor that Google had reason to know of the infringing nature of the domains.

Because Google did not have notice, it has no direct infringement liability under the Lanham

Act's "innocent publisher" exception.  Because Google had neither knowledge nor reason to

know of infringing conduct, it has no contributory infringement liability.

#### a.    Vulcan alleges neither knowledge nor reason to know.

Vulcan does not (and cannot) allege that Google had knowledge of or reason to know of

the alleged infringement.  Nowhere does Vulcan allege facts indicating that Google had any

reason to know that the "bad apple" domains identified in the complaint were infringing,

assuming they are.  As Vulcan admits, there are "millions of domain names using the Google

AdSense for Domains Program."  Compl. ¶ 56(y).  While Vulcan alleges (incorrectly) that

---

claim upon which relief upon which relief can be granted.  If the Court dismisses all claims vis-
à-vis Vulcan, any claims Vulcan makes on behalf of a putative class cannot proceed.

Google "reviews all domains [sic] names in the Google AdSense for Domains Network prior to acceptance into the Google AdSense for Domains Network," Compl. ¶ 126, it does not allege that Google researches the trademark status of each domain name, or investigates who has registered any given domain name. Both under the facts alleged in the complaint and in reality, Google has no way to know – and no reason to know – whether a given domain in the AFD program could infringe a valid trademark. And even if Google did somehow have the ability to pluck out those domains which could infringe a valid trademark, Google has no way to know who has registered the domain, be it an infringer, a licensee of the trademark owner, or the trademark owner himself.[5] Vulcan does not allege facts to the contrary, and accordingly does not adequately plead facts leading up to the conclusion that Google has actual or constructive knowledge of infringement.

Nor can Vulcan cure this defect by amendment. Google's policies for removing domains from the AFD program are exceedingly solicitous to trademark owners who request removal. As Google states on the AdSense for Domains Frequently Asked Questions page, referenced in paragraph 233 of the complaint and therefore before this Court:[6]

> Google is not involved with the selection or registration of these domain names, and is not in a position to arbitrate trademark disputes between the registrants, our partners, and trademark owners. Accordingly, we encourage trademark owners to resolve their disputes directly with the registrants or registrars. As a courtesy to trademark owners, Google provides a simple publicly available complaint procedure and, once notified of a legitimate complaint against a specific domain, Google will no longer serve ads to that domain. For instructions on how to file a complaint, please refer to the Trademark Complaint Process page. Additionally, a copy of our publicly available trademark policy is available online.

Google AdSense for Domains Frequently Asked Questions, *at*

---

[5] Indeed, trademark owners frequently register common typographical-error variants of their domain names. *See, e.g.*, One Degree Internet Marketing Insiders, "How To: Add Spell-check To Your Domain Names," *at* http://www.onedegree.ca/2005/04/21/how-to-add-spellcheck-to-your-domain-names ("Unless you have some policy about only selling to customers who got an A+ in spelling and can type 40 words per minute, you'll probably want to register 'typo domains'. . . . I like to think of this as creating a spell-check feature in web browsers so people can find you even if they aren't 100% sure about your web address.").

[6] *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (courts may review documents referenced in the plaintiff's complaint in considering a motion to dismiss).

http://www.google.com/domainpark/faq.html. *See also* AdSense for Domains Trademark

Complaint Procedure, *at* http://www.google.com/tm_complaint_afd.html (linked from the words

"Trademark Complaint Process page" in the foregoing quotation).  In order to permanently

remove from the AFD program any domains to which it objected, such as volcangolf.com or

wwwvulcangolf.com, all Vulcan had to do was ask.  A simple notice to Google would have

permanently eliminated the harm Vulcan alleges.  In its complaint, Vulcan alleges that Google's

policy for removing domains from the AFD program in response to trademark holder complaints

is a "sham." Compl. ¶ 299(d). Conspicuously absent from the complaint, however, is any

allegation that Vulcan attempted to make use of the complaint policy.  Vulcan did not bother to

try it out and see whether Google has implemented a reasonable, good-faith policy designed to

eliminate from the AFD program all potentially-infringing domains of which Google becomes

aware, or whether, as Vulcan alleges, the policy is "illusory."  Compl. ¶ 299(d).  Although

Vulcan has chosen to burden the federal courts rather than using the simple procedure that

Google has provided, Google has treated the Complaint in this action as notice, and has *sua*

*sponte* blocked both volcangolf.com and wwwvulcangolf.com from the AFD program.[7]

### b. Under 15 U.S.C. § 1114(2), Google is subject to direct trademark liability only if Vulcan adequately alleged knowledge.

The Lanham Act does not allow for money damages against most publishers.  It provides:

> Where the infringement or violation complained of is contained in or is part of
> paid advertising matter in a newspaper, magazine, or other similar periodical or in
> an electronic communication as defined in section 2510(12) of title 18, the
> remedies of the owner of the right infringed or person bringing the action under
> section 1125(a) of this title as against the publisher or distributor of such
> newspaper, magazine, or other similar periodical or electronic communication
> shall be limited to an injunction against the presentation of such advertising
> matter in future issues of such newspapers, magazines, or other similar periodicals
> or in future transmissions of such electronic communications. The limitations of
> this subparagraph shall apply only to innocent infringers and innocent violators.

15 U.S.C. § 1114(2)(B).  This provision limits the relief against publishers of paid

---

[7] At the Rule 26(f) conference on August 7, 2007, Vulcan identified four additional domains to
which it objected, to wit VulcnaGolf.com, VulcanGolfClubs.com, VulcanGolfTechnology.com,
and VulconGolf.com.  Google blocked each of these domains from participation in the AFD
program the same day.

advertisements, including online publishers, to injunctive relief, so long as the publisher is an innocent infringer. *Id.*; accord *Century 21 Real Estate Corp. of Northern Illinois v. R.M. Post, Inc.*, 8 U.S.P.Q.2d 1614, 1617 (N.D. Ill. 1988).

### (i)    Google is a publisher of paid advertisements in electronic communications.

Under the facts alleged in Vulcan's complaint, Google satisfies the preliminary requirements for damages immunity under Section 1114(2)(b): the AFD pages consist of advertisements, Compl. ¶ 421, and the complaint alleges that Google is their publisher. Compl. ¶ 131. There should be no dispute that the online advertisements Google publishes are electronic communications. Section 1114(2)(B) refers to Section 2510(12) of Title 18 for the definition of "electronic communications," and that section states that the term "means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." Google is clearly a "publisher" of "paid advertising matter" in "electronic communications," and thus meets the preliminary eligibility requirements for immunity under Section 1114(2)(b).

### (ii)    If the complaint adequately alleges any direct infringement by Google, that infringement is innocent infringement.

Although the term "innocent infringer" is not defined in the statute, the legislative history and subsequent case law make clear that it embraces libel law's "actual malice" standard as set forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964). Congress revised Section 1114(2)(B) to its current formulation in 1992. At the time, the bill's co-sponsor in the House, Congressman Robert Kastenmeier, explained that the revision:

> exempts from liability 'innocent' disseminators of offending material, whether that material constitutes a violation of Section 32(1) relating to infringement, or of proposed Section 43(a), relating to false and misleading commercial advertising. Most prominently, the change protects newspapers, magazines, broadcasters, and other media from liability for the innocent dissemination of commercial false advertising, including promotional material. The word "innocent" is intended to encompass the constitutional standards set forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964) and its progeny.

Remarks of Subcommittee Chairman Robert Kastenmeier, 134 Cong. Rec. H10420 (Oct. 19,

1988).  Guided by *New York Times*, courts thus have concluded that "an infringer is 'innocent' unless it acted either (1) with knowledge of the infringement or (2) with reckless disregard as to whether the material infringed the trademark owner's rights."  *Gucci America, Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 420 (S.D.N.Y. 2001); *see also World Wrestling Fed'n, Inc. v. Posters, Inc.*, 58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000); *NBA Properties v. Untertainment Records LLC*, 1999 WL 335147 (S.D.N.Y. 1999).  *But see Dial One of the Mid-South, Inc.*, 269 F.3d 523, 526 (5th Cir. 2001) (adopting "objective reasonableness" standard).  Under this standard, actual malice must be proved by clear and convincing evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991).

Vulcan's complaint alleges neither of the mental states required to show that Google's infringement was not innocent.  As described above in section III(A)(1)(a), Vulcan does not allege that Google has knowledge of infringement.  Similarly, Vulcan alleges no facts which could show a reckless disregard as to whether the domain names were infringing.  Google maintains a policy of removing from the AFD program any domains that so much as whiff of trademark infringement, upon notice from the trademark holder.  *See* Compl. ¶ 299(d); *supra* section III(A)(1)(a).  Vulcan admits that Google warns against "tricking users by registering misspellings of well-known websites."  Compl. ¶ 221 (quoting Google Webmaster Guidelines, *at* http://www.google.com/support/webmasters/bin/answer.py?answer=35769).  Far from showing a "reckless disregard" for trademark infringement, *Gucci America*, 135 F. Supp. 2d at 420, these facts pled in the complaint demonstrate that Google takes great care to remedy all trademark infringement about which it is notified and strongly discourages behavior that could be infringing.  Google is, at most, an innocent infringer.

### (iii)     Because Vulcan has alleged at most innocent infringement, its claim should be dismissed as moot.

As noted above, Vulcan alleges, at most, that Google is an innocent infringer, who cannot be liable for money damages.  As described in section III(A)(1)(a) above, Google has *sua sponte* permanently excluded the two domains Vulcan identified in the complaint and the four

additional domains Vulcan identified at the August 7, 2007 Rule 26(f) conference from the AFD

program. Vulcan is due no money damages because Google is at most an innocent infringer;

Vulcan is not entitled to an injunction because Google has already granted it the relief it seeks.

*See, e.g.*, *McKinney v. Indiana Michigan Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997) (where

the plaintiff has received all possible meaningful relief from his claimed injury, the claim must

be dismissed as moot). Because Vulcan is not entitled to money damages and has already

received the non-monetary relief it seeks, its trademark infringement claim should be dismissed

with prejudice.

            **c.**      **Google is subject to contributory liability only if Vulcan adequately alleged knowledge or reason to know.**

      "Contributory trademark infringement occurs when a manufacturer or distributor (1)

intentionally induces another to infringe a trademark or (2) continues to supply a product to one

whom it knows or has reason to know is engaging in trademark infringement." *Watts v. Network*

*Solutions, Inc.*, 1999 WL 994012, *2 (7th Cir. 1999); accord *Inwood Labs. v. Ives Labs.*, 456

U.S. 844, 853-54 (1982). Vulcan alleges no facts leading to a conclusion that Google

intentionally induced infringement – an act that requires knowledge of the infringing nature of

the act induced.[8] *See, e.g.*, *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553

(Fed. Cir .1990) ("The plaintiff has the burden of showing that the alleged infringer's actions

induced infringing acts and that he knew or should have known his actions would induce actual

infringements."). In order to plead a claim for contributory trademark infringement, Vulcan

must allege that Google knew or had reason to know that certain domains were infringing.

      As noted above, Vulcan gave Google no notice that it believed the accused domains were

infringing before filing this lawsuit, and Vulcan does not allege that it did. Even assuming –

counterfactually – that Vulcan had asked Google to remove the accused domains from the AFD

---

[8] Vulcan states that Google "induce[s], cause[s], and/or materially contribute[s] to" infringement, but this conclusory allegation is insufficient for numerous reasons – for example, because it alleges inducement "and/or" material contribution instead of alleging inducement, because it fails to allege intent, and because there is no allegation of knowledge of the infringing nature of any domains.

program and assuming Google had (contrary to its policy) refused to do so, Google could still not be said to have "knowledge of infringement." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997) ("The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement . . . ."). Vulcan did not so much as *assert* trademark infringement before filing its complaint, and certainly fails to substantiate any such claim here in a way that could give rise to knowledge of infringement. Since even a bare claim of infringement would not have sufficed, *a fortiori*, Vulcan's silence did not impute to Google knowledge of the infringement alleged. Vulcan's contributory trademark infringement claim should be dismissed.

### 2. Vulcan's RICO claims (Counts 1 and 2) fail because Vulcan lacks standing under the alleged predicate offenses.

Vulcan alleges that Google has violated 18 U.S.C. § 1962(c) and 1962(d), the Racketeering Influenced and Corrupt Organizations statute. In order to state a claim for violations of those sections, Vulcan must state a claim for some predicate act constituting "racketeering activity." 18 U.S.C. § 1962(c) & 1962(d). Vulcan has identified mail fraud and wire fraud as the predicate acts for its RICO claim. Compl. ¶¶ 448 & 449. Both mail fraud, indictable under 18 U.S.C. § 1341, and wire fraud, indictable under 18 U.S.C. § 1343, constitute "racketeering activity." 18 U.S.C. § 1961(1)(B). But Vulcan fails nonetheless to state a RICO claim because it has no standing to raise the mail or wire fraud claims.

The leading case on standing to bring a civil RICO claim alleging wire or mail fraud as the predicate offense is *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995) (Easterbrook, J.). In *Israel Travel*, a travel agency sued its competitor, alleging that its competitor had sent fraudulent advertisements to consumers and had thereby diverted business from the defendant to the plaintiff. *Israel Travel*, 61 F.3d at 1253. Among other counts, the travel agency sued under the civil RICO statute, alleging mail fraud as the predicate offense. *Id.* at 1257. The plaintiff travel agency did not allege that *it* had been deceived, only that it had been damaged by the defendant's fraud on consumers. *Id.* at 1258.

Rejecting the plaintiff's claim, the Seventh Circuit held that "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against consumers, because only the consumers are the beneficiaries of the statutory protection." *Id.*; accord *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007). Because "[s]ection 1341 does not protect vendors to persons who may be deceived," the court reasoned, "firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO." *Id.*

Here, Vulcan's RICO claims fail for the same reasons that the plaintiff's RICO claim failed in *Israel Travel.* In the section of its complaint titled "Predicate Acts," Vulcan alleges that "Defendants intended Internet users (potential customers, buyers, etc.) to rely upon the validity and legality of the Deceptive Domains and thereby use the advertisements on the deceptive domains thus causing diversion of customers, business, revenue, sales, and profits away from Lead Plaintiff and Class Members to Defendants and Defendants' customers." Compl. ¶ 453. In other words, Vulcan alleges that Google has deceived consumers, and thereby diverted business away from Vulcan and to its competitors, causing Vulcan to suffer injury derivative of that suffered by the consumers who have been deceived. But the mail fraud statute "does not protect vendors to persons who may be deceived." *Israel Travel*, 61 F.3d at 1258. Vulcan, a business rival, "may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against consumers." *Id.* Because Vulcan is not protected by the federal mail fraud statute against the damage it claims to have suffered, Vulcan cannot plead a claim for civil RICO using mail fraud as the predicate offense.

For the same reasons, Vulcan cannot plead a claim for civil RICO using wire fraud as the predicate offense. The reasoning of *Israel Travel* applies with equal force to claims of wire fraud under 18 U.S.C. § 1343 as it does to claims of mail fraud under 18 U.S.C. § 1341. Each statute criminalizes a parallel class of conduct: "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341; *cf.* 18 U.S.C. § 1343 (criminalizing the same class of conduct).

Indeed, courts have applied the holding of *Israel Travel* in analyzing RICO claims alleging predicate offenses of both wire fraud and mail fraud. *See, e.g.*, *North Shore Medical Center, Ltd. v. Evanston Hosp. Corp.*, 1995 WL 723761, *4 (N.D. Ill. Dec. 5, 1995).

Because Vulcan is not protected by the federal mail fraud statute against the damage it claims to have suffered, it may not use them as predicate offenses. In addition, Vulcan's RICO claims fail for numerous other reasons set forth in Internet REIT's brief at 12-26. Rather than recapitulate them here, we join in that portion of Internet REIT's brief. Accordingly, Vulcan's RICO claims must be dismissed with prejudice.

### 3. Vulcan's cybersquatting claim (Count 3) fails because it does not allege that Google owns or operates any allegedly infringing domains.

Vulcan purports to state a cybersquatting claim against both the PCDs and Google. Vulcan, however, states no facts that would support a claim against Google. Unlike the PCDs, Google does not own or operate any of the allegedly infringing domains, and thus cannot be liable as a cybersquatter.

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), imposes liability only on one who "registers, traffics in, or uses" certain kinds of misleading domain names. The range of potential defendants is further narrowed by Section 1125(d)(1)(D), which states, "A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee." Vulcan does not allege that Google has registered any of the allegedly infringing domains, or that it has sublet them from others, or that it operates them in any way. Rather, the sole allegation against Google is that it provides advertising content to the owners or operators of those domains.

Vulcan, apparently cognizant of this fatal flaw, occasionally uses the term "license" to describe the relationship between the PCDs and Google, without explanation. But this inchoate legal conclusion cannot substitute for pleading facts that would support a claim. Vulcan does not allege, and cannot allege, that Google has either registered any allegedly infringing domain

names, or is an "authorized licensee" as that term is used in the ACPA.[9]  Indeed, Vulcan's

factual allegations are the precise opposite:  that the PCDs own or operate the parked domains

(i.e., that the PCDs are the domain name registrants or authorized licensees), and that Google

merely provides advertising content (and thus revenue) to them.

Because Google does not own or operate any of the allegedly infringing domains, a

cybersquatting claim cannot lie against Google.[10]

> **4.    Vulcan's claim for false designation of origin (Count 5) fails because it does not allege that Google uses the domain names at issue "on or in connection with any goods or services."**

In Count Five, Vulcan alleges that Google has violated 15 U.S.C. § 1125(a).  Vulcan has

no viable claim because Vulcan does not allege that Google has used the domain names at issue

"on or in connection with any goods or services, or any container for goods" as required by 15

U.S.C. § 1125(a)(1).

In the Seventh Circuit, "a plaintiff must prove the following three elements to state a

---

[9] The term "authorized licensee" is not defined in the ACPA.  However, the legislative history discusses the term's meaning:

> Paragraph 1(D) further clarifies that a use of a domain name shall be limited to a use of the domain name by the registrant or his or her authorized licensee.  This provision limits the right to use the domain name as a means to infringe on another's other [sic] bona fide trademark rights.

H. R. Rep. No. 106-412 at 13-14 (1999), *available at* http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=106_cong_reports&docid=f:hr412.106.pdf.  This legislative history shows that an "authorized licensee" must be one who is licensed to use a domain name "as a means to infringe on another's . . . bona fide trademark rights."  As noted above, Google has no actual or constructive knowledge of any infringement, so it cannot be an "authorized licensee" as that term is used in the ACPA.

[10] Even were Google a proper defendant, Vulcan's claims against Google would fail on other grounds.  The first element of a cybersquatting claim is the defendant's "**bad faith intent** to profit" from the relevant mark.  15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added).  The statute lists factors to be considered "[i]n determining whether a person has a **bad faith intent** described under subparagraph (A)."  15 U.S.C. § 1125(d)(1)(B)(i) (emphasis added).  Because, as noted above, Google had no notice of Vulcan's objections, and acted promptly to disable services to the allegedly infringing sites once it received such notice, Vulcan cannot meet this element either. It has alleged no facts plausibly suggesting that Google had the necessary "bad faith intent," an element whose pleading is particularly important because it is a "term of art," its meaning divering from the standard legal meaning of action in "bad faith."  *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 n.13 (2d Cir. 2000).

claim under the Lanham Act: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation."  *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999).

Vulcan has failed to allege any facts that would constitute a "use" by Google of the allegedly infringing domain names "in connection with goods or services."  Firstly, the paragraph in which it seems that Vulcan intended to include a conclusory allegation of "use" does not do so. It reads:

> 557. Defendants' use in commerce of the Distinctive and Valuable Marks and the infringing Deceptive Domains, as alleged herein.

Paragraph 557 of the complaint is not a complete sentence, and it is difficult to determine what Vulcan intended to allege by it.

Assuming that Vulcan successfully *recited* the element of "use," its claim nonetheless fails.  The facts as pleaded by Vulcan show that Google does not label any advertising with a Vulcan Golf designation.  The allegedly infringing domain names, volcangolf.com and wwwvulcangolf.com, were not provided by Google and are not used by Google as labels for its goods or services.  Google supplies ads.  Each of those ads is clearly labeled with the advertiser's website address—an accurate designation of its origin—as shown in Exhibit C to the complaint.[11]    Vulcan has not stated a claim for false designation of origin.

Interpreting its complaint generously, Vulcan appears to be alleging that the relevant "designation of origin" is the domain name the user types into his or her browser.  *See* Compl. ¶ 558.  Vulcan alleges that Google "processes" the domain names and "returns formatted HTML

---

[11] Exhibit C is somewhat difficult to read.  For the Court's convenience, one relevant portion of the first page of Exhibit C reads, under the heading "Sponsored Links:"

> 1 Iron Golf
> Ultra game improvement golf clubs. Increased distance and accuracy.
> www.1irongolf.com

In this example, the web address "www.1irongolf.com" designates the ad's origin.

for each domain name that includes contextual ads and related searches." Compl. ¶ 99. What Vulcan does not allege is that Google ever communicates this alleged "designation of origin" to the computer user, thereby "using" it. The screenshots that Vulcan includes as Exhibit C to the complaint make this plain: the allegedly infringing domain name "wwwvulcangolf.com" appears only in the browser's address bar, above the content of the HTML page that is returned by the web server. The alleged "designation of origin" does not appear in the "formatted HTML" that Vulcan alleges Google "returns," Compl. ¶ 99. Vulcan does not even allege that Google has ever *uttered* the domain names in question, much less that it has used them to designate the origin of its services. This is far from alleging "that the defendant ***used*** a false designation of origin or false description or representation ***in connection with goods or services***," *Kennedy*, 187 F.3d at 695 (emphasis added), as the Seventh Circuit requires. Accordingly, Vulcan's false designation of origin claim must be dismissed.

### 5.    Vulcan's dilution claim (Count 6) fails because it does not allege that each of the marks at issue is famous.

In Count Six, Vulcan alleges that Google has violated 15 U.S.C. 1125(c), titled "Remedies for dilution of famous marks." Vulcan alleges, "[a]t the time that the Lead Plaintiff and the members of the Class registered their domain names, said Distinctive and Valuable Marks were distinctive, protected/protectible, and/or famous." Compl. ¶ 571. "Distinctive and Valuable Marks" is a defined term, meaning "venerable, valuable, distinctive, famous, registered trademarks, trade names, logos, famous names, and other such distinctive/valuable marks." Compl. ¶ 56(j).

Under section 1125(c), the owner of a famous mark is entitled "to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). "To prove a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce."

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999).  Fame is a critical element, since "[d]ilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).

Vulcan does not allege that its mark is famous, only that it is "distinctive, protected/protectible, ***and/or*** famous." Compl. ¶ 571 (emphasis added).  This is not enough: even if Vulcan were able to prove that its mark was "distinctive," or that it was "protected/protectible," or that it were distinctive, protectible, *and* protected, Vulcan could not prevail.  Vulcan must allege and prove that its mark is famous; under Section 1125(c), nothing less will do.  The complaint's use of "and/or" is fatal, since a showing of any one or more of the listed properties of a mark would meet the allegation without meeting the requirements of Section 1125(c).

Vulcan's dilution claim should be dismissed because it has failed to allege the element of fame.

**B.      State Law Claims**

Vulcan's complaint contains four state law claims: deceptive trade practices (Count 7), Common Law Trademark Violation (Count 9), Intentional Interference with Current and Prospective Economic Advantage (Count 11), and Unjust Enrichment (Count 12).  This court should dismiss these claims for lack of pendent subject matter jurisdiction and because each fails on its own merits.

**1.      Because all of Vulcan's claims under federal law should be dismissed, the court should decline to exercise pendent jurisdiction over its state-law claims.**

As Vulcan's federal claims fail, the Court should also dismiss Vulcan's remaining state-law claims for lack of supplemental jurisdiction.  When a court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the other claims.  28 U.S.C. § 1367(c)(3).  As a practical matter, a court should generally so decline.  *See Christensen v. County of Boone*, 483 F.3d 454, 466 (7th Cir. 2007) (when all of the federal

claims have been resolved, "the district court should relinquish supplemental jurisdiction so that the state-law claims may be resolved in state court"); 16 Moore's Federal Practice § 106.66[2] (3d ed. 1997).  Here, because each of Vulcan's federal claims fails, this Court should relinquish supplemental jurisdiction.  In the alternative, the Court can dismiss each supplemental state-law cause of action on the merits for the reasons discussed below.

> **2.    Vulcan's claim for intentional interference with prospective economic advantage (Count 11) fails because it does not allege a business expectancy with a specific third party.**

Vulcan alleges that Google has interfered with its "prospective economic relationships with third party Internet consumers."  Compl. ¶ 632.  Vulcan does not specify who these "third party Internet consumers" are, except to say elsewhere that they are "third party Internet users/consumers."  Compl. ¶ 628.

In Illinois, to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove, *inter alia*, "his reasonable expectation of entering into a valid business relationship."  *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).  "Illinois courts have stated that the first element of a prima facie case for tortious interference, that plaintiff had a valid business expectancy, requires allegations of business relationships with *specific third parties*."  *Du Page Aviation Corp. v. Du Page Aviation Auth.*, 594 N.E.2d 1334, 1340 (Ill. Ct. App. 1992) (emphasis in original); *accord Schuler v. Abbott Labs.*, 639 N.E.2d 144, 147 (Ill. Ct. App. 1993) ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party.").

Vulcan does not allege any reasonable expectation of entering into a business relationship with any specific third party, and its claim therefore fails.  The class of "third party Internet users/consumers" numbers in the billions.  Vulcan did not (and, obviously, cannot) claim that it reasonably expects to enter into a business relationship with *every* Internet user.  Accordingly, Vulcan failed to allege a necessary element of its cause of action, and Count 11 should be dismissed.

**3.     Vulcan's claim for intentional interference with contractual relations (Count 11) fails because it does not identify a contract with which Google is alleged to have interfered.**

Vulcan purports to plead a claim for "Intentional Interference with Current . . . Economic Advantage." Compl. at ¶ 115. A thorough search of reported Illinois cases reveals the recognition of no tort by that name. Illinois does, however, recognize the tort of intentional interference with contractual relations. *See Swager v. Couri*, 395 N.E.2d 921 (Ill. 1979). Google assumes that Vulcan intended to plead a claim for that tort, instead.

But even assuming Vulcan intended to allege intentional interference with contractual relations, the claim still fails. To plead a valid claim for that tort, a complaint must contain "statements indicating what contract deserving of legal protection was involved." *Founding Church of Scientology of Washington, D. C. v. American Medical Ass'n*, 377 N.E.2d 158, 161 (Ill. Ct. App. 1978). Vulcan does not identify any contract with which Google is alleged to have interfered, stating only that "[a] current . . . economic relationship between Lead Plaintiff/Class members and third party Internet users/consumers exists . . . ." Compl. ¶ 628. Because Vulcan has not specified "what contract deserving of legal protection was involved," *Founding Church of Scientology*, 377 N.E.2d at 161, its claim should be dismissed.

**4.     Vulcan's Illinois deceptive practices claim (Count 7) and its common law trademark claim (Count 9) fail for the same reason its Lanham Act claims do.**

Vulcan claims that Google has violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/2, and the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/2. Vulcan also claims common law trademark infringement. Compl. ¶¶ 606-612. "Under Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under the Lanham Act." *D 56 Inc. v. Berry's Inc.*, 1996 WL 252557 (N. D. Ill. May 10, 1996). Likewise, because "the principles of statutory trademark law and the tests for infringement are basically the traditional ones of common law," courts have found that "separate discussion of the statute and common law is unnecessary." *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*, 357 F. Supp. 127, 130 n.3

(N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974).  *See also James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d at 274-75 & n.16 (7th Cir. 1976) (finding state law unfair competition and trademark claims resolved by reference to the resolution of plaintiff's Lanham Act claims).  Because it has failed to allege facts sufficient to make out a claim under the Lanham Act, Vulcan's claims for violation of the ICFDBPA and the IDTPA and for common law trademark infringement also fail.

> **5.    Vulcan's unjust enrichment claim (Count 12) fails because Vulcan has alleged an adequate remedy at law.**

In Illinois, "[i]t is axiomatic that an unjust enrichment claim is viable only when there is no adequate remedy at law."  *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. Ct. App. 1995).  This is true "because [unjust enrichment] is an equitable remedy."  *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. Ct. App. 2004).  Accordingly, when a plaintiff pleads an unjust enrichment claim alongside a claim for a legal remedy for the same wrong, the plaintiff "does not set forth a proper cause of action."  *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).  A plaintiff may avoid dismissal by pleading its unjust enrichment claim in the alternative to *all* other remedies at law.  *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005).

Here, Vulcan attempts to plead its unjust enrichment claim "in the alternative to any contract and statutory claims."  Compl. ¶ 636.  Vulcan's complaint contains seven statutory claims.[12]  It contains no contract claim.  Setting to one side the unjust enrichment claim (and the redundant declaratory judgment claim), this leaves three claims alleging remedies at law that Vulcan is pleading alongside its unjust enrichment claim.[13]  Because Vulcan alleged legal remedies alongside (rather than in the alternative to) its unjust enrichment claim, that claim "does not set forth a proper cause of action."  *People ex rel. Hartigan*, 607 N.E.2d at 177.

---

[12] To wit, counts 1, 2, 3, 4, 5, 6, and 7.

[13] To wit, counts 9, 10, and 11.

**C.    Vulcan's declaratory judgment claim (Count 8) must be dismissed because it is redundant and because the complaint fails to allege facts supporting declaratory relief.**

Vulcan's claim for declaratory relief must fail for two reasons.  First, it does no more than repeat claims made elsewhere in the complaint.  *See* Compl. ¶ 603 (listing only claims appearing elsewhere in the complaint).  Where, as here, declaratory relief is redundant and claims appearing elsewhere in the complaint would provide a full remedy for any alleged harm, the declaratory judgment claim must be dismissed.  *See, e.g.*, *Shepherd v. U.S. Olympic Comm.*, 464 F. Supp. 2d 1072, 1081 n.8 (D. Colo 2006).  Second, a declaratory judgment claim, like any other claim, must state a claim upon which relief can be granted.  Because it has failed to plead claims for the underlying causes of action, Vulcan has failed to plead a claim for declaratory judgment.  Accordingly, its declaratory judgment claim must be dismissed.

## IV.    Conclusion

For the above reasons, Vulcan's claims should be dismissed with prejudice.

Respectfully submitted,

GOOGLE, INC.

By: /s/ Mariah E. Moran
    One of Its Attorneys

Dated:  August 10, 2007

Michael H. Page
Joseph C. Gratz
Keker & Van Nest, LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E.Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200