## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| VULCAN GOLF, LLC, | : | |
| Individually And On Behalf Of All | : | |
| Others Similarly Situated, | : | Case No. 07CV3371 |
| | : | |
| Lead Plaintiff, | : | Judge Kocoras |
| | : | |
| v. | : | Magistrate Judge Brown |
| | : | |
| GOOGLE INC., OVERSEE.NET, | : | |
| SEDO LLC, DOTSTER, INC., AKA | : | |
| REVENUEDIRECT.COM, | : | |
| INTERNET REIT, INC. d/b/a IREIT, INC. | : | |
| and JOHN DOES I-X, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOTSTER, INC.'S MOTION TO DISMISS PLAINTIFF'S RICO CLAIMS, AND OTHER NON-TRADEMARK RELATED CLAIMS, IN THE CLASS ACTION COMPLAINT

Dated: August 15, 2007

Dockets.Justia.com

TABLE OF CONTENTS

I.    Introduction ......................................................................................................... 1

II.   Plaintiff's Allegations .......................................................................................... 2

III.  Legal standards ................................................................................................... 2

      A.    Rule 12(b)(6) ............................................................................................ 2

      B.    Rule 9(b) .................................................................................................. 3

IV.   Plaintiff's Rico Claims In Counts I and II Should Be Dismissed ...................... 4

      A.    Plaintiff has Failed to Adequately Allege a RICO "Enterprise" ............ 4

      B.    The Complaint Fails to Adequately Allege that Dotster Participated in the
            Operation or Management of the Alleged Enterprise ............................. 8

      C.    The Complaint Fails to Plead the Alleged Predicate Acts of Fraud with
            the Requisite Particularity ...................................................................... 10

      D.    The Complaint Fails to Plead a "Pattern of Racketeering Activity" ................... 11

      E.    The Complaint Fails to Adequately Allege a Conspiracy to Violate RICO ........ 16

      F.    The Complaint Fails to Adequately Allege The Reliance and Proximate
            Cause Requirements of RICO ................................................................. 18

V.    The Non-Trademark Related Claims In Counts VII, VIII, XI, And XII Of The
      Complaint Should Be Dismissed ...................................................................... 21

      A.    The Illinois Consumer Fraud Act Claim in Count VII is Not Pleaded
            With the Particularity Required by Rule 9(b), and Fails to State a Claim ........... 21

      B.    The Intentional Interference with Current and Prospective Economic
            Advantage Claims in Count XI Should be Dismissed ........................... 23

      C.    The Unjust Enrichment Claim in Count XII Should be Dismissed ..................... 24

      D.    The Declaratory Judgment Claim in Count VIII Merely Duplicates the
            Substantive Claims, and Should be Dismissed ..................................... 25

VI.   Conclusion ........................................................................................................ 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amari v. Radio Spirits, Inc.*
219 F. Supp. 2d 942 (N.D. Ill. 2002) ........................................................................ 25

*Anderson v. Ayling*
297 F. Supp. 2d 805 n.5 (E.D. Pa. 2003) .................................................................. 18

*Anza v. Ideal Steel Supply Corp.*
126 S. Ct. 1991 (2006) ............................................................................................. 20

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.*
2007 U.S. App. LEXIS 16382 (2d Cir. July 11, 2007) ............................................... 3

*Bachman v. Bear, Stearns & Co.*
178 F.3d 930 (7th Cir. 1999) ..................................................................................... 7

*Baker v. IBP, Inc.*
357 F.3d 685 (7th Cir. 2004) .................................................................................. 7, 9

*Bank of China v. NBM LLC*
359 F.3d 171 (2d Cir. 2004).................................................................................. 18, 19

*Beck v. Prupis*
529 U.S. 494 (2000)................................................................................................ 4, 18

*Bell Atlantic Corp. v. Twombly*
127 S. Ct. 1955 (2007)............................................................... 3, 5, 6, 8, 17, 23, 24

*Brdecka v. Gleaner Life Ins. Soc'y*
No. 02-3076, 2005 U.S. Dist. LEXIS 10818 (N.D. Ill. June 6, 2005) ........................ 23

*Cleveland v. United States*
531 U.S. 12 (2000)............................................................................................ 11, 15, 16

*Cody v. Harris*
409 F.3d 853 (7th Cir. 2005) ................................................................................... 23

*Cook v. Winfrey*
141 F.3d 322 (7th Cir. 1998) ................................................................................... 24

*Corley v. Rosewood Care Center, Inc.*
388 F.3d 990 (7th Cir. 2004) ......................................................................... 13, 14, 16

*Davis v. G.N. Mortg. Corp.*
396 F.3d 869 (7th Cir. 2005) ......................................................................... 4, 21, 22

*Evercrete Corp. v. H-Cap Ltd.*
429 F. Supp. 2d 612 (S.D.N.Y. 2006)....................................................................... 12

*Gamboa v. Velez*
457 F.3d 703 (7th Cir. 2006) .................................................................................. 1, 4

*Goren v. New Vision Int'l, Inc.*
156 F.3d 721 (7th Cir. 1998) ........................................................................................ 4, 10, 16

*Greenleaf Nursery v. E.I. DuPont DeNemours*
341 F.3d 1292 (11th Cir. 2003) ............................................................................................ 18

*International Mktg., Ltd. v. Archer-Daniels-Midland Co.*
192 F.3d 724 (7th Cir. 1999) ................................................................................................ 23

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*
61 F.3d 1250 (7th Cir. 1995) ...................................................................................... 14, 19, 20

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*
46 F.3d 258 (3d Cir. 1995)................................................................................................... 16

*James Cape & Sons Co. v. PCC Construction Co.*
453 F.3d 396 (7th Cir. 2006) ................................................................................................ 21

*Jennings v. Auto Meter Products, Inc.*
2007 U.S. App. LEXIS 17618 (7th Cir. July 25, 2007)............................................................ 1, 3

*Jennings v. Emry*
910 F.2d 1434 (7th Cir. 1990) ......................................................................................... 5, 6, 7

*Jepson, Inc. v. Makita Corp.*
34 F.3d 1321 (7th Cir. 1994) ................................................................................................ 10

*Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*
98 F. Supp. 2d 480 (S.D.N.Y. 2000).................................................................................... 12

*Lachmund v. ADM Investor Servs.*
191 F.3d 777 (7th Cir. 1999) ................................................................................................ 10

*Lum v. Bank of America*
361 F.3d 217 (3d Cir. 2004)................................................................................................. 16

*McNally v. United States*
483 U.S. 350 (1987)............................................................................................................ 15

*Midwest Grinding Co. v. Spitz*
976 F.2d 1016 (7th Cir. 1992) .............................................................................................. 1, 3

*Neder v. United States*
527 U.S. 1 (1999)........................................................................................................... 13, 14

*In re Ocwen Loan Servicing*
2007 U.S. App. LEXIS 14810 (7th Cir. June 22, 2007) ............................................................. 3

*Papasan v. Allain*
478 U.S. 265 (1986)............................................................................................................. 3

*Pasquantino v. United States*
544 U.S. 349 (2005).................................................................................................... 11, 15

*Phoenix Bond & Indemnity Co. v. Bridge*
477 F.3d 928 (7th Cir. 2007) .......................................................................................... 18, 20

*Promatek Indus. v. Equitrac Corp.*
300 F.3d 808 (7th Cir. 2002) ................................................................ 14

*R.E. Davis Chem. Corp. v. NALCO Chem. Co.*
757 F. Supp. 1499 (N. D. Ill. 1990) ...................................................... 10

*Republic Tobacco L.P. v. N. Atl. Trading Co.*
No. 06-2738, 2007 U.S. Dist. LEXIS 38079 (N.D. Ill. 2007) .................... 23

*Reves v. Ernst & Young*
507 U.S. 170 (1993) ............................................................................... 8

*Richmond v. Nationwide Cassel, L.P.*
52 F.3d 640 (7th Cir. 1995) .................................................................... 5

*Ryan v. Wersi Elec. GmbH*
59 F.3d 52 (7th Cir. 1995) .................................................................... 22

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*
No. 05-3004, 2006 U.S. Dist. LEXIS 18630 (N.D. Ill. Apr. 12, 2006) ............... 21, 22

*Segreti v. Lome*
747 F. Supp. 484 (N.D. Ill. 1990) ....................................................... 5, 6

*Shepherd v. United States Olympic Comm.*
464 F. Supp. 2d 1072 (D. Colo. 2006) .................................................. 25

*Slaney v. The Int'l Amateur Athletic Federation*
244 F.3d 580 (7th Cir. 2001) ......................................................... 3, 4, 8, 9, 10

*Smith v. Jackson*
84 F.3d 1213 (9th Cir. 1996) ............................................................... 11

*Stachon v. United Consumers Club, Inc.*
229 F.3d 673 (7th Cir. 2000) ......................................................... 4, 5, 6, 7

*Swift v. First USA Bank*
No. 98-8238, 1999 U.S. Dist. LEXIS 16192 (N.D. Ill. Sept. 30, 1999) ...................... 22

*United States Media Corp. v. Edde Entertainment, Inc.*
1996 U.S. Dist. LEXIS 13389 (S.D.N.Y. 1996) ........................................ 12

*United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*
470 F. Supp. 2d 823 (N.D. Ill. 2007) ............................................... 4, 21, 22

*United States v. Sloan*
2007 U.S. App. LEXIS 16176 (7th Cir. July 9, 2007) .......................... 11, 18

*Voelker v. Porsche Cars N. Am., Inc.*
353 F.3d 516 (7th Cir. 2003) ............................................................... 23

*Williams v. Aztar Indiana Gaming Corp.*
351 F.3d 294 (7th Cir. 2003) ......................................................... 13, 14

*Zurich Capital Markets, Inc. v. Coglianese*
No. 03-C-7960, 2005 U.S. Dist. LEXIS 16702 (N.D. Ill. Aug. 12, 2005) .................... 24

## STATE CASES

*River Park, Inc. v. City of Highland Park*
667 N.E.2d 499 (Ill. App. Ct. 1996) ............................................................................... 23

## FEDERAL STATUTES

18 U.S.C.  § 1346............................................................................................................ 15

18 U.S.C. § 1961(1) ................................................................................................... 11, 13

18 U.S.C. § 1962(c) .............................................................................. 4, 8, 9, 16, 17, 18

18 U.S.C. § 1962(d) ..................................................................................................... 4, 16, 17

18 U.S.C. § 1964(c) ........................................................................................................ 4, 17

## STATE STATUTES

815 ILCS 505/2............................................................................................................... 21

815 ILCS 510/2............................................................................................................... 21

# I.    INTRODUCTION

As the Seventh Circuit Court of Appeals has frequently observed, civil plaintiffs persist in misusing RICO by attempting to squeeze various types of business disputes into civil RICO actions. *See, e.g.*, *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (noting the "widespread abuse of civil RICO," in which "civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"); *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (describing the "misuse of RICO in the business fraud context"); *see also Jennings v. Auto Meter Products, Inc.*, 2007 U.S. App. LEXIS 17618 at *12 (7th Cir. July 25, 2007) (noting that "the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions," and affirming dismissal of RICO claims alleging that defendant fraudulently obstructed plaintiff's efforts to obtain a patent).

This case represents yet another example of the abuse of civil RICO.  Though the bloated Complaint is replete with sprawling, unparticularized allegations of world-wide conspiracies, the essence of the Complaint is that the defendants have allegedly engaged in a form of "cybersquatting" – namely, using internet domain names similar to domain names owned by the plaintiff and other putative class members as a means of attracting internet traffic and generating advertising revenue.  Based on this specific alleged misconduct, which Plaintiff refers to as an "illegal infringement scheme," Plaintiff has asserted a panoply of federal and state claims.

Apparently not content with the remedies available for cybersquatting and trademark-related causes of action, and presumably lured by the treble damages and fee shifting provisions of RICO, Plaintiff has conjured up a massive RICO "enterprise," supposedly involving "millions of individuals and entities."  Complaint ¶¶ 4, 429.  The result of Plaintiff's wasteful over-reaching is an unwieldy, 121 page, 638 paragraph complaint.

For the reasons set forth below, Plaintiff does not, and cannot, allege the essential elements of its purported RICO claims.  Those claims – representing classic civil RICO abuse – should be dismissed with prejudice.  Plaintiff's other non-trademark related claims – the Illinois Consumer Fraud Act claim in Count VII, the declaratory judgment claim in Count VIII, the tortious interference claims in Count XII, and the unjust enrichment claim in Count XII – should also be dismissed with prejudice.  Stripping away these inadequately pleaded claims will focus this litigation on the cybersquatting and trademark allegations on which the Complaint is based.

## II.    PLAINTIFF'S ALLEGATIONS

As noted above, Plaintiff alleges that the defendants have engaged in a form of "cybersquatting," using what Plaintiff refers to as "Deceptive Domains."  For example, Plaintiff alleges that it is in the business of manufacturing and selling golf clubs and related products and services under the trademark "VULCAN" and trade name "Vulcan Golf," and that it owns and operates the internet domain name "www.VulcanGolf.com."  Complaint ¶¶ 17-22.  Plaintiff contends (incorrectly) that Dotster owns or controls the domain names "wwwvulcangolf.com" and "volcangolf.com," and receives advertising revenue when an internet user mistakenly types either of those domain names when attempting to find information regarding Plaintiff's products or services.  *Id.* at ¶¶ 354-374.

Plaintiff alleges that the defendants engage in similar misconduct in connection with other "Deceptive Domains," to attract internet traffic intended to reach web sites owned by other members of the putative class.  *See, e.g., id.* at ¶¶ 56.i., 149, 195, 420.  Plaintiff does not (and could not) allege that the defendants try to pass off their own goods and services as being products manufactured or sold by Plaintiff (or of any other putative class member).  And Plaintiff does not (and could not) contend that any internet user is duped into believing that the web page to which they are directed is, in fact, owned and operated by Plaintiff or other putative class members.  Rather, plaintiff contends that the defendants – which include Google and several entities that compete with each other in the internet advertising business (the so-called "Parking Company Defendants," of which Dotster is one) – earn advertising revenue when internet users "click" on advertisements that Google allegedly places on web pages Google generates on the "Deceptive Domains."  *See, e.g., id.* at ¶¶ 1-7, 56.i., 149, 206-09.

Plaintiff alleges that the defendants engage in this alleged misconduct through an "enterprise" supposedly consisting of "millions of individuals and entities" located around the world.  Complaint, at ¶¶ 4, 429.

## ARGUMENT

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Although a Court, in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), must accept as true properly pleaded factual allegations in a complaint, a plaintiff cannot survive a motion to dismiss simply by making conclusory assertions that track the elements of a cause of

action. *See, e.g., Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.")

Indeed, in its recent decision in *Twombly*, the Supreme Court expressly rejected the oft-quoted proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69 (holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," and that the phrase "has earned its retirement"). Moreover, the Court clarified that the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level," *id.* at 1965, and that the complaint must set forth "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.[1]

**B.     Rule 9(b)**

Where, as here, a RICO claim is based upon allegations of fraud, such allegations must be pleaded with the particularity required by Fed. R. Civ. P. 9(b). *See, e.g., Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). To meet that standard, "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney v. The Int'l Amateur Athletic Federation*, 244 F.3d 580, 599 (7th Cir. 2001); *see also Midwest Grinding*, 976 F.2d at 1020 ("[T]he Complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged

---

[1]     Although *Twombly* was an antitrust case, the Seventh Circuit has subsequently confirmed that the *Twombly* standard applies to other types of claims, including RICO claims. *See Jennings v. Auto Meters Prods., Inc.*, 2007 U.S. App. LEXIS 17618 at *11, *15 (7th Cir. July 25, 2007) (applying *Twombly* in affirming the dismissal of RICO claims); *In re Ocwen Loan Servicing*, 2007 U.S. App. LEXIS 14810, at *25-*26 (7th Cir. June 22, 2007) (Posner, J.) (instructing district court to consider, on remand, whether any portions of complaint alleging a variety of federal and state claims should be dismissed under the recently announced *Twombly* standard); *see also ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 2007 U.S. App. LEXIS 16382, at *17 & n.2 (2d Cir. July 11, 2007) ("We have declined to read *Twombly*'s flexible 'plausibility standard' as relating only to antitrust cases." (citation omitted)).

communications perpetrating the fraud." (citations and internal quotation marks omitted)). In addition, in cases involving more than one defendant, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted).

Rule 9(b) also applies to Plaintiff's state law claims based on allegations of fraud. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007).

## IV.    PLAINTIFF'S RICO CLAIMS IN COUNTS I AND II SHOULD BE DISMISSED

To state a claim against Dotster under 18 U.S.C. § 1962(c), as alleged in Count I of the Complaint, plaintiff must allege that Dotster (1) conducted or participated in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See, e.g. Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2001); *Slaney*, 244 F.3d at 597. To state a claim under 18 U.S.C. § 1962(d), as alleged in Count II of the Complaint, Plaintiff must allege that Dotster conspired to violate 18 U.S.C. § 1962(c).

In addition to alleging all of the essential elements of a "substantive" RICO violation (*i.e.*, § 1962(c) or (d)), in order to bring a civil claim for a violation of RICO, Plaintiff must also allege that it suffered an injury to its business or property "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c). To do so, it is insufficient for Plaintiff to allege that it was injured by some act "in furtherance of" a RICO conspiracy. Rather, Plaintiff must allege an injury proximately caused by the predicate criminal acts that form the "pattern of racketeering activity" under § 1962(c). *See, e.g.*, *Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (holding that a person injured by an overt act done in furtherance of a RICO conspiracy, but which does not independently qualify as a predicate act of racketeering, does not have a cause of action under § 1964(c)).

As discussed below, Plaintiff has failed to adequately allege *any* of these essential elements of its claims.

### A.    Plaintiff has Failed to Adequately Allege a RICO "Enterprise"

#### 1.    Plaintiff has Failed to Allege the Requisite "Structure"

"A RICO enterprise must have an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decisionmaking." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000)

(citations and internal quotation marks omitted).  It must be "more than a group of people who get together to commit a pattern of racketeering activity," but rather "an organization with a structure and goals separate from the predicate acts themselves."  *Id.* (citations and internal quotation marks omitted).  "The hallmark of an enterprise is a structure."  *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citations and internal quotation marks omitted).

The alleged enterprise in this case is absurdly large and amorphous, and the Complaint is completely devoid of allegations regarding its structure for decisionmaking.[2]  According to the Complaint, the expansive RICO "enterprise" consists of the following individuals and entities somehow alleged to be "associated in fact":  "(1) Defendant Google; (2) the 'Parking Company Defendants' [*i.e.*, defendants Sedo, Oversee, and Dotster]; (3) all AdWords Participants/Advertisers; (4) all AdSense Participants/Publishers; (5) all other individuals and entities participating in Defendant Google's AdSense and Adwords Networks and/or the Google Advertising Network; (6) Defendant Google Search Partners; and (7) other unnamed Co-conspirator Defendants that agreed to and engaged in the unlawful actions described herein." Complaint ¶ 429.  According to the Complaint, Google's networks include "millions of individuals and entities located throughout the world involved in Internet advertising and marketing."  Complaint ¶ 4.  All of those "millions of individuals and entities" are alleged to be members of the RICO "enterprise."  Complaint ¶ 429.

This ridiculously unquantifiable and open-ended description of the purported members of an enterprise is inadequate as a matter of law.  *See, e.g.*, *Richmond*, 52 F.3d at 645 ("Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."); *see also Stachon*, 229 F.3d at 676 (finding insufficient, as a matter of law, "Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure").

---

[2] Even before the Supreme Court's decision in *Twombly*, the Seventh Circuit required RICO complaints to include allegations setting forth the structure of the alleged enterprise.  *See, e.g., Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995); *Jennings v. Emry*, 910 F.2d 1434, 1439-41 (7th Cir. 1990); *see also Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990) (holding that the complaint must adequately identify the enterprise, "[a]nd, such identification must necessarily include details about the structure of the enterprise" (citing *Jennings*, 910 F.2d at 1439-41)).

The Complaint does not even hint at the structure for decisionmaking employed by this unwieldy group of millions of members located throughout the world – indeed, only a few of these millions of members are identified by name in the Complaint.  While the Complaint states, in wholly conclusory fashion, that the enterprise has an "ascertainable structure," the only allegations touching on this are the conclusory assertions that Defendant Google "is associated with and controls the Enterprise" and that the other Defendants "conducted and participated" in the affairs of the enterprise.  Complaint ¶ 444.  Boilerplate conclusions of law like these are meaningless.  There are no allegations describing the organizational decisionmaking structure of the enterprise, the roles of the various defendants in that unidentified structure, or the roles of the millions of non-defendants in that unidentified structure.  Indeed, there are no allegations regarding when the enterprise was formed, how it was formed, or who was involved in its formation.  *Cf. Twombly*, 127 S. Ct. at 1970 n.10 ("Apart from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . . the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies.").

Rather, the Complaint merely purports to identify the "structure" of the Enterprise by virtue of the allegedly wrongful conduct of a few of its millions of members – *i.e.*, the defendants, though the complaint does not even distinguish among the defendants in this regard.  Complaint ¶ 444.  Such allegations are insufficient as a matter of law, because an enterprise must be "an organization with a structure and goals *separate from* the predicate acts themselves." *Stachon*, 229 F.3d at 675 (emphasis added).  As the Seventh Circuit explained in *Jennings*: "An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1440; *see also Stachon*, 229 F.3d at 676 ("This court has repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does."); *Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990) ("The closest plaintiffs come to breathing life into the alleged enterprise is their assertion that the enterprise can be identified by the conduct and activities of the defendants.  Unfortunately for plaintiffs, the identification of an enterprise by reference to the activities and conduct of defendants is not sufficient to state a claim.").

Nor does Plaintiff fare any better by asserting that the alleged misconduct was carried out pursuant to an alleged conspiracy involving multiple parties, because a conspiracy, even if

adequately alleged (which it is not in this case), is not a RICO enterprise.  *Stachon*, 229 F.3d at 676 ("To withstand Appellees' motion to dismiss, however, Appellants must present something more than [allegations describing the alleged pattern of racketeering activity] and assertions of conspiracy; otherwise, 'every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation.'  From *Bachman*, we know that is not the law." (citing *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999)).  Rather, "while the hallmark of conspiracy is agreement, the central element of an enterprise is structure."  *Jennings*, 910 F.2d at 1441 (citation omitted).

Plaintiff's RICO claims must be dismissed because the Complaint completely fails to identify this "central element" of the purported RICO enterprise.  *See, e.g.*, *id.* (affirming dismissal of RICO claim because "[t]he complaint may allege agreement; structure, however, it does not").

## 2.     The Members of the Alleged Enterprise Do Not Share a Common Purpose

The alleged RICO enterprise also fails because its alleged members do not share a common purpose, an "essential ingredient" of a RICO enterprise.  *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004); *see also Stachon*, 229 F.3d at 675 ("A RICO enterprise must have an ongoing structure of persons associated through time, *joined in purpose* . . . ." (emphasis added)).  In *Baker*, for example, the plaintiffs alleged that IBP, their former employer, violated RICO through the hiring of illegal immigrants to keep wages depressed.  The alleged RICO enterprise consisted of IBP, various immigrant welfare organizations that allegedly referred illegal immigrants to IBP, and "recruiters" that allegedly smuggled illegal immigrants into the country for IBP to hire.  *Baker*, 357 F.3d at 687, 691.  The court held that the members of the alleged enterprise lacked the requisite common purpose:  "IBP wants to pay lower wages; the recruiters want to be paid more for services rendered (though IBP would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group.  These are divergent goals."  *Id.* at 691.

While Plaintiff alleges that the members of the purported enterprise "share the common purpose of maximizing their profits and market share," Complaint ¶ 441, these are goals held by virtually all commercial entities in the United States.  Moreover, the alleged members of the enterprise plainly have *divergent* purposes.  For example, as Plaintiff concedes in the Complaint, the so-called "Parking Company Defendants" are *competitors*, each of whom would undoubtedly

like to maximize its own market share *at the expense of* the others. *See, e.g.*, Complaint ¶ 140; *see also id.* ¶¶ 169, 171, 178, 180, 181, 188, 190, 191,198 (alleging that defendants Ireit, Oversee, and Dotster are each owners of a large number of domain names, each *separately* contract with Google, and each share revenues from those contracts *only* with Google). And the members of the sprawling enterprise include both those who *pay* advertising and marketing fees in connection with the alleged Google network (who obviously have the goal of minimizing the fees they are required to pay) and those who *receive* advertising and marketing fees in connection with that network (who obviously have the goal of maximizing the fees they receive). *See id.* ¶ 429 (including in the alleged Enterprise, *inter alia*, anyone who participates in any capacity whatsoever in Google's advertising programs).

As these goals are far more divergent than those of the alleged members of the purported RICO enterprise the court rejected in *Baker*, plaintiff's RICO claims must be dismissed for this independent reason.

### B.  The Complaint Fails to Adequately Allege that Dotster Participated in the Operation or Management of the Alleged Enterprise

Section 1962(c) makes it unlawful for a person to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" through a pattern of racketeering activity. 18 U.S.C. § 1962(c). In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that the word "conduct," when used as both a verb and a noun in that phrase, "requires an element of direction." *Id.* at 178. As such, a plaintiff does not adequately allege that a defendant "participate[d], directly or indirectly, in the conduct" of the enterprise's affairs merely by asserting that the defendant "participated in the affairs" of the enterprise. *Id.* at 179. Rather, it is necessary to allege that the defendant had some part in *directing* the affairs of the enterprise. *Id.* Liability is limited to persons who "participated in the operation or management of the enterprise itself, and . . . asserted some control over the enterprise." *Slaney  v. International Amateur Athletic Federation*, 244 F.3d 580, 598 (7th Cir. 2001). Although a defendant need not have "absolute domination over the enterprise . . . , RICO does require that the person have had some control over the enterprise itself." *Id.*

Here, Plaintiff merely alleges the boilerplate buzzwords that "the Parking Company Defendants knowingly and willfully conducted or participated, directly and/or indirectly, in the conduct of the affairs of the Enterprise." Complaint ¶ 439. But there are no factual allegations that support that legal conclusion. *Cf. Twombly*, 127 S. Ct. at 1964-65 (pleading rules require

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Indeed, the only allegations even suggesting any exercise of control, over anything or anyone, are the boilerplate allegations that Defendant Google controls the enterprise, Complaint at ¶ 444, and controls various other aspects of its advertising programs, *see id.*, at ¶¶ 127-135.  While the Complaint alleges certain conduct by Dotster and the other "Parking Company Defendants," it merely purports to describe conduct by which such companies allegedly conduct *their own* activities; it does not describe conduct by which such companies participate in the "operation or management" of the enterprise itself, and it does not allege that such companies exert any degree of control over the mammoth, worldwide RICO enterprise. Indeed, the Complaint is devoid of any allegation that Dotster is in any way involved in directing the affairs of *any alleged member* of the enterprise (which would still be insufficient), much less directing the affairs of the absurdly large enterprise itself.

Absent such allegations, the RICO claims fail as a matter of law.  In *Slaney*, for example, the alleged RICO enterprise (referred to as "the Olympic Movement") consisted of the International Olympic Committee, various international federations, national olympic committees, organizing committees and others, and the plaintiff alleged that the drug testing programs conducted by the enterprise were a fraud.  *See Slaney*, 244 F.3d at 596-97.  The Seventh Circuit affirmed the dismissal of the RICO claims against the United States Olympic Committee (USOC), a purported member of the alleged RICO enterprise, because, *inter alia*, the Complaint failed to adequately allege that USOC exerted any control over the alleged enterprise. *Id.* at 598.  It was not enough, the Court held, for the plaintiff to allege that the USOC had been delegated authority by the enterprise to conduct the allegedly fraudulent drug testing program in the United States, because "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to submit an individual to liability under § 1962(c)."  *Id.* (citation omitted).  Rejecting the plaintiff's contention that control over the enterprise's drug testing program in the United States was sufficient, the court stated:  "We cannot draw the conclusion that USOC's control over one aspect of the Olympic Movement's activities in this country translates into the USOC having had control over the Movement as an enterprise.  Simple exertion of control over one aspect of an enterprise's activities does not evince control over the enterprise itself."  *Id.*; *see also Baker v. IBP, Inc.*, 357 F.3d 685, 691-92 (7th Cir. 2004) ("The nub of the complaint is that IBP operates *itself* unlawfully; . . . the

complaint does not allege . . . that IBP has infiltrated, taken over, manipulated, disrupted, or suborned a distinct entity or even a distinct association in fact.").

Because Plaintiff has failed to adequately plead (and could not plead in good faith) this essential element of its RICO claims, those claims must be dismissed for this independent reason alone.

**C.     The Complaint Fails to Plead the Alleged Predicate Acts of Fraud with the Requisite Particularity**

Plaintiff's RICO claims must also be dismissed because the Complaint fails to plead the alleged predicate acts of mail and wire fraud with the particularity required by Fed. R. Civ. P. 9(b). To meet that standard, "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney v. The Int'l Amateur Athletic Federation*, 244 F.3d 580, 599 (7th Cir. 2001); *see also Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 784 (7th Cir. 1999) ("The complaint must be specific with respect to the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those communications."). In addition, in cases involving more than one defendant, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.").

The Complaint fails to meet any of these requirements. Indeed, it is not even clear what representations, by anyone, at any time, Plaintiff believes to be false. For example, the Complaint alleges, in wholly conclusory fashion, that "Defendants" sent, *inter alia*, "contracts containing false and fraudulent misrepresentations" and "invoices that contained false and fraudulent misrepresentations." Complaint ¶ 450 a., b. What were the misrepresentations? Who made the misrepresentations? To whom were they made? When were they made? In another example, Plaintiff alleges that "Defendants" have provided "material and misleading false contact information for some of the Deceptive Domains." Complaint ¶ 418. Which Defendant(s) did this? When did they do this? What was the misleading contact information? Which "Deceptive Domains" does this relate to? To whom were the representations made?

None of these questions are answered in the Complaint. As such, the Complaint's "loose references" to mailings and wires are insufficient as a matter of law. *See, e.g.*, *R.E. Davis Chem. Corp. v. NALCO Chem. Co.*, 757 F. Supp. 1499, 1516 (N. D. Ill. 1990) ("[A] plaintiff who relies upon acts of mail and wire fraud as the basis for a RICO claim must do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud.").

### D.    The Complaint Fails to Plead a "Pattern of Racketeering Activity"

The term "racketeering activity" is statutorily limited to certain specifically enumerated crimes. *See* 18 U.S.C. § 1961(1). Neither cybersquatting nor trademark or tradename infringement are among them, and Plaintiff does not contend otherwise. Rather, the "racketeering activity" on which Plaintiff's RICO claim purports to be based consists solely of alleged acts of mail and wire fraud. Complaint ¶¶ 446-457. But in addition to the allegations of fraud being insufficiently particularized, the allegations, from a substantive standpoint, simply do not constitute mail or wire fraud.

The essential elements of mail and wire fraud include: (1) a scheme to defraud; (2) intent to defraud; and (3) use of the mails or wires in furtherance of the scheme. *See, e.g.*, *United States v. Sloan*, 2007 U.S. App. LEXIS 16176, at *12 (7th Cir. July 9, 2007). A scheme to defraud requires "the making of a false or material misrepresentation, or the concealment of a material fact." *Id.* In addition, to fall within the scope of the mail and wire fraud statutes, the object of the fraud must be money or property in the hands of the alleged victim. *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (wire fraud); *Cleveland v. United States*, 531 U.S. 12, 26 (2000) (mail fraud). Plaintiff's allegations do not, and could not, meet these requirements.

### 1.    Infringement Allegations Do Not Constitute a "Scheme to Defraud"

Courts routinely reject plaintiffs' efforts to manufacture RICO claims by "reformulating" infringement claims into purported claims of mail or wire fraud. In *Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996), the plaintiffs accused the defendant of infringing their copyrights on six songs, and also asserted a RICO claim, contending that the defendants' sales and marketing of the infringing songs by mail and wire constituted RICO predicate acts of mail and wire fraud.

*Id.* at 1216. In affirming the dismissal of the RICO claims, the Ninth Circuit held that the district court correctly concluded that the RICO claims were merely "reformulated copyright infringement claims." *Id.* at 1217. The court noted that the RICO claims were based on the same misconduct alleged in the copyright infringement claims, and that the purported fraud claims depended entirely on there being infringement of the plaintiff's copyrights. *Id.* "Because [plaintiffs'] RICO counts do no more than allege copyright infringement under the label of mail and wire fraud, and copyright infringement is not a predicate act under RICO, the district court properly concluded that [plaintiffs] failed to state a claim."

Similarly, in *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006), the court rejected the plaintiffs' attempt to state a RICO claim based on the alleged marketing and sales of products using a trademark allegedly belonging to the plaintiffs. *Id.* at 630-631. The court noted that "the alleged scheme boils down to a claim of willful trademark infringement – not racketeering." *Id.* at 630. The court observed that "[a]ll businesses use interstate mail or wires," and that "Congress did not intend that every trademark dispute would be brought under RICO." *Id.* at 631. As such, the court held that "Plaintiffs may not reformulate garden variety trademark infringement claims into mail or wire fraud in order to state a violation of RICO." *Id.*; *see also Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 490-92 (S.D.N.Y. 2000) (rejecting RICO claim based on allegations that were, in essence, "nothing more than claims of knowing and deliberate patent infringement"); *United States Media Corp. v. Edde Entertainment, Inc.*, 1996 U.S. Dist. LEXIS 13389, at *37-39 (S.D.N.Y. 1996) (rejecting RICO claim based on copyright infringement allegedly conducted through use of the mails and wires; concluding that a copyright violation "may not be 'bootstrapped' into a violation of the mail and wire fraud statutes").

Although sprinkled with references to "deception" and "misrepresentations," the Complaint is a transparent attempt by Plaintiff to "reformulate" claims of infringement and cybersquatting into mail and wire fraud in the hope of availing itself of RICO's treble damages and fee shifting provisions. Indeed, Plaintiff explicitly and repeatedly refers to the alleged misconduct at issue in this action – the same alleged misconduct that forms the basis for all the counts in the Complaint – as the "Illegal Infringement Scheme." *See, e.g.*, Complaint ¶¶ 1-9 (summarizing the "Nature of the Action" as the execution of an "Illegal Infringement Scheme"), ¶¶ 206-406 (lengthy description of alleged misconduct in section entitled "the Illegal Infringement Scheme"); ¶¶ 448-449 (describing alleged RICO predicate acts as being mailings

and wires to execute the "Illegal Infringement Scheme"). Tellingly, Plaintiff even concludes the section of the Complaint entitled "RICO Allegations" by stating that the "trademark infringement and unfair competition laws are designed and intended to protect the public from" the alleged conduct on which the RICO claims are based. Complaint ¶ 480; *see also id.* at ¶ 481 ("Defendants' bad actions, constituting violations of those laws, directly cause injury to the public and circumvent the very important trademark safeguards that the laws are designed to protect and promote.").

But Congress chose *not* to include trademark infringement or unfair competition among the acts constituting "racketeering activity" for purposes of RICO. 18 U.S.C. § 1961(1). Consistent with the Seventh Circuit's repeated rejection of the widespread abuse of civil RICO, this Court should reject Plaintiff's attempt to "reformulate" its cybersquatting and infringement claims into RICO claims.

2.     <u>The Complaint Fails to Plead a "Material" Misrepresentation</u>

Plaintiff's mail and wire fraud allegations also fail because the Complaint does not, and cannot, allege a misrepresentation that is "material," an essential element of mail and wire fraud. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 25 (1999) ("[W]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."). A misrepresentation is "material" only if it "has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Id.* at 16. If a misstatement is one on which "no person of ordinary prudence and comprehension would rely," it is not material. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003); *see also Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1009 (7th Cir. 2004) (quoting prior caselaw for the proposition that "fraud occurs only when a person of ordinary prudence and comprehension would rely on misrepresentations").

Because of the Plaintiff's failure to plead its fraud claims with the requisite particularity, as discussed *supra*, it is difficult to ascertain just what alleged misrepresentation(s) form the purported basis for Plaintiff's RICO claims. But as best as can be determined, the claims are based on the allegedly deceptive nature of the domain names themselves. But even assuming *arguendo* that the use of such domain names carries with it some form of implicit misrepresentation, in the context of the alleged misconduct, the misrepresentation could not be material.

-13-

The essence of the alleged misconduct is that the defendants generate advertising revenue when an internet user makes a typing or spelling error, which results in the user being directed to a web page owned or controlled by the defendants rather than the web page the user allegedly intended to reach – *i.e.*, a web page owned or controlled by Plaintiff or other putative class members. But Plaintiff does not (and could not) allege that the defendants try to deceive the user into believing that the web page to which they are directed is, in fact, owned and operated by Plaintiff or other putative class members. For example, Plaintiff does not, and could not, contend that Defendants try to pass off their own goods and services as being products manufactured or sold by Plaintiff (or of any other putative class member).

Indeed, quite to the contrary, the Complaint alleges that when a user types an incorrect spelling of Plaintiff's web address and gets a site controlled by Dotster, the site includes advertisements for Plaintiff's *direct competitors*. Complaint ¶¶ 421-422, 470. The Complaint does not, and could not, allege that any internet user of ordinary prudence and comprehension would believe that Plaintiff has begun advertising for its direct competitors. As such, because the Complaint does not allege a misrepresentation on which a "person of ordinary prudence and comprehension would rely," it does not allege a misrepresentation that is "material," and it therefore does not allege a predicate act of mail or wire fraud. *See, e.g.*, *Williams*, 351 F.3d at 299-300 (rejecting as "frivolous" a RICO claim based on alleged misrepresentations on which no person of ordinary prudence would rely).[3]

---

[3] Plaintiff's mail and wire fraud allegations are not saved by the trademark-related principle of "initial interest confusion," which "occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). While initial interest confusion is actionable under the Lanham Act, *see id.*, this only serves to highlight the different interests served by trademark law and fraud. Initial interest confusion is actionable under the Lanham Act because, though the consumer is not ultimately deceived, the interest protected is the "misappropriation of goodwill" that has already occurred when the consumer is "lured to" the defendant's product. *See id.* at 312-13. But the mail and wire fraud statutes do not aim to protect misappropriation of goodwill; they aim to protect decision-makers from relying on material misrepresentations. *See, e.g.*, *Neder*, 527 U.S. at 16; *Corley*, 388 F.3d at 1008-09; *Williams*, 351 F.3d at 299. As the Seventh Circuit explained in *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995):

> "[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only the customers are the beneficiaries of the statutory protection. . . The essential point . . . is that the victims of the fraud are the object of solicitude; § 1341 does not establish a regimen of truth-telling without regard to details like who is losing out and why. . . . Section 1341 does not protect vendors to persons who may be deceived, and firms suffering derivative injury from business torts therefore must continue to rely
>
> (continued...)

3.      The Object of the Alleged Fraud is Not Money or Property in the Hands of the Alleged Victim

The mail and wire fraud statutes do not address all forms of fraud or deception, nor all forms of fraud or deception that are executed through the use of mail or wires.  Rather, even material misrepresentations will not constitute mail or wire fraud unless the "object of the fraud" is "money or property in the victim's hands."  *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (internal punctuation omitted).[4]  In *Cleveland v. United States*, 531 U.S. 12 (2000), for example, the Supreme Court reversed a conviction because the object of the fraud – video poker licenses fraudulently obtained from the state of Louisiana by making material misrepresentations sent through the mail – did not constitute "property" in the hands of the state.  *Cleveland*, 531 U.S. at 15-16.  The Court clarified that it did not matter if the object of the fraud "may become property in the recipient's hands; for purpose of the mail fraud statute, the thing obtained must be property in the hands of the victim."  *Id.* at 15.

Even if Plaintiff had adequately alleged that Dotster made material misrepresentations, such alleged conduct would not qualify as mail or wire fraud because Plaintiff does not allege that the "object of the fraud" was money or property in the hands of the internet users who are the victims of the alleged fraud.  Rather, as the Complaint repeatedly makes clear, the "object of the fraud" was money the defendants would obtain *from advertisers* participating in a Google advertising program when internet users "click on" advertisements on the "Deceptive Domains." *See, e.g.*, Complaint ¶¶ 7, 56.i, 149, 152.d, 424, 425.  Plaintiff does not, and cannot, allege that the advertisers who allegedly pay the defendants those revenues are victims of the alleged fraud.  And Plaintiff does not, and cannot, allege that the defendants obtain, or intend to obtain, money,

_____

(continued...)

on the common law and the Lanham Act rather than resorting to RICO."  *Id.* at 1258 (citations omitted).

[4] Plaintiff does not contend that the alleged fraud in this case involves the "intangible right to honest services," which Congress made actionable in 1988 after the Supreme Court held that such right was not a "property interest" within the scope of the mail fraud statute.  *See* 18 U.S.C. § 1346; *McNally v. United States*, 483 U.S. 350, 352 (1987) (reversing mail fraud conviction because the citizens and government of Kentucky have no property interest in "the right to have the Commonwealth's affairs conducted honestly").  Indeed, as the Supreme Court subsequently observed, the fact that Congress chose to add *only* the intangible right of honest services to the scope of the statute demonstrates that it did *not* intend to more broadly expand the statute to cover other types of intangible rights.  *Cleveland v. United States*, 531 U.S. 12, at 19-20 (2000).

property, or anything whatsoever from the internet users to whom misrepresentations are allegedly directed.

Indeed, in an effort to conjure up some injury allegedly suffered by the internet users, Plaintiff contends that the alleged misconduct deprives internet users of "an inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association, or sponsorship of goods or services." *Id.* ¶ 479. However valuable that "inherent interest" may be, it is simply not a "property interest" belonging to the internet users. *See, e.g., Cleveland*, 531 U.S. at 20-27 (state government, though undoubtedly having a "substantial economic stake in the video poker industry," has no property interest in licenses it issues).

For all of these reasons, the alleged misconduct of which Plaintiff complains is simply not mail or wire fraud. *Cf. Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1008 (7th Cir. 2004) ("Not all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme to defraud.'"). Plaintiff has therefore failed to allege even a single predicate act (much less the requisite "pattern") of racketeering activity.

### E.     The Complaint Fails to Adequately Allege a Conspiracy to Violate RICO

For any and all of the above reasons that the alleged "substantive" RICO violation asserted in Count I of the Complaint is insufficient, so too is the RICO conspiracy claim in Count II of the Complaint. As a general rule, when the alleged "substantive" RICO violation is inadequately alleged, the RICO conspiracy claim is ordinarily inadequate as well. *See, e.g.*, *Lum v. Bank of America*, 361 F.3d 217, 227 n.5 (3d Cir.) ("Any claim under section § 1962(d) based on conspiracy to violate the other subsections of § 1962 necessarily must fail if the substantive claims are themselves deficient." (citation and internal quotation marks omitted)), *cert. denied*, 543 U.S. 918 (2004); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 262 (3d Cir. 1995) ("Section 1962(d) prohibits conspiring to violate subsection (c). Accordingly, the viability of Jaguar's section (d) claim depends on the legal sufficiency of its § 1962(c) claim." (citation omitted)).

A narrow exception to the rule exists where, for example, a particular defendant is not alleged to *personally* perform enough predicate acts sufficient to constitute a pattern of racketeering activity. *See Goren*, 156 F.3d at 731-32. But there must be "an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Id*. at 732. This exception does not save Plaintiff's conspiracy claim because the

-16-

"endeavor" allegedly agreed to is simply not a violation of RICO, for all of the reasons discussed above.[5]

The RICO conspiracy claim also fails for an additional, independent reason – the alleged "agreement" is itself insufficiently pleaded.  Like the allegations of conspiracy rejected by the Supreme Court in *Twombly*, the Complaint makes clear that its conclusory allegations of conspiracy are not based on allegations of fact, but are rather based on an inference supposedly drawn from the alleged conduct of the purported members of the conspiracy.  For example, the Complaint asserts that "[f]or the fraudulent Illegal Infringement Scheme described above to be successful, each Defendant and other members of the conspiracy had to agree to further the conspiracy."  Complaint ¶ 519.  But, just as in *Twombly*, the Complaint does not include factual allegations sufficient to "raise a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1965.  For example, Plaintiff's massive Complaint does not include a single allegation regarding the time, place, or manner by which an agreement was reached, and does not identify a single officer or employee of any of the Defendants who is alleged to have been involved in any negotiation or consummation of any alleged agreement.  *Cf. Twombly*, 127 S. Ct. at 1970 n.10 ("Apart from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . . the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies.").  Moreover, like *Twombly*, the alleged conspiracy cannot be plausibly inferred from the alleged conduct of its supposed participants.  As previously noted, the Complaint acknowledges that the "Parking Company Defendants" are direct competitors of each other, that they each entered into *separate* contracts with Google, pursuant to which they shared revenue *only* with Google.  *See* Complaint ¶¶ 140, 169, 171, 178, 180, 181, 188, 190, 191,198.  Based on those allegations, and in the absence of any factual allegations concerning the time, place, or manner by which an agreement was reached to conduct the affairs of the purported worldwide enterprise through a pattern of racketeering activity, Plaintiff has not stated a conspiracy claim that is "plausible on its face."  *Twombly*, 127 S. Ct. at 1974.

For any or all of these reasons, Plaintiff's conspiracy claim in Count II of the Complaint must be dismissed.

---

[5] For example, because the alleged "enterprise" is insufficient as a matter of law, an alleged agreement to participate in the conduct of the affairs of that group through predicate acts of mail or wire fraud, even if alleged with the requisite particularity, would not constitute an agreement to participate in an endeavor that constitutes a RICO violation.

**F.      The Complaint Fails to Adequately Allege The Reliance and Proximate Cause Requirements of RICO**

Even if Plaintiff had alleged all of the essential elements of a violation of 18 U.S.C. § 1962(c) or (d), which it has not, the RICO claims should still be dismissed because Plaintiff has not adequately alleged that it suffered an injury to its business or property "by reason of" such RICO violation.  18 U.S.C. § 1964(c).

1.      The Complaint Does Not Allege That Anyone Relied On Any Alleged Misrepresentations

Where, as here, a RICO claim is based on alleged predicate acts of mail or wire fraud, a plaintiff does not suffer an injury "by reason of" the RICO violation unless someone has relied upon the alleged misrepresentations constituting the fraud.  *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 176-78 (2d Cir. 2004) ("We therefore now hold that in order to prevail in a civil RICO action predicated on any type of fraud, including bank fraud, the plaintiff must establish 'reasonable reliance' on the defendant's purported misrepresentations or omissions"); *Greenleaf Nursery v. E.I. DuPont DeNemours*, 341 F.3d 1292, 1306 (11th Cir. 2003) ("[T]o establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for establishing common law fraud."), *cert. denied*, 541 U.S. 1037 (2004); s*ee also Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (holding that a person injured by an overt act done in furtherance of a RICO conspiracy, but which does not independently qualify as a predicate act of racketeering, does not have a cause of action under § 1964(c)); *Anderson v. Ayling*, 297 F. Supp. 2d 805, 809 n.5 (E.D. Pa. 2003) ( "A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." (citation and internal quotation marks omitted)), *aff'd*, 396 F.3d 265 (3d Cir. 2005).

Contrary to some other Circuits, the Seventh Circuit has held that it is not always necessary for the plaintiff to have *itself* received and relied upon the allegedly fraudulent statements.  *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007) (noting a circuit split on this issue).  However, because the essence of fraud is deception, *see, e.g.*, *United States v. Sloan*, 2007 U.S. App. LEXIS 16176, at *12 (7th Cir. July 9, 2007), it follows that if *no one* relies upon the alleged deception, a plaintiff cannot be said to be harmed "by reason of" the alleged fraud.  *See, e.g.*, *Bank of China*, 359 F.3d at 176-78; *Greenleaf Nursery*, 341 F.3d at 1306.

As explained in section IV.D.2 *supra*, Plaintiff does not allege that it, internet users, *or anyone else*, was actually deceived into believing that any "Deceptive Domain" owned or operated by the defendants was actually owned or operated by Plaintiff (or any other putative class member).[6]  As such, even if Plaintiff had adequately alleged that the defendants made a misrepresentation to that effect (and they have not), Plaintiff would still have failed to allege that it suffered an injury "by reason of" the alleged predicate acts of mail and wire fraud.

2.      Plaintiff Cannot Satisfy the Proximate Cause Requirement Because its Injury is, at Best, "Derivative" of Alleged Injury to Others

Plaintiff's RICO claims also fail for a related yet distinct reason – Plaintiff cannot satisfy RICO's proximate cause requirement because its alleged injury is, at best, derivative of alleged injuries to its allegedly prospective customers.  *See, e.g.*, *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995).

In *Israel Travel*, the plaintiff asserted a RICO claim based on allegations that the defendants make fraudulent representations to the plaintiff's prospective customers, which allegedly caused the plaintiff to lose business.  *See id.* at 1253-54, 1257-58.  The plaintiff's claim failed, the court held, because the injury allegedly suffered by the plaintiff (lost sales) was indirect – that is, it was "derivatively" caused by frauds allegedly perpetrated against the plaintiff's prospective customers.  *Id.* at 1258.  As the court explained: "[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only the customers are the beneficiaries of the statutory protection. . . Section 1341 does not protect vendors to persons who may be deceived, and firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO."  *Id.*

The same is true here.  Plaintiff alleges that Dotster and the other defendants perpetrated a fraud on internet users attempting to reach web pages owned and controlled by Plaintiff and other putative class members, and that, as a result, Plaintiff suffered lost business opportunities.

---

[6] Although trademark infringement can involve a mere "likelihood of confusion," trademark infringement does not constitute "racketeering activity" under RICO, and Plaintiff does not contend otherwise.  Rather, Plaintiff's RICO claim is based on alleged predicate acts of mail and wire fraud, and to be injured "by reason of" such acts, it is necessary for someone to have actually relied upon the misrepresentations constituting the alleged fraud.  *See, e.g.*, *Bank of China*, 359 F.3d at 176-78; *see also* footnote 4, *supra*.

*See, e.g.*, Complaint ¶ 453. Plaintiff's alleged injury, however, is derivative of the injury allegedly suffered *directly* by the internet users. *See* Complaint ¶ 481 ("Defendants' bad actions . . . *directly* cause injury to the public" (emphasis added)); *see also* ¶ 420 (alleging that the defendants divert Internet users from the web sites they attempted to reach); ¶ 454 (alleging that the "Illegal Infringement Scheme" depended upon confusion, mistake, and deception caused by the defendants and relied upon by Internet users); ¶ 479 (alleging that the defendants' activities have irreparably harmed the general public which has an "inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association, or sponsorship of goods or services"). That the confusion and deception allegedly suffered by internet users may have indirectly harmed Plaintiff, in the form of lost business opportunities, is irrelevant, because a RICO plaintiff may not recover for alleged injuries that are derivative of injuries to others. *See, e.g., Israel Travel*, 61 F.3d at 1258 ("[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers); *see also Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1998 (2006) (rejecting plaintiff's RICO claim on proximate cause grounds, and stating: "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").[7]

Because Plaintiff has not alleged injuries "directly" caused by the alleged RICO violation, its RICO claims must be dismissed.[8]

---

[7] Plaintiff cannot circumvent this result by alleging that it was the "target" or "principal intended victim" of the allegedly fraudulent activity. In *Anza*, the plaintiffs had alleged that the defendant illegally failed to charge its customers state sales tax, and filed false sales tax returns to conceal the amounts due. *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 254-55, 263-64 (2d Cir. 2004). The Second Circuit held that although it was the state, not the plaintiff, that relied on the false tax returns, proximate cause was satisfied because the plaintiff was the intended target of the fraudulent scheme – *i.e.*, the complaint alleged that the scheme "was implemented for the purpose of diverting customers away from Ideal [the plaintiff]," and that because Ideal was "the principal intended victim of the scheme" proximate cause was satisfied. *Id.* at 263-64. In reversing the Second Circuit, the Supreme Court held that it was irrelevant that the plaintiff may have been the target of the alleged scheme; what mattered was whether the injury allegedly suffered by the plaintiff was direct or derivative, and Ideal's alleged injury was derivative of the alleged injury (*i.e.*, lost tax revenue) suffered by the state. *Anza*, 126 S. Ct. at 1998.

[8] The Seventh Circuit's decision in *Phoenix Bond* is not to the contrary. Although the court in that case held the plaintiff did not need to *personally* receive and rely on allegedly fraudulent statements made by the defendant, a RICO plaintiff could only recover for false statements made to another "if [the plaintiff's] injury is not derivative of someone else's." *Phoenix Bond*, 477 F.2d at 932. That case presented the unusual circumstance that the recipient of the defendant's allegedly fraudulent statement, a county in Illinois that had developed a bidding program for the sale of tax liens, suffered no injury at all

(continued...)

## V.    THE NON-TRADEMARK RELATED CLAIMS IN COUNTS VII, VIII, XI, AND XII OF THE COMPLAINT SHOULD BE DISMISSED

### A.    The Illinois Consumer Fraud Act Claim in Count VII is Not Pleaded With the Particularity Required by Rule 9(b), and Fails to State a Claim

In Count VII of the Complaint, Plaintiff purports to assert claims under the Illinois Consumer Fraud Act ("CFA"), 815 ILCS 505/2, and "the similar or identical state statutes of the various states."[9]  Because such claims are based on allegations of fraud, they are subject to the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007).  As such, Plaintiff was required to plead with specificity "the who, what, when, where, and how" of the alleged fraud.  *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-3004, 2006 U.S. Dist. LEXIS 18630, at *11 (N.D. Ill. Apr. 12, 2006) (citations omitted).  Because Plaintiff incorporates into Count VII all of the allegations that precede it in the Complaint, *see* Complaint ¶¶ 581, 587, these claims suffer from the same lack of specificity described in section IV.C., *supra*.

Moreover, the additional allegations set forth within Count VII also lack the requisite particularity.  For example, Plaintiff alleges that "[b]y means of the actions alleged above, Defendants have advertised to the public that the Defendants' infringing Deceptive Domains and the websites located at the Deceptive Domains are related to, or are an official website of, Lead

_____

(continued...)

(and in fact benefited) from the allegedly fraudulent scheme, and competing bidders such as the plaintiff were the *only* allegedly injured parties.  *Id.* at 931.  Under those unusual circumstances, the plaintiff's alleged injuries were deemed not to be "derivative" of someone else's injuries.  But *Phoenix Bond* did not overturn *Israel Travel*; indeed, the court expressly approved of the statements in *Israel Travel* that "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers" and "firms suffering derivative injury from business torts . . . must continue to rely on the common law rather than resorting to RICO."  *Id.* at 933.  Moreover, in another post-*Anza* Seventh Circuit case involving fraud in relation to a government bidding program, but where, unlike the fraud alleged in *Phoenix Bond*, the government did suffer an injury, the court held that the plaintiff's alleged injuries (lost business) were indirect and therefore not proximately caused by the alleged fraud.  *See James Cape & Sons Co. v. PCC Construction Co.*, 453 F.3d 396, 398-99, 403-404 (7th Cir. 2006).

[9] Count VII also purports to state a claim under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.  Although that claim lacks merit, it is closely related to Plaintiff's trademark-related claims, and is beyond the scope of this motion to dismiss.

Plaintiff and/or the Class." Complaint ¶ 587. Which actions alleged above? Which defendants made these advertisements? When? What did the advertisements say? Did the Defendants advertise that the Deceptive Domains are "related to" Plaintiff's claims "or" that they are "official websites" of Plaintiffs? If the former, in what were the domains advertised as being "related to" Plaintiff's cites (*e.g.*, "related" as a competitor?)? As the Complaint fails to answer these questions (as indeed it cannot because no such "advertising" exists), Plaintiff's CFA claims (and claims under "similar or identical" statutes of other states) must be dismissed. *See, e.g.*, *Scott*, 2006 U.S. Dist. LEXIS 18630, at *12 (dismissing CFA claims for failure to plead when and where plaintiffs were deceived); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007) (dismissing CFA claims for failure to provide specifics of fraud, including use of disjunctive "or" that made scope of allegations unclear); *Swift v. First USA Bank*, No. 98-8238, 1999 U.S. Dist. LEXIS 16192, at *16-18 (N.D. Ill. Sept. 30, 1999) (Kocoras, J.) (granting motion to dismiss CFA claim that lacked specificity).

Finally, the CFA claims fail because Plaintiff has not, and cannot, allege a *material* misrepresentation. The materiality of the alleged misrepresentation is an essential element of a CFA claim. *See, e.g.*, *Ryan v. Wersi Elec. GmbH*, 59 F.3d 52, 53-54 (7th Cir. 1995). In evaluating materiality, an alleged misrepresentation must not be considered in the abstract; rather, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis*, 396 F.3d at 884. Although Plaintiff claims that the defendants "advertise" that the Deceptive Domains are "related to, or are an official website of" Plaintiff, Plaintiff has pleaded itself out of court on this issue. As discussed above, the Complaint alleges that when a user types an incorrect spelling of Plaintiff's web address and gets a site controlled by Dotster, the site includes advertisements for Plaintiff's *direct competitors*. Complaint ¶¶ 421-422, 470. Because no internet user could conceivably believe that Plaintiff would sponsor a web site running advertisements for its direct competitors, even if Plaintiff had adequately identified some alleged misrepresentation (which it has not), it could not, as a matter of law, be "material." *See*, *e.g.*, *Ryan*, 59 F.3d at 54 ("Wersi-Germany's oral statements regarding WEI's profitability cannot be considered material in light of the circumstances surrounding this stock purchase transaction."). The CFA and related claims must therefore be dismissed.

**B.    The Intentional Interference with Current and Prospective Economic Advantage Claims in Count XI Should be Dismissed**

In Count XI of the Complaint, Plaintiff asserts claims for "Intentional Interference with Current and Prospective Economic Advantage. These claims must be dismissed because Plaintiff fails to adequately allege the "current and prospective economic advantage" at issue.

With respect to the "current" economic advantage, Plaintiff is presumably attempting to state a claim for tortious interference with contract. *See, e.g.*, *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999). To state such a claim, a plaintiff must allege: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003) (citation omitted). Plaintiff has not come close to alleging these elements. Plaintiff has not only failed to identify a *specific* contract at issue; it has failed to even allege the existence of *any* valid and enforceable contract, much less that Dotster knew of the contract or induced a breach of the contract. As such, this claim is plainly deficient. *See, e.g.*, *Voelker*, 353 F.3d at 528 (affirming dismissal where complaint failed to allege facts that, if true, would establish the existence of a valid and enforceable contract).

Plaintiff's interference with "prospective" economic advantage fares no better. To state such a claim, a plaintiff must allege: "(1) a reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of this expectation; (3) defendants' purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citation omitted). But the Complaint fails to identify either a specific person, or an "identifiable class" of persons, with whom Plaintiff claims to have had a "reasonable expectation" of entering into a valid business relationship. *See, e.g.*, *River Park, Inc. v. City of Highland Park*, 667 N.E.2d 499, 507 (Ill. App. Ct. 1996) (plaintiff must "allege either an interference with specific third parties or an identifiable class of third persons"). Instead, Plaintiff merely alleges, in conclusory terms, that it has a prospective relationship with "third party Internet users/consumers." Complaint ¶ 628.

Plaintiff's mere allegation that it is possible that it would have done business with "internet users/consumers" – a class of third persons with whom virtually any commercial entity

could claim to have a possibility of a "prospective business relationship" – is the type of conclusory allegation that does not "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965; *see also Brdecka v. Gleaner Life Ins. Soc'y*, No. 02-3076, 2005 U.S. Dist. LEXIS 10818, at *13 (N.D. Ill. June 6, 2005) ("[A] reasonable expectation of a business relationship is more than a 'mere hope' of developing or continuing a relationship." (citation omitted)); *Republic Tobacco L.P. v. N. Atl. Trading Co.*, No. 06-2738, 2007 U.S. Dist. LEXIS 38079, at *43 (N.D. Ill. 2007) (rejecting negotiations with prospective customers as establishing tortious interference claim, because "[t]he hope of receiving an offer is not a reasonable expectancy" (citation omitted)).[10]  As such, this claim should be dismissed.

### C.    The Unjust Enrichment Claim in Count XII Should be Dismissed

In Count XII of the Complaint, Plaintiff purports to state a claim for unjust enrichment. But this claim, which does little more than incorporate by reference the preceding 633 paragraphs of the Complaint, is insufficiently pleaded.

Because this claim is expressly based upon allegations of fraud, *see* Complaint ¶ 637 (alleging that benefits were conferred as a result of "deception, misconduct, and material misrepresentations"), this claim is subject to the heightened pleading requirements of Rule 9(b). *Zurich Capital Markets, Inc. v. Coglianese*, No. 03-C-7960, 2005 U.S. Dist. LEXIS 16702, at *35 n.12 (N.D. Ill. Aug. 12, 2005) ("To the extent ZCM's unjust enrichment claims rely on theories of fraud, its averments of fraud must comply with Rule 9(b)."). As explained in sections IV.C and V.A *supra*, Plaintiff does not come close to adequately identifying "the who, what, when, where, and how" of the alleged fraud. As such, the claim should be dismissed.

---

[10]  Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, (2007), such conclusory allegations may have sufficed. In *Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998), the Seventh Circuit held that the "minimal requirements of federal notice pleading" do not require the plaintiff to identify the third parties with whom it allegedly has a prospective business relationship. *See id.* at 327-28. Dotster submits, however, that Cook is no longer good law after *Twombly*. Indeed, in reversing the district court's dismissal of the plaintiff's tortious interference claim, the court stressed that a claim may only be dismissed if "it is clear that no relief could be granted under any facts that could be proved consistent with the allegations of the complaint," *id.* at 327 (stating that one must bear this standard "firmly in mind"), and that a boilerplate recitation of the elements of a claim is enough, because a plaintiff "might" be able to prove a set of facts "consistent with" those allegations, *id.* at 328. But that is precisely the standard the Supreme Court rejected in *Twombly*. *See Twombly*, 127 S. Ct. at 1968-69 (expressly rejecting the long recited "no set of facts" standard); *see also id.* at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)).

**D.    The Declaratory Judgment Claim in Count VIII Merely Duplicates the Substantive Claims, and Should be Dismissed**

In Count VIII of the Complaint, Plaintiff purports to state a claim for a declaratory judgment, but is in fact merely requesting a form of relief on its other claims.  Count VIII adds no factual allegations, and is premised entirely on the claims for relief asserted in the other Counts in the Complaint.  Complaint ¶ 603.  Because this "claim" merely seeks a form of relief on Plaintiff's other claims, it should be dismissed.  *See, e.g.*, *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (dismissing declaratory judgment action because "[a]ll of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose); *Shepherd v. United States Olympic Comm.*, 464 F. Supp. 2d 1072, 1081 n.8 (D. Colo. 2006) ("Declaratory relief is redundant and therefore unavailable under these circumstances, where it seeks nothing more than a legal determination already before the court on Plaintiff's civil rights claims.")

**VI.    CONCLUSION**

For all of the foregoing reasons, Dotster respectfully requests that the Court grant its motion and dismiss with prejudice Plaintiff's RICO claims in Counts I and II of the Complaint, and its other non-trademark related claims in Counts VII, VIII, XI, and XII of the Complaint.

Respectfully submitted,


   s/ Michael Dockterman
One of the Attorneys for
***Dotster, Inc., aka RevenueDirect.com***

Dated: August 15, 2007

Michael Dockterman (03121675)      Vincent V. Carissimi (pro hac vice app. pending)
Alison C. Conlon (6272083)      Robert L. Hickok (pro hac vice app. pending)
Wildman, Harrold, Allen & Dixon LLP      Joanna J. Cline (pro hac vice app. pending)
225 West Wacker Drive, Suite 2800      Pepper Hamilton LLP
Chicago, Illinois  60606-1229      3000 Two Logan Square
Phone:  (312) 201-2000      Eighteenth and Arch Streets
Fax:     (312) 201-2555      Philadelphia, Pennsylvania  19103-2799

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 15, 2007, a true and correct copy of the foregoing **Defendant Dotster, Inc.'s Notice of Motion, Motion to Dismiss Plaintiff's RICO Claims, and Other Non-Trademark Related Claims, in the Class Action Complaint and Supporting Memorandum of Law** were electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

    /s/ Michael Dockterman

Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois  60606-1229
Phone:  (312) 201-2000
Fax:      (312) 201-2555

Attorney for *Dotster, Inc., aka RevenueDirect.com*

IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, | ) | |
| Individually and On Behalf Of All | ) | |
| Others Similarly Situated, | ) | |
| | ) | |
| Lead Plaintiff, | ) | No. 07 CV 3371 |
| | ) | |
| v. | ) | Judge Kocoras |
| | ) | |
| GOOGLE INC., OVERSEE.NET, | ) | Magistrate Judge Brown |
| SEDO, LLC, DOTSTER, INC., AKA | ) | |
| REVENUEDIRECT.COM | ) | |
| INTERNET REIT, INC. d/b/a IREIT, INC. | ) | |
| and JOHN DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |

## Service List

Robert M. Foote
Stephen William Fung
Foote, Meyers, Mielke & Flowers LLC
28 North First Street, Suite 2
Geneva, IL  60134
(630) 232-6333
Email: rmf@foote-meyers.com
Email: sfung@foote-meyers.com

**For Plaintiff**

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
Stetler & Duffy, Ltd.
11 South LaSalle Street
Suite 1200
Chicago, IL 60603-1203
(312) 338-0200
Email: jduffy@stetlerandduffy.com
Email: cyrluk@stetlerandduffy.com
Email: mmoran@stetlerandduffy.com

**For Google, Inc.**

Kathleen Currie Chavez
Chavez Law Firm P.C.
28 North First Street, #2
Geneva, IL 60134
(630) 232-4480
Email: gkeg4@aol.com

**For Plaintiff**

Michael H. Page
Joseph C. Gratz
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 9411
(415) 391 5400
Email: mhp@kvn.com
Email: jgratz@kvn.com

**For Google, Inc.**

Jeffrey Singer
Misty Martin
Segal, McCambridge, Singer & Mahoney
233 South Wacker Drive
Suite 5500
Chicago, IL 60606
(312) 645-7800
Fax: (312) 645-7711
Email: jsinger@smsm.com
Email: mmartin@smsm.com

**For Sedo LLC**

Brett A. August
Bradley Louis Cohn
Alexis Elizabeth Payne
Pattishall, McAuliffe, Newbury, Hilliard &
Geraldson LLP
311 South Wacker Drive
Suite 5000
Chicago, IL 60606
(312) 554-8000
Email: baugust@pattishall.com
Email: bcohn@pattishall.com
Email: aep@pattishall.com

**For Internet Reit, Inc**.

Steven R. Borgman
Kenneth P. Held
Vinson & Elkins LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
713 758 4353

**For Internet Reit, Inc.**

Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600
Email: rrothstein@winston.com
Email: jcarter@winston.com

**For Oversee.Net**

Scott Ryan Wiehle
Vinson & Elkins
Trammel Crow Center
2001 Ross Avenue
Suite 3700
Dallas, TX 75201-2975
(214) 220-7700
Email: swiehle@velaw.com

**For Internet Reit, Inc**.