## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, | ) | |
| Individually And On Behalf of All Others | ) | |
| Similarly Situated, | ) | |
|           Lead Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 CV 3371 |
| | ) | |
| GOOGLE INC., OVERSEE.NET, | ) | Judge Charles P. Kocoras |
| SEDO LLC, DOTSTER, INC., AKA | ) | Magistrate Judge Geraldine Soat Brown |
| REVENUEDIRECT.COM, | ) | |
| INTERNET REIT, INC. d/b/a IReit, INC. | ) | |
| and JOHN DOES I-X., | ) | |
|           Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## OVERSEE.NET'S MOTION TO DISMISS

Dockets.Justia.com

TABLE OF CONTENTS

Page

I.    Preliminary Statement ...................................................................................1

II.   Background ......................................................................................................2

I.    Vulcan's RICO Claims Should Be Dismissed For Lack Of Standing And Failure
      To State A Claim Upon Which Relief May Be Granted .......................................3

      A.    Vulcan Lacks Standing to Bring Its RICO Claims .................................3

      B.    Vulcan Has Failed to State a Valid RICO Claim...................................7

            1.    Vulcan Has Failed to Allege a RICO Claim under § 1962(c) ...................8

                  a.    Vulcan's Definition of the Alleged RICO Enterprise was
                        Cursory and Conclusory .................................................8

                  b.    Vulcan Failed to Allege that Oversee Participated in the
                        Operation or Management of the Enterprise..................................10

                  c.    Vulcan Has Failed to Allege Racketeering Activity.....................11

                        (i)    Vulcan Has Failed to Allege a Scheme to Defraud ..........11

                        (ii)   Vulcan Has Failed to Allege an Inference of
                               Oversee's Fraudulent Intent.................................................12

            2.    Vulcan Has Failed to Allege RICO Conspiracy under § 1962(d) .............14

II.   Vulcan's Cybersquatting Claim Fails Because Vulcan Lacks Standing and Cannot
      Demonstrate the Elements Required for a Claim Under the ACPA.................................16

      A.    Vulcan Lacks Standing Under 15 U.S.C. § 1125 ..................................16

      B.    Vulcan Has Failed To Allege Bad Faith Intent.......................................17

      C.    Vulcan Has Not Demonstrated That Oversee Was a Domain Name
            Registrant or a Registrant's Authorized Licensee With Respect to the
            Vulcan Deceptive Domains .................................................................18

III.  Vulcan's Federal Trademark Claim Must Fail Because Vulcan Has Not Alleged
      That Oversee Has Used or Imitated Its Mark and Because Oversee is Excepted
      From Liability .................................................................................................19

      A.    Vulcan Has Not Alleged That Oversee Has Used or Imitated Its Mark...............19

i

B.      Oversee is Excepted From Liability For Any Purported Involvement in Making Advertisements Available on the Allegedly Deceptive Domains ............20

IV.     Vulcan's False Designation of Origin Claim Fails Because Vulcan Lacks Standing and Does Not Allege That It Was Damaged by Oversee's Use of a Deceptive Domain.................................................................................................................22

V.      Vulcan's Dilution Claim Fails Because Vulcan Does Not Have Standing and Because It Does Not Allege That the Marks At Issue Were Used by Oversee in Commerce or That They are Famous...............................................................23

A.      Vulcan Does Not Allege that Oversee Used the Marks in Commerce .................24

B.      Vulcan Does Not Allege that the Marks At Issue Were Famous .........................24

VI.     Vulcan's Claims Under Illinois Statutory Law Should Be Dismissed For Failure To State A Claim ............................................................................................25

VII.    Vulcan's Claim For Declaratory Judgment Should Be Dismissed Since It Is Duplicative......................................................................................................26

VIII.   Vulcan's Common Law Trademark and Contributory Trademark Infringement Claims Should Be Dismissed For Failure to State a Claim ...............................................26

IX.     Vulcan's Claim For Intentional Interference With Current And Prospective Economic Advantage Should Be Dismissed Because Vulcan Fails To State A Valid Claim.......................................................................................................27

A.      Vulcan Fails To Allege A Claim Of Tortious Interference With A Prospective Economic Advantage ........................................................................27

B.      Vulcan Fails To Allege A Claim Of Intentional Interference With Contractual Relations..........................................................................................28

X.      Vulcan's Unjust Enrichment Claim Should be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted.....................................................29

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anza v. Ideal Steel Supply Corp.*,
126 S. Ct. 1991 (2006)............................................................................................4-7

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 868 (9th Cir. 1999) .......................................................................................24

*Beck v. Mfrs. Hanover Trust Co.*,
820 F.2d 46 (2d Cir. 1987).........................................................................................13

*Beck v. Prupis*,
529 U.S. 494 (2000).....................................................................................................15

*Berghoff Rest. Co. v. Lewis W. Berghoff, Inc.*,
357 F. Supp. 127 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974)................26

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ...............................................................................18, 20

*Century 21 Real Estate Corp. of Northern Illinois v. R.M. Post, Inc.*,
8 U.S.P.Q.2d 1614 (N.D. Ill. 1988) ...........................................................................20

*D 56, Inc. v. Berry's Inc.*,
No. 95 C 5992, 1996 WL 252557 (N.D. Ill. May 10, 1996) ...................................25

*Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*,
871 F.2d 697 (7th Cir. 1989) .......................................................................................16

*Flynn v. Merrick*,
881 F.2d 446 (7th Cir. 1989) .......................................................................................13

*Frymire v. Peat, Marwick, Mitchell & Co.*,
657 F. Supp. 889 (N.D. Ill. 1987) ...............................................................................15

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998) ................................................................................11, 15

*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*,
927 F.2d 988 (7th Cir. 1991).......................................................................................13

*Gucci America, Inc. v. Hall & Assocs*,
135 F. Supp. 2d 409 (S.D.N.Y. 2001).........................................................................21

*Hayduk v. Lanna*,
775 F.2d 441 (1st Cir. 1985).......................................................................................13

*Holmes v. Sec. Investor Prot. Corp.*,
　　503 U.S. 258 (1992)..................................................................................3-6

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
　　456 U.S. 844 (1982)...................................................................................27

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*,
　　61 F.3d 1250 (7th Cir. 1995) ...................................................................4-6

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
　　540 F.2d 266 (7th Cir. 1976) .....................................................................26

*James Cape & Sons Co. v. PCC Constr. Co.*,
　　453 F.3d 396 (7th Cir. 2006) .......................................................................7

*Jennings v. Emry*,
　　910 F.2d 1434 (7th Cir. 1990) ................................................................8-10

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
　　188 F.3d 427 (7th Cir. 1999) ...............................................................16, 22

*Kennedy v. Nat'l Juvenile Det. Ass'n*,
　　187 F.3d 690 (7th Cir. 1999) .....................................................................22

*L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*,
　　9 F.3d 561 (7th Cir.1993) ..........................................................................16

*La Mar v. H & B Novelty & Loan Co.*,
　　489 F.2d 461 (9th Cir.1973) ........................................................................1

*Masson v. New Yorker Magazine, Inc.*,
　　501 U.S. 496 (1991)....................................................................................21

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank*,
　　877 F.2d 1333 (7th Cir. 1989) .....................................................................6

*Midwest Grinding Co., Inc. v. Spitz*,
　　976 F.2d 1016 (7th Cir. 1992) ........................................................ 3, 7-8, 13

*Miranda v. Ponce Fed. Bank*,
　　948 F.2d 41 (1st Cir. 1991).........................................................................3

*New York Times Co. v. Sullivan*,
　　376 U.S. 254 (1964)....................................................................................21

*Payton v. County of Kane*,
　　308 F.3d 673 (7th Cir. 2002) .......................................................................1

iv

*Perlman v. Zell*,
    185 F.3d 850 (7th Cir. 1999) ...................................................................12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).................................................................................10

*Reynolds v. E. Dyer Dev. Co.*,
    882 F.2d 1249 (7th Cir. 1989) .......................................................... 9-10, 12

*Richmond v. Nationwide Cassel L.P.*,
    52 F.3d 640 (7th Cir. 1995) ................................................................... 8-9

*S Indus, v. Stone Age Equip., Inc.*,
    12 F. Supp. 2d 796 (N.D. Ill. 1998) .......................................................19

*Schiffels v. Kemper Fin. Serv., Inc.*,
    978 F.2d 344 (7th Cir. 1992) ....................................................................6

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ....................................................................6

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)...................................................................................8

*Segreti v. Lome*,
    747 F. Supp. 484 (N.D. Ill. 1990) ............................................................9

*Shepherd v. U.S. Olympic Comm.*,
    464 F. Supp. 2d 1072 (D. Colo. 2006)....................................................26

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*,
    202 F.3d 489 (2d Cir. 2000)....................................................................17

*Stachon v. United Consumers Club, Inc.*,
    229 F.3d 673 (7th Cir. 2000) ..................................................................10

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*,
    192 F.3d 633 (7th Cir. 1999) ..................................................................23

*United States v. Consentino*,
    869 F.2d 301 (7th Cir. 1989) ..................................................................11

*United States v. Stephens*,
    421 F.3d 503 (7th Cir. 2005) ..................................................................12

*United States v. Turkette*,
    452 U.S. 576 (1981)...................................................................................8

v

*Watts v. Network Solutions, Inc.*,
    No. 99-2350, 1999 WL 994012 (7th Cir. Oct. 27, 1999) .......................................................27

*Williams v. Aztar Ind. Gaming Corp.*,
    351 F.3d 294 (7th Cir. 2003) .................................................................................................12

*Wooten v. Loshbough*,
    951 F.2d 768 (7th Cir. 1991) ....................................................................................................6

*World Wrestling Fed'n, Inc. v. Posters, Inc.*,
    58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000) ...................................................................................21


### STATE CASES

*Du Page Aviation Corp. v. Du Page Airport Auth.*,
    594 N.E.2d 1334 (Ill. App. Ct. 1992) ....................................................................................28

*Fellhauer v. City of Geneva*,
    568 N.E.2d 870 (Ill. 1991).....................................................................................................27

*Founding Church of Scientology of Washington, D. C. v. Am. Med. Ass'n*,
    377 N.E.2d 158 (Ill. App. Ct. 1978) .....................................................................................29

*Guinn v. Hoskins Chevrolet*,
    836 N.E.2d 681 (Ill. App. Ct. 2005) .....................................................................................29

*Nesby v. Country Mut. Ins. Co.*,
    805 N.E.2d 241 (Ill. App. Ct. 2004) .....................................................................................29

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
    607 N.E.2d 165 (Ill. 1992).....................................................................................................29

*Schuler v. Abbott Labs.*,
    639 N.E.2d 144 (Ill. App. Ct. 1993) .....................................................................................28

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
    655 N.E.2d 1065 (Ill. App. Ct. 1995) ...................................................................................29

*Swager v. Couri*,
    395 N.E.2d 921 (Ill. 1979).....................................................................................................28


### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

15 U.S.C. § 1114(1) ................................................................................................... 19, 21-22

15 U.S.C. § 1114(2) ........................................................................................ 19-20

15 U.S.C. § 1114(2)(B) ........................................................................................20

15 U.S.C. § 1125 ................................................................................16, 23, 25

15 U.S.C. § 1125(a) ........................................................................................20, 22

15 U.S.C. § 1125(c) ........................................................................................ 23-25

15 U.S.C. § 1125(c)(1) ........................................................................................23

15 U.S.C. § 1125 (d) ........................................................................................16

15 U.S.C. § 1125(d)(1)(A) ........................................................................ 17-18

15 U.S.C. § 1125(d)(1)(A)(i) ........................................................................17

15 U.S.C. § 1125(d)(1)(B)(i) ........................................................................17

15 U.S.C. § 1125(d)(1)(D) ........................................................................18

18 U.S.C. § 1961(1) ........................................................................................11

18 U.S.C. § 1961(4) ........................................................................................8

18 U.S.C. § 1961(5) ........................................................................................11

18 U.S.C. §§1962(c) ........................................................................ 3, 8, 10-11

18 U.S.C. § 1962(d) ........................................................................ 14-16

18 U.S.C. § 1964(c) ........................................................................ 3-4, 15

FED. R. CIV. P. 9(b) ........................................................................................13

FED. R. CIV. P. 12(B)(6) ........................................................................................1

## STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

815 ILCS 505/2 ........................................................................................25

815 ILCS 510/2 ........................................................................................25

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
OVERSEE.NET'S MOTION TO DISMISS**

Defendant Oversee.net ("Oversee"), by and through its attorneys, respectfully submits this memorandum in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

**I.    Preliminary Statement**

Despite Vulcan's Herculean effort to articulate trademark, cybersquatting, RICO and related state claims against Oversee in an exhaustive 121-page Complaint, it has failed to allege a single viable claim against Oversee. The colossal flaw in Vulcan's Complaint as it relates to Oversee is the failure to establish standing or otherwise demonstrate that Oversee is a proper defendant. The Complaint acknowledges by silence on the issue that whatever Vulcan's injuries may be, if any, they were not caused by Oversee. Further, even if the Seventh Circuit adheres to the "juridical link" doctrine[1]—which permits a class to resolve, in a single action, injuries suffered at the hands of several defendants by way of an identical scheme, *see generally La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973)—Oversee is not a proper defendant. The Complaint makes only conclusory and unsupported allegations about Oversee's involvement in a so-called Illegal Infringement Scheme and provides no facts indicating that Oversee engaged in such a scheme or in conduct injurious to other potential plaintiffs.

Vulcan's claims fail for several other reasons. Its RICO claims fail because Vulcan has not pleaded the required elements of a valid RICO claim. Its cybersquatting claim fails, in part, because Vulcan cannot demonstrate that Oversee possessed a bad faith intent to profit from its mark. None of Vulcan's trademark, false designation of origin or dilution claims may lie against Oversee because, among other things, Vulcan has not alleged that Oversee used

---

[1] Though the Seventh Circuit has endorsed some of the reasoning behind the doctrine, it has declined to adopt it outright. *See Payton v. County of Kane*, 308 F.3d 673, 678-81 (7th Cir. 2002).

or imitated its mark. Vulcan's state statutory claims, claim for declaratory judgment, common law tort claims and claim for unjust enrichment all fail on their merits as well.

For the reasons above and discussed below, all of Vulcan's claims against Oversee should be dismissed.

## II.    Background

Oversee is a leader in domain services and the online advertising space. Compl. ¶ 140. It operates a website at www.oversee.net and offers potential customers the ability to monetize their Internet domain names. Compl. ¶ 140.

Through a program called DomainSponsor, Oversee helps domain holders and registrars maximize revenue from their parked domains by providing a straightforward and easy-to-use monetization system. *See* Compl. ¶ 28. When a computer user types a parked domain name participating in the DomainSponsor program into an Internet address bar, the user is redirected to a custom DomainSponsor landing page populated with targeted keywords and containing a search capability. Compl. ¶ 156. Oversee maintains the website DomainSponsor.com, through which the DomainSponsor program is offered. Compl. ¶ 28. Notably, the Complaint does not allege that Oversee owns or serves through DomainSponsor either of the "Vulcan Deceptive Domains." Rather, it alleges that Dotster registered those names. *See* Compl. ¶ 200.

To protect against the illegal use of trademarks in the domain names that it registers, Oversee uses sophisticated trademark filtering technology. Compl. ¶¶ 254, 330. Furthermore, Oversee offers an online complaint system whereby Oversee will investigate any alleged illegal infringement of trademarks in connection with the registration of domain names. Compl. ¶ 244. While the complaint concedes that Oversee has an online complaint resolution

process, it does not allege that Plaintiff attempted to avail itself of this process or otherwise attempted to provide any notice to Oversee prior to filing suit. Compl. ¶¶ 241, 244.

## ARGUMENT

### I. Vulcan's RICO Claims Should Be Dismissed For Lack Of Standing And Failure To State A Claim Upon Which Relief May Be Granted

Vulcan has attempted to transform a standard trademark infringement case into a RICO action. Not only does Vulcan lack standing, but it also has failed to plead the required elements of a valid RICO claim. Like too many plaintiffs, Vulcan here misuses RICO—the "thermonuclear device" of civil litigation—to try to turn the case into a vehicle for treble damages and attorney's fees. *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991); *see also Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("[c]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions."). Vulcan's RICO claims suffer from its attempt to fit the square peg of its trademark infringement allegations into the round hole of RICO violations.

Counts I and II of the Complaint, alleging RICO violations, should be dismissed for two reasons. First, Vulcan does not have standing to maintain a RICO action against Oversee. Second, Vulcan fails to adequately state a claim of RICO violations under 18 U.S.C. §§ 1962(c) or (d). Accordingly, Vulcan's RICO claims cannot stand.

### A. Vulcan Lacks Standing to Bring Its RICO Claims

Vulcan is without standing to prosecute its RICO claims because it failed to plead that it suffered an injury to its business or property by reason of a RICO violation. As a condition prerequisite to any RICO claim, 18 U.S.C. § 1964(c) requires that Vulcan suffer injury caused by a RICO violation.[2] In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992),

---

[2] 18 U.S.C. §1964(c) reads:

the Supreme Court held that 18 U.S.C. § 1964(c) required plaintiffs to show that their damages were "proximately caused" by the RICO violation.    Civil RICO claims must meet a high standard of proximate causation to survive a motion to dismiss.    *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006).    The proximate causation standard is not met when the party directly injured by the alleged fraudulent scheme is a third party and not the plaintiff.    *Id*. at 1998; *see also Holmes*, 503 U.S. 258.    Consequently, "firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO."    *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995).

A RICO claim cannot be stated against a competitor based on the alleged deception or confusion of one's customers or prospective customers.    *Id*.    In *Israel Travel*, a travel agency sued its competitor, alleging that its competitor had sent fraudulent advertisements to consumers and had thereby diverted business from the plaintiff to the defendant.    *Id*. at 1253. Among other counts, the travel agency sued under the civil RICO statute, alleging mail fraud as the predicate offense.    *Id*. at 1257.    The plaintiff travel agency did not allege that it had been deceived, only that it had been damaged by the defendant's fraud on consumers.    *Id*. at 1258. Rejecting the plaintiff's claim, the Seventh Circuit held that "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against consumers, because only the consumers are the beneficiaries of the statutory protection."    *Id*.

Vulcan's RICO claims fail for the same reasons that the plaintiff's RICO claim failed in *Israel Travel*.    The Complaint alleges that "Defendants intended Internet users (potential

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

4

customers, buyers, etc.) to rely upon the validity and legality of the Deceptive Domains and thereby use the advertisements on the deceptive domains thus causing diversion of customers, business, revenue, sales, and profits away from Lead Plaintiff and Class Members to Defendants and Defendants' customers." Compl. ¶ 453. However, the mail fraud statute "does not protect vendors to persons who may be deceived." *Israel Travel*, 61 F.3d at 1258. Vulcan, a business rival, "may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers." *Id*. Consequently, Vulcan is not protected by the federal mail fraud statute against the damage it claims to have suffered.

Furthermore, a plaintiff that has lost market share or a competitive advantage as a result of an alleged scheme to defraud a third party does not have standing to maintain a RICO action. *Anza*, 126 S. Ct. at 1997-98. The *Anza* plaintiff, Ideal Steel, claimed that the defendant, National Steel, attempted to gain a competitive advantage through its fraudulent scheme by not charging cash-paying customers the applicable New York City and State sales taxes on purchases.[3] *Id*. at 1998. Ideal claimed that National engaged in mail and wire fraud by not paying the requisite taxes to the state. *Id*. Essentially, Ideal alleged that the scheme to defraud the New York tax authority allowed National to use the proceeds from the fraud to offer lower prices resulting in more customers for National at Ideal's expense. *Id*. Applying *Holmes* to Ideal's RICO claim, the Court found that while Ideal may have suffered harm when National failed to charge the applicable sales tax, the direct victim of the alleged RICO violation, the fraud, was the State of New York, not Ideal. *Id*. at 1997. The Court concluded:

> Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices . . . A RICO plaintiff cannot circumvent the proximate-cause requirement

---

[3] Ideal Steel and National Steel conducted competing businesses selling steel mill products and related supplies and services.

> simply by claiming that the defendant's aim was to increase market
> share at a competitor's expense.

*Id*. at 1997-98.  Thus, standing in a RICO action is not established where, as in this case, the

plaintiff has lost market share or a competitive advantage as a result of an alleged scheme to

defraud a third party.

Vulcan has alleged that Defendants engaged in an "Illegal Infringement Scheme

to defraud or obtain money [from consumers] by means of false pretenses, representations or

promises."  Compl. ¶ 448.  This is unmistakably the type of RICO allegation for which the

Supreme Court demands dismissal due to the lack of proximate causation.  The direct victim of

any fraud here would have been consumers, not Vulcan.  Vulcan claims that Defendants engaged

in an "Illegal Infringement Scheme" for the purpose of gaining revenue and commercial profit

resulting in "a competitive advantage and increased market share."  Compl. ¶ 7.  As in *Anza,* any

competitive disadvantage or lost market share suffered by Vulcan would not have been

proximately caused by the alleged RICO violation.  Any harm suffered by Vulcan would be

derivative, just like the harm suffered by Ideal in *Anza*.[4]  There is no question that the alleged

RICO violation here did not proximately cause Vulcan's alleged injury.  Accordingly, Vulcan

has failed to allege any injury that was proximately caused by the alleged RICO violation..

---

[4] Even prior to *Anza,* the Seventh Circuit had consistently held that standing to sue under RICO is limited to the party that is directly injured by the RICO violation.  *See Israel Travel,* 61 F.3d 1250 (travel agency lacked standing to sue competitor who allegedly sent fraudulent advertisements to consumers, diverting business from plaintiff); *Schiffels v. Kemper Fin. Serv., Inc.,* 978 F.2d 344, 350 (7th Cir. 1992) (interpreting *Holmes* to mean "that a person did not have standing to sue under RICO based on the theory that a RICO violation inflicted injury on a third party, which in turn caused injury to the plaintiff"); *Wooten v. Loshbough,* 951 F.2d 768 (7th Cir. 1991) (corporate creditor lacked standing to sue shareholders who allegedly depleted corporation's assets through RICO violations); *Sears v. Likens,* 912 F.2d 889 (7th Cir. 1990) (shareholders lacked standing to sue defendants for RICO violations against corporation); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333 (7th Cir. 1989) (guarantors lacked standing to sue for RICO violations against corporation whose obligations they guaranteed).

Following the Supreme Court's dismissal of the RICO claim in *Anza*, the Seventh Circuit has interpreted the opinion as making "clear that a civil RICO claim cannot survive unless the plaintiff properly alleges that the RICO violation was the proximate cause of his or her damages." *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 403 (7th Cir. 2006). In *James Cape*, the plaintiff alleged that defendants engaged in a scheme to rig bids for construction projects for the State of Wisconsin Department of Transportation ("WisDOT"). *Id.* at 398. Using confidential information about plaintiff's bids, defendants were able to inflate their own bids on the contracts that they knew they would receive. *Id.* at 398. The plaintiff alleged that as a result of defendants' scheme, the plaintiff was awarded fewer contracts and lost millions of dollars of business as a result of its reduced market share. *Id.* 398-99. In affirming the district court's dismissal of the RICO claim, the Seventh Circuit held that because the direct victim of defendants' scheme was WisDOT, a third party and not the plaintiff, the plaintiff could not claim its injuries were proximately caused by the defendants' scheme. *Id.* at 403-404.

Simply put, Vulcan lacks standing to assert RICO claims. Vulcan's injury must have been proximately caused by the RICO violation. The Supreme Court and Seventh Circuit have held that when a third party (not the plaintiff) is the one defrauded by the defendant's scheme, the proximate cause element cannot be established. Because the alleged scheme was to defraud consumers (rather than Plaintiff), Vulcan does not have standing to bring RICO claims.

**B.     Vulcan Has Failed to State a Valid RICO Claim**

Vulcan's attempt to transform a standard trademark infringement case into a RICO action is a misuse of RICO law. *Midwest Grinding*, 976 F.2d at 1025 ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"). Vulcan's allegations exemplify "the widespread

abuse of civil RICO [which] stems from the fact that all modern business transactions entail use of the mails or wires." *Id*.

      1.    <u>Vulcan Has Failed to Allege a RICO Claim under § 1962(c)</u>

Vulcan failed to allege a RICO violation under 18 U.S.C. § 1962(c) which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order to state a viable claim under this subsection, a plaintiff must allege: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). Vulcan has fail to allege these elements.

      a.    <u>Vulcan's Definition of the Alleged RICO Enterprise was Cursory and Conclusory</u>

Vulcan's enterprise allegations are deficient. An "association-in-fact" enterprise under RICO is defined as a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has described an "association-in-fact" enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). If, as here, a plaintiff alleges an association-in-fact enterprise, it must state facts indicating the existence of "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). Vulcan's allegations failed to meet this standard.

The individuals or entities of the enterprise must have different roles with a common purpose of engaging in a prohibited course of conduct. *Richmond v. Nationwide Cassel*

8

*L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). It is not sufficient to simply provide a list of entities "strung together" and label it an "enterprise." *Id.* at 643. Such conclusory allegations of an enterprise do not sufficiently state a claim. *See Segreti v. Lome*, 747 F. Supp. 484, 487 (N.D. Ill. 1990). Rather, it is "essential" that the plaintiff precisely plead the alleged enterprise. *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989).

Courts routinely dismiss RICO claims for failure to clearly identify the RICO enterprise. In *Richmond*, the court dismissed a RICO claim naming a string of entities, known and unknown, as the RICO enterprise, in which "scanty" and "vague" allegations described the enterprise "only as companies that provide a variety of services to the used car industry and that are controlled by the Lutz family."[5] *Richmond*, 52 F.3d at 645. The court held that "such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense." *Id.*

Similarly, Vulcan's Complaint merely lists a string of defendants, as well as unknown others, and labels it an enterprise.[6] Vulcan failed to supply sufficient facts describing the "structure" of the enterprise and how it was organized in a manner amenable to hierarchical or consensual decision-making. *See Jennings*, 910 F.2d at 1440. Because there is no enterprise, Vulcan also failed to identify—nor can it identify—the role of Oversee and each of the other Defendants which allegedly comprise the enterprise. Vulcan simply alleged the existence of an

---

[5] The court in *Richmond* indicated that the challenged complaint "lists the three defendants as part of 'Nationwide Group,' a group that 'includes at least' four other entities . . . and that may include other businesses, three of which are suggested and listed [in the complaint]. The second enterprise [is made up of] Nationwide Group plus unnamed car dealers." 52 F.3d at 645.

[6] Vulcan's Complaint simply alleges: "The following group of individuals and entities, associated in fact, constitute an 'Enterprise' under RICO: (1) Defendant Google, (2) the Parking company Defendants, (3) all AdWords Participants/Advertisers, (4) all AdSense Participants/Publishers, (5) all other individuals and entities participating in Defendant Google's AdSense and AdWords Networks and/or the Google Advertising Network, (6) Defendant Google Search Partners, and (7) other unnamed Co-conspirator Defendants that agreed to and engaged in the unlawful actions." Compl. ¶ 429.

enterprise and essentially defined the Enterprise by the conduct it performed.[7]  Such allegations are insufficient to properly allege or to constitute the existence of an enterprise.  *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000); *Jennings,* 910 F.2d at 1440. Accordingly, Vulcan's overly broad allegations of an enterprise are insufficient to withstand a motion to dismiss.

        b.     <u>Vulcan Failed to Allege that Oversee Participated in the Operation or Management of the Enterprise</u>

Vulcan's RICO claim also fails because it did not plead sufficient facts to constitute the essential "operation or control" element of the claim.  To state a Section 1962(c) claim, a plaintiff must allege not just that the defendant was "employed by or associated with" an enterprise, but also that the defendant "conduct[ed] or participat[ed] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  In fact, "the essence of a RICO violation is a defendant's conduct in relation to an enterprise."  *Reynolds*, 882 F.2d at 1251.  A defendant cannot be liable under RICO for directing only its own, and not the alleged enterprise's, affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Here, Vulcan's allegations are once again wholly conclusory.  Vulcan failed to make allegations against Oversee specifically because Oversee simply directed its own affairs, and there are no facts to support any argument that Oversee participated in any enterprise with the other Defendants.  Vulcan did not state any facts to support any allegations that Oversee had any conduct in an enterprise.  Vulcan's lack of facts to support its allegations, either directly in the claim itself or through incorporated common allegations, and their boilerplate recitation of

---

[7] Vulcan alleges that "[i]n order to successfully infringe Distinctive and Valuable Marks, engage in cybersquatting, typosquatting, dilute Distinctive and Valuable Marks, unfairly compete, and otherwise engage in the illegal conduct alleged herein . . . Defendants needed a system that would allow Defendants to develop, monitor, calculate, divert, and otherwise control a large segment of the online/Internet electronic commerce, marketing, sales, and advertising market.  The Enterprise provides Defendants with that vehicle."  Compl. ¶ 443.

the required elements are unavailing. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) ("It is not enough . . . for a plaintiff simply to allege the [RICO] elements in a boilerplate fashion; *instead, she must allege sufficient facts to support each element*.") (emphasis added). Since Vulcan cannot be given credit for merely conclusory allegations, the Court should dismiss the RICO claim under 18 U.S.C. § 1962(c). *Id* at 727-28.

c.    Vulcan Has Failed to Allege Racketeering Activity

Vulcan has also failed to plead sufficient allegations of racketeering activity required by 18 U.S.C. § 1962(c). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Racketeering activity under RICO can consist only of the various criminal acts set forth in 18 U.S.C. § 1961(1). In its attempt to fit the square peg of trademark infringement into the round hole of RICO, Vulcan alleged the predicate act requirement was met through various acts of mail and wire fraud. But in order to allege mail and wire fraud, Vulcan must properly plead the following elements: (1) the existence of a scheme to defraud, (2) intent to defraud, and (3) use of the mails or wires to further the scheme. *United States v. Consentino,* 869 F.2d 301, 308 (7th Cir. 1989). As discussed below, Vulcan has failed to plead the elements of mail or wire fraud, alleging nothing more than garden variety trademark claims which do not constitute criminal activity under 18 U.S.C. § 1961(1).

(i)    *Vulcan Has Failed to Allege a Scheme to Defraud*

Vulcan has failed to allege violations of either the mail fraud or the wire fraud statutes because it has failed to meet the fundamental requirement of alleging a scheme to defraud. The Seventh Circuit has held that "not all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud' . . . such a broad meaning . . . 'would put

11

federal judges in the business of creating what in effect would be common law crimes.'" *Reynolds,* 882 F.2d at 1252 (7th Cir. 1989). Holding otherwise would especially be a problem "given the pervasive use of the mails and of telephone and related services in the business world." *Id.*

A scheme to defraud requires the defendant's "making of a false statement or material misrepresentation, or the concealment of material fact." *United States v. Stephens,* 421 F.3d 503, 507 (7th Cir. 2005) (quoting *Williams v. Aztar Ind. Gaming Corp.,* 351 F.3d 294, 299 (7th Cir. 2003)); *see also Perlman v. Zell,* 185 F.3d 850, 854 (7th Cir. 1999) ("The word 'fraud' in the mail fraud statute means deliberate, material misrepresentation. . . . No fraud, no mail fraud"). Notably, Vulcan's Complaint does not identify any false or misleading statement of fact upon which Vulcan relied justifiably to his detriment.

An examination of Vulcan's core allegations concerning the alleged "Illegal Infringement Scheme" reveals that nearly all of them relate to Defendants' alleged trademark infringement. Compl. ¶¶ 206(a)-(h), 207, 208 (describing alleged Illegal Infringement Scheme). The thrust of Vulcan's Complaint is that Defendants have infringed Vulcan's registered mark for their own commercial gain. *See, e.g.,* Compl. ¶¶ 1-2. In fact, throughout its entire Complaint, Vulcan itself has referred to defendants' conduct as an "Infringement Scheme" and not a "fraudulent scheme" because there was no act of fraud by Oversee. Vulcan did not allege any misrepresentations made by Defendants, much less Oversee specifically, which were relied upon and acted upon by Vulcan. Even if Vulcan had adequately alleged violations of trademark infringement laws, it did not allege criminal fraud or a scheme to defraud. Vulcan's RICO claim, therefore, must fail.

(ii)    *Vulcan Has Failed to Allege an Inference of Oversee's Fraudulent Intent*

12

Additionally, Vulcan failed to plead—and cannot plead—any requisite facts showing Oversee's fraudulent intent. The complaint must state a "factual basis for conclusory allegations of intent." *Beck v. Mfrs. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987). A common method of pleading fraudulent intent is to allege facts showing the defendant's motive for committing fraud and a clear opportunity for doing so. *Id.*

"Cryptic statements" suggesting fraudulent intent are not enough; rather, "'[m]ere allegations of fraud . . ., averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements.'" *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir. 1989) (citing *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir. 1985)). Rule 9(b) of the Federal Rules of Civil Procedure requires RICO plaintiffs, like any other plaintiffs pleading fraud in the federal courts, to plead "all averments of fraud with particularity."[8] *Midwest Grinding,* 976 F.2d at 1020. But, "[m]ost importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir. 1991).

Vulcan's conclusory allegations of intent primarily refer to "Defendants" or "Defendant Google," rather than "Oversee," and there is simply nothing on the face of Vulcan's Complaint which gives any basis for believing that Oversee possessed a fraudulent intent. Vulcan has alleged only in conclusory terms that Defendants committed the actions alleged in the Complaint "for the purpose of directly profiting, maintaining and increasing market share, and unjustly obtaining revenues and commercial profit/gain" and "to gain competitive advantage." *See, e.g.,* Compl. ¶¶ 207-208. While Vulcan consistently alleged that Defendants

---

[8] Vulcan has failed to meet its requirement to comply with Rule 9(b) in pleading its mail and wire fraud predicates when alleging a RICO violation. *See Graue Mill,* 927 F.2d at 992. For reasons set forth in Defendant Sedo's brief, at pages 4-5 and 7-12, Vulcan has failed to meet the heightened pleading requirement of Rule 9(b). Without restating these arguments, Oversee joins this portion of Sedo's brief.

"intentionally and deceptively" engaged in the alleged actions, Vulcan did not plead any supporting facts, resulting in improper conclusory allegations only.  *See, e.g.,* Compl. ¶¶ 206-207, 209.  Because these crucial allegations about the Defendants' motive and intent were wholly conclusory, they provide no means to decipher how the interests of Defendants motivated them to commit fraud or any circumstantial evidence of fraudulent intent.

Vulcan failed to plead facts to support its conclusory allegations of Defendants' fraudulent intent because there are no such facts.  Indeed, Vulcan has attempted to sweep under the rug and minimize other facts that established a lack of fraudulent intent.  Vulcan acknowledged Defendants' "'online complaint' systems and procedures in which a distinctive and valuable mark owner can complain to the Defendants when their distinctive and valuable mark had been unlawfully infringed by another website."  Compl. ¶ 240.  The fact that Oversee has a legitimate dispute resolution process and procedures in place for domain names that it owns to protect trademark owners is wholly inconsistent with a RICO criminal operation and is evidence of a lack of fraudulent intent.  Vulcan's attempt to disregard these facts, calling the complaint system "illusory," is completely unsuccessful.  *See* Compl. ¶ 241.  The absence of factual allegations supporting Oversee's fraudulent intent is therefore fatal to the mail and wire fraud allegations against Oversee.

### 2.     Vulcan Has Failed to Allege RICO Conspiracy under § 1962(d)

Without an adequately pled underlying RICO violation, Vulcan's RICO conspiracy claim fails as well.  Separate and apart from Vulcan's failure to plead a valid underlying RICO violation, the § 1962(d) claim also fails because it was supported only by conclusory allegations that lacked the supporting facts necessary to properly make out a conspiracy claim.  Section 1962(d) makes it unlawful "for any person to conspire to violate any

of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  To state a

claim under this subsection, the plaintiff must allege: "(1) that each defendant agreed to maintain

an interest in or control of an enterprise or to participate in the affairs of an enterprise through a

pattern of racketeering activity and (2) that each defendant further agreed that someone would

commit at least two predicate acts to accomplish those goals."  *Goren,* 156 F.3d at 732.  An

"injury caused by an overt act that is not an act of racketeering or otherwise wrongful under

RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of §

1962(d)."  *Beck v. Prupis*, 529 U.S. 494, 505 (2000)

The Seventh Circuit has made it unquestionably clear that "a complaint may be

dismissed if it contains only conclusory, vague and general allegations of a conspiracy."  *Goren*,

156 F.3d at 733; *see also Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96

(N.D. Ill. 1987) (allegations of a conspiracy must include the "nature of the conspiracy and the

defendant's role in it with some particularity").  Here, Vulcan's § 1962(d) claim is limited to

pleading, in a conclusory fashion, that Defendants allegedly "conspired to generate revenue,

profit, and market share through effectuation of the Illegal Infringement Scheme."  Compl.

¶ 465; *see also* Compl. ¶ 518 ("Each Defendant . . . agreed to the overall objective of the

conspiracy"); Compl. ¶ 519 ("For the fraudulent Illegal Infringement Scheme . . . to be

successful, each Defendant and other members of the conspiracy had to agree to further the

conspiracy").  No facts are or can be alleged that Oversee agreed to maintain an interest in or

control of the alleged enterprise or to participate in the affairs of the alleged enterprise through a

pattern of racketeering activity or that Oversee agreed that someone would commit at least two

predicate acts to accomplish those goals.  Further, there are no facts to support the conspiracy's

composition, objectives, or Oversee's role in it.  Vulcan's allegation that a conspiracy exists falls

15

far short of the allegations necessary to construct a valid § 1962(d) RICO claim, and, thus, it must be dismissed.

## II.    Vulcan's Cybersquatting Claim Fails Because Vulcan Lacks Standing and Cannot Demonstrate the Elements Required for a Claim Under the ACPA

In Count III, Vulcan alleges that all Defendants violated the AntiCybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125 (d), because they "registered, trafficked in, or used the infringing Deceptive Domains for commercial gain" and "in bad faith."  Compl. ¶¶ 526, 529.  However, Vulcan lacks standing to pursue this claim with regard to its allegations against Oversee.  Even if Vulcan were a proper plaintiff, it has failed to make the required showing under the ACPA that Oversee possessed a bad faith intent to profit from its mark. Vulcan has also failed to show, as required by the ACPA, that Oversee was either a domain name registrant or a registrant's authorized licensee with respect to the Vulcan Deceptive Domains.  Accordingly, Vulcan's claim should be dismissed.

### A.    Vulcan Lacks Standing Under 15 U.S.C. § 1125

To bring suit under the Lanham Act, 15 U.S.C. § 1125, a plaintiff must demonstrate that it "has a reasonable interest to be protected against conduct violating the Act." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (quoting *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989). Standing is predicated upon a claimant's ability to assert a "discernible competitive injury."  *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 575 (7th Cir.1993).

Here, Vulcan has failed to allege that it has any sort of protectable interest jeopardized by Oversee's alleged conduct.  Even assuming Vulcan's wide ranging allegations regarding Oversee are true, the Complaint fails to assert any connection between the allegations concerning Oversee and Vulcan's claimed injuries.   Vulcan does not allege that Oversee

registered or profited from any of the Vulcan Deceptive Domains identified in the Complaint. Nor does it claim that it was harmed by any of the domain names Oversee allegedly registered or from which Oversee allegedly profited.

Moreover, Vulcan has not pled facts demonstrating that Oversee engaged in any sort of illegal infringement scheme or in conduct injurious to other potential plaintiffs such that Oversee is a proper defendant. The facts alleged indicate only that Oversee is engaged in a lawful business, which Vulcan concedes is legitimate, *see* Compl. ¶ 434, and that Oversee did not register the domain names alleged to infringe Vulcan's mark.

Accordingly, Vulcan's cybersquatting claim should be dismissed.

**B.    Vulcan Has Failed To Allege Bad Faith Intent**

Even if Vulcan has standing, which it does not, Vulcan's claim fails because it has failed to make the required showing for relief under the ACPA. Under the statute, a person is liable to the owner of a mark if the person (i) has a bad faith intent to profit from that mark; and (ii) registers, traffics in or uses a domain name. 15 U.S.C. § 1125(d)(1)(A). Notably, the first element of a cybersquatting claim is the defendant's "*bad faith intent* to profit" from the relevant mark. 15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added). The statute lists factors to be considered "[i]n determining whether a person has a *bad faith intent* described under subparagraph (A)." 15 U.S.C. § 1125(d)(1)(B)(i) (emphasis added).

Vulcan has alleged no facts plausibly suggesting that Oversee possessed the requisite "bad faith intent"—an element whose pleading is particularly important because it is a "term of art," its meaning diverging from the standard legal meaning of action in "bad faith." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 n.13 (2d Cir. 2000). Vulcan cannot do so because it has not even alleged that Oversee engaged in conduct injurious to Vulcan specifically, let alone that Oversee acted in bad faith.

Even if Oversee's alleged conduct remotely related to Vulcan's purported injuries, systems and procedures employed by Oversee to guard against trademark infringement belie the existence of any bad faith intent.  Oversee offers an online complaint system whereby the company will investigate any alleged illegal infringement of trademarks in connection with the registration of domain names.  Additionally, as Vulcan admits, Oversee uses sophisticated trademark filtering technology to protect against the illegal use of trademarks in the domain names it registers and sells.  Compl. ¶¶ 330, 254.  Contrary to Vulcan's suggestions, the reliance on such tools by a company such as Oversee—which owns more than 500,000 domain names— is entirely appropriate.

Though Vulcan asserts that Oversee's online complaint system consists of an "illusory promise" to investigate, Compl. ¶ 244, Vulcan has failed to allege that it ever attempted to contact Oversee over any of the Vulcan Deceptive Domains—assuming, incorrectly, that Oversee had anything to do with those domains.  Vulcan's failure to contact Oversee, or to allege that it did, further indicates that Oversee never engaged in conduct damaging to Vulcan specifically and never possessed bad faith intent to profit from Vulcan's mark.

C.    **Vulcan Has Not Demonstrated That Oversee Was a Domain Name Registrant or a Registrant's Authorized Licensee With Respect to the Vulcan Deceptive Domains**

Vulcan's ACPA claim also fails because Vulcan has not shown that Oversee "registers," "traffics in", or "uses" any of the Vulcan Deceptive Domains, as the ACPA requires. *See* 15 U.S.C. § 1125(d)(1)(A).  Significantly, liability for "using" a domain name only exists for the registrant of that name or the registrant's authorized licensee.  15 U.S.C. § 1125(d)(1)(D) *Bird v. Parsons*, 289 F.3d 865, 881 (6th Cir. 2002).

Oversee is neither the registrant of the Vulcan Deceptive Domains, nor a trafficker of those domains nor the domain registrant's authorized licensee, nor has Vulcan

alleged as much.  In fact, the Complaint identifies Dotster as the registrant.  See Compl. ¶ 200.

There is no license agreement between Oversee and Google, or between Oversee and any of the

other named defendants, regarding the Vulcan Deceptive Domains—a fact underscored by the

utter lack of such allegations in the Complaint.  Oversee does not own or have any legal rights in

the Vulcan Deceptive Domains and has not trafficked in or otherwise used the domains to its

benefit.

        Simply put, Oversee had nothing to do with Vulcan's alleged injuries.  Therefore,

Vulcan's claim under the ACPA should be dismissed.

### III.    Vulcan's Federal Trademark Claim Must Fail Because Vulcan Has Not Alleged That Oversee Has Used or Imitated Its Mark and Because Oversee is Excepted From Liability

        In Count Four, Vulcan alleges that Oversee committed trademark infringement

under 15 U.S.C. § 1114(1).  Vulcan has not alleged facts indicating that Oversee violated the

statute, and therefore its claim should be dismissed.  Moreover, to the extent Vulcan seeks to

hold Oversee liable for making available the advertisements on allegedly infringing domains,

Oversee is excepted from liability under 15 U.S.C. § 1114(2).

#### A.    Vulcan Has Not Alleged That Oversee Has Used or Imitated Its Mark

        To assert a claim for trademark infringement under 15 U.S.C. § 1114(1), Vulcan

must show, among other things, that Oversee used its mark without authorization, or reproduced,

counterfeited, copied or imitated its mark.  *See* 15 U.S.C. § 1114(1); *see also S Indus, v. Stone

Age Equip., Inc.*, 12 F. Supp. 2d 796, 803 (N.D. Ill. 1998).

        Nowhere in its 638-paragraph Complaint does Vulcan allege facts remotely

demonstrating how Oversee used Vulcan's mark.  Vulcan has alleged no facts that Oversee

registered, profited from or was otherwise responsible for the use of Vulcan's mark or even the

Vulcan Deceptive Domains.

19

Vulcan has also failed to allege that Oversee copied or imitated its mark.  Indeed, the Complaint fails to link Oversee to *any* specific deceptive domains identified, let alone any that have caused Vulcan's alleged injuries.

Moreover, even if Vulcan *had* registered any of the Vulcan Deceptive Domains, serious questions would still exist as to whether Oversee had "used" the Vulcan mark.  The registration or sale of a domain name—even assuming the name resembles an established trademark—may not amount to "use" of the mark if the registrant or seller does not seek to capitalize on the domain name's unique value.  *See Bird*, 289 F.3d at 879.  Here, Vulcan has failed to allege that Oversee's conduct related to Vulcan's mark, let alone that Oversee profited from the mark's value.

Because Vulcan cannot demonstrate that Oversee used or imitated its mark, Vulcan's federal trademark claim must fail.

**B.    Oversee is Excepted From Liability For Any Purported Involvement in Making Advertisements Available on the Allegedly Deceptive Domains**

To the extent Vulcan seeks to hold Oversee liable for making available the advertisements on allegedly infringing domains, Oversee is excepted from liability for money damages under 15 U.S.C. § 1114(2).  Section 1114(2)(B) limits the relief against publishers of paid advertisements in electronic communications, including online publishers, to injunctive relief, so long as the publisher is an innocent infringer.[9]  *Id.*; *see Century 21 Real Estate Corp. of N. Ill. v. R.M. Post, Inc.*, 8 U.S.P.Q. 2d 1614, 1617 (N.D. Ill. 1988).

---

[9]  Section 1114(2)(B) provides:

Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510 (12) of title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125 (a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or

Assuming, incorrectly, that Vulcan's Complaint makes out a Section 1114(1) claim against Oversee for procuring advertisements on certain domains, Oversee satisfies the preliminary requirements for damages immunity under Section 1114(2)(b): Vulcan's allegations would relate to "paid advertisements"; the Complaint may be read to allege that Oversee publishes the sites where they appear, *see* Compl. ¶ 29; and the allegedly infringing sites would clearly constitute "electronic communications."

Further, Oversee would be an innocent infringer. Although the term "innocent infringer" is not defined in Section 1114, case law makes clear that it embraces libel law's "actual malice" standard as set forth in *New York TimesCo. v. Sullivan*, 376 U.S. 254 (1964). Guided by *New York Times*, courts have concluded that "an infringer is 'innocent' unless it acted either (1) with knowledge of the infringement or (2) with reckless disregard as to whether the material infringed the trademark owner's rights." *Gucci America, Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 420 (S.D.N.Y. 2001); *see also World Wrestling Fed'n, Inc. v. Posters, Inc.*, 58 U.S.P.Q. 2d 1783, 1785-86 (N.D. Ill. 2000). Under this standard, actual malice must be proved by clear and convincing evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991).

Vulcan's complaint alleges neither of the required mental states. Vulcan does not allege that Oversee has knowledge of infringement. Similarly, Vulcan alleges no facts which could show a reckless disregard as to whether the relevant domain names were infringing. Regarding the domains it owns or hosts, Oversee maintains a policy of investigating any alleged illegal infringement of trademarks. *See* Compl. ¶ 244. Oversee also employs sophisticated trademark filtering technology. Far from showing a "reckless disregard" for trademark

---

other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

infringement, these facts demonstrate that Oversee takes great care to remedy all trademark infringement about which it is notified and strongly discourages behavior that could be infringing.   Therefore, Oversee would be, at most, an innocent infringer and exempt from liability for money damages under Section 1114(1).

## IV.    Vulcan's False Designation of Origin Claim Fails Because Vulcan Lacks Standing and Does Not Allege That It Was Damaged by Oversee's Use of a Deceptive Domain

In Count V, entitled "False Designation of Origin," Vulcan asserts that Oversee has violated 15 U.S.C. § 1125(a).  Like Vulcan's ACPA claim, its claim for false designation of origin must fail because Vulcan lacks standing to pursue this claim with regard to its allegations against Oversee.  Vulcan has failed to allege that it has a reasonable interest, or any protectable interest, jeopardized by Oversee's alleged conduct.  *See Johnny Blastoff, Inc.*, 188 F.3d at 438. Moreover, Vulcan has not pled facts demonstrating that Oversee engaged in any sort of illegal infringement scheme or in conduct injurious to other potential plaintiffs such that Oversee is a proper defendant.

Even were Oversee a proper defendant, Vulcan's claim must fail because it has failed to allege the required elements of a claim for false designation of origin.  In the Seventh Circuit, "a plaintiff must prove the following three elements to state a claim under the Lanham Act: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation."  *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999).

Interpreting the Complaint generously, Vulcan appears to allege that the relevant "designation of origin" is the domain name the user types into his or her browser.  *See* Compl. ¶

22

557-58.  Yet Vulcan has alleged no facts that would constitute a "use" by Oversee of Vulcan's mark or the allegedly infringing domain names that Vulcan claims are related to its mark. Though Vulcan alleges, among other things, that Oversee licenses domain names to Google and contracts with Google to monetize domain names it registers, Compl. ¶¶ 182, 281, such conduct plainly does not constitute a "use" of the Vulcan Domain or the Vulcan Deceptive Domains. Thus, Vulcan cannot demonstrate the first element of false designation of origin claim.

Neither can Vulcan demonstrate the third element.  Vulcan has failed to allege facts demonstrating that it would be damaged by Oversee's "use" of either Vulcan's mark or the allegedly infringing domain names.  At most, Vulcan alleges that others may have been damaged by Oversee's conduct.  Accordingly, Vulcan's false designation of origin claim must be dismissed.

**V.      Vulcan's Dilution Claim Fails Because Vulcan Does Not Have Standing and Because It Does Not Allege That the Marks At Issue Were Used by Oversee in Commerce or That They are Famous**

As with Vulcan's other claims under Section 1125, Vulcan's lack of standing and failure to establish Oversee as a proper defendant are fatal to its dilution claim.  Even assuming the contrary, Vulcan has failed to make the required showing under 15 U.S.C. § 1125(c).

Pursuant to 15 U.S.C. § 1125(c), the owner of a famous mark is entitled "an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."  15 U.S.C. § 1125(c)(1).  Accordingly, "[t]o prove a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce."  *Syndicate Sales,*

*Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999). Vulcan has failed to allege

that the marks at issue were the subject of Oversee's "use in commerce" or are famous.

### A.     Vulcan Does Not Allege that Oversee Used the Marks in Commerce

Vulcan's claim should be dismissed because it has not adequately alleged that the

marks at issue were subject to Oversee's "use in commerce." Commercial use "occurs where the

alleged diluter uses 'the trademark as a trademark, capitalizing on its trademark status.'" *Bird*,

289 F.3d at 879 (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 880 (9th Cir. 1999).

That a registrar sells domain names and profits from the names that registrants choose does not,

without more, constitute "commercial use" under Section 1125(c). *Id.* A plaintiff must allege

facts indicating that the alleged diluter profited from the specific value of the trademarks at issue.

*Id.* (finding that plaintiff had failed to allege facts supporting "commercial use," including that

registrar's profits varied according to the ultimate selling price of domain names).

Vulcan fails to allege that Oversee registered, sold or even profited from any

deceptive domains identified in the Complaint. Regarding the only two Vulcan Deceptive

Domains it purports to identify, Vulcan names Defendant Dotster, not Oversee, as the registrant.

Indeed, Vulcan fails to allege that Oversee had any involvement in the creation or misuse of the

Vulcan Deceptive Domains or other specifically identified domains. Vulcan's dilution claim

against Oversee is completely without merit.

### B.     Vulcan Does Not Allege that the Marks At Issue Were Famous

Vulcan's dilution claim should also be dismissed because Vulcan has failed to

allege the element of famousness. Famousness is a critical element, since "[d]ilution is a cause

of action invented and reserved for a select class of marks—those marks with such powerful

consumer associations that even non-competing uses can impinge on their value." *Avery*

*Dennison Corp.*, 189 F.3d at 875.

Vulcan alleges that Oversee has violated Section 1125(c) based, in part, on an assertion that "[a]t the time that the Lead Plaintiff and the members of the Class registered their domain names, said Distinctive and Valuable Marks were distinctive, protected/protectible, and/or famous." Compl. ¶ 571. The Complaint defines "Distinctive and Valuable Marks" as "venerable, valuable, distinctive, famous, registered trademarks, trade names, logos, famous names, and other such distinctive/valuable marks." Compl. ¶ 56(j).

Nonetheless, Vulcan's contentions fall short of alleging famousness. Vulcan alleges only that its mark is "distinctive, protected/protectible, ***and/or*** famous." Compl. ¶ 571 (emphasis added). This is not enough. Even if Vulcan were able to prove that its mark was "distinctive," or that it was "protected/protectible," or that it was distinctive, protectible, *and* protected, Vulcan could not prevail. Vulcan must allege and prove that its mark is famous, and nothing less will support its dilution claim. The complaint's use of "and/or" is fatal, since a showing of any one or more of the listed properties of a mark would meet the allegation without meeting the requirements of Section 1125(c).

## VI.  Vulcan's Claims Under Illinois Statutory Law Should Be Dismissed For Failure To State A Claim

Vulcan claims that Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/2, and the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/2. "Under Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under the Lanham Act." *D 56, Inc. v. Berry's Inc.*, No. 95 C 5992, 1996 WL 252557 at *9 (N.D. Ill. May 10, 1996). Accordingly, because it has failed to allege facts sufficient to make out a claim under the Lanham Act, Vulcan's claims for violations of the ICFDBPA and the IDTPA also fail.

25

**VII.    Vulcan's Claim For Declaratory Judgment Should Be Dismissed Since It Is Duplicative**

Vulcan's claim for declaratory relief must fail for two reasons.  First, it is duplicative, as it simply repeats claims made elsewhere in the Complaint. *See* Compl. ¶ 603 (listing only claims appearing elsewhere in the Complaint).  Where, as here, declaratory relief is redundant and claims appearing elsewhere in the Complaint would provide a full remedy for any alleged harm, the declaratory judgment claim must be dismissed.  *See Shepherd v. U.S. Olympic Comm.*, 464  F. Supp. 2d 1072, 1081 n.8 (D. Colo. 2006).  Second, a declaratory judgment claim, like any other claim, must state a claim upon which relief can be granted.  Because it has failed to plead claims for the underlying causes of action, Vulcan has failed to plead a claim for declaratory judgment.  Accordingly, its declaratory judgment claim must be dismissed.

**VIII.   Vulcan's Common Law Trademark and Contributory Trademark Infringement Claims Should Be Dismissed For Failure to State a Claim**

In addition to asserting a federal trademark claim under the Lanham Act, Vulcan claims common law trademark infringement in Count IX.  Courts in this circuit have found that "the principles of statutory trademark law and the tests for infringement are basically the traditional ones of common law," making unnecessary a "separate discussion of the statute and common law."  *Berghoff Rest. Co. v. Lewis W. Berghoff, Inc.*, 357 F. Supp. 127, 130 n.3 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974); *see also James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274-75 & n.16 (7th Cir. 1976) (finding state law unfair competition and trademark claims resolved by reference to the resolution of plaintiff's Lanham Act claims).  Because  Vulcan has failed to allege facts sufficient to make out a claim under the Lanham Act, Vulcan's claim for common law trademark infringement also fails.

Vulcan's claim of contributory trademark infringement, alleged in Count X, fails as well.  "Contributory trademark infringement occurs when a manufacturer or distributor (1)

26

intentionally induces another to infringe a trademark or (2) continues to supply a product to one whom it knows or has reason to know is engaging in trademark infringement." *Watts v. Network Solutions, Inc.*, No. 99-2350, 1999 WL 994012 at *2 (7th Cir. Oct. 27, 1999); *accord Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982). Here, Vulcan has not alleged that Oversee engaged in conduct remotely related to the injuries it claims. Moreover, Vulcan has not pled facts demonstrating that Oversee engaged in any sort of illegal infringement scheme or how Oversee's alleged conduct was injurious to other potential plaintiffs. Because Vulcan cannot demonstrate that Oversee "induced" the infringement of its or others' marks, or "supplied a product" to an infringer, its contributory claim should be dismissed.

## IX.    Vulcan's Claim For Intentional Interference With Current And Prospective Economic Advantage Should Be Dismissed Because Vulcan Fails To State A Valid Claim

Although Vulcan has confusingly alleged a claim for "intentional interference with current and prospective economic advantage," a thorough search of reported Illinois cases reveals no tort by that name. It is unclear whether Vulcan intended to bring a claim of tortious interference with a prospective economic advantage, or intentional interference with contractual relations, or both, or neither. Nonetheless, Vulcan fails to state a claim under either theory.

### A.    Vulcan Fails To Allege A Claim Of Tortious Interference With A Prospective Economic Advantage

In Illinois, "to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). "Illinois courts

have stated that the first element of a *prima facie* case for tortious interference, that plaintiff had a valid business expectancy, requires allegations of business relationships with *specific third parties*." *Du Page Aviation Corp. v. Du Page Airport Auth.*, 594 N.E.2d 1334, 1340 (Ill. App. Ct. 1992) (emphasis in original); *accord Schuler v. Abbott Labs.*, 639 N.E.2d 144, 147 (Ill. App. Ct. 1993) ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party.").

Vulcan alleges that Defendants have interfered with its "prospective economic relationships with third party Internet consumers." Compl. ¶ 632. Vulcan does not specify who these "third party Internet consumers" are, except to say elsewhere that they are "third party Internet users/consumers." Compl. ¶ 628. Vulcan's claim fails because it does not allege any reasonable expectation of entering into a business relationship with any specific third party. The class of "third party Internet users/consumers" numbers in the millions. Vulcan did not—and, obviously, cannot—claim that it reasonably expects to enter into a business relationship with *every* Internet user. Accordingly, Vulcan failed to allege a necessary element of its cause of action, and Count XI should be dismissed.

### B.   Vulcan Fails To Allege A Claim Of Intentional Interference With Contractual Relations

To the extent that Vulcan purports to plead a claim for "Intentional Interference with Current . . . Economic Advantage," Compl. ¶ 115, Illinois does not recognize such a claim. Illinois does, however, recognize the tort of intentional interference with contractual relations. *See Swager v. Couri*, 395 N.E.2d 921 (Ill. 1979). Presumably, Vulcan intended to plead a claim for that tort, instead.

Nevertheless, even assuming it intended to allege intentional interference with contractual relations, Vulcan's claim fails. To plead a valid claim for that tort, a complaint must

28

contain "statements indicating what contract deserving of legal protection was involved." *Founding Church of Scientology of Washington, D. C. v. Am. Med. Ass'n*, 377 N.E.2d 158, 161 (Ill. App. Ct. 1978). Because Vulcan does not identify any contract with which any Defendant, including Oversee, is alleged to have interfered, stating only that "[a] current . . . economic relationship between Lead Plaintiff/Class members and third party Internet users/consumers exists . . . ." Compl. ¶ 628. Vulcan has failed to specify "what contract deserving of legal protection was involved." *Id*. at 161. Thus, its claim should be dismissed.

## X.    Vulcan's Unjust Enrichment Claim Should be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

In Illinois, "[i]t is axiomatic that an unjust enrichment claim is viable only when there is no adequate remedy at law." *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995). This is true "[b]ecause [unjust enrichment] is an equitable remedy." *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004). Accordingly, when a plaintiff pleads an unjust enrichment claim alongside a claim for a legal remedy for the same wrong, the plaintiff "does not set forth a proper cause of action." *See People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). A plaintiff may avoid dismissal by pleading its unjust enrichment claim in the alternative to *all* other remedies at law. *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005).

Vulcan attempts to plead its unjust enrichment claim "in the alternative to any contract and statutory claims." Compl. ¶ 636. However, in addition to seven statutory claims, there are three claims alleging remedies at law that Vulcan pleads alongside its unjust enrichment claim.[10] Since Vulcan alleged legal remedies alongside (rather than in the alternative to) its unjust enrichment claim, that claim "does not set forth a proper cause of action." *See People ex*

---

[10] Counts I through VII are statutory claims, and counts IX through XI are claims for remedies at law. Plaintiff's counts for unjust enrichment and declaratory judgment are excluded.

*rel. Hartigan*, 607 N.E.2d at 177.   Accordingly, the Court should dismiss Vulcan's claim of

unjust enrichment.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Oversee respectfully requests that this Court

dismiss Counts I through XII of Plaintiff's Complaint with prejudice

Respectfully submitted,

**OVERSEE.NET, INC.**

Dated: August 17, 2007

By:    s/ Janelle M. Carter _____ _____
One of their Attorneys

Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
Email: jcarter@winston.com

Steven Atlee
Winston & Strawn LLP
333 Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Andrew Bridges
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
*Admission Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007, a true and correct copy of the foregoing

was served in accordance with Rule 5, Federal Rules of Civil Procedure, on the following:

Robert M. Foote
Stephen William Fung
Foote, Meyers, Mielke & Flowers, LLC
28 North First Street, #2
Geneva, Illinois  60134

Kathleen Currie Chavez
Chavez Law Firm P.C.
28 North First Street, #2
Geneva, Illinois  60134

Jonathan M. Cyrluk
Mariah E. Moran
Stetler & Duffy, Ltd.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603

Joseph Gratz
Michael Page
Keker & Van Nest LLP
710 Sansome Street
San Francisco, California

Jeffrey Singer
Misty Rose Martin
Segal, McCambridge, Singer & Mahoney, Ltd.
330 North Wabash Avenue, Suite 200
Chicago, Illinois  60611

Alison C. Conlon
Michael R. Dockterman
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, Illinois  60606

Alexis Elizabeth Payne
Bradley Louis Cohn
Brett A. August
Pattishall, McAuliffe, Newbury,
Hilliard & Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, Illinois  60606

Scott Ryan Hiehle
Vinson & Elkins LLP
Trammel Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201

Steven R. Borgman
Vinson & Elkins LLP
2500 First City Tower
1001 Fannin Street
Houston, Texas  77002

___s/ Janelle M. Carter__