## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. | : | |
| SANFILIPPO & SON, INC., | : | |
| BLITZ REALTY GROUP, INC., | : | |
| and VINCENT E. "BO" JACKSON, | : | Case No. 07CV3371 |
| Individually and on Behalf of All | : | |
| Others Similarly Situated, | : | Judge Manning |
| | | |
| v. | : | Magistrate Judge Brown |
| | : | |
| GOOGLE INC., OVERSEE.NET, | : | |
| SEDO LLC, DOTSTER, INC., AKA | : | |
| REVENUEDIRECT.COM, | : | |
| INTERNET REIT, INC. d/b/a IREIT, INC., | : | |
| and JOHN DOES I-X, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' CONSOLIDATED MOTION TO
## DISMISS AMENDED CLASS ACTION COMPLAINT

Dated: October 18, 2007

Dockets.Justia.com

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................................... 1

II.  FACTS AS ALLEGED IN THE AMENDED COMPLAINT ................................ 2

III.  LEGAL STANDARDS ............................................................................................ 4

   A.  Rule 12(b)(6) ...................................................................................................... 4

   B.  Rule 9(b) .............................................................................................................. 4

IV.  ARGUMENT ............................................................................................................ 5

   A.  Plaintiffs Fail to State a Claim Under RICO (Counts I and II) ......................... 5

      1.  Plaintiffs Fail to Adequately Allege a RICO "Enterprise" ......................... 6

         a.  Plaintiffs Do Not Allege the Requisite Structure ...................................... 6

         b.  The Members of the Alleged Enterprise Do Not Share a Common Purpose ............. 8

      2.  The Amended Complaint Fails to Adequately Allege that Defendants
         Participated in the Direction of the Alleged Enterprise ................................. 10

      3.  The Amended Complaint Fails to Plead the Alleged Predicate Acts of
         Fraud with the Requisite Particularity ...................................................... 11

      4.  The Amended Complaint Fails to Plead a "Pattern Of Racketeering Activity" ........... 13

         a.  Plaintiffs' New Allegations of Non-Fraud Based Predicate Acts are
           Insufficient as a Matter of Law...................................................................... 13

         b.  Plaintiffs' Fraud-Based Allegations, In Addition to Being Insufficiently
           Particularized, Do Not Constitute Mail or Wire Fraud............................ 15

           (1)  Infringement Allegations Do Not Constitute a "Scheme to Defraud" ............... 15

           (2)  The Amended Complaint Fails to Plead a "Material" Misrepresentation.......... 17

           (3)  The Object of the Alleged Fraud is Not Money or Property in the
               Hands of the Alleged Victim.................................................................. 18

      5.  The Amended Complaint Fails to Adequately Allege a Conspiracy to
         Violate RICO .......................................................................................... 19

      6.  The Amended Complaint Fails to Adequately Allege the Reliance
         Requirements of RICO............................................................................. 20

      7.  Plaintiffs Do Not Satisfy RICO's Proximate Cause Requirement Because
         Their Injury Is, At Best, "Derivative" of Alleged Injury to Others ................ 21

   B.  The Non-Trademark Related Claims of the Amended Complaint Should
      Be Dismissed (Counts VII, VIII, XII, XIII, and XIV) .................................... 24

      1.  Plaintiffs Fail to State a Claim Under the Illinois Consumer Fraud
         Act (Count VII)........................................................................................ 24

      2.  Plaintiffs Fail to State a Claim for Declaratory Judgment  (Count VIII)...................... 26

3.   Plaintiffs Fail to State a Claim for Intentional Interference With Current and Prospective Economic Advantage (Count XII)....................................................... 27

4.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Count XIII).......................... 28

5.   Plaintiffs Fail to State a Claim for Civil Conspiracy (Count XIV)............................. 28

V.   CONCLUSION........................................................................................................ 29

# TABLE OF AUTHORITIES

## CASES

Allen Brothers, Inc. v. Byrdak, No. 98-C-6190, 1999 U.S. Dist. LEXIS 11614
(N.D. Ill. July, 26, 1999)...................................................................................14

Amari v. Radio Spirits, Inc., 219 F. Supp. 2d 942 (N.D. Ill. 2002)............................ 26

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) .....................................22, 23

Appraisers Coalition v. Appraisal Institute, No. 93-C-913, 1993 U.S. Dist. LEXIS 11770
(N.D. Ill. Aug. 18, 1993)..................................................................................14

Bachman v. Bear, Stearns & Co., 178 F.3d 930 (7th Cir. 1999) ...................................8

Baker v. IBP, Inc., 357 F.3d 685 (7th Cir. 2004)............................................8, 9, 10, 11

Bank of China v. NBM LLC, 359 F.3d 171 (2d Cir. 2004)...................................20, 21

Beck v. Prupis, 529 U.S. 494 (2000) ......................................................................5, 19

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)............................4, 6, 7, 10, 28

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) .................... 29

Brdecka v. Gleaner Life Insurance Society, No. 02-3076, 2005 U.S. Dist. LEXIS 10818
(N.D. Ill. June 6, 2005) ................................................................................... 28

Builders Bank v. First Bank & Trust Co. of Ill., No. 03 C 4959, 2004
WL. 1497766 (N.D. Ill. June 28, 2004)..............................................................12

Cleveland v. United States, 531 U.S. 12 (2000) ....................................................15, 18

Cody v. Harris, 409 F.3d 853 (7th Cir. 2005)......................................................... 27

Corley v. Rosewood Care Center, Inc., 152 F. Supp. 2d 1099 (C.D. Ill. 2001) ...........15

Corley v. Rosewood Care Center, Inc., 388 F.3d 990 (7th Cir. 2004) ...................17, 19

Davis v. G.N. Mortg. Corp., 396 F.3d 869 (7th Cir. 2005) ...............................5, 24, 26

EQ Finance, Inc. v. Pers'l Finance Co., 421 F. Supp. 2d 1138 (N.D. Ill. 2006)...........13

Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612 (S.D.N.Y. 2006) ..................15, 16

Fritz v. Johnston, 209 Ill. 2d 302 (Ill. 2004) ............................................................. 29

Gamboa v. Velez, 457 F.3d 703 (7th Cir. 2006)......................................................1, 5

Goren v. New Vision International, Inc., 156 F.3d 721 (7th Cir. 1998)......................5, 12, 19, 20

Greenleaf Nursery v. E.I. DuPont DeNemours, 341 F.3d 1292 (11th Cir. 2003), *cert. denied*, 541 U.S. 1037 (2004) ..................................................................20

International Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724 (7th Cir. 1999)......................................................................................... 27

Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc., 61 F.3d 1250 (7th Cir. 1995)..............................................................................21, 22, 23

James Cape & Sons Co. v. PCC Construction Co., 453 F.3d 396 (7th Cir. 2006).......................24

Jennings v. Automobile Meter Products, Inc., 495 F.3d 466, 2007 U.S. App. LEXIS 17618 (7th Cir. July 25, 2007)......................................................................1, 4

Jennings v. Emry, 910 F.2d 1434 (7th Cir. 1990).........................................................6, 8

Jepson, Inc. v. Makita Corp., 34 F.3d 1321 (7th Cir. 1994)..........................................12

Johnson Electric N. America, Inc. v. Mabuchi Motor America Corp., 98 F. Supp. 2d 480 (S.D.N.Y. 2000) ..........................................................................16

Lachmund v. ADM Investor Services, 191 F.3d 777 (7th Cir. 1999) ...........................................12

In re McDonald's French Fries Litig., No. 06-C 2007 U.S. Dist. LEXIS 38960 (N.D. Ill. May 30, 2007) ...........................................................................25

Mid-State Fertilizer Co. v. Exch. National Bank, 877 F.2d 1333 (7th Cir. 1989)........................23

Midwest Grinding Co. v. Spitz, 976 F.2d 1016 (7th Cir. 1992) ..............................................1, 4, 5

Nagel v. ADM Investor Services, 995 F. Supp. 837 (N.D. Ill. 1998)..........................................16

Neder v. United States, 527 U.S. 1 (1999).....................................................................17

North Shore Medical Center, Ltd. v. Evanston Hospital Corp., No. 92-C-6533, 1995 WL. 723761 (N.D. Ill. Dec. 5, 1995) ......................................................22

In re Ocwen Loan Servicing, 491 F.3d 638 (7th Cir. 2007) ..........................................................4

*Pace America, Inc. v. Elixir Industrial*, No. 06-4661, 2007 U.S. Dist. LEXIS 10601 (N.D. Ill. Feb. 13, 2007)................................................................................25

*Papasan v. Allain*, 478 U.S. 265 (1986)................................................................4

*Pasquantino v. United States*, 544 U.S. 349 (2005)........................................15, 18

*Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928 (7th Cir. 2007)...................20

*R.E. Davis Chemical Corp. v. NALCO Chemical Co.*, 757 F. Supp. 1499 (N.D. Ill. 1990)........12

*Republic Tobacco L.P. v. N. Atlantic Trading Co.*, No. 06-2738, 2007 U.S. Dist. LEXIS 38079 (N.D. Ill. May 10, 2007) ................................................................28

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)........................................................10

*Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640 (7th Cir. 1995)..........................6, 7

*River Park, Inc. v. City of Highland Park*, 667 N.E.2d 499 (Ill. App. Ct. 1996)...........27

*Ryan v. Wersi Electric Gmbh*, 59 F.3d 52 (7th Cir. 1995)......................................26

*Schiffels v. Kemper Finance Serv., Inc.*, 978 F.2d 344 (7th Cir. 1992) .......................23

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-3004, 2006 U.S. Dist. LEXIS 18630 (N.D. Ill. Apr. 12, 2006) ..................................................... 25, 26

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990)......................................................23

*Segreti v. Lome*, 747 F. Supp. 484 (N.D. Ill. 1990) ............................................6, 8

*Shepherd v. U.S. Olympic Committee*, 464 F. Supp. 2d 1072 (D. Colo. 2006)..............26

*Siegal v. Shell Oil Co.*, 480 F. Supp. 1034 (N.D. Ill. 2007) ....................................25

*Slaney v. The International Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001)........................................................5, 10, 11, 12, 19

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ..................................................15

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673 (7th Cir. 2000)............6, 7, 8, 9

*U.S. v. Cummings*, 395 F.3d 392 (7th Cir. 2005)..................................................19

*U.S. Media Corp. v. Edde Entertainment, Inc.*, No. 94-Civ.-4849, 1996 U.S. Dist. LEXIS 13389 (S.D.N.Y. Sept. 10, 1996) ................................................16

United States v. All Meat & Poultry Products Stored at Lagrou Cold Storage,
    470 F. Supp. 2d 823 (N.D. Ill. 2007) ......................................................................5, 24, 25, 29

United States v. Sloan, 492 F.3d 884 (7th Cir. 2007) ..................................................................20

Viacom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771 (7th Cir. 1994) ........................13

Voelker v. Porsche Cars N. America, Inc., 353 F.3d 516 (7th Cir. 2003) ....................................27

Williams v. Aztar Ind. Gaming Corp., 351 F.3d 294 (7th Cir. 2003) ...........................................17

Williams v. WMX Technologies, Inc., 112 F.3d 175 (5th Cir. 1997) ...........................................12

Wooten v. Loshbough, 951 F.2d 768 (7th Cir. 1991) ..................................................................23

## STATUTES

18 U.S.C. § 1341 (2006) .......................................................................................................21, 22

18 U.S.C. § 1343 (2006) ............................................................................................................22

18 U.S.C. § 1952 (2006) ............................................................................................................14

18 U.S.C. § 1952(a) (2006).........................................................................................................14

18 U.S.C. § 1952(b) (2006).........................................................................................................14

18 U.S.C. § 1957 (2006) ............................................................................................................14

18 U.S.C. § 1961(1) (2006) ...................................................................................................13, 16

18 U.S.C. § 1962(a) (2006).........................................................................................................19

18 U.S.C. § 1962(b) (2006).........................................................................................................19

18 U.S.C. § 1962(c) (2006)..........................................................................................5, 10, 11, 19, 20

18 U.S.C. § 1962(d) (2006) ..............................................................................................5, 19, 20

18 U.S.C. § 1964(c) (2006)................................................................................................5, 6, 19, 20

18 U.S.C. § 2320 (2006) ............................................................................................................14

Illinois Deceptive Trade Practices Act, 815 ILCS 505/1(e) .........................................................25

Illinois Consumer Fraud Act ("CFA"), 815 ILCS 505/2 .................................................................24

Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 ..............................................................24

## **<u>RULES</u>**

Fed. R. Civ. P. 9(b) ...................................................................................................4, 5, 11
                                                                                                    12, 13, 28

Fed. R. Civ. P. 12(b)(6)...............................................................................................4, 13

Pursuant to this Court's Order of October 3, 2007, Defendants submit this memorandum in support of their Consolidated Motion to Dismiss the Amended Complaint. This memorandum addresses the Counts in the Amended Complaint that, as a matter of law, fail to state a claim for relief against any Defendant.[1]

## I.    INTRODUCTION

By their Amended Complaint, Plaintiffs attempt to transform a federal trademark infringement action into expansive RICO violations and tag-along state law claims. Plaintiffs' Byzantine pleading presents the paradigm of the uniformly condemned practice of civil RICO abuse. As the Seventh Circuit Court of Appeals has frequently observed, civil plaintiffs persist in misusing RICO by attempting to convert various types of business disputes into civil RICO actions.[2] Plaintiffs substitute verbosity for substance throughout the Amended Complaint, including the RICO counts, the redundant declaratory judgment count, the interference with contract claim (where no contract exists), and the inadequately pleaded civil conspiracy, unjust enrichment, and deceptive trade practice claims. In the end, none of these claims is legally cognizable and, therefore, the Amended Complaint should be dismissed with prejudice.

Although the bloated pleading is replete with unparticularized allegations of world-wide conspiracies, the essence of the Amended Complaint is that the Defendants allegedly engaged in "cybersquatting" – namely, using internet domain names allegedly similar to trademarks claimed by the Plaintiffs and other putative class members. Based on these allegations, the Amended Complaint asserts a myriad of federal and state law claims. The result of Plaintiffs' unchecked imagination is an unwieldy 91-page, 469-paragraph complaint.

For the reasons set forth below, Plaintiffs do not, and cannot, allege the essential elements of any purported RICO claim. Those claims, embodied in Counts I and II, constitute

---

[1] Defendants' separate memoranda will address Plaintiffs' failure to allege sufficient facts to sustain one or more of the claims against an individual Defendant.

[2] *See, e.g., Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (noting the "widespread abuse of civil RICO," in which "civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"); *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (describing the "misuse of RICO in the business fraud context"); *see also Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 2007 U.S. App. LEXIS 17618 at *12 (7th Cir. July 25, 2007) (noting that "the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions," and affirming dismissal of RICO claims alleging that defendant fraudulently obstructed plaintiff's efforts to obtain a patent).

classic civil RICO overreaching. Because these Counts fail to state a claim on a multitude of grounds, they should be dismissed with prejudice. Plaintiffs' other non-trademark related claims – namely, the Illinois Consumer Fraud Act and Deceptive Trade Practices Act claim in Count VII, the Declaratory Judgment claim in Count VIII, the tortious interference claims in Count XII, the unjust enrichment claim in Count XIII and the civil conspiracy claim in Count XIV – also fail to state a claim. These counts, too, reflect that Plaintiffs succumbed to the temptation to overplead their trademark claims. They, too, should be dismissed with prejudice. After these inadequately pleaded and legally insufficient claims are stripped away, Defendants' individual memoranda will principally focus on the deficiencies in the Defendant-specific trademark-related allegations upon which the Amended Complaint ultimately rests.

## II.    FACTS AS ALLEGED IN THE AMENDED COMPLAINT

The four named Plaintiffs in this putative class action allege that they own various distinctive or valuable marks. Amended Complaint ¶ 2. Vulcan Golf, LLC ("Vulcan Golf") alleges that it owns the Vulcan trademark and trade name Vulcan Golf which it uses in connection with providing golf clubs and related products. *Id.* ¶¶ 22, 23. John B. Sanfilippo & Sons Inc. ("JBS") asserts ownership of the trademark "Fisher" in connection with the sale of a product line of assorted nuts. *Id.* ¶¶ 31, 32. Blitz Realty Group, Inc. ("Blitz") claims that it has "valuable legal rights" in the use of the names "Blitz," "Blitz Realty" and "Blitz Real Estate" in the local Northern Illinois area in connection with providing real estate services. *Id.* ¶¶ 42, 43. Finally, Vincent E. "Bo" Jackson ("Jackson") contends that he has a "valid and enforceable legally protectable interest" in his name. *Id.* ¶ 63.

As for the Defendants, Plaintiffs allege, inter alia, that Defendant Google, Inc. ("Google") creates and maintains an online marketing/advertising business, *Id.* ¶ 90; Defendant Oversee.net ("Oversee") traffics in, monetizes, and/or sells domain names using an auction system, *Id.* ¶ 209; Defendant Sedo, LLC ("Sedo") manages a database of domain names, *Id.* ¶ 72; Defendant Dotster, Inc. ("Dotster") registers domain names and owns a portfolio of domain names, *Id.* ¶ 74; and Defendant Internet Reit, Inc. ("Ireit") owns and manages domain names. *Id.* ¶ 76.

Plaintiffs further allege that the Defendants infringe Plaintiffs' trademarks due to alleged "cybersquatting," using what Plaintiffs refer to as "Deceptive Domains." *Id.* ¶¶ 160-161. For example, Plaintiffs contend (often incorrectly) that Defendants own, control and exploit

domain names such as VolcanGolf.com, wwwfishernuts.com, nobojackson.com, and BlitzRealty.com. These domain names are alleged to be substantially similar to Plaintiffs' names and marks. *Id.* ¶¶ 1, 65. Plaintiffs claim that the Defendants receive advertising revenue when an Internet user mistakenly types these domain names when attempting to find information regarding Plaintiffs' trademarked products or services. *Id.* ¶¶ 147, 175-191.

Plaintiffs allege further that the Defendants engage in similar trademark infringing conduct in connection with other "Deceptive Domains" to attract internet traffic intended to reach web sites owned by other members of the putative class. *Id.* ¶¶ 165-167. Plaintiffs do not (and could not) allege that the Defendants try to pass off their own goods and services as being products manufactured or sold by Plaintiffs (or of any other putative class member). And, Plaintiffs do not (and could not) contend that any internet user is duped into believing that the web page to which they are directed is, in fact, owned and operated by Plaintiffs or other putative class members. Rather, Plaintiffs contend that the Defendants unfairly profit from advertising revenue earned when internet users "click" on advertisements that Google provides for display at the "Deceptive Domains." *Id.* at ¶¶ 112, 221. According to Plaintiffs, Defendants are not alone in engaging in this alleged misconduct. Instead, they plead the existence of an "enterprise" supposedly consisting of "millions of individuals and entities," located around the world, who collectively participate in an orchestrated campaign to infringe the class' trademarks. *Id.* at ¶¶ 8, 225.

Based on these allegations, Plaintiffs assert fourteen claims against Defendants: **violation of sections 1962(c) and (d) of the RICO statute (Counts I & II)**; cybersquatting (Count III); trademark infringement (Count IV); false designation of origin (Count V); dilution (Count VI); **claims under Illinois' Consumer Fraud & Deceptive Business Practices Act**, Uniform Deceptive Trade Practices Act, **and similar statutes of various states (Count VII); declaratory judgment (Count VIII)**; common law trademark violation (Count IX), contributory trademark infringement (Count X); vicarious trademark infringement (Count XI); **intentional interference with current and prospective economic advantage (Count XII)**; **unjust enrichment (Count XIII)**; and **civil conspiracy (Count XIV)**.

Based on a common factual and legal foundation, this memorandum supports Defendants' consolidated motion to dismiss those Counts highlighted above (on grounds common to all Defendants).

### III.    LEGAL STANDARDS

####    A.    Rule 12(b)(6)

Although a Court, in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), must accept as true properly pleaded factual allegations, a complaint cannot survive a motion to dismiss simply by making conclusory assertions that track the elements of a cause of action.  *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.")

Indeed, in its recent decision in *Twombly*, the Supreme Court expressly rejected the oft-quoted proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69 (holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," and that the phrase "has earned its retirement").  The Court made clear that the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level," *id.* at 1965, and that the complaint must set forth "enough facts to state a claim to relief that is plausible on its face," 127 S.Ct. at 1974.[3]

####    B.    Rule 9(b)

Where, as here, a RICO claim is based upon allegations of fraud, such allegations must be pleaded with the particularity required by Fed. R. Civ. P. 9(b).  *See, e.g., Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).  To meet that standard, "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and

---

[3]  Although *Twombly* was an antitrust case, the Seventh Circuit has subsequently confirmed that the *Twombly* standard applies to other types of claims, including RICO claims.  *See Jennings v. Auto Meters Prods., Inc.*, 495 F.3d 466, 2007 U.S. App. LEXIS 17618 at *11, *15 (7th Cir. July 25, 2007) (applying *Twombly* in affirming the dismissal of RICO claims); *In re Ocwen Loan Servicing*, 491 F.3d 638, 648 (7th Cir. 2007) (Posner, J.) (instructing district court to consider, on remand, whether any portions of complaint alleging a variety of federal and state claims should be dismissed under the recently announced *Twombly* standard).

content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001); *see also Midwest Grinding*, 976 F.2d at 1020 ("[T]he Complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud" (citations and internal quotation marks omitted)). In addition, in cases involving more than one defendant, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted).

Rule 9(b) also applies to those of Plaintiffs' state law claims that are based on allegations of fraud. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (a complaint made pursuant to the Illinois Consumer Fraud Act "must be pled with the same specificity as that required under common law fraud"); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007) (Manning, J.) ("Although notice pleading governs most claims in federal court, under Rule 9(b), heightened pleading governs fraud claims, including claims brought under the Illinois Consumer Fraud Act.").

## IV.    ARGUMENT

### A.    Plaintiffs Fail To State A Claim Under RICO (Counts I and II)

To state a claim against Defendants under 18 U.S.C. § 1962(c), as pleaded in Count I of the Amended Complaint, Plaintiffs must allege that Defendants (1) conducted or participated in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See, e.g. Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2001); *Slaney*, 244 F.3d at 597. To state a claim under 18 U.S.C. § 1962(d), as pleaded in Count II of the Amended Complaint, Plaintiffs must allege that Defendants conspired to violate 18 U.S.C. § 1962(c).

In addition to alleging all of the essential elements of a "substantive" RICO violation (*i.e.*, § 1962(c) or (d)), Plaintiffs must also allege that they suffered an injury to their business or property "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c). To do so, it is insufficient for Plaintiffs to allege that they were injured by some act "in furtherance of" a RICO conspiracy. Rather, Plaintiffs must allege an injury proximately caused by the predicate criminal acts that form the "pattern of racketeering activity" under § 1962(c). *See, e.g.*, *Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (holding that a person injured by an overt act done in

furtherance of a RICO conspiracy, but which does not independently qualify as a predicate act of racketeering, does not have a cause of action under § 1964(c)).

As discussed below, Plaintiffs have failed to adequately allege *any* of these essential elements of their claims.

      **1.**      **Plaintiffs Fail To Adequately Allege a RICO "Enterprise"**

          **a.**      **Plaintiffs Do Not Allege The Requisite Structure**

"A RICO enterprise must have an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (citations and internal quotation marks omitted). It must be "more than a group of people who get together to commit a pattern of racketeering activity," but rather "an organization with a structure and goals separate from the predicate acts themselves." *Id.* (citations and internal quotation marks omitted). "The hallmark of an enterprise is a structure." *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citations and internal quotation marks omitted).

The alleged enterprise in this case is absurdly large and amorphous, and the Amended Complaint is completely devoid of allegations regarding its structure for decision-making. Even before the Supreme Court's decision in *Twombly*, the Seventh Circuit required RICO complaints to include allegations explicitly setting forth the structure of the alleged enterprise. *See, e.g., Richmond*, 52 F.3d at 645-46; *Jennings v. Emry*, 910 F.2d 1434, 1439-41 (7th Cir. 1990); *see also Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990) (holding that the complaint must adequately identify the enterprise, "[a]nd, such identification must necessarily include details about the structure of the enterprise" (citing *Jennings*, 910 F.2d at 1439-41)).

The Amended Complaint alleges that the expansive RICO "enterprise" consists of the following individuals and entities "associated in fact":

> "(1) Defendant Google; (2) the 'Parking Company Defendants' [*i.e.*, defendants Sedo, Oversee, and Dotster]; (3) all AdWords Participants/Advertisers; (4) all AdSense Participants/Publishers; (5) all other individuals and entities participating in Defendant Google's AdSense and Adwords Networks and/or the Defendant Google Advertising Network; (6) Defendant Google Search Partners; and (7) other unnamed Co-conspirator Defendants that agreed to and engaged in the unlawful actions described herein."

Amended Complaint at ¶ 225. Furthermore, Google's networks are alleged to include "millions of individuals and entities located throughout the world involved in Internet advertising and marketing." Amended Complaint ¶ 8. All of those "millions of individuals and entities" are further alleged to be members of the RICO "enterprise." Amended Complaint ¶ 225. This far-flung, unaffiliated amalgam of disparate unidentified individuals no more constitutes a RICO enterprise than the group comprised of the listings in the Chicago phone book.

The Amended Complaint fails to even hint at a structure for decision-making by this unwieldy group of millions of members located throughout the world. While the Amended Complaint states, in wholly conclusory fashion, that the enterprise has an "ascertainable structure," the only allegations touching on this are the conclusory assertions that Defendant Google "is associated with and controls the Enterprise" and that the other Defendants "conducted and participated" in the affairs of the enterprise. Amended Complaint ¶ 241. There are no allegations describing the organizational decision-making structure of the enterprise, the roles of the various Defendants in that unidentified structure, or the roles of the millions of non-defendants in that unidentified structure. Indeed, there are no allegations regarding when the enterprise was formed, how it was formed, or who was involved in its formation. *Cf. Twombly*, 127 S.Ct. at 1970 n.10 ("Apart from identifying a seven-year span in which the § 1 violations were supposed to have occurred . . ., the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies."). Such a patently unquantifiable and open-ended description of the purported members of an enterprise is inadequate as a matter of law. *See, e.g.*, *Richmond*, 52 F.3d at 645 ("Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."); *see also Stachon*, 229 F.3d at 676 (finding insufficient, as a matter of law, "Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure").

The Amended Complaint merely purports to identify the "structure" of the enterprise by virtue of the allegedly wrongful conduct of a few of its millions of members – *i.e.*, the Defendants, though the complaint does not even distinguish among the Defendants in this regard. Amended Complaint ¶ 241. Such allegations are insufficient as a matter of law, because an enterprise must be "an organization with a structure and goals *separate from* the predicate acts themselves." *Stachon*, 229 F.3d at 675 (emphasis added). As the Seventh Circuit explained in

*Jennings*: "An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1440; *see also Stachon*, 229 F.3d at 676 ("This court has repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does."); *Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990) ("The closest plaintiffs come to breathing life into the alleged enterprise is their assertion that the enterprise can be identified by the conduct and activities of the defendants. Unfortunately for plaintiffs, the identification of an enterprise by reference to the activities and conduct of defendants is not sufficient to state a claim.").

Nor do Plaintiffs fare any better by asserting that the alleged misconduct was carried out pursuant to an alleged conspiracy involving multiple parties, because a conspiracy, even if adequately alleged (which it is not in this case), is not a RICO enterprise. *Stachon*, 229 F.3d at 676 ("To withstand Appellees' motion to dismiss, however, Appellants must present something more than [allegations describing the alleged pattern of racketeering activity] and assertions of conspiracy; otherwise, 'every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation.' From *Bachman*, we know that is not the law." (citing *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999)). Rather, "while the hallmark of conspiracy is agreement, the central element of an enterprise is structure." *Jennings*, 910 F.2d at 1441 (citation omitted).

Plaintiffs' RICO claims must be dismissed because the Amended Complaint, like the original Complaint that preceded it, completely fails to adequately plead this "central element" of the purported RICO enterprise. *See, e.g.*, *id.* (affirming dismissal of RICO claim because "[t]he complaint may allege agreement; structure, however, it does not").

### b.    The Members Of The Alleged Enterprise Do Not Share A Common Purpose

The RICO enterprise allegations also fail because the alleged members of the enterprise do not share a common purpose, an "essential ingredient" of a RICO enterprise. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004); *see also Stachon*, 229 F.3d at 675 ("A RICO enterprise must have an ongoing structure of persons associated through time, *joined in purpose* . . . ." (emphasis added)). In *Baker*, for example, the plaintiffs alleged that IBP, their

former employer, violated RICO through the hiring of illegal immigrants to keep wages depressed.  The alleged RICO enterprise consisted of IBP, various immigrant welfare organizations that allegedly referred illegal immigrants to IBP, and "recruiters" that allegedly smuggled illegal immigrants into the country for IBP to hire.  *Baker*, 357 F.3d at 687, 691.  The court held that the members of the alleged enterprise lacked the requisite common purpose: "IBP wants to pay lower wages; the recruiters want to be paid more for services rendered (though IBP would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group.  These are divergent goals."  *Id.* at 691.

While Plaintiffs allege that the members of the purported enterprise "share the common purpose of maximizing their profits and market share," Amended Complaint ¶ 238, these are goals held by virtually all commercial entities in the United States.  Such a generic purpose is insufficient to allege an enterprise, according to the Seventh Circuit:

> [D]iverse parties, such as these [alleged members of the enterprise], customarily act for their own gain or benefit in commercial relationships.  Given the commercial nature of the various parties' relationships . . . and the independent interests necessarily governing those relationships, the amended complaint fails to dispel the notion that the different parties entered into agreements . . . for their own gain or benefit.

*Stachon*, 229 F.3d at 677 n.4.  Given that the alleged members of the enterprise in this case are all for-profit entities, Plaintiffs have done nothing to allege an enterprise with a common purpose that goes beyond normal business relations.

Indeed, the alleged members of the enterprise plainly have *divergent* purposes. For example, as Plaintiffs concede in the Amended Complaint, Oversee, Sedo, Dotster and Ireit are *competitors*, each of whom would undoubtedly like to maximize its own market share *at the expense of* the others.  *See, e.g.*, Amended Complaint ¶ 143; *see also id.* ¶¶ 97, 100, 102, 147, 151 (alleging that Defendants are each owners of a large number of domain names, each *separately* contract with Google, and each share revenues from those contracts *only* with Google).  And the members of the sprawling enterprise include both those who *pay* advertising and marketing fees in connection with the alleged Google network (who obviously have the goal of minimizing the fees they are required to pay) and those who *receive* advertising and marketing fees in connection with that network (who obviously have the goal of maximizing the fees they

receive). *See id.* ¶ 225 (including in the alleged Enterprise, *inter alia*, anyone who participates in any capacity whatsoever in Google's advertising programs).

As these goals are far more divergent than those of the alleged members of the purported RICO enterprise the court rejected in *Baker*, Plaintiffs' RICO claims must be dismissed for this independent reason.

### 2.     The Amended Complaint Fails To Adequately Allege That Defendants Participated In The Direction Of The Alleged Enterprise

Section 1962(c) makes it unlawful for a person to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" through a pattern of racketeering activity. 18 U.S.C. § 1962(c) (2006). In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that the word "conduct," when used as both a verb and a noun in that phrase, "requires an element of direction." *Id.* at 178. As such, a plaintiff does not adequately allege that a defendant "participate[d], directly or indirectly, in the conduct" of the enterprise's affairs merely by asserting that the defendant "participated in the affairs" of the enterprise. *Id.* at 179. Rather, it is necessary to allege that the defendant had some part in *directing* the affairs of the enterprise. *Id.* Liability is limited to persons who "participated in the operation or management of the enterprise itself, and . . . asserted some control over the enterprise." *Slaney*, 244 F.3d at 598. Although a defendant need not have "absolute domination over the enterprise . . . , RICO does require that the person have had some control over the enterprise itself." *Id.*

Here, Plaintiffs merely allege the boilerplate buzzwords that "Defendant Google and the Parking Company Defendants knowingly and willfully conducted or participated, directly and/or indirectly, in the conduct of the affairs of the Enterprise." Amended Complaint ¶ 236. But there are no factual allegations that support that legal conclusion. *Cf. Twombly*, 127 S. Ct. at 1964-65 (pleading rules require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Indeed, the only allegations even suggesting any exercise of control, over anything or anyone, is the boilerplate allegation that Defendant Google controls the enterprise because it exercises control over its own business. Amended Complaint at ¶ 241. While the Amended Complaint alleges certain conduct by Defendants, it merely purports to describe conduct by which such companies allegedly conduct *their own* activities; it does not describe conduct by which such companies participate in the "operation or management" of the enterprise itself, and, most importantly, it does not allege that such companies exert any degree of control over the alleged mammoth, worldwide RICO

enterprise.  Indeed, the Amended Complaint is devoid of any allegation that these Defendants in any way are involved in directing the affairs of *any alleged member* of the enterprise (which would still be insufficient), much less directing the affairs of the absurdly large enterprise itself.

Absent such allegations, the RICO claims fail as a matter of law.  In *Slaney*, for example, the alleged RICO enterprise (referred to as "the Olympic Movement") consisted of the International Olympic Committee, various international federations, national Olympic committees, organizing committees and others, and the plaintiff alleged that the drug testing programs conducted by the enterprise were a fraud.  *See Slaney*, 244 F.3d at 596-97.  The Seventh Circuit affirmed the dismissal of the RICO claims against the United States Olympic Committee (USOC), a purported member of the alleged RICO enterprise, because, *inter alia*, the Complaint failed to adequately allege that USOC exerted any control over the alleged enterprise. *Id.* at 598.  It was not enough, the Court held, for the plaintiff to allege that the USOC had been delegated authority by the enterprise to conduct the allegedly fraudulent drug testing program in the United States, because "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to submit an individual to liability under § 1962(c)." *Id.* (citation omitted).  Rejecting the plaintiff's contention that control over the enterprise's drug testing program in the United States was sufficient, the court stated:  "We cannot draw the conclusion that USOC's control over one aspect of the Olympic Movement's activities in this country translates into the USOC having had control over the Movement as an enterprise.  Simple exertion of control over one aspect of an enterprise's activities does not evince control over the enterprise itself." *Id.*; *see also Baker*, 357 F.3d at 691-92 ("The nub of the complaint is that IBP operates *itself* unlawfully; . . . the complaint does not allege . . . that IBP has infiltrated, taken over, manipulated, disrupted, or suborned a distinct entity or even a distinct association in fact.").

Because Plaintiffs have failed to adequately plead (and could not plead in good faith) the essential management and control elements of their RICO claims, those claims must be dismissed for this independent reason alone.

### 3. The Amended Complaint Fails To Plead The Alleged Predicate Acts Of Fraud With The Requisite Particularity

Plaintiffs' RICO claims must also be dismissed because the Amended Complaint fails to plead the alleged predicate acts of mail and wire fraud with the particularity required by Fed. R. Civ. P. 9(b).  To meet that rigorous standard, "a RICO plaintiff must allege the identity

-11-

of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney*, 244 F.3d at 599; *see also Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 784 (7th Cir. 1999) (same). In addition, in cases involving more than one defendant, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.").

        The Amended Complaint fails to meet any of these requirements. Its extreme length should not be mistaken for particularity: "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for absence of detail." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see also R.E. Davis Chem. Corp. v. NALCO Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990) ("[A] plaintiff who relies upon acts of mail and wire fraud as the basis for a RICO claim must do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud.").

        Plaintiffs' allegations as to fraud-based predicate acts are fatally deficient in many areas:

- *Time*—Plaintiffs' conclusory allegations that "Defendants" placed "matter and things" in "post offices" and transmitted "matter and things" by wire are insufficient. There is not a single date tied to a single communication to which a Defendant was a party in the entire Amended Complaint. Plaintiffs must allege the *exact date* of *each* communication Plaintiffs claims constituted a predicate act. *Builders Bank v. First Bank & Trust Co. of Ill.*, No. 03 C 4959, 2004 WL 1497766 at *8 (N.D. Ill. June 28, 2004).

- *Place*—Plaintiffs fail to identify where any alleged predicate act took place other than to state that they all took place at unspecified "post offices."

- *Content*—Plaintiffs' reference to "matter and things" fails to identify the content of the communications. Plaintiffs' further clarification of "including but not limited to contracts, invoices, correspondence, and payments," would encompass everything that an ordinary business would mail or transfer over

the wire.  In order to satisfy Rule 9(b), Plaintiffs must allege exactly *what was said or done* in *each* communication at issue that constituted actionable mail or wire fraud.  *EQ Fin., Inc. v. Pers'l Fin. Co.*, 421 F. Supp. 2d 1138, 1147 (N.D. Ill. 2006).

- *Method*—Plaintiffs broadly allege that all Defendants committed predicate acts by the use of mail or wire.  But Plaintiffs must allege, for *each* communication, whether it was made through mail, internet, telephone, or some other means.  *Id.*

- *Identities of the Parties*—Plaintiffs fail to specifically allege who made any of the communications.  The Seventh Circuit has specifically held that it is not sufficient to "lump" a group of defendants together and allege that the group sent communications or the group members communicated with each other.  *Viacom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).  The complaint must specifically identify which party sent each communication that forms the basis for a predicate act, and to whom the communication was sent.  *Id.*

Plaintiffs' allegations as to fraud-based predicate RICO acts do not satisfy a single requirement of Rule 9(b) and the RICO claims, therefore, should be dismissed.

### 4.     The Amended Complaint Fails To Plead A "Pattern Of Racketeering Activity"

The term "racketeering activity" is statutorily limited to certain specifically enumerated crimes.  *See* 18 U.S.C. § 1961(1) (2006).  The "racketeering activity" on which Plaintiffs' RICO claim purports to be based consists principally of alleged acts of mail and wire fraud.  Plaintiffs have also added some new allegations of non-fraud based predicate acts that they appear to have randomly plucked from the statute in an attempt to salvage their RICO claims after the first round of Rule 12(b)(6) briefing.  Amended Complaint ¶¶ 243-253.  These allegations, even considered collectively, do not amount to the pattern of racketeering activity required for a successful RICO claim.

#### a.     Plaintiffs' New Allegations Of Non-Fraud Based Predicate Acts Are Insufficient As A Matter Of Law

As to the non-fraud based allegations, Plaintiffs have supplemented their Amended Complaint with cursory allegations of three new predicate acts.  These allegations essentially represent yet another misplaced exercise in re-characterizing Plaintiffs' cybersquatting and trademark claims.  For example, Plaintiffs allege in a conclusory fashion that by engaging in the "Deceptive Domain Scheme" otherwise described in the Amended

-13-

Complaint, Defendants engaged in the trafficking of goods and services bearing counterfeit marks in violation of 18 U.S.C. § 2320 (2006). Amended Complaint ¶ 251. But Plaintiffs fail to specify any such alleged goods and services at issue and they do not explain how Defendants transported or transferred any such goods within the meaning of section 2320, nor do they provide any other details in support of this claim.

Similarly, Plaintiffs suggest that the "Deceptive Domain Scheme" also constituted a violation of 18 U.S.C. § 1957 (2006), which relates to money laundering. Plaintiffs obliquely aver that the advertising revenue allegedly collected by Defendants constituted criminally derived property, but they do not identify a "criminal offense" committed by Defendants from which the revenues were derived, nor do they identify the "specified unlawful activity" in which Defendants were engaged for purposes of section 1957. Amended Complaint ¶ 250. At best, Plaintiffs' allegations under section 1957 merely reincorporate the mail and wire fraud allegations that form the principal basis for their RICO claim, which fail for the reasons described *infra*. Such conclusory allegations simply are not sufficient to establish the requisite predicate acts. *See, e.g., Appraisers Coalition v. Appraisal Institute*, No. 93-C-913, 1993 U.S. Dist. LEXIS 11770 at *18 (N.D. Ill. Aug. 18, 1993) (holding that plaintiffs failed to allege predicate acts where the relevant statutory sections were mentioned in a total of two paragraphs in the complaint and neither paragraph made any allegation other than the naked assertion that the statutes were violated).

Finally, Plaintiffs' invocation of 18 U.S.C. § 1952 (2006) as a non-fraud based predicate act lacks any explanation at all, probably because that statute is so plainly irrelevant to the circumstances alleged here. *See, e.g*., Amended Complaint ¶ 249.ab. Section 1952 relates to traveling in interstate commerce in aid of unlawful activity, but the unlawful activities implicated by that section are gambling, liquor, narcotics, extortion, bribery and arson, none of which are at issue here even according to Plaintiffs' jaundiced view of events. *See Allen Bros., Inc. v. Byrdak*, No. 98-C-6190, 1999 U.S. Dist. LEXIS 11614, at *6 (N.D. Ill. July, 26, 1999) (Plaintiff alleging violation of 18 U.S.C. § 1952(a) "evidently failed to read on to § 1952(b), which defines 'unlawful activity,' as used in §1952(a), as including only violations of laws involving gambling, liquor, narcotics, extortion, bribery, or arson, none of which are involved in this case."). In short, none of the newly pleaded crimes supports the critical element of racketeering activity necessary to sustain a RICO claim.

**b.    Plaintiffs' Fraud-Based Allegations, In Addition To Being Insufficiently Particularized, Do Not Constitute Mail Or Wire Fraud**

The elements of mail fraud are "(1) a scheme or artifice to defraud with the intent to defraud; (2) through a deception about a material fact; and (3) the use of the mails (or interstate telecommunication) to further the fraud." *See, e.g.*, *Corley v. Rosewood Care Center, Inc.*, 152 F. Supp. 2d 1099, 1108 (C.D. Ill. 2001). A scheme to defraud requires "the making of a false or material misrepresentation, or the concealment of a material fact." *Id.* In addition, to fall within the scope of the mail and wire fraud statutes, the object of the fraud must be money or property in the hands of the alleged victim. *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (wire fraud); *Cleveland v. United States*, 531 U.S. 12, 26 (2000) (mail fraud). Plaintiffs' allegations do not, and could not, meet these requirements.

**(1)    Infringement Allegations Do Not Constitute A "Scheme To Defraud"**

Courts routinely reject plaintiffs' efforts to manufacture RICO claims by "reformulating" infringement claims into purported claims of mail or wire fraud. In *Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996), for example, the plaintiffs accused the defendant of infringing their copyrights on six songs, and also asserted a RICO claim, contending that the defendants' sales and marketing of the infringing songs by mail and wire constituted RICO predicate acts of mail and wire fraud. *Id.* at 1216. In affirming the dismissal of the RICO claims, the Court of Appeals held that the district court correctly concluded that the RICO claims were merely "reformulated copyright infringement claims." *Id.* at 1217. The court noted that the RICO claims were based on the same misconduct alleged in the copyright infringement claims, and that the purported fraud claims depended entirely on there being infringement of the plaintiff's copyrights. *Id.* "Because [plaintiffs'] RICO counts do no more than allege copyright infringement under the label of mail and wire fraud, and copyright infringement is not a predicate act under RICO, the district court properly concluded that [plaintiffs] failed to state a claim."

Similarly, in *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006), the court rejected the plaintiffs' attempt to state a RICO claim based on the alleged use of a trademark belonging to the plaintiffs. *Id.* at 630-631. The court noted that "the alleged scheme boils down to a claim of willful trademark infringement – not racketeering." *Id.* at 630. The

court observed that "[a]ll businesses use interstate mail or wires," and that "Congress did not intend that every trademark dispute would be brought under RICO." *Id.* at 631. As such, the court found that "Plaintiffs may not reformulate garden variety trademark infringement claims into mail or wire fraud in order to state a violation of RICO." *Id.*; *see also Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 490-92 (S.D.N.Y. 2000) (rejecting RICO claim based on allegations that were, in essence, "nothing more than claims of knowing and deliberate patent infringement"); *U.S. Media Corp. v. Edde Entm't, Inc.*, No. 94-Civ.-4849, 1996 U.S. Dist. LEXIS 13389, at *37-39 (S.D.N.Y. Sept. 10, 1996) (rejecting RICO claim based on copyright infringement allegedly conducted through use of the mails and wires; concluding that a copyright violation "may not be 'bootstrapped' into a violation of the mail and wire fraud statutes").

Although sprinkled with references to "deception" and "misrepresentations," the Amended Complaint is a transparent attempt by Plaintiffs to reformulate claims of infringement and cybersquatting into mail and wire fraud in the hope of availing themselves of RICO's treble damages and fee shifting provisions.[4] Tellingly, Plaintiffs even conclude the section of the Amended Complaint entitled "RICO Allegations" by stating that the "trademark infringement and unfair competition laws are designed and intended to protect the public from" the alleged conduct on which the RICO claims are based. Amended Complaint ¶ 276; *see also id.* at ¶ 277. But Congress chose *not* to include trademark infringement or unfair competition among the acts constituting "racketeering activity" for purposes of RICO. 18 U.S.C. § 1961(1). Consistent with the Seventh Circuit's repeated rejection of the widespread abuse of civil RICO, this Court should reject Plaintiffs' attempt to "reformulate" their cybersquatting and infringement claims into RICO claims and dismiss these Counts.

---

[4] Plaintiffs' deliberate abandonment of their previously selected moniker for the alleged misconduct—the "Illegal Infringement Scheme"—in favor of the term "Deceptive Domain Scheme" now used in the Amended Complaint, does nothing to help Plaintiffs' cause. *Compare* Amended Complaint ¶¶ 1-13 (summarizing the "Nature of the Action" as the execution of a "Deceptive Domain Scheme"), with Complaint ¶¶ 1-9 (summarizing the "Nature of the Action" as the execution of an "Illegal Infringement Scheme"); *see also Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 845 (N.D. Ill. 1998) (Manning, J.) (While granted leave to re-plead, plaintiffs were "admonished that, if their second amended complaint does not cure the deficiencies identified by the court in this order, they may not get another bite at the apple.").

**(2)     The Amended Complaint Fails To Plead A "Material" Misrepresentation**

Plaintiffs' mail and wire fraud allegations also fail because the Amended Complaint does not, and cannot, allege a misrepresentation that is "material," an essential element of mail and wire fraud.  *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 25 (1999) ("[W]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.").  A misrepresentation is "material" only if it "has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed."  *Id.* at 16.  If a misstatement is one on which "no person of ordinary prudence and comprehension would rely," it is not material.  *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003); *see also Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1009 (7th Cir. 2004) (quoting prior case law for the proposition that "fraud occurs only when a person of ordinary prudence and comprehension would rely on misrepresentations").

The essence of the misconduct alleged here is that the Defendants generate advertising revenue when an internet user makes a typing or spelling error, which results in the user being directed to a web page owned or controlled by the Defendants rather than the web page the user allegedly intended to reach.  But Plaintiffs do not (and could not) allege that the Defendants try to deceive the user into believing that the web page to which they are directed is, in fact, owned and operated by a Plaintiff or other putative class members.  For example, Plaintiffs do not, and could not, allege that Defendants try to pass off their own goods and services as being products manufactured or sold by a Plaintiff (or of any other putative class member).

Indeed, quite to the contrary, the Amended Complaint alleges that when a user types an incorrect spelling of Plaintiffs' web addresses and gets a site controlled by a Defendant, the site includes advertisements for Plaintiffs' *direct competitors*.  *See, e.g.*, Amended Complaint ¶¶ 266.  The Amended Complaint does not, and could not, allege that any internet user of ordinary prudence and comprehension would believe that Plaintiffs have begun advertising for their direct competitors.  Thus, because the Amended Complaint does not allege a misrepresentation on which a "person of ordinary prudence and comprehension would rely," it does not allege a misrepresentation that is "material," and it therefore does not allege a predicate act of mail or wire fraud.  *See, e.g.*, *Williams*, 351 F.3d at 299-300 (rejecting as "frivolous" a

RICO claim based on alleged misrepresentations on which no person of ordinary prudence would rely).

### (3)  The Object Of The Alleged Fraud Is Not Money Or Property In The Hands Of The Alleged Victim

The mail and wire fraud statutes do not address all forms of fraud or deception, nor all forms of fraud or deception that are executed through the use of mail or wires.  Rather, even material misrepresentations will not constitute mail or wire fraud unless the "object of the fraud" is "money or property in the victim's hands."  *Pasquantino*, 544 U.S. at 355 (internal punctuation omitted).  In *Cleveland v. United States*, for example, the Supreme Court reversed a conviction because the object of the fraud – video poker licenses fraudulently obtained from the state of Louisiana by making material misrepresentations sent through the mail – did not constitute "property" in the hands of the state.  *Cleveland*, 531 U.S. at 15-16.  The Court clarified that it did not matter if the object of the fraud "may become property in the recipient's hands; for purpose of the mail fraud statute, the thing obtained must be property in the hands of the victim."  *Id.* at 15.

Even if Plaintiffs had adequately alleged that Defendants made material misrepresentations, such alleged conduct would not qualify as mail or wire fraud because Plaintiffs do not allege that the "object of the fraud" was money or property in the hands of the internet users who are the alleged victims of the fraud.  Rather, as the Amended Complaint repeatedly makes clear, the alleged "object of the fraud" was money the Defendants would obtain *from advertisers* participating in a Google advertising program when internet users "click on" advertisements on the "Deceptive Domains."  *See, e.g.*, Amended Complaint ¶¶ 4, 112, 155, 221, 241.d.  Plaintiffs do not, and cannot, allege that the advertisers who allegedly pay the Defendants those revenues are victims of the alleged fraud.  And Plaintiffs do not, and cannot, allege that the Defendants obtain, or intend to obtain, money, property, or anything whatsoever from the internet users to whom misrepresentations are allegedly directed.[5]

---

[5] Indeed, in an effort to conjure up some injury allegedly suffered by the internet users, Plaintiffs contend that the alleged misconduct deprives internet users of "an inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association, or sponsorship of goods or services."  *Id.* ¶ 275.  That "inherent interest" is simply not a "property interest" belonging to the internet users.  *See, e.g., Cleveland*, 531 U.S. at 20-27 (state government, though undoubtedly having a "substantial economic stake in the video poker industry," has no property interest in licenses it issues).

For all of these reasons, the alleged misconduct of which Plaintiffs complain is simply not mail or wire fraud. *Cf. Corley*, 388 F.3d at 1008 ("Not all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme to defraud.'"). Plaintiffs have therefore failed to allege even a single predicate act (much less the requisite "pattern") of racketeering activity. Their RICO claims must, therefore, be dismissed.

### 5. The Amended Complaint Fails To Adequately Allege A Conspiracy To Violate RICO

Because Plaintiffs fail to allege an act of racketeering under § 1962(a)-(c), they cannot allege conspiracy under § 1962(d). The Supreme Court has held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." *Beck v. Prupis*, 529 U.S. 494, 507 (2000). Since Plaintiffs have failed to allege adequately a § 1962(c) violation, and have not even attempted to allege a § 1962(a) or (b) violation, Plaintiffs may not allege conspiracy under § 1962(d) based simply on the plain language of that statute.

While a violation of § 1962(c) is not essential to plead a § 1962(d) violation, Plaintiffs have not alleged the necessary elements of a § 1962(d) conspiracy. "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Slaney*, 244 F.3d at 600 (*quoting Goren*, 156 F.3d at 732). The *Goren* court explained that a RICO conspiracy requires both an agreement to participate in the enterprise and an agreement to commit two predicate acts. Thus, "[i]f either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy." *Goren*, 156 F.3d at 732. Thus, allegations of mere "affiliation" with an enterprise or mere agreement to commit criminal acts does not satisfy the pleading requirements of § 1962(d). *See id.*

While Plaintiffs recite the formula "in furtherance of a conspiracy" multiple times (*see* Amended Complaint ¶¶ 157, 159-161, 163, 184, 192, 196, 249.m-p, 249.r, 249.aa, 432, 467-468), Plaintiffs cannot and have not alleged that the Defendants "conspired knowingly to facilitate the activities of anyone to whom § 1962(c) would apply—namely, an operator or manager of the . . . RICO enterprise." *See U.S. v. Cummings*, 395 F.3d 392, 398 (7th Cir. 2005). Plaintiffs do not allege that the Defendants agreed to conduct the affairs of the alleged enterprise, nor do Plaintiffs allege that the Defendants agreed to commit mail or wire fraud. "It is well established that a complaint may be dismissed if it contains only conclusory, vague and general

allegations of a conspiracy." *Goren*, 156 F.3d at 733 (citing the Third Circuit for the proposition that "a conspiracy claim must contain supportive factual allegations describing the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in the conspiracy."). Plaintiffs' vague and conclusory allegations of association with an enterprise are simply insufficient to state a claim under § 1962(d). For the foregoing reasons, Plaintiffs' RICO claims should be dismissed.

> **6.** **The Amended Complaint Fails To Adequately Allege The Reliance Requirements Of RICO**

Even if Plaintiffs had alleged all of the essential elements of a violation of 18 U.S.C. § 1962(c) or (d), which they have not, the RICO claims should still be dismissed because Plaintiffs have not adequately alleged that they suffered an injury to their business or property "by reason of" such RICO violation. 18 U.S.C. § 1964(c).

Where, as here, a RICO claim is based on alleged predicate acts of mail or wire fraud, a plaintiff does not suffer an injury "by reason of" the RICO violation unless someone has actually relied upon the alleged misrepresentations constituting the fraud. *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 176-78 (2d Cir. 2004) ("We therefore now hold that in order to prevail in a civil RICO action predicated on any type of fraud, including bank fraud, the plaintiff must establish 'reasonable reliance' on the defendant's purported misrepresentations or omissions"); *Greenleaf Nursery v. E.I. DuPont DeNemours*, 341 F.3d 1292, 1306 (11th Cir. 2003) ("[T]o establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for establishing common law fraud."), *cert. denied*, 541 U.S. 1037 (2004).

Contrary to some other Circuits, the Seventh Circuit has held that it is not always necessary for the plaintiff to have *itself* received and relied upon the allegedly fraudulent statements. *Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007) (noting a circuit split on this issue). However, because the essence of fraud is deception, *see, e.g.*, *United States v. Sloan*, 492 F.3d 884, 890 (7th Cir. 2007), it follows that if *no one* relies upon the alleged deception, a plaintiff cannot be said to be harmed "by reason of" the alleged fraud. *See, e.g.*, *Bank of China*, 359 F.3d at 176-78; *Greenleaf Nursery*, 341 F.3d at 1306.

As explained in section IV.A.4(b)(2) *supra*, Plaintiffs do not allege that they, internet users, *or anyone else*, were actually deceived into believing that any "Deceptive Domain" owned or operated by the Defendants was actually owned or operated by Plaintiffs (or

any other putative class member).[6]  Thus, even if Plaintiffs had adequately alleged that the Defendants made a misrepresentation to that effect (and they have not and cannot), Plaintiffs would still have failed to allege that they suffered an injury "by reason of" the alleged predicate acts of mail and wire fraud.  As a consequence, the RICO Counts fail to state a claim and must be dismissed.

### 7.    Plaintiffs Do Not Satisfy RICO's Proximate Cause Requirement Because Their Injury Is, At Best, "Derivative" Of Alleged Injury To Others

Ultimately, Plaintiffs' RICO claims fail because Plaintiffs cannot plead that their alleged injuries were directly caused by Defendants' misconduct.  Plaintiffs' alleged injuries are, at best, derivative of injuries (if any) to their prospective customers.  *See, e.g.*, *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995).  As a result of their inability to plead the fundamental proximate causation requirement of RICO, Plaintiffs' RICO claims must be dismissed.

In *Israel Travel*, the plaintiff asserted a RICO claim based on allegations that the defendants make fraudulent representations to the plaintiff's prospective customers, which allegedly caused the plaintiff to lose business.  *See id.* at 1253-54, 1257-58.  The plaintiff's claim failed, the court held, because the injury allegedly suffered by the plaintiff (lost sales) was indirect – that is, it was "derivatively" caused by frauds allegedly perpetrated against the plaintiff's prospective customers.  *Id.* at 1258.  As the court explained: "[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only the customers are the beneficiaries of the statutory protection. . . Section 1341 does not protect vendors to persons who may be deceived, and firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO."  *Id.*

The same principle applies here.  Plaintiffs allege that Defendants perpetrated a fraud on internet users attempting to reach web pages owned and controlled by Plaintiffs and

---

[6] Although trademark infringement can involve a mere "likelihood of confusion," trademark infringement does not constitute "racketeering activity" under RICO.  Rather, Plaintiffs' RICO claim is based on alleged predicate acts of mail and wire fraud, and to be injured "by reason of" such acts, it is necessary for someone to have actually relied upon the misrepresentations constituting the alleged fraud. *See, e.g.*, *Bank of China*, 359 F.3d at 176-78; *see also* footnote 5, *supra*.

other putative class members, and that, as a result, Plaintiffs suffered lost business opportunities. *See, e.g.*, Amended Complaint ¶ 451. Plaintiffs' alleged injury, therefore, is derivative of the injury allegedly suffered *directly* by the internet users. *See* Amended Complaint ¶ 277 ("Defendants' bad actions . . . *directly* cause injury to the public" (emphasis added)); *see also* ¶¶ 158, 179 (alleging that the Defendants divert Internet users from the web sites they attempted to reach); ¶ 273 (alleging that the "Deceptive Domain Scheme" is likely to cause confusion, mistake, and deception caused by the Defendants and relied upon by Internet users); ¶ 275 (alleging that the Defendants' activities have irreparably harmed the general public which has an "inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association, or sponsorship of goods or services"). That the confusion and deception allegedly suffered by internet users may have indirectly harmed Plaintiffs, in the form of lost business opportunities, is irrelevant, because a RICO plaintiff may not recover for alleged injuries that are derivative of injuries to others. *See, e.g., Israel Travel*, 61 F.3d at 1258 ("[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers.").[7]

   The Supreme Court has recently affirmed this proximate causation requirement in the RICO context. In *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1998 (2006), the Court concluded that a plaintiff that has lost market share or a competitive advantage as a result of an alleged scheme to defraud a third party could not maintain a RICO action. *Id.* at 1997-98. The Anza plaintiff, Ideal Steel, and defendant National Steel conducted competing businesses selling steel mill products and related supplies and services. Ideal Steel claimed that National Steel attempted to gain a competitive advantage through its fraudulent scheme by not charging cash-paying customers the applicable New York City and State sales taxes on purchases. *Id.* at 1998. Ideal claimed that National engaged in mail and wire fraud by not paying the requisite taxes to

---

[7]Though *Israel Travel* itself involved mail fraud as the predicate act, the reasoning of *Israel Travel* applies with equal force to claims of wire fraud under 18 U.S.C. § 1343 as it does to claims of mail fraud under 18 U.S.C. § 1341. Each statute criminalizes a parallel class of conduct: "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341 (2006); *cf.* 18 U.S.C. § 1343 (2006) (criminalizing the same class of conduct). Indeed, courts have applied the holding of *Israel Travel* in analyzing RICO claims alleging predicate offenses of both wire fraud and mail fraud. *See, e.g.*, *North Shore Medical Center, Ltd. v. Evanston Hosp. Corp.*, No. 92-C-6533, 1995 WL 723761, *4 (N.D. Ill. Dec. 5, 1995).

the state. *Id.* Essentially, Ideal alleged that the scheme to defraud the New York tax authority allowed National to use the proceeds from the fraud to offer lower prices resulting in more customers for National at Ideal's expense. *Id.* The Court found that while Ideal may have suffered harm when National failed to charge the applicable sales tax, the direct victim of the alleged RICO violation, the fraud, was the State of New York, not Ideal. *Id.* at 1997. The Court concluded:

> Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices . . . A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense.

*Id.* at 1997-98.

Plaintiffs have alleged that Defendants engaged in a "Deceptive Domain Scheme to defraud or obtain money [from consumers] by means of false pretenses, representations or promises." Amended Complaint ¶¶ 247-248. This allegation is a vivid example of precisely the kind of averment that confirms the absence of proximate causation. As pleaded, the direct victim of any fraud here would have been consumers, not Plaintiffs. Plaintiffs claim that Defendants engaged in an "Deceptive Domain Scheme" for the purpose of gaining revenue and commercial profit resulting in "increased advertising click revenue, increased market share, and other economic and related benefits and commercial gain." Amended Complaint ¶ 461. As in *Anza,* any competitive disadvantage or lost market share suffered by Plaintiffs would not have been proximately caused by the alleged RICO violation. Any harm suffered by Plaintiffs would be derivative, just like the alleged harm in *Anza.*[8] Because the alleged RICO violation here did not

---

[8] Even prior to *Anza,* the Seventh Circuit had consistently held that standing to sue under RICO is limited to the party that is directly injured by the RICO violation. *See Israel Travel,* 61 F.3d 1250 (travel agency lacked standing to sue competitor who allegedly sent fraudulent advertisements to consumers, diverting business from plaintiff); *Schiffels v. Kemper Fin. Serv., Inc.,* 978 F.2d 344, 350 (7th Cir. 1992) (interpreting *Holmes* to mean "that a person did not have standing to sue under RICO based on the theory that a RICO violation inflicted injury on a third party, which in turn caused injury to the plaintiff"); *Wooten v. Loshbough,* 951 F.2d 768 (7th Cir. 1991) (corporate creditor lacked standing to sue shareholders who allegedly depleted corporation's assets through RICO violations); *Sears v. Likens,* 912 F.2d 889 (7th Cir. 1990) (shareholders lacked standing to sue defendants for RICO violations against corporation); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333 (7th Cir. 1989) (guarantors lacked standing to sue for RICO violations against corporation whose obligations they guaranteed).

proximately cause Plaintiffs' alleged injury, Plaintiffs have failed to plead any injury that was proximately caused by the alleged RICO violation.

Following the Supreme Court's dismissal of the RICO claim in *Anza*, the Seventh Circuit has interpreted the opinion as making "clear that a civil RICO claim cannot survive unless the plaintiff properly alleges that the RICO violation was the proximate cause of his or her damages." *James Cape & Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 403 (7th Cir. 2006). In *James Cape*, the plaintiff alleged that defendants engaged in a scheme to rig bids for construction projects for the State of Wisconsin Department of Transportation ("WisDOT"). *Id.* at 398. Using confidential information about plaintiff's bids, defendants were able to inflate their own bids on the contracts that they knew they would receive. *Id.* at 398. The plaintiff alleged that as a result of defendants' scheme, the plaintiff was awarded fewer contracts and lost millions of dollars of business as a result of its reduced market share. *Id.* 398-99. In affirming the district court's dismissal of the RICO claim, the Seventh Circuit held that because the direct victim of defendants' scheme was WisDOT, a third party and not the plaintiff, the plaintiff could not claim its injuries were proximately caused by the defendants' scheme. *Id.* at 403-404.

Because Plaintiffs have not pleaded any injury directly caused by the alleged RICO violation, their alleged injuries are merely derivative of others. Consequently, they have no standing to assert these RICO claims. For this final reason, the RICO claims must be dismissed.

**B.     The Non-Trademark Related Claims Of The Amended Complaint Should Be Dismissed (Counts VII, VIII, XII, XIII, and XIV)**

**1.     Plaintiffs Fail To State A Claim Under The Illinois Consumer Fraud Act (Count VII)**

In Count VII of the Amended Complaint, Plaintiffs purport to assert claims under the Illinois Consumer Fraud Act ("CFA"), 815 ILCS 505/2, and analogous statutes of other states.[9] Because such claims are based on allegations of fraud, they are subject to the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470

---

[9] Count VII also purports to state a claim under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2. Although that claim lacks merit, it is closely related to Plaintiffs' trademark-related claims, and is beyond the scope of this motion to dismiss.

F. Supp. 2d 823, 830 (N.D. Ill. 2007) (Manning, J.).  As such, Plaintiffs were required to plead with specificity "the who, what, when, where, and how" of the alleged fraud.  *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-3004, 2006 U.S. Dist. LEXIS 18630, at *11 (N.D. Ill. Apr. 12, 2006) (citations omitted).; *Siegal v. Shell Oil Co.*, 480 F. Supp. 1034, 1039-40 (N.D. Ill. 2007) (same).  Because Plaintiffs incorporate into Count VII all of the allegations that precede it in the Amended Complaint, *see* Amended Complaint ¶¶ 388, 394, these claims suffer from the same lack of specificity described in the RICO discussion, section IV.A, *supra*.[10]

Moreover, the additional allegations set forth within Count VII also lack the requisite particularity.  For example, Plaintiffs allege that "[b]y means of the actions alleged above, Defendants have advertised to the public that the Defendants' infringing Deceptive Domains and the websites located at the Deceptive Domains are related to, or are an official website of, Lead Plaintiffs and/or the Class."  Amended Complaint ¶ 394.  Which actions alleged above?  Which Defendants made these advertisements?  When?  What did the advertisements say?  Did the Defendants advertise that the Deceptive Domains are "related to" Plaintiffs' claims or that they are "official websites" of Plaintiffs?  If the former, in what way were the domains advertised as being "related to" Plaintiffs' sites?  As the Amended Complaint fails to answer these questions, Plaintiffs' CFA claims (and claims under analogous statutes of other states) must be dismissed.  *See, e.g.*, *In re McDonald's French Fries Litig.*, No. 06-C-4467, 2007 U.S. Dist. LEXIS 38960, *4-5 (N.D. Ill. May 30, 2007) (dismissing consumer and common law fraud claims based on plaintiffs' failure to identify the instances and locations of the advertisements containing the purported misrepresentations); *All Meat & Poultry Prods.*, 470 F. Supp. 2d at 830-31 (Manning, J.) (dismissing CFA claims for failure to provide specifics of fraud, including use

---

[10] Although Plaintiffs labels themselves a "consumer" for purposes of this claim, Amended Complaint ¶ 392, there is nothing whatsoever in the voluminous allegations of the Amended Complaint suggesting that this is so.  *See* 815 ILCS 505/1(e) (defining a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household").  Defendants do not move for dismissal on this separate ground, however, because Plaintiffs appear to have arguably alleged a nexus between the complained-of conduct and consumer protection.  *See Pace Am., Inc. v. Elixir Indus.*, No. 06-4661, 2007 U.S. Dist. LEXIS 10601, at *12-13 (N.D. Ill. Feb. 13, 2007).

of disjunctive "or" that made scope of allegations unclear); *Scott*, 2006 U.S. Dist. LEXIS 18630, at *12 (dismissing CFA claims for failure to plead when and where plaintiffs were deceived).

Finally, the CFA claims fail because Plaintiffs have not, and cannot, allege a *material* misrepresentation. The materiality of the alleged misrepresentation is an essential element of a CFA claim. *See, e.g.*, *Ryan v. Wersi Elec. Gmbh*, 59 F.3d 52, 53-54 (7th Cir. 1995). In evaluating materiality, an alleged misrepresentation must not be considered in the abstract; rather, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis*, 396 F.3d at 884.

Although Plaintiffs claim that the Defendants "advertise" that the Deceptive Domains are "related to, or are an official website of" Plaintiffs, Amended Complaint ¶¶ 394, 397, Plaintiffs have pleaded themselves out of court on this issue. As discussed above, the Complaint alleges that when a user types an incorrect spelling of Plaintiffs' web address and gets a site controlled by Defendants, the site includes advertisements for Plaintiffs' *direct competitors*. Amended Complaint ¶¶ 159, 266. Because no internet user could conceivably believe that Plaintiffs would sponsor a web site running advertisements for their direct competitors, even if Plaintiffs had adequately identified some alleged misrepresentation (which they have not), they could not, as a matter of law, be "material." *See, e.g.*, *Ryan*, 59 F.3d at 54 ("Wersi-Germany's oral statements regarding WEI's profitability cannot be considered material in light of the circumstances surrounding this stock purchase transaction."). The CFA and related claims asserted under other similar state laws must, therefore, be dismissed.

### 2. Plaintiffs Fail To State A Claim For Declaratory Judgment  (Count VIII)

In Count VIII of the Amended Complaint, Plaintiffs purport to state a claim for a declaratory judgment, but are in fact merely requesting a form of relief on their other claims. Count VIII adds no factual allegations, but instead is premised entirely on the claims for relief asserted in the other Counts in the Amended Complaint. Amended Complaint ¶ 411. Because this "claim" merely seeks a form of relief based on Plaintiffs' other claims, it should be dismissed. *See, e.g.*, *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (dismissing declaratory judgment action because "[a]ll of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose); *Shepherd v. U.S. Olympic Comm.*, 464 F. Supp. 2d 1072, 1081 n.8 (D. Colo. 2006) ("Declaratory relief is redundant and therefore unavailable under these circumstances, where it

seeks nothing more than a legal determination already before the court on Plaintiff's civil rights claims.").

### 3. Plaintiffs Fail To State A Claim For Intentional Interference With Current And Prospective Economic Advantage (Count XII)

In Count XII of the Amended Complaint, Plaintiffs assert claims for "Intentional Interference with Current and Prospective Economic Advantage." These claims must be dismissed because Plaintiffs fail to adequately allege and identify the "current and prospective economic advantage" at issue.

With respect to the "current" economic advantage, Plaintiffs are presumably attempting to state a claim for tortious interference with contract. *See, e.g.*, *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999). To state such a claim, a plaintiff must allege: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003) (citation omitted).

Plaintiffs have not come close to alleging these elements. Plaintiffs have not only failed to identify a *specific* contract at issue; they have failed to allege the existence of *any* valid and enforceable contract, much less that Defendants knew of the contract or induced a breach of the contract. As such, this claim is plainly deficient and must be dismissed. *See, e.g.*, *id.* at 528 (affirming dismissal where complaint failed to allege facts that, if true, would establish the existence of a valid and enforceable contract).

Plaintiffs' interference with "prospective" economic advantage fares no better. To state such a claim, a plaintiff must allege: "(1) a reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of this expectation; (3) defendants' purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citation omitted). But the Amended Complaint fails to identify either a specific person, or an "identifiable class" of persons, with whom Plaintiffs claim to have had a "reasonable expectation" of entering into a valid business relationship. *See, e.g.*, *River Park, Inc. v. City of Highland Park*, 667 N.E.2d 499, 507 (Ill. App. Ct. 1996) (plaintiff must "allege either an interference with specific third parties or an identifiable class of third persons"). Instead,

Plaintiffs merely allege, in conclusory terms, that they have a prospective relationship with "third party Internet users/consumers."  Amended Complaint ¶ 451.

Plaintiffs' allegation that it is possible that they would have done business with "internet users/consumers" – a class of third persons with whom virtually any commercial entity could claim to have a possibility of a "prospective business relationship" – is the type of conclusory allegation that does not "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965; *see also Brdecka v. Gleaner Life Ins. Soc'y*, No. 02-3076, 2005 U.S. Dist. LEXIS 10818, at *13 (N.D. Ill. June 6, 2005) ("[A] reasonable expectation of a business relationship is more than a 'mere hope' of developing or continuing a relationship." (citation omitted)); *Republic Tobacco L.P. v. N. Atl. Trading Co.*, No. 06-2738, 2007 U.S. Dist. LEXIS 38079, at *43 (N.D. Ill. May 10, 2007) (rejecting negotiations with prospective customers as establishing tortious interference claim, because "[t]he hope of receiving an offer is not a reasonable expectancy" (citation omitted)).  The class of "third party Internet users/consumers" numbers in the billions.  Plaintiffs do not (and, obviously, cannot) credibly claim a prospective business relationship with *every* or, for that matter, *any*, Internet user.  As a result, this claim should be dismissed.

### 4.    Plaintiffs Fail To State A Claim For Unjust Enrichment (Count XIII)

In Count XIII of the Amended Complaint, Plaintiffs purport to state a claim for unjust enrichment.  But this claim, which does little more than incorporate by reference the preceding 457 paragraphs of the Amended Complaint, is insufficiently pleaded.

Because this claim is expressly based upon allegations of fraud, *see* Amended Complaint ¶ 461 (alleging that benefits were conferred as a result of "deception, misconduct, and material misrepresentations"), this claim is subject to the heightened pleading requirements of Rule 9(b).  As explained in section IV.A *supra*, Plaintiffs do not come close to adequately identifying "the who, what, when, where, and how" of the alleged fraud.  As a result, the claim should be dismissed.

### 5.    Plaintiffs Fail To State A Claim For Civil Conspiracy (Count XIV)

The Court must dismiss Plaintiffs' civil conspiracy claim (Count XIV), because Plaintiffs failed to allege the fraudulent acts with the requisite degree of particularity mandated by Rule 9(b).  Count XIV seeks relief based on Defendants' alleged conspiracy to engage in the so-called "Deceptive Domain Scheme" exhaustively set forth by Plaintiffs' complaint. Amended

Complaint ¶ 466. A conspiracy requires "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (Ill. 2004) (citation omitted). Rule 9(b) applies to a civil conspiracy claim sounding in fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (affirming dismissal of complaint). Plaintiffs allege that Defendants' "Deceptive Domain Scheme" is grounded in fraudulent behavior. Amended Complaint ¶¶ 1-2, 466. Plaintiffs, however, as noted in section IV.A, *supra*, fail to specify "the who, what, when, where, and how" of the alleged fraud. Again, this failure is fatal to the claim and as a consequence, it should be dismissed. *All Meat & Poultry Prods.*, 470 F. Supp. 2d at 831 (Manning, J.) (dismissing conspiracy to commit fraud claim given failure to adequately plead fraud).

## V.    CONCLUSION

For all the reasons stated above, the Defendants respectfully request that the Court grant their motions, and dismiss with prejudice: Counts I, II, VII (as to consumer fraud claims), VIII, XII, XIII, and XIV of the Amended Complaint.

Respectfully submitted,


  /s/  Mariah E. Moran                                   /s/  Ronald Y. Rothstein
One of the Attorneys for *Google, Inc.*          One of the Attorneys for *Oversee.net*

Joseph J. Duffy                                         Ronald Y. Rothstein
Jonathan M. Cyrluk                                    Janelle M. Carter
Mariah E. Moran                                       Winston & Strawn LLP
Stetler & Duffy, Ltd.                                   35 West Wacker Drive
11 South LaSalle Street, Suite 1200            Chicago, Illinois 60601
Chicago, Illinois 60603

                                                              Andrew P. Bridges
Michael H. Page                                       Winston & Strawn LLP
Joseph Gratz                                            101 California Street, Suite 3900
Keker & Van Nest LLP                              San Francisco, California 94111
710 Sansome Street
San Francisco, California 94111-1704

                                                              Steven D. Atlee
                                                              Winston & Strawn LLP
                                                              333 South Grand Avenue, 38th Floor
                                                              Los Angeles, California 90071

\_\_/s/\_Jeffrey Singer_____

One of the Attorneys for **Sedo, LLC**

Jeffrey Singer
Misty R. Martin
Segal McCambridge Singer & Mahoney
Sears Tower
233 South Wacker Drive, Suite 5500
Chicago, Illinois 60606


\_\_/s/\_Michael Dockterman_____

One of the Attorneys for **Dotster, Inc.**

Michael Dockterman
Alison C. Conlon
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229

Vincent V. Carissimi
Robert L. Hickok
Joanna J. Cline
Pepper Hamilton LLP
3000 Two Logan Square, 18th & Arch Streets
Philadelphia, Pennsylvania 19103-2799


\_\_/s/\_Brett August_____

One of the Attorneys for **Internet Reit, Inc.**

Brett August
Bradley Cohn
Alexis Payne
Pattishall, McAuliffe, Newbury, Hilliard &
  Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60613

Steve Borgman
Kenneth P. Held
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2300
Houston, Texas 77002-6760

Dated: October 18, 2007