**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually And On Behalf Of All Others Similarly Situated,<br><br>Lead Plaintiffs,<br><br>v.<br><br>GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a/ IREIT, INC.; and JOHN DOES 1-X,<br><br>Defendants. | ) ) ) Case No. 07 CV 3371 ) ) ) Hon. Blanche M. Manning ) ) ) Magistrate Judge Geraldine Soat Brown ) ) ) ) ) ) ) |

**GOOGLE INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Dated: October 18, 2007

Michael H. Page
Joseph C. Gratz
KEKER & VAN NEST LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200

# TABLE OF CONTENTS

I.     Introduction ........................................................................................................1

II.    Pleading Standards ............................................................................................3

III.   Argument ...........................................................................................................3

       A.     Lanham Act Claims ...............................................................................4

              1.     Plaintiffs' direct and contributory trademark infringement
                     claims (Counts 4 and 10) fail because the complaint does not
                     allege that Google knew or should have known of any
                     infringement. ..............................................................................4

              2.     Plaintiffs' vicarious trademark infringement claim (Count 11)
                     must be dismissed because Plaintiffs' theory of vicarious
                     liability has been expressly rejected by the Seventh Circuit.....................10

              3.     Plaintiffs' cybersquatting claim (Count 3) fails because it does
                     not allege that Google owns or operates any allegedly
                     infringing domains. ...................................................................11

              4.     Plaintiffs' claim for false designation of origin (Count 5) fails
                     because it does not allege that Google uses the domain names
                     at issue "on or in connection with any goods or services." ......................13

              5.     Plaintiffs' dilution claim (Count 6) fails because it does not
                     allege that each of the marks at issue is famous. ..................................14

       B.     State Law Claims .................................................................................16

              1.     Because all of Plaintiffs' claims under federal law should be
                     dismissed, the court should decline to exercise pendent
                     jurisdiction over its state-law claims. .............................................17

              2.     Plaintiffs' Illinois deceptive practices claim (Count 7) and its
                     common law trademark claim (Count 9) fail for the same
                     reason their Lanham Act claims do. ..............................................17

IV.    Conclusion ......................................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Avery Dennison Corp. v. Sumpton*
189 F.3d 868 (9th Cir. 1999) ..................................................................................................16

*Bell Atlantic Corp. v. Twombly*
___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007) ........................................................................3

*Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*
357 F. Supp. 127 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974)......................................17

*Century 21 Real Estate Corp. of Northern Illinois v. R.M. Post, Inc.*
8 U.S.P.Q. 2d 1614 (N.D. Ill. 1988) ..........................................................................................7

*Christensen v. County of Boone*
483 F.3d 454 (7th Cir. 2007) ..................................................................................................17

*D 56 Inc. v. Berry's Inc.*
1996 WL 252557 (N. D. Ill. May 10, 1996) ...............................................................................17

*Dial One of the Mid-South, Inc.*
269 F.3d 523 (5th Cir. 2001) ....................................................................................................8

*Gucci America, Inc. v. Hall & Assocs.*
135 F. Supp. 2d 409 (S.D.N.Y. 2001).........................................................................................8

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*
955 F.2d 1143 (7th Cir. 1992) ............................................................................................10, 11

*Inwood Labs. v. Ives Labs.*
456 U.S. 844 (1982)..................................................................................................................9

*James Burrough Ltd. v. Sign of Beefeater, Inc.*
540 F.2d at 274-75 (7th Cir. 1976) ..........................................................................................18

*Kennedy v. National Juvenile Detention Assoc.*
187 F.3d 690 (7th Cir. 1999) ..............................................................................................13, 14

*Lockheed Martin Corp. v. Network Solutions, Inc.*
985 F. Supp. 949 (C.D. Cal. 1997) ..........................................................................................10

*Manville Sales Corp. v. Paramount System, Inc.*
917 F.2d 544 (Fed. Cir .1990).....................................................................................................9

*Masson v. New Yorker Magazine, Inc.*
501 U.S. 496 (1991)..................................................................................................................8

*McKinney v. Indiana Michigan Power Co.*
113 F.3d 770 (7th Cir. 1997) .....................................................................................................9

*NBA Properties v. Untertainment Records LLC*
1999 WL. 335147 (S.D.N.Y. 1999).............................................................................................8

*Neitzke v. Williams*
490 U.S. 319 (1989) ..................................................................................3

*New York Times v. Sullivan*
376 U.S. 254 (1964) ..............................................................................2, 7, 8

*O'Shea v. Littleton*
414 U.S. 488 (1974) ..................................................................................3

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*
192 F.3d 633 (7th Cir. 1999) ...................................................................16

*Walker v. S.W.I.F.T. SCRL*
 491 F. Supp. 2d 781 (N.D. Ill. 2007) .......................................................3

*Watts v. Network Solutions, Inc.*
1999 WL. 994012 (7th Cir. 1999) ............................................................9

*World Wrestling Federation, Inc. v. Posters, Inc.*
58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000) .......................................................8

## FEDERAL STATUTES

15 U.S.C. § 1114(2) ............................................................................2, 6, 7
28 U.S.C. § 1367(c)(3) ..........................................................................16

## RULES

Fed. R. Civ. P. 8(a)(2) ...............................................................................3
Fed. R. Civ. P. 9(b) ...................................................................................3

## LEGISLATIVE MATERIALS

H. R. Rep. No. 106-412 at 13-14 (1999) ................................................12

## STATE STATUTES

Illinois Deceptive Trade Practices Act ("IDTPA")
815 ILCS 510/2....................................................................................17, 18

## TREATISES

16 MOORE'S FEDERAL PRACTICE § 106.66[2] (3d ed. 1997) .......................17

MCCARTHY ON TRADEMARKS § 24:104 (2007) ...................................15, 16

Pursuant to this Court's Order of October 3, 2007, Google Inc. ("Google") offers this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint. This memorandum addresses grounds for dismissing Counts 3, 4, 5, 6, 7 (as to ILCS 510/2), 9, 10, and 11. Google joins in the Consolidated Memorandum of Law in Support of Defendants' Motions to Dismiss Amended Class Action Complaint with respect to the remaining claims (Counts 1, 2, 7 (as to ILCS 505/2), 8, 12, 13, and 14).

## I.       Introduction

Plaintiffs' prolix (to put it mildly)[1] First Amended Complaint is a sweeping but misguided attempt to state a range of trademark, cybersquatting, RICO, and related state claims against five separate companies. Four of those companies are in the business of acquiring, managing, and/or operating hundreds of thousands of domain names. As set forth in the First Amended Complaint, each of those four companies has owned or operated one or more domains that Plaintiffs allege are confusingly similar to their own. Whether the conduct of those four Defendants violates any law is open to serious question.

There is no question, however, about the fifth Defendant. In addition to naming the four domain owner/operator Defendants, the First Amended Complaint purports to state claims against Google, based on Google's provision of advertising text that is displayed on domains owned or operated by the other Defendants. Those claims fail for myriad reasons. Most fundamentally, no trademark claim can lie against Google because Google makes no use of Plaintiffs' trademarks whatsoever. Google neither owns nor operates any of the domain names of which the Plaintiffs complain. Through its AdSense advertising programs, including AdSense for Domains ("AFD") at issue here, Google merely distributes third party advertisements to entities such as the other Defendants for display.

Neither can Google be contributorily liable for the claimed actions of the other Defendants. In order to establish contributory trademark liability, Plaintiffs would have to allege that Google *knowingly* assisted in infringing its rights. Plaintiffs make no such allegation, and

---

[1] The First Amended Complaint tips the scales at a Rule-8-busting 94 pages and 469 paragraphs.

cannot, for a simple and compelling reason:  Google's sweeping trademark protection policies provide that Google will immediately remove any allegedly infringing domains from its AFD program at the request of the trademark holder.[2]

Why, then, were the allegedly infringing domains a part of the AFD program when the complaint was filed?  Because Plaintiffs, prior to initiating this lawsuit, *never bothered to tell Google they objected to those domains.*  Indeed, no Plaintiff communicated with Google about the domains in any fashion prior to that Plaintiff's appearance in this case.  Had Plaintiffs done so, taking a moment to put Google on notice of their position would have put an immediate stop to the "harm" they allege.[3]  Putting aside the obvious failure-of-mitigation issues, Plaintiffs' failure to allege any effort to contact Google is fatal to any claim of contributory infringement, as it precludes any claim that Google *knowingly* assisted the other Defendants in infringing Plaintiffs' alleged trademarks.

The inability to allege knowledge would be fatal to any claim of contributory trademark infringement.  It is doubly fatal to a claim against Google, however, because Google is subject to the Lanham Act's *express* immunity for publishers of advertisements.  Because Google does nothing more than electronically publish the advertisements of others, Section 1114 of the Lanham Act provides complete immunity unless Google were found to have published false material with *New York Times* actual malice.  Because Plaintiffs can allege no notice to Google, they cannot state a claim that survives Section 1114 immunity.

Neither can Plaintiffs state a cybersquatting claim against Google.  Unlike the other Defendants, Google is not alleged to own or operate any of the allegedly infringing domain names.  Plaintiffs' cybersquatting claims can be stated (if at all) only against the owners of the domains, not against the company (Google) that provides advertising content to those domains.

---

[2] *See* AdSense for Domains Trademark Complaint Procedure, *at* http://www.google.com/tm_complaint_afd.html.  This policy is ignored in the complaint, and is cited here solely as evidence that Vulcan cannot cure the defects of its complaint by amendment.

[3] Google has treated the First Amended Complaint as trademark notification, has removed the allegedly infringing domains from AFD, and has advised plaintiffs that, should they want any other domain names blocked, they need only ask.

Plaintiffs' other claims similarly fail.  The theory of vicarious trademark infringement liability advanced by Plaintiffs has been flatly rejected by the Seventh Circuit.  And as each of Plaintiffs' federal claims fails, this Court can and should decline to exercise pendent jurisdiction over their state law claims.   As set forth below, even if the Court chose to exercise jurisdiction, those claims each fail on their merits as well.

As Plaintiffs have failed to state any viable claim, and as the defects in the First Amended Complaint cannot be cured by amendment, this Court should dismiss all claims against Google with prejudice.

## II.    Pleading Standards

Rule 12(b)(6) permits courts to dismiss meritless cases that waste judicial resources and result in unnecessary discovery.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  The complaint must contain allegations "showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and accordingly must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (May 21, 2007).  "Factual allegations must be enough to raise a right to relief above the speculative level" such that they "raise a reasonable expectation that discovery will reveal evidence of [the claim or element]"  *Id.* at 1965.  "'[P]rior rulings and considered views of leading commentators' can assist in assessing the plausibility of the plaintiffs' allegations."  *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 787 (N.D. Ill. 2007) (Holderman, C.J.) (quoting *Twombly*, 127 S.Ct. at 1966).

## III.    Argument

For each of their claims, Plaintiffs[4] fail to meet even liberal pleading standards, making no plausible factual allegations that might support a finding of liability.  Neither are any of the defects in the First Amended Complaint mere pleading errors; thus, leave to amend would be

---

[4] The named plaintiffs may not assert a claim on behalf of a class if they themselves may not pursue that claim.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Accordingly, in the 12(b)(6) context, the class action issues (which are severe) are not relevant; the only issue is whether **the named plaintiffs** have stated a claim upon which relief can be granted.  If the Court dismisses all claims vis-à-vis the named plaintiffs, any claims they make on behalf of a putative class cannot proceed.

futile.  For the Court's convenience, Google has attached a one-page Chart of Claims with Key Grounds for Dismissal as Appendix A.  In addition to the arguments set forth below, Google joins in all other arguments for dismissal applicable to Google made by the other Defendants in this case.

## A.      Lanham Act Claims

The First Amended Complaint contains six claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  They are Count Three (Cybersquatting), Count Four (Trademark Infringement), Count Five (False Designation of Origin), Count Six (Dilution), Count Ten (Contributory Trademark Infringement), and Count Eleven (Vicarious Trademark Infringement). Each must be dismissed.

### 1.      Plaintiffs' direct and contributory trademark infringement claims (Counts 4 and 10) fail because the complaint does not allege that Google knew or should have known of any infringement.

Plaintiffs allege that Google infringed their trademarks directly (Count 4) and bears contributory liability for the infringements of third parties (Count 10).  Plaintiffs allege neither that Google knew of the purportedly infringing nature of the domains nor that Google had reason to know of the infringing nature of the domains.  Because Google did not have notice, it has no direct infringement liability under the Lanham Act's "innocent publisher" exception.  Because Google had neither knowledge nor reason to know of infringing conduct, it has no contributory infringement liability.

#### a.      Plaintiffs allege neither knowledge nor reason to know.

Plaintiffs do not (and cannot) allege that Google had knowledge of or reason to know of the alleged infringement.  Nowhere do Plaintiffs allege facts indicating that Google had any reason to know that the "bad apple" domains identified in the complaint were infringing, assuming they are.  As Plaintiffs admit, there are "millions of domain names using the Google AdSense for Domains Program."  First Amended Complaint ("Compl.") ¶ 83(p).  While Plaintiffs allege (incorrectly) that Google "reviews and monitors every domain that shows Defendant Google advertisements," Compl. ¶ 132, they do not allege that Google researches the

4

trademark status of each domain name, or investigates who has registered any given domain name. Both under the facts alleged in the complaint and in reality, Google has no way to know – and no reason to know – whether a given domain in the AFD program could infringe a valid trademark. And even if Google did somehow have the ability to pluck out those domains which could infringe a valid trademark, Google has no way to know whether the domain has been registered by an infringer, a licensee of the trademark owner, or the trademark owner herself.[5] Plaintiffs do not allege facts to the contrary, and accordingly do not adequately plead facts leading to the conclusion that Google has actual or constructive knowledge of infringement.

Nor can Plaintiffs cure this defect by amendment. Google's policies for removing domains from the AFD program are exceedingly solicitous to trademark owners who request removal. As Google states on the AdSense for Domains Frequently Asked Questions page, referenced in paragraph 233 of the original complaint:

> Google is not involved with the selection or registration of these domain names, and is not in a position to arbitrate trademark disputes between the registrants, our partners, and trademark owners. Accordingly, we encourage trademark owners to resolve their disputes directly with the registrants or registrars. As a courtesy to trademark owners, Google provides a simple publicly available complaint procedure and, once notified of a legitimate complaint against a specific domain, Google will no longer serve ads to that domain. For instructions on how to file a complaint, please refer to the Trademark Complaint Process page. Additionally, a copy of our publicly available trademark policy is available online.

Google AdSense for Domains Frequently Asked Questions, *at*

http://www.google.com/domainpark/faq.html. *See also* AdSense for Domains Trademark

Complaint Procedure, *at* http://www.google.com/tm_complaint_afd.html (linked from the words

"Trademark Complaint Process page" in the foregoing quotation). In order to permanently

remove from the AFD program any domains to which they objected, such as volcangolf.com or

wwwjbssinc.com, all Plaintiffs had to do was ask. A simple notice to Google would have

---

[5] Indeed, trademark owners frequently register common typographical-error variants of their domain names. *See, e.g.*, One Degree Internet Marketing Insiders, "How To: Add Spell-check To Your Domain Names," *at* http://www.onedegree.ca/2005/04/21/how-to-add-spellcheck-to-your-domain-names ("Unless you have some policy about only selling to customers who got an A+ in spelling and can type 40 words per minute, you'll probably want to register 'typo domains'. . . . I like to think of this as creating a spell-check feature in web browsers so people can find you even if they aren't 100% sure about your web address.").

permanently eliminated the harm they allege.  Plaintiffs allege that Google's policy for removing

domains from the AFD program in response to trademark holder complaints is "illusory," but do

not allege any facts on which they base that conclusion. Compl. ¶ 196.  Nor could they:

conspicuously absent from the First Amended Complaint is any allegation that any of the

Plaintiffs ever attempted to make use of the complaint policy.  Plaintiffs did not bother to try it

out and see whether Google has implemented a reasonable, good-faith policy designed to

eliminate from the AFD program all potentially-infringing domains of which Google becomes

aware, or whether, as Plaintiffs allege, the policy is "illusory."  Compl. ¶ 196.  Although

Plaintiffs have chosen to burden the federal courts rather than using the simple procedure that

Google has provided, Google has treated the First Amended Complaint in this action as notice,

and has *sua sponte* blocked from the AFD program all of the domain names identified in

paragraph 65 of the First Amended Complaint.[6]

> **b.** **Under 15 U.S.C. § 1114(2), Google is subject to direct trademark liability only if Plaintiffs adequately alleged knowledge.**

The Lanham Act does not allow for money damages against most publishers.  It provides:

> Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title **as against the publisher or distributor** of such newspaper, magazine, or other similar periodical or electronic communication **shall be limited to an injunction** against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

15 U.S.C. § 1114(2)(B) (emphasis added).  This provision limits the relief against publishers of

paid advertisements, including online publishers, to injunctive relief, so long as the publisher is

an innocent infringer.  *Id.*; accord *Century 21 Real Estate Corp. of Northern Illinois v. R.M. Post,*

---

[6] At the Rule 26(f) conference on August 7, 2007, plaintiff's counsel identified four additional domains to which it objected.  Google immediately blocked each of these domains from participation in the AFD program.  In e-mails dated August 13, 2007 and October 4, 2007, counsel for plaintiffs identified additional domain names to which counsel objected.  Google in each instance complied within hours, and those domain names are permanently excluded from participation in the AdSense for Domains program.

*Inc.*, 8 U.S.P.Q.2d 1614, 1617 (N.D. Ill. 1988).  As set forth below, Google qualifies for the

Section 1114(2)(B) safe harbor, since it is a publisher of paid advertising matter in electronic

communications, and is an innocent infringer.

> **(i)     Google is a publisher of paid advertisements in electronic communications.**

Under the facts alleged in the First Amended Complaint, Google satisfies the preliminary

requirements for damages immunity under Section 1114(2)(b): the AFD pages consist of paid

advertisements, Compl. ¶ 83(o), and the complaint alleges that Google is their publisher. Compl.

¶ 83(q).  There should be no dispute that the online advertisements Google publishes are

electronic communications.  Section 1114(2)(B) refers to Section 2510(12) of Title 18 for the

definition of "electronic communications," and that section states that the term "means any

transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted

in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system."

Google is clearly a "publisher" of "paid advertising matter" in "electronic communications," and

thus meets the preliminary eligibility requirements for immunity under Section 1114(2)(b).

> **(ii)     If the complaint adequately alleges any direct infringement by Google, that infringement is innocent infringement.**

Although the term "innocent infringer" is not defined in the statute, the legislative history

and subsequent case law make clear that it embraces libel law's "actual malice" standard as set

forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964).  Congress revised Section 1114(2)(B)

to its current formulation in 1992.  At the time, the bill's co-sponsor in the House, Congressman

Robert Kastenmeier, explained that the revision:

> exempts from liability 'innocent' disseminators of offending material, whether
> that material constitutes a violation of Section 32(1) relating to infringement, or of
> proposed Section 43(a), relating to false and misleading commercial advertising.
> Most prominently, the change protects newspapers, magazines, broadcasters, and
> other media from liability for the innocent dissemination of commercial false
> advertising, including promotional material.  The word "innocent" is intended to
> encompass the constitutional standards set forth in *New York Times v. Sullivan*,
> 376 U.S. 254 (1964) and its progeny.

Remarks of Subcommittee Chairman Robert Kastenmeier, 134 Cong. Rec. H10420 (Oct. 19,

1988).  Guided by *New York Times*, courts thus have concluded that "an infringer is 'innocent' unless it acted either (1) with knowledge of the infringement or (2) with reckless disregard as to whether the material infringed the trademark owner's rights."  *Gucci America, Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 420 (S.D.N.Y. 2001); *see also World Wrestling Fed'n, Inc. v. Posters, Inc.*, 58 U.S.P.Q. 2d 1783 (N.D. Ill. 2000); *NBA Properties v. Untertainment Records LLC*, 1999 WL 335147 (S.D.N.Y. 1999).  *But see Dial One of the Mid-South, Inc.*, 269 F.3d 523, 526 (5th Cir. 2001) (adopting "objective reasonableness" standard).  Under this standard, actual malice must be proved by clear and convincing evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991).

The First Amended Complaint alleges neither of the mental states required to show that Google's infringement was not innocent.  As described above in section III(A)(1)(a), Plaintiffs do not allege facts leading to the conclusion that Google has knowledge of infringement.  Similarly, Plaintiffs allege no facts which could show a reckless disregard as to whether the domain names were infringing.  Google maintains a policy of removing from the AFD program any domains that so much as whiff of trademark infringement, upon notice from the trademark holder.  *See* Compl. ¶ 195-96; *supra* section III(A)(1)(a).  Plaintiffs admit that Google warns against "tricking users by registering misspellings of well-known websites."  Compl. ¶ 189 (quoting Google Webmaster Guidelines, *at* http://www.google.com/support/webmasters/bin/answer.py?answer=35769).  Far from showing a "reckless disregard" for trademark infringement, *Gucci America*, 135 F. Supp. 2d at 420, these facts pled in the complaint demonstrate that Google takes great care to remedy all trademark infringement about which it is notified and strongly discourages behavior that could be infringing.  Google is, at most, an innocent infringer.

> ### (iii)    Because Plaintiffs have alleged at most innocent infringement, their claim should be dismissed as moot.

As noted above, Plaintiffs allege, at most, that Google is an innocent infringer, who cannot be liable for money damages.  As described in section III(A)(1)(a) above, Google has *sua*

*sponte* permanently excluded from the AFD program all of the domains listed in paragraph 65 of the First Amended Complaint and additional domains identified in correspondence from Plaintiffs' counsel.  Plaintiffs are due no money damages because Google is at most an innocent infringer; Plaintiffs are not entitled to an injunction because Google has already granted them the relief they seek.  *See, e.g.*, *McKinney v. Indiana Michigan Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997) (where the plaintiff has received all possible meaningful relief from his claimed injury, the claim must be dismissed as moot).  Because Plaintiffs are not entitled to money damages and have already received the non-monetary relief they seek, their trademark infringement claim should be dismissed with prejudice.

      **c.**    **Plaintiffs' contributory trademark infringement claim (Count 10) must be dismissed because contributory liability requires actual or constructive knowledge of infringement.**

"Contributory trademark infringement occurs when a manufacturer or distributor (1) intentionally induces another to infringe a trademark or (2) continues to supply a product to one whom it knows or has reason to know is engaging in trademark infringement."  *Watts v. Network Solutions, Inc.*, 1999 WL 994012, *2 (7th Cir. 1999); accord *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 853-54 (1982).  The First Amended Complaint contains no facts leading to a conclusion that Google intentionally induced infringement of Plaintiffs' trademarks – an act that requires knowledge of the infringing nature of the act induced.[7]  *See, e.g.*, *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.").  In order to plead a claim for contributory trademark infringement, Plaintiffs must allege that Google knew or had reason to know that certain domains were infringing.

As noted above, Plaintiffs gave Google no notice that it believed the accused domains

---

[7] Vulcan states that Google "induce[s], cause[s], and/or materially contribute[s] to" infringement, Compl. ¶ 430, but this conclusory allegation is insufficient for numerous reasons – for example, because it alleges inducement "and/or" material contribution instead of alleging inducement, because it fails to allege intent, and because there is no allegation of knowledge of the infringing nature of any domains at the time of any alleged inducement.

were infringing before filing this lawsuit, and Plaintiffs do not allege otherwise.  Even assuming – counterfactually – that Plaintiffs had asked Google to remove the accused domains from the AFD program and assuming Google had (contrary to its policy) refused to do so, Google could still not be said to have "knowledge of infringement."  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997) ("The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement . . . .").  Plaintiffs did not so much as *assert* trademark infringement before their appearance in this case, and they certainly fail to substantiate any such claim here in a way that could give rise to knowledge of infringement.  Since even a bare claim of infringement would not have sufficed, *a fortiori*, Plaintiffs' silence did not impute to Google knowledge of the infringement alleged.  Plaintiffs' contributory trademark infringement claim should be dismissed.

**2.    Plaintiffs' vicarious trademark infringement claim (Count 11) must be dismissed because Plaintiffs' theory of vicarious liability has been expressly rejected by the Seventh Circuit.**

In the First Amended Complaint, Plaintiffs purport to state a claim for vicarious trademark infringement.  In Paragraph 438 of that Complaint, Plaintiffs state the theory of vicarious trademark infringement on which their claim rests:

> Vicarious infringement occurs when a defendant controls, directs, facilitates, encourages, promotes, allows, enables, or otherwise permits a third party to infringe a mark, and receives the benefit therefrom.

Even if they were to plead a claim according to that standard (which they have not), Plaintiffs face a serious problem: the Seventh Circuit rejected this theory of vicarious trademark infringement liability in *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992).

In *Hard Rock Cafe*, the plaintiff sued Concession Services, the operator of a flea market at which a number of third-party vendors hawked their wares.  95 F.2d at 1145.  Some of those vendors sold counterfeit Hard Rock Cafe T-shirts which infringed Hard Rock Cafe's trademark.  *Id.*  Hard Rock Cafe alleged that Concession Services was liable for vicarious trademark infringement on the theory that Concession Services had "'the right and ability to supervise the

infringing activity and also [had] a direct financial interest in such activities.'"  *Id.* at 1150

(quoting *Gershwin Publ. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.

1971)).  The "right and ability to supervise" standard had been adopted by the Second Circuit to

govern vicarious **copyright** infringement, and Hard Rock Cafe urged the Seventh Circuit to

apply the same standard to vicarious **trademark** infringement.  *Id.*  The Seventh Circuit refused

to import the copyright standard for vicarious infringement into trademark law, noting that

"secondary liability for trademark infringement should, in any event, be more narrowly drawn

than secondary liability for copyright infringement."  *Id.*  "Hard Rock," the Seventh Circuit

stated, "must look to Congress to provide the level of protection it demands of CSI here."  *Id.*

Likewise, Plaintiffs in this case must look to Congress if they wish to impose secondary

trademark liability on any party who so much as unknowingly "permits" infringement.  Compl. ¶

438.  The theory of vicarious trademark infringement liability pleaded in the First Amended

Complaint was expressly rejected by the Seventh Circuit.  It must be dismissed.

### 3.    Plaintiffs' cybersquatting claim (Count 3) fails because it does not allege that Google owns or operates any allegedly infringing domains.

Plaintiffs purport to state a cybersquatting claim against both the domain owner/operator

Defendants and against Google.  The First Amended Complaint, however, states no facts that

would support a claim against Google.  Unlike the other Defendants, Google does not own or

operate any of the allegedly infringing domains, and thus cannot be liable as a cybersquatter.

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d),

imposes liability only on one who "registers, traffics in, or uses" certain kinds of misleading

domain names.  The range of potential defendants is further narrowed by Section 1125(d)(1)(D),

which states, "A person shall be liable for using a domain name under subparagraph (A) only if

that person is the domain name registrant or that registrant's authorized licensee."  Plaintiffs do

not allege that Google has registered any of the allegedly infringing domains, or that it has sublet

them from others, or that it operates them in any way.  Rather, the sole allegation against Google

is that it provides advertising content to the owners or operators of those domains.

Plaintiffs, apparently cognizant of this fatal flaw, occasionally use the term "license" to describe the relationship between the other Defendants and Google, without explanation.  But this inchoate legal conclusion cannot substitute for pleading facts that would support a claim. Plaintiffs do not allege, and cannot allege, that Google has either registered any allegedly infringing domain names, or is an "authorized licensee" as that term is used in the ACPA.[8] Indeed, Plaintiffs' factual allegations are the precise opposite:  that the other Defendants own or operate the domains (i.e., that the other Defendants are the domain name registrants or authorized licensees), and that Google merely provides advertising content (and thus revenue) to them.  *See, e.g.*, Compl. ¶ 83(n) (referring to "third party Domain registrants, licensees and aggregators that enter into agreements with Defendant Google for the monetization, through Google advertisements, of domains under their license/control").

Because Google does not own or operate any of the allegedly infringing domains, a cybersquatting claim cannot lie against Google.[9]

---

[8] The term "authorized licensee" is not defined in the ACPA.  However, the legislative history discusses the term's meaning:

> Paragraph 1(D) further clarifies that a use of a domain name shall be limited to a use of the domain name by the registrant or his or her authorized licensee.  This provision limits the right to use the domain name as a means to infringe on another's other bona fide trademark rights.

H. R. Rep. No. 106-412 at 13-14 (1999), *available at* http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=106_cong_reports&docid=f:hr412.106.pdf.  This legislative history shows that an "authorized licensee" must be one who is licensed to use a domain name.  *Id.*  As noted above, Google does not own or operate any accused website, either directly or under license from the registrant, so it cannot be an "authorized licensee" as that term is used in the ACPA.

[9] Even were Google a proper defendant, plaintiffs' claims against Google would fail on other grounds.  The first element of a cybersquatting claim is the defendant's "**bad faith intent** to profit" from the relevant mark.  15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added).  The statute lists factors to be considered "[i]n determining whether a person has a **bad faith intent** described under subparagraph (A)."  15 U.S.C. § 1125(d)(1)(B)(i) (emphasis added).  Because, as noted above, Google had no notice of Vulcan's objections, and acted promptly to disable service to the allegedly infringing sites once it received such notice, Vulcan cannot meet this element either. It has alleged no facts plausibly suggesting that Google had the necessary "bad faith intent," an element whose pleading is particularly important because it is a "term of art," its meaning diverging from the standard legal meaning of action in "bad faith."  *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 n.13 (2d Cir. 2000).

**4.    Plaintiffs' claim for false designation of origin (Count 5) fails because it does not allege that Google uses the domain names at issue "on or in connection with any goods or services."**

In Count Five, Plaintiffs allege that Google has made a false designation of origin in violation of 15 U.S.C. § 1125(a).  Plaintiffs have no viable claim because they do not allege that Google has used the domain names at issue "on or in connection with any goods or services, or any container for goods" as required by 15 U.S.C. § 1125(a)(1).

In the Seventh Circuit, "a plaintiff must prove the following three elements to state a claim under the Lanham Act: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation."  *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999).

Plaintiffs have failed to allege any facts that would constitute a "use" by Google of the allegedly infringing domain names "in connection with goods or services."  Firstly, the paragraph in which it seems that Plaintiffs intended to include a conclusory allegation of "use" does not do so. It reads:

> 362. Defendants' use in commerce of the Distinctive and Valuable Marks and the infringing Deceptive Domains, as alleged herein.

Paragraph 362 of the complaint is not a complete sentence, and it is difficult to determine what Plaintiffs intended to allege by it.

Assuming that Plaintiffs had in fact *recited* the element of "use," their claim nonetheless fails.  The facts as pleaded in the First Amended Complaint show that Google does not label any advertising with any Vulcan Golf, Fisher Nuts, Blitz Realty, or Bo Jackson designation.  The allegedly infringing domain names, such as vulgongolf.com and wwwjbssinc.com, were not provided by Google and are not used by Google as labels for goods or services.  Google supplies ads.  Each of those ads is clearly labeled with the advertiser's website address—an accurate

designation of its origin—as shown in Exhibit C to the original complaint.[10]  Plaintiffs have not stated a claim for false designation of origin.

Interpreting their complaint generously, Plaintiffs appear to be alleging that the relevant "designation of origin" is the domain name the user types into his or her browser.  *See* Compl. ¶ 363.  Plaintiffs allege that Google "processes the domain name and returns either a formatted HTML webpage for each domain that contains the Defendant Google Advertisements and related ad categories, or an XML feed containing the Defendant Google Advertisements."  Compl. ¶ 120.  What Plaintiffs do not allege is that Google ever communicates this alleged "designation of origin" – the domain name – to the computer user, thereby "using" it.  The screenshots that Plaintiffs include as Exhibit C to the original complaint make this plain: the allegedly infringing domain name "wwwvulcangolf.com" appears only in the browser's address bar, above the content of the HTML page that is returned by the web server.  The alleged "designation of origin" does not appear in the "formatted HTML webpage" that Google allegedly "returns." Compl. ¶ 120.  Plaintiffs do not even allege that Google has ever *uttered* the domain names in question, much less that it has used them to designate the origin of its services.  This is far from alleging "that the defendant ***used*** a false designation of origin or false description or representation ***in connection with goods or services***," *Kennedy*, 187 F.3d at 695 (emphasis added), as the Seventh Circuit requires.  Accordingly, Plaintiffs' false designation of origin claim must be dismissed.

> ### 5.    Plaintiffs' dilution claim (Count 6) fails because it does not allege that each of the marks at issue is famous.

In Count Six, Plaintiffs allege that Google has violated 15 U.S.C. 1125(c), the federal antidilution statute.  Plaintiffs allege, "[a]t the time that the Lead Plaintiffs and the members of

---

[10] Exhibit C to the original complaint is somewhat difficult to read.  For the Court's convenience, one relevant portion of the first page of Exhibit C reads, under the heading "Sponsored Links:"

> 1 Iron Golf
> Ultra game improvement golf clubs. Increased distance and accuracy.
> www.1irongolf.com

In this example, the web address "www.1irongolf.com" designates the ad's origin.

the Class registered their domain names, the Distinctive and Valuable Marks were distinctive, protected/protectible, and/or famous."  Compl. ¶ 377.  "Distinctive and Valuable Marks" is a defined term, meaning "venerable, valuable, distinctive, famous, registered or common law trademarks, trade names, logos, famous names, corporate names and other such distinctive/valuable marks."  Compl. ¶ 83(e).

Under section 1125(c), the owner of a famous mark is entitled "to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."  15 U.S.C. § 1125(c)(1).  "To prove a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce."  *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999).  Fame is a critical element, since "[d]ilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).

Plaintiffs do not allege that their marks are famous, only that they are "distinctive, protected/protectible, ***and/or*** famous."  Compl. ¶ 377 (emphasis added).  This is not enough: even if Plaintiffs were able to prove that their marks were "distinctive," or that they were "protected/protectible," or that they were distinctive, protectible, *and* protected, Plaintiffs could not prevail.  Plaintiffs must allege and prove that their marks are famous; under Section 1125(c), nothing less will do.[11]  The complaint's use of the disjunctive "and/or" is fatal, since a showing of any one or more of the listed properties of a mark would meet the allegation without meeting the requirements of Section 1125(c).

Even were Plaintiffs to properly recite the elements of a dilution claim, they would still

---

[11] In particular, marks that are merely "distinctive," without more, are by definition not "famous."  J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS § 24:104 (2007) ("A trademark cannot be 'famous' unless it is 'distinctive,' but it can certainly be 'distinctive' without being 'famous.' . . . By definition, all 'trademarks' are 'distinctive'—very few are 'famous.'").

have to plead facts leading to the conclusion that their marks are famous.  This is not as easy a task as it might seem, as "fame" is a term of art in trademark law, and has a meaning much narrower than its everyday meaning of general eminence or renown.  In order to be "famous" in the trademark law sense, a mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  "That is a difficult and demanding requirement," and "only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws."  J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS § 24:104 (2007).  As Professor McCarthy explains:

> Without a requirement that the plaintiff's mark be very strong or famous, an antidilution statute becomes a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon. If every trademark could invoke the antidilution remedy and stop uses of all similar marks in every market and every line of trade, this would upset the traditional balance of fair versus free competition that in inherent in trademark law. Such an expansion of the antidilution theory would grant every trademark a right "in gross," contrary to the most basic concepts of what legal rights of exclusion should exist in a trademark.

*Id.*

Far from pleading facts proving that each of the Plaintiffs' marks is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," 15 U.S.C. § 1125(c)(2)(A), Plaintiffs here have pleaded a number of facts which lead directly to the opposite conclusion.  For example, Plaintiffs allege that Blitz Realty Group, "a small, local real estate company," Compl. ¶ 50, owns marks that are "widely known and recognized among the community in northern Illinois." Compl. ¶ 44.  But the statute requires wide recognition "by the general consuming public of the United States," not just by consumers in northern Illinois.  Plaintiffs have pleaded themselves out of court.

Plaintiffs' dilution claim should be dismissed because it has failed to allege the element of fame.

## B.    State Law Claims

The First Amended Complaint contains two state law claims which, because of their

similarity to the Lanham Act claims, were not covered in the Defendants' Consolidated Memorandum of Law.  They are the Illinois deceptive practices claim (Count Seven) and the claim for common law trademark infringement (Count Nine).  Each must be dismissed for the reasons set forth below.

**1.    Because all of Plaintiffs' claims under federal law should be dismissed, the court should decline to exercise pendent jurisdiction over its state-law claims.**

As Plaintiffs' federal claims fail, the Court should also dismiss the remaining state law claims for lack of supplemental jurisdiction.  When a court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the other claims.  28 U.S.C. § 1367(c)(3).  As a practical matter, a court should generally so decline.  *See Christensen v. County of Boone*, 483 F.3d 454, 466 (7th Cir. 2007) (when all of the federal claims have been resolved, "the district court should relinquish supplemental jurisdiction so that the state-law claims may be resolved in state court"); 16 MOORE'S FEDERAL PRACTICE § 106.66[2] (3d ed. 1997).  Here, because each of Plaintiffs' federal claims fails, this Court should relinquish supplemental jurisdiction.  In the alternative, the Court can dismiss each supplemental state-law cause of action on the merits for the reasons discussed below and in the Defendants' Consolidated Memorandum of Law.

**2.    Plaintiffs' Illinois deceptive practices claim (Count 7) and its common law trademark claim (Count 9) fail for the same reason their Lanham Act claims do.**

Plaintiffs claim that Google has violated the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/2.  They also claim common law trademark infringement.  Compl. ¶¶ 415-422.  "Under Illinois law, claims under . . . the IDTPA are to be resolved according to principles set forth under the Lanham Act."  *D 56 Inc. v. Berry's Inc.*, 1996 WL 252557 (N. D. Ill. May 10, 1996).  Likewise, because "the principles of statutory trademark law and the tests for infringement are basically the traditional ones of common law," courts have found that "separate discussion of the statute and common law is unnecessary."  *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*, 357 F. Supp. 127, 130 n.3 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974).

*See also James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d at 274-75 & n.16 (7th Cir.

1976) (finding state law unfair competition and trademark claims resolved by reference to the

resolution of plaintiff's Lanham Act claims).  Because it has failed to allege facts sufficient to

make out a claim under the Lanham Act, Plaintiffs' claims for violation of the IDTPA and for

common law trademark infringement also fail.

## IV.    Conclusion

For the above reasons, the First Amended Complaint should be dismissed with prejudice

in its entirety.


Dated:  October 18, 2007                                      Respectfully submitted,


                                                             GOOGLE, INC.

                                                             By: /s/ Mariah E. Moran_____
                                                                      One of Its Attorneys




Michael H. Page
Joseph C. Gratz
KEKER & VAN NEST LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E.Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200

CERTIFICATE OF SERVICE

I, Mariah E. Moran, an attorney, certify the I caused copies of the foregoing **Google Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint** to be served via the Court's CM/ECF system this 18th day of October, 2007.

/s/ Mariah E. Moran
Mariah E. Moran