IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. | ) | |
| SANFILIPPO & SON, INC., | ) | |
| BLITZ REALTY GROUP, INC., | ) | |
| and VINCENT E. "BO" JACKSON, | ) | Case No. 07CV3371 |
| Individually and on Behalf of All | ) | |
| Others Similarly Situated, | ) | Judge Manning |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Magistrate Judge Brown |
| | ) | |
| GOOGLE INC., OVERSEE.NET, | ) | |
| SEDO LLC, DOTSTER, INC., | ) | |
| AKA REVENUEDIRECT.COM, | ) | |
| INTERNET REIT, INC. d/b/a | ) | |
| IREIT, INC., and JOHN DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |

**SEDO.COM, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS UNDER RULE 12(b)(1) AND (6)**

Jeffrey Singer, Esq. (ARDC # 2670510)
Misty R. Martin, Esq. (ARDC # 6284999)
Segal McCambridge Singer & Mahoney, Ltd.
233 South Wacker Drive
Sears Tower – Suite 5500
Chicago, IL 60606
(312) 645-7800 (t)
(312) 645-7711 (f)

# TABLE OF CONTENTS

Page No.

Table of Contents……………………………………………………...    i

Table of Authorities…………………………………………………….    iii

I.      Introduction……………………………………………………    1

II.     Standard of Review……………………………………………    2

        A.    Standard of Review under Fed.R.Civ.P. 12(b)(1)……………..    2

        B.    General Standard of Review under Fed.R.Civ.P 12(b)(6)…………..    2

        C.    Heightened Pleading Standard under Fed.R.Civ.P. 9(b)………………    3

III.    Plaintiff's Allegations………………………………………………...    3

III.    Argument………………………………………………………………    4

        A.    Blitz Realty and John B. Sanfilippo & Son, Inc. Do Not
              Have Standing to Assert Any Claims Against Sedo    4

        B.    Both Vincent E. Jackson and Vulcan Golf Have Failed
              to State a Claim Upon Which Relief Can be Granted    5
              Against Sedo.

              1.    Plaintiff Fail to State a Claim Against Sedo for    5
                    Violation of the ACPA.

                    a.    Sedo Cannot be Held Liable for a Bad Faith    5
                          Intent to Profit from Registering, Trafficking
                          In, or Using Plaintiffs' Mark because it did
                          not Register, Traffic In or Use Plaintiffs' Mark.

                    b.    None of Sedo's Parked Domain Names are    6
                          Identical or Confusingly Similar to any of
                          Plaintiffs' Marks.

              2.    Counts IV, V and VI Must Be Dismissed Because    6
                    Plaintiffs Have Failed to State a Claim for Infringement,
                    False Designation of Origin and Dilution by Sedo.

                    a.    Vulcan and Jackson have failed to state a claim    7
                          of Trademark Infringement under 15 U.S.C.
                          § 1114(1) against Sedo.

i.      Vulcan does not have a protectible interest                    7
        in the term "Vulcanogolf."

ii.     Sedo has not "used" Plaintiffs' Marks in                       8
        commerce.

iii.    There has been no use of the mark in                          9
        competing or related goods or services.

iv.     There is no likelihood of confusion among                     10
        consumers.

v.      Jackson has Failed to State a Trademark                       11
        Claim against Sedo.

b.      There has been no False Designation of Origin                 12
        by Sedo.

c.      There has been no Dilution by Sedo.                           12

i.      Vulcan is not a famous entity and                             13
        Jackson is not a famous person.

ii.     Sedo did not use Plaintiffs' Marks.                           13

3.      Plaintiffs Do Not Properly Allege a Violation of the          14
        Uniform Deceptive Trade Practices Act.

a.      Plaintiffs are not Consumers within the Definition            14
        of the ICFA and have not set forth Sufficient
        Allegations to Support any Other Basis for their IFCA
        Claims Against Sedo.

b.      Plaintiffs Have Failed to State Their Claims Under            15
        the Lanham Act.  Consequentially, Their Claims under
        the ICFA and UDTPA also Fail.

4.      Plaintiffs Do Not Properly Allege a Clam for Common Law       15
        Trademark Infringement.

5.      Vulcan and Jackson Failed to Sufficiently Allege a Claim      15
        for Contributory Trademark Infringement.

6.      Vulcan and Jackson have failed to and cannot properly         16
        allege a claim for vicarious trademark infringement.

V.   Conclusion……………………………………………………………… 17

## TABLE OF AUTHORITIES

Page No.

*AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 818-19 (7th Cir.2002)……. 7

*Amerimax Real Estate Partners, Inc. v. RE/MAX Intern.*, Inc.,
2006 WL 2794934, Norgle, J. (N.D.Ill.,2006)…………………………………………. 7

*Bell Atlantic v. Twombly*. 550 U.S. ___, 127 S.Ct. 1955, 1965,
___ L.Ed.2d ___ (May 21, 2007)……………………………………………………..*passim*

*Best Vacuum, Inc. v. Ian Design, Inc.*, 2005 WL 1185817, *2 (N.D.Ill. 2005)…………… 11

*Bird v. Parsons*. 289 F.3d 865, 870 (6th Cir. 2002)……………………………………… 5,6

*Brookfield Communications v. West Coast Entertainment Corp.*, 174 F.3d 1036
(9th. Cir. 1999)……………………………………………………………………………… 13

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)……………………………………………….. 2

*Daddy's Junky Music Stores v. Big Daddy's Family Music Center*, 109 F.3d, 275, 280 (6th Cir.
1997)……………………………………………………………………………………….. 10

*Duluth News-Tribune v. Mesabi Publishing Co.*, 84 F.3d 1093, 1097 (8th Cir.1996)……. 11, 12

*E.E.O.C. v. Concentra Health Services, Inc.*, No. 06-3436,
--- F.3d ----, 2007 WL 2215764, *2 (7th Cir. Aug. 3, 2007)……………………………….. 2

*Gold v. Golden G.T.*, 2005 U.S. Dist. LEXIS 22691 (N.D. Ill. 2005)…………………… 3

*Hasbro, Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 125 (D.Mass. 1999)…………. 14

*Holiday Inns v. 800 Reservation*, 86 F.3d 619, 625 (1996)……………………………… 10

*Inwood Labs, Inc. v. Ives Labs, Inc.* 456 U.S. 844, 853-854, 102 S.Ct. 2182 (1982)…… 15

*Joujou Designs, Inc. v. Jojo Linge Internationale, Inc.*, 821 F. Supp. 1347, 1353
(N.D. Cal. 1992)……………………………………………………………………………… 15

*Juno Online Services v. Juno Lighting, Inc.,* 979 F. Supp. 684 (N.D. Ill. 1997)…………. 13

*Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003)…………………………. 3

*Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999)…………….. 3

*Lockheed Martin Corp. v. Network Solutions, Inc.* 985 F. Supp. 949 (C.D. Ca. 1997)......*passim*

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999)……… 16

*Mathews v. Homecoming Financial Network Litton Loan Servicing,*
2005 U.S. Dist LEXIS 21535 (N.D. Ill. 2005)………………………………………… 14

*McLeod v. Arrow Marine Transport, Inc*., 258 F.3d 608, 614 (7th Cir.2001)………… 3

*Medic Alert Foundation United States, Inc. v. Corel Corporation*,
43 F.Supp.2d 933, 936 (N.D.Ill. 1999)……………………………………………… 12

*MJ & Partners Restaurant v. Zadikoff,* 10 F. Supp. 2d 922, 926 (N.D. Ill. 1998)…… 15

*Monotype Imaging, Inc. v. Bittstream, Inc.*, 2005 WL 9368822 *3
(N.D. Ill. 2005)……………………………………………………………………… 15

*N.E. Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*,
508 U.S. 656, 663-64 (1993)………………………………………………………… 2, 4

*People ex rel. Hartigan v. Lann*, 225 Ill. App. 3d 236, 240 (1992)…………………… 14

*Peter v. Stone Park Enterprises, L.C.C.,* 1999 WL 543210 *2 (N.D.Ill. 1999)………… 7

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
55 F. Supp.2d 1070, 1081 (Cal.D.1999)…………………………………………… 8, 11

*Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* 2003 U.S. Dist. LEXIS 5600
(D. Ill. 2003)………………………………………………………………………… 14, 15

*Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213
(7th Cir. 1997)……………………………………………………………………… 12

*SB Designs v. Reebok International, Ltd.,* 338 F. Supp.2d 904 (N.D. Ill. 2004)……… 16

*Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 572-73 (E.D. Va. 2003)…… 16

*T & B Ltd. Inc. v. City of Chicago*, 369 F.Supp.2d 989, 992 (N.D. Ill. 2005)………… 2

*Taumban Co. v. Webfeats*, 319 F.3d 770, 776 (6th Cir. 2003)………………………… 10

*Teletech Customer Care Management, Inc. v. Tele-Tech Co.,* 77 F. Supp. 1407,
1414 (C.D.Ca. 1997)………………………………………………………………… 10

*Top Tobacco, L.P. v. North Atlantic Operating Co., Inc*., 2007 WL 118527,
(N.D.Ill.,2007)……………………………………………………………………… 11, 13

*Trans Union, LLC v. Credit Research, Inc*., 142 F. Supp2d 1029, 1038
(N.D. Ill. 2001)……………………………………………………………………… 15

*Watts v. Network Solutions, Inc.*, 1999 WL 778589 (S.D.Ind. 1999)…………………..    9, 10

**SEDO.COM, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS UNDER RULE 12(b)(1) AND (6)**

Defendant Sedo.com, LLC (misnamed Sedo, LLC in the original Complaint) ("Sedo"), by and through its attorneys, Jeffrey Singer, Esq. and Misty Martin, Esq. respectfully submits this Memorandum of Law and Fact in Support of its Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(1) and (6).

## I.    <u>INTRODUCTION:</u>

Plaintiff Vulcan Golf, LLC, ("Vulcan") originally brought this action to recover damages it allegedly suffered when some of the Defendants purportedly registered, parked and monetized websites with domain names similar to Vulcan's principal website, www.vulcangolf.com.[1]  After the Defendants moved to dismiss Vulcan's complaint, Vulcan filed its First Amended Complaint. The First Amended Complaint introduces three new Plaintiffs to this case, Vincent E. "Bo" Jackson ("Jackson"), John B. Sanfilippo & Son, Inc. ("JBSS") and Blitz Realty Group ("Blitz"), alleging that all Defendants have improperly infringed on their various trademarks, trade names or famous name.  Plaintiffs' Amended Complaint alleges that Sedo is liable for their alleged damages under each and every count of the fourteen-count complaint.  Plaintiffs allege that Sedo managed a database of seven million websites.  (Am. Com., ¶ 72.)  The Plaintiffs, however, do not allege that Sedo owned or registered a single website or domain. The only allegedly deceptive domains linked to Sedo are vulcanogolf.com, nobojackson.com and aintnobojackson.com.[2]  (Am.. Com,. ¶ 66.)  Plaintiffs do not, however, allege how Sedo was linked to those domains or websites.

Additionally, each and every allegation regarding all of the Defendants, their actions and relationships are based solely upon information and belief. (Am. Com., at p. 1.)  As such, Plaintiffs has not alleged sufficient *facts* to move its claimed right to relief under any Count against Sedo from the category of claims that are merely possible to those that are plausible as required by Fed.R.Civ.P. 8 and the pleading standard enunciated by the Supreme Court in *Bell Atlantic v. Twombly*. 550 U.S. ___, 127 S.Ct. 1955, 1965, ___ L.Ed.2d ___ (May 21, 2007).

---

[1] Sedo incorporates by reference the Consolidated Memorandum of Law in Support of Defendants' Motions to Dismiss and all of its subparts into this brief.

[2] Other than listing Sedo in a table next to these domain names, Plaintiffs do not allege how Sedo (or any of the Defendants) is related to any of the allegedly deceptive domains.

Sedo brings this motion because JBSS and Blitz do not have standing to bring any claim against Sedo and because Jackson and Vulcan have failed to state a claim upon which relief may be granted against Sedo.

## II.    STANDARD OF REVIEW:

### A.    STANDARD OF REVIEW UNDER FED.R.CIV.P. 12(B)(1)

It is an essential element of Article III's case or controversy requirement that a plaintiff have standing at the time his action is commenced for a federal court to have subject matter jurisdiction over its claims. *See N.E. Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663-64 (1993).  It is the burden of the plaintiff as the party asserting jurisdiction to demonstrate that it has standing.  *See, e.g.*, *T & B Ltd. Inc. v. City of Chicago*, 369 F.Supp.2d 989, 992 (N.D. Ill. 2005).  To prove standing, the Plaintiffs here must demonstrate three things: (1) an injury in fact that is (a) concrete and particularized, and (b) actual or imminent; (2) that the injury fairly can be traced to the challenged action of the *defendant*, and (3) a likelihood that the injury will be redressed by a favorable decision. *N.E. Fla. Chapter,* 508 U.S. at 663-64.  "These elements are the irreducible minimum, required by the Constitution." *Id.,* 508 U.S. at 664.

### B.    GENERAL STANDARD OF REVIEW UNDER FED.R.CIV.P. 12(B)(6)

Our Supreme Court has recently held that a Plaintiffs' complaint must not only give adequate notice of the general claims but its "[f]actual allegations must be enough to raise a right to relief above the speculative level."[3] *Bell Atl. Corp.*, 127 S.Ct. at 1965.  "[A] plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007).  The Seventh Circuit found that *Bell Atlantic* effectively imposed a second pleading hurdle so that the Plaintiffs' allegations here must not only put Sedo on notice of the claims against it but the allegations must also "plausibly suggest that [they have] a right to relief, raising that possibility above a 'speculative level'; if they do not, the Plaintiffs pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, No. 06-3436, --- F.3d ----, 2007 WL 2215764, *2 (7th Cir. Aug. 3, 2007) (quoting *Bell Atl.*, 127 S.Ct. at

---

[3] The Supreme Court in *Bell Atlantic v. Twombly* expressly rejected the decades old proposition that a complaint should not be dismissed under Rule 12(b)(6) unless the Plaintiffs can prove "no set of facts" entitling it to relief. *Bell Atl. Corp.*, 127 S. Ct. at 1969 (rejecting the oft-cited language found in *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

1965, 1973 n. 14). Courts are "not obliged to accept as true conclusory statements of law or unsupported conclusions of fact." *McLeod v. Arrow Marine Transport, Inc*., 258 F.3d 608, 614 (7th Cir.2001). Therefore, to maintain their suit against Sedo, Plaintiffs' Amended Complaint must allege *facts* that make the claims made against Sedo plausible not simply possible.

### C.    HEIGHTENED PLEADING STANDARD UNDER FED.R.CIV.P. 9(B)

Rule 9(b) of the Federal Rules of Civil Procedure requires that a Plaintiff who seeks to establish a claim for fraud must state the allegations with particularity. FED.R.CIV.P. 9(b). This heightened standard requires "to survive dismissal on a Rule 12(b)(6) motion, the complaint must plead the who, what, when, and where of the alleged fraud." (Internal quotations and citations omitted) *Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). The heightened fraud pleading standard applies to Plaintiffs' state law claims, including the Illinois Consumer Fraud and Deceptive Practices Act. ("ICFA") *Gold v. Golden G.T.*, 2005 U.S. Dist. LEXIS 22691 (N.D. Ill. 2005) (citing *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003)(Plaintiffs' claim under ICFA dismissed for failure to specify the who, what, when, where or how of the fraudulent conduct)).

## III.    PLAINTIFFS' ALLEGATIONS:

Plaintiffs' Amended Complaint alleges that Sedo is liable: for violations of RICO, 18 U.S.C. § 1961 *et seq.* (Counts I and II); for violations of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (Count III); for trademark infringement under 15 U.S.C. § 1114(1) (Count IV); for false designation of origin in violation of 15 U.S.C. § 1125(a) (Count V); for dilution of a famous or distinct mark in violation of 15 U.S.C. § 1125(c) (Count VI); for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2 (Count VII); for common law trademark violation (Count IX); for contributory trademark infringement (Count X); for Vicarious Trademark Infringement (Count XI) for Intentional Interference with Current and Prospective Economic Advantage (Count XII), and for Unjust Enrichment (Count XIII) and Civil Conspiracy (Count XIV). In addition, Plaintiffs seek a declaratory judgment, (Count VIII), that Sedo and the other Defendants violated the above statutes and common laws requiring a preliminary and permanent injunction.

Plaintiffs allege that Sedo maintained a database of seven million domain names of which three million are undeveloped parked domain names. (Am. Co., ¶ 72.) Further, they allege that a sub-group of the Defendants, including Sedo "entered into agreements" with Google to control,

monitor, use and place advertising on the domains the parking companies.  (Am. Co., ¶ 149.)  The Amended Complaint does not contain any allegation that the "Parking Company Defendants" entered into any agreements with each other or with any entity other than Google.  JBSS and Blitz also do not identify any act or omission of Sedo that caused either of them an injury.

Vulcan renews its allegations from the original complaint that it has a trademark "VULCAN" and the trade name "Vulcan Golf."  (Am. Co., ¶ 22.)  Plaintiffs allege that Vulcan's trademarks are "widely known and recognized among consumers and members of the golfing community.  (Am. Co., ¶ 24.)  It also alleges that it has registered and used the domain name "www.vulcangolf.com" since May 1997. (Am. Co., ¶ 26.)

Jackson alleges that he is a famous person and is well-known due to his previous career as a professional baseball and football player.  (Am. Co., ¶ 57-60.)  He alleges that he still "generates revenue from his fame." (Am. Co., ¶ 62.)  He does not, however, allege that he has a registered trademark, website or even a domain name.

## IV.    ARGUMENT:

### A.    BLITZ REALTY AND JOHN B. SANFILIPPO & SON, INC. DO NOT HAVE STANDING TO ASSERT ANY CLAIMS AGAINST SEDO.

Plaintiffs Blitz and JBSS have failed to establish that they have suffered any injury-in-fact that can be traced to any conduct of Sedo.  They have not alleged and cannot allege that any of Sedo's conduct caused them injury.  Collectively, Blitz and JBSS have identified nine domain names that allegedly infringed on their trademarks that were operated by some of the Defendants.  (Am. Co., ¶ 65.)  What they have not alleged (and cannot allege) is that Sedo had any connection with any of those allegedly deceptive domains.  In fact, Blitz and JBSS identified each of the other defendants as the entities that registered and parked one or more of those domains, however, did not identify Sedo at all.  (Am. Co., ¶ 65.)  Any harm these Plaintiffs may have suffered was the result not of Sedo's actions.  As such, Blitz and JBSS cannot establish a concrete injury in fact due to or fairly traceable to any conduct of Sedo as required by the Constitution.  *N.E. Fla. Chapter,* 508 U.S. at 663-64.  Therefore, JBSS and Blitz do not have standing to maintain a suit against Sedo.  Therefore, their claims against Sedo warrant dismissal with prejudice.

**B.    BOTH VINCENT E. JACKSON AND VULCAN GOLF HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST SEDO.**

**1.    Plaintiffs Fail to State a Claim Against Sedo for Violation of the ACPA.**

To prevail under the ACPA, the Plaintiffs must allege: (1) that the defendant registered, trafficked in, or used the domain name; (2) that Plaintiffs' mark is distinctive and famous; (3) defendant's domain name is identical or confusingly similar to the Plaintiffs' mark; and (4) that the domain was used in bad faith with intent to profit from the mark. 15 U.S.C. § 1125(d) (1999).

**a.    Sedo Cannot be held Liable for a Bad Faith intent to Profit from Registering, Trafficking in, or Using Plaintiffs ' Mark because it did not Register, Traffic In or Use Plaintiffs' Mark.**

Plaintiffs' Amended Complaint is nearly identical to the allegations made in *Bird v. Parsons*. 289 F.3d 865, 870 (6th Cir. 2002). In that case, Bird brought suit against Parsons, a domain owner, Afternic.com and Dotster for activities in connection with the registration and attempted sale of *efinincia.com*, under the ACPA. *Id.* at 870. Bird had formally registered the trade name, Financia, Inc. and he owned the domain name *financia.com*. *Id.* at 869-70. Defendant Parsons then registered and "parked" the domain name *efinancia.com* with Dotster, Inc. The day after he registered the domain name, Parsons listed it with Afternic.com, an on-line auction service. *Id.* at 870. The Sixth Circuit affirmed the dismissal of Dotster and Afternic.com for failure to state a claim. *Id.* at 882. In so doing, the court stated the purpose of the ACPA is to "address a new form of piracy on the Internet caused by acts of 'cybersquatting,' which refers to the deliberate, bad-faith, and abusive <u>registration</u> of Internet domain names in violation of the rights of trademark owners." *Id.* at 880. *See* S. Rep. No. 106-140, at 4 (1999) (emphasis added). Additionally, the court stated, "in the typical situation that the ACPA seeks to address, individuals register domain names that consist of famous trademarks and then attempt to sell (or perhaps more accurately, to ransom) those domain names to the trademark owners, thereby profiting from the goodwill associated with the trademark." *Id.*

The court stated that Bird's "fatal flaw" in his cybersquatting claim against the defendants, was that he "must establish that the defendants registered, trafficked in, or used the domain name in order to state a claim for violation of the ACPA." *Id.* at 881. The court found that "the only defendant that *registered* a domain name [was] Parsons," and liability for using a domain name can only exist for the registrant or that person's authorized licensee. *Id.*

5

Here, Plaintiffs are alleging the same claims against Sedo as Bird did against Afternic.com and Dotster. The ACPA was enacted to combat deliberate, bad-faith, and abusive registration of internet domain names. Here, Plaintiffs have not alleged that Sedo is the registrant or owner of any domain names, nor have they alleged that Sedo registers domain names. Plaintiffs have classified Sedo as a "parking company." (Am. Co., ¶ 78.) The Sixth Circuit held in *Bird* that Dotster did not engage in registering, trafficking in, or using a domain name by the mere fact that they "parked" domain names. *Cf. Id.* Therefore, Sedo does not fall within the intended scope of the ACPA and this count should be dismissed with prejudice.

Because Plaintiffs failed to plead that Sedo registered, trafficked in, or used Plaintiffs' marks, Count Three for violation of the Anticybersquatting Consumer Protection Act likewise should be dismissed with prejudice.

### b. None of Sedo's Parked Domain Names are Identical or Confusingly Similar to any of the Plaintiffs' Marks.

Plaintiffs' Amended Complaint does not state that Sedo registered, trafficked in, or used Plaintiffs' mark. Rather, Plaintiffs attempt to extend the scope of their alleged marks to cover websites that are clearly unrelated to the Plaintiffs' marks. The three websites that are allegedly related to Sedo are vulcanogolf.com, nobojackson.com and aintnobojackson.com. None of these sites are confusingly similar to the Plaintiffs' marks as they either directly indicate that they are not associated in the case of "nobojackson" or "aintnobojackson" or clearly identify a different source in the case of "vulcano."[4] Because Sedo has not registered, trafficked in, or used Plaintiffs' marks Sedo cannot be held liable for any ACPA claims. Therefore, Count Three should be dismissed with prejudice.

### 2. Counts IV, V and VI Must Be Dismissed Because Plaintiffs Have Failed To State a Claim for Infringement, False Designation of Origin and Dilution by Sedo.

Plaintiffs allege that Sedo committed Trademark Infringement under 15 U.S.C. § 1114 (Count IV), False Designation of Origin under 15 U.S.C. 1125(c) (Count V) and Dilution under 15 U.S.C. § 1125(c) (Count VI). When stripped of its conclusory statements, Plaintiffs' Amended Complaint does not include any competent facts supporting these claims. While Plaintiffs have cited the elements of each of these claims in their 469-paragraph Amended

---

[4] Vulcano is the Italian word for volcano. Italian to English dictionary: http://www.wordreference.com/iten/vulcano (last accessed 10/17/2007). Thus, a legitimate consideration is that vulcanogolf does not relate to Vulcan Golf or its products but to volcano golf or golfing in and around volcanoes.

Complaint, they have failed to allege facts specifically showing how *Sedo's* conduct satisfies the elements of any of these counts.

As explained below, even though Plaintiffs claim a connection between Sedo and the alleged marks owned by Vulcan and Jackson, this claimed connection, if any, does not give rise to liability under the Lanham Act. Therefore, Plaintiffs have failed to state a cause of action on behalf of Vulcan and Jackson for which they would be entitled to relief. Accordingly, Counts IV, V and VI of Plaintiffs' Complaint against Sedo warrant dismissal.

### a. Vulcan and Jackson have failed to state a claim of Trademark Infringement under 15 U.S.C. § 1114(1) against Sedo.

"To state a trademark infringement claim, plaintiff must prove: (1) that the mark was registered to plaintiff; (2) that defendant used plaintiff's mark without consent; and (3) that the unauthorized use of the mark is likely to cause confusion or mistake, or to deceive the public." *Peter v. Stone Park Enterprises, L.C.C.,* 1999 WL 543210 *2 (N.D.Ill. 1999).

### i. Vulcan does not have a protectible interest in the term "Vulcanogolf."

To prevail, Vulcan must first show that it has a protectible trademark right at issue. *AM General Corp. v. DaimlerChrysler Corp*., 311 F.3d 796, 818-19 (7th Cir.2002). Vulcan alleges its protectible interest arises from the claim that it owns the "VULCAN" trademark and the "Vulcan Golf" trade name. (Am. Co. ¶ 22, 23). However, Vulcan alleges that a connection to the domain name www.vulcanogolf.com (Am. Comp. ¶ 65) subjects Sedo to liability under the Lanham Act. Vulcan has not alleged that it registered or owns the trademark "vulcanogolf." Therefore, because it has failed to show that it has a protectible trademark in www.vulcanogolf.com, Vulcan's Lanham Act claims must fail.

Moreover, the mere fact that the domain name contains the prefix "vulcan", a trademark Vulcan has registered, is not sufficient. *Amerimax Real Estate Partners, Inc. v. RE/MAX Intern*., Inc., 2006 WL 2794934, Norgle, J. (N.D.Ill.,2006). In *Amerimax*, the court examined whether the term "max," when as used as a suffix to the parties' trademarks, was protectible as a trademark. *Id.* at *4. The court found that many companies use "max" as a prefix or suffix to their trademarks and a cursory search of the internet confirmed this. *Id.* Therefore, plaintiff did not have a protectible interest in the term "max," even though it was contained in its trademark. *Id.* ("Max" or "max" is a generic or common descriptive word and use of max is not infringing or diluting any valid rights).

7

Similarly, Vulcan cannot claim that the mere use of term "vulcan" by another in a domain name infringes upon its trademark.  A cursory search of the United States Patent and Trademark Office reveals hundreds of other marks that contain the term "vulcan" or a similar term.[5] Plaintiff Vulcan does not own the words "vulcan" and "golf".  A trademark is not a monopoly on a word or an omnibus property right.  *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55 F. Supp.2d 1070, 1081 (Cal.D.1999). In *Playboy Enterprises*, plaintiff brought a trademark infringement claim and sought a prohibition on all advertisements that used the search terms "playboy" and "playmate".  *Id.* at 1165.  The court found that this action would violate the rights of other trademark holders.   "This violates the First Amendment rights of (a) the defendants; (b) other trademark holders of "playboy" and "playmate"; as well as (c) members of the public who conduct internet searches.  *Playboy* at 1085 (*citations omitted*).

Therefore, even though Vulcan may claim it owns the registered trademark "VULCAN" and "vulcangolf", the mere fact that "vulcan" is contained in another's domain name does not give Vulcan standing to assert a claim under the Lanham Act.  For this reason, Vulcan's trademark infringement claim fails.

ii.  **Sedo has not "used" Plaintiffs' Marks in commerce.**

Plaintiffs' failure to sufficiently allege that Sedo "used" its marks in commerce is also fatal to their claims.  Sedo is a domain parking company.  (Am. Co., ¶ 142).  Sedo does not own, register, or operate any of the allegedly infringing domain names or websites.  Sedo is merely a facilitator providing a marketplace for the parking of domain names.  *See www.sedo.com.* Therefore, because Sedo is not an owner or operator of the domain names at issue, Sedo cannot possibly have "used" Plaintiffs' alleged marks in commerce.  Thus, Sedo does not violate federal trademark law or its common law equivalent.  *See Lockheed Martin Corp. v. Network Solutions, Inc. 985 F. Supp. 949 (*C.D. Ca. 1997), *aff'd* 194 F.3d 980 (10th Cir. 1999)(the mere acceptance of a domain name for registration that resembles another's trademark is not use of the mark in connection with goods or services as required to support a Lanham Act claim).

In *Lockheed*, the plaintiff brought a trademark infringement action against NSI, a company that managed domain name registration, screened domain name applications and maintained a directory linking domain names with domain name servers.  *Lockheed v. Network*

---

[5] A search of the United States Patent and Trademark Office's website indicate the following uses of vulcan: vulcan (245 records); vulcano (9 records); volcan (36); volcano (447). *See http://www.uspto.gov/.*

*Solutions, Inc*., 985 F.Supp. 949, 953 (C.D. Cal. 1997).  NSI did not make a determination of applicant's right to use a domain name and it did not assign domain names.  *Id.* The court found that this activity was not sufficient to constitute "use in commerce" for purposes of the Lanham Act and granted judgment in NSI's favor.  *Lockheed* at 959.

Similarly, the allegations concerning Sedo's conduct do not give rise to "use" of a mark in commerce.  Like NSI, Sedo manages a marketplace where domain owners can park their domain names.  (Am. Co., ¶ 72).  Sedo does not make a determination of an applicants' right to use a domain name.  Sedo does not assign domain names.  Sedo has no right and cannot cancel a registration of a domain name.   Sedo is not the domain owner.[6]  The fact that Sedo makes a profit from its parking functions does not convert its activity into trademark use.  *See Watts v. Network Solutions, Inc*., 1999 WL 778589 (S.D.Ind. 1999), n. 1 *citing Lockheed*, 985 F. Supp at 960.  It is the domain owner, not Sedo, which created the subject domain names, registered the domain names, and decided to place advertising on the websites linked to the domain name. (Am. Co., ¶ 9(a)-(f)).  If infringement occurs, it is not the result of Sedo's listing of the domain name but from the registrants' use of the domain in the connection with goods and services. *Lockheed* at 958, n.7 (internet service providers cannot be held liable for failing to monitor information posted on their computers).  Plaintiffs only generally claim that Sedo has knowledge of the illegal actions – and this baseless conclusion, without more, is not enough.

> iii. **There has been no use of the mark in competing or related goods or services.**

Further, to be liable under this section of the Lanham Act, a party must use the mark on competing and relating goods.  *Lockheed* at 956.  Plaintiffs have not alleged that Sedo offers any goods or services similar to the Plaintiffs.  Sedo does not sell golf clubs, golf related services, nor sports memorabilia.  Sedo did not promote the subject domain names.  Sedo simply serves as a marketplace for domain name owners to list their domain names, and, if the domain owner so chooses, Sedo can link the domain owner to advertisements offered by Google.  This purely nominative function is not enough to give rise to liability under § 114.  *Lockheed* at 956, 957 ("in order to infringe [the marks] must be used to identify the source of goods and services").  Where "pure machine-linking function is the only use at issue, there is no trademark use and there can

---

[6] Plaintiffs have not made the owners of the domain names vulcanogolf.com, aintnobojackson.com and nobojackson.com parties to this suit.

be no infringement." *Lockheed* at 958.  Because Plaintiffs have not alleged any use of the mark by Sedo to "identify goods and services", Sedo cannot be held liable for trademark infringement.

iv.  <b>There is no likelihood of confusion among consumers</b>.

Setting aside that Sedo never owned or used the subject domain names, Plaintiffs have failed to sufficiently allege a likelihood of confusion.  Trademark infringement only occurs if, in addition to commercial use, there *is* a likelihood of confusion among consumers as to the origin of any products or service.  *Taumban Co. v. Webfeats*, 319 F.3d 770, 776 (6th Cir. 2003).  Plaintiffs claim that the domain names for websites, which they allege are similar to their trademarks, cause confusion.  However, it is irrelevant whether the customers would be confused by the origin of the website; a claim is only stated when there is confusion as to the origin of respective products.  *Id. citing Daddy's Junky Music Stores v. Big Daddy's Family Music Center*, 109 F.3d, 275, 280 (6th Cir. 1997).

Plaintiffs do not allege that Sedo is selling merchandise or offering services on the "deceptive domain" website.  Plaintiffs further do not allege that Sedo has listed their marks on the actual websites such that a customer would be confused as to the origin of any product or service.  The existence of an allegedly "deceptive domain" is simply not enough under the Lanham Act.  *See e.g. Holiday Inns v. 800 Reservation*, 86 F.3d 619, 625 (1996)(a travel services use of a common misdialed number for Holiday Inn was not trademark infringement – "defendants did not create any confusion; the confusion already existed among the misdialing public").  "The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of the infringement to [a defendant].  The use of an identical or similar mark does not necessarily constitute infringement."  *Watts v. Network Solutions, Inc*., 1999 WL 778589 (S.D.Ind. 1999), *7 *citing Lockheed* at 963.  Notably, Plaintiffs have not alleged that Sedo has tried to pass off its goods and services as those of Plaintiffs.

Plaintiffs further allege that the subject domain names are likely to cause initial interest confusion among the general public.  However, courts have held that "an initial confusion on the part of web browsers … is not cognizable under trademark law."  *Hasbro, Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 125 (D.Mass. 1999) *citing Teletech Customer Care Management, Inc. v. Tele-Tech Co.,* 77 F. Supp. 1407, 1414 (C.D.Ca. 1997).  This is especially

true when the mark at issue is an English word in its own right, as are "vulcan"[7] and "golf". *See Playboy* at 1074. Plaintiffs' complaint simply does not sufficiently allege how consumers are likely to be confused as to the origin of any products by merely viewing a page that lists advertising. For this reason, Plaintiffs' trademark claims fail as a matter of law.

### v. Jackson has failed to state a trademark claim against Sedo.

Jackson alleges that a connection to the domain name www.aintnobojackson.com and www.nobojackson.com (Am. Co., ¶ 65) subjects Sedo to liability under the Lanham Act. For the same reasons set forth above, and incorporated herein, Jackson's trademark infringement claims against Sedo also fail. Jackson has also failed to adequately show that he has a protectible mark that is being infringed. Section 1114(a) of the Lanham Act explicitly protects against infringement of "registered marks." Because Jackson has not claimed that he has a registered mark, he is not entitled to recover. *Best Vacuum, Inc. v. Ian Design, Inc*., 2005 WL 1185817, *2 (N.D.Ill. 2005) (plaintiff does not have a registered mark and because this section of the Lanham Act protects only registered marks, plaintiff's action has no likelihood of success.)

Jackson has also failed to adequately allege that www.aintnobojackson.com and www.nobojackson.com are confusingly similar to a domain name owned Jackson. There is no allegation in Plaintiffs' Complaint that Jackson owns a domain name, nor has a website, containing the phrase "bojackson". Consequentially, because Jackson does not have a protectible interest in a mark, he will never be able to prove a likelihood of confusion. Thus, he has failed to state a claim under the Lanham Act.

Second, case law has made it clear that domain names with qualifying monikers remove any confusion as to the source of the product, thus defeating trademark infringement claims. *See e.g. Taubman Co. v. Webfeats*, 319 F.3d 770, 777-778 (6th Cir. 2003.)("In contrast, 'taubmansucks.com' removes any confusion as to the source. We find no possibility of confusion and no Lanham Act Violations"). Similarly, www.aintnobojackson.com and www.nobojackson.com clearly contain qualifiers "aint" and "no" that remove <u>any</u> source of confusion as to the source of the information contained therein. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc*., 2007 WL 118527, (N.D.Ill.,2007) *citing Duluth News-Tribune v.*

---

[7] The word vulcan certainly has other meanings outside of golf clubs. "Vulcan–noun 1. the ancient Roman god of fire and metalworking, identified with the Greek Hephaestus. 2. Military. a six-barrel, 20mm U.S. Army antiaircraft gun system mounted on an armored personnel carrier and first deployed in 1968. 3. Astronomy. a hypothetical planet nearest the sun whose existence was erroneously postulated to account for perturbations in Mercury's orbit." *See Dictionary.com* website: http://dictionary.reference.com/browse/vulcan

*Mesabi Publishing Co.*, 84 F.3d 1093, 1097 (8th Cir.1996). Further, "[t]he use of dominant identical words in common does not mean the two marks are similar. Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by the purchasers of such products." *Duluth News-Tribune* at 1097. The use of "aint" and "no" in the subject marks undoubtedly and explicitly gives the impression that the subject marks are *not* associated with Jackson. Because Jackson cannot establish a likelihood of confusion as to the source of any product or service with respect to these websites, count IV, V and VI of his claims against Sedo must be dismissed.

### b. There has been no False Designation of Origin by Sedo.

Section 43 of the Lanham Act, known as False Designation of Origin, proscribes misrepresentations as to the source or sponsorship of goods or services. 15 U.S.C. § 1125(a). To prevail on a federal false designation of origin claim, plaintiff must show: (1) that it possesses a valid trademark; and (2) that there is a likelihood of confusion on the part of the public as to the source or sponsorship of the product. *Medic Alert Foundation United States, Inc. v. Corel Corporation*, 43 F.Supp.2d 933, 936 (N.D.Ill. 1999) *citing Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997). This is essentially the same test that is used for analyzing a trademark infringement claim. As explained above, because Plaintiffs' trademark claims fail, their false designation of origin claims fails.

### c. There has been no Dilution by Sedo.

Plaintiffs alleges that their trademarks were "distinctive, protected/privileged, and/or famous" (Am. Co., ¶ 377) and that the Sedo's use of allegedly infringing deceptive domain names in commerce is "likely to cause dilution" by blurring or dilution by tarnishing of the Plaintiffs' marks (Am. Co., ¶ 379) by knowingly providing false contact information in registering the allegedly infringing deceptive domains. (Am. Co., ¶ 379-380). As noted before, such speculative pleading has been rejected as inadequate by the Supreme Court. *Bell Atl.*, supra.

In order to obtain relief under the statute, Plaintiffs must show that (1) their mark are famous; (2) the defendant is making commercial use out of the marks in commerce; (3) the defendant's use began after the marks became famous; and (4) the defendants' use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish good and services. 15 U.S.C. § 1125(c).

The dilution statute "is to be applied selectively and is intended to provide protection only to those marks which are both distinctive and famous ... [T]he new dilution provisions should apply only to those very unique marks which qualify for dilution protection in light of all the factors which are weighed by the court." Senate Judiciary Committee Report on S. 1883, S.Rep. No. 100-515, at 41-42 (Sept. 15, 1988). Courts routinely hold that a mark must be truly prominent and renowned before it is entitled to protection under the dilution statute. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc*., 2007 WL 118527, (N.D.Ill.,2007) (citations omitted).   Because Plaintiffs do not have protectible trademarks as stated above, their dilution claims against Sedo also fail.

### i.   Vulcan is not a famous entity and Jackson is not a famous person.

Vulcan has failed to adequately allege that it is famous.  Again, mere conclusory statements are not enough.  Further, the fact that Jackson was a successful athlete or participated in an advertising campaign seventeen years ago is not sufficient to state a claim under the Lanham Act.  Even if Jackson, had a protectible interest in his name at one time, an owner's trademark does not remain stable over time and can be diminished.  *Lockheed* at 963.  Only famous marks are entitled to protection.  Because Vulcan and Jackson are not famous, no dilution has occurred.

### ii.  Sedo did not use Plaintiffs' Marks.

Procurement of a domain name alone does not constitute use in commerce.  Courts have held that "use" in conjunction with the sale of goods and services requires more then domain name registration.  *Brookfield Communications v. West Coast Entertainment Corp*., 174 F.3d 1036, 1051 (9th. Cir. 1999).  *See also Lockheed,* 985 F. Supp. at 959-60. The law does not *per se* prohibit the use of trademark or service marks as domain names.  *Id.*  Rather, the law prohibits only uses that infringe or dilute a trademark or service mark owner's mark. *Id.*  Moreover, innocent third party users of a trademark or service marks have no duty to police the mark for the benefit of the mark's owner.  The fact that the domain owners "parked" their page with Sedo, along with 6,999,997 domain names is simply not enough to create any liability on behalf of Sedo.  Acceptance of a domain name listing, like domain name registration, is not a "commercial use" within the meaning of the FTDA.  *Lockheed* at 959; *see also Juno Online Services v. Juno Lighting, Inc.,* 979 F. Supp. 684 (N.D. Ill. 1997).

Finally, although Plaintiffs have alleged that their marks will likely suffer blurring and be tarnished, they offer no facts to support this claim.  As a result, Plaintiffs have failed to state a claim under the FTDA.

In conclusion, because Plaintiffs have failed to state their Lanham Act claims against Sedo on a multitude of grounds, Counts IV, V, and VI of Plaintiffs' Complaint should be dismissed.

### 3. Plaintiffs' Do Not Properly Allege a Violation of the Uniform Deceptive Trade Practices Act.

Plaintiffs must state their claims under the UDTPA with particularity under Rule 9(b). (Comp. ¶¶ 587-91.) "The Seventh Circuit instructs that the complaint [under the ICFA] must allege the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiff." *Gold, supra.*  Even if Plaintiffs had alleged that Sedo was somehow connected to the three domain names that Plaintiffs complain of, this is not sufficient pleading under Fed.R.Civ.P. 9(b).  *See Mathews v. Homecoming Financial Network Litton Loan Servicing*, 2005 U.S. Dist LEXIS 21535 (N.D. Ill. 2005)(Plaintiff's claim that defendants were liable under the ICFA for repeatedly sending out deceptive correspondence to borrowers without providing any of the particulars as to any of the incidents of which it complained was dismissed because it did <u>not</u> sufficiently state the who, what, when, where and how as required by Fed.R.Civ.P. 9(b)); *Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* 2003 U.S. Dist. LEXIS 5600 (D. Ill. 2003). Because Plaintiffs have failed to set forth any facts that describe the "who, what, where, when and how" with respect to Sedo, Plaintiffs' ICFA and UDTPA count against Sedo must be dismissed for failing to comply with Fed.R.Civ.P. 9(b).

### a. Plaintiffs are not Consumers within the Definition of the ICFA and have not set Forth Sufficient Allegations to Support any Other Basis for their ICFA Claims Against Sedo.

Generally, the ICFA is primarily concerned with protecting consumers, which it defines as any person who purchases or contracts for the purchase of merchandise not for sale in the ordinary course of his trade or business but for his use or that of his household.  *People ex rel. Hartigan v. Lann*, 225 Ill. App. 3d 236, 240 (1992); 815 ILCS 505/1(e).  In their Amended Complaint, Plaintiffs claim that they are consumers within the meaning of the statute.  (Am. Co., ¶ 392).  There is not, however, a single allegation in the Amended Complaint to support this

assertion.  Therefore, Sedo is entitled to dismissal of this claim against it.  *Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* 2003 U.S. Dist. LEXIS 5600 (D. Ill. 2003)(Plaintiff failed to state a claim under the Act because the purchaser did not meet the Act's definition of "consumer" and failed to plead the necessary consumer nexus.)  The allegations of the Amended Complaint clearly set forth that Plaintiffs are businesses or celebrities engaged in a business and are not consumers.  Plaintiffs are not consumers.  Even though Plaintiffs claim to be consumers, a plain review of the allegations of the Complaint reveals that they are not.  Therefore, Plaintiffs' have not properly allege this claim and the ICFA count against Sedo should be dismissed.

### b.   Plaintiffs Have Failed To State Their Claims Under the Lanham Act. Consequentially, Their Claims under the ICFA and UDTPA Also Fail.

Plaintiffs' claims under the ICFA and UDTPA rise and fall on the success of their Lanham Act claims.  *See MJ & Partners Restaurant v. Zadikoff,* 10 F. Supp. 2d 922, 926 (N.D. Ill. 1998).  Because the Plaintiffs have not stated a claim under the Lanham Act, this court should dismiss Plaintiffs' claims under the ICFA and UDTPA.  *Id.*   Accordingly, Count Seven of Plaintiffs' Complaint should also be dismissed.

### 4.   Plaintiffs Do Not Properly Allege a Claim for Common Law Trademark Infringement.

The same standard applies to Plaintiffs' common law trademark claims as that used under the federal Lanham Trademark Act.  *Trans Union, LLC v. Credit Research, Inc*., 142 F. Supp2d 1029, 1038 (N.D. Ill. 2001) *See Also Joujou Designs, Inc. v. Jojo Linge Internationale, Inc*., 821 F. Supp. 1347, 1353 (N.D. Cal. 1992) (noting that the tests for federal trademark infringement [and] common law trademark infringement…are the same: "whether confusion is likely.") Because as discussed above, Plaintiffs failed to state a claim under the Lanham Act, they have failed to state a claim for common law trademark infringement.  Thus, Count Nine of the Amended Complaint should be dismissed.

### 5.   Vulcan and Jackson Failed to Sufficiently Allege a Claim for Contributory Trademark Infringement.

In order to prove contributory infringement, a plaintiff must demonstrate that a defendant: (1) intentionally induced a third party to infringe the plaintiff's mark; or (2) supplied a product to a third party with actual or constructive knowledge that the product was being used to directly infringe the mark."  *Monotype Imaging, Inc. v. Bittstream, Inc.*, 2005 WL 9368822 *3 (N.D. Ill. 2005) citing *Inwood Labs, Inc. v. Ives Labs, Inc.* 456 U.S. 844, 853-854, 102 S.Ct.

2182 (1982).  "Contributory infringement therefore requires proof of direct infringement by a third party, as well as defendants' intent and knowledge of the wrongful activities of its distributors."  *Id.* citing *David Berg and Co. v. Gatto Intern. Trading Co., Inc.* 884 F. 2d 306, 311 (7th Cir. 1989).

Plaintiffs have failed to sufficiently allege that Sedo supplied a product to a third party with knowledge that it was being used to directly infringe on the Plaintiffs' marks.  Plaintiffs' Amended Complaint contains the kind of generalizations and conclusions that were directly rejected in *Bell Atlantic*. *Bell Atl*, 127 S. Ct. at 1964-1965 (2007).  Plaintiffs have not alleged any *facts* that make it plausible that Sedo controlled or otherwise directed the owners of the seven million domains that it managed.   More particularly, Plaintiffs have not alleged that Sedo directed or induced the owners of the domains that allegedly infringe on either Vulcan or Jackson's marks to take any action with regard to those marks.

Further, Plaintiffs have not and cannot allege that Sedo provided any product to any domain owner.  Sedo provides a service to domain owners; specifically, as alleged in Plaintiffs' Amended Complaint, it manages a database and helps monetize a domain.  As such, Sedo has not supplied a product.  *See Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 572-73 (E.D. Va. 2003); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999) (holding that domain registrars lack the requisite control over third-party infringers to extend the definition of product to their activities). As such, Plaintiffs' claim for contributory trademark infringement cannot stand.

Last, as argued above, Plaintiffs are unable to maintain a claim for trademark infringement generally. Therefore, there can be no contributory infringement and Count Ten should be dismissed.

### 6.  Vulcan and Jackson have Failed to and Cannot Properly Allege a Claim for Vicarious Trademark Infringement.

Plaintiffs claim that Sedo is vicariously liable for the infringement of others must fail.  To succeed on this claim, Plaintiffs must demonstrate "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." (internal citations and quotations omitted.  *SB Designs v. Reebok International, Ltd.,* 338 F. Supp.2d 904, 909 (N.D. Ill. 2004).

Plaintiffs have not alleged any facts that Sedo and the domain owners who use its service can bind one another in a transaction, or exercise joint ownership over anything. Rather than allege facts that raise that possibility above mere speculation, Plaintiffs merely parrot broad generalizations and legal conclusions, which are once again insufficient under *Bell Atlantic*. *Bell Atl.*, 127 S. Ct. at 1964-1965 (2007). Plaintiffs do not allege a partnership between Sedo and the domain owners of any of the three allegedly deceptive domains that are possibly related to Sedo. Therefore, since Plaintiffs have not and cannot properly allege a partnership between Sedo and an alleged direct infringer, Count Eleven must be dismissed.

Last, as discussed above, Plaintiffs have not adequately alleged a claim for trademark infringement. Therefore, no claim for vicarious trademark infringement can stand. Accordingly, Count Eleven must be dismissed.

V.    **CONCLUSION:**

For the reasons set forth above and in the Defendants' Joint Memorandum in Support of their Motions to Dismiss, Sedo.com, LLC submits that the Amended Complaint should be dismissed against it in its entirety under Rule 12(b)(1) and (6).

Respectfully submitted,

By:    /s/ Jeffrey Singer
          On behalf of Sedo.com, LLC

Jeffrey Singer, Esq. (ARDC # 2670510)
Misty R. Martin, Esq. (ARDC # 6284999)
Segal McCambridge Singer & Mahoney, Ltd.
233 South Wacker Drive
Sears Tower – Suite 5500
Chicago, IL 60606
(312) 645-7800 (t)
(312) 645-7711 (f)

**Certificate of Service**

I, Misty R. Martin, attorney of record for defendant, certify that on October 18, 2007, a copy of this document was served on all counsel of record via the court's electronic filing system.

    /s/ Misty R. Martin