# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually And On Behalf of All Others Similarly Situated, ) ) ) ) ) ) | No. 07 CV 3371 |
| Lead Plaintiffs, ) ) | Honorable Blanche M. Manning |
| v. ) ) | Magistrate Judge Geraldine Soat Brown |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IReit, INC. and JOHN DOES I-X, ) ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANT OVERSEE.NET'S SEPARATE MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
## **FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION** ..........................................................................................................................1

**STANDARD OF REVIEW** ..........................................................................................................2

**ARGUMENT** ................................................................................................................................2

I.     Plaintiffs Have Failed to State a Claim for Trademark Infringement Under 15 U.S.C. § 1114(1) or for Common Law Trademark Infringement (Counts IV and IX). ....................................................................................................................................2

     A.     Plaintiffs Have Not Alleged That Oversee Used Any of Plaintiffs' Marks .............2

     B.     Plaintiffs Have Not Alleged That Oversee Caused A Likelihood of Confusion As Required Under 15 U.S.C. § 1114 ......................................................5

II.     Plaintiffs' False Designation of Origin Claim Fails Because Plaintiff Does Not Adequately Allege That Oversee Used Plaintiffs' Marks (Count V). .................................7

III.     Plaintiffs' Dilution Claim Fails Because Plaintiffs Do Not Allege That the Marks At Issue Were Commercially Used by Oversee in Commerce or That They are Famous (Count VI). ...........................................................................................................8

     A.     Plaintiffs Do Not Allege that Oversee Used the Marks in Commerce ....................8

     B.     Plaintiffs Do Not Adequately Allege that the Marks At Issue Were Famous ......................................................................................................................9

IV.     Plaintiffs' Contributory and Vicarious Trademark Infringement Claims Fail Because Plaintiffs Have Failed to Allege Underlying Direct Infringement (Counts X and XI)..................................................................................................................10

V.     Plaintiffs' Cybersquatting Claim Fails Because Plaintiffs Have Not Sufficiently Alleged the Elements Required for a Claim Under the ACPA (Count III). .....................12

     A.     Plaintiffs Failed to Adequately Allege That Oversee Was a Domain Name Registrant or a Registrant's Authorized Licensee of the Alleged Deceptive Domains ................................................................................................12

     B.     Plaintiffs' Own Allegations Negate The Requisite Bad Faith Intent .....................13

**CONCLUSION** ...........................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*1-800 Contact, Inc. v. WhenU.com, Inc.*,
    414 F.3d 400 (2d Cir. 2005) .................................................................................... 3-4

*Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.*,
    989 F. Supp. 1276 (C.D. Cal. 1997) ............................................................................. 8

*American Airlines, Inc.*
    *v. A 1-800-A-M-E-R-I-C-A-N* ...................................................................................... 6

*Avery Dennison Corp. v. Sumpton*,
    189 F.3d 868 (9th Cir. 1999) ..................................................................................... 8-9

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) .................................................................................................. 2

*Berghoff Rest. Co. v. Lewis W. Berghoff, Inc.*,
    357 F. Supp. 127 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974) .................... 2

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ............................................................................ 3-4, 8, 12

*D 56, Inc. v. Berry's Inc.*,
    No. 95 C 5992, 1996 WL 252557 (N.D. Ill. May 10, 1996) ........................................ 5

*DaimlerChrysler AG v. Bloom*,
    315 F.3d 932 (8th Cir. 2003) ....................................................................................... 6

*Do It Best Corp. v. Passport Software, Inc.*,
    No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004) .................................... 10

*FieldTurf, Inc. v. Triexe Management Group, Inc.*,
    No. 03 C 5704, 2003 WL 22956000 (N.D. Ill. Dec. 11, 2003) .................................... 8

*Ford Motor Co. v. Greatdomains.com, Inc.*,
    177 F. Supp. 2d 635 (E.D. Mich. 2001) ..................................................................... 12

*Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*,
    955 F.2d 1143 (7th Cir. 1992) .................................................................................... 11

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
    86 F.3d 619 (6th Cir. 1996) ................................................................................. 2, 5-6

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
 456 U.S. 844 (1982) ................................................................................................................10

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
 540 F.2d 266 (7th Cir. 1976) .....................................................................................................2

*Juno Online Services v. Juno Lighting, Inc.*,
 979 F. Supp. 684 (N.D. Ill. 1997) ..............................................................................................8

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 194 F.3d 980 (9th Cir. 1999) ...................................................................................................11

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 985 F. Supp. 949 (C.D. Cal. 1997) ............................................................................... 3-4, 8, 11

*McGraw-Edison Co. v. Walt Disney Productions*,
 787 F.2d 1163 (7th Cir. 1986) ...................................................................................................5

*Monotype Imaging, Inc. v. Bitstream, Inc.*,
 No. 03C4349, 2005 WL 936882 (N.D. Ill. Apr. 21, 2005) ............................................. 3, 10-11

*Panavision Intern., L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ...................................................................................................3

*Papasan v. Allain*,
 478 U.S. 265 (1986) ..................................................................................................................2

*Perfect 10, Inc. v. Visa Int'l Service Assoc.*,
 No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5,2004) ...........................................10

*Planet Hollywood, Inc. v. Hollywood Casino Corp.*,
 80 F. Supp. 2d 815 (N.D. Ill. 1999) ....................................................................................... 2-3

*Sales, Inc. v. Hampshire Paper Corp.*,
 192 F.3d 633 (7th Cir. 1999) .....................................................................................................8

*SB Designs v. Reebok Intern., Ltd.*,
 338 F. Supp. 2d 904 (N.D. Ill. 2004) .......................................................................................11

*Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*,
 No. 06 C 950, 2007 WL 118527 (N.D. Ill. Jan. 4, 2007) ....................................................... 2-3

*Watts v. Network Solutions, Inc.*,
 No. 99-2350, 1999 WL 994012 (7th Cir. Oct. 27, 1999) ........................................................10

*Wells Fargo & Co. v. WhenU.com, Inc.*,
 293 F. Supp. 2d 734 (E.D. Mich. 2003) ....................................................................................4

*World Impressions, Inc. v. McDonald's Corp.*,
   235 F. Supp. 2d 831 (N.D. Ill. 2002) ..................................................................................2

**STATUTES, RULES & REGULATIONS**

5 U.S.C. § 1125(a) ..............................................................................................................7

5 U.S.C. § 1125(d)(1)(A).............................................................................................. 12-13

5 U.S.C. § 1125(c) .......................................................................................................... 8-9

5 U.S.C. § 1125(c)(1).........................................................................................................8

5 U.S.C. § 1125 (d) ..........................................................................................................12

5 U.S.C. § 1125(d)(1)(D).................................................................................................12

15 U.S.C. 1125(c) ..............................................................................................................9

15 U.S.C. § 1125(c)(2)(A) .................................................................................................9

15 U.S.C. § 1125(c)(2)(B) & (C) .......................................................................................3

15 U.S.C. § 1114(1) ...........................................................................................................2

15 U.S.C. § 1114................................................................................................................5

15 U.S.C. § 1125.............................................................................................................3, 7

15 U.S.C. § 1127................................................................................................................8

ILCS 505/2..........................................................................................................................1

R. CIV. P. 12(B)(6)........................................................................................................ 1-2

**DEFENDANT OVERSEE.NET'S SEPARATE MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Oversee.net ("Oversee") submits this memorandum in support of its motion to dismiss Counts III, IV, V, VI, IX, X, and XI pursuant to Fed. R. Civ. P. 12(b)(6). Oversee also joins in the Consolidated Memorandum of Law in Support of Defendants' Motions to Dismiss Amended Class Action Complaint with respect to the remaining claims (Counts I, II, VII (as to ILCS 505/2), VIII, XII, XIII, and XIV).

## INTRODUCTION

Plaintiffs' trademark-related claims against Oversee (Counts IV, V, VI, IX, X and XI) fail because Plaintiffs have not alleged that Oversee made any trademark use of any of Plaintiffs' marks, as required for each of these claims. At most, Plaintiffs have alleged that Oversee is associated with domain names that they contend are confusingly similar to Plaintiffs' marks. Significantly, however, Plaintiffs have not alleged that Oversee used such domain names as trademarks on goods or services, or that Oversee has otherwise used Plaintiffs' marks to indicate source or origin. Plaintiffs' trademark-related claims also fail for the separate reason that Plaintiffs have not alleged that Oversee was the cause of any likelihood of confusion. Plaintiffs have alleged that Internet searchers, through no fault of Oversee, fail to reach Plaintiffs' websites. At most, Plaintiffs have complained that Oversee has placed itself in a position where it can benefit from confusion originating from consumers, which is not actionable under the Lanham Act. For these reasons, the Court should dismiss the trademark-related counts against Oversee.

Plaintiffs' cybersquatting claim (Count III) also fails against Oversee. Plaintiffs have failed to allege facts that would support their legal conclusion that Oversee "registers," "traffics in" or "uses" any of the alleged Deceptive Domains, as the ACPA requires. Moreover, Plaintiffs have pleaded facts that negate an essential element of their cybersquatting claims: Plaintiffs concede that Defendants have online complaint systems and procedures whereby the company will investigate any alleged illegal infringement of trademarks in connection with the registration of domain names. While Plaintiffs may challenge the effectiveness of such systems and procedures, this fact negates any allegations that Oversee possessed the "bad faith intent" necessary for a cybersquatting claim. The Court should dismiss the Plaintiffs' cybersquatting claims.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' factual allegations in their complaint "must be enough to raise a right to relief above the speculative level," and the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 74 (2007). It is not enough to simply make conclusory assertions that track the elements of a cause of action. *Twombly*, 127 S. Ct. at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") Accordingly, Plaintiffs are required to plead facts, not just legal conclusions, that plausibly support their claims.

**ARGUMENT**

**I.     Plaintiffs Have Failed to State a Claim for Trademark Infringement Under 15 U.S.C. § 1114(1) or for Common Law Trademark Infringement (Counts IV and IX).**

Plaintiffs allege that Oversee committed both statutory trademark infringement under 15 U.S.C. § 1114(1) and common law trademark infringement. Because courts have found that "the principles of statutory trademark law and the tests for infringement are basically the traditional ones of common law,"[1] Plaintiffs' federal statutory and common law trademark claims fail for the reasons discussed below.

**A.     Plaintiffs Have Not Alleged That Oversee Used Any of Plaintiffs' Marks**

The trademark use of a protected mark "is a prerequisite to the finding of a Lanham Act violation." *Planet Hollywood, Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 879 (N.D. Ill. 1999); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir.

---

[1] *Berghoff Rest. Co. v. Lewis W. Berghoff, Inc.*, 357 F. Supp. 127, 130 n.3 (N.D. Ill. 1973), *aff'd*, 499 F.2d 1183 (7th Cir. 1974); *see also James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274-75 & n.16 (7th Cir. 1976) (finding state law unfair competition and trademark claims resolved by reference to the resolution of plaintiff's Lanham Act claims); *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 118527, *2 (N.D. Ill. Jan. 4, 2007) (common law trademark infringement and unfair competition claims are resolved in the same manner as Lanham Act claims); *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 841 (N.D. Ill. 2002) (same).

1996). Indeed, "trademark use" is required for all of Plaintiffs' federal and common law trademark infringement claims, including their contributory and vicarious trademark infringement claims, and their claim for trademark dilution.[2] To survive Oversee's motion to dismiss, Plaintiffs must allege that Oversee has used Plaintiffs' trademarks as trademarks, meaning that Oversee communicated the marks to the public as indicators of the source or origin of goods or services. *Planet Hollywood*, 80 F. Supp. 2d at 879; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 960 (C.D. Cal. 1997) (concluding that domain name registrar's selling of allegedly infringing domain names and profiting from sales was not "use" under 15 U.S.C. § 1125 because registrar did not "trade on the value of domain names as trademarks.").

Oversee's alleged registration or sale of some of the challenged domains is not trademark use because, as the Sixth Circuit asserted in *Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir. 2002), the mere registration or sale of a domain name—even if the name resembles an established trademark—is not "use" of the challenged domain name as a trademark. The *Bird* court noted that even domain names resembling marks have "a non-trademark technical purpose," namely, to designate an address on the Internet. The registration or sale of such domain names fulfills this purpose, as opposed to using the domain names as symbols to identify the origin of goods or services. *Bird*, 289 F.3d at 879; *see also Lockheed Martin Corp.*, 985 F. Supp. at 956.

Indeed, the *Bird* court and several other courts have compared domain names to "vanity numbers"[3] in finding that mere registration of domain names "confusingly similar" to protected marks is not "use" of the marks. These courts have held that while vanity numbers are entitled to protection under the Lanham Act, confusingly similar telephone numbers do not infringe if users of the numbers make no attempt to promote them. *See Bird*, 289 F.3d at 878;

---

[2] *See 1-800 Contact, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407-09 (2d Cir. 2005) (federal trademark infringement); *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 118527, *2 (N.D. Ill. Jan. 4, 2007) (common law trademark infringement and unfair competition claims are resolved in the same manner as Lanham Act claims); *Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03C4349, 2005 WL 936882, *3, 7 (N.D. Ill. Apr. 21, 2005) (contributory and vicarious infringement claims require proof of direct infringement by third party); 15 U.S.C. § 1125(c)(2)(B) & (C) (federal dilution statute requires defendant to use "a mark or trade name").

[3] Vanity numbers are "toll-free telephone numbers consist[ing] of easy to remember words, where each letter represents a number on the telephone keypad." *Bird*, 289 F.3d at 878.

3

*Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir. 1998); *Lockheed Martin*, 985 F. Supp. at 957. The courts have reasoned that domain name registrars and telephone companies employ marks in domain names or vanity numbers as location information, not as trademarks. *See, e.g., Bird v. Parsons*, 289 F.3d at 878; *Lockheed Martin,* 985 F. Supp. at 956. Accordingly, courts have declined to find trademark infringement in those instances.

In an analogous case, the Second Circuit addressed a defendant's ability to cause pop-up ads of the plaintiff's competitors to appear on a computer user's desktop when the user accessed the plaintiff's website. *See 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005). In *1-800 Contacts*, the plaintiff alleged that the defendant infringed its mark under the Lanham Act by "using" it in connection with the ads. The Second Circuit instructed the district court to dismiss the plaintiff's trademark infringement claims, holding that, as a matter of law, the placement of pop-up ads contemporaneously with either the plaintiff's website or a list of search results obtained by a consumer's input of the plaintiff's domain name did not constitute "use" under the Lanham Act.[4] *Id.* at 412. According to the court, such conduct was not "use" of the plaintiff's trademark "in the manner ordinarily at issue in an infringement claim" since the plaintiff's trademarks were not placed on any goods or services "in order to pass them off as emanating from or authorized by [the plaintiff]." *Id.* at 408. The "fatal flaw" in the plaintiff's claim was that the plaintiff's trademarks were not displayed to consumers in any pop-up advertisements.[5] *Id.* at 410.

Here, Plaintiffs have not alleged that Oversee used any of the Plaintiffs' marks as trademarks. For example, Plaintiffs have not alleged that advertisements on any of the challenged domains contain Plaintiffs' marks or logos. In fact, the advertisements here, unlike those in *1-800 Contacts*, are not alleged to appear on any of Plaintiffs' websites. Plaintiffs allege only that the domains on which the advertisements appear are confusingly similar to Plaintiffs' marks. Claims regarding the tenuous relationship, at best, between Plaintiffs' marks and the

---

[4] *See also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 757-58 (E.D. Mich. 2003) (holding that the defendant, whose ads "popped-up" when consumers visited the plaintiff's website, did not "use" the plaintiff's mark because the only trademarks that appeared in the defendant's ad were the defendant's own marks and the marks of its advertisers).

[5] The Second Circuit likened the defendant's purported "use" of the trademarks to the way a drug store uses rival trademarks when it "places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought the trademarked product to consider the store's less-expensive alternative." *Id.* at 411.

4

advertisements on the challenged domains are insufficient to allege that Oversee "used" Plaintiffs' marks under the Lanham Act.  Accordingly, the Court should dismiss Plaintiffs' trademark claims for failure to allege the necessary use element.

> **B.     Plaintiffs Have Not Alleged That Oversee Caused A Likelihood of Confusion As Required Under 15 U.S.C. § 1114**

The "keystone" of trademark infringement "is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers."  *D 56, Inc. v. Berry's Inc.*, No. 95 C 5992, 1996 WL 252557, *8 (N.D. Ill. May 10, 1996) (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992).  By its terms, the Lanham Act permits recovery for trademark infringement only if the defendant's alleged use of the plaintiff's mark was the ***cause*** of such confusion.[6]  15 U.S.C. § 1114.

The Court should dismiss Plaintiffs' trademark claims against Oversee because Plaintiffs have failed to allege that Oversee *caused* a likelihood of confusion with respect to the source or sponsorship of goods or services.  At most, Plaintiffs have alleged that Oversee made itself the beneficiary of consumers' *preexisting* confusion.  These allegations bemoaning Defendants' alleged profits from consumers' own, self-caused, typographical errors do not give rise to trademark infringement liability.

The Sixth Circuit considered similar allegations in *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619 (6th Cir. 1996), on appeal of a preliminary injunction.  The *Holiday Inns* court held that the defendant's use of the telephone number most commonly *misdialed* by consumers attempting to reach Holiday Inns' vanity number, 1-800-HOLIDAY, did not cause a likelihood of confusion under the Lanham Act.  *Holiday Inns,* 86 F.3d at 625.  The plaintiff, Holiday Inns, had claimed that the defendant violated the Lanham Act by accepting and profiting from reservations made by customers who misdialed the Holiday Inns reservation line—usually by substituting a "zero" for the "O" in the Holiday Inns vanity number.  *Id.* at 620. Because the defendant in *Holiday Inns* never promoted the number in connection with the

---

[6] To recover under 15 U.S.C. § 1114, Plaintiffs must demonstrate both the existence of a likelihood of confusion and that Oversee's use of their trademarks *caused* the likelihood of confusion.  *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 625-26 (6th Cir. 1996). Oversee does not admit that any likelihood of confusion exists, but acknowledges that its existence may be a question of fact not properly resolved on a motion to dismiss.  *See McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1168 (7th Cir. 1986).

5

plaintiff's trademark, the court held that the defendant "did not *create* any confusion." *Id.* at 624, 625 (emphasis in original). Rather, "the confusion already existed among the misdialing public" and the defendant "merely took advantage of [this] confusion."[7] *Id*.

At most, Plaintiffs' allegations in this case put Oversee in the role of the defendant in *Holiday Inns*. Plaintiffs' own allegations make clear that any likelihood of confusion on the part of consumers attempting to access Plaintiffs' websites is caused or created by consumers themselves "mistyping" or "misspelling" domain names. *See, e.g.,* Am. Compl. ¶¶ 89, 158, 175, 188, 189, 263. Plaintiffs have not alleged, nor could they allege, that Oversee caused such confusion. According to the allegations, Oversee "diverts" Plaintiffs' customers, not by promoting any of the seven challenged domains it purportedly monetizes,[8] but by placing advertisements on these domains that can be viewed by customers who have *reached the domains entirely through their own error*. *See, e.g.*, Am. Compl. ¶¶ 47, 65, 89, 139, 177, 178, 182, 184-86, 208, 210, 222. Merely benefiting from consumers' preexisting confusion or mistake is far different from causing that confusion or mistake in the first place.

---

[7] The *Holiday Inns* court distinguished its case from *American Airlines, Inc. v. A 1-800-A-M-E-R-I-C-A-N Corp.,* 622 F. Supp. 673 (N.D. Ill. 1985), where the defendant falsely advertised its airline reservation service as an airline company in the yellow pages and listed its company name as "A 1-800-A-M-E-R-I-C-A-N." The Sixth Circuit explained:

> In finding a Lanham Act violation, the [American Airlines] court clarified that the defendant's "wrongful conduct lies in its *misleading use* of the 'Airline Companies' yellow-pages listing *rather than its mere use of its telephone number [1-800-AMERICAN] ... as such...."*... In other words, the court issued an injunction because the defendant's publicity efforts misled the public and not because the defendant activated a 1-800 number that appeared confusingly similar to the trademark, 'American Airlines.'

*Holiday Inns.* 86 F.3d at 625. *See also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) ("[T]he mark holder is generally not entitled to relief unless the defendant advertises or otherwise promotes the alphanumeric translation of the phone number thereby causing the public to see the protected mark and associate the infringer's goods or services with those of the mark holder.").

[8] The Amended Complaint identifies only seven "Deceptive Domains" allegedly connected to Oversee, which are listed in the table under Paragraph 65: wwwVulcanGolf.com, VulcanGolfClubs.com, VulcanGolfTechnology.com, VulconGolf.com, fischernuts.com, wwwjbssinc.com and BlitzRealty.com.

6

Because Plaintiffs have failed to allege that Oversee *caused* a likelihood of confusion, Plaintiffs have not adequately pleaded their claims for trademark infringement. Accordingly, these claims should be dismissed.

**II.     Plaintiffs' False Designation of Origin Claim Fails Because Plaintiff Does Not Adequately Allege That Oversee Used Plaintiffs' Marks (Count V).**

In Count V, Plaintiffs assert that Oversee has violated 15 U.S.C. § 1125(a). Plaintiffs' claim must fail because they have failed to allege the first element required to establish a claim for false designation of origin. In the Seventh Circuit, "a plaintiff must prove the following three elements to state a claim under the Lanham Act: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999). Plaintiffs have not adequately alleged that Oversee, specifically, used a false designation of origin in connection with goods or services.

Interpreting the Complaint generously, Plaintiffs appear to allege that the relevant "designation of origin" is the domain name the user types into his or her browser. *See* Am. Compl. ¶ 364. Yet Plaintiffs have alleged no facts that would constitute a "use" by Oversee of Plaintiffs' marks or the allegedly infringing domain names that Plaintiffs claim are related to its mark. While Plaintiffs conclude that "Defendants knowingly provided false contact information in registering, using, trafficking in, and/or maintaining the infringing Deceptive Domains," they have not alleged any facts supporting this conclusion, namely, that Oversee specifically provided false contact information or that Oversee made "use" of Plaintiffs' marks in a manner covered by the Act. Though Plaintiffs allege, among other things, that Oversee licenses domain names to Google and contracts with Google to monetize such domain names, Am. Compl. ¶¶ 148-50, such allegations do not constitute a "use" of false designation of origin or false description or representation in connection with goods or services entered into interstate commerce as required by the Lanham Act. Indeed, there are no allegations in the Amended Complaint that Oversee made use of Plaintiffs' marks; Plaintiffs have merely alleged, in generic and factually unsupported fashion, that Defendants used Plaintiffs' marks and "infringing Deceptive Domains." Am. Compl. ¶ 362.

Moreover, even if it could be found that Plaintiffs adequately alleged that Oversee provided false contact information, Plaintiffs failed to allege a use of false designation of origin

7

*in connection with goods and services in commerce*.  Under section 1125, it is not enough simply to provide a false designation, but such misrepresentation must be in connection with goods or services in commerce.  15 U.S.C. § 1125(a).  A "deceptive domain" is neither a good nor a service.  Moreover, a domain name is not itself a designation of origin; it is simply a location identifier.  Courts have held that an Internet domain-name registrar does not use trademarks in connection with goods and services for the purpose of 1125(a)(1).  *Bird*, 289 F.3d at 881; *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.,* 989 F. Supp. 1276 (C.D. Cal. 1997); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949 (C.D. Cal. 1997).  Because Plaintiffs have not alleged that Oversee, as a registrar/parking company, used the alleged Deceptive Domains in connection with goods and services as required by the statute, Plaintiffs fail to state the first element of false designation of origin claim, and thus, the Court should dismiss their false designation of origin claim.

**III.     Plaintiffs' Dilution Claim Fails Because Plaintiffs Do Not Allege That the Marks At Issue Were Commercially Used by Oversee in Commerce or That They are Famous (Count VI).**

In Count VI, Plaintiffs fail to allege sufficiently a claim of dilution.  Pursuant to 15 U.S.C. § 1125(c), the owner of a famous mark is entitled to "an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."  15 U.S.C. § 1125(c)(1).  Accordingly, "[t]o prove a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999).  Plaintiffs fail to allege that the marks at issue (1) were the subject of Oversee's commercial use in commerce or (2) are famous.

**A.     Plaintiffs Do Not Allege that Oversee Used the Marks in Commerce**

Plaintiffs' claim should be dismissed because Plaintiffs have not alleged that the marks at issue were subject to Oversee's commercial "use in commerce."  "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade …." 15 U.S.C. § 1127; *FieldTurf, Inc. v. Triexe Management Group, Inc.*, No. 03 C 5704, 2003 WL 22956000, *1 (N.D. Ill. Dec. 11, 2003)*; see also Juno Online Services v. Juno Lighting, Inc.*, 979 F. Supp. 684 (N.D. Ill. 1997).  Further, commercial use "occurs where the alleged diluter uses 'the trademark

8

as a trademark, capitalizing on its trademark status.'" *Bird*, 289 F.3d at 879 (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 880 (9th Cir. 1999). That a registrar sells domain names and profits from the names that registrants choose does not, without more, constitute "commercial use" under Section 1125(c). *Id.* Accordingly, as a registrar, Oversee cannot be found to have used the marks in commerce under Section 1125(c), and the Court should dismiss Plaintiffs' claim of dilution.

### B.     Plaintiffs Do Not Adequately Allege that the Marks At Issue Were Famous

Plaintiffs' dilution claim should also be dismissed because they failed to allege the element of fame. Fame is a critical element, since "[d]ilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp.*, 189 F.3d at 875.

Plaintiffs allege that Oversee has violated Section 1125(c) based, in part, on an assertion that Plaintiffs' "Distinctive and Valuable Marks are valuable and protected under 15 U.S.C. 1125(c), and were so before Defendants' infringement." Am. Compl. ¶ 378. The Complaint defines "Distinctive and Valuable Marks" as "venerable, valuable, distinctive, famous, registered or common law trademarks, trade names, logos, famous names, corporate names and other such distinctive/valuable marks." Am. Compl. ¶ 83(e).

Nonetheless, Plaintiffs' contentions fall short of alleging fame. Plaintiffs allege only that their marks is "distinctive, protected/protectible, ***and/or*** famous." Am. Compl. ¶ 377 (emphasis added). That is not enough. Even if Plaintiffs were able to prove that their marks were "distinctive," or that they were "protected/protectible," or that they were distinctive, protectible, *and* protected, Plaintiffs could not prevail. Plaintiffs must allege sufficiently that the asserted marks – and in this putative class action there are potentially millions – are famous, and nothing less will support their dilution claim. The complaint's use of "and/or" is fatal, since a showing of any one or more of the listed properties of a mark would meet the allegation without meeting the requirements of Section 1125(c).

Furthermore, in order to be "famous" within the meaning provided in the Lahnam Act, a mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Plaintiffs failed to plead facts to support the element of famousness; instead, Plaintiffs fatally pleaded facts contrary to such a conclusion. Plaintiffs allege that Blitz Realty Group, "a small, local real estate company," Am. Compl. ¶ 50, owns marks that are "widely

9

known and recognized among the community in northern Illinois." Am. Compl. ¶ 44. However, the statute requires wide recognition "by the general consuming public of the United States," not just by consumers in northern Illinois. Plaintiffs have, therefore, pleaded facts which render their allegation of fame implausible.

IV. **Plaintiffs' Contributory and Vicarious Trademark Infringement Claims Fail Because Plaintiffs Have Failed to Allege Underlying Direct Infringement (Counts X and XI).**

Plaintiffs' contributory and vicarious trademark infringement claims are also flawed because Plaintiffs have not pleaded an underlying direct infringement to support these claims or the elements of each claim.

Contributory trademark infringement "occurs when a manufacturer or distributor (1) intentionally induces another to infringe a trademark or (2) continues to supply a product to one whom it knows or has reason to know is engaging in trademark infringement." *Watts v. Network Solutions, Inc.*, No. 99-2350, 1999 WL 994012, *2 (7th Cir. Oct. 27, 1999); *accord Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982). In order to allege contributory trademark infringement, a plaintiff must also allege an underlying direct infringement. *See Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03C4349, 2005 WL 936882, *3, 7 (N.D. Ill. Apr. 21, 2005) ("Contributory infringement … requires proof of direct infringement by a third party."); *see also Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, *12 (N.D. Ill. July 23, 2004) ("In order to establish contributory [copyright] infringement, a party must establish a predicate act of direct infringement.").

As discussed above, Plaintiffs have failed to allege that the challenged domains allegedly related to Oversee make a trademark use of Plaintiffs' marks or are the *cause* of any confusion as to the source or origin of goods or services. Absent such allegations, there can be no trademark infringement. *See Henri's Food Products*, 717 F.2d at 354; *Wal-Mart*, 1993 WL 350194, *2. Plaintiffs have therefore failed to allege an underlying direct infringement.

Further, Plaintiffs have failed to allege the elements of a contributory infringement claim. First, Plaintiffs have failed to allege that Oversee intentionally induced any of the other defendants or users of its services to infringe Plaintiffs' marks. At most, Plaintiffs allege that Oversee *mutually* planned with other defendants to monetize domains similar to the Plaintiffs' marks. Accordingly, Plaintiffs have not pleaded the first prong for contributory liability. *See Perfect 10, Inc. v. Visa Int'l Service Assoc.*, No. C 04-0371 JW, 2004 WL 1773349, *6 (N.D. Cal. Aug. 5,2004) (dismissing trademark inducement claim despite the fact

10

that "the complaint contains the allegation that Defendants 'are knowingly inducing' the alleged infringing conduct," because "there are no facts presented in the complaint that support such an allegation").

Plaintiffs also have failed to plead the second prong. Under this prong, Plaintiffs must allege that Oversee "continues to supply a product" to an infringer. When service providers, rather than sellers of products, are alleged to have committed contributory infringement, however, a finding of contributory liability is extremely rare and requires that the defendant directly control and monitor the third-party infringer. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (noting that supplying domain names is more akin to providing services and that extent of control exercised by alleged infringer is important factor in determining contributory infringement). In *Lockheed Martin*, the Ninth Circuit expressly found that because the defendant registered and sold "vast quantit[ies]" of domain names, the registration and sale of such names did not entail the kind of direct control and monitoring "necessary to be found a party to any infringement that took place by third parties through use of its services." *Lockheed Martin*, 194 F.3d at 985. Moreover, the court concluded that the defendant had "no affirmative duty to police the Internet in search of potentially infringing uses of domain names." *Id.* at 966.

Here, Plaintiffs' allegations liken Oversee to the defendant in *Lockheed Martin*. Plaintiffs allege that Oversee registers and monetizes vast quantities of domain names, including some that Plaintiffs claim are infringing Plaintiffs' marks. However, Plaintiffs have failed to allege that Oversee exerted any sort of direct control over any of the other defendants or users of Oversee's services with respect to these domain names. Accordingly, Plaintiffs' contributory liability claim must fail.

Plaintiffs' vicarious liability claim also must fail. In the Seventh Circuit, vicarious liability may be imposed on a joint tortfeasor for trademark infringement by another. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992); *SB Designs v. Reebok Intern., Ltd.*, 338 F. Supp. 2d 904, 909 (N.D. Ill. 2004). Like a contributory infringement claim, a claim for vicarious infringement requires that a plaintiff allege an underlying direct infringement. *Monotype Imaging*, 2005 WL 936882 at *7 ("In order to support a claim of vicarious infringement, a plaintiff must demonstrate … direct infringement by a primary infringer."). However, Plaintiffs have not alleged an underlying direct infringement because Plaintiffs have not alleged that Oversee used the Plaintiffs' marks as a trademark or that these domains caused a likelihood of confusion as to the source or origin of goods or services.

11

V.  **Plaintiffs' Cybersquatting Claim Fails Because Plaintiffs Have Not Sufficiently Alleged the Elements Required for a Claim Under the ACPA (Count III).**

In Count III, Plaintiffs allege that all Defendants violated the AntiCybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125 (d), because they "registered, trafficked in, or used the infringing Deceptive Domains for commercial gain" and did so "in bad faith." Am. Compl. ¶¶ 329, 332. Plaintiffs' sweeping allegations against all Defendants do not contain any specific allegations against Oversee. Plaintiffs have failed to sufficiently allege facts, as required by the ACPA, that Oversee was either a domain name registrant or a registrant's authorized licensee with respect to the alleged Deceptive Domains. Additionally, Plaintiffs have pleaded other facts that defeat any allegation that, under the ACPA, Oversee possessed bad faith intent to profit from their marks. Plaintiffs' allegations are, therefore, conclusory and insufficient to adequately state or make a plausible claim against Oversee. Accordingly, the Court should dismiss Plaintiffs' ACPA claim.

   A.  **Plaintiffs Failed to Adequately Allege That Oversee Was a Domain Name Registrant or a Registrant's Authorized Licensee of the Alleged Deceptive Domains**

Plaintiffs' ACPA claim fails because Plaintiffs have failed to allege facts, as opposed to the bare legal conclusion, that Oversee "registers," "traffics in," or "uses" any of the alleged Deceptive Domains, as the ACPA requires. *See* 15 U.S.C. § 1125(d)(1)(A). Significantly, liability for "using" a domain name exists only for the registrant of that name or the registrant's authorized licensee. 15 U.S.C. § 1125(d)(1)(D); *Bird*, 289 F.3d at 881. Plaintiffs' conclusory allegations that all Defendants "registered, trafficked in, or used the infringing Deceptive Domains for commercial gain" fall far short of adequately stating a claim against Oversee. Plaintiffs fail to allege sufficient facts regarding Oversee's specific actions taken to "register[ ], traffick[ ] in, or use[ ] the infringing Deceptive Domains for commercial gain."

Further, against Oversee specifically, Plaintiffs have alleged: "After Oversee/Snapnames takes control of the domain name, Oversee/Snapnames traffics in, monetizes, and/or sells the domain names using an auction system." Am. Compl. ¶ 209. It has been held that an Internet domain name auction site does not "traffic in" domain names because, although the site provides a forum for buying and selling domain names, it does not directly transfer or receive a property interest in any domain names. *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635 (E.D. Mich. 2001). *See also Bird*, 289 F.3d at

12

881 (holding that "the fact that [the Internet auction site's] services might be used for trafficking in a domain name does not render it liable for trafficking." Therefore, even Plaintiffs' allegations against Oversee relating to Snapnames, specifically, are insufficient to state a claim against it.

### B. Plaintiffs' Own Allegations Negate The Requisite Bad Faith Intent

Plaintiffs' ACPA claim also cannot stand because their own allegations negate the requisite element of bad faith intent to profit from Plaintiffs' marks. Under the statute, a person is liable to the owner of a mark if the person (i) has a bad faith intent to profit from that mark; and (ii) registers, traffics in or uses a domain name. 15 U.S.C. § 1125(d)(1)(A).

While Plaintiffs have conclusorily alleged that Defendants "registered, trafficked in, or used the infringing Deceptive Domains for commercial gain" and did so "in bad faith," Am. Compl. ¶¶ 329, 332, Plaintiffs also concede that Defendants have online complaint systems and procedures whereby the company will investigate any alleged illegal infringement of trademarks in connection with the registration of domain names. Am. Compl. ¶ 195. This fact negates any allegations that Oversee possessed "bad faith intent." Though Plaintiffs assert that Defendants' online complaint systems are "deceptive," Am. Compl. ¶195, and "illusory," Am. Compl. ¶ 196, Plaintiffs fail to allege that they ever attempted to contact Oversee regarding any of the alleged Deceptive Domains—assuming, counterfactually, that Oversee had anything to do with those domains. Plaintiffs' failure to contact Oversee, or otherwise attempt to invoke Oversee's online complaint system, further undermines Plaintiffs' legal conclusion that Oversee possessed bad faith intent to profit from Plaintiffs' marks. Accordingly, Plaintiffs' own alleged facts render implausible their claim that Oversee possessed the requisite "bad faith intent." Plaintiffs' claim under the ACPA, therefore, cannot stand.

13

## CONCLUSION

For the foregoing reasons, Defendant Oversee respectfully requests that this Court dismiss Counts III, IV, V, VI, IX, X, XI of Plaintiffs' First Amended Class Action Complaint with prejudice.

Respectfully submitted,

**OVERSEE.NET, INC.**

Dated: October 18, 2007        By:    s/ Janelle M. Carter
                                      One of Its Attorneys

Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
Email: jcarter@winston.com

Steven Atlee
Winston & Strawn LLP
333 Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Andrew Bridges
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2007, a true and correct copy of the foregoing was served in accordance with Rule 5, Federal Rules of Civil Procedure, on the following:

| | |
|---|---|
| Mark Anthony Bulgarelli<br>Robert M. Foote<br>Stephen William Fung<br>Foote, Meyers, Mielke & Flowers, LLC<br>28 North First Street, #2<br>Geneva, Illinois  60134 | Kathleen Currie Chavez<br>Chavez Law Firm P.C.<br>28 North First Street, #2<br>Geneva, Illinois  60134 |
| Jonathan M. Cyrluk<br>Joseph J. Duffy<br>Mariah E. Moran<br>Stetler & Duffy, Ltd.<br>11 South LaSalle Street, Suite 1200<br>Chicago, Illinois  60603 | Joseph Gratz<br>Michael Page<br>Keker & Van Nest LLP<br>710 Sansome Street<br>San Francisco, California |
| Jeffrey Singer<br>Misty Rose Martin<br>Segal, McCambridge, Singer & Mahoney, Ltd.<br>330 North Wabash Avenue, Suite 200<br>Chicago, Illinois  60611 | Alison C. Conlon<br>Michael R. Dockterman<br>Wildman, Harrold, Allen & Dixon<br>225 West Wacker Drive, Suite 3000<br>Chicago, Illinois  60606 |
| Alexis Elizabeth Payne<br>Bradley Louis Cohn<br>Brett A. August<br>Pattishall, McAuliffe, Newbury,<br>Hilliard & Geraldson LLP<br>311 South Wacker Drive, Suite 5000<br>Chicago, Illinois  60606 | Scott Ryan Wiehle<br>Vinson & Elkins LLP<br>Trammel Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, Texas  75201 |
| Steven R. Borgman<br>Vinson & Elkins LLP<br>Kenneth P. Held<br>2500 First City Tower<br>1001 Fannin Street<br>Houston, Texas  77002 | Vincent V. Carissimi<br>Joanna J. Cline<br>Robert L. Hickok<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>18th and Arch Streets<br>Philadelphia, PA  19103 |
| William J. Harte<br>Dana Marie Pesha<br>William J. Harte, Ltd.<br>111 West Washington, Suite 1100<br>Chicago, Illinois  60602 | Aaron Daniel Van Oort<br>Faegre & Benson LLP<br>90 South Seventh Street, Suite 2200<br>Minneapolis, MN  55113 |

                                                                                                       \_\_ s/ Janelle M. Carter\_\_