IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) | Case No. 07CV3371 |
| Plaintiffs | ) ) | Judge Manning |
| v. | ) ) ) | Magistrate Judge Brown |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IREIT, INC., and JOHN DOES I-X, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**SEDO.COM'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Defendant Sedo.com, LLC (misnamed Sedo, LLC in the original Complaint) ("Sedo"), by and through its attorneys, Jeffrey Singer, Esq. and Misty Martin, Esq. respectfully submits its brief in reply and in further support of its Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(1) and (6).

**I.     INTRODUCTION:**

The central issue remains whether Plaintiffs have met their burden of sufficiently pleading claims for which relief can be granted--and whether they have standing to even bring such claims. In their 96-page Opposition Brief, Plaintiffs rely upon the same generalized allegations to support the broad legal conclusions set out in their Amended Complaint. Reliance is also made upon caustic arguments, which offer no assistance to the court, apparently believing

that the use of invective language in their 96 pages somehow makes the Amended Complaint adequate in some way. The fact remains that Plaintiffs—now for the second time—have not sufficiently plead their claims in the Amended Complaint to meet the threshold required by our Supreme Court in *Bell Atlantic* and the Federal Rules. After one completes the lengthy journey reviewing Plaintiffs' personal attacks set out in their Response, a plain review of the Amended Complaint compels the conclusion that Sedo remains entitled to dismissal of all counts brought against it.

## II.     ARGUMENT:

### A.     The Juridical Link Doctrine Does Not Apply to Plaintiffs' Claims.

Plaintiffs Blitz and JBSS have failed to allege that they have suffered any injury that can be traced to any conduct of Sedo. (Sedo Motion to Dismiss ("Sedo MTD"), p. 4). Without allegations of a concrete injury in fact due to or fairly traceable to any conduct of Sedo dismissal is warranted as a matter of law. *See N.E. Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663-64 (1993). In sum, JBSS and Blitz do not have standing to maintain suit against Sedo.

Notwithstanding this fatal pleading infirmity, Plaintiffs attempt to circumvent the Constitution's standing requirement by claiming the doctrine of juridical link applies here. (Plt. Opp., p. 8–11). However, Plaintiffs' reliance upon that doctrine is misguided. The juridical link doctrine stands for the proposition that when a group of "defendants [take] part in a similar scheme that was sustained either by *contract* or *conspiracy*, or *was mandated by a uniform state rule*, it is appropriate to join as defendants even parties whom the named class representative did not have direct contact with." *Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (*citations omitted*). However, here, the juridical doctrine does not save JBSS and Blitz.

Plaintiffs have not alleged that there existed a scheme amongst the defendants which was sustained by contract or that the defendants' actions were mandated by statute. Further, Plaintiffs have not come anywhere close to have adequately pleaded a conspiracy. Therefore, the juridical link doctrine is not applicable to permit JBSS and Blitz to make claims against Sedo where, as here, they fail to plead any wrongful act or damage arising from any act or omission of Sedo. Accordingly, due to the lack of standing, JBSS and Blitz's claims against Sedo must be dismissed.

### B. Because Plaintiffs Failed to Adequately Allege Sedo Misused Their Trademarks, the Lanham Act Counts Must be Dismissed.

At the outset, Plaintiffs requests this Court disregard the more demanding pleading standard mandated by the Supreme Court in *Bell Atlantic v. Twombly*. 127 S.Ct. 1955 (2007). In the face of *Bell Atlantic*, Plaintiffs still cite and rely upon the "no set of facts" language" directly rejected by the Supreme Court. 127 S.Ct. at 1969. (Plt. Resp. at p. 6-7). Plaintiffs' desire to return to the old standard is understandable because they are incapable of pleading adequate and specific factual allegations to bring their claims above the speculative level. Rather than even attempting to allege specific facts, Plaintiffs merely rely upon "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl.*, 127 U.S. at 1964-65. This is particularly evident in Plaintiffs' Lanham Act claims and their recitation of the element of "use" of a trademark. (Plt. Opp. at p. 25, 28). These generalized and conclusory allegations are simply a recitation of the elements of a Lanham Act claim. They do not identify what actions, if any, Sedo took to cause them injury or harm. As pleaded, they are insufficient.

The case law cited by Plaintiffs to offer support of their trademark claims is readily distinguishable. Plaintiffs rely heavily on case law where actual use of a domain name similar to a plaintiff's mark is claimed--meeting the "use" requirement of trademark infringement claims.

3

For example, Plaintiffs rely on *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998), where the owner of the trademark "Jews For Jesus" brought suit against a defendant that owned and registered the domain name "jewsforjesus.org." Plaintiffs also rely on *Educational Tours, Inc. v. Hempipher Travel, Inc.*, 2004 WL 887417 (N.D. Ill. 2004), where the owner of the mark and its related domain name sued those defendants that had actually registered domain names similar to their marks. In these two cases, the court found that the defendants who registered the domain names had sufficiently "used" the mark to state a trademark infringement claim.

However, these cases offer no help to Plaintiffs here. They are readily distinguishable because, unlike the defendants in those cases, Sedo did not create nor register the domain names in controversy, and does not own <u>any</u> of the domain names at issue. This fact bears repeating – Sedo did not create nor register any of the domain names which Plaintiffs claim were infringing—nor is there even an assertion by Plaintiffs that Sedo has ever owned any of the subject domain names which Plaintiffs claim were infringing. It can not be disputed that liability does not and cannot attach under the Lanham Act absent the use of a trademark in a way which identifies the products and services *by a defendant*. *See* 15 U.S.C. § 1127. Sedo is not a domain owner and has not ever "used" Plaintiffs mark. As such, Plaintiffs have failed and cannot meet the threshold requirement to state a trademark infringement claim against Sedo.

Significantly, in their written Response, Plaintiffs fail to distinguish or limit the application of *Academy of Motion Pictures Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276 (C.D. Cal. 1997). There, the Court held that liability cannot attach to a defendant where a registrar of domain names did not "use" trademarks in connection with goods and services but merely performed the automated, ministerial function of registering and cataloguing domain names. In what appears to be a desperate attempt to avoid dismissal, Plaintiffs try to

argue that Sedo is somehow unlike the Defendant in that case. (Plt. Opp. 40). Yet, upon a plain review of what Plaintiffs' Amended Complaint actually alleges, one learns that an automated ministerial function is all that Sedo does. Plaintiffs merely allege Sedo "actively manages a database of domain names of over 7,000,000." (Am. Co. ¶ 72). No additional allegations are made which state or in some intellectually honest way can imply that Sedo created, owned, registered or ever used the domain names at issue. In sum, the Amended Complaint fails to support any actual "use" of the domain names in controversy. Plaintiffs' misguided reliance upon cases pleading claims against domain owners who actually "used" a plaintiff's domain name does nothing to merit keeping Sedo in the instant litigation. Sedo is not a domain owner. Accordingly, Plaintiffs' claims fail.

> **C.   Because Plaintiffs have not Sufficiently Alleged their "Marks" are Entitled to Protection or that Sedo Registered or Used any Confusingly Similar Domains, Plaintiffs' Claims under the Anticybersquatting Consumer Protection Act Fail.**
>
>> 1.   Plaintiff Jackson has not sufficiently alleged that his name is entitled to trademark protection.

In the sole case cited by Jackson to support his claim that a personal name is actionable under the ACPA, the Court found that "[p]ersonal names ordinarily are not protected, they become distinctive and worthy of protection by trademark law if there is proof that the names have attained secondary meaning, i.e., a 'long association of the [personal] name with the business ... [making] the name and the business become synonymous in the public mind....'" *HER, Inc. v. Re/MAX First Choice, LLC*, 468 F. Supp. 2d 964, 973 quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 13:2 (4th ed.2004). Class Plaintiff Vincent Jackson has not sufficiently alleged that his name has become synonymous with any business of his or of another company. The closest Jackson can come is resurrecting an

association with a seventeen-year old Nike, Inc. advertising campaign that did not use his full name. (Am. Comp. ¶ 61). Jackson has not alleged that his name and the business or products of Nike had become synonymous. As such, he has not sufficiently stated a claim that his personal name is worthy of trademark protection.

>    2.   Plaintiffs have not Sufficiently Alleged Sedo Registered, Trafficked in or Used any Domain that was Confusingly Similar to the Plaintiffs' Marks.

As detailed above, Plaintiffs' generalized allegations regarding Defendants and particularly Sedo's involvement with the allegedly deceptive domains are not sufficient under the *Bell Atlantic* pleading standard. 127 S.Ct. 1964-65. Plaintiffs' continued citation and reference to the broad sweeping allegations of the Amended Complaint require that Sedo and the Court search for specific allegations of fact that adequately state a claim—a futile search here.

Plaintiffs' only specific allegation relating to Sedo is that Sedo manages a database of 7,000,000 domains. (Am. Co. ¶ 72). No allegation is offered that Sedo registered, trafficked in or used any domain. The remaining paragraphs relied upon by Plaintiffs are not specific factual allegations. Rather, they target a group of defendants and do nothing more than merely parrot the elements of a claim under the ACPA. (Plt. Opp. at p. 24-25). Allegations which are simply general, conclusory allegations based solely upon information and belief do not and cannot elevate Plaintiffs' claims to the plausible level. For example, Plaintiffs do not allege how Sedo has trafficked in or used any domain name other than to state that it did so. This is insufficient. Even more surprising is Plaintiff's failure to identify how Sedo or the other Defendants are related to the "Deceptive Domains." Instead, Plaintiffs are content to place the names of the Defendants next to domains in a table without any clarification as to what this association means. (Am. Co. ¶ 65). In sum, Plaintiffs have not pleaded a specific factual assertion that claims Sedo

registered, trafficked in or used any of the subject domain names. As such, their claims against Sedo under the ACPA must be dismissed.

In addition, as was raised in Sedo's memorandum in support, the domains which were listed next to Sedo's name are not confusingly similar to any of the Plaintiffs' alleged marks. Rather than repeat our arguments on this issue, Sedo refers the Court to Section IV(b)(1)(B) of Sedo's Memorandum in Support of its Motion to Dismiss. Nothing argued by Plaintiffs has changed the fact that the three domains identified are <u>not</u> confusingly similar to any of the Plaintiffs' marks.[1]

For these reasons, Plaintiffs' ACPA claims against Sedo must be dismissed.

D. **Plaintiffs' Contributory Trademark Claims Fail Because the Amended Complaint Fails to Allege Sedo Provided a Product or Service to a Direct Infringer.**

In addition to failing to allege an underlying trademark infringement, Plaintiffs' Amended Complaint also fails to pleaded that Sedo provided an infringing product to a third party, or that Sedo intentionally induced a third party to infringe Plaintiffs' marks. Even in their response, Plaintiffs do not assert Sedo provided an infringing product. Plaintiffs instead argue that the Amended Complaint contains sufficient allegations to support a claim that Sedo induced others to infringe their marks. To support this argument, Plaintiffs rely upon *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004).

Plaintiffs' reliance on *GEICO* is misplaced. First, *GEICO* predated *Bell Atlantic* and its heightened pleading standard by over two years. In *GEICO*, the plaintiff brought suit alleging

---

[1] Jackson apparently believes that he is entitled to enforce a mark of "Bo Knows." However, his Amended Complaint alleges that this mark was used in an advertising campaign for Nike, Inc. shoes, not for Jackson himself. Further, the mark of "Bo Knows" was registered by Nike, Inc. and has since been abandoned. http://tess2.uspto.gov/bin/showfield?f=doc&state=b6bain.2.4 (last accessed 11/13/2007) (showing registration of "Bo Knows" as "Dead" and a cancellation date of 8/3/2002)

7

trademark infringement for the use of its mark in selling advertising linked to search results. 330 F. Supp. 2d at 701-02. There, plaintiff alleged that the defendants could monitor and control the advertisements and their appearance on the search results page. The Court held that because of those allegations, the complaint was sufficient to survive a motion to dismiss.

But, here, Plaintiffs do not allege that it is the advertisements on the domains which infringe their marks but rather that the domain names themselves infringe their marks. This is an important distinction because Plaintiffs have not alleged that Sedo ever has had control of the registration of domain names. Moreover, no allegation is made that Sedo encourages domain owners to select an allegedly deceptive domain. Plaintiffs, instead, only generally allege that the parking companies enter into license agreements with existing domain registrants. (Am. Com. ¶ 148). This allegation is simply a broad generalization and conclusions -- not an allegation of fact sufficient under *Bell Atlantic*. 127 S.Ct. 1964-65. Thus, Plaintiffs essentially concede that the allegedly infringing conduct of selecting a domain name by the deceptive domain owner occurred <u>prior</u> to Sedo's involvement. According to Plaintiffs' allegations, Sedo simply assists a domain owner and registrant by managing his site after registration. It goes without saying that one cannot induce a party to take action after the action has already taken place. Thus, Sedo can not be found to have vicariously infringed any of the Plaintiffs' marks.

### E. Plaintiffs Failed to Allege Sedo had a Partnership with a Direct Infringer. Thus, Their Vicarious Trademark Claims Fail.

Plaintiffs also fail to allege that Sedo and the domain registrants entered into a partnership or exercise joint ownership or mutual control over any of the domains. As aforementioned, the "infringing product" for purposes of this motion is not the content of any of the domains but the domain name itself. Thus, the crucial inquiry is not whether Sedo can control the advertisements on the sites but whether it can control the selection and registration of

8

the domain name itself. Plaintiffs have not provided sufficient factual allegations to make it plausible that Sedo controls the activities by the deceptive domain owners – activities which take place prior to the entry into a license agreement with Sedo. Accordingly, under the *Bell Atlantic* standard, Plaintiffs have not alleged that Sedo has a sufficient relationship with the domain registrants to impose vicarious liability upon Sedo for the trademark infringement purportedly conducted by the deceptive domain owners. *See SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp.2d 904, 909 (N.D.Ill. 2004). For that reason, the Count also must be dismissed as to Sedo.

Because Plaintiffs have failed to assert a viable claim for trademark infringement, their claim for Vicarious Trademark infringement also warrants dismissal.

> **F.** **Plaintiffs have Alleged Fraudulent Acts As the Substance of Their Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") Claim- Claims Required to be Plead With Particularity**.

In Plaintiffs' Opposition, they argue that because the statutory language in the ICFDBPA prohibits more than just fraudulent business practices, Plaintiffs are not obligated to plead their claims with particularity. (Plt. Opp. p. 90). Even if this contention had an aroma of merit, Plaintiffs remain bound to meet Rule 9's requirements where, as here, they chose to plead fraud to make the ICFDPBA claim set out in their Amended Complaint. Because Plaintiffs' ICFDPBA claims are founded upon allegations of fraud (Am. Co. ¶ 398), they are bound by the pleading with particularity requirements of Rule 9(b). *See* FED.R.CIV.P. 9(b) ("to survive dismissal on a Rule 12(b)(6) motion, the complaint must plead the who, what, when, and where of the alleged fraud." (internal quotations and citations omitted) *Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). Here, it can not be disputed that Plaintiffs have failed to plead the who, what, when, and where of the alleged fraud with respect to Sedo. Therefore, Plaintiffs ICFDBPA claim against Sedo must be dismissed.

**G.     <u>Plaintiffs Have Failed to Adequately State a Claim For Unjust Enrichment</u>**.

Plaintiffs argue that the heightened pleading standards of Federal Rule 9(b) may be relaxed if the requisite factual information to successfully plead fraud is peculiarly within the Defendants' knowledge or control. They cite *In Re Rockefeller Center Properties, Inc., Securities Litigation*, 311 F. 3d 198, 216 (3rd Cir. 2002) in support of this contention.  Plaintiffs seem to suggest that there exists a body of law which somehow excuses them from adequately pleading their fraud claims against defendants.  However, *In Re Rockefeller Center Properties* does not go as far as Plaintiffs wish it would.

> While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. **Nevertheless, even when the defendant retains control over the flow of information, "boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."** *Id.* at 216. (citations omitted)(emphasis supplied).

Nothing in Plaintiffs' lengthy brief erases the fact that the Amended Complaint's broad conclusory allegations of a fraud are simply not enough.  One would hope that in a 92-page Amended Complaint which seeks nationwide class action relief founded upon fraud and a conspiracy perpetrated by companies (who essentially have no or a very limited business relationship) would plead some kind of factual nexus between the misconduct claimed and the Defendants' role in perpetrating such misconduct.  Reliance upon an argument that Rule 9 does not apply because such information is solely in the defendants' knowledge and control does not in some way reverse a doctrine that has been in place for decades requiring fact particularity pleading of such claims.  The intent of Rule 9(b) is to lessen the number of baseless and factually unsupported "fraud" lawsuits in which Plaintiffs file suit with the hope that maybe—just

maybe—they can maintain an action by pleading they were the objects of fraud in some way. Plaintiffs' contention they are not subject to Rule 9(b) implicitly establishes that notwithstanding their very lengthy Amended Complaint, they have failed to plead factually supported fraud claims.

**III**.    **CONCLUSION:**

For the reasons set forth above, and in its other submissions to this court, Sedo.com, LLC prays that the Amended Complaint be dismissed against it in its entirety under Rule 12(b)(1) and (6).

Respectfully submitted,

By:    /s/ Jeffrey Singer
On behalf of Sedo.com, LLC

Jeffrey Singer, Esq. (ARDC # 2670510)
Misty R. Martin, Esq. (ARDC # 6284999)
Anastasios T. Foukas, Esq. (ARDC # 6281404)
Segal McCambridge Singer & Mahoney, Ltd.
233 South Wacker Drive
Sears Tower – Suite 5500
Chicago, IL 60606
(312) 645-7800 (t)
(312) 645-7711 (f)

**Certificate of Service**

I, Anastasios T. Foukas, attorney of record for defendant, certify that on November 13, 2007, a copy of this document was served on counsel of record for the Plaintiffs via the court's electronic filing system.

__/s/ Anastasios T. Foukas____

11