**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually And On Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 07 CV 3371 |
| | ) | |
| Lead Plaintiffs, | ) ) | Honorable Blanche M. Manning |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IReit, INC. and JOHN DOES I-X, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OVERSEE.NET'S SEPARATE REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT**

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>(s)

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.     The Court Should Dismiss Plaintiffs' Trademark Infringement Claims Because Plaintiffs Failed to Allege Use Or Causation. ................................................. 2

       A.     Plaintiffs Failed To Allege That Oversee Used Plaintiffs' Marks As Required Under the Lanham Act. ....................................................... 2

       B.     Plaintiffs Have Not Alleged That Oversee Caused A Likelihood of Confusion as Required Under The Lanham Act. ................................. 6

II.    The Court Should Dismiss Plaintiffs' Dilution Claim Because Plaintiffs Failed to Allege That Their Marks Are Famous. ......................................... 10

III.   The Court Should Dismiss Plaintiffs' Contributory Trademark Infringement Claim Because Plaintiffs Did Not Sufficiently Allege The Required Elements. ..................... 11

CONCLUSION ............................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

CASES

*1-800-Contacts v. WhenU.com, Inc.*,
    414 F.3d 400 (2d Cir. 2005)................................................................3, 4, 5, 7

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002).................................................................3, 4, 5, 6

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999)................................................................ 7, 8

*Educational Tours, Inc. v. Hemisphere Travel, Inc.,*
    No. 04 C 0559, 2004 WL 887417 (N.D. Ill. April 26, 2004)............................. 5, 6

*GEICO v. Google, Inc.*,
    330 F. Supp. 2d 700 (E.D. Va. 2004) ...................................................... 12

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
    86 F.3d 619 (6th Cir. 1996).................................................................2, 7, 8, 9

*Jews for Jesus v. Brodsky*,
    993 F. Supp. 282 (D.N.J. 1998)............................................................. 5, 6

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    985 F. Supp. 949 (C.D. Cal. 1997).........................................................3, 4, 12

*Panavision Intern., L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)............................................................... 8, 9

*People for Ethical Treatment of Animals, Inc. v. Doughney*,
    113 F. Supp. 2d 915 (E.D. Va. 2000) ...................................................... 5, 6

*S. Indus. v. Diamond Multimedia Sys.*,
    991 F. Supp. 1012 (N.D. Ill. 1998)......................................................... 10

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*,
    192 F.3d 633 (7th Cir. 1999)................................................................. 10

*Trans Union LLC v. Credit Research, Inc.*,
    142 F. Supp. 2d 1029 (N.D. Ill. 2001) .................................................... 10

*Watts v. Network Solutions, Inc.*,
    No. 99-2350, 1999 WL 994012 (7th Cir. Oct. 27, 1999) ..............................11, 12

**STATUTES**

15 U.S.C. § 1114 (1)..................................................................................................... 2

15 U.S.C. § 1125(c)(2)(A) ......................................................................................10, 11

**ILCS 505/2** ................................................................................................................. 1

**DEFENDANT OVERSEE.NET'S SEPARATE REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Oversee.net ("Oversee") submits this reply memorandum in further support of its motion to dismiss Counts III, IV, V, VI, IX, X, and XI of Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Oversee also joins in the Consolidated Reply Brief in Support of Defendants' Motions to Dismiss Amended Class Action Complaint with respect to the remaining claims (Counts I, II, VII (as to ILCS 505/2), VIII, XII, XIII, and XIV).

**INTRODUCTION**

Plaintiffs' trademark-related claims against Oversee cannot stand because Plaintiffs failed to allege that Oversee *used* Plaintiffs' marks in a way that triggers Lanham Act liability or caused any likelihood of confusion. Plaintiffs mischaracterize the law and rely upon cases with little factual similarity to Plaintiffs' allegations against Oversee. Plaintiffs' allegations that Oversee registered deceptive domain names and permitted advertising to appear on the parked domains fall far short of the action required to establish trademark "use" to trigger liability under the Lanham Act. Furthermore, Plaintiffs' allegations that Oversee benefited from consumers' *preexisting confusion* belies any allegation that Oversee *caused* any likelihood of confusion. Accordingly, the Court should dismiss Plaintiffs' trademark-related claims against Oversee.

Plaintiffs' dilution claim also fails not only because they have not alleged relevant use but also because they have not alleged that their marks are famous. Indeed, as shown below, Plaintiff Blitz Realty pleaded facts in direct contradiction of any argument that its mark is famous as defined by the Lanham Act. Moreover, Plaintiffs' contributory trademark infringement claim should be dismissed for failure sufficiently to allege an underlying claim for

1

trademark infringement and to allege facts that Oversee intentionally induced infringement of Plaintiffs' mark or continually supplied a product to one that Oversee knew infringed Plaintiffs' marks.  For the reasons discussed below, the Court should dismiss Plaintiffs' dilution and contributory trademark infringement claims.

## ARGUMENT

**I.    The Court Should Dismiss Plaintiffs' Trademark Infringement Claims Because Plaintiffs Failed to Allege Use Or Causation.**

The court should dismiss Plaintiffs' trademark infringement claims because Plaintiffs have failed to allege that Oversee (1) *used* Plaintiffs' marks in commerce in connection with goods and services or (2) *caused* a likelihood of confusion with respect to the source of sponsorship of goods or services.  Plaintiffs' failure to plead either of these elements is fatal to their trademark-related claims, and thus, the Court should dismiss these claims.

**A.    Plaintiffs Failed To Allege That Oversee Used Plaintiffs' Marks As Required Under the Lanham Act.**

Plaintiffs' claims of trademark infringement against Oversee cannot stand without adequately pleading that Oversee used Plaintiffs' marks pursuant to the Lanham Act.  *See* 15 U.S.C. § 1114 (1).  Plaintiffs rely upon cases that do not apply to this case and do not establish that there can be trademark "use" under the facts alleged by Plaintiffs.  Plaintiffs have mischaracterized the law and have relied upon cases in which the factual relevance is tenuous at best.

The use of a protected trademark by a defendant "is a prerequisite to the finding of a Lanham Act Violation."  *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996); *see* 15 U.S.C. § 1114 (1) (stating that trademark infringement requires that a defendant use the plaintiffs' marks in commerce in connection with goods and services).  Although trademark "use" may extend to the dissemination of information in certain cases, as

2

argued by Plaintiffs (Pl. Resp. Br. at 29), Plaintiffs have not alleged that Oversee disseminated any information regarding Plaintiffs' marks.

The Sixth Circuit held in *Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir. 2002), that the registration or sale of a domain name does not constitute trademark "use." In *Bird*, the plaintiff alleged that the defendants infringed its registered mark "Financia" by registering the domain name "efinancia.com" and posting the domain name for auction the day after it was registered. Finding that the defendants' registration of a domain name incorporating the plaintiffs' mark and the subsequent auction of that domain name did not constitute trademark "use," the *Bird* court approved the analysis of *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 954-55 (C.D. Cal. 1997). The *Bird* court, therefore, affirmed the dismissal of the plaintiff's claim of trademark infringement for failure to allege trademark "use."

Plaintiffs have mischaracterized the key holding of *Lockheed Martin*, a case with vast similarities to the Plaintiffs' allegations in this case. In *Lockheed Martin Corp. v. Network Solutions, Inc.*, Lockheed Martin brought a trademark infringement action against NSI, claiming that NSI infringed its mark 'SKUNK WORKS' by registering several domain names, including: skunkwerks.com; skunkworx.com; theskunkworks.com. 985 F. Supp. at 954-55. NSI is a domain name registrar which registers domain names and connects the domain names to the domain name servers. 985 F. Supp. at 953. Finding that "something more than the registration of the name is required before the use of a domain name is infringing," the court held that there could be no trademark use or trademark infringement. 985 F. Supp. 957-58.

Furthermore, in *1-800-Contacts v. WhenU.com, Inc.*, 414 F.3d 400, 404 (2d Cir. 2005), Defendant WhenU provided a software program which caused pop-up advertisements to appear when an Internet user typed keywords, website addresses, or website address fragments

that corresponded with the same on the software program's internal directory.  Plaintiff

1-800-Contacts alleged that WhenU infringed its mark by delivering competitor advertisements

to Internet users that intentionally accessed its website.  414 F.3d at 405.  Reasoning that WhenU

did not "use" plaintiff's mark by placing its mark on goods and services in an effort to pass them

off as being authorized by 1-800-Contacts, the Second Circuit held that WhenU's inclusion of

1-800-Contacts' mark on its software directory did not constitute prohibited "use" of the mark

under the Lanham Act.  414 F.3d at 408.

   *Bird, 1-800-Contacts,* and *Lockheed Martin* are most analogous to this case

because Plaintiffs have alleged conduct by Oversee similar to that of the defendants in Bird,

*1-800-Contacts,* and *Lockheed Martin*.  Here, Plaintiffs allege that Defendants engaged in a

"Deceptive Domain Scheme" to display pop-up and pop-under advertisements on the alleged

Deceptive Domains.  (Am. Compl. ¶¶ 166, 348.)  As *1-800-Contacts* and *Lockheed Martin* held,

the mere acts of registering allegedly deceptive domain names and utilizing protected marks in a

software program that causes relevant pop-up advertisements to appear or putting the allegedly

deceptive domain name up for auction is not enough to constitute trademark "use."

*1-800-Contacts,* 414 F.3d at 408; *Bird*, 289 F.3d at 879; *Lockheed Martin*, 985 F. Supp. at

957-58.

   Plaintiffs have not alleged that Oversee's actions went any further than the actions

by the defendants in *Bird*, *Lockheed Martin*, or *1-800-Contacts*.  As in *Bird* and *Lockheed*

*Martin*, Plaintiffs allege that Oversee registered domain names and entered into a license with

the domain registrants to permit advertising on the domains.  (Am. Compl. ¶ 148).  Also, as in

*1-800-Contacts*, Plaintiffs allege that Oversee agreed with Google to allow Google to place

advertising on the domains.  (Am. Compl. ¶ 149.)  Here, the alleged actions of Oversee fall short

of even the permissible conduct of WhenU in *1-800-Contacts*.  In *1-800-Contacts*, WhenU provided a software program that placed marks and other keywords in its directory to cause relevant advertising to pop up when the Internet user intentionally accessed 1-800-Contacts' website.  Plaintiffs, here, have not alleged that Defendants placed advertising on Plaintiffs' websites; they allege advertising only on parked domains.  (*See* Am. Compl. ¶¶ 147-48.)

Plaintiffs' response to the directly on-point case law of the Second Circuit in *1-800-Contacts* and the Sixth Circuit in *Bird* is to cite to distinguishable cases, including *Educational Tours, Inc. v. Hemisphere Travel, Inc.,* No. 04 C 0559, 2004 WL 887417 at *1 (N.D. Ill. April 26, 2004); *People for Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915 (E.D. Va. 2000); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998). Unlike Plaintiffs' allegations, in *Jews for Jesus*, at 993 F. Supp. at 290-91, and *People for Ethical Treatment of Animals*, 113 F. Supp. 2d at 918, the respective defendants registered and operated websites with domain names identical to the plaintiffs' marks for the express purpose of diverting Internet users from the plaintiffs' websites.  The defendants further disseminated information on their websites that was disparaging to the plaintiffs.  *Id*.  By contrast, Plaintiffs have not alleged that Oversee took any actions to disseminate information, disparaging or otherwise, regarding the Plaintiffs' marks.  Rather, it is merely alleged that the Parking Company Defendants registered similar domain names and allowed relevant advertising to be posted on such domains. (Am. Compl. ¶¶ 147-49.)

Moreover, in a case cited by Plaintiffs, *Educational Tours, Inc*., 2004 WL 887417 at *1, the plaintiff provided student tours and travel services and the defendant competed in the same industry.  (*See* Pl. Resp. Br. at 30.)  The plaintiff registered the domain name "et-educationaltours.com," which incorporated its trademark.  *Id*.  The defendants subsequently

registered the following domain names: "et-educationaltours.net," "et-educationaltours.us,"

"e-educationaltours.com," and "e-educationaltours.net." *Id.* Similar to *Jews for Jesus* and

*People for Ethical Treatment of Animals,* the defendant in *Educational Tours* intentionally

diverted Internet users from the plaintiffs' website and offered a competing service. Thus, the

facts of *Educational Tours, Inc.* are very different. Plaintiffs do not allege that Oversee

maintains websites at the domains offering services that compete with Plaintiffs. They allege

only that Defendants permit advertising on parked domains. (Am. Compl. ¶¶ 147-49.)

Accordingly, Plaintiffs failed to allege that Oversee used Plaintiffs' marks in commerce in

connection with goods and services as required under the Lanham Act.

      Oversee is a parking company that allows for the registration of domain names by

third parties. Mere registration or sale of a domain name does not constitute trademark "use."

*Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir. 2002). Even if Plaintiffs' allegations that Oversee

entered an agreement with (1) domain registrants for the right to control, maintain, and place

advertising on their domains and (2) Google to license the right to control, maintain, and place

advertising on the domains in Oversee's control (Am. Compl. ¶¶148-49) could be taken as true,

such actions do not constitute "use" as required by the Lanham Act. Accordingly, Plaintiffs

cannot meet the requirement that Oversee used Plaintiffs' marks in commerce in connection with

goods and services.

    **B.**    **Plaintiffs Have Not Alleged That Oversee Caused A Likelihood of Confusion
as Required Under The Lanham Act.**

      The Court should also dismiss Plaintiffs' trademark claims against Oversee

because Plaintiffs have failed to allege that Oversee *caused* a likelihood of confusion with

respect to the source of sponsorship of goods or services. (*See* Oversee Br. at 5.) Plaintiffs

attempt to negate this failure by erroneously stating that Oversee is "wrong" and that Oversee's

"reliance on *Holiday Inns* is misplaced." (Pl. Resp. Br. at 33.) Plaintiffs, however, have no valid

support for these contentions.

   Plaintiffs' response fails to recognize that "use" and "likelihood of confusion" are,

in fact, "distinct elements of a trademark infringement claim." *1-800 Contacts, Inc. v.*, 414 F.3d

at 412. As such, Oversee properly and fully addressed Plaintiffs' failure to allege "use" in a prior

section (Oversee Br. at 2-5) and, therefore, did not attempt to "divert attention away" from the

issue of "use." The causation element is independent from "use" and deserves separate analysis,

but Plaintiffs avoid it.

   When they do turn to causation, Plaintiffs then mischaracterize the case law on

causation in their argument that "courts have considered and rejected the *Holiday Inns* case as a

basis for finding no likelihood of confusion in connection with Internet websites." (Pl. Resp. Br.

at 34-35.) Plaintiffs state that "in *Brookfield,* the Ninth Circuit expressly rejected *Holiday*

*Inns*…" (Pl. Resp. Br. at 35.) That is false. In *Brookfield,* the Ninth Circuit expressly stated that

its "conclusion comports with *Holiday Inns.*" *Brookfield Communications, Inc. v. West Coast*

*Entertainment Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999). The Ninth Circuit merely

distinguished *Brookfield* from *Holiday Inns*, explaining that "unlike the defendant in *Holiday*

*Inns*, however, [the *Brookfield* defendant] was not a passive figure; instead, it acted affirmatively

in placing [the plaintiff]'s trademark in the metatags of its web site, thereby *creating* the initial

interest confusion." *Id.* (emphasis in original). The *Brookfield* court compared using another's

trademark in metatags to "posting a sign with another's trademark in front of one's store." *Id.* at

1064. Similarly, the *Holiday Inns* court held that if the defendant had *promoted* the commonly

misdialed number in connection with the plaintiff's trademark, the defendant would have been

responsible for *creating* any resulting confusion.  *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 624, 625 (6th Cir. 1996).

Plaintiffs do not and cannot allege that Oversee promoted the challenged domains, placed Plaintiffs' protected marks in metatags or in any other manner acted *affirmatively* in directing Plaintiffs' customers to the challenged domains.  Plaintiffs have done no more than claim that Oversee benefited from consumers' own, self-caused, typographical errors, as did the defendant in *Holiday Inns*.  As the *Brookfield* court concluded, such allegations are distinguishable from the *Brookfield* defendant's affirmative creation of confusion.  Accordingly, Oversee's reliance on *Holiday Inns* is not only proper but even supported by the *Brookfield* holding.

Plaintiffs engage in a series of further distractions, summarizing red herrings to divert attention from their causation obstacle.  Thus, Plaintiffs misinterpret the Ninth Circuit's distinction of *Holiday Inns* in *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).  (*See* Pl. Resp. Br. at 35.)  The first problem with Plaintiffs' reliance on *Panavision* is that the *Panavision* court's discussion of *Holiday Inns* centered on whether the defendant engaged in "commercial use" under a dilution claim, not whether the defendant caused a likelihood of confusion under a trademark infringement claim.  *Panavision Intern*, 141 F.3d at 1316.

Even if *Panavision* were relevant, the *Panavision* court distinguished *Holiday Inns* because, unlike the *Holiday Inns* defendant, the *Panavision* defendant did not capitalize on any misdialing or mistyping.  Rather, the *Panavision* defendant attempted to sell a domain name, panavision.com, that exactly mirrored the plaintiff's corporate name, Panavision, thereby "preventing [the plaintiff]…from doing business on the Internet under their trademarked names unless they pay his fee."  *Id.* at 1325.  The Ninth Circuit concluded that such "use" would cause

potential customers of Panavision to be "discouraged if they cannot find [the plaintiff]'s web page by typing in 'Panavision.com.'" *Id.* at 1327.  Thus, according to the Ninth Circuit, *Holiday Inns* would have been more analogous had that defendant used the actual vanity number "1-800-Holiday" or the domain name "HolidayInns.com," because a user would expect to contact Holiday Inns or retrieve the Holiday Inns' web page.  *Id.* at 1325.  The *Holiday Inns* defendant used a misdialing of a vanity number, however, similar to the mistyping of a domain name.[1]  The Ninth Circuit found this distinguishable from the *Panavision* defendant's attempt to sell a domain name that directly corresponded to the plaintiff's corporate name.  The *Panavision* court's distinguishing of the *Holiday Inns*' holding, therefore, implied no rejection of *Holiday Inns*, and especially not on the causation issue.

Plaintiffs also argue that Oversee's reliance on *Holiday Inns* is flawed because this state uses a seven-factor test to assess likelihood of confusion.  (Pl. Resp. Br. at 33, n. 15.) Contrary to Plaintiffs' argument, Oversee's reliance on *Holiday Inns* is not at odds with this circuit's method of assessing likelihood of confusion.  Oversee simply contends that a likelihood of confusion analysis is *irrelevant* because (once again) Plaintiffs have failed to adequately allege that Oversee *caused* any potential likelihood of confusion.  *See Holiday Inns,* 86 F.3d at 626 (holding that a likelihood of confusion test is "irrelevant" upon the finding that the defendant did not create the confusion).

Finally, Plaintiffs assert that they have alleged initial interest confusion by the general public.  (Pl. Resp. Br. at 35.)  Again, the issue is moot because Plaintiffs have failed to allege that Oversee *caused* any potential confusion.  Additionally, this circuit analyzes initial interest confusion as a substitute for "actual confusion," which is merely one factor in the seven-

---

[1]  The Ninth Circuit has recognized that "a domain name is similar to a 'vanity number' that identifies its source."  *Panavision*, 141 F.3d at 1325

factor test used to assess likelihood of confusion.  *See Trans Union LLC v. Credit Research, Inc.*,
142 F. Supp. 2d 1029, 1044 (N.D. Ill. 2001).

Plaintiffs failed to plead that Oversee *caused* a likelihood of confusion with
respect to the source of sponsorship of goods or services.  Accordingly, the Court should dismiss
Plaintiffs' trademark-related claims.

## II.    The Court Should Dismiss Plaintiffs' Dilution Claim Because Plaintiffs Failed to Allege That Their Marks Are Famous.

In addition to their failure to allege that Oversee used Plaintiffs' marks
commercially in commerce, Plaintiffs failed to sufficiently allege that their marks are famous.
Under the Lanham Act, "a mark is famous if it is widely recognized by the general consuming
public of the United States as a designation of source of the goods or services of the mark's
owner."  15 U.S.C. § 1125(c)(2)(A).  While Plaintiffs cite several paragraphs in their Amended
Complaint as sufficiently alleging fame (Pl. Resp. Br. at 39), those paragraphs are inadequate to
plead fame.  It is not enough to allege that the marks are distinctive.  To plead a valid claim of
dilution, Plaintiffs must allege that their marks are *famous*—not merely distinctive.  *Syndicate
Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999).

Specifically, Plaintiffs Vulcan Golf and John B. Sanfilippo & Son have failed to
allege nationwide fame.  *S. Indus. v. Diamond Multimedia Sys.*, 991 F. Supp. 1012, 1022 (N.D.
Ill. 1998) (holding that plaintiff's mark is not famous, noting plaintiff never even alleges in its
complaint that its mark is "famous").  Plaintiffs have alleged that these marks are "unique,"
"distinctive," and "widely known and recognized."  (Am. Compl. ¶¶ 24, 25, 33, 34.)  Yet,
Plaintiffs fail to allege that any of their marks, other than Bo Jackson and Blitz Realty, are
famous.  (Am. Compl. ¶¶ 47, 61-62.)

Although Plaintiff Blitz Realty alleged that its mark is famous, Plaintiff Blitz Realty has pleaded itself out of court with regard to its dilution claim by admitting that its fame is limited to Northern Illinois.  (Am. Compl. ¶¶ 44, 47.)  Plaintiffs have alleged that Plaintiff Blitz Realty's marks are "widely known and recognized among the community in Northern Illinois."  (Am. Compl. ¶ 44.)  A claim for dilution requires that the mark at issue be *nationally* famous, or "widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A).  Plaintiffs have, therefore, admitted that Blitz Realty's marks are not famous as defined by the Lanham Act.  Therefore, the Court should dismiss Plaintiffs' dilution claim.

## III.   The Court Should Dismiss Plaintiffs' Contributory Trademark Infringement Claim Because Plaintiffs Did Not Sufficiently Allege The Required Elements.

Contributory infringement requires a showing that "a manufacturer or distributor (1) intentionally induces another to infringe a trademark or (2) continues to supply a product to one whom it knows or has reason to know is engaging in trademark infringement."  *Watts v. Network Solutions, Inc.*, No. 99-2350, 1999 WL 994012 at *2 (7th Cir. Oct. 27, 1999).  Plaintiffs have not sufficiently alleged the first prong that Oversee intentionally induced another to infringe on a trademark.  Plaintiffs argue that the Amended Complaint alleges that each Defendant "intentionally cooperates in transactions" and Defendants "encourage domain registrant to procure Deceptive Domains."  (Pl. Resp. Br. at 45.)  Indeed, the terms "encourage" and "cooperate" are not synonyms for the term "induce."[2]  Plaintiffs' Amended Complaint lacks any allegations that Oversee intentionally induced any entity to infringe Plaintiffs' marks.

Furthermore, Plaintiffs have failed adequately to allege the second prong that Oversee "continues to supply a product knowing that the recipient is using the product to engage

---

[2]  Merriam Webster's Online Thesaurus provides the following definitions for the term induce:  (1) "to be the cause of" or (2) "to cause (someone) to agree with a belief or course of action by using arguments or earnest requests."  Merriam Webster's Online Thesaurus, http://www.m-w.com/thesaurus/induce.

in trademark infringement." *Watts*, 1999 WL 994012 at *2. A finding of contributory infringement is extremely rare when the defendant is a service provider, rather than a seller of products, and requires that the defendant directly control and monitor the third-party infringer. *Lockheed Martin Corp.*, 194 F.3d at 984. Plaintiffs inappropriately rely on *GEICO*, which stands for the very same proposition as *Lockheed Martin*, that there must be a showing that the defendant monitors and controls the third-party infringer. *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004) ("The claim that [the defendant] monitors and controls the third-party advertisements is sufficient to plead the actual or constructive knowledge required to allege contributory infringement.") In this case, however, Plaintiffs have not alleged that Oversee monitors and controls Google's advertisements. Rather, Plaintiffs allege only that the Parking Companies *licensed to Google* the right to control, monitor, maintain, use and place advertising. (Am. Compl. ¶ 149.) The allegation that Oversee licensed to Google the right to place advertising on the domains is hardly the same as having the right to control Google's advertising. There are no allegations that Oversee itself controlled or monitored any advertising on the parked domains. Therefore, the Court should dismiss Plaintiffs' claim for contributory trademark infringement.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Oversee respectfully requests that this Court dismiss Counts III, IV, V, VI, IX, X, XI of Plaintiffs' First Amended Class Action Complaint with prejudice.

Respectfully submitted,

**OVERSEE.NET, INC.**

Dated: November 13, 2007                    By:    /s/ Janelle M. Carter
                                                        One of Its Attorneys

Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
Email: jcarter@winston.com

Steven Atlee
Winston & Strawn LLP
333 Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Andrew Bridges
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007, a true and correct copy of the foregoing was served in accordance with Rule 5, Federal Rules of Civil Procedure, on the following:

Mark Anthony Bulgarelli
Robert M. Foote
Stephen William Fung
Foote, Meyers, Mielke & Flowers, LLC
28 North First Street, #2
Geneva, Illinois  60134

Kathleen Currie Chavez
Chavez Law Firm P.C.
28 North First Street, #2
Geneva, Illinois  60134

Jonathan M. Cyrluk
Joseph J. Duffy
Mariah E. Moran
Stetler & Duffy, Ltd.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603

Joseph Gratz
Michael Page
Keker & Van Nest LLP
710 Sansome Street
San Francisco, California

Jeffrey Singer
Misty Rose Martin
Segal, McCambridge, Singer & Mahoney, Ltd.
330 North Wabash Avenue, Suite 200
Chicago, Illinois  60611

Alison C. Conlon
Michael R. Dockterman
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, Illinois  60606

Alexis Elizabeth Payne
Bradley Louis Cohn
Brett A. August
Pattishall, McAuliffe, Newbury,
Hilliard & Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, Illinois  60606

Scott Ryan Wiehle
Vinson & Elkins LLP
Trammel Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201

Steven R. Borgman
Vinson & Elkins LLP
Kenneth P. Held
2500 First City Tower
1001 Fannin Street
Houston, Texas  77002

Vincent V. Carissimi
Joanna J. Cline
Robert L. Hickok
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103

William J. Harte
Dana Marie Pesha
William J. Harte, Ltd.
111 West Washington, Suite 1100
Chicago, Illinois  60602

Aaron Daniel Van Oort
Faegre & Benson LLP
90 South Seventh Street, Suite 2200
Minneapolis, MN  55113

\_\_\_\_ /s/ Janelle M. Carter\_\_