# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON,  Individually And On Behalf Of All Others Similarly Situated, | )<br>)<br>) Case No. 07 CV 3371<br>)<br>)<br>) |
| Lead Plaintiffs, | ) Hon. Blanche M. Manning<br>)<br>) |
| v. | ) Magistrate Judge Geraldine Soat Brown<br>) |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a/ IREIT, INC.; and JOHN DOES 1-X, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

## GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Dated: November 13, 2007

Michael H. Page
Joseph C. Gratz
KEKER & VAN NEST, LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200

## I.    Introduction[1]

The Plaintiffs' opposition brief makes clear why Google has no part in this case—and certainly should not be subjected to the millions of dollars in litigation and discovery costs that the Plaintiffs wish to inflict.  We could not have put it more clearly ourselves: "the use of the Deceptive Domain, *not the content of the advertising*, is illegal."  Opp'n at 52 (emphasis added).  But the *only* role Google is alleged to play is to provide third-party advertisements to the other defendants, who then display them on websites that they, not Google, own and operate.  Plaintiffs do not—and cannot—allege that Google plays any role in choosing the allegedly infringing domain names of those websites.  Neither do or can Plaintiffs allege that Google has registered, or owns, or controls, or operates any of the infringing domain names.

Plaintiffs candidly admit that any "illegality lies in 'where' the advertisement appears— the Deceptive Domain."  Opp'n at 52.  While there may be questions whether the Plaintiffs have stated a claim against the Parking Company Defendants who are alleged to have chosen those domain names, registered them, and operate them, there can be no question that *Google* has no part in this case.  Because the alleged "illegality lies in 'where' the advertisement appears," and Google is not alleged to have chosen, registered, purchased, or operated the allegedly infringing domain names, no claim can lie against Google.

The Plaintiffs' theory is that Google is liable because it "uses" the allegedly infringing domains "as the advertising venue."  Opp'n at 52.  But no court has ever held that advertising at a *venue* with an infringing name is unlawful.  Consider a hypothetical counterfeit newspaper called the "Chicago Tribunal."  The Chicago Tribune might have an action for trademark infringement against the publisher of the newspaper.  But by the Plaintiffs' novel theory of trademark liability, an individual who placed a classified ad in the "Chicago Tribunal" would also be liable for trademark infringement.  That outcome is obviously wrong, and it is obviously wrong because providing advertisements to one who posts them at an advertising venue with an

---

[1] Google responds herein to arguments regarding Google's separate motion to dismiss.  In addition, Google joins in Defendants' joint reply concerning common issues.

infringing *name* is simply not actionable under the Lanham Act.  Simply put, providing the goods displayed in a store does not give rise to liability, when only the name of the store itself is alleged to infringe someone else's trademarks.  Google no more "uses" the venue in which its advertisements appear than Coca-Cola "uses" a store in which its soda is sold.  Plaintiffs face high hurdles in their attempts to prove that the other defendants operated advertising venues with infringing names.  But Plaintiffs' effort to impose liability on Google for aggregating third-party advertisements and providing them to those other defendants has no basis in the law, and it must be stopped here.

Plaintiffs' attempt to ascribe knowledge of malfeasance to Google is similarly flawed, for the reason that Plaintiffs have done everything in their power to keep Google in the dark about the domain names to which they object.  Plaintiffs have refused to make their complaints to Google.  They have insisted instead upon making their complaints—*in the first instance*—to this Court.  Indeed, Plaintiffs improperly attach a *new* list of objectionable domain names as Exhibit A to their Opposition.  If Plaintiffs were serious about eliminating objectionable domain names from the AdSense for Domains program, they would simply have sent that list to Google before burdening this Court with it:  Google would have immediately blocked those domains, no questions asked, and that would have been the end of the matter.  Instead, Plaintiffs deliberately contrive *not* to give Google notice of the "bad apples" they have identified, and then come to this Court complaining that Google has failed to act.[2]

---

[2] Plaintiffs do not, and cannot, suggest what Google could do absent notice from trademark owners of their claimed rights.  There are tens of millions of domain names, and untold millions of words that are used by someone (or multiple someones), somewhere, as trademarks or parts of trademarks.  When the registered owner of a domain name asks Google to send advertising content to that domain, how—other than via a notice from a trademark owner—is Google to know whether anyone else in the world objects to the third party's registered use of the domain name?  For each of those tens of millions of URLs (most of which are not words at all), is Google to figure out all of the possible sets of similar words, do a trademark search for every one of those words, find all of the entities who use those words as marks or components of marks, and contact them to see if they object to the use of a somewhat similar word by another?  And how is Google to adjudicate the objection of (for example) Vulcan Golf to the use, by a Spanish company named "Volcano," of the domain "volcanocalderas" to sell its boilers (in Spanish, "calderas")?  As set forth in our opening brief and herein, the legal burden to apprise Google of claimed infringements lies with the trademark holders.  But in this case, it is not just a *legal* question: as a practical matter, there is no other solution.

This Court should let the parties who registered the objectionable domain names fight it out with the parties who object to those domain names. But Google has no place in that fight, and should be dismissed before being put to the burden of a discovery barrage costing orders of magnitude more than any possible value of the claims at issue. Google's role, as Plaintiffs recognize, is that of a provider of third-party advertisements for display at a venue, operated by another, whose *name*, chosen by another, is the sole object of controversy in this case. Plaintiffs' deliberate tactical choice to keep Google in the dark about the domain names to which they object makes it impossible as a legal matter for Google to have the requisite knowledge for liability, and makes it impossible as a practical matter for Google to cure the ills of which Plaintiffs complain. The claims against Google must be dismissed with prejudice.

## II. Argument

### A. Whether Plaintiffs' factual allegations meet the relevant legal standards is a pure question of law.

Plaintiffs repeatedly argue that the court cannot resolve numerous issues at this stage because they are mixed questions of law and fact or involve factual matters. Opp'n at 1, 15, 33, 51, 52, 68-69, 73. Google, however, is not challenging the truth of Plaintiffs' factual claims. Rather, it argues that the facts presented by Plaintiffs, taking all reasonable inferences in their favor, do not satisfy the relevant law governing their claims. "For the purpose of testing the trial court's action, well pleaded allegations of the complaint are to be taken as admitted, but mere unsupported conclusions of fact or mixed fact and law are not admitted." *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1198-99 (7th Cir. 1977)). Screening complaints for legal conclusions based on inadequate factual allegations is central to the court's function on a motion to dismiss. Even in the authority cited by Plaintiffs regarding the allegedly untouchable nature of mixed questions at this stage, the court held that the pleaded facts could not support plaintiff's legal conclusion and affirmed dismissal of the case. *Graehling v. Village of Lombard*, 58 F.3d 295, 298 (7th Cir. 1995). Plaintiffs have not alleged facts sufficient to satisfy their legal burdens for the alleged

counts—as a matter of law.

**B.    The bulk of Plaintiffs' claims fail because the First Amended Complaint does not allege that Google had knowledge of infringement.**

Plaintiffs maintain that knowledge of infringement should be imputed to Google, but Plaintiffs have done everything in their power to keep Google in the dark.  They maintain that Google's online complaint procedure is "illusory," FAC ¶ 196, but never claim to have made use of it before filing their complaint.  Plaintiffs plead themselves out of court by acknowledging they did not approach Google to notify them of the alleged copyright infringement prior to filing this action.  "[I]f a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court.  He is not saved by having pleaded a legal conclusion that if consistent with the facts would establish his right to relief, for he has shown that it is inconsistent with the facts."  *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) (internal citations omitted).  Here, Plaintiffs repeatedly assert the legal conclusion that Google had knowledge of the alleged infringements.  They do not, however, allege any facts to support that conclusion.

In *Lockheed Martin Corp. v. Network Solutions, Inc.*, favorably cited repeatedly by Plaintiffs, the court held that prior notice is a necessary, but not sufficient, component of establishing actual knowledge.  985 F. Supp. 949 (C.D. Cal. 1997).  "The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement to NSI."  *Id.* at 963.  Because "numerous variables" are at play when finding a trademark violation, "[a] reasonable person in NSI's position could not presume infringement even where the domain name is *identical* to a mark and registered for use in connection with a similar or identical purpose." *Id.* at 963 (emphasis added).  Here, Plaintiffs acknowledge that they did not even take the initial step towards giving Google notice of the alleged infringements. *See* Opp'n at 55-56.  Plaintiffs should be held to their pleadings.  Google's actual knowledge cannot be assumed for purposes of this motion.

Unable to demonstrate actual knowledge, Plaintiffs argue that Google should have known

that the domain names infringed upon their trademarks.  Their factual allegations, however, are insufficient to meet the burdensome legal requirements of constructive knowledge.  In *Lockheed*, the court held that "NSI, as a domain name registrar, has no affirmative duty to police the Internet in search of potentially infringing uses of domain names."[3]  985 F. Supp. at 966 (citing *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1991)).  While Google must "understand what a reasonably prudent person would understand," it does not have a duty "to seek out and prevent violations."  *Hard Rock*, 955 F.2d at 1149.

As explained in *Lockheed*, reliable overlap does not exist between registered domain names and trademark holders because "of concurrent uses of the same trademark in different classes of goods and geographical areas."  *Lockheed*, 985 F. Supp. at 968.  For this reason, even complete knowledge of every domain name enrolled in the AdSense for Domains program— which Google does not have—would not lead to the conclusion that Google knew that any of the domains infringed Plaintiffs' marks.  Because Plaintiffs have not alleged, and cannot allege, facts leading to the conclusion that Google had knowledge of any alleged infringement of Plaintiffs' marks, Counts 4, 7, 9, and 10 must be dismissed with prejudice.

**C.    Plaintiffs' remaining arguments lack merit.**

**1.    Plaintiffs' vicarious infringement and dilution claims fail because Google's alleged conduct does not meet the applicable legal standards.**

Plaintiffs' vicarious infringement and dilution claims are pleaded according to legal standards that simply do not apply in the Seventh Circuit.  Plaintiffs can be excused for wishing that the Ninth Circuit's undemanding standard for vicarious trademark infringement applied in the Seventh Circuit, or that Congress had not passed the Trademark Dilution Revision Act of 2006, raising the bar for allegations that a mark is famous.  But the claims pleaded in the First

---

[3] Plaintiffs argue that Google is not like NSI because it does more in the AFD program than receive domain names.  Plaintiffs state, however, that "[i]t is not the advertisement itself, the content of the advertisements or the source of the advertisements that is illegal."  Opp'n at 52.  Other than Google's concededly *legitimate* AFD activity, all that is left is the receipt of domain names from clients.  This receipt is identical to the conduct of NSI in *Lockheed*.  985 F. Supp. at 953.  Both companies receive domain names from their owners "to designate a set of computers."  *Id.* at 957.  As in *Lockheed*, such activity does not infringe Plaintiffs' trademarks.

Amended Complaint fail when held to the applicable standards, and they must be dismissed with prejudice.

> **a.    Plaintiffs' vicarious infringement claim is pleaded according to an incorrect legal standard.**

As Google noted in its initial Memorandum, paragraph 438 of the First Amended Complaint sets forth the standard for vicarious infringement expressly rejected by the Seventh Circuit in *Hard Rock*, 955 F.2d at 1150.  Google MTD at 10.  That case did make passing reference to another theory of vicarious liability, "the joint tortfeasor model."  *Hard Rock*, 955 F.2d at 1150.  But the facts alleged in the First Amended Complaint do not meet this standard. Plaintiffs did not allege that Google has some "apparent or actual partnership" with the other defendants, that the other defendants have "authority to bind" Google "in transactions with third parties," or that Google and the other defendants "exercise joint ownership or control over" the allegedly infringing domain names.  *Id.*  To the contrary, the First Amended Complaint alleges that the relationship between Google and the other defendants is one of "contract," not partnership, FAC ¶ 229(c), makes no allegation that the other defendants were Google's agents, and alleges that the *other* defendants, *not* Google, register and maintain the allegedly infringing domain names, FAC ¶¶ 229(c) & (d).  As in *Hard Rock*, "[t]he case before us does not fit into the joint tortfeasor model."  955 F.2d at 1150.  Plaintiffs' claim for vicarious infringement is pleaded according to an incorrect legal standard and must be dismissed.

> **b.    Plaintiffs' dilution claim is pleaded according to an incorrect legal standard.**

Likewise, the First Amended Complaint pleads a dilution claim according to an inapplicable legal standard.  As Google noted in its initial Memorandum, the claim must fail because Plaintiffs did not plead that the marks at issue were "famous," as required by the statute. Google MTD at 14-16.  Plaintiffs now argue that, despite a statement to the contrary in the First Amended Complaint,[4] the dilution claim was really brought by only some of the Plaintiffs, and

---

[4] Plaintiffs state that the dilution claim "is brought by Lead Plaintiffs in their individual and representative capacities, against all Defendants," FAC ¶ 376.

"specific allegations relating to each separate Class Plaintiff's marks do, in fact, clearly establish which marks are alleged to be famous." Opp'n at 38-39. Placing aside the serious issues of notice attending this change of heart, and even looking to the separate allegations made about each plaintiff's (largely unspecified) trademarks, Plaintiffs have failed to allege the element of fame. In 2006, Congress enacted the Trademark Dilution Revision Act, P.L. No. 109-312, 120 Stat. 1730, *codified in relevant part at* 15 U.S.C. § 1125(c)(2)(A). Judge Kendall recently discussed this change to the law in *Milwaukee Electric Tool Corporation v. Robert Bosch Tool Corporation*, No. 05-C-1171, 2007 WL 2875232 (N.D. Ill. Sept. 28, 2007):

> Prior to the amendment, and at the time Milwaukee filed this suit, a mark could be considered "famous" even if it was widely recognized **only within one's niche market**. *Syndicate Sales Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641 (7th Cir. 1999). In September, 2006, however, the TDRA amended § 1125(c)(2)(A) to require recognition "by the general consuming public of the United States" in order for a mark to be considered famous. This substantial change in the law effectively eliminated the only theory upon which Milwaukee claims to have been able to establish fame in its color combination. Milwaukee has never claimed to have evidence that its color combination mark enjoys any fame outside of the niche market in which it operates. Though Bosch claims that the continued existence of the "niche market" theory is still an open question, it is certainly reasonable on the part of Milwaukee to assume that **the amendment expressly precludes reliance solely upon such a theory**.

*Id.* at *3 (emphasis added). Accordingly, Plaintiffs' reliance on *Syndicate Sales*, *see* Opp'n at 39 n.19, is misplaced; it has been abrogated by statute, as recognized in *Milwaukee Electric Tool*. Niche fame no longer meets the requirements for fame under the Lanham Act. *Milwaukee Electric Tool*, 2007 WL 2875232, at *3. Plaintiffs' allegations do not rise to the relevant legal standard, and the dilution claim must be dismissed.

**2.　Plaintiffs' ACPA and false designation of origin claim fails because Google is not a licensee or a trafficker.**

Plaintiffs argue that Google is liable under the ACPA because it is a "licensee" of, or because it "'traffics in' or 'uses,'" allegedly infringing domain names. The "licensee" argument is dealt with in Google's original Memorandum, and the ACPA makes clear that one can be liable for "use" only if one is an "authorized licensee." Google MTD at 12 & n.8. Plaintiffs' trafficking argument is new, but needs not delay us. The statute imposes liability on one who,

under certain circumstances, "traffics in . . . a domain name." 15 U.S.C. § 1125(d)(1)(A)(ii). Later, the statute defines "traffics in" to refer only to transactions in the manner of a "transfer for consideration [of a domain name] or receipt in exchange for consideration [of a domain name]." 15 U.S.C. § 1125(d)(1)(E). Plaintiffs do not allege that Google owned—or leased or borrowed or exercised *any* form of dominion over—any allegedly infringing domain name at any time; accordingly, Google cannot be said to have transferred or received any such domain name in exchange for consideration.

Neither do Plaintiffs respond to Google's argument that the First Amended Complaint alleges no acts on Google's part showing the "bad faith intent to profit" required by 15 U.S.C. § 1125(d)(1)(A)(i). *See* Google MTD at 12 n.9. Plaintiffs argue that "the Parking Company Defendants Intend, in Bad Faith, to Profit from Class Plaintiffs' Marks," Opp'n at 15, but no similar argument is made with respect to Google. As Google argued in its earlier Memorandum, Google had no notice of Plaintiffs' objections, and acts promptly to block advertisements from all allegedly infringing sites once it receives such notice. For this reason, Plaintiffs cannot allege facts showing that Google had the required "bad faith intent to profit."

### 3. Plaintiffs' false designation of origin claim fails because Plaintiffs have identified no service in connection with which Google uses Plaintiffs' marks.

Plaintiffs' response regarding their claim for false designation of origin fares no better. Plaintiffs argue that Google uses their trademarks "on or in connection with any goods or services" because their trademarks allegedly appear in domain names registered by the other defendants and enrolled in the AdSense for Domains program. Opp'n at 37-38. Their attempts to identify some relevant "service" in connection with which Google is alleged in the First Amended Complaint to have used their marks is entirely unavailing. The domain names themselves are not services; they are simply names, akin to telephone numbers. Just as the telephone company provides a service, but a person's telephone number does not, an Internet Service Provider provides a service, but the domain name does not. Plaintiffs' attempt to identify "advertising" as the relevant service, Opp'n at 37-38, is similarly fruitless: Google

markets its advertising services under the Google® AdSense® trademark, and each advertiser uses its own marks to brand its own goods and services.  None of them have need for, or use, Plaintiffs' marks.

### III.    Conclusion

For the above reasons, Plaintiffs' claims should be dismissed with prejudice.

Dated:  November 13, 2007                              Respectfully submitted,


GOOGLE INC.

By: /s/ Mariah E. Moran_____
        One of Its Attorneys




Michael H. Page
Joseph C. Gratz
KEKER & VAN NEST, LLP
San Francisco, CA 94111
(415) 391-5400
*Lead Counsel*
*Admitted Pro Hac Vice*

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200

CERTIFICATE OF SERVICE

I, Mariah E. Moran, an attorney, certify the I caused copies of the foregoing ***Google Inc.'s Reply Brief In Support of Its Motion to Dismiss*** to be served via the Court's CM/ECF system this 13th day of November, 2007.

/s/ Mariah E. Moran
Mariah E. Moran