**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. | : | |
| SANFILIPPO & SON, INC., | : | |
| BLITZ REALTY GROUP, INC., | : | |
| and VINCENT E. "BO" JACKSON, | : | Case No. 07CV3371 |
| Individually and on Behalf of All | : | |
| Others Similarly Situated, | : | Judge Manning |
| | : | |
| Plaintiffs, | : | Magistrate Judge Brown |
| | : | |
| v. | : | |
| | : | |
| GOOGLE INC., OVERSEE.NET, | : | |
| SEDO LLC, DOTSTER, INC., AKA | : | |
| REVENUEDIRECT.COM, | : | |
| INTERNET REIT, INC. d/b/a IREIT, INC., | : | |
| and JOHN DOES I-X, | : | |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' CONSOLIDATED MOTION TO**
**DISMISS AMENDED CLASS ACTION COMPLAINT**

Dated: November 13, 2007

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    A.    Plaintiffs Have Not Satisfactorily Pleaded the Elements Necessary To Sustain Their RICO Claims .................................................................................. 1

        1.    Plaintiffs' Response Brief Provides No Basis for the Court To Find the Requisite RICO Enterprise and Structure ............................................. 1

        2.    Plaintiffs Have Not Demonstrated That They Have Adequately Pleaded Management of the Enterprise by the Defendants ........................ 5

        3.    Plaintiffs Have Not Refuted the Fact That Their Allegations Regarding RICO Predicate Acts Are Insufficient as a Matter of Law ......................................................................................................... 7

        4.    As Plaintiffs' Injuries Are Derivative, Their RICO Claims Must be Dismissed ................................................................................................. 9

        5.    The RICO Conspiracy Claims Fail Because Plaintiffs Do Not Satisfy the Elements of § 1962(d) ............................................................. 11

    B.    Plaintiffs' Response Brief Offers No Grounds To Deny Defendants' Motion to Dismiss the Non-Trademark Counts of the Amended Complaint ....... 11

        1.    Plaintiffs' Failure To Plead Their CFA Claim with Particularity Requires Partial Dismissal of Count VII .................................................. 11

        2.    Plaintiffs Implicitly Concede that the Court May Dismiss Count VIII ....................................................................................................... 12

        3.    Plaintiffs Offer No Basis To Prevent Dismissal of Count XII ................. 12

        4.    The Court Must Dismiss Counts XIII (Unjust Enrichment) and XIV (Civil Conspiracy) Because Plaintiffs Do Not Justify Relaxation of the Heightened Pleading Standards of Rule 9(b) ............... 13

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Ackerman v. Northwestern Mut. Life Ins. Co.,
  172 F.3d. 467 (7th Cir. 1999) ......................................................................... 7, 8

Amari v. Radio Spirits, Inc.,
  219 F. Supp. 2d 942 (N.D. Ill. 2002) .............................................................. 12

Anael v. Interstate Brands Corp.,
  No. 02-C5192, 2003 U.S. Dist. LEXIS 14537, at *20 (N.D. Ill. Aug. 14, 2003) .............. 6

Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.,
  493 F.3d 841 (7th Cir. 2007) .......................................................................... 13

Batchelor v. First Nat'l Bank of Blue Island,
  No. 92-C-5073, 1993 U.S. Dist. LEXIS 520, at *14 (N.D. Ill. Jan. 11, 1993) ................. 14

Bell Atlantic Corp. v. Twombly,
  __ U.S. __, 127 S. Ct. 1955 (2007) .............................................................. 12, 13

Blue Cross and Blue Shield of Ala.  v. Caremark, Inc.,
  No. 98-C-1285, 1999 U.S. Dist. LEXIS 16230, at *26 (N.D. Ill. Sept. 30, 1999) ............. 5

Cement-Lock v. Gas Tech. Inst.,
  No. 05-C-0018, 2005 U.S. Dist LEXIS 22058, at *58 (N.D. Ill. Sept. 30, 2005) ............. 3

Chrichton v. Golden Rule Ins. Co.,
  No. 06-264-GPM, 2006 U.S. Dist. LEXIS 56235, at *22 (N.D. Ill. Aug. 11, 2006) ......... 6

Connick v. Suzuki Motor Co.,
  675 N.E.2d 584 (Ill. 1996) ............................................................................. 11

Cook v. Winfrey,
  141 F.3d 322 (7th Cir. 1998) ....................................................................... 12, 13

Davis v. G.N. Mortgage Corp.,
  396 F.3d 869 (7th Cir. 2005) .......................................................................... 11

El-Issa v. Compaq Computer Corp.,
  No. 97-C-5839, 1997 U.S. Dist. LEXIS 20530 (N.D. Ill. Dec. 18, 1997) ........................ 5

Emery v. American Gen. Fin., Inc.,
  134 F.3d 1321 (7th Cir. 1998) ........................................................................ 13

**Page(s)**

EQ Fin., Inc. v. Pers. Fin. Co.,
    421 F. Supp. 2d 1138 (N.D. Ill. 2006) ........................................................ 2, 11

Flentye v. Kathrein,
    485 F. Supp. 2d 903 (N.D. Ill. 2007) ........................................................ 11, 12

Gilford Partners v. Sensormatic Elecs. Corp.,
    No. 96-C-4072, 1997 U.S. Dist. LEXIS 19032, at *43 (N.D. Ill. Nov. 12, 1997) .......... 14

Goren v. New Vision Int'l, Inc.,
    156 F.3d 721 (7th Cir. 1998) ........................................................ 6

In Re Managed Care Litigation,
    135 F. Supp. 2d, 1253 (S.D. Fla., 2001) ........................................................ 4

Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.,
    61 F.3d 1250 (7th Cir. 1995) ........................................................ 10

Jennings v. Emry,
    910 F.2d 1434 (7th Cir. 1990) ........................................................ 1, 3

Jepson, Inc. v. Makita Corp.,
    34 F.3d 1321 (7th Cir. 1994) ........................................................ 7, 8

Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.,
    940 F.2d 397 (9th Cir. 1991) ........................................................ 10

Libman Co. v. Vining Indus., Inc.,
    69 F.3d, 1360 (7th Cir. 1996) ........................................................ 9

Midwest Grinding Co., Inc. v. Spitz,
    976 F.2d 1016 (7th Cir. 1992) ........................................................ 8

Newkirk v. Village of Steger,
    No. 02-C-9077, 2004 U.S. Dist. LEXIS 19192, at *49 (N.D. Ill. Sept. 24, 2004) ............ 2

Petri v. Gatlin,
    997 F.Supp. 956 (N.D. Ill. 1997) ........................................................ 7

Phoenix Bond & Indemnity Co. v. Bridge,
    477 F.3d 928 (7th Cir. 2007) ........................................................ 10

R.E. Davis Chem. Corp. v. NALCO Chem. Co.,
    757 F. Supp. 1499 (N.D. Ill. 1990) ........................................................ 7

Regenold v. The Baby Fold, Inc.,
    369 N.E.2d 858 (Ill. 1977) ........................................................ 11

Page(s)

Sears v. Likens,
    912 F.2d 889 (7th Cir. 1990) ............................................................ 7

Stachon v. United Consumers Club, Inc.,
    229 F.3d 673 (7th Cir. 2000) .......................................................... 11

Stachon v. United Consumers Club, Inc.,
    No. 98-C-7020, 1999 U.S. Dist. LEXIS 16484 (N.D. Ill. Oct. 20, 1999) ......................... 4

Strohmaier v. Yemm Chevrolet,
    211 F. Supp. 2d 1036 (N.D. Ill. 2001) ............................................. 11

United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage,
    470 F. Supp. 2d 823 (N.D. Ill. 2007) .............................................. 11

United States v. Huber,
    603 F.2d 387 (2d Cir. 1979) ............................................................. 1

United States v. Turkette,
    452 U.S. 576 (1981) .................................................................. 1, 3

United States v. Walters,
    997 F.2d 1219 (7th Cir. 1993) ....................................................... 10

Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,
    906 F.2d, 1202 (7th Cir. 1990) ....................................................... 9

West v. Miller,
    No. 05-C-4977, 2006 U.S. Dist. LEXIS 56243 ............................ 14

Zelinski v. Columbia 300, Inc.,
    335 F.3d 633 (7th Cir. 2003) ........................................................... 9

## RULES AND STATUTES

18 U.S.C. § 1952 ................................................................................. 9

18 U.S.C. § 1957 ................................................................................. 9

18 U.S.C. § 2320 ................................................................................. 9

Rule 12(b)(6) ...................................................................................... 7

Rule 9(b) ....................................................................... 7, 8, 9, 11, 12, 13

## INTRODUCTION

It was a challenge for Plaintiffs to compound the verbosity of their Amended Complaint with an equally overwrought explanation of it, but, by their Response Brief, they have managed to succeed. Yet their brief fails to distill from the Amended Complaint the clarity and detail necessary to sustain their RICO and non-trademark-related counts. The repetition of the same allegations already set out in the Amended Complaint only serves to highlight the facts they have failed to plead. Despite their combing the Amended Complaint for allegations ostensibly responsive to the issues raised by the case law cited in Defendants' initial consolidated memorandum, Plaintiffs still fail to summon allegations sufficient to establish RICO enterprise and structure, management of the enterprise, specific predicate acts and injury that is anything but derivative of injury suffered by consumers allegedly deceived by Defendants' supposed trademark infringements. The balance of their non-trademark related claims continue to fail when tested against the well settled pleading requirements of each cause of action.

As the Court of Appeals stated in *Jennings* in affirming the lower court's dismissal of RICO claims, and as equally applicable here, "[I]n their attempt to allege everything, the [plaintiffs] have alleged nothing." *Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990). For the reasons stated in Defendants' initial consolidated memorandum and in this consolidated reply, Counts I, II, VII (CFA claim), VIII, XII, XIII, and XIV must be dismissed.

## ARGUMENT

**A.    Plaintiffs Have Not Satisfactorily Pleaded the Elements Necessary To Sustain Their RICO Claims**

**1.    Plaintiffs' Response Brief Provides No Basis for the Court To Find the Requisite RICO Enterprise and Structure**

Plaintiffs acknowledge that an "enterprise is defined by what it is, not what it does"; but there is no structured enterprise pleaded because there is no structured enterprise to be found among the diverse, ever-changing, geographically remote, named and unnamed competitor-defendants. Instead, three pages[1] of their Response Brief (63-65) are devoted

---

[1] Plaintiffs devote five pages of their Response Brief to alleging that the Defendants are an association-in-fact enterprise. However, Plaintiffs' reliance on *United States v. Turkette*, 452 U.S. 576 (1981), *United States v. Huber*, 603 F.2d 387 (2d Cir. 1979) and *Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990) is, at best, tangential to any argument before the Court. Properly read together, those cases stand only for the unremarkable and uncontested proposition that an illegal, or associated-in-fact, enterprise is within the jurisdiction of the RICO statute. *See Turkette*, 452 U.S. at 587 (holding only that

(continued...)

-1-

precisely to describing the alleged enterprise by what it does rather than what it is. Although Plaintiffs strenuously protest that they have pleaded the elements of structure, they describe no formal or informal structure of persons associated through time. Rather, the allegations center on individually named defendants involved in Internet-related activity, along with thousands of other anonymous defendants. These allegations defeat any reasoned attempt to identify the unifying characteristics and obligatory structure necessary to sustain a defined RICO enterprise. Other than the allegations that some of the defendants contract with Google for its services, there is no association, no affiliation, no organizational glue, and therefore no coordination or cohesion, that ultimately binds any one to the others. Where in the deluge of verbiage in the Amended Complaint is there any allegation[2] (other than unadorned conclusory ones) that any of the far-flung defendants have organized in any fashion, much less in a manner amenable to "hierarchical or consensual decision-making"? Where are the allegations explaining how this diverse multitude coalesced into an enterprise? Or how they manage to communicate with each other to coordinate and conduct their activities? The answer is simple as there are no such allegations. For this reason alone, the RICO claims must be dismissed. *See*, *e.g.*, *EQ Fin., Inc. v. Pers. Fin. Co.*, 421 F. Supp. 2d 1138, 1144 (N.D. Ill. 2006) (no RICO enterprise alleged when there is no explanation of how enterprise originated or how members communicated with one another).

      The Amended Complaint alleges that Defendant Google had separate and distinct interaction with the Parking Company Defendants in that each of them contracted with Google, one of the leading Internet companies in the world, for similar services related to their respective business. But similar circumstances arise every day in every sector of business and do not constitute a RICO enterprise without coordination or communication with each other for an

_____

(continued...)

"neither the language nor the structure of RICO limits its application to legitimate 'enterprises.'"). Although there are numerous deficiencies of the Amended Complaint addressed by the Motion to Dismiss, this is not one of them.

    [2] Recitation of the buzz-words "associated-in-fact, hierarchical decision-making and common purpose" is insufficient to establish the necessary factual basis of structure and enterprise. *See*, *e.g.*, *Newkirk v. Village of Steger*, No. 02-C-9077, 2004 U.S. Dist. LEXIS 19192, at *49 (N.D. Ill. Sept. 24, 2004).

unlawful purpose beyond their normal business.  As in *Jennings*, one cannot find an association-in-fact where "there is nothing indicating an enterprise existing apart from the [Defendants'] deeds."  910 F.2d at 1440 n.14.

The Seventh Circuit has made clear that allegations that merely assert similar actions are insufficient.  Here, the Amended Complaint removes any doubt that the alleged enterprise is one based on similar actions and not "evidence that the various associates function as a continuing unit."  *Turkette*, 452 U.S. at 583.  The alleged Unnamed Co-Conspirators are those who engage in "Domain Tasting" and "Domain Kiting."  Amended Complaint ¶ 80.  In other words, Plaintiffs allege that these unnamed members are part of the conspiracy enterprise solely based on the nature of their business.  "[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does."  *Jennings*, 910 F.2d at 1440; *see also Turkette*, 452 U.S. at 583 (clarifying that allegations of specific illegal acts relate to a pattern of racketeering and not the establishment of an enterprise); *Cement-Lock v. Gas Tech. Inst.*, No. 05-C-0018, 2005 U.S. Dist LEXIS 22058, at *58 (N.D. Ill. Sept. 30, 2005) ("[a]lthough Plaintiffs' complaint sets forth massive detail, it does not disclose a hierarchical organization with a structure and goals separate from the predicate acts themselves.").  The allegations against the Unnamed Co-conspirators are, of course, identical to those levied against the Parking Company Defendants, shedding no more light on how the organization supposedly worked.  Amended Complaint ¶ 80 (incorporating all averments against the named Defendants to the Unnamed Co-Conspirators).  As both the Supreme Court and the Seventh Circuit have made clear, this is insufficient as a matter of law to sustain a RICO claim.

Plaintiffs cite to paragraphs 7, 152 and 165 of their Amended Complaint as reflecting the factual predicate for the alleged enterprise structure.  Response Brief at 63-64 ("the Amended Complaint specifically…identifies the Enterprise structure (Amended Complaint ¶¶ 7, 152, 165)").  But paragraph 7 does nothing more than describe how Google allegedly transacts its own business.  Similarly, Paragraphs 152 and 165 only describe the separate alleged business conduct of individual classes of defendants, throwing in the conclusory allegation of conspiracy in paragraph 165 without any other fact suggesting the organized union of persons indicative of RICO structure.  If these allegations suffice to constitute structure, every commercial entity in the United States that conducts business with others in a common industry segment, with the

corresponding similar activities and goals one would expect, must comprise a RICO enterprise. Again, these paragraphs only reinforce what the enterprise allegedly does—not who it is.

The discussion of the lack of structure of the alleged RICO enterprise found in *Stachon v. United Consumers Club, Inc.,* No. 98-C-7020, 1999 U.S. Dist. LEXIS 16484 (N.D. Ill. Oct. 20, 1999) is as applicable here as it was in the District Court's opinion, later affirmed by the Court of Appeals:

> …that UCC [the Google analog in *Stachon*], over its 21-year existence, contracted with numerous manufacturers, suppliers and members fails to establish an "ongoing structure." Plaintiffs offer nothing to demonstrate that changing *unnamed* manufacturers, suppliers and members function with UCC as a continuing unit or as an ongoing structure…. Further, Plaintiffs offer nothing to show that the alleged "enterprise" is more than UCC simply contracting with members and suppliers.

*Id.* at *10-12.

After rejecting the notion that there was anything in the Complaint to suggest that the defendants acted for anything more than their own gain, or their concerns were for anything more than maximizing their own individual profits, the Court continued:

> Furthermore, Plaintiffs fail to show that the alleged enterprise is organized in a manner amenable to hierarchical or consensual decision making…. Each Individual Defendant, manufacturer, supplier and member enters into agreements for their own benefit. But nothing within these ordinary business relationships mirrors a hierarchical organization, nor do these relationships foster consensual decision making in pursuit of the enterprise's alleged purpose…. *In fact, Plaintiffs offer nothing to show that these entities ever made consensual decisions as a unit to promote its alleged purposes.*

*Id.* at *13-15 (emphasis added). The RICO claims here suffer from the same fatal deficiency; Plaintiffs plead no more than ordinary business relationships in the Internet advertising world, with nothing to suggest the possibility of communal decision-making.

Indeed, the vast assemblage of defendant businesses alluded to in the Amended Complaint is not a RICO enterprise but is rather a thinly veiled "who's who" of nearly all businesses engaged in Internet advertising. An industry-wide directory of businesses like that pleaded by Plaintiffs here does not qualify as a RICO enterprise. *See*, *e.g.*, *In Re Managed Care Litigation*, 135 F. Supp. 2d 1253, 1261-62 (S.D. Fla. 2001) (plaintiffs cannot seriously claim "that any court has ever held that an entire nationwide or regional industry or profession may

constitute an enterprise").  Even if some of the financial relationships among some of the myriad defendants could somehow be construed as "structured" in the broadest sense of the word, this "does not infuse the alleged 'enterprise' with any structure."  *Blue Cross and Blue Shield of Ala. v. Caremark, Inc.*, No. 98-C-1285, 1999 U.S. Dist. LEXIS 16230, at *26 (N.D. Ill. Sept. 30, 1999) (no structure found among large and geographically diverse group of nearly 3,000 independent physicians and entities where plaintiffs failed to allege how they could possibly have acted in concert).

When, like here, the defendants are completely independent of each other, and in many instances compete with each other, a common goal of increasing their own respective profits does not further the interest of the alleged RICO enterprise and vest it with the requisite structure.  *El-Issa v. Compaq Computer Corp.*, No. 97-C-5839, 1997 U.S. Dist. LEXIS 20530 (N.D. Ill. Dec. 18, 1997) (fact that persons alleged to comprise enterprise trained together and were a conduit for the promotion of one defendant's products does not constitute an enterprise). Because Plaintiffs do not and cannot allege RICO enterprise or structure, Counts I and II must be dismissed.

> **2.      Plaintiffs Have Not Demonstrated That They Have Adequately Pleaded Management of the Enterprise by the Defendants**

In their initial consolidated memorandum, Defendants established that another basis for dismissal of the RICO claims was Plaintiffs' inability, and consequent failure, to allege that each defendant participated in the management of the enterprise.  Apparently recognizing the futility of taking this argument head-on, Plaintiffs relegate their response to this critical element of their RICO claims to a footnote buried on page 67 of their brief.  The most Plaintiffs can muster by way of argument is that each defendant participates in directing the enterprise "by conducting its affairs in association with the other members of the enterprise to achieve a common purpose."  Response Brief at 67 n. 32.

There are two significant problems with this response.  First, as noted above, there are no allegations supporting a reasonable conclusion that Defendants conduct their business affairs in active concert or association with the others.  Rather, the Amended Complaint acknowledges that many, but not all, of the named and unnamed defendants *independently* contract with Google.  Parallel business activity with an industry leader does not an association with a common purpose make.

Second, Plaintiffs' articulated standard for pleading the management requirement—conducting affairs with other members to achieve a common purpose—is unsupported by any citation to authority. This is hardly surprising because all the case law on this point is directly to the contrary. An "arms-length business relationship between distinct entities is not sufficient to show operation or management of an enterprise." *Chrichton v. Golden Rule Ins. Co.*, No. 06-264-GPM, 2006 U.S. Dist. LEXIS 56235, at *22 (N.D. Ill. Aug. 11, 2006) (collecting cases). Allegations that a Defendant engaged in the activities of the alleged enterprise simply does not amount to its management. *Anael v. Interstate Brands Corp.*, No. 02-C5192, 2003 U.S. Dist. LEXIS 14537, at *20 (N.D. Ill. Aug. 14, 2003). This is why the allegations against Google,[3] who, alone among the defendants is alleged to "control and direct" the "Deceptive Domain Scheme," must fail. These conclusory allegations are followed by a compilation of Google's business activities, which, as stated above, are insufficient to satisfy the management pleading requirement and do not draw any of the other Defendants into a management role.

Even if Plaintiffs had adequately alleged that Defendants engage in coordinated business conduct to carry out their Internet advertising business, such allegations would be insufficient as a matter of law to meet the management criteria necessary to support their RICO claims. Merely participating in the business activities of the enterprise to achieve a common purpose is not nearly enough to establish that the Defendants engage in the management of the enterprise. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under Section 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Id.* at 728.

Even Plaintiffs' imaginative interpretation of the RICO statute cannot accommodate a scenario where these non-communicating, nationally dispersed, competitive,

---

[3] In their Response Brief, Plaintiffs claim that paragraph 229 of their Amended Complaint provides the basis for finding that "each of the Defendants played a role in the operation and management of the Enterprise." Response Brief at 61-62. Defendants invite the Court to parse the content of this paragraph to determine whether what is being described is simply Defendants engaging in the business of the alleged enterprise or whether it actually describes how each Defendant exercises management and control over the scattered group of all Defendants comprising the enterprise.

identified defendants, let alone the tens of thousands that are anonymously lumped in with them as "John Does," manage the operation of this unwieldy, constantly metamorphosing enterprise. Plaintiffs' claim of management control is so fantastic in the context of their other allegations that it fails to survive the "blush test." Because the crucial element of defendants' management of the enterprise has not been pleaded, the RICO claims must be dismissed.

> **3.    Plaintiffs Have Not Refuted the Fact That Their Allegations Regarding RICO Predicate Acts Are Insufficient as a Matter of Law**

Plaintiffs' Response Brief is premised on the apparent assumption that repeated recitation of the boilerplate elements for each predicate act, accented with conclusory words like "fraud," "scheme," and "deceptive," is an adequate substitute for specific factual allegations supporting each of their theories. Such an approach to pleading, however, does not even get Plaintiffs past Rule 12(b)(6), let alone Rule 9(b). See, e.g., *R.E. Davis Chem. Corp. v. NALCO Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990) ("[A] plaintiff who relies upon acts of mail and wire fraud as the basis for a RICO claim must do more than outline a scheme and make loose references to mailings and telephone calls").

In a complaint against multiple defendants, a plaintiff must specify which particular defendants were involved in which specific activities and communication and must not merely lump groups of defendants together. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Indeed, even Plaintiffs concede, as they must, that as to claims of mail and wire fraud, a plaintiff must describe the time, place, content of, and parties to the mail and wire communications. Response Brief at 75 (quoting *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994)). Despite its length, Plaintiffs' Amended Complaint does not allege *one* specific communication transmitted by wire or mail that identifies: 1) the person communicating; 2) the recipient of the communication; 3) when it was sent; 4) when it was received; and 5) its content. Plaintiffs therefore fall far short of their Rule 9(b) obligation to "specify which defendants said what to whom and when." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d. 467, 471 (7th Cir. 1999); *see also Petri v. Gatlin*, 997 F.Supp. 956, 983-84 (N.D. Ill. 1997) (denying RICO claims premised on pleading insufficiency due to failure to allege dates and substance of mailings).

In a misplaced effort to salvage their pleading, Plaintiffs provide a chart in their Response Brief that purports to set forth the fraudulent actions alleged in the Amended Complaint with the correlative allegations as to the method and manner in which each act allegedly was carried out. The chart, however, serves only to highlight the deficiencies in the

Amended Complaint.  Plaintiffs simply repeat a mantra as to each of the 16 allegedly fraudulent acts, that the "Method/Manner" was "Wire--electronically, on the Internet with automated software."  Response Brief at 75.  They do not say which Defendant did what to whom and when--not for even *one* single allegedly fraudulent act--because such allegations simply do not exist in the Amended Complaint.  Plaintiffs claim that Defendants committed both mail and wire fraud, but Plaintiffs have not identified a single example of an item sent through the mail.

Perhaps recognizing that the Amended Complaint is doomed under Rule 9(b), Plaintiffs make a half-hearted suggestion that they are not subject to heightened pleading requirements.  Citing *Jepson*, 34 F.3d at 1328 and *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992), Plaintiffs contend that specificity requirements should be relaxed when factual details are within the Defendants' exclusive knowledge.  Response Brief at 75, 85.  Not surprisingly, Plaintiffs' argument ignores that, in both *Jepson* and *Midwest Grinding*, the Seventh Circuit rejected the proposition that the RICO plaintiffs in those cases should be excused from specificity requirements.  In fact, the *Midwest Grinding* court emphasized that, at a minimum, a plaintiff always must identify the time and place of the alleged predicate acts.  976 F.2d at 1020.  Compounding the inadequacy of their pleading, Plaintiffs offer no specification as to what information they are lacking from within Defendants' exclusive possession.  To the contrary, Plaintiffs suggest that the information they lack is readily ascertainable on the freely viewable Internet web-pages from "Deceptive Domains" that are "obvious and easy to identify."  Amended Complaint ¶¶ 175, 180.

A plaintiff seeking to circumvent specificity requirements has an affirmative burden to prove that the requisite information was solely within the defendants' control; this burden is not satisfied by a conclusory statement.  *Ackerman*, 172 F.3d at 471 (noting that the plaintiffs did not, and could not, attempt to show that the information was within the exclusive control of the defendants).  Rule 9(b) is a purposefully stringent standard that "requires the plaintiff to conduct a pre-Complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Id.* at 469.  Plaintiffs have not met that standard here.  Indeed, for the reasons explained in Defendants' initial consolidated memorandum, Plaintiffs' allegations not only are insufficiently particularized

to withstand scrutiny under Rule 9(b) but they also fail to make out a case for mail or wire fraud.[4]  The RICO claims, therefore, should be dismissed for this independent reason.

### 4.  As Plaintiffs' Injuries Are Derivative, Their RICO Claims Must be Dismissed

Plaintiffs take great pains to describe how their alleged injury is direct rather than derivative, but the injuries they describe flow from conduct underlying a trademark infringement or unfair competition claim; they do not flow directly from the alleged mail and wire fraud underlying their RICO claims.  Even were Plaintiffs' allegations true, their alleged injuries are derivative of the confusion among customers created by the alleged domain name infringements.  There is no direct injury from the alleged mail fraud.

This is best demonstrated by viewing the claimed injuries to Plaintiffs' interests.  Unless *consumers* are actually confused and misdirected from Plaintiffs' websites, *Plaintiffs* have suffered no injury compensable by a damage award.  *See e.g. Libman Co. v. Vining Indus., Inc.,* 69 F.3d, 1360, 1363 (7th Cir. 1996) (proof of actual confusion of the consuming public is required in a trademark infringement case when damages are sought).  Similarly, if there is no actual consumer deception arising from the alleged infringement or cyber squatting, there can be no diminution of goodwill.  Trademark cases universally recognize that the injury to a plaintiff's interests is a consequence of, or derivative of, the injuries suffered by consumers who have been confused or deceived by the infringement:

> A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and, *as a result*, that the plaintiff suffered actual injury, i.e., a loss of sales, profits or present value (goodwill).

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d, 1202, 1205 (7th Cir. 1990) (emphasis added); *see also Zelinski v. Columbia 300, Inc.*, 335 F.3d 633 (7th Cir. 2003) ("To recover damages, [plaintiff] must show that the violation caused actual confusion among his customers and, *as a result,* he suffered actual injury.") (emphasis added); *see also* Amended

---

[4] Plaintiffs clarify in their Response Brief that the predicate acts that they added to their Amended Complaint, purportedly pleaded pursuant to 18 U.S.C. § 1952, 18 U.S.C. § 1957 and 18 U.S.C. § 2320, merely reincorporate their mail and wire fraud allegations as the unlawful conduct underlying the new predicate acts.  Thus, Plaintiffs' add-on predicate act claims are afflicted by the same fatal pleading deficiencies as Plaintiffs' independent mail and wire fraud claims, and they too must fail.

Complaint ¶¶ 355, 370 ("Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm, the general public.").

In short, all of Plaintiffs' injuries arise only from the harm allegedly inflicted on the consuming public by virtue of Defendants' alleged trademark infringement and cyber squatting. This conduct, even if proven, cannot serve as the basis of a RICO claim.

As in *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995), Plaintiffs here seek to recover under RICO for lost business opportunities. Plaintiffs allege that the domain names at issue are their property, as are the related Internet traffic and prospective customers they claim Defendants took from them. Like the plaintiffs in *Israel Travel*, they claim that they were directly injured by the loss of their property interests. Amended Complaint ¶ 270. But whether those things actually constitute Plaintiffs' property, and whether their interests were injured, is irrelevant to the question of direct versus derivative injury under RICO. "The essential point, rather, is that the victims of the fraud are the object of solicitude; §1341 does not establish a regiment of truth-telling without regard to details like who is losing out and why." *Israel Travel*, 61 F.3d at 1258 (citing *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993)). In this Circuit, "Firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO." *Id.* at 1259.

The Seventh Circuit's decision in *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928 (7th Cir. 2007) is not to the contrary. *Phoenix Bond*, by its terms, applies only "if [the plaintiff's] injury is not derivative of someone else's." *Id.* at 932. There Cook County, which had developed a bidding program for the sale of tax liens, suffered no injury at all (and in fact benefited) from the allegedly fraudulent scheme, and competing bidders like the plaintiff were the only allegedly injured parties. *Id.* at 931. Under those unusual circumstances, the plaintiff's alleged injuries were deemed not to be "derivative" of someone else's injuries. But *Phoenix Bond* did not overturn *Israel Travel*; indeed, the court expressly approved of the statements in *Israel Travel* that "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers" and "firms suffering derivative injury from business torts . . . must continue to rely on the common law rather than resorting to RICO." *Id.* at 933. This case is more akin to *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405-06 (9th Cir. 1991), with which the *Israel Travel* court expressly agreed, 61 F.3d at

1258, distinguishing between anticompetitive conduct and "fraud" within the meaning of RICO. Because Plaintiffs' injuries are derivative of those sustained by consumers who allegedly have been deceived, their RICO claims fail.

### 5. The RICO Conspiracy Claims Fail Because Plaintiffs Do Not Satisfy the Elements of § 1962(d)

Without adequately pleading a RICO enterprise, Plaintiffs simply cannot establish a RICO conspiracy. *EQ Fin., Inc.*, 421 F. Supp. 2d at 1149. Because Plaintiffs' RICO conspiracy claims rely on the same underlying allegations which form the basis for their unsuccessful § 1962(c) claims, Count II of their Amended Complaint must also be dismissed. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000).

### B. Plaintiffs' Response Brief Offers No Grounds To Deny Defendants' Motion to Dismiss the Non-Trademark Counts of the Amended Complaint

#### 1. Plaintiffs' Failure To Plead Their CFA Claim with Particularity Requires Partial Dismissal of Count VII

Seventh Circuit authority rejects Plaintiffs' argument that Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") claims do not require the level of pleading specificity mandated for fraud claims. *See e.g., Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). All CFA claims must be pleaded with specificity and comply with Rule 9(b). *Id.* (a "complaint made pursuant to the [CFA] must be pleaded with the same specificity as that required under common law fraud . . . .").[5] This Court has concurred, noting that "under Rule 9(b), heightened pleading governs fraud claims, *including* claims brought under the Illinois Consumer Fraud Act." *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007) (Manning, J.) (emphasis added). Plaintiffs' citation of *Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007), is not to the contrary as that

---

[5] The Supreme Court of Illinois agrees that "a complaint alleging a violation of consumer fraud must be pleaded with the same particularity and specificity as that required under common law fraud." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).

Although there is some case law to the effect that not all CFA claims are subject to Rule 9(b), s*ee Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (claims not involving fraud or deception do not trigger heightened pleading standard), Plaintiffs here allege that "Defendants' Deceptive Domain Scheme relies upon consumer deception." Response Brief at 90. The Illinois Supreme Court defines "fraud" as "including anything calculated to deceive . . . ." *Id.* (quoting *Regenold v. The Baby Fold, Inc.*, 369 N.E.2d 858, 865 (Ill. 1977)). Accordingly, Plaintiffs' consumer deception allegation mandates compliance with Rule 9(b)'s heightened specificity requirements.

case addresses a claim brought under the Illinois Uniform Deceptive Trade Practices Act, not the CFA. *Flentye* also predates *Twombly*, and does not even discuss the Rule 9(b) pleading standard in the context of that claim. Because the allegations of the Amended Complaint fail to satisfy the Rule 9(b) pleading standard, dismissal of the CFA claim in Count VII is required.

### 2.    Plaintiffs Implicitly Concede that the Court May Dismiss Count VIII

Plaintiffs do not dispute the Court's discretion to dismiss a declaratory judgment claim that serves no useful purpose. *See Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 943-44 (N.D. Ill. 2002). As Plaintiffs' Response Brief does nothing to establish any useful purpose for retaining a redundant declaratory judgment claim in an already distended complaint requesting identical relief, this Court's discretion can only be appropriately exercised by dismissal of this Count.

### 3.    Plaintiffs Offer No Basis To Prevent Dismissal of Count XII

Plaintiffs apparently concede that the Court may dismiss the portion of Count XII alleging "Intentional Interference with *Current* Economic Advantage," as they offer no response to Defendants' arguments and the case law presented. Similarly, the Court should dismiss the claims for "Intentional Interference with Prospective Economic Advantage" because Plaintiffs offer nothing to meet Defendants' arguments that Plaintiffs have not, and cannot, plead a "reasonable expectation of entering into a valid business relationship." Defendants' Initial Consolidated Memorandum at 27. The Amended Complaint pleads no more than a speculative hope of unspecified business relations with the unidentified, unquantifiable and unknown mass of "internet users/consumers" allegedly confused by the allegedly infringing domain names; it is a fantasy rather than a cause of action.

Moreover, Plaintiffs' argument rests entirely on outdated case law. Plaintiffs cite *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998), claiming that their general description of the class of "internet users/consumers" is an "identifiable class of third parties" sufficient to withstand a motion to dismiss. Prior to the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007), Plaintiffs' reliance on *Cook* may have offered them a colorable argument, but not now.

In *Cook*, despite Illinois state court decisions obligating a plaintiff to plead the identity of prospective customers with some measure of precision, the Seventh Circuit held that the "minimal requirements of *federal* notice pleading" do not require the plaintiff to identify the

third parties with whom it allegedly has a prospective business relationship. *See id.* at 327-28 (emphasis added). In reversing the district court's dismissal of the plaintiff's tortious interference claim, the *Cook* court stressed that its determination was based on the old federal court pleading rubric that a claim may only be dismissed if "it is clear that no relief could be granted under any facts that could be proved consistent with the allegations of the complaint," *id.* at 327 (stating that one must bear this standard "firmly in mind"), and that a boilerplate recitation of the elements of a claim is enough, because a plaintiff "might" be able to prove a set of facts "consistent with" those allegations. *Id.* at 328. As this Court (and surely Plaintiffs) know, that is precisely the pleading standard that the Supreme Court discarded in *Twombly*. *See Twombly*, 127 S. Ct. at 1968-69 (expressly rejecting the long recited "no set of facts" standard); *see also id.* at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted)). Because Plaintiffs plead no more than a faceless group of tens of millions consumers with whom they would hope but have no reasonable expectation to do business, Plaintiffs' intentional interference claims in Count XII must be dismissed.

    **4.**    **The Court Must Dismiss Counts XIII (Unjust Enrichment) and XIV (Civil Conspiracy) Because Plaintiffs Do Not Justify Relaxation of the Heightened Pleading Standards of Rule 9(b)**

        Plaintiffs assert that they have "clearly and completely" and "adequately" presented the fraudulent acts underpinning their unjust enrichment and civil conspiracy claims. Response Brief at 92-93. Under Illinois law, "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim of* fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Since Plaintiffs have failed to plead fraud with the specificity required by Rule 9(b),[6] the civil conspiracy and unjust enrichment counts, both premised on the same fraudulent conduct,

---

      [6] Plaintiffs claim they are nonetheless entitled to a relaxed Rule 9(b) standard. Response Brief at 92–93. But the benefit of a relaxed Rule 9(b) standard inures only upon "a showing that further particulars of the alleged fraud could not have been obtained without [pretrial] discovery." *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (Posner, J.). Plaintiffs have made no such showing. Having failed to satisfy their pleading burden, both of these counts should be dismissed.

must be dismissed as well. Moreover, there has been no loosening of the pleading requirements for common law fraud actions. *See West v. Miller*, No. 05-C-4977, 2006 U.S. Dist. LEXIS 56243, at *11 (N.D. Ill. Aug. 11, 2006); *Batchelor v. First Nat'l Bank of Blue Island*, No. 92-C-5073, 1993 U.S. Dist. LEXIS 520, at *14 (N.D. Ill. Jan. 11, 1993) ("[M]isrepresentations made to third parties do not state cognizable fraud claims."). Here, Plaintiffs' state law fraud claims are based entirely on alleged misrepresentations made to third parties. Amended Complaint ¶ 394. However, there is not a scintilla of "Illinois precedent indicating that Illinois common law recognizes a claim for fraud or negligent misrepresentations that does not plead actual direct reliance." *Gilford Partners v. Sensormatic Elecs. Corp.*, No. 96-C-4072, 1997 U.S. Dist. LEXIS 19032, at *43 (N.D. Ill. Nov. 12, 1997) (Manning, J.). These claims should be dismissed on this basis as well.

## CONCLUSION

For the reasons stated above and in Defendants' initial Memorandum of Law in Support of their Consolidated Motion to Dismiss, Defendants respectfully request that the Court grant their motion and dismiss with prejudice Counts I, II, VII (as to consumer fraud claims), VII, XII, XIII, and XIV of the Amended Complaint.

Respectfully submitted,


_/s/  Mariah E. Moran_____     _/s/  Ronald Y. Rothstein_____
One of the Attorneys for *Google, Inc.*     One of the Attorneys for *Oversee.net*

Joseph J. Duffy     Ronald Y. Rothstein
Jonathan M. Cyrluk     Janelle M. Carter
Mariah E. Moran     Winston & Strawn LLP
Stetler & Duffy, Ltd.     35 West Wacker Drive
11 South LaSalle Street, Suite 1200     Chicago, Illinois 60601
Chicago, Illinois 60603

Michael H. Page     Andrew P. Bridges
Joseph Gratz     Winston & Strawn LLP
Keker & Van Nest LLP     101 California Street, Suite 3900
710 Sansome Street     San Francisco, California 94111
San Francisco, California 94111-1704

    Steven D. Atlee
    Winston & Strawn LLP
    333 South Grand Avenue, 38th Floor
    Los Angeles, California 90071

\_\_\_/s/\_Jeffrey Singer_____
One of the Attorneys for **Sedo, LLC**

Jeffrey Singer
Misty R. Martin
Segal McCambridge Singer & Mahoney
Sears Tower
233 South Wacker Drive, Suite 5500
Chicago, Illinois 60606

\_\_/s/\_Michael Dockterman_____
One of the Attorneys for **Dotster, Inc.**

Michael Dockterman (03121675)
Alison C. Conlon (6272083)
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229

Vincent V. Carissimi (admitted pro hac vice)
Robert L. Hickok (admitted pro hac vice)
Joanna J. Cline (admitted pro hac vice)
Pepper Hamilton LLP
3000 Two Logan Square, 18th & Arch Streets
Philadelphia, Pennsylvania 19103-2799

\_\_/s/\_Brett August_____
One of the Attorneys for **Internet Reit, Inc.**

Brett August
Bradley Cohn
Alexis Payne
Pattishall, McAuliffe, Newbury, Hilliard &
  Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60613

Steve Borgman
Kenneth P. Held
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2300
Houston, Texas 77002-6760                Dated: November 13, 2007

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 13, 2007, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

   /s/ Michael Dockterman
Michael Dockterman
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois  60606-1229
Phone:  (312) 201-2000
Fax:     (312) 201-2555

Attorney for *Dotster, Inc., aka RevenueDirect.com*