B

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| VULCAN GOLF, LLC, Individually And On Behalf Of All Others Similarly Situated, | § § § § | Civil Action No. 07 CV 3371 |
| Lead Plaintiff, | § § § | Judge Kocoras |
| v. | § § | Magistrate Judge Brown |
| GOOGLE INC ., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM INTERNET REIT, INC. d/b/a IREIT, INC.; and JOHN DOES I-X, | § § § § § § § | |
| Defendants. | § | |

PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT, GOOGLE, INC.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, **Vulcan Golf, LLC** ("Plaintiff"), hereby requests that Defendant, GOOGLE, INC. (hereinafter "Defendant"), respond to the following Production Request under oath and within 30 days after service. Production may be made at the following address:

Foote, Meyers, Mielke & Flowers, LLC.
28 North First St., Suite 2
Geneva, Illinois 60134

This Request for Production of Documents shall be deemed continuing to the time of hearing and/or trial. For each Production Request that Defendant refuses to answer on the grounds of privilege, state the specific nature of the privilege claimed with appropriate citation to the relationship or information claimed to be privileged and the reason for the privilege.

1

## Instructions for Producing Documents and Answering Production Requests

1.      Pursuant to applicable federal rules, you are required, in responding to this request, to obtain and furnish all information available to you and any of your representatives, employees, agents, brokers, servants, or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, servants or attorneys.

2.      Each request which seeks information relating in any way to communications, to, from, or within a business and/or corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers and/or servants of the business and/or corporate entity.

3.      Each request should be responded to separately.  However, a document which is a response to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response, by its designated mark or index identifier.

4.      All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive.  Where required by a particular paragraph of this Request, documents produced shall be further segregated and identified as indicated in this paragraph. For any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken.

5.      If you object to part of any request, please furnish documents responsive to the remainder of the request.

6.      Each request refers to all documents that are either known by the Defendant to exist or that can be located or discovered by reasonably diligent efforts by the Defendant.

2

7.    The documents produced in response to this request shall include all attachments and enclosures.

8.    The documents requested for production include those in the possession, custody, or control of Defendant, its agents, representatives, or attorneys.

9.    References to the singular include the plural.

10.    The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

11.    All documents called for by this request or related to this request, for which you make a claim to a privilege or statutory authority as a ground for non production, shall be listed chronologically as follows:

    a.    The place, date and manner of recording or otherwise preparing the document;

    b.    The name and title of the sender;

    c.    The identity of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;

    d.    The identity and title with Defendant, if any, or the person or persons supplying Agency's attorneys with the information requested above;

    e.    The identity of each person to whom the contents of the document have summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

    f.    Type of document;

    g.    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

    h.    Factual and legal basis for claim, privilege or specific statutory or regulatory authority which provides the claimed ground for non-production including the identity of the holder of the privilege.

12.    Each request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom this request is addressed. In addition, each request should be considered as including a request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

13.    All documents produced in response to this request shall be produced notwithstanding the fact that portions thereof may contain information not requested.

14.    If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date and subject matter.

15.    Where exact information cannot be furnished, estimated information is to be supplied to the extent possible. Where estimation is used, it should be so indicated, and an explanation should be given as to the basis on which the estimate was made and the reason exact information cannot be furnished.

16.    With respect to any document requested which was once in Defendant's possession, custody or control, but is no longer, please indicate the date the document ceased to be in the Defendant's possession, custody or control, the manner in which it is ceased, and the name and address of its present custodian.

17.    Unless otherwise indicated, each request is to be construed as encompassing all documents which pertain to the stated subject matter and to events which transpired during all relevant times herein up to the present.

Production Protocol-ESI

18.    Each individual piece of computer media produced must be clearly labeled with a unique media control or Bates number which is indelibly written on, or affixed to, both the media itself and any enclosure or case produced with the media.  This label or marking will be affixed in a place and manner which does not obliterate any labeling on the original media, and which does not interfere with the ability to examine or use the media.

19.    Electronic records and computerized information must be produced in an intelligible format or together with a technical description of the system from which they were derived sufficient to permit rendering the records and information intelligible.  This description shall include, but not be limited to:

    a.    Except where redaction is required by law or privilege, any record, document or data item which was crated on a computer or computer system must be produced on computer media in the original unredacted form in which it was created and/or maintained.  For all such media produced, external labels on the medial shall contain a unique tracking number which can be used to associate the media with appropriate identification for the computer(s) from which the copies of computer files were made, and the full names of the individuals or business units who used the computer so identified.  A record shall also be maintained and produced which show how the information on the media was copied, and whether or not it is a complete and forensically accurate copy of the original.

    b.    For any electronic records, documents or data items produced, the producing party shall verify that it has modified its document retention policies in a manner that will ensure retention of the original records, documents and data items.  These document retention policies shall include, without limitation, policies which automatically delete electronic mail or remove unused files, policies which permit overwriting of computer media for system backup functions, and similar policies.

20.    Should the producing party seek to redact any document based on some limitation of discovery (including but not limited to a claim of privilege), the producing party shall supply a list of the documents for which such a limitation of discovery is claimed, indicating:

        a.    The claimed grounds for the redaction.

        b.    The nature of the redacted material (e.g., "trade secret").

        c.    A description of the exact process used for redaction.

21.    Should the producing party seek to withhold any document based on some limitation of discovery (including but not limited to a claim of privilege), the producing party shall supply a list of the documents for which such limitation of discovery is claimed, indicating:

        a.    The identity of each document's author, writer, sender.

        b.    The identity of each document's addressee, or person for whom it was intended.

        c.    The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document.

        d.    The general subject matter as described on each document, or if no such description appears, then some other description sufficient to identify the document.

        e.    The claimed grounds for the limitation of discovery (e.g., "attorney-client privilege")

22.    All ESI must be produced in either:

        a.    "native format" with all metadata, or

        b.    Another format that retains all metadata and is searchable

If neither of the above is available, Plaintiff requests that Defendant contact Plaintiff to agree upon a suitable form that is reasonably usable and includes all metadata. Further, if the native format of the data is awkward, difficult to produce, or would make it difficult to work

with the information, Defendant is requested to confer with Plaintiff to agree upon conversion to another more usable format.

23.     all computer media must be properly packaged to ensure safe shipping and handling. If any piece of media produced is known to have any physical defect, electronic defect, damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination.

24.     All computer media, which can be write protected should be write protected before production.

25.     All copies of computer files for production will be created in such a way as to preserve the original directory structure and any information about the files that is created and maintained by the operating system and the software used to create and maintain the information. This will include, but is not limited to, dates, times, authorship, and transmittal information.

26.     Electronic records and computerized information must be produced with sufficient information to permit identification of the producing agent and business unit responsible for the production. This information shall include, but not be limited to:

     a.     The name of the corporation of entity that is producing the information, along with information such as country, city, site, and department sufficient to uniquely identify the producing agent.

     b.     The name or identity of the specific server or computer system from which the backup was produced or information copied.

     c.     The name or identity of the specific server or computer system upon which the information was originally created, and the name of the individual who created and/or maintained the information.

     d.     The name or identity of the specific server or computer system upon which the information was maintained during the course of normal business, if different from the system where it was created.

27.    Production can be accomplished by mailing the documents within the rule time to:

> Robert M. Foote, Esq.
> Foote, Meyers, Mielke & Flowers, LLC
> 28 North First Street, Suite 2
> Geneva, Illinois 60134.

### Definitions

The following words and terms shall be afforded the following definitions for purposes of these Production Requests:

1.    "**During the relevant time period,**" as used in these Production Requests, shall mean the period commencing with January 2002 through the present.

2.    "**Document,**" as used in these Production Requests has the broadest meaning accorded that term by Rule 34 of the Federal Rules of Civil Procedure and Rule 26 of the Federal Rules of Evidence, and includes, but is not limited to, any kind of written or graphic material, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies, drafts and both sides thereof, and including, but not limited to: any papers, reports, binder, cover note, certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, inter-office and intra-office communications), questionnaire, bill, purchase order, blogs, charts, data files, log files of computer access activity, shipping order, contract, memorandum of contract, agreement, assignment, license, certificate, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgement, computer or data processing card, computer or data processing disk, computer- generated matter, photograph, photographic negative, phonograph recording, transcript or log of an such recording, projection, videotape, film, microfiche, and all other data compilations from which information can be obtained or translated, reports and/or summaries of

investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, no matter how produced or maintained, in you actual or constructive possession, custody or control, or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy as a separate document.

3.    **"Electronically Stored Information"** ("ESI"), as used in these Production Requests, shall be afforded the broadest possible meaning, and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically, or otherwise stored as:

a.    Digital communications (e.g., e-mail, voice mail, instant messaging);

b.    E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);

c.    Word processed documents (e.g., Word or WordPerfect Files and drafts);

d.    Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

e.    Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

f.    Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

g.    Databases (e.g., Access, Oracle, SQL Server data, SAP);

h.    Contact and Relationship Management Data (e.g., Outlook, ACT!);

i.    Sound Recordings (e.g., .AVI and .MOV files)

j.    Presentations (e.g., PowerPoint, Corel Presentations)

k.    Network Access and Server Activity Logs;

l.    Video and Animation (e.g., .AVI and .MOV files);

m.    Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

n.    Online Access Data (e.g., Temporary Internet Files, History, Cookies);

o.    Project Management Application Data;

p.    Computer Aided Design/Drawing Files;

q.    Active Files; and

r.    Backup and Archival Files (e.g., Veritas, Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible.

4.    **"Occurrence" or "alleged occurrence,"** as used in these Production Requests, shall mean the facts alleging liability to any of the Defendants named in Plaintiff's Complaint.

5.    **"You," "your" and "yourself"** refer to the party to whom the following Production Requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices, and employees including persons or entities outside of the United States.

6.    **"Person" and/or "individual"** means any natural persons, firms, proprietorships, associations, partnerships, corporations and every other type of organization or entity.

7.    **"Defendant" and/or "Defendants"** means the Defendant to whom these Production Requests are addressed, or when referred to in the plural any or all Defendants named in Plaintiff's Complaint, including their agents, directors, employees, subsidiaries, affiliates, assignees, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices, and employees including persons or entities outside of the United States.

8.    **"Identify"** means when used in reference to:

    A.    A *document,* to state separately:

        1.    Its description (e.g. letter, report, memorandum, etc.);

        2.    Its date;

        3.    Its subject matter;

        4.    Its format (electronic, paper, etc.);

        5.    Its accessibility, or lack thereof;

        6.    The identity of each author or signer; and

        7.    Its present location and the identity of its custodian.

    B.    **An *oral* statement, communication, conference or conversation,**

to state separately:

        1.    Its date and the place where it occurred;

        2.    Its substance;

        3.    The identity of each person participating in the communication or conversation;

        4.    The identity of all notes, memoranda or other documents memorializing, referring to or relating to the subject matter of the statement;

        5.    Whether there is any recording or electronic storage of the oral statement, communication, conference or conversation, and, if so:

        6.    The format in which it is stored;

        7.    The location in which it is stored;

        8.    Its accessibility; and

        9.    The identity of its custodian.

    C.    A *natural person or persons,* to state separately:

        1.    The full name of each such person;

        2.    His or her present, or last known business address and his or her present or last known residential address; and

        3.    The employer of the person at the time to which the interrogatory answer is directed and the person's title or position at that time;

    D.    An *organization or entity* **other than a natural person** (e.g., a company, corporation, firm, association, or partnership), to state separately:

        1.    The full name and type of organization or entity;

        2.    The date and state of organization or incorporation;

        3.    The address of each of its principal places of business; and

        4.    The nature of the business conducted.

9.    **"Communication"** shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications, electronic and non-electronic communications. 11.

10.    **"Relating to"** means consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

11.    **"Claim"** means a demand or assertion, whether oral or written, formal or informal, by any person for monetary payment, the undertaking of action, or the cessation of action.

12.    **"Consulted"** or **"contracted"** means any form of communication, e.g., oral statements, telephonic conversations or other mechanical communications or any other type of communication including written letters or documents.

13.    **"Plaintiff"** means VULCAN GOLF and/or any other individuals who have acted on its behalf.

14.    **"Management" or "manage"** includes any act of directing, conducting, administering, controlling or handling an identified function or duty.

15.    **"Any"** shall also mean "all" and vice versa.

16.    **"And"** shall mean **"or"** and "or" shall mean "and" as necessary to call for the broadest possible answer.

17.    The **"Class"** shall mean the putative Class Set forth in Plaintiff's Complaint, defined as:

> **Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, agents and Defendants' co-conspirators) domiciled within the United States that own or are a licensee of a "distinctive or valuable mark" that has been infringed, diluted, cybersquatted, typosquatted, and/or otherwise improperly used by one or more of the Defendants, as part of the Illegal Infringement Scheme alleged herein, during the period January 2002 through the present.**

18.    **Address Bar:** as used in these Production Requests, means the text box used to enter a website's address in a web browser. On the web browser Internet Explorer it is identified by the word "Address." The address bar allows Internet users to manually type in and specify the web sites they wish to visit on the Internet. It is also known as the location bar in Netscape.

19.    Click: as used in these Production Requests, means: the action of an Internet user in selecting ("clicking on") displayed Internet advertising.

20.    **Click-Through-Rate (CTR):** as used in these Production Requests, means: the ratio of The number of clicks a particular advertisement receives on a website to the total number of viewers of that website.

21.    **Click-Through-Revenue**: as used in these Production Requests, means: revenue generated by Clicks on "pay-per-click/cost-per-click" advertisements.

22.    **Cost-Per-Click Advertising (or "Pay-Per-Click"):**  as used in these Production Requests, means: the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a per-bid, pay per click, basis.  The advertiser only pays when its advertisement link is clicked on by an Internet user. Therefore, under a "cost-per-click/pay-per-click" advertising solution, Defendants only generate revenue when an Internet user actually "clicks" on one or more of the advertising links appearing on a domain.

23.    **Cost-Per-Impression:**   as used in these Production Requests, means:   the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a pay per display basis wherein the advertiser pays the search engine each time its advertisement is displayed on one of the search engine's participating websites.

24.    **Country Code TLDs ("ccTLDs"):** as used in these Production Requests, means: a top level domain identifying domain names for a given country.  Country codes are designated by a two letter code identifying the country.

25.    **Cybersquatting:** as used in these Production Requests, means: the practice of registering, licensing using, and monetizing domain names – usually based on prominent Distinctive and Valuable Marks or corporate names – before the legitimate holders of same have had an opportunity to register the domain names for themselves and/or registering Deceptive Domains, and then using said domains for commercial profit and gain.

26.    **Deceptive Domains:**   as used in these Production Requests, means: a parked domain that is used for advertising purposes, and is identical to or confusingly similar to a famous mark.

27.    **Distinctive and Valuable Marks:** as used in these Production Requests, means: venerable, valuable, distinctive, famous, registered trademarks, trade names, logos, famous names, and other such distinctive/valuable marks.

28.    **Domain Forwarding:** as used in these Production Requests, means: redirecting requests to reach one Internet address on the Internet to a different Internet address.

29.    **Domain Kiting:**   as used in these Production Requests, means: the practice of domain Registrants registering a domain name, returning that domain name within five (5) days to the original domain registrar for a full refund, and then reregistering that same domain name to avoid paying for the registration fee.

30.    **Domain Monetization:**   as used in these Production Requests, means: the practice of using domain names for commercial gain by generating revenue from the placement of advertisements and marketing on domains.

31.    **Domain Name Parking Aggregator:**   as used in these Production Requests, means: a domain Parking Company that aggregates numerous domain names from individual domain name registrants and then contracts with Google to license and monetize those domain names.

32.    **Domain Names:** as used in these Production Requests, means: a domain name is made up of two components: a top level domain and a secondary level domain. The top level domain is the suffix of the domain name such as .com, .net. org.  The secondary level domain is

15

the remainder of the address, and can consist of letters, numbers, and some typographical symbols. Certain symbols, such as ampersands ( & ), cannot be used in a domain name.

33.    **Domain Name System ("DNS"):** as used in these Production Requests, means: the system used to translate alphanumeric domain names into Internet Protocol numbers.

34.    **Domain Registrars:**    as used in these Production Requests, means: an organization such as Network Solutions, that has control over the granting of domains within top level domains. Persons that want to own a domain name on the Internet must register a unique domain name with a domain registrar.

35.    **Domain Registration:** as used in these Production Requests, means: the act of registering a domain name. A domain name can only be registered by one entity and domain names are registered on a first-come first-served basis.

36.    **Domain Tasters:** as used in these Production Requests, means: persons involved in the practice of domain tasting.

37.    **Domain Tasting:** as used in these Production Requests, means: the practice of domain registrants registering a domain name to assess its profitability by redirecting it through Defendant Google, and returning that domain name within five (5) days to the original domain registrar for a full refund if the domain name proves unprofitable.

38.    **E-Commerce:** as used in these Production Requests, means: commerce that is transacted electronically, such as over the Internet.

39.    **Generic TLDs ("gTLDs"):**    as used in these Production Requests, means: the top-level domain name of an Internet address that gives it a generic identification associated with a domain class, such as .com (commercial), .net (Internet service providers), .org (non-profit

organizations), .gov (government), .mil (military), .edu (educational institutions), and .int (international treaties or databases).

40.    **Google Network:**    as used in these Production Requests means: (1) the advertisers participating in the Google AdWords Program, (2) the Parking Company Defendants, (3) the third party domain owners and aggregators that participate in Google's AdSense for Domains Network, (4) Google AdSense for Content Partners, and (5) Google AdSense for Search Partners.

41.    **Google Adsense for Domains Program:** as used in these Production Requests, means the technology, systems, and processes that Google developed, formulated, controls and uses to operate the displaying of Google advertisements on the domain names in Google Adsense for Domains Network.

42.    **Google Adsense for Domains Network**: as used in these Production Requests means the millions of domain names using the Google AdSense for Domains Program which Google controls and manages via direct contracts with domain owners such as Defendant Ireit, and contracts with the Parking Company Defendants (who aggregate domain portfolios, and in some cases, also own large portfolios of domain names).

43.    **HyperText Markup Language ("HTML"):**    as used in these Production Requests means "*Hypertext Markup Language*," a language used in the creation of web pages which denotes text as headings, paragraphs, lists, describe the appearance and semantics of a document, and can include embedded scripting language code and affect the behavior of web browsers and other HTML processors. Generally, HTML is used herein in its most general sense and refers to the type of markup language used in creating a web page.

44.    **Internet:**  As used in these Production Requests, means:   The international network of interconnected computers and computer networks.  It is networking infrastructure or medium that connects computers globally.

45.    **Internet Corporation for Assigned Names and Numbers (ICANN):** as used in these Production Requests, means: the internationally organized, non-profit corporation responsible for coordinating the management of the technical elements of the Domain Name System to ensure universal resolvability so that all users of the Internet can find all valid addresses.

46.    **Internet Protocol ("IP") numbers:**  as used in these Production Requests, means: a unique number consisting of four (4) numbers, each between 0 and 255, separated by periods, used to uniquely identify a computer on the Internet.

47.    **Masked Redirection/Framed Forwarding/Stealth:** as used in these Production Requests, means: when an Internet user attempts to access a website by typing the domain into a Web browser, the user will be redirected to a different Web address without authorization or permission and the URL in a Web browser's address bar remains the one that was typed in when the visitor is being redirected.  That way, the actual destination address is concealed from the user who only sees the domain name the user typed in.

48.    **Non-Content Advertising:**  as used in these Production Requests, means: an Internet webpage consisting solely of Internet advertising links and lacking any substantive content.

49.    **Normal Domain Redirection:**  as used in these Production Requests, means: when an Internet user attempts to access a website by typing the domain into a Web browser, the user will be redirected to a different Web address without authorization or permission.

50.    **Parked Domains:**  as used in these Production Requests, means: a registered domain which is being redirected and monetized through the Google AdSense for Domains Program and/or the Parking Company Defendants, and is part of the Google AdSense for Domains Network.

51.    **Parking Companies:**  as used in these Production Requests, means: a domain company that aggregates numerous domain names from individual domain name registrants and then contracts with Google to license and monetize those domain names.

52.    **Pay-Per-Click (or Cost-Per-Click):**  as used in these Production Requests, means: the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a per-bid, pay per click, basis.

53.    **Search Engine:**  as used in these Production Requests, means: a program that searches web pages for specified keywords and returns a list of web pages where the keywords were found.

54.    **Second Level Domains ("SLDs"):**  as used in these Production Requests, means: the portion of the Uniform Resource Locator that identifies the specific and unique administrative owner associated with an Internet Protocol number.    For example, in: www.whatis.com, "whatis" is the second level domain.

55.    **Semantic Technology:**  as used in these Production Requests, means: technology that analyzes text input by a user to assess the probable intent of the user.

56.    **Top Level Domains ("TLDs"):**  as used in these Production Requests, means: the portion of the Uniform Resource Locator that refers to the suffix attached to the domain name. For example, in www.whatis.com, ".com" is the Top Level Domain.

57.    **Trademark Cyberpiracy:**   as used in these Production Requests, means: synonymous with Cybersquatting.

58.    **Typosquatting:**   as used in these Production Requests, means: a form of cybersquatting, aimed at registering domain names similar to prominent trade names, trademarks, or corporate names, in order to capture and lure Internet traffic from misspelled or mistyped trade names, trademarks, or corporate names in the domain.

59.    **Undeveloped Site/Domain:**   as used in these Production Requests means a site that does not contain any content.

60.    **Uniform Resource Locator ("URL"):**   as used in these Production Requests, means: the unique address for a file that is accessible on the Internet. A web site is accessed on the Internet by providing that web site's URL to the Internet browser.

61.    **Web Browser:**   as used in these Production Requests, means: the software that allows a user to locate, view, and access websites on the World Wide Web (Ex: Microsoft Internet Explorer)

62.    **Website ("site"):**   as used in these Production Requests, means: a location on the World Wide Web.

63.    **Web Traffic:**   as used in these Production Requests (used synonymously with Internet traffic) to mean: the flow of data and users around the Internet and web.

64.    **World Wide Web ("Web"):**   As used in these Production Requests, means: a collection of online documents stored on servers around the world, that are connected to the Internet. The web is one of the ways that information is shared over the Internet.

## REQUESTS

1.    All documents that You identified in responses to or relied upon in preparing your responses to Plaintiff's First Set of Interrogatories.

2.   All documents that You, and/or any other Defendant, intends to introduce or rely upon at any hearing, trial, or other proceeding related to this matter or that may be used to refresh the recollections of witnesses at depositions or trial.

3.   All documents, ESI, communications and/or other data supporting any defenses or affirmative defenses raised by You, or any of the Defendants.

4.   All documents, ESI, communications and/or other referring or relating to any problems, acts, or omissions on the part of any of the Defendants, its employees or agents that allegedly resulted in infringement/dilution of distinctive and valuable marks, cybersquatting, cyberpiracy, typosquatting, and/or any other action forming the basis of the claims set forth in Class Plaintiff's Complaint.

5.   All documents, ESI, communications and/or other referring and/or relating to any communication that Class Plaintiff had with any of the Defendants, their employees or agents regarding internet advertising, marketing, cybersquatting, typosquatting, traffic hijacking, distinctive and valuable mark infringement/dilution, fraud, or diversion of business.

6.   All documents, ESI, communications and/or other to and/or from any other person, organization, or association regarding typosquatting, cybersquatting, distinctive and valuable mark infringement/dilution, fraud, traffic hijacking, and/or any other allegations raised in Class Plaintiff's Complaint.

7.   All documents provided by You, and/or any other Defendant, to the United States Department of Justice and/or any other governmental entity related to claims of typosquatting, cybersquatting, distinctive and valuable mark infringement/dilution, fraud, traffic hijacking, and/or any other allegations raised in Class Plaintiff's Complaint.

8.   All documents identifying the nature of Your operations, Your physical locations, and Your organizational structure, including but not limited to, parent companies, subsidiaries, management structure, department heads, directors, and all others who have any responsibility for supervisory activities.

9.   All organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents in Your possession that show the identities, titles or responsibilities of each person responsible in any manner for the design of software and programs, selection of software and programs, maintenance and use of software/programs, promulgation of policies and procedures, oversight and/or enforcement of any programs for domain registration, domain tasting, domain licensing, search and ranking, and/or internet advertising and marketing programs.

10.   Any and all internal operating procedures, standard operating procedures, written directives, intranet, internet, and/or website materials related to domain registration, domain tasting, domain licensing, the AdWords, AdSense Programs, and/or other internet advertising and marketing programs.

11.   All documents, data, and/or ESI containing any statistical data relied that will be relied upon by You, or any of the Defendants.

12.   All statements, document, e-mails, electronic recordings, and/or memos relating to witnesses or potential witnesses or persons contacted in connection with this case.

13.   All documents relating to the balance sheet reflecting Your assets and liabilities and net worth, including, but not limited to, any 10-K statements and Annual Reports.

14.   All documents relating to Your market cap.

15.   All documents reflecting Your net income, total revenue, and total liabilities.

16.   Any communications and/or documents relating to statements made by any Defendant to the media, newspapers, television reporters or other press regarding this lawsuit.

17.   All documents reflecting Defendant's litigation apportionments, reserves, and/or other financial information relevant to litigation and/or settlement of this litigation.

18.   Any and all documents associated with, related to, concerning, or involving Defendant's formal or informal document retention and destruction policies.

19.   All corporate mission statements.

20.   Any documents prepared by an expert, consultant, or other individual/entity related to this legal action or any of the allegations made in Plaintiff's Complaint.

21.   All E-Mail related to Google AdSense or AdWords programs, advertising and marketing programs, cost-per-click/pay-per-click, domain registration, domain kiting, domain tasting, deceptive domains, complaints regarding infringement/dilution of distinctive and valuable marks, cybersquatting, typosquatting, traffic hijacking, trademark/distinctive and valuable mark infringements, "Cost-per-click/Pay-per-click" advertising, Licensing Domains, AdSense Program; AdWords Program, any communication, contract, association or otherwise by and between any of the Defendants, and/or is otherwise relevant to this litigation. All electronic mail, electronic correspondence, or electronic peer-to-peer messages (e-mail") shall be produced in electronic form, in an

22

accessible standard format, and on industry-standard computer media along with files included as attachments to such e-mail. Back-up archival copies of e-mail and e-mail attachments shall be restored as necessary to crate a comprehensive collection of e-mail. No modification, alterations, or additions to e-mails (or to the meta-data and attachments associated with such e-mails) from their original states shall be performed. All e-mail should be produced whether:

a.    Residing in active files on enterprise servers

b.    Stored in active files on local or external hard drives and network shares

c.    Nearline e-mail

d.    Offline e-mail stored in networked repositories

e.    E-mail residing on remote servers

f.    E-mail forwarded and carbon copied to third-party systems

g.    E-mail threaded behind subsequent exchanges

h.    Offline local e-mail stored on removable media (eternal hard drives, thumb drives and memory cards; optical media: CD-R/RW, DVD-R/RW, Floppy Drives and Zip Drives)

i.    Archived E-mail

j.    Common user "Flubs"

k.    Legacy e-mail

l.    E-mail saved to other formats (.pdf, .tiff, .txt, .eml, etc.)

m.    E-Mail contained in review sets assembled for other litigation/compliance purposes

n.    E-Mail retained by vendors or third-parties

o.    Print outs to paper

p.    Offline e-mail on server back up media (Back up tapes, DLT, AIT, etc.)

q.    E-mail in forensically accessible areas of local hard drives (deleted e-mail, internet cache, unallocated clusters)

22.    Proprietary software used to perform redaction.

23.   Commercial software used to perform redaction.

24.   Meta-data used to describe backup and archival media.

25.   Meta-Data used to identify computer systems relevant to this litigation.

26.   Meta-Data used to identify computer access relevant to this litigation.

27.   Complete history, records, and/or files related to AdWords and AdSense Programs, and to any other advertising and marketing program used by You, or any of the other Defendants.

28.   The name and address of each and every participant in the AdWords and AdSense program.

29.   The domain address of every participating domain in the AdWords and AdSense Programs.

30.   Any and all documents, data, and information pertaining to registration and licensing domains, by You, and/ or any of the Defendants.

31.   Any and all documents, data, and information pertaining to domain name research, domain kiting, and/or domain tasting, by You and/or any of the Defendants.

32.   Any and all algorithms/formulas/software programs used in connection with Your, and/or any of the Defendants', Search and Ranking programs.

33.   Any and all algorithms/formulas/software programs used by You, and/or any of the Defendants, to place advertisements on domains.

34.   Any and all algorithms/formulas/software programs used by You, and/or any of the Defendants', to evaluate advertising and domain performance in the AdWords and AdSense Programs.

35.   Any and all algorithms/formulas/software programs used by You, and/or any of the Defendants, to track, calculate, monitor or otherwise determine revenue generated from online marketing and advertising programs.

36.   Any and all documents, data, and information pertaining to domain name auction systems, algorithms used in identifying and selecting domain names, algorighms/formulas/software programs used to register, reserve, license, or otherwise obtain ownership, control, or license over a domain, by You and/or any of the Defendants.

37.   Any and all documents, data, and information pertaining to methods used to understand the meaning of domain names and to determine the optimal advertisements to place on domains, by You and/or any of the Defendants.

38.   Any and all documents, data, and information pertaining to "Google Domain Park."

39.   Any and all documents, ESI, data, and information pertaining to Google's Semantics Technology used in developing websites, domains, advertising and marketing, and/or search and ranking technologies.

40.   Any and all documents, data, and information pertaining to Google's domain reporting and portfolio analysis programs used in connection with the AdSense and/or AdWords programs.

41.   Any and all documents, data, and information pertaining to Your, and/or any of the Defendants', traffic redirection programs and/or stealth redirection programs.

42.   Any and all documents, data, and information pertaining to the sites www.googlesyndication.com and/or www.appliedsemantics.com.

43.   Any and all documents, data, and information pertaining to Your and/or any of Defendants' individual and collective attempts to monitor and review sites for trademark infringement.

44.   Any and all profit sharing, revenue sharing, and/or related agreement any of the Defendants.

45.   Any and all documents, data, and information pertaining to Defendant Google's "loyalty" program and/or "Exclusivity" program.

46.   Complete statistics and/or activity reports for all domains participating in the AdSense program.

47.   Any and all documents, data, and information pertaining to domain parking conferences.

48.   Any and all documents, data, and information pertaining to Your usage, and/or any Defendant's usage, of the website www.whois.com

49.   Any and all documents, data, and information pertaining to Your, and/or any of Defendants', "intelligent placement" programs.

50.   Any and all documents, data, and information pertaining to Your, and/or any of Defendants', usage of infringing "www" domain names, "com" domain names, and/or "http" domain names.

51.   Any and all documents, data, and information pertaining to Your, and/or any Defendants, quality/webmaster guidelines.

52.   Any and all documents, ESI, data, and other information related in any way to your monitoring, reporting, analyzing, tracking, evaluating, reviewing, and/or otherwise related to any of the other Defendants' operations, and/or the operations of your competitors.

53.   Any and all documents, data, and information pertaining to Your, or any of Defendants, online complaint system.

54.   Any and all documents, data, and information pertaining to the Uniform Domain Name Dispute Resolution Policy.

55.   Any and all documents, data, and information pertaining to "collective reports".

56.   Any and all documents, data, and information pertaining to Your "efforts for greater transparency."

57.   Any and all documents, data, and information pertaining to Google's Placement Performance Reports.

58.   Any and all documents, data, other information, invoices, bills, and/or other accounting documents related to the AdWords or AdSense Programs.

59.   Any and all documents, communications and ESI related to any of Defendants' actions in registering, licensing, trafficking in and/or otherwise using Deceptive Domains.

60.   Any and all documents, communications and ESI related to Defendants algorithms, protocols, benchmarks, procedures, and/or standards used to identify domains that are potentially infringing, diluting, or otherwise similar, identical to, or confusingly similar to Distinctive and Valuable Marks.

61.   Any and all documents, communications and ESI related to violations of The AntiCybersquatting Consumer Protection Act as codified in 15 USC 1125§ (d), or any other law that was or could have been alleged in Plaintiff's Complaint.

62.   Any and all documents, communication, and ESI related to sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration in connection with a Deceptive Domain, as defined in Plaintiff's Complaint.

63.    Any and all documents, communications, and ESI related in any way to Defendant Google's "networks," as defined in Plaintiff's Complaint, consisting of millions of individuals and entities located throughout the world involved in Internet advertising and marketing.

64.    Any and all documents, data and ESI relating to any contracts, agreements, joint ventures, or other formal or informal relationship between Defendant(s).

65.    Any and all documents, data and ESI related to any trade or professional organizations that You, or any of Defendants, belong to.

66.    Any and all documents, communications, and ESI related in any way to commercial profit, gain, or revenue through the display of Internet advertising on Deceptive Domains.

67.    Any and all documents, communications, and ESI related in any way to Class Plaintiff.

68.    Any and all documents, communications, and ESI that relate in any way to the valid and enforceable distinctive Vulcan Marks, including but not limited to the following:

Trademark: VULCAN; Registration No. 1973892; Goods and Services Int'l Class 028. US 022 023 038 050. G & S: golf clubs; First Use: November 8, 1993. Registration Date May 14, 1996

69.    Any and all documents, communications, and ESI related in any way to Your, or any of the other Defendants, participation in a conspiracy to effectuate the Illegal Infringement Scheme, as defined in Plaintiff's Complaint, or allegations of said participation.

70.    Any and all documents, communications, and ESI related to Your actions in masking, Masked Redirection/Framed Forwarding/Stealthing/Etc.,or allegations of said.

71.    Any and all documents, communications, and ESI related to any acts alleged to have been done by Defendants agents or were authorized, ordered or done by their directors, officers, agents, employees, subsidiaries, or representatives while actively engaged in the management of each of the Defendants' affairs, for Defendants' commercial gain on behalf of and for the benefit of Defendants, as co-conspirators, and against Class Plaintiff and the Class.

72.    Any and all documents, communications, and ESI related to Your, or any of the Defendants', use of, tracking of, and reporting of a Click-Through-Rate (CTR) in conjunction with advertisements placed through Defendant Google's AdSense and AdWords programs

73.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants', use of "cost-per-click/pay-per-click", banner, and/or Cost-Per-Impression advertising methods.

74.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants', realization of Click-Through-Revenue, and all sources thereof.

75.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants', use of domain forwarding, or allegations of said use, in conjunction with the AdSense and Adwords advertising programs.

76.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants', utilization of Non-Content Advertising, parked domains for advertising, and/or use of deceptive domains.

77.   Any and all documents, communications, and ESI related to participation of parked Domains in Defendant Google's Ad Sense and Ad Words programs.

78.   Any and all documents, communications, and ESI related to Your, or any other Defendants', license, monetization, and/or use of Parked Domains and/or Deceptive Domains.

79.   Any and all documents, communications, and ESI related to any of the Defendants' participation in Defendant Google's AdSense or AdWords Program.

80.   Any and all documents, communications, and ESI related to semantic technology, software, and or other programs used by Defendant Google in operation of its AdSense and AdWords programs.

81.   Any and all documents, communications, and ESI related to Your actions in monitoring, directing, reporting on, or otherwise evaluating and observing Web Traffic.

82.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants', control of domains via contracts directly with large domain name holders and through contracts with the Parking Company Defendants who aggregate smaller domain portfolios, and in some cases, own large portfolios of domain names.

83.   Any and all documents, communications, and ESI related to Your, or any of the other Defendants, semantic technology and how it analyzes and understands the meaning of domain names.

84. Any and all documents, communications, and ESI related to how Defendant Google generates the HTML code to place its targeted, conceptually related Google AdWords advertisements on participating domains.

85. Any and all documents, communications, and ESI related to Your, or any of the other Defendants, use of targeting solutions that intelligently select the most relevant ads and categories for placement on domains.

86. Any and all documents, communications, and ESI related to how You, or any of the other Defendants, augment semantic technology, search technology, advertising and marketing technology, and any other technology relevant to this litigation with manual and automated optimization techniques.

87. Any and all documents, communications, and ESI related to Your, or any of the other Defendants, online per-domain reporting of domain performance.

88. Any and all documents, communications, and ESI related to Defendant Google's representations and promises to domain name owners and parking companies that they will maximize revenue from the domain names with Google's AdSense for Domains Program.

89. Any and all documents, communications, and ESI related to Defendant Google's Adsense for Domains partners, such as IREIT and the Parking Company Defendants, redirection of traffic from the domain names they own and/or control to Google's AdSense for Domains.

90. Any and all documents, communications, and ESI related to Defendant Google's processing of domain names and returning formatted HTML for each domain name that includes contextual ads and related searches.

91. Any and all documents, communications, and ESI related to Defendant Google's AdSense for Domains Network partners options in either displaying the Google-generated full page HTML or including it in a frame.

92. Any and all documents, communications, and ESI related to Defendant Google's actions in providing HTML program code for each web page participating in its AdSense for Domains program.

93. Any and all documents, communications, and ESI related to Defendant Google's provision of proprietary XML to large partners, parking companies, and domain aggregators, of feed of the AdWords contextual ads and related searches which are displayed on the domain names.

94. Any and all documents, ESI, data, and information related to any contracts, agreements, licenses, or other (formal or informal) arrangements by and between any of the named Defendants.

95.   Any and all software programs related to advertising and marketing programs, including but not limited to the AdWords and/or AdSense programs.

96.   All software programs related to Your, or any other Defendants, search and ranking programs.

97.   Any and all communications, documents, and or other information related to any complaints of trademark infringement, dilution, cybersquatting, typosquatting, antitrust and/or anticompetitive or other such related violations

98.   All training and educational seminars related to marketing and advertising programs, Adwords and/or AdSense programs, domain registration, domain tasting, domain kiting, and/or license and use of domains.

99.   All consultant reports related to marketing and advertising programs, Adwords, and/or Ad Sense practices, policies, and/or procedures.

100.  All documents related to administrative, local, state, and/or federal claims made against Defendant related to any advertising and marketing program, the AdWords, AdSense programs, trademark or "distinctive and valuable marks" (as defined in Plaintiff's Complaint) infringements, cybersquatting, typosquatting, domain tasting, illegal domain registration, and/or domain kiting.

101.  All statements of potential witnesses or persons interviewed in connection with this case.

102.  Mirrored images as of this date of all hard drives from the computers of all persons involved with AdWords, AdSense, and or other marketing and advertising programs, and the mirrored images to any servers (including e-mail servers) to which these persons may have had access.

103.  All current back-up tapes (or other media used to back-up) hard drives and servers related to any documents, ESI, production requests, and/or otherwise related to this litigation.

104.  All documents, data, and information related to Your, or any other Defendant's, income from any advertising and marketing program, including but not limited to the AdWords and/or AdSense programs.

105.  Any and all communications, documents, data, and/or information related to any actions by Defendant taken to address, mitigate, prevent, and/or stop the participation of deceptive domains in the AdSense Program, or the other use of Deceptive Domains for advertising and marketing purposes.

106. Any and all documents, communications, information, and or data related to the identity of and operations of the Google Network.

107. Any and all documents, communications, information, and or data related to the marketing and promotion of the Google Network, Google AdWords and Google AdSense programs

108. The identify of each and every individual and entity that Defendant Google has made a payment to in connection with the Google AdSense program, the date of payment, method of payment, and amount of payment.

109. Every letter, e-mail, facsimile, electronic message, and or other communication sent by Defendant Google to AdSense participants related to their participation in the Google AdSense program.

110. Each and every document, communication, data, and/or information related to Defendant Google's selection of and placement of advertising through any of its advertising and marketing programs, including but not limited to its Adwords and AdSense programs

111. Any and all communications, data, reports, ESI, and other information related to revenue generated through Defendant Google's cost-per-click/pay-per-click advertising programs, AdSense, and/or AdWords programs.

112. Any and all information related to Defendant Google's policies, procedures, regulations, and guidelines related to and/or governing its cost-per-click/pay-per-click advertising programs

113. Any and all documents, communications, information, and/or data related to Defendant Google's process of approving domains for participation in its marketing and advertising programs.

114. Any and all insurance agreements that may provide coverage for Your, or any of the Defendants, in this matter

115. Each and every license agreement and/or use agreement between You and/or any of the Defendants and/or any domain owner related to license, control, ownership, or use of any domain.

116. Each and every "deceptive domain" under Your, or another Defendant's, ownership, license, control, and/or use.

117. Each and every domain under Your ownership, license, control, and/or use.

118. All reports generated in connection with advertising, marketing, monetization, or revenue generated from any deceptive domain.

119.    All reports generated in connection with the Google AdSense program.

120.    All reports generated for You by any of the other Defendants.

121.    Any other documents, data, information, and materials that Your, or any of the
        Defendants, either intends to use in defense of Class Plaintiff's claims, at hearing
        in this matter, or that You, or any of the Defendants, believe may be relevant
        and/or probative of the claims asserted in Class Plaintiff's complaint.

Respectfully submitted,

Robert Foote, Esq. #03214325
Stephen W. Fung #06289522
Foote Meyers Mielke & Flowers, LLC
28 North First St.
Suite 2
Geneva, IL 60134
630-232-6333

Kathleen C. Chavez, Esq. #6255735
Chavez Law Firm, P.C.
28 North First St.
Suite 2
Geneva, IL  60134
630-232-4480

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned attorney, deposes and states that she mailed a true and correct copy of
Plaintiff's First Request for Production of Documents to Defendant GOOGLE, INC. to the
undersigned, by hand delivery on _____.

Michael H. Page
Joseph Gratz
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA  94111

Moriah Moran
Jonathan M. Cyrluk
Joseph J. Duffy

Stetler & Duffy, Ltd.
11 S. LaSalle Street, Suite 1200
Chicago, IL  60603

Kathleen C. Chavez, Esq.