D

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN GOLF, LLC, | § | |
| Individually And On Behalf Of All | § | |
| Others Similarly Situated, | § | Civil Action No. 07 CV 3371 |
| | § | |
| Lead Plaintiff, | § | |
| | § | Judge Kocoras |
| v. | § | |
| | § | Magistrate Judge Brown |
| GOOGLE INC., OVERSEE.NET, | § | |
| SEDO LLC, DOTSTER, INC., AKA | § | |
| REVENUEDIRECT.COM | § | |
| INTERNET REIT, INC. d/b/a IREIT, INC.; | § | |
| and JOHN DOES I-X, | § | |
| | § | |
| Defendants. | § | |

## FIRST RULE 30(b)(6) NOTICE OF DEPOSITION TO ALL DEFENDANTS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Michael H. Page, Esq.
Joseph Gratz, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Moriah Moran, Esq.
Jonathan M. Cyrluk, Esq.
Joseph J. Duffy, Esq.
Stetler & Duffy, Ltd.
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603

Scott Wiehle, Esq.
Vinson & Elkins LLP
2001 Ross Ave., Suite 3700
Dallas, TX 75201

Michael Dockterman, Esq.
Alison C. Conlon, Esq.
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 3000
Chicago, IL 60606

Kenneth P. Held, Esq.
Steven Borgman, Esq.
Vinson & Elkins LLP
First City Tower
1001 Fannin Street
Suite 2500
Houston, Texas 77002-6760

Brett A. August, Esq.
Bradley L. Cohn, Esq.
Alexis A. Payne, Esq.
Pattishall, McAuliffe, Newbury, Hilliard &
Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, IL 60606

Jeffrey Singer
Misty Martin
Segal McCambridge Singer & Mahoney, Ltd.
One IBM Plaza, Suite 200,
330 North Wabash
Chicago, Illinois 60611

Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn, LLP
35 West Wacker Drive
Chicago, Illinois 60601

Steven Atlee
Winston & Strawn, LLP
333 S. Grand Avenue
Los Angeles, California
90071-1543

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure and the Joint Discovery Plan and Scheduling Order entered by the Court, Plaintiffs in the above-captioned action, by and through their undersigned attorneys, will take the deposition of each Defendant at dates, times and locations to be discussed and mutually agreed upon by the parties. Pursuant to Fed. R. Civ. P. 30(b)(6), each Defendant shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of that Defendant concerning the matters identified below.

PLEASE TAKE FURTHER NOTICE that the deposition will be recorded by using live note and will be videotaped by a professional videographer.

I.    **DEFINITIONS**

1.    **"During the relevant time period,"** as used in This Notice, shall mean the period commencing with January 2002 through the present.

2.    **"Document,"** as used in This Notice has the broadest meaning accorded that term by Rule 34 of the Federal Rules of Civil Procedure and Rule 26 of the Federal Rules of Evidence, and includes, but is not limited to, any kind of written or graphic material, however

produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies, drafts and both sides thereof, and including, but not limited to: any papers, reports, binder, cover note, certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, inter-office and intra-office communications), questionnaire, bill, purchase order, blogs, charts, data files, log files of computer access activity, shipping order, contract, memorandum of contract, agreement, assignment, license, certificate, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgement, computer or data processing card, computer or data processing disk, computer- generated matter, photograph, photographic negative, phonograph recording, transcript or log of an such recording, projection, videotape, film, microfiche, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, no matter how produced or maintained, in you actual or constructive possession, custody or control, or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy as a separate document.

3.    **"Electronically Stored Information"** ("ESI"), as used in This Notice, shall be afforded the broadest possible meaning, and includes (by way of example and not as an exclusive

list) potentially relevant information electronically, magnetically, optically, or otherwise stored as:

- a.   Digital communications (e.g., e-mail, voice mail, instant messaging);

- b.   E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);

- c.   Word processed documents (e.g., Word or WordPerfect Files and drafts);

- d.   Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- e.   Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

- f.   Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- g.   Databases (e.g., Access, Oracle, SQL Server data, SAP);

- h.   Contact and Relationship Management Data (e.g., Outlook, ACT!);

- i.   Sound Recordings (e.g., .AVI and .MOV files)

- j.   Presentations (e.g., PowerPoint, Corel Presentations)

- k.   Network Access and Server Activity Logs;

- l.   Video and Animation (e.g., .AVI and .MOV files);

- m.   Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- n.   Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- o.   Project Management Application Data;

- p.   Computer Aided Design/Drawing Files;

- q.   Active Files; and

- r.   Backup and Archival Files (e.g., Veritas, Zip, .GHO)

- s.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible.

4

4.    "**Occurrence**" or "**alleged occurrence,**" as used in This Notice, shall mean the facts alleging liability to any of the Defendants named in Plaintiff's Complaint.

5.    "**You,**" "**your**" and "**yourself**" refer to the party to whom the following Production Requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices, and employees including persons or entities outside of the United States.

6.    "**Person**" and/or "**individual**" means any natural persons, firms, proprietorships, associations, partnerships, corporations and every other type of organization or entity.

7.    "**Defendant**" and/or "**Defendants**" means the Defendant to whom This Notice are addressed, or when referred to in the plural any or all Defendants named in Plaintiff's Complaint, including their agents, directors, employees, subsidiaries, affiliates, assignees, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices, and employees including persons or entities outside of the United States.

8.    "**Identify**" means when used in reference to:

A.    A *document*, to state separately:

1.    Its description (e.g. letter, report, memorandum, etc.);

2.    Its date;

3.    Its subject matter;

4.    Its format (electronic, paper, etc.);

5.    Its accessibility, or lack thereof;

6.    The identity of each author or signer; and

7.    Its present location and the identity of its custodian.

B.    An *oral* **statement, communication, conference or conversation,** to state separately:

1.    Its date and the place where it occurred;

2.    Its substance;

3.    The identity of each person participating in the communication or conversation;

4.    The identity of all notes, memoranda or other documents memorializing, referring to or relating to the subject matter of the statement;

5.    Whether there is any recording or electronic storage of the oral statement, communication, conference or conversation, and, if so:

6.    The format in which it is stored;

7.    The location in which it is stored;

8.    Its accessibility; and

9.    The identify of its custodian.

C.    A *natural person or persons,* to state separately:

1.    The full name of each such person;

2.    His or her present, or last known business address and his or her present or last known residential address; and

3.    The employer of the person at the time to which the interrogatory answer is directed and the person's title or position at that time;

D.    An *organization or entity* **other than a natural person** (e.g., a company, corporation, firm, association, or partnership), to state separately:

1.    The full name and type of organization or entity;

2.    The date and state of organization or incorporation;

3.    The address of each of its principal places of business; and

4.    The nature of the business conducted.

9.    **"Communication"** shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications, electronic and non-electronic communications. 11.

10.    **"Relating to"** means consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

11.    **"Claim"** means a demand or assertion, whether oral or written, formal or informal, by any person for monetary payment, the undertaking of action, or the cessation of action

12.    **"Consulted"** or **"contracted"** means any form of communication, e.g., oral statements, telephonic conversations or other mechanical communications or any other type of communication including written letters or documents.

13.    **"Plaintiff"** means VULCAN GOLF and/or any other individuals who have acted on its behalf.

14.    **"Management"** or **"manage"** includes any act of directing, conducting, administering, controlling or handling an identified function or duty.

15.    **"Any"** shall also mean "all" and vice versa.

16.    **"And"** shall mean **"or"** and "or" shall mean "and" as necessary to call for the broadest possible answer.

17.    The **"Class"** shall mean the putative Class Set forth in Plaintiff's Complaint, defined as:

> **Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, agents and Defendants' co-conspirators) domiciled within the United States that own or are a licensee of a "distinctive or valuable**

mark" that has been infringed, diluted, cybersquatted, typosquatted, and/or otherwise improperly used by one or more of the Defendants, as part of the Illegal Infringement Scheme alleged herein, during the period January 2002 through the present.

18.    **Address Bar:**  as used in This Notice, means the text box used to enter a website's address in a web browser. On the web browser Internet Explorer it is identified by the word "Address." The address bar allows Internet users to manually type in and specify the web sites they wish to visit on the Internet. It is also known as the location bar in Netscape.

19.    **Click:** as used in This Notice, means: the action of an Internet user in selecting ("clicking on") displayed Internet advertising.

20.    **Click-Through-Rate (CTR):**  as used in This Notice, means:  the ratio of the number of clicks a particular advertisement receives on a website to the total number of viewers of that website.

21.    **Click-Through-Revenue:** as used in This Notice, means:  revenue generated by Clicks on "pay-per-click/cost-per-click" advertisements.

22.    **Cost-Per-Click Advertising (or "Pay-Per-Click"):**  as used in This Notice, means: the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a per-bid, pay per click, basis. The advertiser only pays when its advertisement link is clicked on by an Internet user. Therefore, under a "cost-per-click/pay-per-click" advertising solution, Defendants only generate revenue when an Internet user actually "clicks" on one or more of the advertising links appearing on a domain.

23.    **Cost-Per-Impression:** as used in This Notice, means:  the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a pay per display basis wherein the

advertiser pays the search engine each time its advertisement is displayed on one of the search engine's participating websites.

24.    **Country Code TLDs ("ccTLDs"):** as used in This Notice, means: a top level domain identifying domain names for a given country.  Country codes are designated by a two letter code identifying the country.

25.    **Cybersquatting:** as used in This Notice, means: the practice of registering, licensing using, and monetizing domain names – usually based on prominent Distinctive and Valuable Marks or corporate names – before the legitimate holders of same have had an opportunity to register the domain names for themselves and/or registering Deceptive Domains, and then using said domains for commercial profit and gain.

26.    **Deceptive Domains:** as used in This Notice, means: a parked domain that is used for advertising purposes, and is identical to or confusingly similar to a famous mark.

27.    **Distinctive and Valuable Marks:**  as used in This Notice, means: venerable, valuable, distinctive, famous, registered trademarks, trade names, logos, famous names, and other such distinctive/valuable marks.

28.    **Domain Forwarding:** as used in This Notice, means: redirecting requests to reach one Internet address on the Internet to a different Internet address.

29.    **Domain Kiting:**  as used in This Notice, means: the practice of domain Registrants registering a domain name, returning that domain name within five (5) days to the original domain registrar for a full refund, and then reregistering that same domain name to avoid paying for the registration fee.

30.    **Domain Monetization:**  as used in This Notice, means: the practice of using domain names for commercial gain by generating revenue from the placement of advertisements and marketing on domains.

31.    **Domain Name Parking Aggregator:**  as used in This Notice, means: a domain Parking Company that aggregates numerous domain names from individual domain name registrants and then contracts with Google to license and monetize those domain names.

32.    **Domain Names:**  as used in This Notice, means:  a domain name is made up of two components: a top level domain and a secondary level domain. The top level domain is the suffix of the domain name such as .com, .net. org.  The secondary level domain is the remainder of the address, and can consist of letters, numbers, and some typographical symbols.  Certain symbols, such as ampersands ( & ), cannot be used in a domain name.

33.    **Domain Name System ("DNS"):** as used in This Notice, means: the system used to translate alphanumeric domain names into Internet Protocol numbers.

34.    **Domain Registrars:**  as used in This Notice, means: an organization such as Network Solutions, that has control over the granting of domains within top level domains. Persons that want to own a domain name on the Internet must register a unique domain name with a domain registrar.

35.    **Domain Registration:**  as used in This Notice, means:  the act of registering a domain name.  A domain name can only be registered by one entity and domain names are registered on a first-come first-served basis.

36.    **Domain Tasters:**  as used in This Notice, means: persons involved in the practice of domain tasting.

37.    **Domain Tasting:**    as used in This Notice, means: the practice of domain registrants registering a domain name to assess its profitability by redirecting it through Defendant Google, and returning that domain name within five (5) days to the original domain registrar for a full refund if the domain name proves unprofitable.

38.    **E-Commerce:**    as used in This Notice, means: commerce that is transacted electronically, such as over the Internet.

39.    **Generic TLDs ("gTLDs"):**    as used in This Notice, means: the top-level domain name of an Internet address that gives it a generic identification associated with a domain class, such as .com (commercial), .net (Internet service providers), .org (non-profit organizations), .gov (government), .mil (military), .edu (educational institutions), and .int (international treaties or databases).

40.    **Google Network:**    as used in This Notice means: (1) the advertisers participating in the Google AdWords Program, (2) the Parking Company Defendants, (3)  the third party domain owners and aggregators that participate in Google's AdSense for Domains Network, (4) Google AdSense for Content Partners, and (5) Google AdSense for Search Partners.

41.    **Google Adsense for Domains Program:**    as used in This Notice, means the technology, systems, and processes that Google developed, formulated, controls and uses to operate the displaying of Google advertisements on the domain names in Google Adsense for Domains Network.

42.    **Google Adsense for Domains Network:**    as used in This Notice means the millions of domain names using the Google AdSense for Domains Program which Google controls and manages via direct contracts with domain owners such as Defendant Ireit, and

11

contracts with the Parking Company Defendants (who aggregate domain portfolios, and in some cases, also own large portfolios of domain names).

43.    **HyperText Markup Language ("HTML"):**    as used in This Notice means *"Hypertext Markup Language,"* a language used in the creation of web pages which denotes text as headings, paragraphs, lists, describe the appearance and semantics of a document, and can include embedded scripting language code and affect the behavior of web browsers and other HTML processors. Generally, HTML is used herein in its most general sense and refers to the type of markup language used in creating a web page.

44.    **Internet:**    As used in This Notice, means:    The international network of interconnected computers and computer networks.    It is networking infrastructure or medium that connects computers globally.

45.    **Internet Corporation for Assigned Names and Numbers (ICANN):**    as used in This Notice, means: the internationally organized, non-profit corporation responsible for coordinating the management of the technical elements of the Domain Name System to ensure universal resolvability so that all users of the Internet can find all valid addresses.

46.    **Internet Protocol ("IP") numbers:**    as used in This Notice, means: a unique number consisting of four (4) numbers, each between 0 and 255, separated by periods, used to uniquely identify a computer on the Internet.

47.    **Masked Redirection/Framed Forwarding/Stealth:**    as used in This Notice, means: when an Internet user attempts to access a website by typing the domain into a Web browser, the user will be redirected to a different Web address without authorization or permission and the URL in a Web browser's address bar remains the one that was typed in when

the visitor is being redirected. That way, the actual destination address is concealed from the user who only sees the domain name the user typed in.

48. **Non-Content Advertising:** as used in This Notice, means: an Internet webpage consisting solely of Internet advertising links and lacking any substantive content.

49. **Normal Domain Redirection:** as used in This Notice, means: when an Internet user attempts to access a website by typing the domain into a Web browser, the user will be redirected to a different Web address without authorization or permission.

50. **Parked Domains:** as used in This Notice, means: a registered domain which is being redirected and monetized through the Google AdSense for Domains Program and/or the Parking Company Defendants, and is part of the Google AdSense for Domains Network.

51. **Parking Companies:** as used in This Notice, means: a domain company that aggregates numerous domain names from individual domain name registrants and then contracts with Google to license and monetize those domain names.

52. **Pay-Per-Click (or Cost-Per-Click):** as used in This Notice, means: the electronic online advertising method whereby search engines and automated Internet services, such as Defendant Google, provide online/Internet advertising listings on a per-bid, pay per click, basis.

53. **Search Engine:** as used in This Notice, means: a program that searches web pages for specified keywords and returns a list of web pages where the keywords were found.

54. **Second Level Domains ("SLDs"):** as used in This Notice, means: the portion of the Uniform Resource Locator that identifies the specific and unique administrative owner associated with an Internet Protocol number. For example, in: www.whatis.com, "whatis" is the second level domain.

13

55.    **Semantic Technology:**  as used in This Notice, means: technology that analyzes text input by a user to assess the probable intent of the user.

56.    **Top Level Domains ("TLDs"):**  as used in This Notice, means: the portion of the Uniform Resource Locator that refers to the suffix attached to the domain name.  For example, in www.whatis.com, ".com" is the Top Level Domain.

57.    **Trademark Cyberpiracy:**  as used in This Notice, means: synonymous with Cybersquatting.

58.    **Typosquatting:**  as used in This Notice, means: a form of cybersquatting, aimed at registering domain names similar to prominent trade names, trademarks, or corporate names, in order to capture and lure Internet traffic from misspelled or mistyped trade names, trademarks, or corporate names in the domain.

59.    **Undeveloped Site/Domain:**  as used in This Notice means a site that does not contain any content.

60.    **Uniform Resource Locator ("URL"):**  as used in This Notice, means: the unique address for a file that is accessible on the Internet.  A web site is accessed on the Internet by providing that web site's URL to the Internet browser.

61.    **Web Browser:**  as used in This Notice, means:  the software that allows a user to locate, view, and access websites on the World Wide Web (Ex: Microsoft Internet Explorer)

62.    **Website ("site"):**  as used in This Notice, means:  a location on the World Wide Web.

63.    **Web Traffic:**  as used in This Notice (used synonymously with Internet traffic) to mean: the flow of data and users around the Internet and web.

64.    **World Wide Web ("Web"):**   As used in This Notice, means: a collection of online documents stored on servers around the world, that are connected to the Internet. The web is one of the ways that information is shared over the Internet.

## II.    RULES OF CONSTRUCTION

1.    This notice shall be construed to be consistent with the prior Orders of this Court relating to the conduct of the discovery in this case.

2.    "All" means "any and all," and the word "any" means "any and all."

3.    "Including" means "including, but not limited to."

4.    The connectives "and" and "or shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.    The singular form of any word includes the plural and vice versa.

6.    The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

## III.    RELEVANT TIME PERIOD

Unless otherwise stated, the Relevant Time Period for Your Testimony is January 1, 2002 to the present, including all events or circumstances during such period, even if dated, prepared, generated, used or received prior to such period.

## IV.    TOPICS FOR TESTIMONY SOUGHT

Pursuant to Rule 30(b)(6), you shall designate and produce for deposition one or more of your officers directors or managing agents or other persons to testify on behalf of you as to matters known or reasonably available to you regarding the following topics:

15

1.   Your organizational structure and that of any subsidiaries, affiliates, or successors engaged in the business of internet advertising including but not limited to all subdivisions, affiliates, and departments during the class period;

2.   The identity of your officers, directors, and/or senior executives and their authority, responsibilities, and duties including the membership of all committees of the board of directors during the class period;

3.   The lines of authority within your organization including but not limited to knowledge of the chain of command within the organization and the identity of persons with decision making authority involved in any way in:
   a.   Internet advertising;
   b.   Adsense and Adwords programs;
   c.   "Deceptive Domain Names" that you have owned, controlled, licensed or generated revenue through;
   d.   Your corporate rules, regulations, and procedures concerning the initiation of and procedures followed when conducting internal investigations of employees accused of improper conduct;
   e.   Your corporate rules, regulations, policies and procedures concerning company wide annual budgets, forecasts, and financial projections relating to revenue from domain name advertising;
   f.   Your corporate rules, regulations, policies and procedures concerning your response to any investigation whether civil or criminal or inquiry made by a state or federal government entity including regulatory or administrative agencies;
   g.   Your corporate rules, regulations, and policies concerning document destruction or retention;
   h.   Your corporate rules, regulations, and policies concerning the maintenance of internal financial record showing revenues received and expenses paid on a monthly, quarterly, and annual bases including but not limited to the maintenance of records reflecting the receipt or payment of monies as a result of internet ad revenue received from the ownership licensing or placing of domain names on Google servers; and
   i.   Your corporate rules, regulations, policies and procedures concerning the maintenance of roosters lists of other documents reflecting the attendance of any conference, workshop, forum, symposium, programs, seminar, manual, brochure, and/or meeting sponsored by or attended by any of the defendants including but not limited to industry trade associations and organizations;

4.   Any and all communications, documents, or meetings involving two or more of the defendants including but not limited to meetings regarding the following:
   a.   Revenue sharing between defendants;
   b.   Contractual agreements between defendants; and
   c.   Governmental investigations regarding domain names;

5. Any and all communications, documents or meetings which refer to or relate to:
   a. The payment or receipt of revenue generated by the use of domain names;
   b. The practices relating to disclosure and "transparency" to users payors on the paper click system regarding their placement under domain names or deceptive domain names.

6. Any and all communications or documents which refer or relate to your membership or appointment to any position including but not limited to leadership, committee, or task force in any association in which any of the other defendants is a member;

7. Any and all communications or documents which refer or relate to any meetings, conferences, seminars, studies, or workshops which were initiated by one defendant and attended by another;

8. Any and all financial systems used to facilitate, track, disburse, collect, maintain, report on otherwise record all data related to transactions concerning the revenue generated from Google's pay per click system;

9. Any and all computerized systems used to report information to your shareholders, government agencies, internal corporate management, trade groups, and other persons concerning information including but not limited to financial information, regulatory information, information concerning revenue sharing and revenue generated through domain names;

10. Any and all computerized system used by defendant Google to communicate with any other defendant;

11. Your policies, practices, and procedures regarding the saving, storing, retention, or deletion of electronic data including but not limited to databases, e-mail, insurance databases, e-mail, word processor files, spreadsheets, text files, or other user created data file.

Respectfully submitted,

Robert Foote, Esq. #03214325
Stephen W. Fung #06289522
Foote Meyers Mielke & Flowers, LLC
28 North First St.
Suite 2
Geneva, IL 60134
630-232-6333

17

Kathleen C. Chavez, Esq. #6255735
Chavez Law Firm, P.C.
28 North First St.
Suite 2
Geneva, IL  60134
630-232-4480

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned attorney, deposes and states that she mailed a true and correct copy of FIRST RULE 30(b)(6) NOTICE OF DEPOSITION TO ALL DEFENDANTS to the undersigned, by hand delivery on August 7, 2007.

Michael H. Page
Joseph Gratz
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA  94111
415-391-5400
415-397-7188

Moriah Moran
Jonathan M. Cyrluk
Joseph J. Duffy
Stetler & Duffy, Ltd.
11 S. LaSalle Street, Suite 1200
Chicago, IL  60603
312-338-0200

Kenneth P. Held
Steven Borgman
Vinson & Elkins LLP
First City Tower
1001 Fannin Street
Suite 2500
Houston, Texas 77002-6760

Brett A. August
Bradley L. Cohn
Alexis A. Payne
Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP
311 South Wacker Drive, Suite 5000
Chicago, IL  60606


Jeffrey Singer
Misty Martin
Segal McCambridge Singer & Mahoney, Ltd.
One IBM Plaza, Suite 200,
330 North Wabash
Chicago, Illinois 60611


Steven Atlee
Winston & Strawn, LLP
333 S. Grand Avenue
Los Angeles, California
90071-1543


Ronald Y. Rothstein
Janelle M. Carter
Winston & Strawn, LLP
35 West Wacker Drive
Chicago, Illinois 60601



Kathleen C. Chavez, Esq.