IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Lead Plaintiffs,<br><br>v.<br><br>GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IREIT, INC., and JOHN DOES I-X,<br><br>        Defendants. | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 07 CV 3371<br><br>Honorable Blanche M. Manning<br><br>Magistrate Judge Geraldine Soat Brown |

**MOTION FOR PRELIMINARY INJUNCTION**

Class Plaintiffs, individually and on behalf of the putative class, file this Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**I.    INTRODUCTION**

1.    Defendants' ongoing and intentional use and monetization of Deceptive Domains, and associated misconduct (as set forth more fully in the First Amended Complaint (hereinafter "FAC")), has necessitated this Motion for Preliminary Injunctive Relief. Further, Defendant Google's and Defendant Domain Sponsor's use and monetization of Deceptive Domains that are obscene and pornographic (incorporating Class Plaintiff "Bo Jackson" in the domain name) and, that contain shockingly elicit, offensive, obscene and pornographic words, images, and advertisements require immediate injunctive relief to prevent further irreparable harm to the

1

good reputation of Class Plaintiff Bo Jackson. Likewise, pornographic and obscene Domain Names that contain putative class members' Distinctive and Valuable Marks are equally injurious to their goodwill, reputations, business and personal property. Such conduct must be stopped.

2. Since the filing of the FAC, Class Plaintiffs have both verbally (at the Rule 26 Conference and over the telephone) and in writing, demanded that Defendants cease monetization and use of Deceptive Domains that infringe upon the Class Plaintiffs' and putative class members' Distinctive and Valuable Marks. After repeated and continued ongoing violations, on October 4, 2007 Class Plaintiffs made a final warning to Defendants to once again cease use and monetization of Deceptive Domains or Class Plaintiffs would be forced to seek Court intervention. *See Attached Correspondence Between The Parties, Exhibit "A".*

3. In response to Class Plaintiffs' October 4, 2007 correspondence, Defendants once again made insincere agreements to cease use and monetization of Deceptive Domains that infringe upon the Distinctive and Valuable Marks belonging to Class Plaintiffs[1], apparently doing so in a calculated attempt to prevent Class Representatives from seeking this Court's intervention.

4. However, despite repeated verbal and written assurances, Defendants have not stopped use and monetization of Deceptive Domains, but rather, they continue to brazenly taste, register, use, engage in cybersquatting, cyberpiracy, typosquatting, hijacking of traffic, monetization of Deceptive Domains and other clearly injurious and illegal conduct that damages Class Plaintiffs' and the putative class members' property and reputations. Defendants continue

---

1. Defendants even made false representations to this Court that they had ceased use and monetization of Deceptive Domains infringing upon Class Plaintiffs' Distinctive and Valuable Marks. *See Google Motion to Dismiss, 2, 5.*

said conduct on an outrageous scale, with millions of violations occurring just since the filing of the FAC.

5. Defendant Google and Defendant Domain Sponsor have placed obscene and pornographic advertisements on pornographic/obscene Deceptive Domains containing Class Plaintiff Bo Jackson's good name, including: BoJacksonNude.com; BoJacksonSex.com; BoJacksonPorn.com; xxxbojackson.com; bojacksonxxx.com; and bojacksonsporn.com. *See attached Exhibit "B".*

6. Following are just a few examples of Deceptive Domains used and monetized since November 13, 2007 by the Defendants:

> BlitzRealtyGrup.com
> BoJacksonNude.com
> BoJacksonSex.com
> BoJacksonPorn.com
> buyfishernuts.com
> vulgangolf.com
> vulcingolf.com
> vulcengolf.com
> blitzrealtygrop.com
> bojacksonsporn.com
> vulkangolf.com
> bojacksonxxx.com
> xxxbojackson.com
> bojacksonpics.com

The screenshots associated with these Deceptive Domains are attached hereto as *Exhibit "B".*

7. To demonstrate the sheer egregiousness and deception of Defendants, Class Plaintiffs have chosen to identify Deceptive Domains registered and monetized by Defendants in the very short period since the filing of their Reply Memorandums on November 13, 2007. There are many additional examples that Class Plaintiffs can provide the Court, if desired. Since

November 13, 2007, one or more of the Defendants have registered and monetized the Deceptive Domains shown in *Exhibit "C"*.

    8.    Defendants' outrageous conduct, requiring preliminary injunctive relief, includes, but is not limited to:

    A.  Generating revenue from obscene, elicit, offensive, and pornographic advertisements on Deceptive Domains containing Class Representative Bo Jackson's name, <u>after</u> the filing of the FAC and <u>after</u> the date Defendants represented to this Court (in their briefings in support of their motions to dismiss) that they had ceased monetizing Deceptive Domains that infringe on Class Plaintiffs' Distinctive and Valuable Marks;

    B.  Continued tasting, registration, cybersquatting, typosquatting, kiting, cyberpiracy, monetization and use of Deceptive Domains, and other conduct as alleged in more detail in the FAC, on an ongoing and continuous basis, despite representations to this Court and the Class Plaintiffs that they would and have ceased said conduct; and

    C.  Just since November 13, 2007, the date of Defendants' filing of Reply Memorandums in Support of their Motions to Dismiss, Defendants have registered and monetized **43** Deceptive Domains that blatantly infringe on Class Representatives' Distinctive and Valuable Marks and thousands of Deceptive Domains infringing on the class members' Distinctive and Valuable Marks.

    9.    The nature of the injuries being suffered by Class Plaintiffs and the putative class (loss of goodwill, reputation, customers, confusion, dilution, etc.), in conjunction with the highly obscene/offensive/pornographic advertisements placed on many Deceptive Domains, results in irreparable harm and makes legal remedies inadequate, thus necessitating preliminary injunctive relief.

## II.    DECEPTIVE DOMAINS USED SINCE FILING OF COMPLAINT

    10.   Each of the above Deceptive Domains share the following common characteristics:

    i.  Parked Domains (as defined in ¶83.v. of First Amended Complaint);

      ii. Advertising Only/Non-Content sites;

      iii. Domain names in which Defendants have no legitimate business, legal, property, or commercial right;

      iv. Domain Names that contain all or a significant portion of Class Plaintiffs' business or personal names; and

      v. Each Deceptive Domain generates revenue that is used, distributed and shared by Defendants, as set forth in the Deceptive Domain Scheme alleged in the FAC.

    11.    Five of the above Deceptive Domains contain highly offensive, elicit, obscene and pornographic language, images, and advertisements both in the Domain Name itself, and on the associated website: Bojacksonsex.com, Bojacksonporn.com, Bojacksonnude.com, NudeBojackson, and BoJacksonNaked.com.

### III.  INJURY TO THE CLASS REPRESENTATIVES

    12.    Each Plaintiff owns Distinctive and Valuable Marks that they are entitled to have protected, as plead in the FAC. (FAC ¶¶22, 27, 31, 36, 66.)

    13.    Defendants are, and have been, aware that Class Plaintiffs are the rightful owners of the Distinctive and Valuable Marks.

    14.    Defendants knowingly disregard Class Plaintiffs' rights and interests.

    15.    Class Plaintiffs are each suffering irreparable harm as a direct and proximate result of Defendants' use and monetization of Deceptive Domains that infringe their Distinctive and Valuable Marks, cyberpiracy, cybersquatting, typosquatting, tasting, kiting, hijacking/redirecting internet traffic away from Class Plaintiffs, and other such illegal conduct as set forth in more detail in the FAC.

    16.    Class Plaintiff Bo Jackson has and is suffering irreparable harm to his reputation, good name, and the goodwill associated with his name by Defendants' monetization of

offensive/pornographic Deceptive Domains (containing his name) with elicit, offensive, obscene and pornographic advertisements, including but not limited to: Teen Pornography, Gay Pornography, Ethnic Pornography (Asian, Black, etc.), "Big Tits," "XXX," "Cheap Porn," "Eva Longoria Nude." *See Exhibit "B."*

17. Class Plaintiff Bo Jackson does not condone, authorize, or support in any way the sexual exploitation of teens, exploitation of famous people such as "Eva Longoria," exploitation of and promotion of ethnic and racial pornography/obscenities, exploitation of female or male sexuality and degradation of humans through any form of pornography, elicit, and/or obscene material.

18. Class Plaintiff Bo Jackson did not grant any of the Defendants any rights, licenses, permission, or otherwise support, condone or accept the association of his good name with the highly offensive, obscene, pornographic and elicit material and advertisements on the Deceptive Domains containing the "Bo Jackson" name.

19. Class Plaintiff Bo Jackson has not been compensated or received any income from the registration, use, and /or monetization of said Deceptive Domains.

20. There is no adequate remedy at law for the injury to reputation, goodwill, distress and humiliation that Defendant Google and Defendant Domain Sponsor are currently causing Plaintiff Bo Jackson by associating his good name with shocking and offensive obscene material.

21. All Defendants routinely generate money from use of elicit/obscene/pornographic Deceptive Domains and the placement of obscene and pornographic internet advertisements on Deceptive Domains without the consent or permission of the rightful owner.

IV. **INJURY TO THE PUTATIVE CLASS**

22. Like Class Representatives, each putative class member is and continues to suffer

irreparable harm as a direct and proximate result of Defendants' use and monetization of Deceptive Domains that infringe upon their Distinctive and Valuable Marks, cyberpiracy, cybersquatting, typosquatting, kiting, tasting, hijacking/redirecting internet traffic away from Class Plaintiffs, and other illegal conduct as set forth in more detail in the FAC.

23. Injury and damage to goodwill, reputation, mark value, lost business, diversion of internet traffic and other such injuries can be difficult to measure, and therefore result in irreparable harm.

24. Defendants' ongoing illegal conduct, even since the filing of the FAC, is egregious and implicates the rights and property of hundreds of thousands of putative class members. Just a few examples follow (screenshots of said Deceptive Domains are provided in *Exhibit "D"*):

| Deceptive Domain | Defendants | Category of Mark | Class Member |
|---|---|---|---|
| BrittneySpears.info | SEDO/GOOGLE | Famous Person | Brittney Spears |
| JustinTimberlake.info | SEDO/GOOGLE | Famous Person | Justin Timberlake |
| expressfshion.com | GOOGLE | Retail Store | Express Fashion |
| applecomputers.com | GOOGLE | Software/PC Manufacturing | Apple |
| sonie.com | SEDO/GOOGLE | Electronics | Sony |
| panasoni.com | GOOGLE | Electronics | Panasonic |
| Guci.com | GOOGLE | Retail Store | Gucci |
| tmobilde.de | SEDO/GOOGLE | Wireless Provider | Tmobile |
| Wii-fitness.co.uk | SEDO/GOOGLE | Video Game Systems | Nintendo |
| Tompetty.info | SEDO/GOOGLE | Famous Person | Tom Petty |
| samscloub.com | OVERSEE | Retail Store | Sam's Club |
| tmewarnercable.com | OVERSEE | Cable Network | Time Warner |
| myspaced.com | IREIT | Social Network | Myspace |
| 2meninatruck.com | DOTSTER | Moving Company | 2 men and a truck |
| diesny.com | DOMAIN SPONSOR | Entertainment | Disney |

25. Even at this early pre-discovery stage in this litigation, there are literally thousands of additional Deceptive Domains that Class Plaintiffs can provide the Court, if the Court so desires, that all share the following common characteristics:

7

    i. Parked Domains;

    ii. Advertising Only/Non-Content sites;

    iii. Domain names in which Defendants have no legitimate business, legal, property, or commercial right;

    iv. Domain Names that contain all or a significant portion of Class Plaintiffs' business or personal names; and

    v. Each Deceptive Domain generates revenue that is used, distributed and shared by Defendants, as set forth in the Deceptive Domain Scheme alleged in the FAC.

## V. **LEGAL STANDARD**

26.    Class Plaintiffs seek a preliminary injunction against all Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 65. A party seeking a preliminary injunction must demonstrate that it has some likelihood of success on the merits, that there is no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. *Am. Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803 (7th Cir. 2002); *see also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Seventh Circuit set forth the applicable standard requiring moving parties: "need only demonstrate at the preliminary injunction stage that it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." *Id.*

27.    Preliminary injunctions are appropriate when serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003).

28.    Preliminary injunctions are often granted in Lanham Act cases involving trademark violations due to the inadequacy of legal remedy for such hard to quantify damages

(loss of goodwill, diversion of business, reputation, etc.). *See Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992); *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1084 (7th Cir. 1988); *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891 (7th Cir. 2001) citing *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1045 (9th Cir. 1999) (where the Court explained "[u]sing another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store" (*Brookfield,* 174 F.3d, at 1064)).

29.     Further, the necessity of preliminary injunctive relief is well-recognized in cybersquatting cases under the Lanham Act, 15 U.S.C. §1115(d). *See Shields v. Zuccarini,* 89 F. Supp. 2d 634, 54 U.S.P.Q.2d (BNA) 1166, 1172 (E.D. Pa. 2000), subs proceedings 2000 WL 1056400 and 2000 WL 1053884 (E.D. Pa. 2000), both aff'd 254 F.3d 476, 59 U.S.P.Q.2d 1207, 1213 (3rd Cir. 2001); *1-800 Contacts, Inc. v. WhenU.com,* 309 F. Supp. 2d 467, 69 U.S.P.Q.2d (BNA) 1337, 195 A.L.R. Fed. 641 (S.D. N.Y. 2003); *Northern Light Technology v. Northern Lights Club,* 97 F. Supp. 2d 96 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001), cert. denied, 533 U.S. 911, 121 S.Ct. 2263, 150 L. Ed. 2d 247 (2001); *Porsche Cars North America, Inc. v. Spencer,* 55 U.S.P.Q.2d (BNA) 1026, 1032, 2000 WL 641209 (E.D. Cal. 2000); *Advance Magazine Publishers Inc. v. Vogue Intern.,* 123 F. Supp. 2d 790, 801 (D. N.J. 2000); *Electronics Boutique Holdings Corp. v. Zuccarini,* 56 U.S.P.Q.2d (BNA) 1705, 2000 WL 1622760 (E.D. Pa. 2000) (where the court explained that: "It is impossible to determine the number of potential and existing customers diverted from EB's website by Mr. Zuccarini's domain misspellings. A user-friendly website is important to EB's online success. There must be as few steps, or clicks, as possible between initially accessing EB's website and the completion of the transaction, as each computer click represents a significant amount of time. Those who get lost in the advertisements

may abandon their intention to purchase from EB. Others simply may never find EB's website. These customers may not only be discouraged from shopping at EB online, but may also be discouraged from shopping at EB's outlets in person as well. Furthermore, it is impossible to calculate the loss of reputation and goodwill caused by Mr. Zuccarini's domain misspellings. …"); *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 203 (6th Cir. 2004), citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2nd Cir. 2000).

30. Each Class Plaintiff, as well as the putative class members, will suffer irreparable injury if this Court does not require Defendants to immediately cease registration, tasting, kiting, use and monetization of the Deceptive Domains. *See Larson v. Galliher*, 2007 WL 81930 (D. Nev. 2007).

31. **REASONABLE SUCCESS ON THE MERITS:**

A. Defendants have registered and monetized Deceptive Domains that are identical to, or confusingly similar to, Class Plaintiffs' Distinctive and Valuable Marks, without Class Plaintiffs' consent. See 15 U.S.C. §1114(a). This Court can make a simple comparison of the name of the Deceptive Domain and Class Plaintiffs' trademarks/distinctive/valuable marks rather than an assessment of the context in which each is used or the content of the offending website. *HER, Inc. v. RE/MAX First Choice, LLC* 468 F. Supp. 2d 964 (S.D. Ohio 2007), citing *Northern Light Technology v. Northern Lights Club*, 97 F. Supp. 2d 96, 117 (D. Mass. 2000);

B. Defendants violate 15 U.S.C. §1125(d), by their actions in (1) registering, trafficking in, or using Deceptive Domains that are identical to, or confusingly similar to, distinctive and valuable marks owned by Class Plaintiffs and/or the class; and (2) committing the acts with the bad faith intent to profit from Class Plaintiff's marks. See *Rosati's Franchise Sys., Inc. v. Rosati*, 2006 WL 163145, at *5 (N.D. Ill. 2006) (citing 15 U.S.C. §1125(d)(1)). Each of

the Deceptive Domains alleged herein are:

      i. Parked Domains;

      ii. Advertising Only/Non-Content sites;

      iii. Domain names in which Defendants have no legitimate business, legal, property, or commercial right;

      iv. Domain Names that contain all or a significant portion of Class Plaintiffs' business or personal names; and

      v. Each Deceptive Domain generates revenue that is used, distributed and shared by Defendants, as set forth in the Deceptive Domain Scheme alleged in the FAC.

      C.    Defendants' use of the Deceptive Domains was done with the bad faith intent to profit in violation of 15 U.S.C. §1125(d)(1)(B)(i), in so much as Defendants had no prior use of the domain names for a bona fide offering of goods or services. See *Victoria's Secret Stores v. Artco Equipment Co., Inc.*, 194 F. Supp. 2d 704, 722 (S.D. Ohio 2002), quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1675 (E.D. Cal. 1989) ("a presumption of bad faith arises in a situation such as this where 'the senior user's trademark is famous in the marketplace and where the junior user was aware of the trademark and of its fame.... In these cases, it is inferrable that the junior user adopted the mark for the purpose of profiting from the aura of goodwill surrounding the senior user's mark.'");

      D.    Additionally, Defendants intend to divert consumers from Class Plaintiffs' and the Putative Class Members' online location to a site accessible under the Deceptive Domain that could harm Class Plaintiffs' and the Putative Class Members' goodwill, reputation, commercial gain, create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site, and otherwise damage Class Plaintiffs' and the Putative Class Members' business and property;

E. Defendants routinely offer to transfer, sell, or otherwise assign Deceptive Domains to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

F. Defendants routinely provide material and misleading false contact information when applying for registration of Deceptive Domains, and/or intentionally fail to maintain accurate contact information;

G. Defendants engage in a widespread scheme that involves the registration, tasting, acquisition, monetization, and use of multiple domain names which the Defendants know are identical or confusingly similar to marks of others that are distinctive and valuable for the express purpose of generating advertising revenue from diverted traffic and confusion;

H. Defendants otherwise act in a manner that demonstrates bad faith intent to commercially profit from the unauthorized use of Deceptive Domains in violation of 15 U.S.C. §1125(d)(1)(B)(i);

I. Defendants' actions in generating, collecting, transacting in, sharing, and distributing the revenue from their unlawful conduct establishes a RICO violation;

J. As alleged in detail in the FAC and the Motions to Dismiss, Defendants' use of the internet, electronic transmission, common electronic programs, mails and wire are among the several predicate acts that are undisputed and will form the foundation for RICO liability;

K. The FAC contains abundant factual allegations supporting and demonstrating a high likelihood of success on each of the alleged legal claims; and

L. The attached screenshots and specific identification of Deceptive Domains (including Defendants' concerted and intentional unauthorized use and monetization of those

Deceptive Domains) is sufficient to establish liability under each Count of the Complaint.

32.  **NO ADEQUATE REMEDY AT LAW EXISTS**: The very nature of Class Plaintiffs' and the putative class members' injuries/damages makes it difficult to assess damages associated with loss of goodwill, reputation, prospective business, diverted internet traffic, etc., and, therefore, such damages are considered to have no adequate remedy at law, and to be irreparable (often involving trademark/Lanham Act claims).  *See, e.g., Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002); *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994). Courts in this Circuit have held likewise for cybersquatting claims. *International Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672 (N.D. Ill. 2006). It is obvious that there is no adequate remedy at law for Class Plaintiff Bo Jackson's unauthorized association with lewd, obscene, offensive and pornographic words, images, and advertisements. Without question, the balance of hardships tips in favor of Class Plaintiffs and the Putative Class because the preliminary injunction will essentially merely place the infringing Deceptive Domains on "hold" or "block" the use and monetization of said domains pending trial (at most causing Defendants to lose some advertising revenue that they are not entitled to anyway), whereas failure to issue the injunction will cause Class Plaintiffs and the Class to suffer and incur continued lost goodwill, dilution, embarrassment, loss of reputation, loss of business, and related property, personal and business damage.

33.  **THE INJUNCTION WILL NOT HARM THE PUBLIC INTEREST:** The public interest will be served by requiring Defendants to comply with the law and cease and desist making money from the illegal and unauthorized use of Class Plaintiffs' and the putative class members' property. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.,* 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999). Notably, injunction was expressly contemplated by Congress as a remedy for trademark infringement. *See* 15 U.S.C. §1125(c)(1); *Pet Silk, Inc. v. Jackson,* 481 F. Supp. 2d 824, 834 (S.D. Tex. 2007).

34. Class Plaintiffs understand that this litigation is in its early pre-discovery stages. However, the damage and injuries being sustained by Class Plaintiffs and the putative class members are irreparable in nature. Unfortunately, Defendants refuse to voluntarily cease said conduct and have chosen blatant disregard for the law, in order to reap the financial benefits of their misconduct.

## VI. **CONCLUSION**

35. Defendants are responsible for running their business operations legally, in a manner that complies with federal and state law. Defendants have a duty to design and maintain their programs, systems and operations in a fashion that ensures compliance with the law, respect for the property rights of other citizens, and avoids the taking and use of rights/property that does not belong to Defendants. Like any other business, the responsibility to act legally lies with Defendants. If they cannot run their businesses without myriad ongoing violations, then the internet advertising and monetization aspect of their business must cease. If Defendants are not willing to voluntarily implement the available and appropriate blocking and filtering technologies, or if they posit that such technologies cannot be reasonably employed in their respective current business models/operations, than said operations must end.

## VII. **PRAYER FOR RELIEF**

WHEREAS, Defendants refuse to cease and desist their illegal conduct detailed herein and in the FAC, without Court intervention, Class Plaintiffs respectfully request that this Court

enter a Preliminary Injunction against all Defendants, granting relief as follows:

1. All Defendants ordered to immediately cease and desist tasting, kiting, registration, monetization, sale, trafficking in, cybersquatting, typosquatting, cyberpiracy, and/or other use of Deceptive Domains that infringe on the Class Plaintiffs' and the Putative Class Members' Distinctive and Valuable Marks;

2. Defendant Google ordered to provide the Court with the domain name and associated reports (traffic statistics, revenue statistics, etc.) of every domain name that has displayed Google controlled advertising, participated in its AdSense for Domains program, been used to generate revenue from advertisements, and/or has otherwise been monetized by Google;

3. All other Defendants ordered to provide the Court with the domain name and associated reports (traffic statistics, revenue statistics, etc.) of every domain name under their ownership, license, or control that has displayed Google controlled advertisements, participated in the Google AdSense for Domains program, been used to generate revenue from internet advertisements, and/or has otherwise been monetized by one or more of the Defendants;

4. All Defendants ordered to immediately implement Court-approved, appropriate blocking and filtering technology to prevent use and monetization of Deceptive Domains and the other illegal conduct alleged in the FAC;

5. If one or more of the Defendants cannot implement appropriate blocking and filtering technologies, those Defendants shall be enjoined from all internet advertising and other monetization of any domains until an appropriate blocking and filtering system can be implemented and approved by the Court;

6. Order a constructive trust over all revenue generated by any of the Defendants from the use and/or monetization of Deceptive Domains;

7. Sanction Defendants for their blatant misrepresentations to this Court that they have stopped the registration, use, and monetization of Deceptive Domains that infringe upon Class Plaintiffs;

8. Award reasonable attorneys' fees and costs associated with the filing of this Motion; and

9. Award any and all such other relief as this Court deems just and appropriate.

FOOTE, MEYERS, MIELKE & FLOWERS, LLC

By: /s/ Robert M. Foote
One of Their Attorneys

Robert M. Foote, Esq. #03214325
Stephen W. Fung, Esq. #06289522
Mark A. Bulgarelli, Esq. #06284703
Foote, Meyers, Mielke & Flowers, LLC
28 North First St.
Suite 2
Geneva, IL 60134
630-232-6333

Kathleen C. Chavez, Esq. #06255735
Chavez Law Firm, P.C.
28 North First St.
Suite 2
Geneva, IL  60134
630-232-4480

William J. Harte, Esq.
Dana Pesha, Esq.
Joan M. Mannix, Esq.
William J. Harte, Ltd.
111 West Washington Street
Suite 1100
Chicago, IL 60602
312-726-5015

Benjamin G. Edelman, Esq.
Law Office of Benjamin Edelman
27a Linnaean Street
Cambridge, MA 02138
617-359-3360

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Lead Plaintiffs,<br><br>v.<br><br>GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IREIT, INC., and JOHN DOES I-X,<br><br>        Defendants. | Civil Action No. 07 CV 3371<br><br>Honorable Blanche M. Manning<br><br>Magistrate Judge Geraldine Soat Brown |

## CERTIFICATE OF SERVICE

      I hereby certify that on January 3, 2008, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Brett A. August
baugust@pattishall.com

Michael H. Page
mhp@kvn.com

Mariah Moran
mmoran@stetleranduffy.com
edocket@stetleranduffy.com

Janelle M. Carter
jcarter@winston.com
ECF_CH@winston.com

Kenneth P. Held
kheld@velaw.com

Steven Borgman
sborgman@velaw.com
jwarren@velaw.com
steveborgman@gmail.com
yshumaker@velaw.com

Bradley L. Cohn
bcohn@pattishall.com

| | |
|---|---|
| Alison Conlon<br>conlon@wildmanharrold.com<br>ecf-filings@wildmanharrold.com<br>hardt@wildmanharrold.com | Jonathan M. Cyrluk<br>cyrluk@stetlerandduffy.com<br>edocket@stetlerandduffy.com |
| Joseph Gratz<br>jgratz@kvn.com | Misty Martin<br>mmartin@smsm.com |
| Alexis Payne<br>aep@pattishall.com | Ronald Rothstein<br>rrothsstein@winston.com<br>ECF_CH@winston.com |
| Jeffrey Singer<br>jsinger@smsm.com | mconroy@winston.com |
| Anastasios Foukas<br>afoukas@smsm.com | Scott R. Wiehle<br>swiehle@velaw.com |
| Michael R. Dockterman<br>dockterman@wildmanharrold.com<br>ecf-filings@wildmanharrold.com<br>eckertm@wildmanharrold.com | Joseph Duffy<br>jduffy@stetlerandduffy.com<br>bdorgan@stetlerandduffy.com<br>edocket@stetlerandduffy.com |
| William J. Harte<br>wharte@williamharteltd.com<br>mccarey@williamharteltd.com | Dana Marie Pesha<br>dpesha@williamharteltd.com<br>mccarey@williamharteltd.com |
| Scott Ryan Wiehle<br>swiehle@velaw.com | Aaron Van Oort<br>mavanoort@faegre.com |

    I certify that I have served the foregoing document by emailing a copy to the following individuals:

| | |
|---|---|
| Steven Atlee<br>SAtlee@winston.com | Vincent V. Carissimi<br>carissimiv@pepperlaw.com |
| Joanna J. Cline<br>clinej@pepperlaw.com | Robert J. Hickok<br>hickokr@pepperlaw.com |

                                                s/Robert M. Foote