**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VULCAN GOLF, LLC, JOHN B. | : | |
| SANFILIPPO & SON, INC., | : | |
| BLITZ REALTY GROUP, INC., | : | |
| and VINCENT E. "BO" JACKSON, | : | |
| Individually and on Behalf of All | : | |
| Others Similarly Situated, | : | |
| | | Case No. 07CV3371 |
| Plaintiffs, | | |
| | : | Judge Manning |
| v. | : | |
| | : | Magistrate Judge Brown |
| GOOGLE INC., OVERSEE.NET, | : | |
| SEDO LLC, DOTSTER, INC., AKA | : | |
| REVENUEDIRECT.COM, | : | |
| INTERNET REIT, INC. d/b/a IREIT, INC., | : | |
| and JOHN DOES I-X, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' CONSOLIDATED MOTION TO**
**DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

May 2, 2008

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

PROCEDURAL BACKGROUND .......................................................................................... 1

FACTS ALLEGED BY PLAINTIFFS ................................................................................... 2

LEGAL STANDARDS ........................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.     PLAINTIFFS STILL FAIL TO STATE ANY CLAIM UNDER
RICO (COUNTS I, II, AND III). ............................................................................... 5

    A.     The Court Should Dismiss Count II (18 U.S.C. § 1962(c))
Because the TAC Does Not Allege that Defendants Participated
in the Conduct of an Enterprise Through a Pattern of
Racketeering Activity .............................................................................. 5

        1.     Plaintiffs' Amended Allegations Still Do Not Allege an
Enterprise. ................................................................................... 6

            (a)     Plaintiffs' Allegations of Structure Are Insufficient. ...................... 8

            (b)     Plaintiffs' Allegations Confirm that Each Defendant
Acts for Its Own Purposes, Not for a Common
Purpose. ......................................................................................... 9

            (c)     Plaintiffs' Allegations of Ordinary Business
Relationships Do Not Suffice To Plead a RICO
Enterprise. ................................................................................... 11

        2.     Plaintiffs Still Fail To Allege that Each Defendant Participates
in the Direction of the Alleged Enterprise. ................................ 13

        3.     Plaintiffs Fail To Plead a "Pattern of Racketeering Activity." ................. 15

            (a)     Plaintiffs Still Fail To Plead the Alleged Predicate
Acts with the Requisite Particularity. ............................................ 15

            (b)     Setting Aside the Issue of Particularity, Plaintiffs'
Allegations as to Predicate Acts Fail as a Matter of Law.............. 17

(i)     Plaintiffs' New Allegations of Predicate Acts
        Are Insufficient as a Matter of Law. ................................ 17

(ii)    Plaintiffs' Mail and Wire Fraud Allegations Are
        Insufficient as a Matter of Law. ....................................... 18

        (A)     Infringement Allegations Do Not
                Constitute a "Scheme to Defraud." ...................... 18

        (B)     The Object of the Alleged Fraud Is
                Not Money or Property in the Hands
                of the Alleged Victim. .......................................... 20

4.      Plaintiffs Fail To Allege the Reliance and Proximate Cause
        Requirements of RICO. ............................................................ 21

        (a)     Plaintiffs Do Not Allege Reliance on the Purported
                Fraud. ............................................................................ 21

        (b)     Defendants' Alleged Misconduct Is Not the Proximate
                Cause of Plaintiffs' Claimed Injuries. ............................ 22

B.      Plaintiffs Fail To State a Claim Under 18 U.S.C. § 1962(a). ............................... 24

        1.      Plaintiffs' § 1962(a) Claim Fails Because They Have Failed
                To Allege the Requisite Elements of a RICO Enterprise. ......................... 24

        2.      Plaintiffs' § 1962(a) Claim Fails Because They Do Not
                Plead That Racketeering Income Was Used or Invested in
                the Establishment or Operation of an Enterprise. ..................................... 25

        3.      Plaintiffs Have Failed To Allege an Injury Directly Caused
                by Defendants' Use or Investment of Racketeering Income
                and Distinct from the Alleged Predicate Racketeering Acts. .................... 25

        4.      Plaintiffs' Admissions that the RICO Predicate Acts Have
                Caused Their Injuries Foreclose Any Viable Claim of
                § 1962(a) Injury. ...................................................................................... 27

C.      Plaintiffs Fail To State a RICO Conspiracy Claim Under
        18 U.S.C. § 1962(d) ................................................................................................ 28

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT
        AND CIVIL CONSPIRACY (COUNTS XII AND XIII) ................................................. 30

III.    THE COURT SHOULD ONCE AGAIN DISMISS THE SECTION 32
CLAIM AS TO JACKSON AND THE DILUTION CLAIM AS TO
BLITZ ............................................................................................................. 30

IV.    PLAINTIFFS' CLAIM FOR INTERFERENCE WITH PROSPECTIVE
ECONOMIC ADVANTAGE (COUNT XI) SHOULD BE DISMISSED
BECAUSE IT FAILS TO ALLEGE KNOWLEDGE OF THE
ALLEGEDLY EXPECTED BUSINESS RELATIONSHIP ............................................. 31

CONCLUSION ............................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Allen v. New World Coffee, Inc.*,
2002 U.S. Dist. LEXIS 4624 (S.D.N.Y. Mar. 19, 2002) ............................................................ 26

*Allen Brothers, Inc. v. Byrdak*,
1999 U.S. Dist. LEXIS 11614 (N.D. Ill. July 26, 1999) ............................................................ 18

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ............................................................ 23

*Appraisers Coalition v. Appraisal Institute*,
1993 U.S. Dist. LEXIS 11770 (N.D. Ill. Aug. 18, 1993) ............................................................ 17

*Associated Underwriters of America Agency, Inc. v. McCarthy*,
826 N.E.2d 1160 (Ill. App. Ct. 2005) ............................................................ 31

*Association Benefit Services, Inc. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) ............................................................ 30

*Bachman v. Bear, Stearns & Co., Inc.*,
178 F.3d 930 (7th Cir. 1999) ............................................................ 9

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) ............................................................ 9-11

*Bank of China v. NBM LLC*,
359 F.3d 171 (2d Cir. 2004) ............................................................ 21-22

*Beck v. Prupis*,
529 U.S. 494 (2000) ............................................................ 5

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ............................................................ 4, 7-8

*Blue Cross & Blue Shield of Alabama v. Caremark, Inc.*,
1999 U.S. Dist. LEXIS 16230 (N.D. Ill. Sept. 30, 1999) ............................................................ 11, 12

*Borsellino v. Goldman Sachs Group, Inc.*,
477 F.3d 502 (7th Cir. 2007) ............................................................ 4

*Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1991) ........................................................................................ 26

*Builders Bank v. First Bank & Trust Co. of Illinois*,
2004 U.S. Dist. LEXIS 12133 (N.D. Ill. June 28, 2004) .......................................... 16

*Chrichton v. Golden Rule Insurance Co.*,
2006 U.S. Dist. LEXIS 56235 (N.D. Ill. Aug. 11, 2006) .......................................... 14

*Cleveland v. United States*,
531 U.S. 12 (2000) ............................................................................................ 18, 20-21

*Cobbs v. Sheahan*,
385 F. Supp. 2d 731 (N.D. Ill. 2005) ................................................................ 26, 28

*Corley v. Rosewood Care Center, Inc. of Peoria*,
152 F. Supp. 2d 1099 (C.D. Ill. 2001), *aff'd*, 388 F.3d 990 (7th Cir. 2004) .......................... 18, 21

*Dynabest, Inc. v. Yao*,
760 F. Supp. 704 (N.D. Ill. 1991) ................................................................................ 31

*El-Issa v. Compaq Computer Corp.*,
1997 U.S. Dist. LEXIS 20530 (N.D. Ill. Dec. 18, 1997) .......................................... 13

*EQ Financial, Inc. v. Personal Finance Co.*,
421 F. Supp. 2d 1138 (N.D. Ill. 2006) ........................................................................ 16

*Evercrete Corp. v. H-Cap Limited*,
429 F. Supp. 2d 612 (S.D.N.Y. 2006) .......................................................................... 19

*Gamboa v. Velez*,
457 F.3d 703 (7th Cir. 2006) .......................................................................................... 5

*Gavin v. AT&T Corp.*,
2008 U.S. Dist. LEXIS 10998 (N.D. Ill. Feb. 12, 2008) ............................................ 4

*Goren v. New Vision International, Inc.*,
156 F.3d 721 (7th Cir. 1998) .............................................................................. 15, 28-29

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*,
341 F.3d 1292 (11th Cir. 2003), *cert. denied*, 541 U.S. 1037 (2004) .......................... 21

*In re Managed Care Litigation*,
135 F. Supp. 2d 1253 (S.D. Fla. 2001) ........................................................................ 11

*Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*,
61 F.3d 1250 (7th Cir. 1995).................................................................22-23

*James Cape & Sons Co. v. PCC Construction Co.*,
453 F.3d 396 (7th Cir. 2006)...............................................................23-24

*Jennings v. Emry*,
910 F.2d 1434 (7th Cir. 1990)............................................................ 6, 8, 9

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (7th Cir. 1994)................................................................. 15

*Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*,
98 F. Supp. 2d 480 (S.D.N.Y. 2000)....................................................... 19

*Limestone Development Corp. v. Village of Lemont*,
2008 U.S. App. LEXIS 6891 (7th Cir. Apr. 1, 2008) ................................ 9

*Lugosch v. Congel*,
443 F. Supp. 2d 254 (N.D.N.Y. 2006) .................................................... 25

*Matrix IV, Inc. v. American National Bank & Trust Co.*,
2007 U.S. Dist. LEXIS 18567 (N.D. Ill. Mar. 15, 2007) .......................... 25

*Merryman Excavation, Inc. v. International Union of Operating Engineers*,
2007 U.S. Dist. LEXIS 30339 (N.D. Ill. Apr. 25, 2007) .......................... 28

*Midwest Grinding Company v. Spitz*,
976 F.2d 1016 (7th Cir. 1992)............................................................... 15

*Nagel v. ADM Investor Services, Inc.*,
995 F. Supp. 837 (N.D. Ill. 1998) ........................................................... 4

*Nance v. City of Elgin*,
2008 U.S. Dist. LEXIS 32043 (N.D. Ill. Apr. 18, 2008) ............................ 4

*Orrison v. Balcor Co.*,
1991 U.S. Dist. LEXIS 17930 (N.D. Ill. Dec. 5, 1991) ........................28-29

*Pasquantino v. United States*,
544 U.S. 349 (2005)........................................................................ 18, 20

*Pyke v. Laughing*,
1998 U.S. Dist. LEXIS 884 (N.D.N.Y. Jan. 22, 1998) ......................... 25, 28

*R.E. Davis Chemical Corp. v. NALCO Chemical Company*,
757 F. Supp. 1499 (N.D. Ill. 1990) ....................................................... 15

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ...................................................................... 13-14

*Richmond v. Nationwide Cassel L.P.*,
52 F.3d 640 (7th Cir. 1995) .............................................................. 7

*Schiffels v. Kemper Financial Services, Inc.*,
978 F.2d 344 (7th Cir. 1992) ............................................................ 29

*Segreti v. Lome*,
747 F. Supp. 484 (N.D. Ill. 1990) ....................................................... 9

*Shapo v. O'Shaughnessy*,
246 F. Supp. 2d 935 (N.D. Ill. 2002) .................................................. 26

*Slaney v. The International Amateur Athletic Federation*,
244 F.3d 580 (7th Cir. 2001) ................................................ 5, 13, 15, 28

*Smith v. Jackson*,
84 F.3d 1213 (9th Cir. 1996) .......................................................... 18-19

*Stachon v. United Consumers Club, Inc.*,
1999 U.S. Dist. LEXIS 16484 (N.D. Ill. Oct. 20, 1999),
*aff'd*, 229 F.3d 673 (7th Cir. 2000) .................................................. 6-12

*Starfish Investment Corp. v. Hansen*,
370 F. Supp. 2d 759 (N.D. Ill. 2005) ............................................... 24-26

*Stewart v. Wachowski*,
2004 U.S. Dist. LEXIS 26608 (C.D. Cal. Sept. 27, 2004) .............................. 18

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......................................................... 28

*Titan International v. Becker*,
189 F. Supp. 2d 817 (C.D. Ill. 2001) .................................................. 29

*United States v. All Meat & Poultry Products Stored at Lagrou Cold Storage*,
470 F. Supp. 2d 823 (N.D. Ill. 2007) .................................................. 30

*United States v. Korando*,
29 F.3d 1114 (7th Cir. 1994) ............................................................ 6

*United States v. Masters*,
924 F.2d 1362 (7th Cir. 1991)...................................................................... 6, 8

*United States v. Neapolitan*,
791 F.2d 489 (7th Cir. 1986)............................................................................ 28

*United States Media Corp., Inc. v. Edde Entertainment, Inc.*,
1996 U.S. Dist. LEXIS 13389 (S.D.N.Y. Sept. 10, 1996).............................. 19

*Vega v. Contract Cleaning Maintenance, Inc.*,
2004 U.S. Dist. LEXIS 20949 (N.D. Ill. Oct. 18, 2004).............................. 27

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*,
20 F.3d 771 (7th Cir. 1994)........................................................................ 16, 26

*Vulcan Golf, LLC v. Google, Inc.*,
2008 U.S. Dist. LEXIS 22155 (N.D. Ill. Mar. 20, 2008).......................Passim

*Williams v. Ford Motor Company*,
11 F. Supp. 2d 983 (N.D. Ill. 1998) .................................................................. 7

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997)............................................................................ 15

## Statutes and Other Authorities

15 U.S.C. § 1114(1) .................................................................................... 4, 30

18 U.S.C. § 1952 ............................................................................................. 18

18 U.S.C. § 1952(a) ........................................................................................ 18

18 U.S.C. § 1952(b) ........................................................................................ 18

18 U.S.C. § 1957 ............................................................................................. 17

18 U.S.C. § 1961(1) .................................................................................. 17, 20

18 U.S.C. § 1961(4) .......................................................................................... 6

18 U.S.C. § 1962(a) ................................................................................Passim

18 U.S.C. § 1962(b) ........................................................................................ 27

18 U.S.C. § 1962(c) ................................................................................Passim

18 U.S.C. § 1962(d) ......................................................................................... Passim

18 U.S.C. § 1964(c) ............................................................................................... 5

18 U.S.C. 2320 ..................................................................................................... 17

18 U.S.C.S. § 2 ..................................................................................................... 24

Rule 9, Federal Rules of Civil Procedure .......................................................... 4

Rule 9(b), Federal Rules of Civil Procedure ............................................ 15-17, 30

Rule 12(b)(6), Federal Rules of Civil Procedure ..................................... 4, 17

Pursuant to this Court's Order of April 14, 2008, Defendants submit this memorandum in support of their Consolidated Motion to Dismiss the Third Amended Class Action Complaint.

## INTRODUCTION

With their Third Amended Complaint, Plaintiffs attempt to resuscitate the RICO, unjust enrichment, and civil conspiracy claims that this Court dismissed. The only difference between Plaintiffs' new allegations and those the Court rejected, however, is the use of conclusory allegations comprised of boilerplate buzzwords, as well as new paragraphs full of irrelevant detail about the business of internet advertising.

Although Plaintiffs' amendments manage the impressive feat of causing the Third Amended Complaint to exceed Plaintiffs' prior mark of 91 pages, Plaintiffs' changes fail to revive their claims. Plaintiffs' continued misguided efforts to spin cybersquatting and trademark allegations into a worldwide RICO conspiracy claim should be rejected once and for all. For the reasons detailed below, the Court should dismiss Plaintiffs' claims for RICO (Counts I-III); unjust enrichment (Count XII); and conspiracy (Count XIII) with prejudice.

In addition, the Court once again should dismiss with prejudice Plaintiffs' claim under Section 32 of the Lanham Act as to Bo Jackson (Count V) and Plaintiffs' dilution claim as to Blitz Realty (Count VII). Plaintiffs have re-pleaded those claims, perhaps inadvertently, without even attempting to correct the deficiencies responsible for their earlier dismissal. Finally, Plaintiffs' claim for interference with prospective economic advantage (Count XI) should be dismissed, as detailed below, for failure to plead knowledge of the allegedly expected business relationship.

## PROCEDURAL BACKGROUND

Plaintiffs' current pleading is not meaningfully different from their earlier efforts. Plaintiffs filed their initial Complaint on June 15, 2007, asserting claims for RICO violations, trademark infringement, cybersquatting, and related state law claims. When Defendants individually moved to dismiss the Complaint, Plaintiffs sought and obtained leave to file an amended complaint.

Plaintiffs' (First) Amended Complaint ("FAC") asserted the same claims as well as new claims for vicarious trademark infringement and civil conspiracy. Defendants filed a consolidated motion to dismiss the following counts: (1) RICO; (2) Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"); (3) declaratory judgment; (4) unjust enrichment;

and (5) civil conspiracy. Individual defendants also moved separately to dismiss other counts alleged in the FAC. The Court granted Defendants' Motion in part and dismissed the following claims with leave to replead: (1) RICO; (2) trademark infringement as to Plaintiff Jackson; (3) dilution of trademark as to Plaintiff Blitz; (4) ICFDTPA; (5) declaratory judgment; (6) intentional interference with current economic advantage; (7) unjust enrichment; and (8) civil conspiracy.

On the same day Plaintiffs filed their Second Amended Complaint, the Court ordered them to file a Third Amended Complaint without the declaratory judgment count but with no other changes. On April 18, 2008, Plaintiffs filed their Third Amended Complaint ("TAC")[1] which re-alleges the same counts as the FAC, minus the counts for violation of the ICFDTPA and declaratory judgment, and with an additional RICO count under 18 U.S.C. § 1962(a).

## FACTS ALLEGED BY PLAINTIFFS

Aside from some cosmetic alterations, the material factual allegations of the TAC have not changed. The four named Plaintiffs in this putative class action allege that they own various distinctive or valuable marks. ¶ 2. Vulcan Golf, LLC ("Vulcan Golf") alleges that it owns the "Vulcan" trademark and trade name "Vulcan Golf," which it uses in connection with providing golf clubs and related products. ¶¶ 22–23. John B. Sanfilippo & Sons Inc. ("JBSS") asserts ownership of the trademark "Fisher" in connection with the sale of a product line of assorted nuts. ¶¶ 31–32. Blitz Realty Group, Inc. ("Blitz") claims that it has "valuable legal rights" in the use of the names "Blitz," "Blitz Realty," and "Blitz Real Estate" in the local Northern Illinois area in connection with providing real estate services. ¶¶ 42–43. Finally, Vincent E. "Bo" Jackson ("Jackson") contends that he has a "valid and enforceable legally protectable interest" in his name. ¶ 63.

As for the Defendants, Plaintiffs allege, *inter alia*, that Defendant Google Inc. ("Google") creates and maintains an online marketing/advertising business, ¶ 90; Defendant Oversee.net ("Oversee") traffics in, monetizes, and/or sells domain names using an auction system, ¶ 197; Defendant Sedo, LLC ("Sedo") manages a database of domain names, ¶ 72; Defendant Dotster, Inc. ("Dotster") registers domain names and owns a portfolio of domain names, ¶ 74; and Defendant Internet Reit, Inc. ("Ireit") owns and manages domain names. ¶ 76.

---

[1] Unless otherwise noted, "¶ __" refers to paragraphs in the TAC.

Plaintiffs again assert that the Defendants infringe Plaintiffs' trademarks by alleged "cybersquatting." ¶¶ 147–148. For example, Plaintiffs contend (often incorrectly although they have been told otherwise) that Defendants own, control, or exploit certain domain names that are substantially similar to and variants of Plaintiffs' alleged trademarks. ¶¶ 1, 65. Plaintiffs claim that the Defendants receive advertising revenue when an internet user types these domain names when attempting to find information regarding Plaintiffs' trademarked products or services. ¶¶ 134, 162–177.

Plaintiffs allege further that their marks are not the only ones infringed by domain names owned, aggregated, or provided with ads by Defendants. ¶¶ 152–154. But Plaintiffs do not (and cannot) allege that the Defendants try to pass off their own goods and services as being products manufactured or sold by Plaintiffs (or of any other trademark owner). And, Plaintiffs do not (and cannot) contend that any internet user is duped into believing that the web page to which they are directed is owned and operated by Plaintiffs or other trademark owners. Rather, Plaintiffs contend that Defendants unfairly profit from advertising revenue earned when internet users "click" on advertisements that Google provides for display on some domains. ¶¶ 112, 209. According to Plaintiffs, Defendants are not alone in engaging in this alleged misconduct. Instead, Plaintiffs plead the existence of an "enterprise" supposedly consisting of participants in "the largest internet advertising network in the world," the unidentified members of which somehow conspire in an orchestrated campaign to infringe trademarks of Plaintiffs and others. ¶¶ 214, 217.

Based once again on these familiar allegations, Plaintiffs assert claims for: violations of sections 1962(a), (c) and (d) of the RICO statute (Counts I, II & III); cybersquatting (Count IV); trademark infringement (Count V); false designation of origin (Count VI); dilution (Count VII); common law trademark violation (Count VIII); contributory trademark infringement (Count IX); vicarious trademark infringement (Count X); interference with prospective economic advantage (Count XI); unjust enrichment; (Count XII) and civil conspiracy (Count XIII). Defendants do not seek to reargue the dismissal of claims allowed by this Court's Order of March 20, 2008, but do move to dismiss the claims Plaintiffs have sought unsuccessfully to replead.

## **LEGAL STANDARDS**

Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure govern the disposition of Defendants' motion.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must clear two hurdles. First, the complaint must provide detail sufficient to give the defendant fair notice of the claim and the grounds upon which it rests." *Nance v. City of Elgin*, 2008 U.S. Dist. LEXIS 32043, at *3 (N.D. Ill. Apr. 18, 2008) (Manning, J.) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007)). "Second, the complaint's allegations must plausibly suggest above a speculative level that the plaintiff has a right to relief." *Id.* (citing *Twombly*, 127 S. Ct. at 1965, 1973 n. 14). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965 (citations omitted).

Where, as here, Plaintiffs' claims are premised on a theory that Defendants perpetrated a scheme to deceive and defraud, all of Plaintiffs' allegations—not just those that are by definition fraudulent torts—must be pleaded with the particularity required by Fed. R. Civ. P. 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (affirming dismissal of claims under Rule 9(b) for tortious interference with economic advantage, tortious inducement of a breach of fiduciary duty, and civil conspiracy). In order do to so, Plaintiffs must plead the "who, what, when, where, and how" of Defendants' alleged conduct. *Gavin v. AT&T Corp.*, 2008 U.S. Dist. LEXIS 10998, at *23 (N.D. Ill. Feb. 12, 2008); *see also Boresellino*, 477 F.3d at 507.

The Court has given Plaintiffs every opportunity to remedy the deficiencies in their pleadings. With this TAC, however, Plaintiffs have exhausted those opportunities without effecting any substantive changes. Their RICO, unjust enrichment, and civil conspiracy claims should, therefore, be dismissed with prejudice. *See Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 845 (N.D. Ill. 1998) (Manning, J.) (admonishing plaintiffs "that, if their second amended complaint does not cure the deficiencies identified by the court in this order, they may not get another bite at the apple."). Likewise, Plaintiffs' claim under section 32 of the Lanham Act as to Bo Jackson, their dilution claim as to Blitz Realty, and their interference with prospective economic advantage claim must be dismissed as described *infra*.

## ARGUMENT

## I.     PLAINTIFFS STILL FAIL TO STATE ANY CLAIM UNDER RICO (COUNTS I, II, AND III).

Plaintiffs' third bite at the RICO apple is little different, and no more satisfying, than their first two. In addition to reasserting their claims under §§ 1962(c) & (d), they also now tack

on an additional claim under § 1962(a). Plaintiffs' insertion of even more verbiage in this version of the complaint does nothing to cure the prior deficiencies. Plaintiffs' §§ 1962(c) and (d) claims again fail for the reasons explained in Defendants' briefing in support of the Motion to Dismiss the FAC. The § 1962(a) claim fares no better.

**A.  The Court Should Dismiss Count II (18 U.S.C. § 1962(c)) Because the TAC Does Not Allege that Defendants Participated in the Conduct of an Enterprise Through a Pattern of Racketeering Activity.**

To state a claim against Defendants under 18 U.S.C. § 1962(c), as pleaded in Count II of the TAC, Plaintiffs must allege that Defendants: (1) conducted or participated in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See, e.g. Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006); *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

In addition to alleging all of the essential elements of a "substantive" RICO violation, Plaintiffs must also allege that they suffered an injury to their business or property "by reason of" the substantive RICO violation. 18 U.S.C. § 1964(c). To do so, it is insufficient for Plaintiffs to allege that they were injured by some act "in furtherance of" a RICO conspiracy. Rather, Plaintiffs must allege an injury proximately caused by the predicate criminal acts that form the "pattern of racketeering activity" under § 1962(c). *See, e.g.*, *Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (holding that a person injured by an overt act done in furtherance of a RICO conspiracy, but which does not independently qualify as a predicate act of racketeering, does not have a cause of action under § 1964(c)).

As discussed below, Plaintiffs have failed to adequately allege *any* of these essential elements of their claims. Indeed, the litany of defects in Plaintiffs' claim requires its own outline:

1.  Plaintiffs' Amended Allegations Still Do Not Allege an Enterprise.

    (a)  Plaintiffs' Allegations of Structure Are Insufficient.

    (b)  Plaintiffs' Allegations Confirm that Each Defendant Acts for Its Own Purposes, Not for a Common Purpose.

    (c)  Plaintiffs' Allegations of Ordinary Business Relationships Do Not Suffice To Plead a RICO Enterprise.

2.  Plaintiffs Fail To Allege that Each Defendant Participates in the Direction of the Enterprise.

3.      Plaintiffs Fail To Plead a "Pattern of Racketeering Activity."

      (a)      Plaintiffs Still Fail To Allege Predicate Acts with the Requisite Particularity.

      (b)      Setting Aside the Issue of Particularity, Plaintiffs' Allegations as to Predicate Acts Fail as a Matter of Law.

4.      Plaintiffs Fail To Allege the Reliance and Proximate Cause Requirements of RICO.

For each of these reasons, any one of which is fatal, Plaintiffs' claim under § 1962(c) should be dismissed.

**1.      Plaintiffs' Amended Allegations Still Do Not Allege an Enterprise.**

Stripped of its jargon, the TAC alleges that Defendants conducted internet-related business with each other, nothing more. Because such allegations fail to allege a RICO enterprise as a matter of law, this Court should dismiss the claim, just as it did before. As the Court succinctly noted in dismissing the RICO claims in the FAC:

> An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.,* 229 F.3d 673 (7th Cir. 2000). Indeed, the "hallmark of an enterprise is 'structure.'" *United States v. Korando,* 29 F.3d 1114, 1117 (7th Cir. 1994) (citation omitted). Specifically, a RICO enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amendable to hierarchical or consensual decision making." *Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted). Further, there must be "an organization with a structure and goals separate from the predicate acts themselves." *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir. 1991). "Thus, in order to adequately plead a claim under § 1962(c), the complaint must identify an 'association in fact' that is meaningfully different in the RICO context from the units that go to make it up." *Williams v. Ford Motor Company,* 11 F. Supp. 2d 983, 986 (N.D. Ill. 1998) (citations omitted).

*Vulcan Golf, LLC v. Google Inc.*, 2008 U.S. Dist. LEXIS 22155, at *77-78 (N.D. Ill. Mar. 20, 2008) (Manning, J.).

Plaintiffs made no material changes to their "enterprise" allegations. They adjusted the alleged membership of the enterprise in immaterial ways and, presumably for aesthetic effect,

have renamed it "the Google Network."  *See* ¶ 213.[2]  But coining a new moniker does not mask Plaintiffs' failure to meet the RICO pleading requirements.  The alleged enterprise is just as amorphous as before, and it continues to include a potentially unquantifiable number of unidentified, unaffiliated individuals.  Indeed, Plaintiffs' amended definition is even broader than before, as it now includes an unlimited number of unnamed "others."  ¶ 214.  "Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d, 640, 645 (7th Cir. 1995); *see also Stachon*, 229 F.3d at 676 (finding insufficient, as a matter of law, "Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure").

In addition to superficially altering the definition of the alleged enterprise, Plaintiffs have injected additional allegations that—at most—pay lip service to the enterprise requirement as outlined by the Court.  S*ee, e.g.,* ¶ 215 ("The RICO enterprise is an ongoing structure of persons associated over time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making").  Such efforts, however, amount to no more than a "formulaic recitation of the elements" that does not pass muster under *Twombly*.  To the extent Plaintiffs venture beyond repeating boilerplate requirements, their allegations are circular or meaningless, as described below.

---

[2] According to the TAC,  "The Google Network participants are:  (1) Defendant Google, (2) the Parking Company Defendants; (3) Google Search Network (America Online, CompuServe, Netscape, AT&T Worldnet, EarthLink, Sympatico, and others); (4) Google Content site partners (New York Post Online Edition, Mac Publishing (includes Macworld.com, JavaWorld,LinuxWorld), HowStuffWorks, and others), (5) Google AdSense Network (Parking Company Defendants, Domain Aggregators, Domain Registrants, and other third party website owners, blog sites, domain registrants, licensees and aggregators that enter into agreements with Defendant Google for the monetization, of domains under their license/control/ownership."  ¶ 214.

In the FAC, Plaintiffs' identified the enterprise participants as follows:  "The following group of individuals and entities, associated in fact through time, and joined in common purpose, constitute an interstate "Enterprise" under RICO:  (1) Defendant Google; (2) the Parking Company Defendants; (3) all AdWords Participants/Advertisers; (4) all AdSense Participants/Publishers; (5) all other individuals and entities participating in Defendant Google's AdSense and AdWords Networks and/or the Defendant Google Advertising Network; (6) Defendant Google Search Partners; and (7) other unnamed Co-conspirator Defendants that agreed to and engaged in the unlawful actions described herein."  FAC ¶ 225.

Both sets of alleged enterprise participants lack the distinct definition and structure which RICO demands.

(a) **Plaintiffs' Allegations of Structure Are Insufficient.**

In the section of the TAC entitled "Structure and Roles of Participants in the RICO Enterprise," Plaintiffs fail to explain the structure of the alleged enterprise. Indeed, all they do is describe, in painfully obtuse language, Google's business of selling ads:

> a. Defendant Google: Provide access to the revenue generating AdWords Advertisers and organizes, controls, monitors participation in or otherwise operates the RICO Enterprise;

> b. Google Network: Participate in the RICO Enterprise for the purpose of generating revenue from services provided in connection with AdWords Advertisements.

¶ 226. Having defined the RICO Enterprise as the Google Network, Plaintiffs' description of the role of the "Google Network" resolves to the meaningless conclusion that the Network participates in itself. Similarly unhelpful is Plaintiffs' attempt to define structure with the tautological observation that "Without the Google Network, the RICO Enterprise [*i.e.*, the Google Network] could not exist." *Id.* at ¶ 227.

These reflexive observations are the unavoidable result of the TAC defining the "structure" of the enterprise by the allegedly wrongful conduct of its members. *See, e.g.,* ¶ 214 ("It is the association of persons that collectively provide the internet advertising network whereby AdWords advertisements are displayed and monetized on domains/sites on the internet"). Such allegations are insufficient as a matter of law, because an enterprise must be "an organization with a structure and goals *separate from the predicate acts themselves*." *Stachon*, 229 F.3d at 675 (quoting *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)) (emphasis added). As the Seventh Circuit explained in *Jennings*: "An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990); *see also Stachon*, 229 F.3d at 676 ("This court has repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does").

Plaintiffs' conclusory allegation that "the RICO Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants engage," TAC ¶ 245, *see also* ¶ 225, does not help their cause, as they have failed to allege facts explaining how

the purported structure of the Google Network is any different from the alleged improper conduct (*i.e.*, the operation of the Google Network). *See Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990) ("The closest plaintiffs come to breathing life into the alleged enterprise is their assertion that the enterprise can be identified by the conduct and activities of the defendants. Unfortunately for plaintiffs, the identification of an enterprise by reference to the activities and conduct of defendants is not sufficient to state a claim.").

Nor do Plaintiffs fare any better by asserting that the alleged misconduct was carried out pursuant to an alleged conspiracy involving multiple parties, because a conspiracy, even if adequately alleged (which it is not in this case), is not a RICO enterprise. As the Seventh Circuit instructs:

> To withstand Appellees' motion to dismiss, however, Appellants must present something more than [allegations describing the alleged pattern of racketeering activity] and assertions of conspiracy; otherwise, "every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation." From *Bachman*, we know that is not the law.

*Stachon*, 229 F.3d at 676 (quoting in part *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999)). While "the hallmark of conspiracy is agreement, the central element of an enterprise is structure." *Jennings*, 910 F.2d at 1441 (citation omitted); *see also Limestone Dev. Corp. v. Vill. of Lemont*, 2008 U.S. App. LEXIS 6891, at *17-18 (7th Cir. Apr. 1, 2008) (rejecting notion that a RICO enterprise need not have structure and noting that "[w]ithout a requirement of structure, 'enterprise' collapses to 'conspiracy'").

### (b) Plaintiffs' Allegations Confirm that Each Defendant Acts for Its Own Purposes, Not for a Common Purpose.

According to the allegations in the TAC, each of the Defendants acts in its own divergent best interest. Consequently, Defendants do not share a common purpose, which is an "essential ingredient" of a RICO enterprise. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004); *see also Stachon*, 229 F.3d at 675 ("A RICO enterprise must have an ongoing structure of persons associated through time, *joined in purpose* . . . ." (emphasis added)). In *Baker*, for example, the plaintiffs alleged that IBP, their former employer, violated RICO through the hiring of illegal immigrants to keep wages depressed. The alleged RICO enterprise consisted of IBP, various

immigrant welfare organizations that allegedly referred illegal immigrants to IBP, and "recruiters" that allegedly smuggled illegal immigrants into the country for IBP to hire. *Baker*, 357 F.3d at 687, 691. The court held that the members of the alleged enterprise lacked the requisite common purpose: "IBP wants to pay lower wages; the recruiters want to be paid more for services rendered (though IBP would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group. These are divergent goals." *Id.* at 691.

The best Plaintiffs can muster in an attempt to satisfy the "common purpose" element is to allege that the members of the purported enterprise are "joined in the common purpose of obtaining maximum economic and commercial gain." ¶ 222. That is, of course, a goal held by virtually all commercial entities in the United States. As the Seventh Circuit has recognized, such a generic purpose is insufficient to allege an enterprise:

> [D]iverse parties, such as these [alleged members of the enterprise], customarily act for their own gain or benefit in commercial relationships. Given the commercial nature of the various parties' relationships . . . and the independent interests necessarily governing those relationships, the amended complaint fails to dispel the notion that the different parties entered into agreements . . . for their own gain or benefit.

*Stachon*, 229 F.3d at 677 n.4. The alleged members of the enterprise in this case are all for-profit entities, and Plaintiffs have failed to allege an enterprise with a common purpose beyond the individual profit motives incident to Defendants' normal business relations.

Indeed, the alleged members of the enterprise plainly have *divergent* purposes. For example, Plaintiffs concede that Oversee, Sedo, Dotster and Ireit are *competitors*, each of whom would undoubtedly like to maximize its own market share *at the expense of* one another. *See, e.g.*, ¶ 131; *see also* ¶¶ 102, 103, 134, 138 (alleging that each Defendant owns a large number of domain names, each *separately* contracts with Google, and each shares revenues from those contracts *only* with Google). And the members of the sprawling would-be enterprise include both those who *pay* advertising and marketing fees in connection with the alleged Google Network (who seek to *minimize* the fees they are required to pay) and those who *receive* advertising and marketing fees in connection with that network (who seek to *maximize* the fees they receive). *See* ¶¶ 213-214 (including in the alleged enterprise, *inter alia*, anyone who participates in any capacity whatsoever in Google's advertising programs). As these goals are far more divergent than those of the supposed members of the purported RICO enterprise the

court rejected in *Baker*, Plaintiffs' RICO claim should be dismissed for this independent reason as well.

> **(c) Plaintiffs' Allegations of Ordinary Business Relationships Do Not Suffice To Plead a RICO Enterprise.**

In the TAC, Plaintiffs have attempted to embellish their allegations as to the hierarchical structure of the alleged enterprise. In Paragraphs 246 – 253, Plaintiffs now allege that Google is "the central actor in the RICO enterprise," and that Google controls the participation in and operation of the enterprise simply because Google, as the purveyor of AdWords advertising, dictates the terms of the contracts for its products and services. Plaintiffs further allege that the Parking Company Defendants exercise "derivative control" over this enterprise because they have the ability to sub-contract with other entities for access to Google's AdWords program. *See* ¶ 250.

If these allegations suffice to constitute structure, every commercial entity in the world that contracts to do business with others in a common industry segment, with the corresponding activities and goals one would expect, would comprise a RICO enterprise. Plaintiffs are not the first to attempt to sell this overarching industry segment-as-enterprise theory. Courts have uniformly rejected these attempts as a matter of law. *See, e.g., In Re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1262 (S.D. Fla. 2001) (finding plaintiffs cannot seriously claim "that any court has ever held that an entire nationwide or regional industry or profession may constitute an enterprise"); *Blue Cross & Blue Shield of Ala. v. Caremark, Inc.*, 1999 U.S. Dist. LEXIS 16230, at *26 (N.D. Ill. Sept. 30, 1999) (no structure found among large and geographically diverse group of nearly 3,000 independent physicians and entities where plaintiffs failed to allege how they could possibly have acted in concert).

As this Court pointed out in dismissing the RICO counts the first time, the facts of *Stachon, supra,* are similar to those presented here. *See Vulcan Golf, LLC*, 2008 U.S. Dist. LEXIS 22155, at *83–84. In *Stachon*, the court rejected the notion that "[a corporation's] ordinary business dealings with past and present manufacturers, suppliers, or members constitute a structure." *Stachon v. United Consumers Club, Inc.,* 1999 U.S. Dist. LEXIS 16484 *3 (N.D. Ill. Oct. 20, 1999), aff'd, 229 F.3d 673 (7th Cir. 2000). Moreover, the *Stachon* Court further explained:

> [T]hat UCC [the Google analog in *Stachon*], over its 21-year existence, contracted with numerous manufacturers, suppliers and members fails to establish an "ongoing structure." Plaintiffs offer nothing to demonstrate that changing *unnamed* manufacturers, suppliers and members function with UCC as a continuing unit or as an ongoing structure…. Further, Plaintiffs offer nothing to show that the alleged "enterprise" is more than UCC simply contracting with members and suppliers.

*Id.* at *10-12.

After rejecting the notion that there was anything in the complaint to suggest that the defendants acted for anything other than their own gain, or their concerns were for anything more than maximizing their own individual profits, the *Stachon* Court continued:

> Furthermore, Plaintiffs fail to show that the alleged enterprise is organized in a manner amenable to hierarchical or consensual decision making…. Each Individual Defendant, manufacturer, supplier and member enters into agreements for their own benefit. But nothing within these ordinary business relationships mirrors a hierarchical organization, nor do these relationships foster consensual decision making in pursuit of the enterprise's alleged purpose…. *In fact, Plaintiffs offer nothing to show that these entities ever made consensual decisions as a unit to promote its alleged purposes.*

*Id.* at *13-15 (emphasis added). Plaintiffs' RICO claims suffer from the same fatal deficiency. They are constructed on nothing more than ordinary business relationships in the internet advertising world, with nothing to suggest the possibility of consensual and communal decision-making.

Indeed, the vast assemblage of defendant businesses alluded to in the TAC is not a RICO enterprise but is rather a directory of nearly all businesses engaged in internet advertising. An industry-wide business compendium is simply not the same thing as a structured RICO enterprise. Even if the financial relationships among some Defendants could somehow be construed as "structured" in the broadest sense of the word, this "does not infuse the alleged 'enterprise' with any structure." *Blue Cross & Blue Shield of Ala.*, 1999 U.S. Dist. LEXIS 16230, at *26.

When, as here, the defendants are completely independent of each other, and in many instances compete with each other, a common goal of increasing their own respective profits does not further the interest of the alleged RICO enterprise and vest it with the requisite

structure. *El-Issa v. Compaq Computer Corp.*, 1997 U.S. Dist. LEXIS 20530 (N.D. Ill. Dec. 18, 1997) (finding that persons alleged to comprise enterprise trained together and were a conduit for the promotion of one defendant's products does not constitute an enterprise). Because the TAC is bereft of allegations sufficient to establish the critical element of structure, Plaintiffs' RICO claims should be dismissed.

### 2. Plaintiffs Still Fail To Allege that Each Defendant Participates in the Direction of the Alleged Enterprise.

Section 1962(c) makes it unlawful for a person to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" through a pattern of racketeering activity. 18 U.S.C. § 1962(c) (2006). The Supreme Court has held that the word "conduct," when used as both a verb and a noun in that phrase, "requires an element of direction." *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993). The Court made clear that a plaintiff does not adequately allege that a defendant "participate[d], directly or indirectly, in the conduct" of the enterprise's affairs merely by asserting that the defendant "participated in the affairs" of the enterprise. *Id.* at 179. Rather, a plaintiff must allege that the defendant had some part in *directing* the affairs of the enterprise. *Id.* Liability is limited to persons who "participated in the operation or the management of the enterprise itself, and . . . asserted some control over the enterprise." *Slaney*, 244 F.3d at 598. Although a defendant need not have "absolute domination over the enterprise . . . , RICO does require that the person have had some control over the enterprise itself." *Id.*

In the FAC, Plaintiffs' allegations of conduct were conclusory, and largely were directed at describing Google's control over its own business. *See, e.g.,* FAC ¶¶ 236, 241. Recognizing the deficiencies in these allegations, Plaintiffs have added language purportedly aimed at describing Defendants' efforts to direct the enterprise. *See, e.g.*, ¶¶ 239-244. But the additional allegations still fail to sufficiently plead a RICO claim, as the added details of the alleged racketeering *activities* of the purported enterprise do not amount to *control* of the alleged enterprise.

Indeed, Plaintiffs make no attempt to hide the fact that they purport to plead conduct (or direction of the enterprise) merely by describing the allegedly nefarious *activities* of the enterprise. *See, e.g.*, ¶ 244 ("Defendants exert control over and otherwise operate and conduct the affairs of the RICO Enterprise through a pattern of racketeering by, among other things, engaging in the following . . . [listing in 18 paragraphs details of the alleged racketeering

activity]").  Other than with respect to Google, Plaintiffs do not even attempt to differentiate the respective roles of individual Defendants.  *See* ¶ 240 (describing Google as the entity that "organizes" and "controls" the unlawful conduct, and describing the "Google Network" merely by listing the specific types of alleged unlawful conduct).  Such allegations are exactly the type that the Supreme Court held insufficient to plead the required "element of direction."  *Reves*, 507 U.S. at 178.

Plaintiffs' other new allegations in the TAC, aimed at the "conduct" requirement, serve only to describe in more detail how Google administers its own advertising programs.[3]  These allegations are neither revelatory nor relevant.  Of course Google controls its own advertising programs and sets terms and conditions upon which it is willing to do business.  Those facts do not establish that Google directed any sort of enterprise, nor do they subject Google, or any party who chooses to do business with Google on those terms, to RICO liability.  As this Court noted in dismissing the RICO counts in the FAC, "the allegations do not support a finding that a hierarchical structure existed outside the defendants' normal business relationships."  *Vulcan Golf, LLC*, 2008 U.S. Dist. LEXIS 22155, at *85.  "[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.  *Id.* (quoting *Reves*, 507 U.S. at 185) (emphasis in original); *see also Chrichton v. Golden Rule Ins. Co.*, 2006 U.S. Dist. LEXIS 56235, at *22 (N.D. Ill. Aug. 11, 2006) (noting that an "arms-length business relationship between distinct entities is not sufficient to show operation or management of an enterprise").

Because Plaintiffs have failed to adequately plead the element of conduct, Plaintiffs' RICO claim should be dismissed for this independent reason.

---

[3] *See, e.g.*, ¶ 231 (describing how Google must approve an applicant's participation in the AdSense program); ¶ 236 (noting that Google enters into contracts with entities that join the AdSense Network and that such contracts "govern the terms, conditions, rights, and responsibilities associated with participation in the AdSense Network/Google Network"); ¶ 237 (noting that Google monitors and reviews ads and websites participating in its programs); ¶ 238 (alleging that Google controls collection of revenue from its advertising programs).

### 3.     Plaintiffs Fail To Plead a "Pattern of Racketeering Activity."

#### (a)     Plaintiffs Still Fail To Plead the Alleged Predicate Acts with the Requisite Particularity.

To meet the rigorous standard of pleading fraud with particularity pursuant to Fed. R. Civ. P. 9(b), "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney*, 244 F.3d at 599; *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) ("[T]he Complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud" (citations and internal quotation marks omitted)).  In addition, in cases involving more than one defendant, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud").

Like the FAC, the TAC fails to meet any of these requirements.  As has been noted before:  "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for absence of detail." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  *See also R.E. Davis Chem. Corp. v. NALCO Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990) ("[A] plaintiff who relies upon acts of mail and wire fraud as the basis for a RICO claim must do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud").

Plaintiffs' allegations as to predicate acts remain fatally deficient in many areas:

- ***Time***—Plaintiffs' conclusory allegations that "Defendants" placed "matter and things" in "post offices" and transmitted "matter and things" by wire "on an ongoing, repeated, and regular basis" are insufficient.  There is not a single date tied to a single communication to which a Defendant was a party in the

entire TAC.  Plaintiffs must allege the *exact date* of *each* communication Plaintiffs claim constituted a predicate act. *Builders Bank v. First Bank & Trust Co. of Ill.*, 2004 U.S. Dist. LEXIS 12133, at *8 (N.D. Ill. June 28, 2004).

- *Place*—Plaintiffs fail to identify where any alleged predicate act took place other than to state that they all took place at unspecified "post offices" and in "each and every State in the United States."

- *Content*—Plaintiffs' reference to "matter and things" fails to identify the content of the communications.  ¶ 258.  Plaintiffs' further clarification of "including but not limited to contracts, invoices, correspondence, and payments,"(¶ 258) would encompass everything that an ordinary business would mail or transfer over the wire.  In order to satisfy Rule 9(b), Plaintiffs must allege exactly *what was said or done* in *each* communication at issue that constituted actionable mail or wire fraud.  *EQ Fin., Inc. v. Pers. Fin. Co.*, 421 F. Supp. 2d 1138, 1147 (N.D. Ill. 2006).

- *Method*—Plaintiffs broadly allege that all Defendants committed predicate acts by the use of mail or wire.  ¶ 260 .  But Plaintiffs must allege, for *each* communication, whether it was made through mail, internet, telephone, or some other means.  *Id.*

- *Identities of the Parties*—Plaintiffs fail to individually identify who made any of the communications.  The Seventh Circuit has specifically held that it is not sufficient to "lump" a group of defendants together and allege that the group sent communications or the group members communicated with each other. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).  The complaint must specifically identify which party sent each communication that forms the basis for a predicate act, and to whom the communication was sent.  *Id.*

Plaintiffs' allegations of predicate RICO acts still do not satisfy Rule 9(b) and the RICO claims, therefore, should be dismissed.

> **(b)** **Setting Aside the Issue of Particularity, Plaintiffs' Allegations as to Predicate Acts Fail as a Matter of Law.**

The term "racketeering activity" is statutorily limited to certain specifically enumerated crimes. *See* 18 U.S.C. § 1961(1). Because, as discussed below, the acts of mail and wire fraud that Plaintiffs have alleged all along do not suffice – and Plaintiffs obviously knew it – they also added, after the first round of Rule 12(b)(6) briefing, allegations of new predicate acts that they appear to have plucked randomly from the statute in an attempt to salvage their RICO claims. Both sets of allegations, even considered collectively, do not amount to the pattern of racketeering activity required for a successful RICO claim.

> **(i)** **Plaintiffs' New Allegations of Predicate Acts Are Insufficient as a Matter of Law.**

After the first round of Rule 12(b)(6) briefing, Plaintiffs supplemented their complaint with cursory allegations of three new predicate acts. These allegations represent yet another unfruitful exercise in re-characterizing Plaintiffs' cybersquatting and trademark claims. For example, Plaintiffs allege in a conclusory fashion that by engaging in the actions otherwise described in the complaint, Defendants engaged in the trafficking of goods and services bearing counterfeit marks in violation of 18 U.S.C. § 2320. ¶ 276. But Plaintiffs do not specify the goods and services at issue and they do not explain how Defendants transported or transferred any such goods within the meaning of § 2320, let alone provide any other details in support of this argument.

Similarly, Plaintiffs suggest that Defendants' conduct also constituted a money laundering violation of 18 U.S.C. § 1957. But incorporating the mail and wire fraud allegations, which fail for the reasons described *infra*, as components of some undefined money laundering scheme does nothing to satisfy RICO. Plaintiffs must make specific allegations to establish the requisite predicate acts, and this they have simply not done. *See, e.g., Appraisers Coal. v. Appraisal Inst.*, 1993 U.S. Dist. LEXIS 11770, at *18 (N.D. Ill. Aug. 18, 1993) (holding that plaintiffs failed to allege predicate acts where the relevant statutory sections were mentioned in a total of two paragraphs in the complaint and neither paragraph made any allegation other than the naked assertion that the statutes were violated).

Finally, Plaintiffs' passing assertion of a violation of 18 U.S.C. § 1952 fails, for they have provided no supporting allegations as to the conduct alleged to constitute such a violation. *See, e.g.*, ¶ 272 (alleging only that Defendants engaged in "acts of racketeering" in violation of § 1952). Section 1952 proscribes traveling in interstate commerce in aid of unlawful activity, but the unlawful activities implicated by that section are gambling, liquor, narcotics, extortion, bribery and arson, none of which are at issue here. *See Allen Bros., Inc. v. Byrdak*, 1999 U.S. Dist. LEXIS 11614, at *6 (N.D. Ill. July 26, 1999) (Plaintiff alleging violation of 18 U.S.C. § 1952(a) "evidently failed to read on to § 1952(b), which defines 'unlawful activity,' as used in §1952(a), as including only violations of laws involving gambling, liquor, narcotics, extortion, bribery, or arson, none of which are involved in this case").

### (ii) Plaintiffs' Mail and Wire Fraud Allegations Are Insufficient as a Matter of Law.

The elements of mail fraud are "(1) a scheme or artifice to defraud with the intent to defraud; (2) through a deception about a material fact; and (3) the use of the mails (or interstate telecommunication) to further the fraud." *See, e.g.*, *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 152 F. Supp. 2d 1099, 1108 (C.D. Ill. 2001), *aff'd*, 388 F.3d 990 (7th Cir. 2004). A scheme to defraud requires "the making of a false or material misrepresentation, or the concealment of a material fact." *Id.* In addition, to fall within the scope of the mail and wire fraud statutes, the object of the fraud must be money or property in the hands of the alleged victim. *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (wire fraud); *Cleveland v. United States*, 531 U.S. 12, 26 (2000) (mail fraud). Plaintiffs' allegations do not, and cannot, meet these requirements.

### (A) Infringement Allegations Do Not Constitute a "Scheme to Defraud."

Courts routinely reject efforts to concoct RICO claims by "reformulating" infringement claims as mail or wire fraud. In *Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) (*superseded by statute as stated in Stewart v. Wachowski*, 2004 U.S. Dist. LEXIS 26608, at *11–12 (C.D. Cal. Sept. 27, 2004)), for example, the plaintiffs accused the defendant of infringing their copyrights on six songs, and also asserted a RICO claim, contending that the defendants' sales and marketing of the infringing songs by mail and wire constituted RICO predicate acts of mail and wire fraud. *Id.* at 1216. In affirming the dismissal of the RICO claims, the Court of Appeals

held that the district court correctly concluded that the RICO claims were merely "reformulated copyright infringement claims." *Id.* at 1217. The court noted that the RICO claims were based on the same misconduct alleged in the copyright infringement claims, and that the purported fraud claims depended entirely on there being infringement of the plaintiff's copyrights. *Id.* ("Because [plaintiffs'] RICO counts do no more than allege copyright infringement under the label of mail and wire fraud, and copyright infringement is not a predicate act under RICO, the district court properly concluded that [plaintiffs] failed to state a claim.")

Similarly, in *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006), the court rejected the plaintiffs' attempt to state a RICO claim based on the alleged use of a trademark belonging to the plaintiffs. *Id.* at 630-631. The court noted that "the alleged scheme boils down to a claim of willful trademark infringement – not racketeering." *Id.* at 630. The court observed that "[a]ll businesses use interstate mail or wires," and that "Congress did not intend that every trademark dispute would be brought under RICO." *Id.* at 631. As such, the court found that "Plaintiffs may not reformulate garden variety trademark infringement claims into mail or wire fraud in order to state a violation of RICO." *Id.*; *see also Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 490-92 (S.D.N.Y. 2000) (rejecting RICO claim based on allegations that were, in essence, "nothing more than claims of knowing and deliberate patent infringement"); *U.S. Media Corp., Inc. v. Edde Entm't, Inc.*, 1996 U.S. Dist. LEXIS 13389, at *37-39 (S.D.N.Y. Sept. 10, 1996) (rejecting RICO claim based on copyright infringement allegedly conducted through use of the mails and wires; concluding that a copyright violation "may not be 'bootstrapped' into a violation of the mail and wire fraud statutes").

Although sprinkled with references to "deception" and "misrepresentations," Plaintiffs' claims of infringement and cybersquatting are not predicate acts triggering RICO's treble damages and fee shifting provisions. Plaintiffs' deliberate abandonment of their previously selected label in the FAC for the alleged misconduct – the "Illegal Infringement Scheme" – in favor of the term "Deceptive Domain Scheme" used in the TAC, does nothing to help Plaintiffs' cause. *Compare* TAC ¶¶ 1-12 (summarizing the "Nature of the Action" as the execution of a "Deceptive Domain Scheme"), with FAC ¶¶ 1-9 (summarizing the "Nature of the Action" as the execution of an "Illegal Infringement Scheme").

Tellingly, Plaintiffs conclude the section of the TAC entitled "RICO Allegations" by stating that the "trademark infringement and unfair competition laws are designed and intended

to protect the public from" the alleged conduct on which the RICO claims are based.  ¶ 302; *see also* ¶ 303.  But Congress chose *not* to include trademark infringement or unfair competition among the acts constituting "racketeering activity" for purposes of RICO.  18 U.S.C. § 1961(1).  Consistent with the Seventh Circuit's repeated rejection of the widespread abuse of civil RICO, this Court should reject Plaintiffs' attempt to "reformulate" their cybersquatting and infringement claims into RICO claims and dismiss these Counts.

**(B)**    **The Object of the Alleged Fraud Is Not Money or Property in the Hands of the Alleged Victim.**

The mail and wire fraud statutes do not address all forms of fraud or deception, nor do they address all forms of fraud or deception that are executed through the use of mail or wires.  Even material misrepresentations will not constitute mail or wire fraud unless the "object of the fraud" is "money or property in the victim's hands."  *Pasquantino*, 544 U.S. at 355 (internal punctuation omitted).  In *Cleveland v. United States*, for example, the Supreme Court reversed a conviction because the object of the fraud – video poker licenses fraudulently obtained from the state of Louisiana by making material misrepresentations sent through the mail – did not constitute "property" in the hands of the state.  *Cleveland*, 531 U.S. at 15-16.  The Court explained that it did not matter if the object of the fraud "may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim."  *Id.* at 15.

Even if Plaintiffs had adequately alleged that Defendants made material misrepresentations, Plaintiffs do not allege that the "object of the fraud" was money or property in the hands of the internet users who are the alleged victims of the fraud.  Rather, as the TAC repeatedly makes clear, the alleged "object of the fraud" was money Defendants would obtain *from advertisers* participating in a Google advertising program when internet users "click on" advertisements  *See, e.g.*, ¶¶ 4, 112, 142, 209, 244.d.  Plaintiffs do not (and cannot) allege that the advertisers who allegedly pay the Defendants those revenues are victims of the alleged fraud.  And Plaintiffs do not, and cannot, allege that the Defendants obtain, or intend to obtain, money, property, or anything whatsoever from the internet users to whom misrepresentations are allegedly directed.  Indeed, in an effort to conjure up some injury suffered by the internet users, Plaintiffs contend that the alleged misconduct deprives internet users of "an inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association,

or sponsorship of goods or services." *Id.* ¶ 301. That "inherent interest," whatever it may be, is certainly not the equivalent of a legally cognizable "property interest." *See, e.g., Cleveland*, 531 U.S. at 20-27 (state government, though undoubtedly having a "substantial economic stake in the video poker industry," has no property interest in licenses it issues). For all of these reasons, the alleged misconduct of which Plaintiffs complain is simply not mail or wire fraud. *Cf. Corley v. Rosewood Care Ctr.,* 388 F.3d 990, 1008 (7th Cir. 2004) ("Not all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme to defraud'"). Plaintiffs have failed again to allege even a single predicate act (much less the requisite "pattern") of racketeering activity. Their RICO claim should, therefore, be dismissed.

### 4. Plaintiffs Fail To Allege the Reliance and Proximate Cause Requirements of RICO.

Even if Plaintiffs had alleged all of the statutory elements of a violation of § 1962(c), which they have not, the claim should still be dismissed because Plaintiffs have not adequately alleged facts sufficient to establish RICO's reliance and proximate cause requirements.

### (a) Plaintiffs Do Not Allege Reliance on the Purported Fraud.

Where, as here, a RICO claim is based on alleged predicate acts of mail or wire fraud, a plaintiff does not suffer an injury "by reason of" the RICO violation unless someone has actually relied upon the alleged misrepresentations constituting the fraud. *See, e.g., Bank of China v. NBM LLC*, 359 F.3d 171, 176-78 (2d Cir. 2004) ("We therefore now hold that in order to prevail in a civil RICO action predicated on any type of fraud, including bank fraud, the plaintiff must establish 'reasonable reliance' on the defendant's purported misrepresentations or omissions"); *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003) ("[T]o establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for establishing common law fraud"), *cert. denied*, 541 U.S. 1037 (2004).

As explained in section I.A.3(b)(ii)(B), *supra*, Plaintiffs do not allege that they, internet users, *or anyone else*, actually were deceived into believing that any domain owned or operated by Defendants actually was owned or operated by Plaintiffs (or any other putative class member). Although trademark infringement can result from a mere "likelihood of confusion," trademark infringement does not constitute "racketeering activity" under RICO. Rather,

Plaintiffs' RICO claim is based on alleged predicate acts of mail and wire fraud, and to be injured "by reason of" such acts, it is necessary for someone to have actually relied upon the misrepresentations constituting the alleged fraud. *See, e.g.*, *Bank of China*, 359 F.3d at 176-78. Thus, even if Plaintiffs had adequately alleged that the Defendants made a misrepresentation to that effect (and they have not and cannot), Plaintiffs would still have failed to allege that they suffered an injury "by reason of" the alleged predicate acts of mail and wire fraud. As a consequence, Plaintiffs' RICO claim fails to state a claim and should be dismissed.

### (b)    Defendants' Alleged Misconduct Is Not the Proximate Cause of Plaintiffs' Claimed Injuries.

Plaintiffs' RICO claim also fails because Plaintiffs cannot plead that Defendants' misconduct directly caused Plaintiffs' alleged injuries. Plaintiffs' alleged injuries are, at best, derivative of injuries (if any) to their prospective customers. *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995). In *Israel Travel*, the plaintiff asserted a RICO claim based on allegations that the defendants made fraudulent representations to the plaintiff's prospective customers, which allegedly caused the plaintiff to lose business. 61 F.3d at 1253-54, 1257-58. The plaintiff's claim failed, the court held, because the injury the plaintiff allegedly suffered (lost sales) was indirect – that is, it was "derivatively" caused by frauds allegedly perpetrated against the plaintiff's prospective customers. *Id.* at 1258. As the court explained: "[B]usiness rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only the customers are the beneficiaries of the statutory protection. . . Section 1341 does not protect vendors to persons who may be deceived, and firms suffering derivative injury from business torts therefore must continue to rely on the common law and the Lanham Act rather than resorting to RICO." *Id.*

The same principle applies here. Plaintiffs allege that Defendants perpetrated a fraud on internet users attempting to reach web pages owned and controlled by Plaintiffs and other putative class members, and that, as a result, Plaintiffs suffered lost business opportunities. *See, e.g.*, ¶ 464. Plaintiffs' alleged injury, therefore, is derivative of the injury allegedly suffered *directly* by the internet users.[4] That the confusion and deception allegedly suffered by internet

---

[4] See ¶ 303 ("Defendants' bad actions . . . directly cause injury to the public" (emphasis added)); see also ¶¶ 146, 166 (alleging that Defendants divert Internet users from the web sites they attempted to reach); ¶ 299 (alleging that challenged domains are likely to cause confusion, mistake, and deception caused by the Defendants and relied upon

(continued...)

users indirectly may have harmed Plaintiffs in the form of lost business opportunities is irrelevant, because "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers." *Israel Travel*, 61 F.3d at 1258.

The Supreme Court recently considered and affirmed this proximate causation requirement in the RICO context. In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006), the Court concluded that a plaintiff who had lost market share or a competitive advantage as a result of an alleged scheme to defraud a third party could not maintain a RICO action. *Id.* at 459–460. The Court concluded:

> Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices . . . A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense.

*Id.* at 459.

As in *Anza*, any competitive disadvantage or lost market share suffered by Plaintiffs would not have been proximately caused by the alleged RICO fraud directed at consumers; for Plaintiffs have again alleged that Defendants engaged in a scheme "to defraud or obtain money [from consumers] by means of false pretenses, representations or promises [directed to consumers]." ¶¶ 258-259. The direct victim of any fraud here would have been consumers, not Plaintiffs. Plaintiffs claim that Defendants used infringing domain names for the purpose of gaining revenue and commercial profit resulting in "increased advertising click revenue, increased market share, and other economic and related benefits and commercial gain." ¶ 470. As a consequence, any harm suffered by Plaintiffs can only be derivative, just like the harm alleged in *Anza*.

Following the Supreme Court's dismissal of the RICO claim in *Anza*, the Seventh Circuit has confirmed that it is "clear that a civil RICO claim cannot survive unless the plaintiff properly alleges that the RICO violation was the proximate cause of his or her damages." *James Cape &*

_____

(continued...)

by Internet users); ¶ 301 (alleging that Defendants' activities have irreparably harmed the general public which has an "inherent interest in being free from confusion, mistake, deception, confusion as to the source, affiliation, association, or sponsorship of goods or services").

*Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 403 (7th Cir. 2006). In *James Cape*, the plaintiff, a competing bidder, alleged that defendants engaged in a scheme to rig bids for construction projects for the State of Wisconsin Department of Transportation ("WisDOT") by using confidential information to rig bids. *Id.* at 398. In affirming the district court's dismissal of the RICO claim, the Seventh Circuit held that because the *direct* victim of defendants' scheme was WisDOT, a third party and not the plaintiff, the plaintiff could not claim its injuries were proximately caused by the defendants' scheme. *Id.* at 403-404.

Because Plaintiffs have not pleaded any injury directly caused by the alleged RICO violation, their alleged injuries are merely derivative. Consequently, they have no standing to assert this RICO claim and it should be dismissed.

**B.      Plaintiffs Fail To State a Claim Under 18 U.S.C. § 1962(a).**

The one new claim in Plaintiffs' TAC is the claim relating to investment or use of the proceeds of racketeering activity under § 1962(a).[5] This claim fails because one of its elements is a RICO enterprise, which, as already demonstrated, they did not adequately plead. In addition, the claim fails because the TAC does not plead reinvestment of funds in the alleged RICO enterprise. For Plaintiffs to state a cause of action under the stringent pleading requirements of § 1962(a), they must plead that it was the specific investment and use of racketeering proceeds that proximately caused their injuries. Because, in each version of their Complaint, Plaintiffs consistently allege that it was Defendants' conduct in purportedly exploiting their trademarks which has caused them damage (which they have tried, but never succeeded, in otherwise weaving into a RICO scheme), they have pled themselves out of court under § 1962(a).

**1.      Plaintiffs' § 1962(a) Claim Fails Because They Have Failed To Allege the Requisite Elements of a RICO Enterprise.**

Section 1962(a) requires Plaintiffs to plead a legally cognizable RICO enterprise, or their claim will fail. *See e.g. Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 779 (N.D. Ill. 2005).

---

[5] The relevant portion of § 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The RICO enterprise is the entity which is either established, or operated, by the use or reinvestment of the ill-gotten gains from racketeering activity that forms the basis for a § 1962(a) claim.

For all the reasons stated in section I.A.1, *supra.*, Plaintiffs have failed to plead the requisite characteristics of a RICO enterprise. As a consequence, Plaintiffs cannot sustain their § 1962(a) claim, and it, therefore, should be dismissed.

      2.      **Plaintiffs' § 1962(a) Claim Fails Because They Do Not Plead That Racketeering Income Was Used or Invested in the Establishment or Operation of an Enterprise.**

Even if Plaintiffs' allegations established a RICO enterprise, which they do not, the TAC still fails to adequately allege that racketeering income was used or invested in such an enterprise. Indeed, the TAC is replete with references to Defendants individually profiting or receiving income, without reference to a RICO enterprise. For example, although in Paragraph 7(a) Plaintiffs claim that each Defendant acts in concert (presumably with the others), they are allegedly *"independently profiting and deriving commercial gain from the illegal conduct alleged herein."* Only in an inadequate boilerplate nod to the elements of a § 1962(a) claim (¶ 338) is there any allegation that proceeds were used to acquire or establish an interest in a separate enterprise.[6] Finally, Plaintiffs fail to allege that proceeds were used to operate the enterprise – as opposed to the Defendants' individual businesses – except in the same boilerplate paragraph. Conclusory allegations of use or investment of racketeering income are insufficient to sustain a § 1962(a) claim. *See e.g. Pyke v. Laughing*, 1998 U.S. Dist. LEXIS 884, at *15 (N.D.N.Y. Jan. 22, 1998). As a consequence, the § 1962(a) claim fails and should be dismissed.

      3.      **Plaintiffs Have Failed To Allege an Injury Directly Caused by Defendants' Use or Investment of Racketeering Income and Distinct from the Alleged Predicate Racketeering Acts.**

Another independent reason for dismissing of the § 1962(a) claim is Plaintiffs' failure to allege an injury directly caused by the use or investment of racketeering proceeds. The obligation to plead this nexus between investment and use and a plaintiff's damages is frequently

---

[6] "The basic purpose of § 1962(a) is to 'prevent racketeers from using their ill-gotten gains to operate, or purchase a controlling interest in, legitimate businesses.'" *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 2007 U.S. Dist. LEXIS 18567, at *23 (N.D. Ill. Mar. 15, 2007) (quoting in part *Lugosch v. Congel*, 443 F. Supp. 2d 254, 270 (N.D.N.Y. 2006)).

referred to as the "investment injury rule." The overwhelming majority of courts that have considered claims under § 1962(a) follow the investment injury rule, requiring a plaintiff to "allege that her injury was caused by defendants' use or investment of income derived from racketeering activity" and admonishing that a plaintiff "cannot merely claim harm caused by predicate racketeering acts." *Starfish Inv. Corp.*, 370 F. Supp. 2d at 779 (declining plaintiff's "invitation to depart from the tide of cases from this district applying the majority investment rule"). While the Court of Appeals for the Seventh Circuit has not explicitly adopted the investment injury rule, it has "expressed accord with the majority of circuits that have adopted the rule." *Cobbs v. Sheahan*, 385 F. Supp. 2d 731, 736 (N.D. Ill. 2005) (citing *Vicom, Inc.*, 20 F.3d at 778 n. 6); *see also Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 965 (N.D. Ill. 2002) ("After the Seventh Circuit's decision in *Vicom*, each court in this district addressing the issue has adopted the majority use or investment rule").

Even if Plaintiffs alleged that the proceeds from the predicate acts were reinvested in an adequately pleaded enterprise, such an allegation alone is insufficient to satisfy the pleading requirements for a § 1962(a) claim. *See e.g. Allen v. New World Coffee, Inc.*, 2002 U.S. Dist. LEXIS 4624, at *14 (S.D.N.Y. Mar. 19, 2002). Mere allegations of use by, or reinvestment in, the enterprise do not satisfy the investment injury rule, because:

> [o]ver the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. *Section 1962(c)* is the proper avenue to redress injury caused by the racketeering acts themselves. If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless.

*Brittingham v. Mobil Corp.,* 943 F.2d 297, 305 (3d Cir. 1991).

In a lackluster effort to meet their obligation to plead investment injury, Plaintiffs sprinkle phrases in the TAC that allude generally to Defendants' financial dealings. But, these sporadic references reflect nothing more than normal business transactions without any reasonably conceivable link to Plaintiffs' alleged injuries. Indeed, Plaintiffs' awkward phrasing suggests that financial terms merely were inserted haphazardly in an unsuccessful attempt to

shoehorn the allegations into the injury requirements for standing under § 1962(a).[7]  Simply put, Plaintiffs' vague allusions to, and boilerplate assertions of, receipt, distribution, use and reinvestment of gains derived from the alleged enterprise (*see e.g.*, ¶¶ 9, 79, 124, 132, 224, 243, 338) and conclusory allegations of injury causation[8] fail to allege the requisite specific injury resulting directly from Defendants' purported reinvestment of income.

The TAC suffers, therefore, from the same deficiencies the court found in *Vega v. Contract Cleaning Maint., Inc.*, 2004 U.S. Dist. LEXIS 20949, at *42 (N.D. Ill. Oct. 18, 2004). There, as here, the plaintiffs failed "to allege any details of Defendants' investment of the income, how the income was invested to injure Plaintiffs or how Plaintiffs' alleged injury is distinguishable from the predicate racketeering act or reinvestment of the income into a business activity."  As a result, the court held that the "allegations are insufficient to allege a claim under § 1962(a)."  *Id.*  Because Plaintiffs have not done any better in their TAC, the outcome, dismissal of the § 1962(a) claim, should be no different.

### 4. Plaintiffs' Admissions that the RICO Predicate Acts Have Caused Their Injuries Foreclose Any Viable Claim of § 1962(a) Injury.

Not only have Plaintiffs failed to plead the requisite § 1962(a) nexus between investment and injury, but what they *have* pled fatally undermines any remote potential for a viable claim. The TAC makes clear that Plaintiffs' injuries were sustained by the predicate acts – not by reinvestment or use of proceeds.  Plaintiffs admit that:  "As a direct and proximate result, Lead Plaintiffs and the Class Members *have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity*." ¶ 339 (emphasis added).  Moreover, the putative class is defined to include only those persons who have sustained

---

[7] For example, where in previous iterations of their complaint, Plaintiffs pleaded:  "All defendants knowingly generate revenues from monetization of Deceptive Domains," FAC ¶ 240, the same allegation has now been modified to read "All Defendants knowingly generate, and then transact in, revenue generated from monetization of Deceptive Domains."  ¶ 129.  Further, Plaintiffs now allege that "Defendants continue to transact in money derived from the Deceptive Domain Scheme.…"  ¶ 210(e).  Transact in revenue?  Transact in money?  These half-hearted attempts to invoke § 1962(a) not only make little sense, but, more importantly, do not approach the level of substantive allegations required to satisfy the investment injury rule.

[8] "The injury and harm suffered by the Lead Plaintiffs and the Class, as alleged herein, was directly caused by, and was the direct result of, the Defendants' violations of 18 U.S.C. § 1962(a)(b)(c) and/or (d)."  ¶ 298.

injuries to their alleged trademark rights by Defendants' various alleged acts of trademark infringement – and nothing else. ¶ 66.

*Cobbs v. Sheahan*, 385 F. Supp. 2d 731 (N.D. Ill. 2005) makes clear that such pleading defects are fatal. In *Cobbs*, plaintiff alleged that the putative class was injured as a result of defendants' "investment and reinvestment of income derived" from the alleged acts, which suggested "a distinct investment injury." *Id.* at 736. The court, in granting the defendants' motion to dismiss, found, however, that the plaintiffs' express attribution of injury to the underlying predicate acts (extortion) "submarines her § 1962(a) claim . . . ." *Id.*; *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (plaintiff's alleged injury stemmed from the acts of copyright infringement pleaded in complaint, not from reinvestment of racketeering proceeds); *see also Pyke*, 1998 U.S. Dist. LEXIS 884, at *13 (admission that injuries were caused "by the distinct predicate acts which constitute the pattern of racketeering activity" seriously undermines claim that party was injured by use or investment of racketeering income). Plaintiffs' § 1962(a) claim likewise has been "submarined" by their repeated assertions that the alleged predicate acts have caused their claimed injuries.

Because Plaintiffs have not and cannot state a claim for a violation of § 1962(a) of RICO, Count I of the TAC should be dismissed.

### C. Plaintiffs Fail To State a RICO Conspiracy Claim Under 18 U.S.C. § 1962(d).

In order to plead a viable conspiracy claim under § 1962(d), "a plaintiff must allege that a defendant 'agreed to the objective of a violation of RICO.'" *Goren*, 156 F.3d at 732 (quoting *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986)). "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Slaney*, 244 F.3d at 600 (quoting *Goren*, 156 F.3d at 732). Although Plaintiffs need not prove a § 1962 (c) or (a) violation in order to succeed on their conspiracy claim, there are certain requisite elements common to both the conspiracy claim and the underlying claims. *See Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs*, 2007 U.S. Dist. LEXIS 30339 (N.D. Ill. Apr. 25, 2007) ("[I]n order to plead a RICO claim or a RICO conspiracy claim, the plaintiff must allege the existence and structure of an enterprise"); *Orrison v. Balcor Co.*, 1991 U.S. Dist. LEXIS 17930, at *17 (N.D. Ill. Dec. 5, 1991) ("There are five elements essential to all four subsections of § 1962. These are '(1) a

person; (2) an enterprise; (3) racketeering activity which (4) occurred in a pattern, and (5) caused injury'"); *see also Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 348 (7th Cir. 1992) (explaining that a conspiracy to violate section 1962(c) "requires an agreement to commit a pattern of predicate acts, [but] it does not require that any predicate acts actually be committed").

Thus, to state a claim under § 1962(d) for a conspiracy to violate § 1962(c), Plaintiffs must allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Vulcan Golf, LLC*, 2008 U.S. Dist. LEXIS 22155, at *85–86 (quoting *Goren*, 156 F.3d at 732). "In order to properly allege a conspiracy to violate 18 U.S.C. § 1962(a), a plaintiff must allege that the defendants agreed that income received through racketeering activities would be used or invested in the acquisition or establishment of an enterprise that affected interstate commerce." *Titan Int'l v. Becker,* 189 F. Supp. 2d 817, 828 (C.D. Ill. 2001).

In other words, to successfully allege a RICO conspiracy, Plaintiffs must plead both an agreement to violate RICO's substantive provisions and certain of the underlying elements of those violations. Here, Plaintiffs fall short of both requirements. For the reasons explained *supra*, Plaintiffs have failed to plead the requisite elements of the alleged underlying RICO violations, which include at least an enterprise and a pattern of racketeering activity with respect to both alleged underlying offenses. Moreover, Plaintiffs have failed to make anything other than boilerplate allegations as to Defendants' alleged agreements. While Plaintiffs recite the formula "in furtherance of a conspiracy" multiple times (*see e.g.* ¶¶ 144, 146-148, 150, 171, 178, 183, 447, 482-483), such a recitation does not get Plaintiffs beyond a motion to dismiss. *See Goren*, 156 F.3d at 733 ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy"). Plaintiffs fail to support their conspiracy to violate § 1962(c) claim with any allegation Defendants agreed to conduct the affairs of the alleged enterprise or that Defendants agreed to commit mail or wire fraud. Similarly, Plaintiffs do not support their conspiracy claim with any allegation that Defendants reached an agreement to jointly invest or use the proceeds of their racketeering activity in connection with the enterprise. Accordingly, Plaintiffs' RICO conspiracy claim should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT AND CIVIL CONSPIRACY (COUNTS XII AND XIII).

This Court dismissed Plaintiffs' unjust enrichment and conspiracy claims in the FAC because, among other things, Plaintiffs' allegations did not comply with Rule 9(b), and "the Court [was] left to guess as to which specific allegations are incorporated into these counts such that they could comply with Rule 9(b) . . . ." *Vulcan Golf, LLC,* 2008 U.S. Dist. LEXIS 22155, at *75. Plaintiffs chose to reassert these claims in the TAC by doing nothing more than incorporating by reference a string citation to other paragraphs in the complaint. *See* ¶¶ 470-471 and 475.

Plaintiffs' wholesale incorporation of the entire section of the TAC describing Defendants' alleged conduct does not get Plaintiffs over the Rule 9(b) hurdle on either their unjust enrichment or conspiracy claims, for a string citation gives no more guidance to Defendants than did the FAC already found wanting by the Court. Moreover, because the allegations of fraudulent conduct that Plaintiffs purport to incorporate by reference are themselves insufficiently pleaded, Plaintiffs' unjust enrichment and conspiracy claims necessarily fail and should be dismissed. *See Association Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well"); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 831 (N.D. Ill. 2007) (Manning, J.) (dismissing conspiracy to commit fraud claim given failure to adequately plead fraud).

## III. THE COURT SHOULD ONCE AGAIN DISMISS THE SECTION 32 CLAIM AS TO JACKSON AND THE DILUTION CLAIM AS TO BLITZ.

In its Opinion, this Court noted that the claim under § 32 of the Lanham Act, 15 U.S.C. § 1114(1), must be dismissed as to Jackson "[b]ecause Jackson fails to allege that he owns a registered mark[.]" *Vulcan Golf, LLC*, 2008 U.S. Dist. LEXIS 22155, at *35–36. The Court dismissed the dilution claim as to Blitz because "the FAC alleges facts as to plaintiff Blitz Realty that pleads Blitz out of court with respect to this claim"—namely, that Blitz is a "small, local real estate company." *Id.* at *46. The TAC still fails to allege that Jackson owns a registered mark,

and still includes the same facts showing why Blitz cannot bring a dilution claim.  Those uncured claims should be dismissed once again, this time with prejudice.

## IV. PLAINTIFFS' CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT XI) SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE KNOWLEDGE OF THE ALLEGEDLY EXPECTED BUSINESS RELATIONSHIP.

To properly plead intentional interference with prospective economic advantage, a plaintiff must plead facts showing that: (1) plaintiff has a reasonable expectancy of entering into a valid business relationship; (2) defendant knows of plaintiff's expectancy; (3) defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship; and (4) plaintiff suffers damages from defendant's interference. *Dynabest, Inc. v. Yao*, 760 F. Supp. 704, 712 (N.D. Ill. 1991).  With respect to certain plaintiffs and certain defendants, the TAC fails to plead the second of these elements—knowledge.  *See Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005) (finding no interference with prospective economic advantage when "there was no indication that defendants knew of such an expectancy or that they intentionally interfered with it to plaintiff's detriment").  There is no allegation that the Parking Company Defendants knew of the existence of any domains other than those they operated.  Plaintiffs logically cannot assert that all of the Parking Company Defendants knew of all of the domains at issue—and were responsible for interference allegedly caused by those domains—merely because each Parking Company Defendant knew of the sites it operated independently itself.  Thus, this claim must fail with respect to those plaintiff-defendant pairs for whom no interference is alleged.  Plaintiffs do allege that Dotster, Oversee, and Sedo interfered with a business expectancy existing between "internet users/consumers" and Plaintiffs Golf; Dotster, IREIT, and Oversee with JBSS; Sedo with Bo Jackson; and Oversee with Blitz.  TAC at 15.  But, this claim must be dismissed as to Plaintiffs Golf versus IREIT; as to JBSS versus Sedo; as to Bo Jackson versus Dotster, Oversee, and IREIT, and as to Blitz versus Dotster, IREIT, and Sedo.

## CONCLUSION

For all of the reasons stated above, Defendants respectfully request that the Court grant their motion and dismiss with prejudice Counts I, II, III, V, VII, XII, XIII, and portions of Count XI of the Third Amended Complaint.

Dated:  May 2, 2008                                    Respectfully submitted,


   /s/ Mariah E. Moran                             /s/ Thomas J. Wiegand               
One of the Attorneys for ***Google, Inc.***         One of the Attorneys for ***Oversee.net***

Joseph J. Duffy                                                 Thomas J. Wiegand
Jonathan M. Cyrluk                                         Ronald Y. Rothstein
Mariah E. Moran                                             Marlon E. Lutfiyya
Henry M. Baskerville                                       Winston & Strawn LLP
Stetler & Duffy, Ltd.                                        35 West Wacker Drive
11 South LaSalle Street – Suite 1200             Chicago, Illinois  60601-9703
Chicago, Illinois  60603-1203                         (312) 558-5600
(312) 338-0200                                               Email: twiegand@winston.com
Email: jduffy@stetlerandduffy.com             Email: rrothstein@winston.com
Email: cyrluk@stetlerandduffy.com             Email: mlutfiyya@winston.com
Email: mmoran@stetlerandduffy.com
Email: hbasker@stetlerandduffy.com          Andrew P. Bridges
                                                                      Winston & Strawn LLP
Michael H. Page                                             101 California Street
Joseph C. Gratz                                             Suite 3900
Keker & Van Nest LLP                                   San Francisco, California
710 Sansome Street
San Francisco, California  9411                       Steven D. Atlee
(415) 391 5400                                              Winston & Strawn LLP
Email: mhp@kvn.com                                     333 South Grand Avenue
Email: jgratz@kvn.com                                   38th Floor
                                                                      Los Angeles, California  90071
Aaron D. Van Oort
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
(612) 766-6000
Email:  avanoort@faegre.com

_____/s/ Brett A. August_____

One of the Attorneys for **Internet Reit, Inc.**

Brett A. August
Bradley L. Cohn
Alexis E. Payne
Pattishall, McAuliffe, Newbury, Hilliard &
Geraldson LLP
311 South Wacker Drive
Suite 5000
Chicago, IL 60606
(312) 554-8000
Email: baugust@pattishall.com
Email: bcohn@pattishall.com
Email: aep@pattishall.com

Steven R. Borgman
Kenneth P. Held
Vinson & Elkins LLP
1001 Fannin Street – Suite 2500
Houston, TX 77002
(713) 758 4353
Fax: (713) 615-5758
Email: sborgman@velaw.com
Email: kheld@velaw.com

Scott Ryan Wiehle
Vinson & Elkins
2001 Ross Avenue – Suite 3700
Dallas, TX 75201-2975
(214) 220-7700
Email: swiehle@velaw.com

_____/s/ Michael Dockterman_____

One of the Attorneys for **Dotster, Inc.**

Michael Dockterman
Alison C. Conlon
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive – Suite 2800
Chicago, Illinois 60606-1229

Vincent V. Carissimi
Robert L. Hickok
Joanna J. Cline
Pepper Hamilton LLP
3000 Two Logan Squire
18th & Arch Streets
Philadelphia, Pennsylvania 19103-2799

_____/s/ Jeffrey Singer_____

One of the Attorneys for **Sedo, LLC**

Jeffrey Singer
Misty R. Martin
Anastasios T. Foukas
Segal, McCambridge, Singer & Mahoney
233 South Wacker Drive – Suite 5500
Chicago, Illinois 60606
(312) 645-7800
Fax: (312) 645-7711
Email: jsinger@smsm.com
Email: mmartin@smsm.com
Email: afoukas@smsm.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on May 2, 2008, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

   /s/ Michael Dockterman            
Michael Dockterman
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, Illinois  60606-1229
Phone:  (312) 201-2000
Fax:     (312) 201-2555
Email:  dockterman@wildman.com

Attorney for *Dotster, Inc.*