# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Lead Plaintiffs, <br><br> v. <br><br> GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IREIT, INC., and JOHN DOES I-X, <br><br> Defendants. | Civil Action No. 07 CV 3371 <br><br> Honorable Blanche M. Manning <br><br> Magistrate Judge Geraldine Soat Brown |

## MOTION FOR PRELIMINARY INJUNCTION

Lead Plaintiffs, pursuant to this Court's May 5, 2008 order, each individually file this Motion for Preliminary Injunction, on their own behalf, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

**I.   INTRODUCTION**

1. This Motion for Preliminary Injunctive Relief is necessitated by the fact that Defendants have continued, unabated since the filing of this action, to monetize and otherwise use Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks, without the consent or authorization of Lead Plaintiffs. Despite repeated notice and demands by Lead Plaintiffs to cease engaging in said practices, Defendants continue their Illegal Deceptive Domain Scheme, as alleged more fully in the Third Amended Complaint ("TAC").

Dockets.Justia.com

## II. RELEVANT PROCEDURAL HISTORY

2. This action was filed on June 15, 2007. In the original Complaint, Lead Plaintiff Vulcan Golf alleged Defendants' unauthorized use and monetization of numerous Deceptive Domains that infringe its Distinctive and Valuable Marks, including "wwwvulcangolf.com." See Complaint ¶ 415.

3. Six weeks later, as of August 2, 2007, wwwvulcangolf.com, as well as many other Deceptive Domains, were still being used by one or more of the Defendants. *See August 2, 2007 Screenshot of wwwvulcangolf.com, attached hereto as Exhibit "C"*

4. On August 7, 2007, the Parties conducted an "in person" Rule 26 conference, where Lead Plaintiff presented a detailed powerpoint presentation setting forth the ongoing nature of Defendants' misconduct. Lead Plaintiff demanded that Defendants immediately cease monetization of Deceptive Domains.

5. Lead Plaintiff followed-up after the Rule 26 Conference, both orally and in writing, demanding that Defendants stop use and monetization of Deceptive Domains. *See August 13, 2007 e-mail, Attached hereto as Exhibit "D".*

6. Another example of Defendants' failure to cease unauthorized use and monetization, even after specific notice of a Deceptive Domain, is provided by Lead Plaintiffs at www.vulcangolfclubs.com. Said Domain was identified at the Rule 26 Conference, included in the August 13, 2007 Demand Letter, and yet was still being monetized and used by Defendant Google as of September 11, 2007. *See September 11, 2007 Screenshot of www.vulcangolfclubs.com, attached hereto as Exhibit "E."*

7. Despite the filing of the Complaint, oral notice/demands, written notice/demands, and the filing of the First Amended Class Action Complaint in Law and Equity ("FAC"), Defendants did not stop their use and monetization of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks, as is evidenced the October 17, 2007 screenshot of www.Vulcongolf.com, illustrating Defendant Google's use and monetization of said Deceptive Domain after months of notice and specific demands to cease by Lead Plaintiff Vulcan. *See October 17, 2007 Screenshot of www.Vulcongolf.com, attached hereto as Exhibit "F."*

8. On September 18, 2007, Lead Plaintiffs filed their First Amended Complaint ("FAC"), adding three (3) additional Lead Plaintiffs and putting Defendants on explicit notice of

the additional Lead Plaintiffs' Distinctive and Valuable Marks.

9. From the original filing of the Complaint through January 3, 2008, Lead Plaintiffs attempted to obtain Defendants' cooperation in identifying, filtering, blocking, and ceasing monetization and use of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks. Defendants simply would not cooperate or stop said misconduct.

10. On January 3, 2008, Lead Plaintiffs filed a Motion for Preliminary Injunctive relief based on Defendants' willful, continued, and egregious use and monetization of Deceptive Domains despite notice and demands from Lead Plaintiffs to cease said conduct. Monetization of Deceptive Domains related to Plaintiff Bo Jackson, with Google-controlled pornography advertisements, was among the "irreparable harm" alleged by Lead Plaintiffs. *See Motion for Preliminary Injunction attached hereto as Exhibit "A."*

11. On January 25, 2008, Lead Plaintiffs filed a "Supplement to Motion for Preliminary Injunctive Relief" based on continued, ongoing and increased use and monetization of Deceptive Domains, even since the filing of the Motion for Preliminary Injunctive Relief, including the new monetization with Google-controlled pornography advertisements of the Deceptive Domain www.foshernuts.com, which is a typosquat ("1"character deviation) from Class Plaintiff JBSS website www.fishernuts.com. *See Supplement to Motion for Preliminary Injunctive Relief attached hereto as Exhibit "B."*

12. On February 5, 2008, this Court struck Lead Plaintiffs' Motion for Preliminary Injunctive Relief without prejudice as premature, because it had not ruled on Defendants' pending Motion to Dismiss.

13. On March 20, 2008, this Court denied all Defendants' Motions to Dismiss (Counts 3, 5, 9, 10, 11, 12), alleging violations of Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), common law trademark violations, contributory trademark infringement, vicarious trademark infringement, and intentional interference with prospective economic advantage.

14. On April 9, 2008, Lead Plaintiffs filed a Second Amended Class Action Complaint In Law and Equity ("SAC") and a Motion for Leave to Refile Motion for Preliminary Injunctive Relief and Supplement and to Conduct Expedited Limited Discovery, since the

Motion for Preliminary Injunctive Relief is now timely since all Defendants' Motions to Dismiss the ACPA, Lanham Act, and common law trademark claims have been denied.

15. On April 15, 2008, Lead Plaintiffs filed a Third Amended Complaint ("TAC").

16. On May 5, 2008, the Court granted Lead Plaintiffs leave to file the Motion for Preliminary Injunctive Relief on their own behalf, but denied it leave to file on behalf of the putative class.

### III. ONGOING AND CONTINUOUS NATURE OF MISCONDUCT

17. Defendants' continued and repeated conduct in furtherance of the Deceptive Domain Scheme, and blatant use and monetization of Deceptive Domains that they know infringe on Lead Plaintiffs' Distinctive and Valuable Marks, evidence the fact that absent judicial intervention and preliminary injunctive relief, Defendants will not voluntarily cease said conduct.

18. Defendants have misrepresented to the Court that they have obviated the need for injunctive relief by voluntarily ceasing monetization of Deceptive Domains immediately upon notice from Lead Plaintiffs. In fact, Defendants engage in a deceptive charade where they simply "deactivate" (block) use of a Deceptive Domain for a short period of time (after notice by Lead Plaintiff) and then, shortly thereafter, start monetizing the Deceptive Domain again, as is evidenced by their use of Deceptive Domains such as www.wwwvulcangolf.com, www.vulcongolf.com, www.vulcangolfclubs.com, and other obviously Deceptive Domains, even months after receiving notice by Lead Plaintiffs.

19. Since the inception of this action, Defendants have never actually ceased or stopped use and monetization of Deceptive Domains permanently, rather they intentionally and continuously brazenly taste, kite, register, monetize, engage in cybersquatting, cyberpiracy, typosquatting, hijacking of traffic, and/or otherwise use (without consent or authorization) Deceptive Domains that clearly infringed on Lead Plaintiffs' Distinctive and Valuable Marks. The following are just a few examples of the many Deceptive Domains that have been tasted, kited, cybersquatted, monetized and/or used by one or more of the Defendants since the filing of this action, notice to Defendants of Lead Plaintiffs' Distinctive and Valuable Marks and repeated oral and written demands by Lead Plaintiffs that Defendants cease said unauthorized use and monetization:

| | | |
|---|---|---|
| BlitzRealtyGrup.com | BoJacksonNude.com | BoJacksonSex.com |
| BoJacksonPorn.com | buyfishernuts.com | vulgangolf.com |
| vulcingolf.com | vulcengolf.com | blitzrealtygrop.com |
| vulkangolf.com | bojacksonxxx.com | fishernutscompany.com |
| xxxbojackson.com | bojacksonpics.com | bojacksoninjury.com |
| fihsernuts.com | jbssiinc.com | fisherntus.com |
| fisherrnuts.com | bojacksonfootball.com | fisherspeanuts.com |
| Bojacksontrainershoe.com | bojacksoncars.com | vulcangolfgifts.com |
| wwwblitzrealtygroup.com | fisshernuts.com | vulcaingolf.com |
| foshernuts.com | bojacksonfootballcamp.com | bojacksoncleats.com |
| fishernutssales.com | | |

The screenshots associated with these Deceptive Domains are attached hereto as *Exhibit "G." See also additional infringing Deceptive Domains monetized by Defendant in the list below:*

Bojacksonsporn.com
bojacksonbaseballcamp.com
fishernurs.com
bojacksonvitamins.com

20. Even after filing the Motion for Leave to Refile Motion for Preliminary Injunctive Relief and Supplement and to Conduct Expedited Limited Discovery, on April 9, 2008, that alleged ongoing violations, as of April 25, 2008, the following chart illustrates a sampling of some of the Deceptive Domains that were actively being monetized/used by one or more of the Defendants in violation of Lead Plaintiffs' rights:

| New Domains Being Monetized by Defendants | | |
|---|---|---|
| Domain | Still Active As Of | Defendants |
| realtyblitz.com | 4/25/2008 | Google |
| fishernutsgifts.com | 4/25/2008 | Google/Oversee.net |
| bojacksonfootball.com | 4/25/2008 | Google/Oversee.net |
| mailvulcangolf.com | 4/15/2008 | Google/Oversee.net |
| fishetnuts.com | 4/25/2008 | Google/Oversee.net |
| fisgernuts.com | 4/25/2008 | Google/Oversee.net |
| buyfishernuts.com | 4/25/2008 | Sedo |

*See April 25, 2008 Screenshots, attached hereto as Exhibit "H."*

21. Compounding the harm to Lead Plaintiffs, Defendant Google and Defendant Domain Sponsor have even displayed obscene and pornographic advertisements on pornographic/obscene Deceptive Domains containing Lead Plaintiff Bo Jackson and Lead Plaintiff JBSS's good names, including: BoJacksonNude.com; BoJacksonSex.com; BoJacksonPorn.com; xxxbojackson.com; bojacksonxxx.com; bojacksonporn.com and www.foshernuts.com (just 1 character deviation from Class Plaintiff JBSS's website www.fishernuts.com). *See attached Exhibit "G."*

22. Each of said Deceptive Domains, infringing on Lead Plaintiffs' Distinctive and Valuable Marks, share the following common characteristics:

   i. Parked Domains (as defined in ¶83.v. of the TAC);

   ii. Advertising/Non-Content/revenue-generating sites;

   iii. Domain names in which Defendants have no legitimate business, legal, property, or commercial right;

   iv. Domain Names that contain all or a significant portion of Lead Plaintiffs' business or personal names;

   v. Domain Names that are not being used for any legitimate commercial purpose;

   vi. Used and monetized <u>after</u> Defendants had notice of Lead Plaintiffs' Distinctive and Valuable Marks; and

   vii. Each Deceptive Domain generates revenue that is used, distributed and shared by Defendants, as set forth in the Deceptive Domain Scheme alleged in the TAC.

## IV. **INJURY TO LEAD PLAINTIFFS**

23. Each Lead Plaintiff owns Distinctive and Valuable Marks that they are entitled to have protected.

24. Defendants are, and have been, aware that Lead Plaintiffs are the rightful owners of the Distinctive and Valuable Marks.

25. Defendants knowingly disregard Lead Plaintiffs' rights and interests.

26. Lead Plaintiffs are each suffering irreparable harm as a direct and proximate result of Defendants' use and monetization of Deceptive Domains that infringe their Distinctive and

Valuable Marks, cyberpiracy, cybersquatting, typosquatting, tasting, kiting, hijacking/redirecting internet traffic away from Lead Plaintiffs, and other such illegal conduct as set forth in more detail in the TAC.

27. Defendants' outrageous conduct, requiring preliminary injunctive relief, includes their use and monetization of Deceptive Domains, <u>after</u> the date Defendants represented to this Court (in their briefings in support of their motions to dismiss) that they had ceased monetizing Deceptive Domains that infringe on Lead Plaintiffs' Distinctive and Valuable Marks. Defendants have repeatedly made false statements to the Court regarding their ongoing use and monetization of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks. *See August 10, 2007 Google, Inc. Memorandum of Law in Support of its Motion to Dismiss, Docket Entry Number 61, pg. 10-11; October 18, 2007, Google, Inc.'s Memorandum of Law in Support of its Motion to Dismiss First Amended Complaint, Docket Entry Number 101, pg. 2; November 13, 2007, Google, Inc.'s Reply Brief in Support of Its Motion To Dismiss, Docket Entry Number 108, pg. 2; December 4, 2007, Google, Inc.'s Case Management Statement, Docket Entry Number 113, pg. 2; April 14, 2008, Defendants' Response to Plaintiffs' Motions, Docket Entry Number 156, pg.7-8.*

28. The nature of the injuries being suffered by Lead Plaintiffs (loss of goodwill, reputation, customers, confusion, dilution, etc.), in conjunction with the highly obscene/offensive/pornographic advertisements placed on many Deceptive Domains, results in irreparable harm and makes legal remedies inadequate, thus necessitating preliminary injunctive relief.

29. Lead Plaintiff Bo Jackson has and is suffering irreparable harm to his reputation, good name, and the goodwill associated with his name by Defendants' monetization of offensive/pornographic Deceptive Domains (containing his name) with elicit, offensive, obscene and pornographic advertisements, including but not limited to: Teen Pornography, Gay Pornography, Ethnic Pornography (Asian, Black, etc.), "Big Tits," "XXX," "Cheap Porn," "Eva Longoria Nude." *See Exhibit "G."*

30. Lead Plaintiff JBSS has and is suffering irreparable harm to its reputation, good name, and the goodwill associated with its name by Defendants' monetization of Deceptive

Domains, such as www.foshernuts.com, with offensive/pornographic advertisements. *See Exhibit "G."*

## V. LEGAL STANDARD

31. Lead Plaintiffs seek preliminary injunctive relief against all Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 65, the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and common law trademark claims alleged in the TAC. A party seeking a preliminary injunction must demonstrate that it has some likelihood of success on the merits, that there is no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. *Am. Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 803 (7th Cir. 2002); *see also Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001). The Seventh Circuit set forth the applicable standard requiring moving parties: "need only demonstrate at the preliminary injunction stage that it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." *Id.*

32. When faced with a motion for a preliminary injunction, a district court must remain flexible, and weigh the equities as to each element of preliminary relief sought by the plaintiff. *Lawson Products, Inc. v. Avnet, Inc*., 782 F.2d 1429, 1435-36 (7th Cir. 1986). Preliminary injunctions are "by [their] very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 739, 742 (2nd Cir. 1953). *See also United States v. White County Bridge Commission,* 275 F.2d 529, 534 (7th Cir. 1960).

33. The temporary nature of the remedy mitigates, without eliminating, the concern with the possibility of mistake and need for the "correct" answer. *See United States Steel Corp. v. Fraternal Association of Steelhaulers,* 431 F.2d 1046, 1048 (3rd Cir. 1970); *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1133 (9th Cir. 1979).

34. Preliminary injunctions are routinely granted in Lanham Act, ACPA and common law trademark cases, on the basis that said violations are inherently, and presumably, inadequately redressed with a legal remedy, and damages are extremely hard to quantify (loss of goodwill, diversion of business, reputation, etc.). *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992); *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846

F.2d 1079, 1084 (7th Cir. 1988); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) citing *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1045 (9th Cir. 1999) (where the Court explained "[u]sing another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store" (*Brookfield,* 174 F.3d, at 1064)). *See Broadbridge Media, L.L.C. v. Hypercd.com*, 106 F.Supp.2d 505. (S.D.N.Y. 2000). *See also Her, Inc. v. RE/MAX First Choice, LLC*, 468 F.Supp.2d 964 (S.D.Ohio 2007); *Advance Magazine Publishers, Inc. v. Vogue Intern.*, 123 F.Supp.2d 790 (D.N.J. 2000); *Shields v. Zuccarini*, 89 F.Supp.2d 634 (E.D.Pa. 2000).

35. Further, the *necessity* of preliminary injunctive relief is well-recognized in cybersquatting cases under the Lanham Act, 15 U.S.C. §1116(d). *See Shields v. Zuccarini,* 89 F. Supp.2d 634, 54 U.S.P.Q.2d (BNA) 1166, 1172 (E.D.Pa. 2000), subs proceedings 2000 WL 1056400 and 2000 WL 1053884 (E.D.Pa. 2000), both aff'd 254 F.3d 476, 59 U.S.P.Q.2d 1207, 1213 (3rd Cir. 2001); *1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467, 69 U.S.P.Q.2d (BNA) 1337, 195 A.L.R. Fed. 641 (S.D.N.Y. 2003); *Northern Light Technology v. Northern Lights Club,* 97 F. Supp.2d 96 (D.Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001), cert. denied, 533 U.S. 911, 121 S.Ct. 2263, 150 L. Ed. 2d 247 (2001); *Porsche Cars North America, Inc. v. Spencer*, 55 U.S.P.Q.2d (BNA) 1026, 1032, 2000 WL 641209 (E.D.Cal. 2000); *Advance Magazine Publishers Inc. v. Vogue Intern.,* 123 F. Supp. 2d 790, 801 (D.N.J. 2000); *Electronics Boutique Holdings Corp. v. Zuccarini,* 56 U.S.P.Q.2d (BNA) 1705, 2000 WL 1622760 (E.D.Pa. 2000) (where the court explained that: "It is impossible to determine the number of potential and existing customers diverted from EB's website by Mr. Zuccarini's domain misspellings. A user-friendly website is important to EB's online success. There must be as few steps, or clicks, as possible between initially accessing EB's website and the completion of the transaction, as each computer click represents a significant amount of time. Those who get lost in the advertisements may abandon their intention to purchase from EB. Others simply may never find EB's website. These customers may not only be discouraged from shopping at EB online, but may also be discouraged from shopping at EB's outlets in person as well. Furthermore, it is impossible to calculate the loss of reputation and goodwill caused by Mr. Zuccarini's domain misspellings. …"); *DaimlerChrysler v. The Net, Inc.,* 388 F.3d 201, 203 (6th Cir. 2004), citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 493 (2nd Cir. 2000).

36. Any inquiry must start with the well-established presumption that <u>Lanham Act injuries are irreparable</u>. *See International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir. 1988); *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2nd Cir. 1988). *See also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852 (7th Cir. 1982) (Where manufacturer of toy cars to which were affixed symbols of origin which had become associated with television series did not introduce evidence *to rebut inference* that its intentional copying of television series car effectively created confusion on part of consuming public, manufacturer failed to show that clear abuse of discretion resulted from federal district court's granting of preliminary injunction against manufacture, sale or distribution of such toy cars); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) (Irreparable harm, as required to obtain a preliminary injunction, is generally presumed in cases of trademark infringement and dilution.) *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) (The law presumes, for purposes of preliminary injunctive relief, that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law); *Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808 (7th Cir. 2002).

37. Lead Plaintiffs will each suffer irreparable injury if this Court does not require Defendants to immediately cease registration, tasting, kiting, use and monetization of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks. *See Larson v. Galliher*, 2007 WL 81930 (D. Nev. 2007).

38. Defendants, who have admitted use and monetization of said Deceptive Domains in their filings with the Court[1], have the burden of disproving the Lanham Act/ACPA

---

[1] Defendants attempt to "obviate" the need for preliminary injunctive relief by misrepresenting to the Court that they have immediately ceased use and monetization of the Deceptive Domains identified by Lead Plaintiffs. *See August 10, 2007 Google, Inc. Memorandum of Law in Support of its Motion to Dismiss, Docket Entry Number 61, pg. 10-11; October 18, 2007, Google, Inc.'s Memorandum of Law in Support of its Motion to Dismiss First Amended Complaint, Docket Entry Number 101, pg. 2; November 13, 2007, Google, Inc.'s Reply Brief in Support of Its Motion To Dismiss, Docket Entry Number 108, pg. 2 December 4, 2007, Google, Inc.'s Case Management Statement, Docket Entry Number 113, pg. 2; April 14, 2008, Defendants' Response to Plaintiffs' Motions, Docket Entry Number 156, pg.7-8.*

*presumption* of irreparable harm that arises from the unauthorized use and monetization of Lead Plaintiffs' Distinctive and Valuable Marks.

39. Defendants have violated 15 U.S.C. §1125(d), by their actions in (1) registering, trafficking in, or using Deceptive Domains that are identical to, or confusingly similar to, distinctive and valuable marks owned by Lead Plaintiffs and/or the class; and (2) committing the acts with the bad faith intent to profit from Class Plaintiff's marks. See *Rosati's Franchise Sys., Inc. v. Rosati,* 2006 WL 163145, at *5 (N.D. Ill. 2006) (citing 15 U.S.C. §1125(d)(1)). Each of the Deceptive Domains alleged herein are:

   i. Parked Domains;

   ii. Advertising Only/Non-Content sites;

   iii. Domain names in which Defendants have no legitimate business, legal, property, or commercial right;

   iv. Domain Names that contain all or a significant portion of Lead Plaintiffs' business or personal names; and

   v. Each Deceptive Domain generates revenue that is used, distributed and shared by Defendants, as set forth in the Deceptive Domain Scheme alleged in the TAC.

40. Defendants' use of the Deceptive Domains was done with the bad faith intent to profit in violation of 15 U.S.C. §1125(d), in so much as Defendants had no prior use of the domain names for a bona fide offering of goods or services. See *Victoria's Secret Stores v. Artco Equipment Co., Inc.,* 194 F. Supp. 2d 704, 722 (S.D. Ohio 2002).

41. Additionally, Defendants intend to divert consumers from Lead Plaintiffs' online location to a site accessible under the Deceptive Domain that could harm Lead Plaintiffs' goodwill, reputation, commercial gain, create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site, and otherwise damage Lead Plaintiffs' business and property.

42. Defendants have continued, on an ongoing basis, to engage in the widespread Deceptive Domain Scheme that involves the registration, tasting, kiting, acquisition, licensing, parking, monetization, and/or other such unauthorized use of Deceptive Domains which the Defendants know are identical or confusingly similar to Lead Plaintiffs' Distinctive and Valuable

Marks. Defendants continue said misconduct for the express purpose of generating ill-gotten revenue and commercial gain.

43. Defendants otherwise act in a manner that demonstrates bad faith intent to commercially profit from the unauthorized use of Deceptive Domains, actuation of the Deceptive Domain Scheme, and/or otherwise violates the Lanham Act, 15 U.S.C. 1051 *et seq.*, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d), and common law trademark laws.

44. The public interest will be served by requiring Defendants to comply with the law and cease and desist making money from the illegal and unauthorized use of Lead Plaintiffs' property.

45. The TAC contains abundant factual allegations supporting and demonstrating a high likelihood of success on each of the alleged legal claims.

## VI. <u>NECESSITY OF ADDITIONAL DISCOVERY</u>

46. However, in the interest of providing this Court with a complete evidentiary record, in support of its Motion for Preliminary Injunctive Relief, Lead Plaintiffs seek limited discovery relevant to said motion. Since discovery has been stayed in this action, Lead Plaintiffs have not had the opportunity to discover various relevant facts and data.

47. Defendants are in exclusive possession of the relevant facts and data, such as a complete list of Deceptive Domains (infringing Lead Plaintiffs' Distinctive and Valuable Marks) that each Defendant has tasted, kited, monetized and/or otherwise used during the relevant time frame set forth in the TAC.

48. Courts have discretion to grant expedited limited discovery in connection with a motion for preliminary injunctive relief, especially since different standards of proof and of preparation generally apply to the emergency hearing, as opposed to a full trial. *Paris v. U.S. Dept. of Housing and Urban Development*, 713 F.2d 134 (C.A.Ind., 1983).

49. In fact, the Seventh Circuit has recognized that a litigant applying for a preliminary injunction should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial. *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972).

50. Lead Plaintiffs will be able to provide this Court with additional evidentiary

support for its Motion for Preliminary Injunctive Relief if it is permitted to conduct limited discovery relevant to this Motion for Preliminary Injunctive Relief.

## VII. PRAYER FOR RELIEF

WHEREAS, Defendants refuse to cease and desist their illegal conduct detailed herein and in the TAC, without Court intervention, Lead Plaintiffs respectfully request that this Court enter a Preliminary Injunction against all Defendants, granting relief as follows:

1. All Defendants ordered to immediately cease and desist tasting, kiting, registration, licensing, parking, monetizing, sale, trafficking in, cybersquatting, typosquatting, cyberpiracy, and/or other use of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks;

2. Order any Defendant, as a sanction, to pay one hundred thousand dollars ($100,000.00) per domain, pursuant to 15 U.S.C. 1117, for each Deceptive Domain that it tastes, kites, registers, licenses, parks, monetizes, sells, traffics in, and/or otherwise uses, after the date of entry of the Order granting preliminary injunctive relief, that infringes Lead Plaintiffs' Distinctive and Valuable Marks;

3. All Defendants to provide a complete list of each Deceptive Domain that it has registered, licensed, tasted, kited, monetized, sold, trafficked in, an/or otherwise used, that infringes Lead Plaintiffs' Distinctive and Valuable Marks, and the amount of revenue generated or received therefrom;

4. Order a constructive trust over all revenue received by any of the Defendants from the monetization and/or use of Deceptive Domains that infringe Lead Plaintiffs' Distinctive and Valuable Marks;

5. Award reasonable attorneys' fees and costs associated with the filing of this Motion; and

6. Award any and all such other relief as this Court deems just and appropriate.

FOOTE, MEYERS, MIELKE & FLOWERS, LLC

By: /s/ Robert M. Foote
Robert M. Foote, Esq. (#03214325)
Stephen W. Fung, Esq. (#06289522)
Mark A. Bulgarelli, Esq. (#06284703)
Foote, Meyers, Mielke & Flowers, LLC
28 North First St., Suite 2

Geneva, IL 60134
Tel. No.: (630) 232-6333

Kathleen C. Chavez, Esq. (#6255735)
Chavez Law Firm, P.C.
28 North First St., Suite 2
Geneva, IL  60134

William J. Harte, Esq.
Dana Pesha, Esq.
William J. Harte, Ltd.
111 West Washington Street, Suite 1100
Chicago, IL 60602
Benjamin G. Edelman, Esq.
Law Office of Benjamin Edelman
27a Linnaean Street
Cambridge, MA 02138
Tel. No.: (617) 359-3360

Bryan L Clobes, Esq.
Cafferty Faucher, LLP
1717 Arch Street
Suite 3610
Philadelphia, PA 19103

Nyran Rose Pearson, Esq.
Dominic J. Rizzi, Esq.
Cafferty Faucher LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Lead Plaintiffs, <br><br> v. <br><br> GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM, INTERNET REIT, INC. d/b/a IREIT, INC., and JOHN DOES I-X, <br><br> Defendants. | Civil Action No. 07 CV 3371 <br><br> Honorable Blanche M. Manning <br><br> Magistrate Judge Geraldine Soat Brown |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2008, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Brett A. August
baugust@pattishall.com

Michael H. Page
mhp@kvn.com

Mariah Moran
mmoran@stetleranduffy.com
edocket@stetleranduffy.com

Janelle M. Carter
jcarter@winston.com
ECF_CH@winston.com

Kenneth P. Held
kheld@velaw.com

Steven Borgman
sborgman@velaw.com
jwarren@velaw.com
steveborgman@gmail.com
yshumaker@velaw.com

Bradley L. Cohn
bcohn@pattishall.com

Alison Conlon
conlon@wildmanharrold.com
ecf-filings@wildmanharrold.com
hardt@wildmanharrold.com

Jonathan M. Cyrluk
cyrluk@stetleranduffy.com
edocket@stetleranduffy.com

Joseph Gratz
jgratz@kvn.com

Misty Martin
mmartin@smsm.com

Alexis Payne
aep@pattishall.com

Ronald Rothstein
rrothsstein@winston.com
ECF_CH@winston.com
mconroy@winston.com

Jeffrey Singer
jsinger@smsm.com

Anastasios Foukas
afoukas@smsm.com

Scott R. Wiehle
swiehle@velaw.com

Michael R. Dockterman
dockterman@wildmanharrold.com
ecf-filings@wildmanharrold.com
eckertm@wildmanharrold.com

Joseph Duffy
jduffy@stetleranduffy.com
bdorgan@stetleranduffy.com
edocket@stetleranduffy.com

William J. Harte
wharte@williamharteltd.com
mccarey@williamharteltd.com

Dana Marie Pesha
dpesha@williamharteltd.com
mccarey@williamharteltd.com

Scott Ryan Wiehle
swiehle@velaw.com

Aaron Van Oort
mavanoort@faegre.com

Adam Lauridsen
ALauridsen@kvn.com

Marlon Emile Lutfiyya
mlutfiyya@winston.com

Henry Baskerville
hbasker@stetleranduffy.com

Thomas Wiegand
twiegand@winston.com

I certify that I have served the foregoing document by emailing a copy to the following individuals:

Steven Atlee
SAtlee@winston.com

Vincent V. Carissimi
carissimiv@pepperlaw.com

Joanna J. Cline
clinej@pepperlaw.com

Robert J. Hickok
hickokr@pepperlaw.com

/s/Robert M. Foote