# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., a/k/a REVENUE DIRECT.COM., INTERNET REIT, INC., d/b/a IREIT, INC., and JOHN DOES I-X<br>　　　　Defendants. | Hon. Blanche M. Manning<br><br>07 C 3371 |

## MEMORANDUM AND ORDER

**I.　　Background**

The court assumes familiarity with the facts of this case based on its prior order of March, 20, 2008, but briefly sets out some basic relevant facts. Plaintiffs Vulcan Golf, LLC, John B. Sanfilippo & Son, Inc. ("JBSS"), Blitz Realty Group, Inc., and Vincent E. "Bo" Jackson, have filed a complaint styled as a class action lawsuit against the following defendants: Google, Inc., Oversee.net, Sedo LLC, Dotster, Inc. a/k/a revenuedirect.com, Internet Reit, Inc., d/b/a Ireit, Inc., and John Does I-X.

The plaintiffs allege that Google and the other defendants have engaged in a wide-ranging scheme whereby they receive "billions of dollars in ill-gotten advertising and marketing revenue" by knowingly and intentionally registering, licensing and monetizing purportedly deceptive domain names at the expense of the plaintiff-mark owners. The court granted in part the defendants' motion to dismiss the First Amended Complaint with leave to replead the dismissed

counts, specifically: (1) the RICO counts; (2) trademark infringement as to plaintiff Bo Jackson; (3) dilution of trademark as to plaintiff Blitz; (4) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") count; (5) the declaratory judgment count; (6) the intentional interference with current economic advantage count; (7) the unjust enrichment count, and (8) the civil conspiracy count.

Currently before the court is the defendants' consolidated motion to dismiss the Third Amended Complaint ("TAC"), which realleges all of the claims stated in the First Amended Complaint but does not seek a declaratory judgment or relief under the ICFDBPA. The defendants have filed a consolidated motion to dismiss the RICO counts, the claim for tortious interference with prospective economic advantage, the unjust enrichment count and the conspiracy count.[1]

For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## I. Standard on Motion to Dismiss

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

---

[1] The defendants also seek to dismiss the trademark infringement count as to Bo Jackson and the dilution count as to Blitz Realty. However, in a footnote in their response to the motion to dismiss, the plaintiffs acknowledge that the repleading of these counts was inadvertent. Accordingly, the court grants the defendants' motion to dismiss the trademark infringement count as to Bo Jackson and the dilution count as to Blitz Realty.

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(citations omitted).

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) *(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic )*. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n. 14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim for relief that is plausible on its face.").

**III.  Analysis**

    A.    <u>RICO counts</u>

The first three counts of the TAC seek relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et. seq.* Count I pleads a claim under 18 U.S.C. 1962(a), Count II is a claim under 18 U.S.C. § 1962(c), and Count III alleges a claim under 18 U.S.C. § 1962(d). The court addresses the motion to dismiss each of these counts in turn.

    1.    § 1962(c)

Under the federal RICO statute, it is "unlawful for any person employed by or associated

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(citations omitted).

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) *(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic )*. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n. 14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim for relief that is plausible on its face.").

**III.   Analysis**

    A.    <u>RICO counts</u>

The first three counts of the TAC seek relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et. seq.* Count I pleads a claim under 18 U.S.C. 1962(a), Count II is a claim under 18 U.S.C. § 1962(c), and Count III alleges a claim under 18 U.S.C. § 1962(d). The court addresses the motion to dismiss each of these counts in turn.

    1.    § 1962(c)

Under the federal RICO statute, it is "unlawful for any person employed by or associated

with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ." 18 U.S.C. § 1962(c). Under section 1962(c), a plaintiff must allege a defendant's (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Lachmund v. ADM Investor Servs., Inc*., 191 F.3d 777 (7th Cir. 1999).

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc*., 229 F.3d 673 (7th Cir. 2000). Indeed, the "hallmark of an enterprise is 'structure.'" *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994)(citation omitted). Specifically, a RICO enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)(citations omitted). Further, there must be "an organization with a structure and goals separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991). "Thus, in order to adequately plead a claim under § 1962(c), the complaint must identify an 'association in fact' that is meaningfully different in the RICO context from the units that go to make it up." *Williams v. Ford Motor Company*, 11 F. Supp. 2d 983, 986 (N.D. Ill. 1998)(citation omitted).

The TAC alleges that the RICO enterprise is the Google Network, which it defines as: (1) Defendant Google; (2) the Parking Company Defendants; (3) Google Search Network (America Online, CompuServe, Netscape, AT&T WorldNet, EarthLink, Sympatico, and others); (4)

Google Content site partners (New York Post Online Edition, Mac Publishing (includes Macworld.com, JavaWorld, LinuxWorld), HowStuffWorks, and others); (5) Google Adsense Network (Parking Company Defendants, Domain Aggregators, Domain Registrants, and other third party website owners, blog sites, domain registrants, licensees and aggregators that enter into agreements with Defendant Google for the monetization of domains under their license/control/ownership). *See* TAC at ¶ 214. It further alleges that each defendant is a "person" within the meaning of the RICO statute. *Id*. at ¶ 212.

The court agrees with the defendants that the TAC fails to repair the fatal deficiencies of the First Amended Complaint regarding the allegations of structure and enterprise. As an initial matter, the plaintiffs' rote recitation of the legal requirements of a RICO claim fail to satisfy pleading requirements post-*Bell Atlantic*. For instance, the TAC alleges:

> 215. The RICO Enterprise is an ongoing structure of persons associated with [sic] time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decisionmaking and whose activities affect, [sic] interstate and foreign commerce. As set forth herein, the RICO Enterprise has a defined structure, framework, and organization conducive to making decision [sic]. Written rules, procedures, contracts, licenses, and other agreements operate to establish a defined mechanism to control the affairs of the RICO Enterprise on an ongoing basis.

However, this paragraph is nothing more than a regurgitation of the appropriate legal requirements for a plaintiff to sufficiently plead enterprise and structure.

The plaintiffs argue that they have pled the requisite hierarchical structure by pleading that Google controls the Enterprise by providing essential access to the revenue generating AdWords advertisers, organizing and promulgating rules for the operation of the Enterprise, and controlling and monitoring participation in the Enterprise. For instance, under the heading

"Structure and Roles of Participants in the RICO Enterprise," TAC at page 50, the TAC alleges that:

> 226. Each participant/member of the RICO Enterprise is crucial to its functions and operation, as generally summarized below:
>
> a. Defendant Google: Provides access to the revenue generating Adwords Advertisers and organizes, controls, monitors participation in and otherwise operates the RICO Enterprise;
>
> b. Google Network: Participate in the RICO Enterprise for the purpose of generating revenue from services provided in connection with AdWords Advertisements placed/displayed on domains/sites/video/ search results under their license, control, and/or ownership.

But these allegations stand for the conclusory and unenlightening proposition that the Google Network, defined as the RICO Enterprise, participates in the RICO Enterprise. Moreover, while the TAC alleges what the RICO Enterprise members purportedly do, *see* TAC ¶ 240, a plaintiff cannot establish structure by describing what the enterprise does. *Brown v. County of Cook*, 549 F. Supp. 2d 1026, 1031 (N.D. Ill. 2008)("Seeking to define an enterprise by what it does fails to establish a structure . . . .")(citation omitted).

As in its previous order dismissing the RICO claim, the court finds *Stachon* instructive. In *Stachon*, the plaintiffs alleged that the defendants, United Consumer Club, Inc. ("UCC"), a consumer purchasing club, and its executives, had violated RICO. The district court concluded that the plaintiffs had failed to allege an enterprise, stating as follows:

> [T]hat UCC, over its 21-year existence, contracted with numerous manufacturers, suppliers, and members fails to establish an "ongoing structure." Plaintiffs offer nothing to demonstrate that the changing, *unnamed* manufacturers, suppliers, and members function with UCC as a continuing unit or as an ongoing structure.

*Stachon v. United Consumers Club, Inc.,* 98 C 7020, 1999 WL 971284, at *3 (N.D. Ill. Oct. 21,

1999), *aff'd*, 229 F.3d 673 (7th Cir. 2000). In finding no structure, the district court in *Stachon* went on to note that:

> Further, Plaintiffs offer nothing to show that the alleged "enterprise" is more than UCC simply contracting with members and suppliers. . . . Plaintiffs provide, and the court finds, *no case law to support that a purchasing club's (or any corporation's) ordinary business dealings with past and present manufacturers, suppliers, or members constitute a structure.* . . .
>
> Each Individual Defendant, manufacturer, supplier, and member enters into agreements for their own benefit. But nothing within these ordinary business relationships *mirrors a hierarchical organization, nor do these relationships foster consensual decision making in pursuit of the enterprise's alleged purpose. . . . In fact, Plaintiffs offer nothing to show that these entities ever made consensual decisions as a unit to promote its alleged purpose.* . . .

*Id*. at **3-4 (citations omitted)(emphasis added).

The plaintiffs' revised version of its complaint does not cure the problem identified by the *Stachon* court. Here, the TAC alleges at great length how Google manages its relationships with its advertisers through contracts, licenses, policies and procedures. *See, e.g.*, TAC ¶ 248 ("Through rules, regulations, licenses, contracts and other terms and conditions, [sic] imposed by Defendant Google, participation in and operation of the RICO Enterprise is governed by a defined structure and written terms."); ¶ 251 ("Defendant Google and the Parking Company Defendants use the structure of the Enterprise, the written agreements, licenses, sublicenses, and other related rules/terms to control all aspects of the affairs of the RICO Enterprise and to carry out the Decepetive Domain Scheme alleged herein."); ¶ 230 (chart that sets out the location on the internet of the contractually-based terms and conditions of participation in Google's advertising program). The TAC also alleges that Google allows certain individuals and entities, including the parking company defendants, to subcontract with third parties for "derivative

participation." TAC ¶ 250.

But the plaintiffs' reliance on the intricacies of Google's complex contractual structure cannot take the place of alleging how Google, the parking company defendants and the other purported enterprise members "function as a continuing unit." Indeed, as noted by another court in this district, "the mere fact that the financial [here, contractual] relationships themselves were 'structured' does not infuse the alleged 'enterprise' with any structure." *Blue Cross and Blue Shield of Alabama v. Caremark, Inc.*, No. 98 C 1285, 1999 WL 966434, at *8 (N.D. Ill. Sept. 30, 1999).

There are simply no allegations in the TAC that indicate that the members of the alleged Google Network engaged in consensual decisionmaking or were joined in purpose to further the goals of the enterprise. Indeed, there is nothing to suggest that the various members of the alleged Google Network had any specific knowledge of the others' existence. *Id*. ("Indeed, there is no indication that the individual Caremark Referral Sources were even aware of each others' existence."). As noted by another district court:

> Here, as defendants point out, there are no allegations (and it is difficult to see how there could be) that the thousands of doctors who benefitted from discounted purchases or free samples of Lupron® were associated together in any meaningful sense, or were even aware of one another's existence as participants in a scheme to defraud. Without the elements of organization and control, whether informal or formal, and the existence of an association, whether legal or factual, any group of persons sharing a common occupation, e.g., urologists and lawyers, and a similar motive, e.g., greed, could be held to constitute a RICO enterprise.

*In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 173-74 (D. Mass. 2003)(internal citations omitted).² Similarly, in the instant case, while the various members of

---

²As also discussed by the *In re Lupron* court, the hub-and-spoke scheme alleged by the plaintiffs is generally not accepted as a RICO enterprise:

the alleged enterprise may likely assume that they are not the only entities who have contracted with Google to receive advertising services, none of the allegations suggest that the hundreds of thousands (if not millions) of members of the alleged RICO enterprise (i.e., the Google Network[3]) are specifically aware of the other members such that they are organized in any structured manner or joined in purpose.

> Here, there is no allegation of a general agreement between TAP and the collective providers, rather individual agreements between TAP and the respective providers are alleged. This type of "hub-and-spoke" configuration of a conspiracy is largely disfavored. . . . Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO enterprise requirement. *See VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000) (rejecting a RICO enterprise involving defendant bank and a series of sub-lenders with whom the bank associated, because there were no allegations of a mechanism by which this group "conducted its affairs or made decisions"); *New York Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 97-CV-3164, RICO Bus. Disp. Guide 9611, 1998 WL 695869 at *6 (S.D.N.Y. Oct. 6, 1998) (rejecting a hub-and-spoke enterprise in which auto-insurer conspired with individual clients to provide them lower insurance rates, without any evident association between the clients; stating "Such a series of discontinuous independent frauds is not an 'enterprise.' Each is a single two-party conspiracy."); *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (holding that hub-and-spoke scheme is not an enterprise); *Blue Cross and Blue Shield of Ala. v. Caremark, Inc.*, 98-CV-1285, RICO Bus. Disp. Guide 9828, 1999 WL 966434 at *8 (N.D. Ill. 1999) (rejecting enterprise theory in RICO insurance-fraud claim involving health providers because "[p]laintiffs fail to allege how this large and geographically diverse group of almost 3,000 independent physicians and entities acted in concert with one another .... there is no indication that the individual [providers] were even aware of each other's existence."); *Blue Cross of Cal. v. SmithKline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 551-53 (D. Conn. 1998) (rejecting proposed enterprise consisting of insurer and, among others, thousands of doctors, where there was no evidence doctors were even aware of alleged kickback scheme).

*In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d at 173-74.

[3]The TAC alleges that the RICO Enterprise (i.e., Google Network) is the "largest internet advertising network in the world." TAC ¶ 217.

The defendants' motion to dismiss the § 1962(c) is granted. Because the court concludes that the count is dismissed with prejudice, it need not address the other bases for dismissal.

2. § 1962(a)

The plaintiffs also allege for the first time in the TAC a RICO claim under § 1962(a), which states that:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"Though there are significant substantive differences among the cited RICO provisions, the existence of an 'enterprise' and a 'pattern of racketeering' are elements that are fundamental to each of the RICO subsections." *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 769 (N.D. Ill. 2005)(citing 18 U.S.C. § 1962; *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1303-04 (7th Cir. 1987); *Dudley Enter., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 501 (N.D. Ill. 1993)). Because the court has already concluded that the plaintiffs have failed to plead an enterprise, the defendants' motion to dismiss the § 1962(a) claim, Count I, is granted.

3. § 1962(d)

To state a claim under § 1962(d), the plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). However, because the plaintiffs have failed to

establish a violation of § 1962(c) for failure to allege an enterprise, their § 1962(d) claim based on the same facts must also fail. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) (relying on *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1026 (7th Cir. 1992)). Therefore, Count III is dismissed.

  B.  <u>Unjust Enrichment and Civil Conspiracy</u>

The defendants contend that the unjust enrichment and civil conspiracy counts should be dismissed because the allegations do not comply with Fed. Rule Civ. P. 9(b), which requires that fraud claims be alleged with specificity.

"Under Illinois law, a civil conspiracy is defined as: '(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.'" *Foodcomm Int'l. v. Barry*, 463 F. Supp. 2d 818, 830 (N.D. Ill. 2006)(citation omitted). "A plaintiff may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *Fortech, L.L.C. v. R.W. Dunteman Co., Inc.*, 852 N.E.2d 451 (Ill. App. Ct. 2006)(citations and internal quotation marks omitted).

Neither of these claims includes fraud as an element of the claim. However, the Seventh Circuit has stated that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)(citations omitted). Accordingly, "a claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct –

can implicate Rule 9(b)'s heightened pleading requirements." *Id*. (citations omitted).

In *Borsellino*, the Seventh Circuit analyzed specific allegations of the complaint to determine whether the claims for tortious interference with economic advantage, tortious interference with fiduciary relationship and civil conspiracy were subject to Rule 9(b) pleading standards. In concluding that these three claims did "sound in fraud," (as apparently conceded by the plaintiffs in that case), the Seventh Circuit noted that:

> The first paragraph of the complaint begins: "This action arises out of a pattern of fraud and racketeering activity," and the complaint goes on to accuse Goldman Sachs of being "a conspirator with Putnam in defrauding Plaintiff into abandoning his interest in CTA, and thus his rights to one-third of Archipelago." This fraud, it is charged, was a tortious interference with the plaintiffs' economic advantage and CTA's fiduciary relationship; Goldman Sachs allegedly conspired with Putnam and the Townsends to commit the fraud. Furthermore, the appellants' opening brief is riddled with references to fraud, showing that this theory pervades their entire case, but especially these three claims.

*Id*. (internal citations omitted).

The defendants generally argue that the allegations which the plaintiffs incorporate by reference into their unjust enrichment and civil conspiracy claims are insufficient to satisfy Rule 9(b). However, the defendants have completely failed to address the threshold question of whether or not the unjust enrichment and civil conspiracy counts necessarily sound in fraud and simply assert it is so. The plaintiffs' statements in response are equally unhelpful. They first argue that the claims do not require fraud as an element and contend that the TAC "is replete with allegations of wrongful conduct that would establish the unjust nature of allowing Defendants to retain the benefits from the Deceptive Domain Scheme." Response at 31 (pointing to allegations of using, licensing, and monetizing domains in purported violation of trademark laws, domain redirection and concealment, tasting and kiting of domain names and use of

distinctive and valuable marks causing dilution). They then conclude, with no analysis, that this alleged wrongful concerted action is also sufficient to meet Rule 9(b)'s requirements as to the civil conspiracy count. The plaintiffs then, in a puzzling statement, argue that even if the court construes the unjust enrichment claim to be based on fraud, plaintiffs have satisfied this burden as well–again, with no analysis.

The parties make superficial arguments with little to no specific analysis of the actual allegations of the complaint and presumably expect the court to do the actual work for them. Moreover, the court is left to sift through the unfocused arguments by the plaintiffs who have failed to clearly identify the basis of their claims.[4]

In any event, both parties cite to *Association Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007), in support of their positions. In that case, the plaintiff alleged that the defendant had committed fraud and was unjustly enriched when it entered into a contract

---

[4]They first defend the unjust enrichment civil conspiracy claim by contending that because the court construed their ICFDBPA claim, which was pled in their First Amended Complaint and which is *not* repled in the TAC, as disavowing a claim of fraud, then heightened pleading does not apply to the unjust enrichment and civil conspiracy counts as currently pled in the TAC. This argument is misguided on two levels. First, an amended complaint supersedes any previously filed complaints. The TAC stands on its own. To the extent that the court made any determination on a count that is not pled in the version of the complaint currently before it, it is irrelevant. Second, and more troubling, is the court's impression that the plaintiffs are avoiding (either intentionally or unintentionally) having to state exactly what they are pleading. The plaintiffs are masters of their complaint. It is their job to tell the defendants and the court what their claim is based on, not the other way around. The court should not be in a position to have to construe the allegations in one way or another. Indeed, despite this being their fourth attempt to properly plead their claims, the plaintiffs do not seem to know whether they are pleading fraudulent conduct or not. *See* Plaintiffs' Response to the Motion to Dismiss at 31 ("To the extent this Court construes the unjust enrichment claim to be based on fraud. . . ."). The plaintiffs' inability to succinctly and intelligently discuss and defend their unjust enrichment and civil conspiracy claims only fuels a concern that the plaintiffs have employed a "kitchen sink" approach in the drafting of their complaint.

with a third party. The plaintiff had introduced the defendant to the third party and had, according to the plaintiff, expected to receive certain commissions on the transactions between the defendant and the third party. The district court granted summary judgment to the defendant on the unjust enrichment claim holding that "because the claim of fraud failed, [the plaintiff] had not demonstrated the necessary element of wrongdoing [as to the unjust enrichment claim]." *Association Ben. Servs.*, 493 F.3d at 854.

The Seventh Circuit, in affirming the district court, acknowledged that fraud is not a required element of an unjust enrichment claim. *Id*. at 855. However, the Seventh Circuit concluded that because the wrongdoing upon which the unjust enrichment claim was predicated was fraud, and the district court had properly rejected the fraud claim, then the unjust enrichment claim also failed. *Id*. (referring favorably to another Seventh Circuit case which held that "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support *an independent claim of fraud*, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.")(emphasis added).

Here, however, the plaintiffs do not plead a separate fraud claim. Instead, the wrongdoing and unlawful conduct alleged by the plaintiffs includes trademark violations and violations of the ACPA, which are not based on fraud. Thus, the defendants' motion to dismiss these claims for failing to comply with Rule 9(b) is denied.

  C. <u>Tortious Interference with Prospective Economic Advantage</u>

To establish a claim for tortious interference with prospective economic advantage, the plaintiffs must show: (1) their reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of that expectancy; (3) purposeful interference by the

defendants preventing that expectancy from being fulfilled; and (4) damages resulting from such interference. *Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004). According to the defendants, this claim should be dismissed because, with respect to certain plaintiffs and certain defendants, the TAC fails to plead the second element of knowledge.

Specifically, the defendants assert that the TAC does not allege that the parking company defendants knew of the existence of any domains other than their own. Thus, the defendants argument goes, the plaintiffs cannot logically assert that all of the parking company defendants knew of all of the domains at issue and thus, only certain defendants can be responsible for tortiously interfering with certain domains. In particular, the defendants contend that while the plaintiffs allege that: (1) Dotster, Oversee and Sedo interfered with a business expectancy existing between internet users/consumers and plaintiff Vulcan Golf; (2) Dotster, IREIT and Oversee interfered with JBSS; (3) Sedo interfered with Bo Jackson; and (4) Oversee interfered with Blitz, the claims as to plaintiff Vulcan Golf versus IREIT; JBSS versus Sedo; Bo Jackson versus Dotster, Oversee, and IREIT; and Blitz versus Dotster, IREIT, and Sedo must be dismissed due to a lack of knowledge.

While framing their argument as one based on knowledge, the defendants are essentially making an argument based on standing. For the same reasons as stated in its order of March 18, 2008, the court will not address issues of standing until the issue of class certification is resolved. The defendants' motion to dismiss the tortious interference claim is denied.

## IV. Conclusion

For the reasons stated above, the motion to dismiss [165-1] is granted in part and denied in part. Specifically, the motion to dismiss the RICO counts is granted while the motion to

dismiss the civil conspiracy, unjust enrichment, and tortious interference counts is denied. Given that the plaintiffs have now had three opportunities to properly plead their RICO claims[5], the motion to dismiss those counts is with prejudice. The plaintiffs shall file within 21 days of the date of entry of this order their motion for class certification. The defendants shall file a consolidated response within 21 days thereafter and the plaintiffs shall file their reply, if any, within 14 days thereafter.

**ENTER:**

**Date:** July 31, 2008

_____
**Blanche M. Manning**
**United States District Judge**

---

[5] The three opportunities were in the initial complaint, the First Amended Complaint and the Third Amended Complaint. The court notes that the plaintiffs filed their First Amended Complaint after the briefing on the defendants' motions to dismiss had been completed. While no order had been entered on the initial motions to dismiss, the plaintiffs had the benefit of the defendants' arguments on the RICO claim when they filed their First Amended Complaint. The plaintiffs then had the benefit of the court's analysis of the RICO claims in the March 20, 2008, order on the defendants' motion to dismiss the First Amended Complaint when they filed their TAC, which is at issue here. After dismissing certain counts of the First Amended Complaint and being given permission to replead, the plaintiffs initially filed a Second Amended Complaint. However, the SAC contained a cause of action (a declaratory judgment request) that had been dismissed and which the plaintiffs did not amend; thus, the court ordered the plaintiffs to file a TAC eliminating that count before the instant briefing on the motion to dismiss.