IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENTE E. "BO" JACKSON, Individually And On Behalf Of All Others Similarly Situated, | ) Case No. 07 CV 3371 ) ) ) ) |
| Lead Plaintiffs, | ) The Honorable Blanche M. Manning ) ) |
| v. | ) Magistrate Judge Geraldine Soat Brown ) |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM INTERNET REIT, INC. d/b/a/ IREIT, INC.; and JOHN DOES I-X, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' CONSOLIDATED OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  ADDITIONAL FACTUAL BACKGROUND ...............................................3

III. ARGUMENT ..................................................................................................4

    A.   To apply the requirements of Rule 23(a) and (b), the Court must
        determine how this case will be tried........................................................4

    B.   Plaintiffs' proposed class is not objectively ascertainable and would
        require this Court to make merits rulings to determine class
        membership...............................................................................................6

    C.   Plaintiffs' proposed class cannot be maintained under Rule 23(b)(3). ....9

        1.   Individual issues overwhelmingly predominate here. ................9

            a.   Litigating whether the asserted marks are sufficiently
                distinctive to be protected will require discovery from
                individual owners and separate rulings for each mark..................13

            b.   Litigating whether an identified domain name is likely
                to confuse consumers will require separate discovery
                for each asserted mark and domain name and separate
                rulings for each mark. .................................................................16

            c.   Litigating trademark ownership will require discovery
                from individuals and separate rulings for each owner. .................20

            d.   Litigating whether personal names are protectable will
                require discovery from individual people and separate
                rulings for each name...................................................................20

            e.   Litigating whether the asserted marks are famous and
                have been diluted will require discovery from
                individual owners and separate rulings for each mark..................21

            f.   Litigating defenses such as abandonment and fraudulent
                registration will require separate discovery from
                individual owners and separate rulings for each mark..................22

            g.   Litigating plaintiffs' unjust-enrichment claims would
                require an impracticable application of the laws of all
                50 states......................................................................................22

        2.   A class action is not the superior method of resolving this
            litigation. .................................................................................24

             a.   This case cannot manageably be tried as a class action.................24

# TABLE OF CONTENTS
## (cont'd)

**Page**

b.     History shows that individual trademark issues are best resolved individually, whether informally through complaint procedures or formally through individual lawsuits ...................................................................................25

c.     The novelty of plaintiffs' class-certification theory poses a substantial threat to the domain-development industry, which weighs against resolving these issues in a single class action....................................................................26

3.     The copyright class-action cases plaintiffs rely on in support of their motion are inapposite in this trademark case....................................27

D.     Class treatment is improper under Rule 23(b)(2) because this case requires hearings on each individual class member's claim and is primarily about money damages...........................................................................28

E.     Class treatment is improper under Rule 23(b)(1)(A)..............................................31

F.     Plaintiffs' proposed class does not even satisfy the threshold requirements of Rule 23(a) for certification of a class. ........................................32

1.     The named plaintiffs are not adequate class representatives. ...................32

2.     The named plaintiffs are not typical class members, because some plaintiffs have different claims against some defendants.................34

IV.     CONCLUSION.............................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Alliance to End Repression v. Chicago*
565 F.2d 975 (7th Cir. 1977) ...........................................................................8

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997).........................................................................10, 26, 31, 32

*Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*
962 F.2d 316 (4th Cir. 1992) .........................................................................16

*Avlon Industries v. Robinson*
2005 WL 331561 (N.D. Ill.) ...........................................................................15

*Badger Meter, Inc. v. Grinnell Corp.*
13 F.3d 1145 (7th Cir. 1994) .........................................................................28

*Bafus v. Aspen Realty, Inc.*
236 F.R.D. 652 (D. Idaho 2006) .....................................................................10

*Banff, Ltd. v. Federated Dep't Stores, Inc.*
841 F.2d 486 (2d Cir. 1988) ...........................................................................14

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*
235 F.3d 1041 (7th Cir. 2000) .......................................................................17

*Blazon, Inc. v. Blazon Mobile Homes Corp.*
416 F.2d 598 (7th Cir. 1969) .........................................................................30

*Bliss Salon Day Spa v. Bliss World LLC*
268 F.3d 494 (7th Cir. 2001) .........................................................................17

*Boshes v. Gen. Motors Corp.*
59 F.R.D. 589 (N.D. Ill. 1973).......................................................................25

*Broussard v. Meineke Discount Muffler Shops, Inc.*
155 F.3d 331 (4th Cir. 1998) .........................................................................33

*Castano v. American Tobacco Co.*
84 F.3d 734 (5th Cir. 1996) ...........................................................................27

*Chambers v. Time Warner*
66 U.S.P.Q.2d 1292 (S.D.N.Y. 2003).........................................................3, 12

*Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*
2001 WL 1035721 (N.D. Ill.) .........................................................................15

*Chmielski v. City Prod. Corp.*
71 F.R.D. 118 (W.D. Mo. 1976).....................................................................32

*Clausnitzer v. Federal Exp. Corp.*
248 F.R.D. 647 (S.D. Fla. 2008).....................................................................24

*Clay v. Am. Tobacco Co.*
188 F.R.D. 483 (S.D. Ill. 1999) .....................................................................24

*Colburn v. Puritan Mills*
108 F.2d 377 (7th Cir. 1939) .........................................................5, 16, 17, 19

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Corley v. Entergy Corp.*
    222 F.R.D. 316 (E.D. Tex. 2004) ........................................................32

*Custom Vehicles, Inc. v. Forest River, Inc.*
    476 F.3d 481 (7th Cir. 2007) ...................................................8, 13, 20

*David v. Showtime/ The Movie Channel, Inc.*
    697 F. Supp. 752 (S.D.N.Y. 1988) ....................................................28

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*
    343 F.2d 655 (7th Cir. 1965) .............................................................15

*Door Systems, Inc. v. Pro-Line Door Systems, Inc.*
    83 F.3d 169 (7th Cir. 1996) ...............................................................13

*e360 Insight v. The Spamhaus Project*
    500 F.3d 594 (7th Cir. 2007) .............................................................31

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)..............................................................................4

*Eldred v. Experian Info., Inc.*
    233 F.R.D. 508 (N.D. Ill. 2005)........................................................24

*Emilio Pucci Societa a Responsibilita Limitata v. Pucci Corp.*
    10 U.S.P.Q.2d 1541 (N.D. Ill. 1988) ..............................................20

*Flentye v. Kathrein*
    485 F. Supp. 2d 903 (N.D. Ill. 2007) ............................................8, 12

*Fletcher v. Behring*
    245 F.R.D. 328 (N.D. Ill. 2006)........................................................6, 8

*Ford v. Nylcare Health Plans of the Gulf Coast*
    190 F.R.D. 422 (S.D. Tex. 1999) ......................................................12

*Garcia v. Veneman*
    211 F.R.D. 15 (D.D.C. 2002)............................................................10

*Genenbacher v. Centurytel Fiber Co. II, LLC*
    244 F.R.D. 485 (C.D. Ill. 2007).......................................................21

*General Tel. Co. v. Falcon*
    457 U.S. 147 (1982)..............................................................................5

*Gilpin v. AFL-CIO*
    875 F.2d 1310 (7th Cir. 1989) ..........................................................34

*Green v. Occidental Petroleum Corp.*
    541 F.2d 1335 (9th Cir. 1976) ..........................................................32

*Halverson v. Convenient Food Mart, Inc.*
    69 F.R.D. 331 (N.D. Ill. 1974)......................................................9, 10

*Hinman v. M & M Rental Ctr.*
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................6

*Hudson v. Chicago*
    242 F.R.D. 496 (N.D. Ill. 2007) .........................................................9

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Ilapak Research & Dev. S.A. v. Record SpA.*
762 F. Supp. 1318 (N.D. Ill. 1991) ............................................................20

*In the Matter of Rhone-Poulenc Rorer Inc.*
51 F.3d 1293 (7th Cir. 1995) ...................................................................27

*In re Bridgestone/Firestone, Inc.*
288 F.3d 1012 (7th Cir. 2002) .................................................................23

*In re Conagra Peanut Butter Prods. Liability Litig.*
2008 WL 2885951 (N.D. Ga.) ..................................................................24

*In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*
241 F.R.D. 305 (S.D. Ill. 2007) ...............................................................23

*In re Grand Theft Auto Video Game Consumer Litig.*
2008 WL 2971526 (S.D.N.Y.) ..................................................................24

*In re Initial Pub. Offering Sec. Litig.*
243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................10

*In re Napster, Inc. Copyright Litigation*
2005 WL 1287611 (N.D. Cal. June 1, 2005) .....................................3, 27, 28

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*
2007 WL 4287511 (N.D. Ill.) ..............................................................23, 24

*In re Terazosin Hydrochloride Antitrust Litig.*
220 F.R.D. 672 (S.D. Fla. 2004) ..............................................................24

*In re Trans Union Corp. Privacy Litig.*
211 F.R.D. 328 (N.D. Ill. 2002) .........................................................23, 24

*Inwood Labs., Inc. v. Ives Labs., Inc.*
456 U.S. 844 (1982) ...............................................................................14

*Isaacs v. Sprint Corp.*
261 F.3d 679 (7th Cir. 2001) ...................................................................25

*Jefferson v. Ingersoll Int'l, Inc.*
195 F.3d 894 (7th Cir. 1999) ..............................................................29, 32

*Kenro v. Fax Daily, Inc.*
962 F. Supp. 1162 (S.D. Ind. 1997) ..........................................................8

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004) ...............................................................10

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
543 U.S. 111 (2004) .........................................................................8, 11, 20

*Lau v. Arrow Fin. Servs., LLC*
245 F.R.D. 620 (N.D. Ill. 2007) ................................................................6

*Lemon v. Int'l Union of Operating Engrs.*
216 F.3d 577 (7th Cir. 2000) ...................................................................29

*Levi Strauss & Co. v. Blue Bell, Inc.*
778 F.2d 1352 (9th Cir. 1985) ..................................................................16

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Lilly v. Ford Motor Co.*
   2002 WL 507126 (N.D. Ill.) ........................................................23, 24

*Louis Vuitton Malletier SA v. Dotster Inc.*
   No. 2:2006cv04571 (C.D. Cal. filed July 21, 2006)........................26

*McLean v. Fleming*
   96 U.S. 245 (1877)..............................................................................28

*Mil-Mar Shoes Co., Inc. v. Shonac Corp.*
   75 F.3d 1153 (7th Cir. 1996) ...........................................................14

*Money Store v. Harriscorp Fin., Inc.*
   689 F.2d 666 (7th Cir. 1982) ...........................................................20

*MoreSteam.com, LLC v. Oversee.net, Inc.*
   No. 2:04-cv-00924-CNC (E.D. Wis. filed Sep. 24, 2004)..............26

*Nartron Corp. v. STMicroelectronics, Inc.*
   305 F.3d 397 (6th Cir. 2002) ...........................................................14

*Noon v. Sailor*
   2000 WL 684274 (S.D. Ind.) ..............................................................8

*Ortiz v. Fibreboard Corp.*
   527 U.S. 815 (1999)..........................................................................32

*Oshana v. Coca-Cola Co.*
   225 F.R.D. 575 (N.D. Ill. 2005).....................................................8, 23

*Payton v. County of Kane*
   308 F.3d 673 (7th Cir. 2002) ...........................................................35

*Pastor v. State Farm Mut. Auto. Ins. Co.*
   2005 WL 2453900 (N.D. Ill.) .............................................................8

*Promatek Indus., Ltd. v. Equitrac Corp.*
   300 F.3d 808 (7th Cir. 2002) ...........................................................16

*Pruitt v. Allied Chem. Corp.*
   85 F.R.D. 100 (E.D. Va. 1980) ........................................................32

*Radmanovich v. Combined Ins. Co. of Am.*
   216 F.R.D. 424 (N.D. Ill. 2003)..........................................................9

*Rahman v. Chertoff*
   530 F.3d 622 (7th Cir. 2008) .............................................................9

*Retail Servs., Inc. v. Freebies Publ'g*
   364 F.3d 535 (4th Cir. 2004) ...........................................................28

*Rowell v. Voortman Cookies, Ltd.*
   2005 WL 2266607 (N.D. Ill. Sept. 14, 2005) ................................32

*S. Indus., Inc. v. Space Age Techs.*
   1999 WL 495484 (N.D. Ill.) .............................................................17

*Siemer v. Assoc. First Capital Corp.*
   2001 WL 35948712 (D. Ariz.)..........................................................24

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Simer v. Rios*
  661 F.2d 655 (7th Cir. 1981) ................................................................6, 35

*Sony Corp. v. Universal City Studios, Inc.*
  464 U.S. 417 (1984)...........................................................................27

*Sullivan v. CBS Corp.*
  385 F.3d 772 (7th Cir. 2004) ............................................................7, 16

*Szabo v. Bridgeport Machs., Inc.*
  249 F.3d 672 (7th Cir. 2001) ............................................................4, 5

*Taubman Co. v. Webfeats*
  319 F.3d 770 (6th Cir. 2003) ...............................................................18

*The Neiman Marcus Group Inc. v. Dotster Inc.*
  No. 3:06-cv-05292-RBL (W.D. Wash. filed May 30, 2006)...................26

*Thompson v. Jiffy Lube Int'l, Inc.*
  2008 WL 2762187 (D. Kan.) ...............................................................24

*Tiffany (NJ) Inc. v. eBay, Inc.*
  2008 WL 2755787 (S.D.N.Y.)................................................19, 25, 26

*Titan Sports, Inc. v. Hellwig*
  1999 WL 301695 (D. Conn.) ...............................................................28

*Top Tobacco, L.P. v. N. Atl. Operating Co.*
  509 F.3d 380 (7th Cir. 2007) ...............................................................17

*Trans Union LLC v. Credit Research, Inc.*
  142 F. Supp. 2d 1029 (N.D. Ill. 2001) ................................................31

*Two Pesos, Inc. v. Taco Cabana, Inc.*
  505 U.S. 763 (1992)..........................................................11, 13, 14, 16

*Ty Inc. v. The Jones Group, Inc.*
  2001 WL 1414232 (N.D. Ill.) ..........................................................16, 22

*United Drug Co. v. Theodore Rectanus Co.*
  248 U.S. 90 (1918).........................................................................28, 30

*Verizon N. Inc. v. Internet REIT, Inc.*
  No. 4:07-cv-00996 (S.D. Tex. filed March 23, 2007) ..........................26

*Walker v. Houston*
  341 F. Supp. 1124 (S.D. Tex. 1971) ....................................................32

*Wallace v. Chi. Hous. Auth.*
  224 F.R.D. 420 (N.D. Ill. 2004)...........................................................8

*Walt-West Enters., Inc. v. Gannett Co., Inc.*
  695 F.2d 1050 (7th Cir. 1982) .............................................................14

*Warner Bros., Inc. v. Am. Broad. Cos.*
  720 F.2d 231 (2d Cir. 1983) ................................................................16

*Williams v. Chartwell Fin. Servs., Ltd.*
  204 F.3d 748 (7th Cir. 2000) ...............................................................24

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001) ................................................................23

### State Cases

*Weld v. Glaxo Wellcome Inc.*
  746 N.E.2d 522 (Mass. 2001) ................................................................35

### Federal Statutes

15 U.S.C. § 1051(a)(3)(D)(ii)(IV) ...........................................................30

15 U.S.C. § 1091(a) ................................................................................13

15 U.S.C. § 1111 ....................................................................................22

15 U.S.C. § 1114(1) .....................................................................8, 11, 20

15 U.S.C. § 1114(1)(b) ...........................................................................11

15 U.S.C. § 1115(a) ................................................................................13

15 U.S.C. § 1115(b)(1) ...........................................................................11

15 U.S.C. § 1115(b)(1)-(4) .....................................................................22

15 U.S.C. § 1115(b)(2) ...........................................................................11

15 U.S.C. § 1115(b)(3) ...........................................................................11

15 U.S.C. § 1117(d) ................................................................................35

15 U.S.C. § 1125(c)(2)(A) .........................................................12, 21, 22

15 U.S.C. § 1125(d) ..................................................................................7

15 U.S.C. § 1125(d)(1)(A) .......................................................................12

15 U.S.C. § 1125(d)(1)(A)(i) ...................................................................12

15 U.S.C. § 1125(d)(1)(A)(2)(I) ..............................................................12

15 U.S.C. § 1125(d)(1)(A)(2)(II) ......................................................12, 21

15 U.S.C. § 1141(1)(a) ...........................................................................11

17 U.S.C. § 102(a) ..................................................................................28

28 U.S.C. § 2072(b) ................................................................................35

### Federal Rules

Fed. R. Civ. P. 19(a) ...............................................................................31

Fed. R. Civ. P. 20(a) ...............................................................................35

Fed. R. Civ. P. 23 ............................................................................ *passim*

Fed. R. Civ. P. 23(a) .....................................................................4, 10, 32

Fed. R. Civ. P. 23(a)(2) ...........................................................................10

Fed. R. Civ. P. 23(a)(3) ...........................................................................34

Fed. R. Civ. P. 23(a)(4) .....................................................................32, 34

Fed. R. Civ. P. 23(b) .........................................................................4, 32

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

Fed. R. Civ. P. 23(b)(1)(A)......................................................................31, 32

Fed. R. Civ. P. 23(b)(2)...........................................................................29, 30

Fed. R. Civ. P. 23(b)(3)........................................................................9, 10, 24

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004)......................................6

MCCARTHY ON TRADEMARKS § 19:36 (2007)............................................................13

## I.     INTRODUCTION

*It's Week Ten of the Vulcan Golf trial. The Court and jury are operating at full speed, handling two to three trademarks a week.*

*The Court begins proceedings as to each mark by hearing testimony on whether the mark is protected by trademark law. For some registered marks, this takes only an hour or two of court time, with the parties arguing about whether the mark has been abandoned or rendered generic, whether the registration application contained inaccuracies, and whether the mark has seen sufficient use in commerce to be protected. For unregistered marks, the process takes much longer: plaintiffs have to show that the mark has developed secondary meaning in the public mind. This sometimes takes a full day or more. After the trademark validity evidence is in, the parties move on to present evidence on confusion. Each side has had to perform a consumer-confusion survey, at a cost of tens of thousands of dollars, for each asserted mark.*

*Today, the Court picks up where it left off yesterday, with further testimony on whether the domain name "translator.com," which displays ads for language services, is likely to confuse consumers into thinking it's endorsed by class member EBSCO Industries, Inc., maker of Translator® brand deer calls.*

*After sitting through six hours of expert testimony and the presentation of numerous charts and documents, the Court retires to chambers, the jurors go home to their families, and the lawyers for both sides return to their hotel rooms to write briefs to be submitted by morning about the next class member.*

*Twelve trademarks down. 1,037,418 to go.*

*****

Plaintiffs are asking this Court to do something no federal district court has ever done in the history of our judicial system: certify a trademark-infringement class action. There are many reasons why no court has ever taken that step. Among others, trademark lawsuits depend overwhelmingly on individual factual issues, and this case is no exception.

Even though plaintiffs have jettisoned the majority of their claims for purposes of class certification, Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Mot.") at 1, this remains a trademark case. Plaintiffs' claims for vicarious and contributory trademark infringement and cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA") all require each class member to demonstrate the existence of a protected mark and use of a domain name that is "identical or confusingly similar" or "likely to cause confusion" as to that protected mark. And plaintiffs' unjust enrichment claim is derivative of those claims.

1

Without exaggeration, plaintiffs ask this Court to certify a class that potentially could include not just every owner of a registered and unregistered trademark in the United States, but **every person** in the United States. Their proposed class encompasses every person or entity whose mark or name is "confusingly similar" to a "parked" Internet domain. Plaintiffs not only have failed to offer any plan for trying such a mammoth class suit, they also have failed to propose any means by which this Court could determine who is in the putative class. Accomplishing that task literally would require the Court to compare every single trademark and personal name in this country to a list of domains and then analyze whether any mark or name is identical or confusingly similar to any domain. There is no way to do this on a class-wide basis. Even if there were, after doing so, the Court still would have to perform millions of individualized inquiries on trademark validity, registration, ownership, secondary meaning, and consumer confusion, plus others, to decide whether each mark or name is entitled to protection under trademark law. If this would not be literally impossible, it would be close.

Federal Rule of Civil Procedure 23 forbids certification of this proposed class for many reasons. The class plaintiffs propose is not objectively ascertainable; even determining who is in the class would require subjective merits assessments. Individual issues would predominate at trial. A class action is not the superior means of resolving the case, both because it would be unmanageable and because Seventh Circuit precedent forbids permitting a single jury to decide the fate of the domain-development industry, particularly on an unprecedented class-certification theory. Further, there are other means for trademark owners to obtain relief, such as individual suits seeking statutory damages and attorneys' fees—which some putative class members have already brought—or proceedings under the Uniform Domain-Name Dispute Resolution Policy ("UDRP"), which exists specifically to resolve disputes like this. Mark holders also could obtain relief without a class action, simply by asking defendants to block identified domain names, using the publicly available procedures defendants already have implemented. Defendants have blocked every domain the named plaintiffs have identified and would do the same for anyone else who makes a bona fide request. Finally, because many different class members have claims to the same mark for different products, the proposed class is rife with intra-class conflicts.

Plaintiffs argue that this Court could short-cut these complications, relying heavily on the class-certification order in the *Napster* copyright case. *Napster* is inapposite here. The Supreme Court has repeatedly held there is little relationship between trademark rights and rights under copyright law. Plaintiffs must show each mark is distinctive, has been used commercially, and has not become generic or been abandoned, none of which are at issue in a copyright suit. Finally, in *Napster,* the plaintiffs had already shown they were likely to prevail and obtained an injunction; here, plaintiffs can make no such showing, and must offer individual proof of consumer confusion as to each mark. The proper analogy is not *Napster,* but *Chambers v. Time Warner*, 66 U.S.P.Q.2d 1292 (S.D.N.Y. 2003), the only case defendants have found where any court even considered certification of a trademark class. The *Chambers* court rightly concluded that resolving the proposed class's trademark-infringement claims would require individual decisions on the strength of each class member's mark and the likelihood of consumer confusion. Because such a trial would be unmanageable, the court denied certification.

The same result should obtain here. Plaintiffs cannot meet the requirements of Rule 23, and this Court should refuse to certify any class.

## II.     ADDITIONAL FACTUAL BACKGROUND

In order to address legitimate complaints about domain names, each of the defendants maintains a complaint policy. For example, Google describes its complaint policy on its website. Declaration of Joseph C. Gratz, filed concurrently herewith ("Gratz Decl.") ¶ 4 & Ex. A. When a trademark holder expresses a legitimate concern about a domain name, Google promptly places that domain on the AdSense for Domains "fail list"—so named because any query seeking ads for that domain will fail. Google cannot proactively place names on the "fail list" in the absence of a complaint from a trademark holder, because there is no reliable way, looking at a domain name in isolation, to determine whether that name satisfies all the requirements necessary for a finding of trademark infringement. Declaration of Professor Itamar Simonson, Ph.D., filed concurrently herewith ("Simonson Decl.") ¶¶ 29-35 (explaining the in-depth analysis needed to determine the strength of a mark and the likelihood of consumer confusion). Google itself abides by this policy for its own trademarks: rather than attempting to block any domain name

containing the trademark "google," it places particular domain names to which it objects on the "fail list."

Before plaintiffs filed their complaint in June of 2007, plaintiffs had never informed Google (or any other defendant) of their objection to any domain name, or invoked any defendant's complaint procedures in any way. As a result, none of the domains plaintiffs listed in their complaint or otherwise objected to had been placed on the AdSense for Domains "fail list." After the lawsuit was filed, defendants asked plaintiffs to provide a list of objectionable domain names. *E.g.*, Gratz Decl. ¶ 8. Google has placed on its "fail list" every domain that plaintiffs have listed as infringing their trademarks. *Id.*

## III. ARGUMENT

### A. To apply the requirements of Rule 23(a) and (b), the Court must determine how this case will be tried.

In resolving a motion for class certification, this Court's overarching task "is to determine how the case will be tried." Fed. R. Civ. P. 23, Advisory Committee Note to 2003 Amendments. In other words, the Court must persuade itself that it could practically manage and try the case using class-wide, as opposed to individualized, proof. That core issue should guide the Court's analysis of whether the proposed class meets the four requirements of Rule 23(a) for certifying a class, and any of the three separate bases under Rule 23(b) for maintaining a class.

Because this is a practical inquiry and not a theoretical one, the Court must make its determination based on the actual **facts**—not, as plaintiffs argue, on the pleadings. When aspects of the Rule 23 inquiry, "such as 'the difficulties likely to be encountered in the management of a class action,' overlap the merits … then the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). In *Szabo*, the Seventh Circuit specifically rejected the argument that a district court is bound by the allegations in the complaint and held that nothing in either Rule 23 or the Supreme Court's opinion in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974), "prevents the district court from looking beneath the surface of a complaint to conduct the inquiries identified in [Rule 23] and exercise the discretion it confers." *Szabo,* 249 F.3d at 677. Instead, as the Supreme Court held, "sometimes

4

it may be necessary for the court to probe beyond the pleadings" to ensure "actual, not presumed, conformance" with the "indispensable" Rule 23 requirements. *General Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982); *see also Szabo,* 249 F.3d at 677 (quoting *Falcon*).

Once this Court makes the appropriate inquiry here, it can reach only one conclusion—the class plaintiffs propose is uncertifiable. For 70 years, the Seventh Circuit has recognized that, by their very nature, individual issues always predominate in trademark cases.

> **[I]n trade-mark cases, even more than in other litigation, precedent must be studied in the light of the facts of the particular case. The ascertainment of probability of confusion because of similarity of trade names presents a problem not solvable by a precise rule or measure. Rather is it a matter of varying human reactions to situations incapable of exact appraisement.** We are to determine, as was the District Judge, the purchasing public's state of mind when confronted by somewhat similar trade names singly presented. **Is the similarity of name or dress such as to delude the public or will the prospective buyer readily differentiate between the two names?** We can only contemplate, speculate, and weigh the probabilities of deception arising from the similarities and conclude as our, and the District Judge's, reactions persuade us.

*Colburn v. Puritan Mills*, 108 F.2d 377, 378 (7th Cir. 1939) (emphases added).

Given the overwhelming predominance of individual factual and legal issues, any attempt to try this case would require an endless series of individual hearings featuring the presentation and analysis of evidence related to millions of individual trademarks and personal names. Tellingly, plaintiffs make no effort to explain how the case could be litigated and tried. They submit no plan for class notice, discovery, or trial—or even figuring out who the mark owners are. Instead, they ask this Court to do their work for them in figuring out how to try tens of millions of individually fact-specific trademark claims.

Plaintiffs' massive proposed class is unascertainable and would defy management. Their three proposed subclassses fare no better. The first subclass, comprised of all registered mark owners, could contain nearly 1.5 million marks. There is no way to determine how many people are in the second subclass—owners of unregistered marks—or who those people are. And the third subclass, comprising all people with names are identical or confusingly similar to a domain name, could include every person in the United States.[1] Identifying who the people in all these

---

[1] As of this writing, the USPTO lists **1,427,917** live trademark registrations for word marks. *See* Trademark Electronic Search System, *at* http://tess2.uspto.gov/bin/gate.exe?f=login

subclasses are, giving them notice, and adjudicating their claims would be a "Sisyphean task." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981). The Court justifiably may decline to take it on in order to protect its resources.

**B.      Plaintiffs' proposed class is not objectively ascertainable and would require this Court to make merits rulings to determine class membership.**

Most fundamentally, plaintiffs' proposed class (or subclasses) cannot be certified because there is no way to determine who is in the class and who is not without holding millions of individual evidentiary proceedings and making millions of individual merits decisions. Plaintiffs acknowledge in their own motion that "there is an implied requirement that the proposed class be identifiable." Mot. at 10. This requires that the members of the putative class be ascertainable "by reference to objective criteria and … by reference to defendants' conduct." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008). The scope of plaintiffs' proposed class is not objectively ascertainable, and the work the Court would need to do to define its boundaries would render this case an unmanageable morass.

As the Federal Judicial Center has explained, class definitions "should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004). Indeed, "courts in this circuit and district have concluded that class definitions that require a threshold finding of liability are inadequate." *Fletcher v. Behring*, 245 F.R.D. 328, 335 (N.D. Ill. 2006). Where a proposed class definition "requires the Court to conduct an investigation into the merits of each potential member's claim, the definition is deficient." *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 624 (N.D. Ill. 2007); *see also Fletcher,* 245 F.R.D. at 335 (same). Here, the membership of plaintiffs' proposed class is not objectively ascertainable because it depends on an investigation into the merits of each potential member's claim. Plaintiffs define their putative class as:

---

&p_lang=english &p_d=trmk, *using search string* "LIVE[LD] AND *[BI] AND `RN > "0""" (listing all live trademark registrations in the PTO database, excluding non-word marks and excluding pending applications). There is, of course, no similar list of all unregistered trademarks. The list of all personal names would be approximately the size of the country's population—over 300 million.

> Any individual or owner of a mark whose personal name or mark is identical or confusingly similar to a parked domain name that has been registered, trafficked in or used for commercial gain, by one of more of the Defendants, during the period of time January 1, 2002 through the present.

Mot. at 5. Plaintiffs divide this class into three subclasses—for owners of registered marks, owners of unregistered marks, and individuals whose names are "identical or confusingly similar" to domain names. *Id.* at 6. Each would require merits determinations.

First, both the proposed classes and subclasses consist of all marks and names "identical or confusingly similar" to various domains. To determine membership, the Court would need to begin with a list of the millions of marks and hundreds of millions of names in the United States. (Of course, there is no way to compile a list of unregistered marks or their owners.) The Court would then have to compare that list to some unspecified list of domains. Owners of marks or people having names identical to domains would be in the class. But then, the Court would have to decide whether each non-identical name or mark was "confusingly similar" to any domain. In addition to being a Herculean task, this is plainly a threshold liability issue. Consumer confusion is an essential element of each of the four claims plaintiffs include in the proposed class. Both contributory and vicarious trademark infringement depend on proof of actual trademark infringement, Mar. 20, 2008 Order on Mot. to Dismiss (hereafter "Mar. 20 Order") at 38-39, which in turn requires a likelihood of consumer confusion. *See Sullivan v. CBS Corp.,* 385 F.3d 772, 776 (7th Cir. 2004). Similarly, a cybersquatting claim under the ACPA, 15 U.S.C. § 1125(d), depends on use of a domain name that is "identical or confusingly similar to" the claimant's protectable mark. Mar. 20 Order at 8. Because plaintiffs' unjust enrichment claim is derivative of these other claims, it likewise requires proof of confusion.

Second, plaintiffs concede that "issues relating to ownership of a mark may be relevant to determining who is properly a member of the class." Mot. at 22. In reality, such issues are more than relevant: they are necessary to the determination of class membership, which is yet another reason why the proposed class is not objectively ascertainable. It is no answer to argue, as plaintiffs do, that the Court can deal with these issues "after liability is established." That is putting the cart before the horse; mark ownership is an essential element that must be proven

before any class member can recover for trademark infringement, *see* 15 U.S.C. § 1114(1); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 117 (2004) (registered mark owner may sue for trademark infringement); *Custom Vehicles, Inc. v. Forest River, Inc.,* 476 F.3d 481, 483 (7th Cir. 2007) (holder of a "valid trademark" can sue for infringement), or cybersquatting claim. *See Flentye v. Kathrein,* 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007). Again, figuring out who is in the class would require millions of merits rulings.

Third, the Court would have to identify mark owners who authorized a defendant to use their mark for commercial purposes, because those owners cannot sue, *see* 15 U.S.C. § 1114(1), and plaintiffs exclude them from their proposed class definition. Mot. at 6. This is yet another merits determination of an essential claim element that this Court would have to make on an individual basis before it could identify the scope of the class.

Courts facing proposed class definitions that would have required merits determinations have not hesitated to deny certification. *See Fletcher,* 245 F.R.D. at 331-35 (proposed ERISA classes of persons "currently entitled to damages or restitution as well as reinstatement" or "a rescission of their resignations"); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 578-81 (N.D. Ill. 2005) (class membership contingent on proof of deception); *Wallace v. Chi. Hous. Auth.,* 224 F.R.D. 420, 422-26 (N.D. Ill. 2004) (subclass would have required court to make "a subjective assessment of which voucher holders have been harmed"); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 2453900, *1-*3 (N.D. Ill.) (class membership contingent on proof that member's car was "not usable"); *Noon v. Sailor*, 2000 WL 684274, *1-*4 (S.D. Ind.) (proposed class of arrested persons strip-searched without reasonable cause); *Kenro v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997) (putative class of people who received ads without consent). This Court should do the same.

Plaintiffs argue that the class definition is acceptable because it is defined by defendants' conduct, but that is not enough to make a proposed class objectively ascertainable. Indeed, the main case on which plaintiffs rely, *Alliance to End Repression v. Chicago,* 565 F.2d 975, 977 n.6 (7th Cir. 1977), itself recognized that *res judicata* concerns require "a clear definition of what groups or individuals are members of the class." Moreover, the Seventh Circuit has expressly

8

repudiated as "relic[s]" the sorts of "open-ended" class definition approved in that case. *See Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008).

Finally, plaintiffs' second and third proposed subclasses—comprising unregistered mark owners and individuals, respectively—create additional ascertainability and manageability problems. Plaintiffs notably fail to explain how the membership in these subclasses could be determined. Plaintiffs would need to begin with a list of domains, but how would that list be compiled? Even assuming it could be, how would plaintiffs or this Court then be able to identify whether there are unregistered marks or individuals with names similar to those domains? With respect to individuals, do plaintiffs propose to begin by looking through telephone books and matching individuals to domains? Even apart from the need to determine merits issues for millions of marks, there would be no way for this Court to manage such nebulous subclasses.

## C.      Plaintiffs' proposed class cannot be maintained under Rule 23(b)(3).

As is clear from their motion, plaintiffs' primary asserted basis for certification is Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). No court has ever certified a trademark class because there is no one-size-fits-all method for litigating multiple trademarks at once. Each mark must be evaluated individually.

### 1.      Individual issues overwhelmingly predominate here.

Courts determine whether individual issues predominate by identifying "the substantive elements of plaintiff's cause of action," assessing "the proof necessary for those elements," then determining where the proof will come from and whether the litigation will require decisions on individual putative class members' claims. *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003); *see also Hudson v. Chicago*, 242 F.R.D. 496 (N.D. Ill. 2007) (same). In this analysis, what matters is not whether "the same questions of fact exist with respect to the claims of every member of the purported class," but whether "a conclusion as to one member" is "common or determinative, or even relevant when the question arises with respect to another member." *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 336

(N.D. Ill. 1974). If the conclusions will not be the same, "[t]he predominating questions are individual ones and not common," and class treatment is improper. *Id*; *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of their individual claims, such claims are not suitable for class certification.").

Plaintiffs wrongly claim the predominance inquiry under Rule 23(b)(3) is essentially the same as the commonality requirement of Rule 23(a)(2). Mot. at 17-18. As the text of the two rules makes clear, commonality under Rule 23(a)(2) sets a lower bar, requiring only proof that **some** common issues of law or fact exist. By contrast, predominance under Rule 23(b)(3) requires a separate finding that common issues **outweigh** individual ones—*i.e.*, that more of the trial of the proposed class action would be spent evaluating common proof than individual proof. As the Supreme Court has stated, "[e]ven if Rule 23(a)'s commonality requirement may be satisfied" by certain evidence, "the predominance criterion is **far more demanding**." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997) (emphasis added); *see also In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 86 (S.D.N.Y. 2007) (same); *Bafus v. Aspen Realty, Inc.,* 236 F.R.D. 652, 657 (D. Idaho 2006) (same); *Garcia v. Veneman,* 211 F.R.D. 15, 23 (D.D.C. 2002) (same).

This case could be tried only by taking discovery from each individual mark owner and deciding individual infringement claims one at a time. Plaintiffs move for certification on four of their claims, each of which is premised on some species of trademark infringement: (1) contributory infringement; (2) vicarious infringement; (3) cybersquatting under the ACPA; and (4) unjust enrichment. Individual issues predominate as to each. The following charts summarize the issues that will need to be litigated and decided on an individual basis, after individual discovery, for each of plaintiffs' claims. Plaintiffs have never offered any trial plan for managing the litigation or decision of a single one. First, many individual issues are required elements of all four claims for which plaintiffs seek class certification:

| ELEMENTS REQUIRED FOR ALL CLAIMS | Discovery From Individuals? | Individual Decisions for Each Mark? | Trial Plan from Plaintiffs? |
|---|:---:|:---:|:---:|
| **Ownership** – Does the plaintiff own a mark? 15 U.S.C. § 1114(1); *KP Permanent*, 543 U.S. at 117. | ✓ | ✓ | **No** |
| **Secondary Meaning** – Is the mark distinctive and thus protected? *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). | ✓ | ✓ | **No** |
| **Validity** – Was the mark obtained or registered fraudulently? 15 U.S.C. § 1115(b)(1). | ✓ | ✓ | **No** |
| **Validity** – Has the mark been abandoned? 15 U.S.C. § 1115(b)(2). | ✓ | ✓ | **No** |
| **Validity** – Is the mark being used to misrepresent the source of goods or services? 15 U.S.C. § 1115(b)(3). | ✓ | ✓ | **No** |
| **Authorization** – Has the owner consented to the use of its mark by a defendant or someone else who authorized a defendant. *See* 15 U.S.C. § 1114(1). | ✓ | ✓ | **No** |
| **Innocence** – Was any infringement innocent? 15 U.S.C. § 1114(1)(b). | ✓ | ✓ | **No** |

Second, in addition to those issues, the vicarious- and contributory-infringement claims also will require individual factual findings as to the following:

| VICARIOUS- AND CONTRIBUTORY-INFRINGEMENT ISSUES | Discovery From Individuals? | Individual Decisions for Each Mark? | Trial Plan from Plaintiffs? |
|---|:---:|:---:|:---:|
| **Infringement** – Can the owner identify a domain name and prove its use creates a likelihood of confusion? 15 U.S.C. § 1141(1)(a); *KP Permanent*, 543 U.S. at 117. | ✓ | ✓ | **No** |
| **Infringement** – Can the owner prove a defendant used the identified domain name in commerce? *Id.* | ✓ | ✓ | **No** |

Finally, in addition to the common issues set forth above, the cybersquatting claims also will require decision of the following issues:

| CYBERSQUATTING ISSUES | Discovery From Individuals? | Individual Decisions for Each Mark? | Trial Plan from Plaintiffs? |
|---|:---:|:---:|:---:|
| **Fame –** Where dilution is asserted, is the mark famous and thus protected against dilution? 15 U.S.C. § 1125(c)(2)(A). | ✓ | ✓ | **No** |
| **Infringement –** For famous marks, can the owner identify a domain name and prove it dilutes the mark? 15 U.S.C. § 1125(d)(1)(A)(2)(II); *Flentye,* 485 F. Supp. 2d at 914. | ✓ | ✓ | **No** |
| **Infringement –** For otherwise distinctive marks, can the owner identify a domain name and prove it is identical or confusingly similar to the mark? 15 U.S.C. § 1125(d)(1)(A)(2)(I); *Flentye,* 485 F. Supp. 2d at 914. | ✓ | ✓ | **No** |
| **Infringement –** Can the owner prove a defendant registered, trafficked in, or used the identified domain name? 15 U.S.C. § 1125(d)(1)(A); *Flentye,* 485 F. Supp. 2d at 914. | ✓ | ✓ | **No** |
| **Infringement –** Can the owner prove a defendant had a "bad faith intent to profit from" the mark at issue? 15 U.S.C. § 1125(d)(1)(A)(i). | ✓ | ✓ | **No** |

The only court even to **consider** a motion to certify a trademark class rejected certification for exactly these reasons. In *Chambers v. Time Warner,* 66 U.S.P.Q.2d 1292 (S.D.N.Y. 2003), the court analyzed class treatment of plaintiffs' trademark-infringement claim under section 43(a) of the Lanham Act, finding that "very few, if any, of the common questions identified by plaintiffs can be resolved through generalized proof, and those issues that could potentially be so resolved would be overwhelmed, and obscured, by individual issues." *Id.* at *7. In particular, the court found that the "crucial question" in a trademark infringement action "is whether defendant's use of plaintiffs' names and likenesses caused a 'likelihood of confusion.'" *Id.* at *8. In applying the relevant multi-factor test, "the Court would have to make an individualized determination of the strength of each class member's mark." *Id.* Because these "individualized assessments" are the heart of a trademark claim, the court refused to certify. *Id.*; *cf. Ford v. Nylcare Health Plans of the Gulf Coast,* 190 F.R.D. 422, 425-28 (S.D. Tex. 1999) (refusing to certify Lanham Act false-advertising class because of, among other reasons,

predominance of individual issues as to whether specific ads would deceive the public).

> **a.  Litigating whether the asserted marks are sufficiently distinctive to be protected will require discovery from individual owners and separate rulings for each mark.**

First, a trademark plaintiff may sue only on a "protected" trademark, and a trademark is protected only if it is sufficiently distinctive, either inherently or through the acquisition of secondary meaning in the public mind. *See Two Pesos*, 505 U.S. at 769 (1992). Plaintiffs contend distinctiveness "can be dealt with on a classwide basis," mostly through a series of presumptions. Mot. at 24. Not so.

In fact, distinctiveness cannot be presumed even for all registered trademarks. Plaintiffs note that marks registered on the United States Patent and Trademark Office's (PTO) Principal Register are presumed distinctive. *See* 15 U.S.C. § 1115(a). But marks ineligible for registration on the Principal Register because they are **not** distinctive still may be registered on the Supplemental Register. *See* 15 U.S.C. § 1091(a). Such marks can be presumed **not to be** distinctive once registered. *See* MCCARTHY ON TRADEMARKS § 19:36 (2007) (a mark's "very presence on the Supplemental Register indicates a preliminary determination that the mark is not distinctive"). Thus, this Court could presume only some registered marks to be distinctive, and it would apply the opposite presumption to all marks registered on the Supplemental Register. Of course, both presumptions can be rebutted through specific evidence, creating the possibility of further individualized litigation. *See Custom Vehicles,* 476 F.3d at 486. Indeed, the presumption of distinctiveness—relied on so heavily by plaintiffs—"evaporates as soon as evidence of invalidity is presented … . Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996).

For all alleged marks other than those registered on the Principal Register, and for all personal names of putative class members, this Court would have to determine distinctiveness without the aid of any presumption. As the Supreme Court has held, the touchstone of distinctiveness is whether a mark "is capable of identifying products or services as coming from a specific source." *Two Pesos,* 505 U.S. at 773; *see* Simonson Decl. ¶¶ 27-28 (explaining why

distinctiveness must be evaluated individually). Putative trademarks are typically classified into one of five categories, with a direct correlation between the distinctiveness of the mark and the level of trademark protection. *See Mil-Mar Shoes Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996). The five basic categories are: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos,* 505 U.S. at 768. On one end of the spectrum, suggestive, arbitrary, or fanciful marks generally are inherently distinctive, "because their intrinsic nature serves to identify a particular source of a product." *See id.* By contrast, generic marks—those that "refe[r] to the genus of which the particular product is a species"—are never distinctive and thus not protectable as trademarks. *Id.* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194 (1985)). In between these extremes, "[m]arks which are merely descriptive of a product are not inherently distinctive" because "they do not inherently identify a particular source." *Id.* at 769. Such marks are distinctive enough to merit protection only if they have acquired secondary meaning through association with the trademark's owner's goods in commerce. *See id.* "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982).

Accordingly, to try this case, the trier of fact first would have to analyze every mark and name at issue and categorize it, deciding whether it refers to a genus of products, describes a product without identifying its source, or inherently identifies the source of the product. But, because determining distinctiveness is a "tricky business at best," *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988), the trier of fact could not deem a mark distinctive by quickly concluding that mark is suggestive, arbitrary, or fanciful. The five categories "are merely springboards for analysis" and, as such, are no more than "analytical touchstones for a much more sophisticated inquiry." *Walt-West Enters., Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1057 (7th Cir. 1982). Even once a mark is initially classified, the trier of fact must probe further, performing an individualized inquiry into whether a mark is truly distinctive. *See id.* For example, even incontestable marks that have been registered on the Principal Register may

become generic. *See Nartron Corp. v. STMicroelectronics, Inc.,* 305 F.3d 397, 404-08 (6th Cir. 2002) (incontestable registered mark "SMART POWER" had become generic); *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.,* 343 F.2d 655, 659-68 (7th Cir. 1965) (finding generic the incontestable registered mark "YO-YO").

That "sophisticated inquiry" would force each mark's owner to offer, and the trier of fact to analyze, proof of five factors related to the mark: (1) the amount and manner of advertising using the mark; (2) the sales volume of products and services bearing the mark; (3) the length and manner of use of the mark; (4) consumer testimony about the mark's meaning; and (5) consumer surveys about the mark's meaning. *See Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, 2001 WL 1035721, *4 (N.D. Ill.). Because each mark will have been used in different amounts and types of advertising, be associated with products of differing popularity, vary in length of use, and resonate differently with consumers, there is no way to decide this issue for the entire class using common proof. There is also a timing component to this inquiry, because each of plaintiffs' proposed subclasses is limited to marks that were entitled to protection "prior to Defendant{s} [sic] monetization of the identical or confusingly similar parked domain name." Mot. at 6. The Court thus also will have to determine when each mark acquired secondary meaning in the minds of consumers. Yet again, plaintiffs offer no trial plan for managing this inquiry in one trial.

Instead, plaintiffs urge this court to presume that even unregistered marks are distinctive simply where similar domain names were registered and "parked." In support of their asserted presumption, plaintiffs will no doubt cite this Court's opinion in *Avlon Industries v. Robinson*, 2005 WL 331561 (N.D. Ill.). There, the Court reasoned that the mark at issue, KeraCare, was famous because "[i]f the marks were indeed unfamiliar to the vast majority of shoppers, Robinson would not have registered at least fifteen variants of the word KeraCare as domain names in connection with his website." *Avlon Indus.* at *2. But in *Avlon,* the distinctiveness of the marks was not at issue, only their fame. The marks had been registered on the Principal Register for over five years, rendering them "incontestable" and thus "presumptively valid and protectable." *Id.* *Avlon* did not conclude it was appropriate conclusively to presume

15

distinctiveness for non-incontestable marks, and defendants are aware of no case that so holds.

Contrary to plaintiffs' asserted presumption, the parking of a similar domain name is irrelevant to the source-based distinctiveness inquiry the Supreme Court laid out in *Two Pesos*. For example, assume that a company marketed a canned soup under the putative trademark "BEAN SOUP." Under *Two Pesos,* this would be a clear example of a generic term, which is neither distinctive nor protected. The fact that "beansoup.com" is parked through AdSense for Domains—and it is—cannot transform "BEAN SOUP" from a generic term into a distinctive trademark. Plaintiffs' suggested presumption would treat generic terms as distinctive trademarks solely because they are used in domain names. This sort of circular reasoning cannot substitute for the "sophisticated inquiry" the Seventh Circuit requires.

### b. Litigating whether an identified domain name is likely to confuse consumers will require separate discovery for each asserted mark and domain name and separate rulings for each mark.

Second, each class member would have to prove that the use of its mark by the defendant is likely to confuse consumers. Courts have noted "the limited precedential value of likelihood of confusion decisions, each of which stands upon its own facts." *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1356 (9th Cir. 1985); *see also Colburn,* 108 F.2d at 378 (stating same principle). The likelihood of consumer confusion is an "inherently factual" issue that depends on the unique circumstances of each case. *Levi Strauss,* 778 F.2d at 1356 n.5; *see also Warner Bros., Inc. v. Am. Broad. Cos.,* 720 F.2d 231, 246 (2d Cir. 1983) (likelihood of confusion is "frequently a fairly disputed issue of fact on which reasonable minds may differ"); *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992) (quoting *Levi Strauss*).

Analyzing consumer confusion here will require the trier of fact to weigh seven factors: (1) the similarity of the marks at issue; (2) the similarity of the products at issue; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) the defendant's intent to palm off its goods as the plaintiff's. *See Sullivan,* 385 F.3d at 776; *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 812 (7th Cir. 2002). There is no way to apply this test without discovery from each mark owner and a mark-by-mark examination. *See Ty Inc. v. The Jones Group, Inc.,*

2001 WL 1414232 (N.D. Ill.) (Manning, J.). The trier of fact must compare each asserted mark and its associated products with each allegedly infringing domain; it must identify where each mark is used; and, most problematically for class treatment, it must hear testimony on the strength of each mark, consumers' degree of care, and actual consumer confusion.

Indeed, in most trademark cases, confusion is established through a survey of hundreds, if not thousands, of consumers. Simonson Decl. ¶¶ 29-35; *see also S. Indus., Inc. v. Space Age Techs.*, 1999 WL 495484, *7 (N.D. Ill.) (Manning, J.) ("Actual customer confusion can be established by customer surveys or direct evidence of confusion."). The Seventh Circuit has regularly cited the absence of survey evidence as a good reason to grant summary judgment to a trademark defendant. *See Top Tobacco, L.P. v. N. Atl. Operating Co.*, 509 F.3d 380, 383 (7th Cir. 2007); *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1046 (7th Cir. 2000). Surely Rule 23 cannot permit certification of a class that could proceed at trial only through millions of costly, individual consumer surveys. Plaintiffs propose no trial plan offering an alternative to these individualized inquiries.

Instead, they contend that identifying confusingly similar domain names "is a relatively straightforward task" and propose eight categorical rules for carrying out that task. Mot. at 14-16. As an initial matter, plaintiffs' claims and putative class are far broader than their eight proposed categories. In any event, their proposed rules disregard settled Seventh Circuit law holding that trademark infringement is a case-by-case inquiry presenting problems "not solvable by a precise rule or measure." *Colburn,* 108 F.2d at 378. Not only is *Colburn* binding law, the Seventh Circuit was right. None of plaintiffs' suggested rules could possibly work.

1. **"Prepending 'www'"** to a trademark does not invariably result in a confusingly similar domain name. For example, the website of the 17th International World Wide Web Conference is "**www**2008.org." But that domain name is not confusingly similar to the mark "2008," registered by Fresenius Medical Care Holdings, Inc. for dialysis machines.[2]

2. **"Adding a generic word to a trademark"** does not invariably result in a confusingly similar domain name. Take the example of "bean**soup**.com." McCue Corporation registered the trademark "BEAN" for a "shopping

---

[2] *See* United States Trademark Registration No. 3,185,626.

17

cart with integrated child carrier,"[3] and "soup" is a generic word.  But the combination of the two is not infringing: no consumer is going to think that McCue Corporation is making soup.  Indeed, the same example works the other way around: the trademark "SOUP" has been registered by Eastwest Clothing, Inc. for "girl's and women's clothing,"[4] but consumers will not think "**bean**soup.com" is affiliated with the SOUP brand clothing.

3.    **"Adding a dictionary word or a trademark"** to a trademark does not invariably result in a confusingly similar domain name, for the same reasons.  "BEAN" and "SOUP" are both registered trademarks, but "beansoup.com" will not cause consumers to become confused between McCue Corporation's shopping carts and Eastwest Clothing's clothes.

4.    **"Adding a controversial or objectionable word to a trademark"** does not invariably result in a confusingly similar domain name, for similar reasons.  (Indeed, it is subsumed within the second proposed rule.)  For example, Dean L. Knuth registered the trademark "ES" for "golf clubs, putters and golf club headcovers."[5]  But adding the word "sex" to the trademark, as Plaintiffs suggest, yields "es**sex**.com"—a domain which, some day, may contain a website about the county of Essex in England, or about Essex, Illinois, a small town in Kankakee County.  *Cf. Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (finding that "taubman**sucks**.com" created "no possibility of confusion" with the trademark "TAUBMAN").

5.    **"A simple typographical error to a trademark"** does not invariably result in a confusingly similar domain name.  For example, "goog**ol**.com" could be a typographical error, but it is also a website about mathematics.  "**W**ireit.com" could be a typographical error by someone seeking the website of defendant iREIT, but it is also a website for an electrical wiring contractor.  "Oversee**r**.net" could be a typographical error, or it could be a website about supervisors.  (In fact, it is a website about a cat with heart problems.)  Distinguishing examples like these from confusingly similar domain names, like "**g**google.com," requires careful case-by-case analysis.

6.    **"A simple typographical error combined with the addition of a dictionary word to a trademark"** does not invariably result in a confusingly similar domain name, for the reasons mentioned above in (2) and (5).  "**W**ireit**yourself**.com," a website about home electrical projects, is not confusingly similar to "ireit.com."  And "**project**oversee**r**.net," a music website, is not confusingly similar to "oversee.net."

7.    **"Prepending 'http'"** does not invariably result in a confusingly similar domain name, for similar reasons to those mentioned above in (1).  For example, "**http**watch.com," a website for a web traffic monitoring program, is not confusingly similar to "WATCH," which is a registered trademark of Wilson Audio Specialties, Inc. for stereo loudspeakers.[6]  Neither is "**http**guru.com," a bulletin board for web developers and

---

[3] *See* United States Trademark Registration No. 2,760,244.

[4] *See* United States Trademark Registration No. 2,401,457.

[5] *See* United States Trademark Registration No. 3,016,071.

[6] *See* United States Trademark Registration No. 2,830,270.

programmers, confusingly similar to "GURU," as registered to Guru Arts Inc., for "art gallery services in the field of tattoo-related art."[7]

8. **"Appending 'com'"** does not invariably result in a confusingly similar domain name, for similar reasons to those mentioned above in (1) and (7). For example, "TELE" is a registered trademark of Fender Musical Instruments Corporation, for electric guitars.[8] But "tele**com**.com" is a website of Deutsche Telekom, Germany's state-owned phone company. Similarly, "BEAR" is a trademark registered to SPX Corporation for battery testers,[9] but "bear**com**.com" is the website of Bearcom Wireless Worldwide, a provider of wireless communications equipment.

Plaintiffs' proposed categorical rules fail to distinguish, as they must, between infringing and innocent domain names. Moreover, their claim that Google has somehow "devised a system for identifying infringing domain names" through its UDRP proceedings, Mot. at 16, is simply false. Google's actions against the owners of those domain names were based on individualized analysis, just as the Court's analysis must be in this case. In each of those cases, Google, as a trademark holder that bears the burden of policing its mark, went out and found people who were infringing its mark, and stopped them. *See Tiffany (NJ) Inc. v. eBay, Inc.,* 2008 WL 2755787, *48 (S.D.N.Y.). This lawsuit is plaintiffs' effort to shift that burden to defendants and the Court. Plaintiffs' categorical rules fail entirely, just as *Colburn* predicted they would.

The actual proceedings in this case further demonstrate the impossibility of resolving this issue on a class-wide basis. Plaintiffs' complaint asks for sweeping injunctive relief, including the transfer of ownership of all infringing domain names to plaintiffs. Compl., Prayer for Relief ¶ 9. And, earlier this year, plaintiffs moved for a preliminary injunction, seeking relief as to all domains encompassed within the same broad categories discussed above. Gratz Decl. ¶¶ 3-5. This Court ordered the parties to meet and confer under the supervision of Magistrate Judge Brown. *Id.* ¶ 4. Plaintiffs began that process by proposing again that defendants monitor all domains and disable any that fell within one of their categories. Gratz Decl. ¶¶ 6 & Ex. B. Defendants explained the categories would not work by pointing out numerous examples of legitimate, non-infringing domains the proposed categories would capture. *Id.* Ex. C; Simonson

---

[7] *See* United States Trademark Registration No. 3,201,108.

[8] *See* United States Trademark Registration No. 1,058,386.

[9] *See* United States Trademark Registration No. 3,497,123.

Decl. ¶¶ 18-28 (explaining why one needs more than just a domain name alone to determine which, if any, trademarks that domain name infringes). Defendants also argued that plaintiffs, as mark owners, bore the responsibility for policing the use of those marks. *Id.* Instead, defendants offered to do what their complaint procedures provided all along: disable whichever specific, allegedly infringing domains plaintiffs identified. For several months, plaintiffs attempted to devise a workable formula for identifying allegedly infringing domains. In the end, they were unable to do so. Just as defendants had asked, they submitted a list of specific, purportedly objectionable domains. Gratz Decl. ¶ 9 & Ex. D. All domains on plaintiffs' final list were disabled, and plaintiffs withdrew their motion. *Id.* ¶ 10.

**c. Litigating trademark ownership will require discovery from individuals and separate rulings for each owner.**

<u>Third</u>, the most basic element of any claim for trademark infringement or cybersquatting is that a plaintiff must own a trademark. *See* 15 U.S.C. § 1114(1); *see also KP Permanent,* 543 U.S. at 117; *Custom Vehicles,* 476 F.3d at 483. To prevail, each putative owner will have to furnish individual proof of registration. Some questionable claims of ownership will need to be litigated. Plaintiffs concede in their motion that mark ownership is an individual issue on which each class member's recovery will depend. Mot. at 22. But they offer no plan for adjudicating these issues, other than the glib claim that doing so would be "simple." *Id.* at 23. That is frequently not the case, *see, e.g.*, *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 674-79 (7th Cir. 1982) (lengthy analysis of purported transfer of trademark rights); *Ilapak Research & Dev. S.A. v. Record SpA.*, 762 F. Supp. 1318, 1322-23 (N.D. Ill. 1991) (trademark ownership dispute turned on proof of each party's involvement with product, including consumer perception). Even if it were, this Court still would need to adjudicate many millions of ownership claims.

**d. Litigating whether personal names are protectable will require discovery from individual people and separate rulings for each name.**

<u>Fourth</u>, people who claim protection for their personal names must prove those names have acquired distinctiveness and secondary meaning. *See Emilio Pucci Societa a Responsibilita Limitata v. Pucci Corp.*, 10 U.S.P.Q.2d 1541 (N.D. Ill. 1988). Obviously, most names are not protectable trademarks. One of the named plaintiffs is suing to protect its trademark in the word

"Fisher," but the Chicago telephone directory alone lists 238 putative class members with the last name "Fisher."[10]   Similarly, not everyone named "John Smith" could sue for a defendant's parking of "johnsmith.com."  A man named "Milton Bradley" might be unable to assert rights to his name on account of the board-game maker (or the Texas Rangers outfielder) of the same name.  Yet plaintiffs' proposed class contains all names, even unprotectable ones.

To the extent plaintiffs would respond that people with unprotectable names simply would be excluded from the class, that would be unavailing.  Not only would this approach require the Court to make yet another merits determination prior to certification, it would create a "one-way intervention" problem that courts routinely condemn.  In other words, if this Court were to find a particular individual's name not protectable, and on that basis exclude that person from the class, that ruling would not bind that person, who would no longer be a party who could be bound by any judgment.  On the other hand, if the Court were to reach the opposite decision and hold that the person's name merits protection, defendants would be bound.  This type of "failsafe" class definition renders the court unable to enter a binding judgment against these putative class members and is yet another reason to deny certification.  *See Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 487-88 (C.D. Ill. 2007).

### e.   Litigating whether the asserted marks are famous and have been diluted will require discovery from individual owners and separate rulings for each mark.

Fifth, to the extent any class member attempts to prove cybersquatting under the ACPA by proving that a particular domain name is "dilutive of" a "famous mark," 15 U.S.C. § 1125(d)(1)(A)(ii)(II), this Court would need to assess fame.  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Assessing fame requires an analysis of four statutory factors: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) actual recognition of the mark; and (4) whether the mark is

---

[10] *See* http://www.google.com/search?q=fisher+chicago,+il&pb=r (listing 238 Chicago residents named "Fisher").

registered. *Id.* All of these are individualized inquiries.

Then, assuming fame is proven, the Court would need to evaluate whether each domain name is "dilutive of" each famous mark. If the mark owner asserts dilution by blurring, the Court would need to analyze (1) the similarity between the domain name and the famous mark; (2) the inherent or acquired distinctiveness of the famous mark; (3) the exclusivity of use of the famous mark; (4) the degree of recognition of the famous mark; (5) whether the user of the domain intended to create an association with the famous mark; and (6) any actual association between the domain and the famous mark. *See Ty Inc.*, 306 F.3d at 511. If the mark owner asserts dilution by tarnishment, the Court will have to apply the same six-factor test, and also determine whether the reputation of the famous mark has been harmed by the allegedly infringing domain. *See id.* Once again, the Court would need to perform this multi-step, mark-specific analysis for each assertedly famous mark.

> **f.** **Litigating defenses such as abandonment and fraudulent registration will require separate discovery from individual owners and separate rulings for each mark.**

<u>Sixth</u>, defendants have pleaded a number of affirmative defenses to plaintiffs' trademark claims, each of which defenses will require individual determinations. For example, the trier of fact will have to examine, potentially for each of millions of marks, at least whether (1) the mark was obtained or registered fraudulently; (2) the mark has been abandoned; (3) the mark is being used to misrepresent the source of goods or services; and (4) the defendant is making fair use of the mark. *See* 15 U.S.C. § 1115(b)(1)-(4). Further, even if a class member proves liability, it can recover damages only if it individually proves, for each registered mark, that either (1) it consistently displayed trademark notice (such as ®) along with the mark, or (2) the defendant had actual notice of the trademark registration. *See* 15 U.S.C. § 1111.

> **g.** **Litigating plaintiffs' unjust-enrichment claims would require an impracticable application of the laws of all 50 states.**

<u>Seventh</u>, citing inapposite and non-binding cases, plaintiffs erroneously claim this Court can disregard variations in state laws with respect to their unjust-enrichment claims. Specifically, plaintiffs ignore the three times this Court recently has denied certification of

nationwide unjust-enrichment classes on the ground of overwhelming variations in state laws. *See In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2007 WL 4287511 (N.D. Ill.); *In re Trans Union Corp. Privacy Litig.,* 211 F.R.D. 328 (N.D. Ill. 2002); *Lilly v. Ford Motor Co.*, 2002 WL 507126 (N.D. Ill.); *see also Oshana*, 472 F.3d at 514 (affirming denial of class certification). Under Seventh Circuit law "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002). And "it is Plaintiffs' burden as the proponents of class certification … to show convincingly that variations in state law do not defeat predominance and manageability." *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.,* 241 F.R.D. 305, 319 (S.D. Ill. 2007); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (same). Plaintiffs fail even to address variations in state law in their brief, much less provide the required showing. That alone merits a denial of certification as to their unjust-enrichment claim. *See Sears Roebuck,* 2007 WL 4287511 at *9 n.7.

This Court's previous rulings were correct. "The laws of unjust enrichment vary from state to state and require individualized proof of causation." *Lilly*, 2002 WL 507126 at *2.

> Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. … Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. … Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense….

*Id.* (quoting *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999)). Indeed, plaintiffs in some jurisdictions may not bring an independent unjust enrichment claim at all. *Id.*

Plaintiffs do not cite a single case from this District, or any court within the Seventh Circuit, addressing certification of an unjust-enrichment class. Neither do they cite any cases applying Illinois state law. Mot. at 20. Of the five cases they cite, three involved only statewide classes and are thus inapposite.[11] The other two, which certified nationwide classes, were antitrust actions, in which law is relatively uniform from state to state and common factual issues

---

[11] *See* Mot. at 20 (citing cases granting certification of classes of residents of a single state under the laws of that state).

as to conspiracy and antitrust impact predominated.[12]  The weight of recent authority—both inside this Circuit, as discussed above, and outside—denies certification of nationwide unjust-enrichment classes.  *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.*, 2008 WL 2971526, *14, *19 (S.D.N.Y.); *In re Conagra Peanut Butter Prods. Liability Litig.*, 2008 WL 2885951 (N.D. Ga.)*; Thompson v. Jiffy Lube Int'l, Inc.*, 2008 WL 2762187, *18 (D. Kan.); *Clausnitzer v. Federal Exp. Corp.*, 248 F.R.D. 647, 660 (S.D. Fla. 2008).

Finally, because plaintiffs have not asked the Court to certify an Illinois state class, that argument is waived.  Even if it were not waived, it should fail.  All of the individual merits issues that permeate plaintiffs' trademark claims also predominate as to the derivative unjust-enrichment claims.  In each of the three cases where this Court denied a nationwide class, it also recognized the highly individualized nature of unjust-enrichment claims and denied **any** unjust enrichment class.  *Lilly*, 2002 WL 507126; *Trans Union*, 211 F.R.D. 328; *Sears Roebuck,* 2007 WL 4287511, *9; *see also Eldred v. Experian Info., Inc*., 233 F.R.D. 508, 512 (N.D. Ill. 2005) (certification improper under Illinois law because of the predominance of individual questions).  Similarly, the *Clay* court denied certification because "'[u]njust enrichment is an equitable doctrine that … depends upon the analysis of each individual situation.'"  188 F.R.D. at 500 (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3rd Cir. 1987)).

### 2. A class action is not the superior method of resolving this litigation.

There are three reasons why class treatment is not the superior method for resolving the putative class members' claims here.

### a. This case cannot manageably be tried as a class action.

First, this case cannot be managed as a class action, either during discovery or at trial.  The Seventh Circuit has affirmed denials of class certification under Rule 23(b)(3) solely based on a lack of manageability.  *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).  "[E]ven if common questions predominate, a class action may not be a superior or, to

---

[12]  *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 686, 697 (S.D. Fla. 2004) (certifying class bringing claims based on antitrust violations and noting the commonality often present in antitrust allegations); *Siemer v. Assoc. First Capital Corp.*, 2001 WL 35948712, *4 (D. Ariz.) (certifying class bringing claims based on antitrust violations)).

be more exact, a feasible method of adjudication because the 'class' is simply unmanageable." *Boshes v. Gen. Motors Corp.*, 59 F.R.D. 589, 599 (N.D. Ill. 1973). And the proposed class here has multiple fatal manageability problems. First, there is no practical way to determine who is in the class. Second, even if it were possible to assemble the class members, the Court would have to make individual liability rulings for each one. Third, for plaintiffs' unjust-enrichment claim, the Court would have to apply the law of all 50 states. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (calling a putative class action which would require application of real estate laws from 48 states "a nightmare"). All of these points, discussed in more detail above, preclude certification of any class.

> **b.** **History shows that individual trademark issues are best resolved individually, whether informally through complaint procedures or formally through individual lawsuits**

Second, a class action is not the superior means of resolving the putative class's claims because defendants' complaint procedures, arbitration proceedings under the UDRP, and private individual lawsuits provide alternative and much simpler methods for addressing any claims of infringement. Indeed, after much cajoling, the named plaintiffs in this case used defendants' complaint procedures to obtain relief.

As discussed above, although plaintiffs initially pursued injunctive relief in this case, they were unable to construct a formula by which potentially infringing domains could be identified automatically. The best they could do was provide a list of suspicious domains, all of which defendants immediately disabled. Gratz Decl. ¶ 8. Just two months ago, in *Tiffany v. eBay,* another district court evaluated Tiffany's claim that eBay allowed the sale of counterfeit Tiffany products on its website. eBay had verification and complaint procedures, as defendants do here, but Tiffany argued that "eBay had the obligation to investigate and control the illegal activities" of the counterfeiters. 2008 WL 2755787, *1. The court rejected that position, ruling that eBay had taken reasonable steps to control illegal activity on its site and, to the extent it had not eliminated all infringing acts, did not know or have reason to know of specific acts of infringement. *See id.* at *48. Ultimately, in response to Tiffany's argument that eBay should have done more, the court held, in keeping with the general principle that a mark's owner is in

the best position to protect its mark, that "the burden of policing the Tiffany mark appropriately rests with Tiffany." *Id.* The same result should obtain here. Defendants' complaint procedures are the best way for a vigilant mark owner to fight infringement, not a class action suit.

Alternatively, the Uniform Domain-Name Dispute Resolution Policy ("UDRP"), which applies to all domain names, permits mark holders to fight infringement. If a trademark owner objects to a domain name owned by a third party, the trademark owner can initiate binding arbitration to determine the proper ownership of the domain name. Trademark owners have found this to be an attractive, efficient, and cost-effective option; more than 18,000 UDRP arbitrations have been filed since the inception of the policy in 2000. *See* http://www.icann.org/cgi-bin/udrp/udrp.cgi. UDRP arbitrations are resolved, on average, within fifty days of filing. *See* http://www.odrforum2008.org/files/odrforum2008/forthright-odr-lessons-jun08.pdf at 3.

Further, to the extent a mark owner does want to pursue an informal complaint or a UDRP arbitration, plaintiffs cannot plausibly argue that class treatment is justified here because there is an insufficient "incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. The statutory damages provided by ACPA—up to $100,000 per domain—alone provide ample incentive for individual trademark holders to pursue any legitimate claims. The existence of adequate incentives for individual litigation is easy to show: several members of the putative class have in fact brought suit against these defendants on these issues.[13] This history belies any argument that a class suit is a superior, let alone the only, means for aggrieved mark holders to obtain relief.

     c.    **The novelty of plaintiffs' class-certification theory poses a substantial threat to the domain-development industry, which weighs against resolving these issues in a single class action.**

Finally, under Seventh Circuit law, this Court should not certify a nationwide class action on a novel legal theory and allow "[o]ne jury, consisting of six persons … [to] hold the fate of an industry in the palm of its hand." *In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293,

---

[13] *See, e.g., Verizon N. Inc. v. Internet REIT, Inc.*, No. 4:07-cv-00996 (S.D. Tex. filed March 23, 2007); *Louis Vuitton Malletier SA v. Dotster Inc.*, No. 2:2006cv04571 (C.D. Cal. filed July 21, 2006); *The Neiman Marcus Group Inc. v. Dotster Inc.*, No. 3:06-cv-05292-RBL (W.D. Wash. filed May 30, 2006); *MoreSteam.com, LLC v. Oversee.net, Inc.*, No. 2:04-cv-00924-CNC (E.D.

1299-1300 (7th Cir. 1995). That is what Plaintiffs are asking the Court to do. They propose something that has never been done before—trial of trademark-infringement claims as a class action—and their multi-billion-dollar statutory-damages claim could destroy defendants' businesses and the entire domain-development industry. In this situation, the Court has the discretion to deny class certification and let the litigation play out, and the law develop, in individual trials with lower stakes. *Id.* In *Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir. 1996), the Fifth Circuit refused to certify a class of consumers under similar circumstances, where the plaintiffs offered a "novel and wholly untested theory" that "the defendants fraudulently failed to inform consumers that nicotine is addictive." *Id.* at 737. The *Castano* court found that, because this type of claim had not been tried before, it could not conclude that common issues predominated or a class action would be the best method for resolving the claims. *Id.* Instead, it reasoned that, "[w]here novel theories of recovery are advanced (such as addiction as injury)," individual trials would be superior, because, in such cases, "courts can aggressively weed out untenable theories." *Id.* at 747 n.24.

   3.   **The copyright class-action cases plaintiffs rely on in support of their motion are inapposite in this trademark case.**

   Plaintiffs rely heavily on an unpublished order certifying a class in *In re Napster, Inc. Copyright Litigation*, 2005 WL 1287611 (N.D. Cal. June 1, 2005). They argue that the *Napster* case presents "virtually the same circumstances" as this one, and thus should control here. Mot. at 19.

   Plaintiffs are wrong. *Napster* was a copyright infringement case—as were all of the other intellectual-property cases in history where classes have been certified. There is no overlap between the legal theories in *Napster* and those plaintiffs offer here. Indeed, the Supreme Court has stated repeatedly that while copyright-law doctrines can sometimes be applied in the context of **patent** law, "[w]e have consistently rejected the proposition that a similar kinship exists between copyright law and trademark law." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984). A trademark "has little or no analogy" to a copyright. *United Drug Co. v.*

---

Wis. filed Sep. 24, 2004).

*Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918); *accord McLean v. Fleming*, 96 U.S. 245 (1877) ("Property in the use of a trade-mark, however, bears very little analogy to that which exists in copyrights"); *Titan Sports, Inc. v. Hellwig*, 1999 WL 301695 at *11-13 (D. Conn.) (same).

In copyright cases, validity is less often an issue; any "original works of authorship fixed in any tangible medium of expression" are copyrightable. 17 U.S.C. § 102(a). But the standard is much higher under trademark law. To be protected, a mark must

(1) be used in commerce (unlike, for example, "STEALTH"), *see S Indus., Inc. v. Space Age Techs.*, 1999 WL 495484, *5 (N.D. Ill.) ("there is hardly any evidence showing that SI continuously placed the STEALTH mark in commerce prior to the [relevant date]");

(2) be distinctive (unlike "WORK-N-PLAY"), *see Custom Vehicles, Inc* , 476 F.3d at 481 (holding that though it was registered, the descriptive mark "WORK-N-PLAY" did not have sufficient secondary meaning to be protectable);

(3) not have been rendered generic (unlike "ASPIRIN"), *see Bayer Co. v. United Drug Co.*, 272 F. 505 (S.D.N.Y. 1921); and

(4) not have been abandoned (unlike "BALTIMORE COLTS"), *see Indianapolis Colts, Inc. v. Metro. Balt. Football Club Ltd.*, 34 F.3d 410 (7th Cir. 1994) (holding that, although the trademark was registered, "the Indianapolis Colts abandoned the trademark 'Baltimore Colts' when they moved to Indianapolis").

These requirements, and others, apply equally in the ACPA context as in an ordinary trademark infringement suit. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004).

Further, in the copyright class actions that have been certified, there was no real dispute as to whether widespread unlawful copying had taken place. *See, e.g.*, *Napster*, 2005 WL 1287611 at *1 (preliminary injunction in place prior to class certification); *David v. Showtime/ The Movie Channel, Inc.*, 697 F. Supp. 752 (S.D.N.Y. 1988) (no dispute that Showtime's programs "contain plaintiffs' musical compositions"). By contrast, defendants strongly dispute liability here and intend to show at trial there is no likelihood of consumer confusion as to source—a question that is "all fact and no law." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145 (7th Cir. 1994). Plaintiffs' reliance on *Napster,* and other copyright cases, is misplaced.

**D.    Class treatment is improper under Rule 23(b)(2) because this case requires hearings on each individual class member's claim and is primarily about money damages.**

This case is primarily about money damages, not injunctive relief, and certification under

Rule 23(b)(2) is therefore improper.  A class can be certified under Rule 23(b)(2) only where "the predominant relief" sought "is injunctive or declaratory."  *Lemon v. Int'l Union of Operating Engrs.,* 216 F.3d 577, 580-81 (7th Cir. 2000); *see also Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894, 898 (7th Cir. 1999) (same).  A Rule 23(b)(2) class may seek only monetary relief that is "'incidental' to requested injunctive or declaratory relief."  *Lemon,* 216 F.3d at 581 (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998)).  Monetary relief is "incidental" when it does "not depend 'in any significant way on the intangible, subjective differences of each class member's circumstances'" or "'require additional hearings to resolve the disparate merits of each individual's case.'"  *Id.* (quoting *Allison,* 151 F.3d at 415).  Because members of a Rule 23(b)(2) class receive no notice and cannot opt out, such a class is proper only if "the interests of the class members are cohesive and homogenous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members."  *Id.* at 580.

That ends the discussion.  As set forth above in great detail, litigation of each trademark owner's claims would require individual hearings to determine ownership, secondary meaning, and consumer confusion, among other issues.  Likewise, the remedies available to different class members would vary widely.  For that reason alone, this proposed class is uncertifiable.

Moreover, there can be no question that the primary relief plaintiffs seek here is damages, not an injunction.  As set forth in Part II.C.1.b, *supra,* in negotiations, plaintiffs attempted to fashion viable categorical rules for identifying allegedly infringing domains.  But the need for an individual analysis of each domain defeated that effort.  Plaintiffs identified specific, allegedly infringing domains, which defendants blocked.  Plaintiffs then withdrew their motion, and no motion for injunctive relief is pending.  Given this history, plaintiffs cannot credibly argue the relief they seek is predominantly injunctive.  Further, defendants' cooperative approach— agreeing to disable every allegedly infringing domain identified by plaintiffs—shows these issues can be resolved without a court order.

In addition, the proposed class is far from "cohesive and homogenous," as it must be, to be certifiable under Rule 23(b)(2).  To the contrary, it is rife with internal conflicts, which extend

even to the named plaintiffs. Trademarks do not protect rights to a word "in gross," only the use of particular words to identify the source of goods or services. *See United Drug Co.*, 248 U.S. at 97. This is why trademark registrants must identify their mark with a particular class of goods or services. Once they do, in order to avoid overlapping rights and attendant consumer confusion, their rights are confined to that selected class of goods. *See* 15 U.S.C. § 1051(a)(3)(D)(ii)(IV); *Blazon, Inc. v. Blazon Mobile Homes Corp.*, 416 F.2d 598, 599 (7th Cir. 1969).

For example, Vulcan Golf has registered the trademark "VULCAN" for golf clubs, but the very same mark is also registered to other entities for tape measures, cigarettes, kitchen appliances, anvils, and more than **fifty** other types of goods.[14] The same is true of "FISHER"— registered to named plaintiff John B. Sanfilippo & Son, Inc. for shelled or roasted nuts, but also to Fisher Pen Company for ball-point pens, to Fisher Marine for fishing boats, and to Dale P. Fisher for golf clubs.[15] Nor is this conflict limited to the marks identified in the complaint. For example, JBSS has registered the mark "TEXAS PRIDE" for processed nuts, but the very same mark is registered to Pearl Brewing Company for malt beverages, Susser Petroleum for fuel for motor vehicles, and Bernard Egan & Co. for fresh citrus fruit.[16] JBSS has registered "TRAIL BLAZER" for snack mixes, but the same mark is registered to Polaris Industries for all-terrain vehicles, CFS Holding, Inc. for barbecue sauce, and Mars Petcare for dog food.[17] Finally, Vulcan Golf has registered the mark "WOODY" for golf clubs, but CTG Athletics has registered that mark for baseball bats, and Trek Bicycle Corporation has done the same for bicycles.[18]

---

[14] *See* United States Trademark Reg. Nos. 1,973,892 (registered to Vulcan Golf LLC), 3,179,891 (registered to Orgill, Inc.), 3,336,867 (registered to K. Hansotia & Co, Inc.), 674,532 (registered to Hobart Corporation), and 1,014,366 (registered to Miller Industries Towing Equipment, Inc.); *see generally* USPTO Trademark Electronic Search System, *at* http://tess2.uspto.gov/bin/gate.exe?f=login&p_lang=english&p_d=trmk, *using search string* (vulcan)[FM] AND LIVE[LD] (providing a list of 62 live trademark registrations for the mark VULCAN).

[15] *See* United States Trademark Reg. Nos. 1,100,900, 729,197, 1,357,924, and 2,755,663; *see generally* USPTO Trademark Electronic Search System, *at* http://tess2.uspto.gov/bin/gate.exe ?f=login&p_lang=english&p_d=trmk, *using search string* (fisher)[FM] AND LIVE[LD] (providing a list of 27 live trademark registrations for the mark FISHER).

[16] *See* United States Trademark Reg. Nos. 1,802,211, 315,875, 2,940,858. and 3,280,754

[17] *See* United States Trademark Reg. Nos. 3,407,267, 3,255,601, 2,581,725, and 3,015,121.

[18] *See* United States Trademark Reg. Nos. 3,010,145, 3,465,377, and 2,812,615.

This unavoidable reality of our trademark system creates serious practical problems for any injunction. Plaintiffs' prayer for relief asks for an injunction transferring "every Deceptive Domain to the rightful owner of the distinctive and valuable marks." Compl., Prayer for Relief ¶ 9. But if this Court were to enter an injunction, which holder of which "FISHER" mark would be the "rightful owner" of which allegedly deceptive "fisher" domains?

Finally, injunctive relief cannot predominate in this case because the injunction plaintiffs requested is fatally overbroad and never could have been entered. First, with respect to the injunction transferring allegedly deceptive domains, defendants do not themselves own all of the domains about which plaintiffs complain. The owners of many such domains are not parties to this case. To the extent plaintiffs are asking this Court to enter an injunction transferring those entities' property rights to plaintiffs, they must join those entities as indispensable parties. *See* Fed. R. Civ. P. 19(a). Second, the proposed injunction would enjoin legal activity. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604-05 (7th Cir. 2007). An injunction barring the use of "any domain name that incorporates, in whole or in part," any class member's name or mark clearly would be overbroad. Compl., Prayer for Relief ¶ 10(a). Not every business or personal name in the United States is protectable against every arguably similar domain name. *See, e.g., Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1044 (N.D. Ill. 2001) (domain name "transunioncredit" violated Trans Union's trademark; "creditbureautransunion" did not).

**E.    Class treatment is improper under Rule 23(b)(1)(A).**

Plaintiffs' argument for certification under Rule 23(b)(1)(A) ignores the text of the rule. The plain language of Rule 23(b)(1)(A) makes clear it was designed to prevent the imposition of inconsistent legal obligations on a **defendant**, not to avoid the possibility that recovery may vary between plaintiffs. *See* Fed. R. Civ. P. 23(b)(1)(A) (applying when resulting adjudications could "establish incompatible standards of conduct for **the party opposing the class**") (emphasis added); *see also Amchem,* 521 U.S. at 614 (Rule 23(b)(1)(A) applies "in cases where the party is obliged by law to treat the members of the class alike … or where the party must treat all alike as a matter of practical necessity"); *Corley v. Entergy Corp.*, 222 F.R.D. 316, 320 (E.D. Tex. 2004)

31

(rule was designed to protect defendants); *Walker v. Houston*, 341 F. Supp. 1124, 1131 (S.D. Tex. 1971) (rule was designed to prevent "[i]ncompatible adjudications [that] would trap [a defendant] in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another."). Where defendants do not seek the protection of Rule 23(b)(1)(A), "the availability of the class action asserted under [that Rule] is questionable." *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 107 (E.D. Va. 1980); *see also Chmielski v. City Prod. Corp.*, 71 F.R.D. 118, 155 (W.D. Mo. 1976) (same).

Moreover, certification is generally inappropriate under Rule 23(b)(1)(A) where, as here, the proposed class seeks damages. Both the Supreme Court and the Seventh Circuit have noted that certification of damages classes under the rule raises serious concerns, since class members have no right to opt out. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999); *see also Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n.10 (9th Cir. 1976) ("Infrequently, if ever will [Rule 23(b)(1)(A) be satisfied] when the action is for money damages."); *Rowell v. Voortman Cookies*, *Ltd.,* 2005 WL 2266607, *4 (N.D. Ill. Sept. 14, 2005) (citing *Green*).

**F.     Plaintiffs' proposed class does not even satisfy the threshold requirements of Rule 23(a) for certification of a class.**

Defendants addressed the Rule 23(b) criteria first because they are dispositive. But the record also establishes that plaintiffs fail to meet two of the four initial Rule 23(a) factors. Intra-class conflicts prevent the named plaintiffs from being adequate representatives, and the named plaintiffs are not typical class members.

**1.     The named plaintiffs are not adequate class representatives.**

Rule 23(a)(4)'s adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 594. Here, at least two intra-class conflicts render the named plaintiffs inadequate and the class uncohesive and uncertifiable.

First, as already discussed in Part III.D, *supra,* our trademark system permits the same mark to be registered multiple times for different types of goods. That creates irreconcilable intra-class conflicts. To take just one example, the mark "EARTH" is registered to Maynard

Designs, Inc. for vitamins, Niagara Conservation Corporation for shower heads, and the Escuela de Agricultura de la Región Tropical Húmeda for bananas.[19]  This establishes a conflict over which, if any, of these companies could recover for the use of "earth.com" in the AdSense for Domains program during the proposed class period.  To establish its right to recover, each would have to argue its rights in the mark "EARTH" are strong, and its fellow class members' rights are weak.  Even worse, the class members would have to fight amongst themselves over who would own the domain going forward, since the current complaint demands the transfer of domains "to the rightful owner of the Distinctive and Valuable Marks."  Compl., Prayer for Relief ¶ 9.

This same intra-class conflict exists as to numerous domains that were enrolled in the AdSense for Domains program.  For example, "fashion.com" was in the program during the relevant period, and the trademark "FASHION" is owned by Black & Decker Corporation ("metal door locks and parts thereof"), Plaid Enterprises, Inc. ("paints for use in arts and crafts"), and Hewitt Soap Works, Inc. ("toilet soap").[20]  And consider the case of "six.com": would recovery for any infringement of the trademark "SIX" go to Bee-Line Accessoires Vertriebs GmbH ("spectacles") or to LeVecke Corporation ("vodka")?[21]  As explained above, this conflict extends even to named plaintiffs Vulcan Golf and JBSS.  The Court cannot escape these problems.  They not only would require individual determinations, but would pit class members against each other—exactly what Rule 23 is intended to avoid.

Second, an impermissible intra-class conflict exists where some class members have an "ongoing business relationship" with a defendant such that "their interests in the long-term financial health of the company were imperiled by plaintiffs' efforts to wring a large damage award out of defendants."  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).  Here, some class members have ongoing business relationships with Google—most commonly, as advertisers who run ads on Google's search engine.  Tens of thousands of U.S. businesses (many of them trademark owners) run such ads through Google.

---

[19]  *See* United States Trademark Reg. Nos. 3,464,208, 1,841,287, and 2,530,027.

[20]  *See* United States Trademark Reg. Nos. 1,854,453, 1,899,508, and 551,443.

[21]  *See* United States Trademark Reg. Nos. 2,780,979 and 2,680,991.

(Indeed, named plaintiff Vulcan Golf itself has been a Google AdWords advertiser.) Many depend on these ads to bring in a significant percentage of their revenue. *See, e.g.*, Google AdWords Success Stories, at https://adwords.google.com/select/ success/archive-top.html. But other mark holders have no relationship with Google and do not rely on Google's ad programs for their financial solvency.

These two groups have an unresolvable conflict. Google's advertising partners will be interested in a restitutionary remedy that adequately compensates them for provable harm, but leaves Google able to continue providing the advertising services they use and profit from. But other class members will want only the highest possible damage award, regardless of its effect on Google or their fellow class members. If plaintiffs proved every allegation in their compendious Third Amended Complaint (which they cannot), the potential liability could be staggering.[22] Because these two groups within the putative class have not just "potentially divergent aims," *Gilpin v. AFL-CIO*, 875 F.2d 1310, 1313 (7th Cir. 1989), but actually incompatible ones, the proposed class fails the Rule 23(a)(4) adequacy test.

### 2. The named plaintiffs are not typical class members, because some plaintiffs have different claims against some defendants.

Further, the named plaintiffs are not typical class members as required by Rule 23(a)(3). Plaintiffs concede in their class-certification motion that their complaint "does not identify a specific Deceptive Domain for each Plaintiff versus each Defendant." Mot. at 32. And they do not supplement their complaint with any affidavits assuring the Court that each named plaintiff has a claim against each defendant. This is not for lack of trying; plaintiffs have worked hard over the past several months to compile a list of all allegedly infringing domains, which list they recently provided to defendants along with the withdrawal of their preliminary-injunction motion. Gratz Decl. ¶ 9 & Ex. D. Yet despite investing all this effort, they still cannot offer any proof to substantiate the claim in their complaint that "**every one** of the named Parking Company Defendants and the numerous co-Defendants have committed deceptive acts targeted at **every**

---

[22] Plaintiffs claim their proposed class has "millions" of members. Compl. ¶ 318. For purposes of this motion, defendants will read this allegation conservatively to mean that the class has two million members. Statutory damages of up to $100,000 per domain are available under ACPA.

**one** of the Plaintiffs." Mot. at 32 (citing Compl. ¶¶ 152-154) (emphasis in original). Accordingly, each of them is likely to focus its energy on its particular claims against particular defendants, rather than representing the class as a whole.

Finally, to the extent any named plaintiff does not claim that a named defendant actually monetized a specific domain that allegedly infringes that named plaintiff's mark, defendants previously asked the Court to dismiss that plaintiff's claims against those defendants. The Court deferred ruling on that motion, reasoning that its subsequent decision on class certification could affect the analysis. Order at 15. Because the Court should deny class certification, as discussed above, it should also proceed to rule on, and grant, defendants' motions to dismiss. Even if the Court grants class certification, however, it should still grant defendants' motions to dismiss, because, under the Rules Enabling Act, an order certifying a class cannot enlarge any party's substantive rights. *See* 28 U.S.C. § 2072(b); *Simer*, 661 F.2d at 676 n.42. A plaintiff who has no claim against a defendant before class certification still has no claim against that defendant after class certification. Neither can plaintiffs rely on the so-called "juridical-link" doctrine to expand their claims. "The juridical links doctrine under Rule 23, like joinder under Rule 20(a), is a **procedural** device that permits collective adjudication of related claims, not a **substantive** rule that results in joint or several liability." *Weld v. Glaxo Wellcome Inc.*, 746 N.E.2d 522, 530 (Mass. 2001) (emphasis added) *cited in Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002).

## IV. CONCLUSION

There is no practical way to conduct this case—including discovery from individual mark owners and third parties, dispositive motions, pretrial submissions, motions in limine, and trial itself—in a single proceeding. For all the reasons stated in this brief, this Court should deny plaintiffs' motion for certification of the first trademark class in United States history.

---

15 U.S.C. § 1117(d). Plaintiffs thus appear to be seeking damages of up to $200 billion.

Dated: September 11, 2008            Respectfully submitted,


  /s/ Mariah E. Moran                     /s/ Thomas J. Wiegand
One of the Attorneys for ***Google Inc.***       One of the Attorneys for ***Oversee.net***

Joseph J. Duffy                            Thomas J. Wiegand
Jonathan M. Cyrluk                    Ronald Y. Rothstein
Mariah E. Moran                       Marlon E. Lutfiyya
Stetler & Duffy, Ltd.                    Winston & Strawn LLP
11 South LaSalle Street                35 West Wacker Drive
Suite 1200                              Chicago, Illinois 60601
Chicago, Illinois 60603

Daralyn J. Durie                         Andrew P. Bridges
Daniel Purcell                           Winston & Strawn LLP
Joseph C. Gratz                        101 California Street
Keker & Van Nest LLP               Suite 3900
710 Sansome Street                  San Francisco, California 94111
San Francisco, California 94111-1704

Aaron D. Van Oort                   Steven D. Atlee
Faegre & Benson LLP              Winston & Strawn LLP
2200 Wells Fargo Center           333 South Grand Avenue
90 South Seventh Street            38th Floor
Minneapolis, Minnesota 55402     Los Angeles, California 90071


  /s/ Jeffrey Singer                        /s/ Michael Dockterman
One of the Attorneys for ***Sedo, LLC***       One of the Attorneys for ***Dotster, Inc.***

Jeffrey Singer                           Michael Dockterman
Misty R. Martin                        Alison C. Conlon
Anastasios T. Foukas              Wildman, Harrold, Allen & Dixon LLP
Segal McCambridge Singer & Mahoney    225 West Wacker Drive
Sears Tower                            Suite 2800
233 South Wacker Drive           Chicago, Illinois 60606-1229
Suite 5500
Chicago, Illinois 60606

Vincent V. Carissimi
Robert L. Hickok
Joanna J. Cline
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, Pennsylvania 19103-2799

    /s/ Brett A. August
One of the Attorneys for ***Internet Reit, Inc.***

Brett August
Bradley Cohn
Alexis Payne
Pattishall, McAuliffe, Newbury, Hilliard &
Geraldson LLP
311 South Wacker Drive
Suite 5000
Chicago, Illinois 60613

Steve Borgman
Kenneth P. Held
Vinson & Elkins LLP
2500 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760