IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, individually and on behalf of all others similarly situated, | ) Case No. 07 CV 3371 ) ) ) ) |
| | ) ) The Honorable Blanche M. Manning |
| Lead Plaintiffs, | ) ) |
| v. | ) Magistrate Judge Geraldine Soat Brown ) |
| GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., AKA REVENUEDIRECT.COM INTERNET REIT, INC. d/b/a/ IREIT, INC.; and JOHN DOES I-X, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' CONSOLIDATED SUR-REPLY TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A. None of the class definitions plaintiffs propose are objectively ascertainable and all would require merits determinations....................................2

        1. Mark ownership is an essential component of all plaintiffs' proposed classes...................................................................................3

        2. Individual ownership issues render plaintiffs' newly proposed Registered Domain Class unascertainable. ...................................5

            a. Domain name ownership and domain proxy companies. ...............5

            b. Ascertaining class membership would require an extensive worldwide case-by-case investigation. ...........................6

            c. Even where there is no proxy company, registration information cannot be matched automatically................................8

        3. Individual ownership issues also render plaintiffs' Modified Original Class unascertainable...................................................9

    B. Individual issues would predominate as to all of plaintiffs' proposed classes, making class certification improper under Rule 23(b)(3)........................10

        1. Litigating the distinctiveness and protectability of each trademark or personal name will require discovery from each individual class member and separate rulings for each mark or name....................................................................................10

            a. Distinctiveness is an individual issue as to the Doubly-Registered Subclass. ...................................................10

            b. Distinctiveness is an individual issue as to all of plaintiffs' other proposed classes...................................15

        2. Litigating ownership of each trademark and domain name will require discovery from each individual class member and third parties and separate rulings for each mark and domain name. .................16

        3. Litigating whether any given domain name violates ACPA will require individual examinations of each site. ...........................................16

        4. Litigating plaintiffs' unjust-enrichment claims would require an impracticable application of the laws of all 50 states. .........................17

        5. Litigating defendants' affirmative defenses would require separate determinations as to individual class members..........................20

## TABLE OF CONTENTS
### (cont'd)

**Page**

6. The fact that plaintiffs' new proposed classes abandon the vast majority of their original proposed class shows that a class action is not the superior method of resolving this case...........................21

C. The named plaintiffs are atypical of the class under Rule 23(a)(3) and inadequate class representatives for purposes of Rule 23(a)(4)............................21

1. Intra-class conflicts defeat typicality and adequacy. .................................21

2. Plaintiffs' "ascertainment methodology" excludes many of the named plaintiffs' claims, including all claims asserted against certain defendants, thus defeating typicality and adequacy.......................22

III. CONCLUSION..............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*555-1212.com, Inc. v. Communication House Int'l, Inc.*
157 F. Supp. 2d 1084 (N.D. Cal. 2001) ....................................................................12

*Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*
121 F. Supp. 2d 1255 (N.D. Iowa 2000) ..................................................................18

*Avlon Indus. v. Robinson*
No. 01 C 3615, 2005 WL 331561 (N.D. Ill. Feb. 8, 2005) ....................................13, 14

*Bower v. Int'l Bus. Mach., Inc.*
495 F. Supp. 2d 837 (S.D. Ohio 2007) ....................................................................18

*Broussard v. Meineke Disc. Muffler Shops, Inc.*
155 F.3d 331 (4th Cir. 1998) ..................................................................................22

*Charter Nat'l Bank and Trust v. Charter One Fin., Inc.*
No. 01 C 0905, 2001 WL 1035721 (N.D. Ill. Sept. 4, 2001) ....................................13

*Clark v. Experian Information, Inc.*
233 F.R.D. 508 (N.D. Ill. 2005) ..............................................................................20

*Custom Vehicles, Inc. v. Forest River, Inc.*
476 F.3d 481 (7th Cir. 2007) ..........................................................................11, 13, 15

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*
343 F.2d 655 (7th Cir. 1965) ..................................................................................12

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*
83 F.3d 169 (7th Cir. 1996) ..............................................................................11, 14

*Emilio Pucci Societa a Responsibilita Limitata v. Pucci Corp.*
10 U.S.P.Q.2d 1541 (N.D. Ill. 1988) ......................................................................15

*Flentye v. Kathrein*
485 F. Supp. 2d 903 (N.D. Ill. 2007) ......................................................................12

*Fletcher v. Behring*
245 F.R.D. 328 (N.D. Ill. 2006) ................................................................................3

*Gene & Gene LLC v. BioPay LLC*
541 F.3d 318 (5th Cir. 2008) ..................................................................................20

*Gilpin v. AFL-CIO*
875 F.2d 1310 (7th Cir. 1989) ..........................................................................22, 23

*Gunnells v. Healthplan Servs., Inc.*
348 F.3d 417 (4th Cir. 2003) ..................................................................................20

*Hasbro, Inc. v. MGA Entm't, Inc.*
497 F. Supp. 2d 337 (D.R.I. 2007) ..........................................................................12

*Hickory Farms. Inc. v. Snackmasters, Inc.*
500 F. Supp. 2d 789 (N.D. Ill. 2007) ......................................................................12

*Hinman v. M & M Rental Ctr.*
545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................................2

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Ilapak Research & Dev. S.A. v. Record SpA.*
762 F. Supp. 1318 (N.D. Ill. 1991) ................................................................10

*In re Conagra Peanut Butter Prods. Liab. Litig.*
No. 1:07-MD-1845, 2008 WL 2885951 (N.D. Ga. July 22, 2008) ...........................19

*In re Motel 6 Litig.*, 1997 WL 154011 at *7 (S.D.N.Y. Apr. 2, 1997) .........................18

*In re Relafen Antitrust Litig.*
221 F.R.D. 260 (D. Mass. 2004)....................................................................18

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2007
WL 4287511, *5 (N.D. Ill. Dec. 4, 2007)................................................1, 17, 18

*In re Trans Union Corp. Privacy Litig.*
211 F.R.D. 328 (N.D. Ill. 2002)...............................................................17, 19

*Lau v. Arrow Fin. Servs., LLC*
245 F.R.D. 620 (N.D. Ill. 2007)......................................................................3

*Lilly v. Ford Motor Co.*
No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002) ...............................17, 18

*Liquid Controls Corp. v. Liquid Control Corp.*
802 F.2d 934 (7th Cir. 1986) ...................................................................11, 12

*McLaughlin v. Am. Tobacco Co.*
522 F.3d 215 (2d Cir. 2008) ........................................................................20

*McMann v. Doe*
460 F. Supp. 2d 259 (D. Mass. 2006) ................................................................5

*Money Store v. Harriscorp Fin., Inc.*
689 F.2d 666 (7th Cir. 1982) ........................................................................10

*Oy v. Sikorsky Aircraft Corp.*
No. 08-3185, 2008 WL 2509821 (E.D. La. June 18, 2008) .......................................8

*Register.com, Inc. v. Verio, Inc.*
356 F.3d 393 (2d Cir. 2004) ..........................................................................5

*Siegel v. Shell Oil Co.*
No. 06 C 0035, 2008 WL 4378339 (N.D. Ill. Sept. 23, 2008)...........................18, 19

*Thompson v. Jiffy Lube Int'l, Inc.*
250 F.R.D. 607 (D. Kan. 2008) ................................................................19, 23

*Triple Tee Golf, Inc. v. Nike, Inc.*
485 F.3d 253 (5th Cir. 2007) ........................................................................15

*Waste Mgmt. Holdings, Inc. v. Mowbray*
208 F.3d 288 (1st Cir. 2000).........................................................................20

### STATE CASES

*Barbara's Sales, Inc. v. Intel Corp.*
227 Ill. 2d 45, 879 N.E.2d 910 (2007) .............................................................19

*Cmty. Guardian Bank v. Hamlin*
898 P.2d 1005 (Ariz. 1995) ..........................................................................18

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Heldenfels Bros., Inc. v. City of Corpus Christi*
    832 S.W.2d 39 (Tex. 1992)................................................................................19

*Summer Oaks Ltd. P'ship v. McGinley*
    55 P.3d 1100 (Or. Ct. App. 2002)......................................................................18

### FEDERAL STATUTES

15 U.S.C. § 1115(b) ...........................................................................................20

15 U.S.C. § 1125(d)(1)(A).........................................................................12, 15, 16

### FEDERAL RULES

Fed. R. Civ. P. 23 .................................................................................................2

Fed. R. Civ. P. 23(a)(3)........................................................................................21

Fed. R. Civ. P. 23(a)(4)........................................................................................21

Fed. R. Civ. P. 23(b)(3)...................................................................................10, 21

### TREATISES

CALLMANN ON UNFAIR COMPETITION § 18.5...............................................................12

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004).......................................2

MCCARTHY ON TRADEMARKS § 25:78 (2006) ...........................................................16

### OTHER AUTHORITIES

EVA PRUDHOMME SMITH, CAJUN COOKING FROM THE BAYOU COUNTRY
    (1972)............................................................................................................14

# I.   INTRODUCTION

It would be impossible to manage and try this case as a class action, and nothing proves that more clearly than the fact that plaintiffs—after more than a year of litigation, four iterations of their complaint, two briefs, and a "clarifying statement" submitted in response to a Court order—still cannot settle on a class definition.  Instead, recognizing that their original proposed class cannot be certified, they invite the Court to cobble together its own definition from the pieces of the myriad variations they have proposed over time.  "But it is not the court's role to fashion plaintiff's class definitions for them where the original proposed class is so problematic." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 2623, 05 C 4742, 2007 WL 4287511, *5 (N.D. Ill. Dec. 4, 2007) (internal citation omitted).  Plaintiffs' new proposed classes are still uncertifiable.

Most fundamentally, plaintiffs still have not explained how the parties could litigate and try Anticybersquatting Consumer Protection Act ("ACPA") and unjust-enrichment claims on behalf of alleged trademark owners across the nation without taking discovery and submitting separate proof from each individual mark owner.

- <u>First</u>, the parties will have to take individualized discovery from class members, and the trier of fact will have to make individual determinations, as to the distinctiveness and protectability of each mark or personal name.  The Court cannot presume distinctiveness and protectability as to unregistered marks and personal names.  Even as to registered marks, as soon as a defendant presents evidence that a mark is not distinctive, any presumption of distinctiveness dissolves.

- <u>Second</u>, the parties will have to take individualized discovery from class members, and the trier of fact will have to make individual determinations, as to the ownership of each trademark and domain name.  Indeed, because plaintiffs' new proposed class definitions build mark and domain name ownership into the class definition, individual discovery and litigation would be needed even to determine class membership.  About 15 million domains are registered through third-party proxy companies, many of which are located outside the U.S. and beyond this Court's subpoena power.

- <u>Third</u>, the trier of fact will have to make individual determinations as to whether each accused domain violates ACPA.  Plaintiffs even concede that not all domains that prepend "www" or "http" or append "com" to a registered mark violate the law.

- <u>Fourth</u>, four recent decisions from this Court hold that nationwide unjust-enrichment classes cannot be certified because of individual issues caused by varying state laws.  Those decisions were correct, and this Court should follow them.

The claims at issue, and the sources of evidence relevant to the elements of those claims,

will require the participation of each individual trademark owner and user in this litigation. Indeed, it is hard to imagine the Court would adjudicate the validity of a trademark owner's mark without the participation of that owner in the lawsuit. This individualized process cannot manageably be conducted on a class basis, and it cannot be abandoned in order to certify a class without impermissibly altering the parties' substantive rights. That is why no court has ever allowed what plaintiffs propose here. As a matter of law, this Court cannot get to judgment for *any* putative class member without individual discovery and an individual merits ruling.

## II.     ARGUMENT

A determination of "how the case will be tried" is the critical inquiry in deciding whether to certify a class action. Fed. R. Civ. P. 23, Advisory Committee Note to 2003 Amendments. If the members of the proposed class are so differently situated that their claims cannot be resolved using common proof, certification would make no sense. In such a circumstance, a "class action" would not be superior to individual litigation; it would be *equivalent* to serial individual litigation. That is exactly the case here. None of plaintiffs' proposed classes has an objectively ascertainable membership, and even the narrowest of the proposed classes would require class-member-specific discovery and individualized determinations as to the distinctiveness of registered marks and the ownership of marks and corresponding domain names. Trial of any of the classes would devolve into an unmanageable morass of individualized hearings.

**A.      None of the class definitions plaintiffs propose are objectively ascertainable and all would require merits determinations.**

Plaintiffs have made class membership contingent on mark and domain name ownership, and ownership can be determined only through individual discovery and litigation. This need to make individual merits determination to identify the class makes certification improper. *See* Opp'n at 6-9 (citing cases on ascertainability requirement).

A proposed class can be certified only if its membership is ascertainable "by reference to objective criteria and … by reference to defendants' conduct." *Hinman v. M & M Rental Ctr.,* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008). Conversely, where a class definition depends on resolution of the merits of class members' claims, it is improper. *See* MANUAL FOR COMPLEX

LITIGATION (FOURTH) § 21.222 (2004); *see also Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 624 (N.D. Ill. 2007) (same); *Fletcher v. Behring*, 245 F.R.D. 328, 335 (N.D. Ill. 2006) (same). Here, each of plaintiffs' proposed classes is limited to trademark owners, and the new proposed classes are limited to owners of both a trademark and a corresponding domain name. Ownership is a merits issue and an essential element of plaintiffs' ACPA claims. Because determining who is in any of the proposed classes would require the parties to litigate, and the trier of fact to decide, ownership on an individual basis, none of those classes are sufficiently ascertainable to permit certification.

**1.      Mark ownership is an essential component of all plaintiffs' proposed classes.**

Although the definition of plaintiffs' proposed class has been a moving target throughout this case, every variation of the class makes membership contingent on trademark ownership. In their original motion, plaintiffs sought certification of the broadest possible class, consisting of all trademark owners and individuals whose marks or names were identical or confusingly similar to any "parked domain" registered or used by any defendant after January 1, 2002. Mot. at 5. After defendants pointed out the many fatal deficiencies with this proposal, plaintiffs submitted a reply brief that appeared to abandon the vast majority of the original proposed class. For the first time, Reply at 4, plaintiffs proposed the alternative of a "Doubly-Registered Subclass" consisting only of owners of both registered trademarks and domain names containing those same marks:

> Any owner of a mark appearing on the principal or secondary registry of the United States Patent and Trademark Office who has registered a domain name containing that mark (a "mark owner's domain name"), and whose "mark owner's domain name" differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

On October 1, 2008, the Court responded to plaintiffs' dramatic change of position—and apparent abandonment of nearly all the original proposed class—by ordering plaintiffs to clarify exactly what classes they sought to certify. Plaintiffs' "clarifying statement," filed on October 2, 2008, provided little clarity. After reciting the history of their class definitions in all its various permutations, plaintiffs backpedaled from even the narrowed definition in their reply, concluding

with a "request that the Court either certify the originally proposed Class and expressly include an ascertainment methodology within the Class definition, or certify the doubly-registered subclass and corresponding subclasses for owners of unregistered marks and personal names as stand-alone classes." [Doc. 223 at 3.]

In other words, the first option plaintiffs ask the Court to consider is a modified version of their original proposal (the "Modified Original Class"), which is defined as follows:

> Any individual or owner of a mark whose personal name or mark *is identical to or differs from a domain name parked or advertised on by one or more of the Defendants only by addition of a pre-pending "www"<SoftRt>or<SoftRt>"http" or post-pending "com,"* during the period of time January 1, 2002 through the present.

Alternatively, plaintiffs ask the Court to certify three new proposed subclasses set forth in their reply and "clarifying statement." The first of these is the Doubly-Registered Subclass described above. But only two of the proposed class representatives—Vulcan Golf and John B. Sanfilippo & Son—would qualify as members of this class. The remaining two putative class representatives—Blitz Realty Group and Bo Jackson—own no registered trademarks. Perhaps for this reason, in their "clarifying statement," plaintiffs also proposed variations on this subclass for owners of unregistered marks and individuals, as follows.

> Any owner of an *unregistered mark* who has registered a domain name containing that mark (a "mark owner's domain name"), and whose "mark owner's domain name" differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

> Any *individual* who has registered a domain name containing that mark (a "personal domain name"), and whose "personal domain name" differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

[Doc. 223 at 2.][1]  Taken together, these three subclasses add up to the following class (the "Registered Domain Class"):

> Any individual or owner of a mark who has registered a domain name containing that mark (a "registered domain") and whose "registered domain" differs from a

---

[1]  Plaintiffs conclusorily state that "[t]he Court could also include other elements from the ascertainment methodology set out in Plaintiffs' opening brief, such as differing from the Defendants' parked domain by a single letter or dictionary word," [Doc. 223 at 3 n.2], but they fail to incorporate this standard into a plain English class definition or otherwise explain how this could result in an ascertainable class.

> domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

Importantly, the Registered Domain Class is only slightly narrower than the Modified Original Class, differing only in the additional requirement that the class members also own a registered domain name containing their marks or names.

### 2. Individual ownership issues render plaintiffs' newly proposed Registered Domain Class unascertainable.

Plaintiffs have attempted to make their new Registered Domain Class ascertainable by limiting it to mark holders and individuals who are also registrants of domain names containing their marks or names. But, in fact, this addition makes it even more difficult to ascertain who is in this class and who is not, because it requires this Court to adjudicate the ownership of domain names on a case-by-case basis.

### a. Domain name ownership and domain proxy companies.

For many domain names, the registrant is different from the entity that actually uses the name. This occurs for many reasons, but the most common is privacy concerns. As the Second Circuit has noted, "[a]pplicants to register a domain name submit to the registrar contact information, including at a minimum, the applicant's name, postal address, telephone number, and electronic mail address," which is known as "WHOIS information." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 395 (2d Cir. 2004). Registrars are required to "provide for free public access to it through the Internet." *Id.* But many people do not want this information to be publicly available. These people contract with a third-party company that acts as their proxy: the proxy company is the legal registrant of the domain name, but permits its customer to operate a website at the domain name. The largest of these proxy companies is Domains by Proxy, Inc. "While the identity of the registrant must be a matter of public record, the corporate form of Domains by Proxy, Inc., essentially serves to keep the actual operator anonymous." *McMann v. Doe*, 460 F. Supp. 2d 259, 263 n.9 (D. Mass. 2006).

Use of these proxy companies is common: there are over 80 such companies in operation. *See* Declaration of Joseph C. Gratz in Support of Sur-Reply ("Gratz Sur-Reply Decl."), filed concurrently herewith, ¶ 3(a). Together, they are the legal registrants of approximately *15*

*million* domain names. Gratz Sur-Reply Decl. Exh. A. For those members of the proposed class that use proxy registrants, determining whether the class member actually registered the domain name including its own mark will require an individualized investigation, including a subpoena to a third-party proxy company, and then individualized proof at trial.

In fact, one of the named plaintiffs' domains is registered to a proxy company. The domain "blitzrealtygroup.com," which upon individualized inspection turns out to be the website of plaintiff Blitz Realty Group, Inc., lists the following WHOIS information:

> **Registrant:**
> Domains by Proxy, Inc.
> DomainsByProxy.com
> 15111 N. Hayden Rd., Ste 160, PMB 353
> Scottsdale, Arizona 85260
> United States

Even ascertaining whether this named plaintiff is a class member would require a subpoena to a proxy company. And Domains by Proxy announces on its website that it "will charge the person or entity submitting the civil subpoena for costs associated with subpoena compliance" to the tune of $75 per hour. *See* http://domainsbyproxy.com/popup/subpoenapolicies.aspx. Plaintiffs have made no suggestion as to who would pay for the costs of investigating the ownership of the domain names at issue, let alone resolving inevitable privacy objections by absent members of the class. The difficulty and cost associated with acquiring the relevant information from even the largest proxy company, Domains by Proxy, demonstrates why even plaintiffs' new proposed subclasses are no more ascertainable than the original proposed class.

> **b.      Ascertaining class membership would require an extensive worldwide case-by-case investigation.**

As tough as ascertaining ownership of domains registered to Domains by Proxy might be, it pales in comparison to the difficulty of determining ownership of any of the more than one million domains registered to proxy companies outside the United States and thus beyond the subpoena power of this Court.

For example, plaintiffs allege in the complaint that "discovercreditcard**com**.com" is one of the domain names at issue in this lawsuit. Third Amended Complaint ("TAC") [Doc. 160] ¶ 170. In order to determine whether this mark is within the class, the trier of fact would have to

decide whether the corresponding domain "discovercreditcard.com" is registered to the same company that registered the trademark DISCOVER (or, for that matter, the trademarks DISCO, SCO, COVER, COVE, OVER, CREDIT, CARD, or ITCARD).[2] But the WHOIS information for "discovercreditcard.com" shows that the registrant is the Dutch company PrivacyProtect.org:

> **Registrant:**
> PrivacyProtect.org
> Domain Admin        (contact@privacyprotect.org)
> P.O. Box 97
> Note - All Postal Mails Rejected, visit Privacyprotect.org
> Moergestel
> null,5066 ZH
> NL
> Tel. +45.36946676

*See* http://whois.domaintools.com/discovercreditcard.com.  And PrivacyProtect.org has policies in place that would thwart the parties' and the Court's efforts to uncover the true domain owner. The company states in the WHOIS information that it will reject all postal mail, and reaffirms on its website that "We do not accept ANY Postal mail on behalf of the domain owner. All mail sent to our postal address is rejected."  *See* http://www.privacyprotect.org.  The website makes clear that contact information for the domain owner will be revealed only if the domain "is engaged in spam, abuse or any illegal/unlawful activity," none of which is alleged here. *Id.*

Because PrivacyProtect.org alone is the listed registrant of over 750,000 domain names, its privacy policies are a significant barrier to determining the scope of plaintiffs' new proposed subclasses.  There are several other examples of proxy registrations just among the domain names listed in the current complaint.  For example, "fordmotors**com**.com" is a domain name at issue, but the corresponding domain "fordmotors.com" is registered to Privacy Protection in Mumbai, India.  *See* http://whois.domaintools.com/fordmotors.com.  Finding out whether that domain is registered to Ford Motor Company (or, for that matter, to the owners of the trademarks

---

[2]    *See* United States Trademark Reg. Nos. 1366141 (DISCO to Continental Commercial Products, LLC for liquid smoke seasoning), 3456764 (SCO to The SCO Group, Inc. for computer software), 2293346 (COVER to Poulsen Roser A/S for living plants), 2995284 (COVE to Cove Surf Company for surfboards), 1985558 (OVER to KCTS Television for travel programs), 2376147 (CREDIT to Nufarm, Inc. for herbicides), 2473724 (CARD to Center for Autism & Related Disorders, Inc. for educational services), 2876692 (ITCARD to Advance Magazine Publishers Inc. for membership cards).

ORD, MOTOR, TOR, MOTO, and ORS)[3] would require this court or the parties to pierce the veil of privacy that Privacy Protection provides.

There are many other proxy companies outside the reach of this Court's jurisdiction. For example, a proxy company called Domain Discreet, which is listed as the registrant of more than 380,000 domain names, is based on the island of Madeira, in Portugal. Gratz Sur-Reply Decl. Ex. A (listing proxy companies). And ContactPrivacy.com, listed as the registrant of almost 500,000 domain names, is located in Toronto. Other proxy companies operate in Vancouver, Singapore, St. Vincent and Grenadines, the Cayman Islands, and Japan. *Id.*.

Plaintiffs have offered no evidence to suggest it would be possible to determine the actual owners of these domains. Indeed, the proxy companies exist specifically to provide privacy by concealing the actual owner's identity. They almost certainly will use any means at their disposal to resist revealing confidences. This means that, even to figure out who is in plaintiffs' new proposed subclasses, this Court would be required to supervise a multi-continent investigation involving the service and enforcement of dozens of subpoenas via the Hague Convention. This would require service of process on designated Central Authorities of numerous foreign governments—a process courts have described as "costly, cumbersome and slow." *Oy v. Sikorsky Aircraft Corp.*, No. 08-3185, 2008 WL 2509821, *2 (E.D. La. June 18, 2008). That such extraordinary measures would be required merely to ascertain the identities of class members demonstrates this case cannot be litigated as a class action.

### c. Even where there is no proxy company, registration information cannot be matched automatically.

The viability of plaintiffs' proposed classes depends heavily on the creation of some sort of automated system that could match trademark owners with domain owners. Otherwise, the Court would face the Herculean task of matching millions of registered marks against millions of domain names. But even where there no proxy company is involved, such automated matching simply would not work for the entire class.

---

[3] *See* United States Trademark Reg. Nos. 2978038 (ORD to Sesame Workshop for toys), 2415391 (MOTOR to Hearst Business Publishing, Inc. for magazines), 1363346 (TOR to Tom Doherty Associates for books), 3231605 (MOTO to American Sports Licensing, Inc for golf

For example, with respect to named plaintiff John B. Sanfilippo & Son, an automated system comparing the listed registrants for the domain name fishernuts.com and the trademark FISHER would encounter the following:

| Domain Name Registrant | Trademark Registrant |
|---|---|
| John B. Sanfilippo (johnbsanfilippo@icsp.com) 2299 Busse Rd Elk Grove Village, IL  60007 | JOHN P. SANFILIPPO & SON, INC. CORPORATION ASSIGNEE OF DELAWARE 1703 N. Randall Road Elgin ILLINOIS 601237820 |

While the domain name appears to be registered to an individual named John B. Sanfilippo, the trademark is registered to "JOHN **P. SANFILIPPO & SON, INC.**"  An automated system would find that the domain and the trademark are not owned by the same entity, and eliminate named plaintiff John B. Sanfilippo & Son, Inc. from the class.  An individualized investigation would reveal that the company moved from Elk Grove Village to Elgin in 2007, and that the "P." in the trademark registration is likely a typographical error.  But performing that sort of individualized inquiry for each class member would defeat the purpose of class treatment.

As another example, take named plaintiff Bo Jackson.  According to plaintiffs, Jackson's trademark is his name.  But an automated system comparing the listed registrants for the domain name bojackson.com and the trademark BO JACKSON BO would encounter the following:

| Domain Name Registrant | Trademark Registrant |
|---|---|
| Bo Jackson Fan Site, Ltd. PO Box 10733 Grand Cayman, Cayman Islands  KY1-1007 US | N'Genuity Enterprises Co. CORPORATION ARIZONA Suite 120 15333 North Pima Road Scottsdale ARIZONA 85260 |

On the face of it, it appears that Jackson is neither the domain name registrant nor the trademark registrant with respect to his own name.  Plaintiffs may be able to offer proof to the contrary, and show that Jackson is in fact a class member, but they would need to rely on individual evidence, not an automated system, in order to do so.

### 3.    Individual ownership issues also render plaintiffs' Modified Original Class unascertainable.

Even the membership of plaintiffs' Modified Original Class, which requires ownership of

---

equipment), 2603329 (ORS to Ortadogu Rulman Sanavi Ve Ticaret, A.S. for ball bearings).

a mark or personal name only and not also ownership of a domain name, cannot be determined without individual merits rulings. As defendants noted previously, ownership of a protectable mark or personal name is an essential element of an ACPA claim. Each putative class member will have to offer proof on that issue. Plaintiffs blithely assert that defendants will not "have grounds to challenge ownership on any significant number of marks." Reply at 10. But they do not deny that ownership is often a live issue in trademark trials, or even attempt to distinguish the cases defendants cited on this point. *See, e.g.*, *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 674-79 (7th Cir. 1982) (lengthy analysis of ownership rights following purported transfer of trademark rights); *Ilapak Research & Dev. S.A. v. Record SpA.*, 762 F. Supp. 1318, 1322-23 (N.D. Ill. 1991) (trademark ownership dispute turned on proof of each party's involvement with product, including consumer perception of each party's use of the mark at issue). Defendants plan to pursue individual discovery on class members and challenge trademark ownership where appropriate. There is no denying that class membership depends on resolution of this essential merits issue, and plaintiffs do not deny it.

**B.      Individual issues would predominate as to all of plaintiffs' proposed classes, making class certification improper under Rule 23(b)(3).**

Plaintiffs' only serious asserted basis for class certification is under Federal Rule of Civil Procedure 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Whichever of plaintiffs' many proposed classes is at issue, individual issues will predominate, rendering a class suit unmanageable and inferior to individual actions.

**1.      Litigating the distinctiveness and protectability of each trademark or personal name will require discovery from each individual class member and separate rulings for each mark or name.**

**a.      Distinctiveness is an individual issue as to the Doubly-Registered Subclass.**

Plaintiffs focused their reply brief entirely on the Doubly-Registered Subclass of owners of registered marks who also own domain names containing those marks. But even though this proposed subclass is a fraction the size of the original proposed class, plaintiffs understand they

still could not prove the distinctiveness of every trademark at issue through common evidence. Instead, they argue the Court should presume distinctiveness for the entire subclass. Plaintiffs contend that (1) all marks registered on the Principal Register are presumed to be distinctive; and (2) to the extent defendants attempt to rebut that presumption, or in the case of marks registered on the Supplemental Register, the Court should presume distinctiveness where any defendant has made "multiple registrations of confusingly similar domains." Reply at 9. Plaintiffs' approach runs afoul of settled trademark law.

To begin with, the Seventh Circuit has made clear that the presumption of distinctiveness for trademarks registered on the Principal Register is "easily rebuttable." *Custom Vehicles, Inc. v. Forest River, Inc.,* 476 F.3d 481, 486 (7th Cir. 2007). "A trademark, even a registered one, is not a property right, like a copyright or a patent, but merely an identifier of source." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.,* 83 F.3d 169, 173 (7th Cir. 1996). Accordingly, the presumption of distinctiveness is exceedingly weak; it "merely shifts the burden of production to the alleged infringer." *Custom Vehicles,* 476 F.3d at 486. "Its only function is to incite the presentation of … evidence" of invalidity. *Door Sys.,* 83 F.3d at 172. "[W]hen the function has been performed the presumption drops out of the case" and simply "evaporates." *Id.*

Because the presumption is so weak, case law is replete with examples of courts finding registered trademarks non-distinctive and thus unprotectable. This analysis is necessarily time-consuming and mark-specific. Just last year in *Custom Vehicles,* the Seventh Circuit held the registered trademark "WORK-N-PLAY" insufficiently distinctive and thus unprotectable. *See Custom Vehicles,* 476 F.3d at 482-86. To reach this conclusion, both the district court and the Seventh Circuit first had to evaluate the mark itself, eventually concluding it was descriptive and not necessarily protectable. Both courts then examined proof of whether the mark had acquired secondary meaning in the minds of consumers, including evidence of the mark holder's sales history and marketing efforts over a five-year period. *See id.* at 482-84. Only after undertaking this analysis could either court render a decision on whether the mark was protectable. Similarly, in *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934 (7th Cir. 1986), the Seventh Circuit affirmed a district-court ruling that the registered mark "LIQUID CONTROLS"

11

was generic and thus unprotectable.  Again, both the district court and the Seventh Circuit plunged into a detailed, fact-specific inquiry, parsing dictionary definitions of "liquid" and "controls" and evaluating the use or non-use of those terms in patent applications, publications, business records, and marketing materials.  Only after this process could either court reach a firm conclusion on distinctiveness.  *See id.* at 936-39; *see also Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.,* 343 F.2d 655, 659-68 (7th Cir. 1965) (finding generic the registered mark "YO-YO").[4]

Well aware that registered marks are regularly and successfully challenged as generic or descriptive, plaintiffs invent a second presumption—apparently irrebuttable, in their view—that no court has ever before applied in any trademark action.  Plaintiffs contend that "[w]here a cybersquatter registers and profits from multiple domain names that are identical or confusingly similar to a registered mark, it is clear that the mark is either distinctive or famous, or both."  Reply at 9.  According to plaintiffs, even where defendants rebut the initial presumption that a registered mark is distinctive, any "multiple registrations of confusingly similar domain names will be ample evidence to overcome their challenge."  *Id.*

In other words, plaintiffs argue that the *mere registration* of multiple domain names that are similar to a trademark *necessarily* proves that the mark is distinctive.  No court has ever adopted this rule, and for good reason.  To make out a cybersquatting claim under the ACPA, a plaintiff must prove that (1) it had a distinctive or famous mark at the time the domain name was registered; (2) the defendant registered, trafficked in, or used a domain name identical or confusingly similar to that mark; and (3) the defendant had a bad-faith intent to profit from that act.  *See* 15 U.S.C. § 1125(d)(1)(A); *Flentye v. Kathrein,* 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007).  Adopting plaintiffs' proposed rule would mean that plaintiffs could prove the first element—distinctiveness—simply by proving the separate, second element—registration and use

---

[4]   *See, e.g., Hickory Farms. Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789 (N.D. Ill. 2007) (finding registered mark BEEF STICK invalid as generic); *555-1212.com, Inc. v. Communication House Int'l, Inc.*, 157 F. Supp. 2d 1084 (N.D. Cal. 2001) (finding that the domain name 5551212.com did not infringe the registered trademark 555-1212.COM because the mark was invalid as generic); *Hasbro, Inc. v. MGA Entm't, Inc.*, 497 F. Supp. 2d 337 (D.R.I. 2007) (finding registered mark MEMORY invalid as generic); CALLMANN ON UNFAIR COMPETITION § 18.5 (listing dozens other examples of cases in which registered marks were found invalid).

of domain names. Plaintiffs are asking this Court to allow them to shortcut their obligation to prove each and every element of their ACPA claim.

In support of this extraordinary request, plaintiffs cite only dicta from this Court's ruling in *Avlon Industries v. Robinson,* No. 01 C 3615, 2005 WL 331561 (N.D. Ill. Feb. 8, 2005). But in deciding *Avlon*, this Court did not have the benefit of the Seventh Circuit's 2007 *Custom Vehicles* decision. To the extent plaintiffs argue that *Avlon* ever could have been cited in support of a conclusive presumption, it cannot be cited that way after *Custom Vehicles*, which holds unequivocally that the presumption of distinctiveness arising from trademark registration is "easily rebuttable." *Custom Vehicles*, 476 F.3d at 486. Further, *Avlon* does not stand for the proposition that proof of registration of multiple similar domain names, by itself, establishes distinctiveness. Rather, this Court found distinctiveness in *Avlon* based on numerous facts, including the extent of sales of the plaintiffs' marked products around the world, the percentage share of defendants' sales made up of plaintiffs' products, and the prominence of plaintiffs' products in the market relative to competing brands. See *id*. at *2. Further, it does not appear that the *Avlon* defendant presented any substantial evidence to rebut plaintiffs' showing, as defendants will do here. Moreover, the mark at issue in *Avlon*, "KeraCare," was a coined term. Even assuming the existence of multiple registrations of similar domain names is relevant to whether a mark is distinctive in such a context, the same rationale does not apply to the majority of marks that are either descriptive or otherwise comprised of common or generic words. For example, the existence of multiple domain name registrations for variations of the word "windows" does not suggest that the word functions only as a unique, distinctive trademark identifier for Microsoft's operating system, because it also equally functions as a descriptive term for a framework enclosing a pane of glass. But in any event, this Court in *Avlon* did not apply any sort of conclusory presumption of distinctiveness; it convened summary-judgment proceedings, heard and evaluated evidence, and entered an order with specific factual findings based on the particular circumstances of the case. This is exactly the sort of mark-specific, fact-intensive inquiry the Court would have to undertake for each asserted mark if it certifies plaintiffs' proposed class. *See Charter Nat'l Bank and Trust v. Charter One Fin., Inc.*, No. 01 C

13

0905, 2001 WL 1035721, *4 (N.D. Ill. Sept. 4, 2001).

It is also worth noting that plaintiffs' proposed second presumption would not apply to all members of even the Doubly-Registered Subclass. Plaintiffs, wrongly overreading *Avlon,* limit the presumption to instances where a defendant "registers and profits from *multiple domain names* that are identical or confusingly similar to a registered mark." Reply at 9 (emphasis added). But where a defendant has registered only *one* domain name that is allegedly similar to a registered mark, no presumption would apply under plaintiffs' approach, and the Court would have to conduct an individual analysis. Moreover, if the presumption depends on the existence of "multiple" allegedly similar domains, this Court would have to decide how many such names are required to trigger the presumption. No presumption applied in *Avlon,* and that case involved 15 allegedly similar domains. *See Avlon,* 2005 WL 331561 at *1. There is no principled answer to this question, because plaintiffs have created the entire premise out of whole cloth.

Plaintiffs are similarly wrong when they assert that "defendants have provided no reason to believe that they will have any basis to even attempt to rebut [the distinctiveness presumption] under any circumstance." Reply at 9. As plaintiffs themselves note, class certification is not the appropriate stage to argue the merits of individual class members' claims. But since they have raised the issue, we provide several examples of exactly the sort of rebuttal evidence defendants would offer at trial. For one example, one need look no further than named plaintiff John B. Sanfilippo and Son, Inc.'s latest trademark registration on the principal register, CHEDDAR CRUNCH, for "[s]nack mixes consisting primarily of wheat-based or rice-based snack foods and also containing processed nuts." United States Trademark Reg. No. 3,464,517. This mark is descriptive: the snack mix tastes like **cheddar** cheese, and is **crunch**y. After defendants present this evidence (perhaps in the form of a taste test), the presumption of validity "evaporates." *Door Sys.,* 83 F.3d at 172. The same named plaintiff has registered the mark BAYOU BLEND for "snack mix consisting primarily of sesame sticks, cajun-seasoned sesame sticks and toffee-coated peanuts, and also containing processed peanuts." United States Trademark Reg. No. 2,145,318. This mark, too, is descriptive: it is "Cajun-seasoned," and thus associated with **Bayou** Country, *see generally* EVA PRUDHOMME SMITH, CAJUN COOKING FROM THE BAYOU

COUNTRY (1972), and is a "mix," or **blend**.  As just one more example, named plaintiff Vulcan Golf has registered the trademark WOODY for "golf clubs."  United States Trademark Reg. No. 3,010,145.  But a "**wood**" is a generic term for a type of golf club designed for long-distance shots, which originally had a wooden club head.  *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 257 (5th Cir. 2007) ("a standardized set of golf clubs" consists of "a set number of woods/drivers, a set number of irons, a set number of wedges, and a putter").  Similar arguments regarding distinctiveness are available to defendants for thousands of other marks—and these showings that marks are descriptive or generic are more than enough to meet the burden of production placed on defendants by the "easily rebuttable" presumption of distinctiveness. *Custom Vehicles, Inc.,* 476 F.3d at 486.  This Court would have to adjudicate the distinctiveness of each one of those thousands of marks on a case-by-case basis.

### b. Distinctiveness is an individual issue as to all of plaintiffs' other proposed classes.

Not only are plaintiffs not entitled to any presumption of distinctiveness as to the Doubly-Registered Subclass, they do not even argue they are entitled to any such presumption as to their other proposed classes.  Nor could they, with respect to any proposed subclass of unregistered-mark owners or individuals.  Unregistered marks and personal names are never presumed to be distinctive, even as an initial and "easily rebuttable" matter.  *Custom Vehicles,* 476 F.3d at 486. Indeed, the only way to obtain protection for a personal name is specifically to prove that name has acquired distinctiveness and secondary meaning.  *See Emilio Pucci Societa a Responsibilita Limitata v. Pucci Corp.*, 10 U.S.P.Q.2d 1541 (N.D. Ill. 1988).  Obviously, the names of most American citizens are not sufficiently well-known in the public mind to qualify as protectable trademarks.  It makes no difference whether a non-famous American also has registered her non-distinctive (and thus unprotected) personal name as a domain name.

Plaintiffs mischaracterize the scope of ACPA, but that statute follows this very rule.  In support of their argument that "the plain language of the ACPA demonstrates an intent to protect all personal names," plaintiffs rely on the following citation: "*See* 15 U.S.C. § 1125(d)(1)(A) ("a personal name . . . is protected as a mark under this section")."  Reply at 11.  But plaintiffs'

ellipsis omits the critical word: "which." ACPA provides for "a civil action by the owner of a mark, including a personal name *which* is protected as a mark." 15 U.S.C. § 1125(d)(1)(A) (emphasis added). ACPA does not expand trademark law; it expressly covers only personal names that otherwise are protectable as trademarks. This is made clear by Professor McCarthy, who refers to the language plaintiffs rely upon as "a redundant phrase." MCCARTHY ON TRADEMARKS § 25:78 (2006).

Accordingly, for each unregistered mark and personal name, the Court would need to start at the beginning and conduct a full distinctiveness analysis, as defendants explained in their opposition brief. The resulting mini-trials would render class treatment unmanageable.

**2. Litigating ownership of each trademark and domain name will require discovery from each individual class member and third parties and separate rulings for each mark and domain name.**

As discussed already, membership in plaintiffs' various proposed classes depends on ownership of trademarks and domain names. These are merits issues that cannot be resolved using common proof. Instead, plaintiffs will have to separately prove ownership of each mark by furnishing proof of registration or other use and will have to separately prove ownership of each domain name by similar means. Also as noted above, proof of ownership of domain names will be impossible without resulting to cumbersome, time-consuming, expensive discovery of third-party proxy companies in foreign countries as to numerous individual domains.

**3. Litigating whether any given domain name violates ACPA will require individual examinations of each site.**

Even with respect to plaintiffs' current, narrowed proposed classes, which implicate only domains with a prepended "www" or "http" or an appended "com," individual scrutiny of all allegedly infringing domains will be necessary to determine liability. Defendants' opposition brief provided counterexamples—*e.g.,* "www2008.com," "httpguru.com," and "bearcom.com"— which comply with plaintiffs' rules but plainly do not infringe anyone's trademark. In response, plaintiffs concede that these sites are not run by cybersquatters and do not violate ACPA. Instead, they assert that these examples are outliers and make clear that their claims target only advertising-only parked sites, not content-based sites like "www2008.com" or "httpguru.com."

Reply at 9. But plaintiffs' concession has two critical implications:

- Even as narrowly as plaintiffs have drawn them, their proposed rules do not work. They capture sites that do not violate ACPA.

- As a result, the trier of fact would have to individually scrutinize the content of each allegedly infringing site to decide whether it violates ACPA.

Further, even an advertising-only parked site that prepends "www" or "http" or appends "com" to a registered trademark would not necessarily violate ACPA. For example, assume that, when "bearcom.com" was first registered, its owner had not yet developed content and chose to park and monetize it until content was ready. Unless the Court were to perform an individual analysis, it would not discover that the domain was legitimately owned by BearCom Operating LP, which planned to build a website that advertised and sold its wireless products. Plaintiffs' proposed methodology cannot make fine distinctions; it would simply include "bear.com" within the class. Similarly, the domains "wwwhosting.com," "httpinfo.com," and "bafcom.com" are currently used as advertising-only parked sites, which, under plaintiffs' rule, would include "hosting.com," "info.com," and "baf.com" within the class. But just as with "bearcom.com," the owners of "wwwhosting.com" (Trigo & Company), "httpinfo.com" (Name Administration Inc.), and "bafcom.com" (BWI Domain Manager) could have legitimate rights to use those pages. The only way to determine that would be through collection and presentation of individual evidence.

### 4. Litigating plaintiffs' unjust-enrichment claims would require an impracticable application of the laws of all 50 states.

A class action cannot be the superior method of resolving plaintiffs' unjust-enrichment claims because litigating those claims would force this Court to apply the laws of all 50 states. Plaintiffs' argument to the contrary is unavailing. In their opposition, defendants cited and discussed three recent decisions by this Court denying certification of unjust enrichment classes because of material variations in state law. *See In re Sears Roebuck, supra*; *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328 (N.D. Ill. 2002); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002). Plaintiffs simply ignore these cases—not only do they not distinguish any of them, they do not even cite them. Moreover, just two days before plaintiffs filed their reply brief, this Court issued yet another decision denying certification of a

nationwide unjust enrichment class for the same reasons—there are material variations in unjust enrichment law, and Illinois' choice-of-law principles require application of the laws of the various states. *Siegel v. Shell Oil Co.*, No. 06 C 0035, 2008 WL 4378339 (N.D. Ill. Sept. 23, 2008). One of plaintiffs' counsel is also counsel for the *Siegel* plaintiffs, yet they also ignored that decision. Plaintiffs have provided no basis for distinguishing these precedents, and there is no reason for this Court to reach a different result.

In any event, this Court's previous decisions are correct. First, just as in the earlier cases, there are material differences here among different states' unjust-enrichment laws that require a choice-of-law analysis. *See, e.g., Lilly*, 2002 WL 507126 at *2 (listing differences). Even as they claim nationwide uniformity in the text, plaintiffs acknowledge differences in several states' laws in a footnote. Reply at 17 n. 14. Plaintiffs' purported 50-state survey "is merely a list of one-sentence statements of the elements of unjust enrichment drawn from a single case from each state" that does "not engage in any sort of analysis of the nuances of unjust enrichment law or what must actually be proved in each state" and is inadequate to show uniformity. *In re Sears, Roebuck*, 2007 WL 4287511, at *9 n.7. In reality, even plaintiffs' cursory analysis reveals that unjust-enrichment law varies from state to state. Reply Ex. 2. Plaintiffs also ignore the many additional individual limitations on unjust-enrichment claims, such as the condition in Virginia, New York, North Carolina, and Ohio that the defendant have dealt directly with the plaintiff,[5] the requirement in Oregon and other states that the defendant be aware of having received a benefit from the plaintiff,[6] the prerequisite in Arizona that the plaintiff show not only that the defendant was enriched but also that the plaintiff suffered an "impoverishment," *i.e.*, an actual loss,[7] and the mandate in Texas that the defendant induced the alleged enrichment by fraud, duress, or

---

[5] *See Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*, 121 F. Supp. 2d 1255, 1279 (N.D. Iowa 2000) (Virginia law, citing *Primrose Dev. Corp. v. Benchmark Acquisition Fund I L.P.*, No. 9161, 1998 WL 957312 (Va. Cir. Ct. Oct. 29, 1998)); *In re Motel 6 Litig.*, Nos 93 Civ. 2183, 93 Civ. 2866, 1997 WL 154011 at *7 (S.D.N.Y. Apr. 2, 1997) (New York law); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 286-87 (D. Mass. 2004) (North Carolina law, citing *Effler v. Pyles*, 380 S.E.2d 149 (N.C. Ct. App. 1989)); *Bower v. Int'l Bus. Mach., Inc.*, 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007) (Ohio law).

[6] *See, e.g., Summer Oaks Ltd. P'ship v. McGinley,* 55 P.3d 1100, 1104 (Or. Ct. App. 2002).

[7] *See, e.g., Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. 1995).

undue advantage over the plaintiff.[8]  And it is not just this Court that recognizes these substantial variations.  This summer, a federal district court in Georgia held that "there is substantial conflict" between the unjust-enrichment laws of Georgia and other states.  *In re Conagra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845, 2008 WL 2885951, *7 (N.D. Ga. July 22, 2008) (denying class certification).  The federal district court in Kansas likewise held this year that "there would be a significant number of conflicts between Kansas law and the law of numerous other states" on unjust enrichment.  *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008) (denying class certification).  All states' unjust-enrichment laws are simply not the same.

Second, Illinois choice-of-law analysis uses the fact-specific most-significant-relationship test, under which this Court would apply different states' laws to different trademark owners and defendants.  *See Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 60-61, 879 N.E.2d 910 (2007).  Plaintiffs argue that California law should apply universally because Google and Oversee are headquartered in California.  But Sedo is headquartered in Massachusetts, Dotster in Washington, and Ireit in Texas.  More significantly, the domicile of the defendant is only one of many factors to consider and, in a tort-based case like this one, is much less significant than the location of the injury and the domicile of the plaintiff.  *See, e.g., In re Trans Union*, 211 F.R.D. at 343.  Because plaintiffs seek certification of a nationwide class, the putative class plaintiffs reside, and allegedly suffered injury, in all 50 states.  Defendants cannot take on in this brief the immense task of applying the Illinois most-significant-relationship test to every possible plaintiff-defendant combination, but plainly California would not have the most significant relationship to an unjust-enrichment claim brought by a Washington trademark owner against Washington-based Dotster, or a Texas trademark owner against Texas-based Ireit.  This Court not only would have to perform a choice-of-law analysis for each such combination, that analysis necessarily would result in the application of the laws of all 50 states.  This Court has held over and over that such difficulties preclude certification of nationwide unjust-enrichment classes. *See id.*; *see also Siegel*, 2008 WL 4378399, at *5.  This Court should do the same.

---

[8]  *See, e.g., Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992).

### 5. Litigating defendants' affirmative defenses would require separate determinations as to individual class members.

Whichever proposed class is at issue, individual factual issues would predominate as to defendants' affirmative defenses. Plaintiffs concede the affirmative defenses present individual issues that would have to be litigated separately for each class member. They simply argue this does not matter, citing generic case law holding that individualized affirmative defenses do not *necessarily* preclude class treatment, which is true. But it is also true that "the predominance of individual issues necessary to decide an affirmative defense *may* preclude class certification." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (internal quotation marks omitted; emphasis added). The real point, as this Court and other courts have held, is that judges must carefully consider whether litigation of affirmative defenses could be managed in a class context: "The defendants also have the right to assert affirmative defenses and these affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery." *Clark v. Experian Information, Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005). *See also, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008) (holding that affirmative defenses should be considered); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438 (4th Cir. 2003) ("like other considerations, affirmative defenses must be factored into the calculus of whether common issues predominate"); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("[A]ffirmative defenses should be considered in making class certification decisions.").

Here, as defendants demonstrated in their opposition brief, Opp'n at 22, defendants will need individual discovery and evidentiary hearings at least on whether any class member (1) obtained or registered its mark fraudulently; (2) abandoned its mark; and (3) used its mark to misrepresent the source of goods or services. Defendants also will need individual hearings on whether the accused defendant made fair use of marks at issue. *See* 15 U.S.C. § 1115(b)(1)-(4). In this circumstance, class treatment is inappropriate.

**6.      The fact that plaintiffs' new proposed classes abandon the vast majority of their original proposed class shows that a class action is not the superior method of resolving this case.**

A proposed class is certifiable under Rule 23(b)(3) only where a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Here, in an effort to circumvent the fatal problems defendants identified in their opposition, plaintiffs dramatically whittled down their initial proposed class in their reply.  The Doubly-Registered Subclass, comprised of registered mark owners who also own a domain name containing that mark, is orders of magnitude smaller than the original proposed class, which could have numbered in the tens of millions.  Even the Modified Original Class of owners of both a protectable mark or name and a corresponding domain, is dwarfed by the original class.

The fact that plaintiffs have had to engage in such gymnastics in their failed effort to propose a certifiable class—in the process abandoning the vast majority of the class they initially proposed to represent—shows that a class action cannot be the superior method of resolving this case.  Accordingly, it is better to allow any aggrieved mark holders to pursue their individual claims, either through defendants' complaint procedures, Uniform Domain-Name Dispute Resolution Policy ("UDRP") arbitrations, or individual ACPA suits, which provide an ample recovery of up to $100,000 per domain.  As defendants previously showed, these are meaningful alternatives.  Opp'n at 25-26.

**C.      The named plaintiffs are atypical of the class under Rule 23(a)(3) and inadequate class representatives for purposes of Rule 23(a)(4).**

**1.      Intra-class conflicts defeat typicality and adequacy.**

In addition to the predominance of individual issues and the resulting unmanageability of any of plaintiffs' proposed classes, those classes also are rife with intra-class conflicts that make this case unsuitable for class treatment, both because the named plaintiffs' claims are not typical of the class, as required by Rule 23(a)(3), and because the named plaintiffs cannot adequately represent the class under Rule 23(a)(4).

First, plaintiffs' Modified Original Class—"the originally proposed Class" as limited by "an ascertainment methodology"—still includes multiple owners of identical trademarks and

multiple individuals with identical personal names. Defendants' opposition provided numerous concrete examples of marks registered multiple times by different owners for different types of goods. Opp'n at 30, 32-33. In each of these cases, plaintiffs' liability theory would pit class members against one another. To establish a right to recover, each class member sharing a mark or name would need to prove its rights to a given mark or name are strong, while other class members' rights to that mark or name are weak. And, because plaintiffs' current complaint demands allegedly deceptive domains be transferred "to the rightful owner of the Distinctive and Valuable Marks," TAC, Prayer for Relief ¶ 9, multiple class members would have to battle over domain ownership. As defendants pointed out in their opposition, the named plaintiffs share marks with absent class members and thus have actual conflicts with members of the class they purport to represent. This bars certification.

Second, impermissible intra-class conflicts exist as to each of plaintiffs' proposed classes, because numerous class members have ongoing business relationships with Google as Google AdWords advertisers. Contrary to plaintiffs' reply argument, this is not a "speculative" concern. Reply at 24. Many U.S. trademark owners depend on Google-hosted advertisements for a significant portion of their revenue. Opp'n at 33-34. Such class members have an "interest[ ] in the long-term financial health of" Google that would be "imperiled by plaintiffs' efforts to wring a large damage award out of defendants." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). Such class members will be interested in a narrower remedy than class members that do not do business with Google and depend on Google for their long-term financial health. *See Gilpin v. AFL-CIO*, 875 F.2d 1310, 1313 (7th Cir. 1989).

**2. Plaintiffs' "ascertainment methodology" excludes many of the named plaintiffs' claims, including all claims asserted against certain defendants, thus defeating typicality and adequacy.**

Plaintiffs propose incorporating their "ascertainment methodology" into all of the class definitions. In other words, regardless of whether the proposed classes require that class members have registered marks or registered domain names, all proposed classes are limited to owners of marks or names that are "identical to or differs from a domain named parked and advertised on by one or more of the Defendants only by addition of a pre-pending 'www' or

'http' or post-pending 'com.'" [Doc. 223 at 3 n.2].  Even most of the named plaintiffs' claims do not fit within this ascertainment methodology.  *See* TAC ¶ 65 [Doc. No. 160].  And there is no named plaintiff who asserts such a claim against defendants Ireit and Sedo.  The only named plaintiff who asserts any ACPA claim against Ireit is John B. Sanfilippo & Son, and its claim is based solely upon the domain name "www.fishersnuts.com."  TAC ¶ 65 [Doc. No. 160].  Similarly, none of the listed domains allegedly related to Sedo fall within plaintiffs' "ascertainment methodology." *Id.*  Accordingly, there is no named plaintiff who could represent a class against Ireit or Sedo because none has claims typical of, and would not be able adequately to represent, any such proposed class.  *See Thompson*, 250 F.R.D. at 624 (plaintiff's claim not typical where it does not fall within class definition).  *See also* Opp'n at 34-35.  Even if a class could be certified (and it cannot), it could not be certified as to Ireit or Sedo.

## III.    CONCLUSION

For all the reasons stated above, and in their consolidated opposition, this Court should deny class certification.

Dated:  October 15, 2008                    Respectfully submitted,


   /s/ Mariah E. Moran                          /s/ Thomas J. Wiegand
One of the Attorneys for **Google Inc.**     One of the Attorneys for **Oversee.net**

Joseph J. Duffy                              Thomas J. Wiegand
Jonathan M. Cyrluk                           Ronald Y. Rothstein
Mariah E. Moran                              Marlon E. Lutfiyya
Stetler & Duffy, Ltd.                        Winston & Strawn LLP
11 South LaSalle Street                      35 West Wacker Drive
Suite 1200                                   Chicago, Illinois 60601
Chicago, Illinois 60603

Daralyn J. Durie                             Andrew P. Bridges
Daniel Purcell                               Winston & Strawn LLP
Joseph C. Gratz                              101 California Street
Keker & Van Nest LLP                         Suite 3900
710 Sansome Street                           San Francisco, California 94111
San Francisco, California 94111-1704

Aaron D. Van Oort                            Steven D. Atlee
Faegre & Benson LLP                          Winston & Strawn LLP
2200 Wells Fargo Center                      333 South Grand Avenue
90 South Seventh Street                      38th Floor

Minneapolis, Minnesota 55402

  /s/ Jeffrey Singer
One of the Attorneys for **Sedo, LLC**

Jeffrey Singer
Misty R. Martin
Anastasios T. Foukas
Segal McCambridge Singer & Mahoney
Sears Tower
233 South Wacker Drive
Suite 5500
Chicago, Illinois 60606

  /s/ Brett A. August
One of the Attorneys for **Internet Reit, Inc.**

Brett August
Bradley Cohn
Alexis Payne
Pattishall, McAuliffe, Newbury, Hilliard &
Geraldson LLP
311 South Wacker Drive
Suite 5000
Chicago, Illinois 60613

Steve Borgman
Kenneth P. Held
Vinson & Elkins LLP
2500 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760

Los Angeles, California 90071

  /s/ Michael Dockterman
One of the Attorneys for **Dotster, Inc.**

Michael Dockterman
Alison C. Conlon
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, Illinois 60606-1229

Vincent V. Carissimi
Robert L. Hickok
Joanna J. Cline
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, Pennsylvania 19103-2799