**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VULCAN GOLF, LLC, JOHN B. SANFILIPPO & SON, INC., BLITZ REALTY GROUP, INC., and VINCENT E. "BO" JACKSON, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Hon. Blanche M. Manning** |
| **v.** | ) ) | **07 C 3371** |
| **GOOGLE INC., OVERSEE.NET, SEDO LLC, DOTSTER, INC., a/k/a REVENUE DIRECT.COM., INTERNET REIT, INC., d/b/a IREIT, INC., and JOHN DOES I-X** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the court is the plaintiffs' motion for class certification [#197-1]. For the reasons stated below, the motion is denied.

## I.      Background

The court assumes familiarity with the factual background of this case. Briefly, plaintiffs Vulcan Golf, LLC, John B. Sanfilippo & Son, Inc. ("JBSS"), Blitz Realty Group, Inc., and Vincent E. "Bo" Jackson, have filed a complaint styled as a class action lawsuit against the following defendants: Google, Inc., Oversee.net, Sedo LLC, Dotster, Inc. a/k/a revenuedirect.com, Internet Reit, Inc., d/b/a Ireit, Inc., and John Does I-X.

The plaintiffs allege that Google and the other defendants have engaged in a wide-ranging scheme whereby they receive "billions of dollars in ill-gotten advertising and marketing revenue" by knowingly and intentionally registering, licensing and monetizing purportedly deceptive domain names at the expense of the plaintiff-mark owners.

The court granted in part and denied in part the defendants' prior two motions to dismiss and ordered briefing on the class certification issue. The plaintiffs seek class certification on only four of the remaining claims, including the Anti-Cybersquatting Protection Act ("ACPA") claim, the contributory and vicarious infringement claims, and the unjust enrichment claim. The plaintiffs' original motion for class certification proposed the following class:

> Any individual or owner of a mark whose personal name or mark is identical or confusingly similar to a parked domain name that has been registered, trafficked in or used for commercial gain, by one or more of the Defendants, during the period of time January 1, 2002 through the present.

The plaintiffs contended that the class could be further subdivided into three proposed subclasses. However, after the defendants filed their consolidated motion in opposition to the plaintiffs' proposed classes, the plaintiffs revised their proposed classes in their reply. Because it was not clear to the court what classes the plaintiffs were proposing, the court ordered the plaintiffs to file a statement clarifying what their proposed classes were. The plaintiffs filed their clarifying statement, in which they appear to propose the following class:

> Any individual or owner of a mark whose personal name or mark is identical to or differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

In addition, the plaintiffs propose three subclasses (as revised in their reply brief). The plaintiffs refer to the first subclass as the "doubly-registered subclass" and it is defined as follows:

> Any owner of a mark appearing on the principal or secondary registry of the United States Patent and Trademark Office who has a registered domain name containing that mark (a "mark owner's domain name"), and whose "mark owner's domain name" differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

The other two proposed subclasses are defined as follows:

> Any owner of an unregistered mark who has registered a domain name containing that mark (a "mark owner's domain name"), and whose "mark owner's domain name differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

> Any individual who has registered a domain name containing his or her personal name (a "personal domain name"), and whose "personal domain name" differs from a domain name parked and advertised on by one or more of the Defendants only by addition of a pre-pending "www" or "http" or post-pending "com."

**II.     Analysis**

A.     <u>Class Action Analysis</u>

"In order to show that class certification is justified, [the plaintiffs] must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure." *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The court must also ascertain whether the plaintiffs meet one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure, which states that:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"Courts have broad discretion in determining whether the class certification requirements of Rule 23 have been met." *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293-94 (N.D.Ill. 2008)(citation and internal quotation marks omitted). Finally, "a district court may certify a class only if, after 'rigorous analysis,' it determines that the party seeking certification has borne its burden." *In re Abbott Laboratories Norvir Anti-Trust Litigation,* Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *2 (N.D. Cal. June 11, 2007)(*quoting General Tel. Co. v. Falcon*, 457 U.S. 147, 158-61 (1982)).

Prior to their arguments regarding the express elements of Rule 23, the parties engage in an extensive discussion about the defendants' position that the class is unascertainable. "An implicit prerequisite to class certification is that a sufficiently definite class must exist." *Wallace v. Chicago Housing Authority*, 224 F.R.D. 420 (N.D. Ill. 2004) (citation omitted). "A sufficiently definite class exists 'if its members can be ascertained by reference to objective criteria." *Id.* (citation omitted). Further, "[t]he class definition must be sufficiently precise to make it 'administratively feasible for the Court to determine whether a particular individual is a member of the proposed class.'" *Id.* (citation omitted). However, because the court has concluded that the class cannot be certified under Rule 23(b), it need not address the parties' arguments regarding ascertainment of the proposed class and subclasses.

1.      Rule 23(a)

The defendants argue that the plaintiffs' request for class certification fails under Rule 23(a). Specifically, they contend that the named plaintiffs are atypical of the class under Rule 23(a)(3) and inadequate class representatives for purposes of Rule 23(a)(4). Even though the defendants do not challenge numerosity and commonality, the court must still ascertain whether these requirements have been met. Fed. R. Civ. P. 23(c); *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003).

a.      Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed. R. Civ. P. 23(a)(1). The defendants do not challenge this element of Rule 23(a) and given the parties' apparent agreement that the class could number in the millions, the court concludes that the numerosity requirement has been satisfied.

b.      Commonality

"A common nucleus of operative fact is usually enough to satisfy the commonality

requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)(citation omitted). In the instant case, the common nucleus of operative facts is whether the defendants engaged in the purported deceptive domain scheme in order to improperly benefit from the plaintiffs' marks or personal names. Thus, this element of Rule 23(a) is satisfied.

   c.  Typicality and Adequacy

  The typicality element under Rule 23(a)(3) requires a determination "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The representatives' claims are "typical if [they] arise[ ] from the same event or practice or course of conduct that gives rise the claims of the other class members and [their] claims are based on the same legal theory." *Id*. "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Id*. "Thus, similarity of legal theory may control even in the face of differences of fact." *Id*.

  Rule 23(a)(4) requires that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to satisfy the requirements of Rule 23(a)(4), the class representative must "possess the same interest and suffer the same injury as the class members." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). With respect to adequacy, the court evaluates "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)(citation omitted). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018 (citation omitted). In addition, the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation.

  Because the parties address these two factors together, the court will also.

  As an initial matter, the defendants do not challenge the adequacy of plaintiffs' counsel and the resumes attached to the plaintiffs' motion for class certification indicate that plaintiffs' counsel has significant experience in class action litigation.

  The defendants assert that the named plaintiffs are atypical because intra-class conflicts exist. According to the defendants, because there are marks which are registered multiple times by different owners for different types of goods, intra-class conflicts would develop in order to establish who has rights to any damages awarded for any infringement by a parked domain name. For example, the defendants note that the mark "EARTH" is registered to Maynard Designs for vitamins, Niagara Conservation Corporation for shower heads, and the Escuela de Agricultura de la Region Tropical Humeda for bananas. *See* Defendants' Consolidated Opposition at 32-33. As a result, defendants argue, the class members would have disputes between themselves as to which of them has the right to recover for any use of the word "earth" in a domain name during

the relevant period.  In addition, the defendants contend that because one aspect of relief sought by the plaintiffs is that the allegedly deceptive domain names be transferred to the owners of the marks, the class members would also fight over who had the right to ownership of the infringing domain names.

However, as noted by the plaintiffs, none of the arguments raised by the defendants demonstrate that the named plaintiffs' claims are *atypical* of those of the class members.[1]

The defendants also assert that intra-class conflicts preclude certification under both the typicality and adequacy requirements because some class members have ongoing business relationships with Google, placing them at odds with other class members.  The defendants note that numerous putative class members run ads through Google's search engine and that many of them derive a significant amount of revenue from these ads.  According to the defendants, the class members with the Google advertising relationship will want to limit any damages exposure to Google while the other class members will want to attain the highest amount of damages possible.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)(finding that class should not have been certified where plaintiffs' financial interest in obtaining a high damages award diverged from other class members who had signed releases and were limited to receiving only restitution).

However, the defendants fail to point out that such a conflict actually exists between the named plaintiffs in this case and the other class members.  The defendants state that "Vulcan Golf itself *has been* a Google AdWords advertiser," but is it now?  There simply is no indication that the named plaintiffs in this case have an actual conflict with other putative class members.

The defendants finally contend that the named plaintiffs are not typical because some plaintiffs have different claims against some defendants.  From what the court can make of this argument, it appears that the defendants are asserting that because no named plaintiff has a claim against Ireit or Sedo, a class could not be certified as to Ireit and Sedo.  Rather than an argument on typicality or adequacy, this seems to be an argument that the named plaintiffs do not have standing as to Ireit or Sedo, and thus, the claims against them should be dismissed.  The plaintiffs appear to concede that none of the named plaintiffs has a concrete claim against Ireit or Sedo when they state in their sur-response that they are "confident that, once discovery is permitted, examples of domains parked by Ireit and Sedo that fall within the ascertainment methodology will also be uncovered."  Plaintiffs' Response to Sur-reply at 8.  The cite to this statement refers

---

[1]While the concern regarding multiple mark owners competing over their entitlement to damages or domain name ownership does not support a finding of atypicality, it is an additional reason that the class should not be certified under Rule 23(b)(3) given the individual issues that would need to be resolved.  Indeed, the plaintiffs respond to this argument by stating that "[i]f Defendants have injured more than one party with a particular Deceptive Domain, the proper course is to allocate the damages between and among the injured parties at the damages allocation stage – not to deny class certification."  Plaintiffs' Reply at 23, Dkt. #217.

the court back to the section in the plaintiffs' motion for class certification on standing and the juridical link doctrine. To the extent that the parties attempt to bring in issues better addressed on a motion to dismiss, the court declines to rule on these issues at this time. The defendants may renew within 14 days of the date of entry of this order their motion to dismiss the claims against certain of the defendants based on lack of standing.

Having rejected the defendants' arguments that the typicality and adequacy requirements have not been met, the court concludes that the elements of Rule 23(a) have been satisfied. The representatives' claims arise from the same course of conduct as the other class members and the class representatives have the same interests and have suffered the same injury as the putative class members.

2.      Rule 23(b)

a.      Rule 23(b)(3)

i.      Predomination of common questions of law or fact

Rule 23(b)(3) requires the court to assess whether (1) questions of law or fact common to class members predominate over any questions affecting only individual members and (2) whether the class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

As noted by another court in this district:

> In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues. The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive law, facts, procedural due process, and fundamental fairness. Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper.

*Pastor v. State Farm Mut. Auto. Ins. Co.*, 05 C 1459, 2005 WL 2453900, at *5 (N.D. Ill. Sept. 30, 2005)(citations omitted). *See also Murry v. America's Mortg. Banc, Inc.*, 03 C 5811 and 03 C 6186, 2005 WL 1323364, at *3 (N.D. Ill. May 5, 2005)("If individual issues predominate, then class certification is usually not a superior method for resolving the controversy.")(*citing Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001)).

In order to state a claim under the ACPA, a plaintiff must allege that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark." *Flentye v.*

*Kathrein*, 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007)(*citing V'soske, Inc. v. Vsoske.com*, No. 00 C 6099, 2001 WL 546567, at *6 (S.D.N.Y. May 23, 2001)).[2]

(A).   Infringement Claims

The defendants contend that individual issues associated with the infringement claims preclude class certification.

I.   Ownership

First, the defendants argue that membership in the Modified Original Class requires that the potential class member own the mark or personal name, which could lead to potentially thousands of individual merits hearings and rulings.  The plaintiffs respond that ownership is "easily determined" through the Trademark Electronic Search System ("TESS") of the United States Patent and Trademark Office.  They further state that while issues of ownership are certainly "relevant" they can be dealt with after the class has been certified.

Even assuming, however, that the list of putative class plaintiffs can be initially ascertained through the rolls of the Patent and Trademark Office, the plaintiffs ignore the possibility of multiple time-consuming inquiries regarding ownership.  Even if the court has to conduct hearings regarding ownership on even a tiny fraction of the potentially millions of registered and unregistered marks or personal names of the putative class members, such an undertaking would render proceeding as a class unmanageable.

II.   Distinctiveness

The defendants next point out that litigating the distinctiveness of each trademark or personal name, as required for ACPA protection, would entail discovery from each class member and separate rulings for each mark or name.  The plaintiffs respond that, as to the "doubly registered subclass" at least, the court can presume distinctiveness with respect to the marks registered on the Patent and Trademark Office's Principal Register.  15 U.S.C. § 1115(a).

But, the presumption of distinctiveness based on registration is "easily rebuttable" and "merely shifts the burden of production to the alleged infringer."  *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007).  Indeed, as stated by the Seventh Circuit:

---

[2]The court notes that the parties discuss only briefly the contributory and vicarious infringement claims in the context of the instant motion.  Nevertheless, because these two claims are derivative of a trademark infringement claim, which would require individual inquiries based on, among other things, ownership, distinctiveness and the applicability of affirmative defenses, as discussed herein, the court's analysis of the ACPA claim under Rule 23(b) applies equally to the contributory and vicarious infringement claims.

8

The presumption of validity that federal registration confers (*see* 15 U.S.C. § 1115(a)) evaporates as soon as evidence of invalidity is presented. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case.

*Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996)(internal citations omitted).

Moreover, the defendants note that marks registered on the Supplemental Register are not presumed distinctive. 15 U.S.C. § 1091(a); 4A CALLMANN ON UNFAIR COMP., TR. & MONO. § 26:13 (4th Ed.)("Registration on the Supplemental Register means that the mark is admittedly too defective to qualify for the Principal Register, at least without a showing of secondary meaning" and "may constitute an admission that any distinctiveness is not inherent."); *see also* MCCARTHY ON TRADEMARKS § 19:36 (2007)(a mark's "very presence on the Supplemental Register indicates a preliminary determination that the mark is not distinctive"). Accordingly, registration alone, on either the Principal or Supplemental Register, does not support a finding that distinctiveness can be handled on a class-wide basis.[3]

In the alternative, the plaintiffs contend that individual inquiries would be unnecessary and that distinctiveness can be presumed on a class level, citing *Avlon Industries v. Robinson*, No. 01 C 3615, 2005 WL 331561 (N.D. Ill. Feb. 8, 2005). In *Avlon*, the court rejected the defendant's argument that the mark at issue, Keracare, was only known to a certain segment of the population and was not otherwise well-known stating:

> Robinson, however, is using numerous variants of the KeraCare marks to lure customers to his website. He has also conceded that people searching on the Internet for the word "KeraCare" would be only looking for Avlon's KeraCare products. As the saying goes, actions speak louder than words. If the marks were indeed unfamiliar to the vast majority of shoppers, Robinson would not have registered at least fifteen variants of the word KeraCare as domain names in connection with his website.

*Avlon Industries v. Robinson*, No. 01 C 3615, 2005 WL 331561, at *2. Based on the *Avlon* case, the plaintiffs contend that "[w]here a cybersquatter registers and profits from multiple domain names that are identical or confusingly similar to a registered mark, it is clear that the mark is either distinctiveness or famous, or both." Reply at 9.

The court notes, however, that the *Avlon* case was decided on summary judgment after

---

[3]To the extent that the plaintiffs assert that there is no indication that the defendants will challenge the presumption of distinctiveness, this is expressly contradicted by the defendants' statements in their brief. *See* Defendants' Sur-reply at 14 (providing "several examples of exactly the sort of rebuttal evidence defendants would offer at trial").

the court was presented with extensive evidence regarding the KeraCare mark and the actions of specific groups of consumers in connection with that mark. It in no way stands for a general proposition that distinctiveness can simply be presumed for any mark as to which numerous domain name variants have been registered. Moreover, as the defendants point out, what about marks that do not have "numerous" variant domain names, but only one or two? Should the court extend the presumption of distinctiveness to those marks?

Not only is such a presumption unworkable, such a class-wide presumption is in direct contravention of established law. Caselaw on the issue of distinctiveness indicates that it is a multi-faceted, fact-specific inquiry particular to each putative mark, which includes a detailed inquiry into whether a mark is generic, descriptive, suggestive, arbitrary, or fanciful. *Mil-Mar Shoes Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996)(citations omitted). The category of the mark generally corresponds to the level of protection it receives. *Id*. "[G]eneric terms receive no trademark protection; descriptive marks are protected only if the mark has achieved 'secondary meaning' in the relevant community; and suggestive, arbitrary, and fanciful marks are deemed inherently distinctive, and thus entitled to full protection." *Id*. (citations omitted).

The Seventh Circuit has expressly warned against placing undue reliance on labels associated with trademark law at the expense of a thorough analysis:

> The parties' reaction to the foregoing principles is representative of a decided tendency in trademark cases to argue about the legal labels rather than the underlying analytical inquiries those labels are designed to trigger. The labels themselves are merely springboards for analysis, not a substitute for it. The point is a basic one, but bears repeating, for it is all too often forgotten when the law is reduced to a few conclusory classifications: *such abstract categories are analytical touchstones for a much more sophisticated inquiry*.

*Walt-West Enterprises, Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1057 (7th Cir. 1982)(emphasis added).

Thus, the court rejects the plaintiffs' position that distinctiveness can be presumed on a class-wide basis for the "doubly-registered subclass." Instead, were the class to be certified, the court would be required to engage in thousands (or more) of individual inquiries as to whether a class members' mark is distinctive.

As to the subclasses other than the "doubly-registered subclass" (i.e., unregistered marks and personal names), the plaintiffs cannot assert that any presumption applies to these. Obviously, for the unregistered marks, the presumption associated with registered marks does not apply. And, in any event, the court has already rejected the concept of a class-wide presumption with respect to distinctiveness. As for personal names, the Seventh Circuit has specifically noted the problems associated with assigning "rules" to certain situations (*i.e.*, all personal names must have a secondary meaning to be protected) stating:

The "rule" that personal names are not protected as trademarks until they acquire secondary meaning is a generalization, and its application is to be guided by the purposes that we have extracted from the case law. When none of the purposes that animate the "personal name" rule is present, and application of the "rule" would impede rather than promote competition and consumer welfare, an exception should be recognized.

*Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004). Thus, the owners of personal names that the plaintiffs seek to include as members of the class are not automatically subject to any general rule or presumption. In other words, the court must perform individual inquiry into a particular name and the corresponding purposes associated with protecting names before it can determine whether a specific personal name is distinctive or not.

The plaintiffs' reliance on the language of the ACPA does not affect this conclusion. Apparently in an effort to demonstrate that all personal names are automatically deemed to be marks, the plaintiffs quote part of the statute, which states that "a personal name . . . is protected as a mark under this section." *See* 15 U.S.C. § 1125(d)(1)(A). But, as indicated by the ellipsis, the plaintiffs' quote leaves out the word "which". The language of the statute states that the ACPA provides for "a civil action of a mark, including a personal name *which* is protected as a mark." *Id.* (emphasis added).

Thus, as with the registered marks, the individual analyses required to analyze distinctiveness for unregistered marks and personal names for the proposed classes are staggering and militate against class certification.

### III. Affirmative Defenses

The defendants also assert that the plaintiffs' request for class certification should fail because individual factual issues predominate as to the defendants' affirmative defenses. These defenses include that: (1) the marks were obtained fraudulently; (2) the marks have been abandoned; (3) the marks are being used to misrepresent the source of goods or services, and (4) the defendant is making fair use of the marks. *See* 15 U.S.C. § 1115(b)(1)-(4).

The plaintiffs respond that the existence of individual affirmative defenses does not require denial of class certification, citing several cases. *See, e.g., Dunn v. City of Chicago*, 231 F.R.D. 367, 375-76 (N.D. Ill. 2005); *Pinkett v. Moolah Loan Corp.*, No. 99 C 2700, 1999 WL 1080596, at *4 (N.D. Ill. Nov. 2, 1999)("However, it is well established that individual counterclaims or defenses do not render a case unsuitable for class certification.")(*citing Johnson v. Aronson Furniture*, No. 96 C 117, 1998 WL 641342,*6 (N.D. Ill. Sept. 11, 1998); *Lawson v. Management Adjustment Bureau*, No. 96 C 4576, 1997 WL 283027,*6 (N.D. Ill. May 15, 1995); *Merk v. Jewel Food Stores*, 702 F. Supp. 1391, 1395 (N.D. Ill. 1988)("The existence of affirmative defenses as to some class members is not by itself enough to warrant the denial of

class certification.")(*citing Lorber v. Beebe*, 407 F.Supp. 279, 294 (S.D. N.Y. 1975)).[4]

As an initial matter, several of these district court cases refer to counterclaims, not affirmative defenses. These district courts have concluded that counterclaims do not bar class certification based on language from a Seventh Circuit opinion, *Haynes v. Logan Furniture Mart*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974), that in the class action context, "litigation respecting individual counterclaims if successful, would only reduce damage awards; it would not affect a finding of liability." *Id*. at 1165 n.4. Here, however, the court is addressing affirmative defenses, which do defeat liability and do not act merely as an offset to any damages awarded to the plaintiff.

Moreover, to the extent that the cases deal with affirmative defenses, the court does not read these cases as precedential authority that the existence of individual affirmative defenses cannot, as a matter of law, be considered in analyzing whether a class should be certified. They merely stand for the proposition that the existence of such affirmative defenses does not automatically preclude class certification, a conclusion with which this court agrees.

The existence of affirmative defenses[5] which require individual resolution can be considered as part of the court's analysis to determine whether individual issues predominate under Rule 23(b)(3). *Clark v. Experian Information, Inc*., 233 F.R.D. 508 (N.D. Ill. 2005) ("The defendants also have the right to assert affirmative defenses and these affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery."). *See also Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008)("An affirmative defense is not *per se* irrelevant to the predominance inquiry, as the parties seem to believe. We have noted that the 'predominance of individual issues necessary to decide an affirmative defense may preclude class certification.'")(citation omitted); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)("As with the difficulty in calculating damages, the presence of individual defenses does not by its terms preclude class certification."); *Gunnells v. Healthplan Services, Inc*., 348 F.3d 417 (4th Cir. 2003)("[L]ike other considerations, affirmative defenses must be factored into the calculus of whether common issues predominate."). *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("[A]ffirmative defenses should be considered in making class certification decisions.").

---

[4]The plaintiffs also cite to *Portis v. City of Chicago*, 02 C 3139, 2003 WL 22078279, at *3 (N.D. Ill. Sept. 8, 2003) as stating that "[i]ndividual affirmative defenses do not preclude class treatment." The court, however, was not able to locate this language, or anything like it, in the *Portis* decision.

[5]The plaintiffs' reference to "hypothetical" affirmative defenses in their response to the consolidated sur-reply, Dkt. #234 at 6, is puzzling given that the defendants' answers, which are on file, include affirmative defenses which the plaintiffs have not moved to strike.

Ultimately, the affirmative defenses related to the putative class members' marks simply add another layer to an already fact-specific inquiry that the court must delve into with respect the putative class members' marks or names. In their response to the sur-reply, the plaintiffs assert that the court can "postpone litigation on those affirmative defenses until after the common liability issues have been resolved." Plaintiffs' Response to Sur-reply, Dkt. #234 at 7 (*citing Merk*, 702 F. Supp. at 1395). Again, the court agrees with the plaintiffs that it has the power and flexibility to proceed with a class action litigation in various ways depending on the necessities of the case before it. But the plaintiffs do not explain why such an approach would be appropriate or workable in this case or how it would alleviate the significant individual inquiries that must be had into each class member's mark or name.

(B).     Unjust Enrichment Claim

The plaintiffs' claim of unjust enrichment is made pursuant to state law, which, in this multi-state class action, may vary. The plaintiffs assert that the application of California law to all of the putative class plaintiffs' unjust enrichment claims is proper under Illinois' relevant choice-of-law rule. *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002)("Because plaintiffs' claims rest on state law, the choice-of-law rules come from the state in which the federal court sits.")(citation omitted). As noted by the Seventh Circuit:

> For tort actions[6], Illinois instructs the court to ascertain the forum with the "most significant relationship" to the case. "Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." Four factors are supposed to guide the court's decision: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." The court evaluates these factors "in light of the policies underlying the laws of those jurisdictions."

*Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006)(internal citations omitted).

According to the plaintiffs, California law would apply under this analysis because the "creator, facilitator and implementer of the Deceptive Domain Scheme, Google, is headquartered in California." The plaintiffs also point to the fact that Oversee, another defendant, is headquartered in California. But that is as far as the plaintiffs' analysis goes. As the defendants point out, Sedo is headquartered in Massachusetts, Dotster in Washington, and Ireit in Texas.

Moreover, as noted above, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence or the parties." *Id.* The plaintiffs do not

---

[6]Because the plaintiffs unjust enrichment count is based on "deception, misconduct, and material misrepresentations," *See* Plaintiffs' Reply at 14 (Dkt. #217), a tort choice of law analysis applies.

mention the place of the injury or engage in any type of analysis on the complex determination of where an injury occurs which is based on the click of a mouse. As the defendants note, however, it is highly unlikely that it would be appropriate to conclude that California has the most significant contacts to an unjust enrichment claim brought by a Washington trademark owner against Washington-based Dotster. Moreover, while the plaintiffs rely heavily on their assertion that Google "designed and hatched" the scheme in California, it was allegedly effectuated in all 50 states, further weakening the plaintiffs' assertion that California law applies across the board. *Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999)(stating that "[e]ven assuming that the defendants conjured up their [cigarette marketing] plan in the states where they have their principal places of business, the actual plan was carried out nationally" and concluding that the court would likely have to apply the law of all 47 states involved). Based on the few facts presented by the parties, the court concludes that California law is not the state with the most significant contacts to all of the putative class members' claims.

However, even assuming that application of California unjust enrichment law were proper under Illinois' most significant contacts test, the plaintiffs would still have to show that California's unjust enrichment law does not conflict with the unjust enrichment laws of the other states. Specifically, the Supreme Court has noted that while a court's choice of one state's law in a multi-state class action cannot be "arbitrary or unfair," it has further stated "[t]here can be no injury in applying [one state's] law if it is not in conflict with that of any other jurisdiction connected to th[e] suit." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985). The plaintiffs, however, do not engage in any analysis of whether California unjust enrichment law differs from that of the other 49 states. Thus, the plaintiffs have forfeited any argument that the application of only California unjust enrichment law is appropriate under *Shutts*.

In an alternative argument, the plaintiffs contend that even if all of the 50 states' unjust enrichment laws apply, there are no significant differences among those laws that would require denial of class certification. Uniformity is important as the Seventh Circuit has noted that "[n]o class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)." *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015.

The plaintiffs attach to their reply brief an exhibit purporting to show that unjust enrichment laws are essentially the same across the 50 states. *See* Plaintiffs' Reply at Exhibit 2. While providing excerpts of the elements of the 50 states' unjust enrichment claims as proof of their similarity, the plaintiffs notably fail to discuss the states' laws in detail or address the concerns raised by numerous other courts that have found significant differences in the laws. *Siegel v. Shell Oil Co.*, No. 06 C 0035, 2008 WL 4378399, at *4 (N.D. Ill. Sept. 23, 2008)(noting that "while many unjust enrichment claims are based on common law principles . . . they nonetheless vary to some extent" and denying class certification based on differences in states' unjust enrichment and consumer protection laws); *In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litigation*, MDL No. 1703, Nos. 05 C 4742 and 05 C 2623, 2007 WL 4287511, at *9 n.7 (N.D. Ill. Dec. 4, 2007)(in class action, noting that "[i]t is clear just from our review of

Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states."); *Lilly v. Ford Motor Co.,* No. 00 C 7372*,* 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002)(denying class certification because "[t]he variations in state common laws of unjust enrichment demonstrate that class certification of such a claim would be unmanageable."). *See also In re Conagra Peanut Butter Products Liability Litigation*, 251 F.R.D. 689, 697 (N.D. Ga. 2008)(after describing in detail differences in states' unjust enrichment laws, stating that "[t]his morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the inferiority of class-wide resolution due to discerning the many differing legal standards."); *Thompson v. Jiffy Lube Intern., Inc*., 250 F.R.D. 607, 626 (D. Kan. 2008)(denying class certification and stating that "[b]ecause of . . . variations [in states' unjust enrichment laws], federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.")(*citing Clausnitzer v. Federal Exp. Corp*., 248 F.R.D. 647, 660 (S.D. Fla. 2008); *Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999)).

The court finds no basis on which to differ from the well-supported and detailed analyses of other district courts on this exact issue. Nor is the court persuaded by the plaintiffs' citation to one particular sentence in *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007), which states that "[a]lthough there are numerous permutations of the elements of the [unjust enrichment] cause of action in the various states, there are few real differences." After making this general comment, the *Powers* court went on to note that:

> Even though the legal elements of an unjust enrichment cause of action are essentially similar among the states, there are differences in how they are applied and interpreted. A significant difference is that most states, including Pennsylvania, preclude recovery on an unjust enrichment theory if an express contract governs the relationship between the parties. Among those states, at least five have carved out exceptions to this general rule, allowing recovery on an unjust enrichment claim despite an express contract.
> . . . .
> Not only are there variations among the states' laws regarding the legal elements and potential defenses, there are also differences as to who may bring an unjust enrichment claim. Three jurisdictions preclude indirect purchasers from asserting claims for unjust enrichment unless they have conferred a benefit directly on the defendant.
> . . . .
> In contrast, nine other states have explicitly determined that an indirect benefit is enough.

*Id*. at 231-32 (citations and footnotes omitted). Indeed, the plaintiffs' contention that the *Powers* case stands for the proposition that the differences between the states' unjust enrichment laws is minor is belied by two statements in the decision noting that application of Pennsylvania unjust enrichment law would result in a "real conflict" with other states' laws. *Id*. at 232-33.

Finally, the court acknowledges that in *In re Abbott Laboratories Norvir Anti-Trust Litigation,* Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007), the court permitted a class to proceed despite acknowledged variations in the unjust enrichment laws of the various states. *Id*. at *9 ("The 'idiosyncratic differences' between state unjust enrichment laws 'are not sufficiently substantive to predominate over the shared claims.'")(citation omitted). However, the court is not bound by this decision in *Abbott Laboratories* and concludes that, as noted by the significant weight of authority detailed above, the differences in the unjust enrichment laws are sufficiently substantive to preclude class certification.

Accordingly, because individual issues predominate, the class cannot be certified under Rule 23(b)(3) with respect to the unjust enrichment claim.

ii.      Superiority

The second question the court must answer with respect to Rule 23(b)(3) is whether a class action is superior to other methods of resolving the remaining putative class members' claims. The court concludes that the answer is no.

As discussed in detail above, individual issues predominate as to the trademark-related claims and the certification of any class related to the trademark claims would simply be unmanageable. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 164 (1974)("Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."). Not only would individual hearings be necessary on such issues as ownership and distinctiveness, but even prior to that, discovery and the inevitable individual discovery disputes would become all-consuming. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008)("If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims.").

Moreover, a class action is not the only potential way to address claims brought by putative class members. Specifically, as noted by the defendants, other mechanisms exist by which the putative class plaintiffs could obtain relief. For instance, the Uniform Domain-Name Dispute Resolution Policy requires domain name registrants to submit to administrative proceedings in the event of a complaint by a third-party, and provides in relevant part:

> a. Applicable Disputes. You are required to submit to a mandatory administrative proceeding in the event that a third party (a "complainant") asserts to the applicable Provider, in compliance with the Rules of Procedure, that
>
> (i) your domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) you have no rights or legitimate interests in respect of the domain name; and

(iii) your domain name has been registered and is being used in bad faith.

In the administrative proceeding, the complainant must prove that each of these three elements are present.

Section 4a., Mandatory Administrative Proceeding, Uniform Domain Name Dispute Resolution Policy, as approved by the Internet Corporation for Assigned Names and Numbers ("ICANN") on October 24, 1999. http://www.icann.org/en/dndr/udrp/policy.htm (last visited November 7, 2008). The plaintiffs assert that money damages are not available in a UDRP proceeding. *See id.* at Section 4(i)("The remedies available to a complainant pursuant to any proceeding before an Administrative Panel shall be limited to requiring the cancellation of your domain name or the transfer of your domain name registration to the complainant."). However, as noted by the defendants, a claim made under the UDRP procedure takes on average 50 days to resolve. Thus, to the extent that a mark owner simply wants to stop improper usage by the domain name registrant and is not seeking money damages, the UDRP proceedings are certainly a faster and less expensive route than litigation, whether in a class or individually.

In addition, putative class members who want money damages may sue individually for those as the ACPA allows for statutory damages of up to $100,000. *See* 15 U.S.C. § 1117(d). Thus, to the extent that the plaintiffs assert that a class action is the only meaningful way to recover, the significant money damages available to individual claimants belies such a claim. *Andrews*, 545 F.3d at 577-78 (rejecting class counsel's argument that class action was only "realistic" means of recovery given that TILA provided for $50,000, plus attorney's fees and costs in a rescission action and stating that "TILA rescission is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available"). Indeed, as noted by the defendants, several individual cases have already been filed by putative members of the class. *See* Defendants' Consolidated Opposition at 26 n.13, Dkt. #207.

The plaintiffs' citation to *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006), for the proposition that class certification should not be denied simply because statutory damages are available is inapposite. In *Murray*, the court reviewed the appeal of the denial of class certification, and rejected the district court's conclusion that the plaintiff should have sought compensatory damages for herself and the class instead of statutory damages. *Id.* The Seventh Circuit stated that seeking compensatory damages instead of statutory damages would actually preclude class certification. *Id.* at 952-53 ("What each person's injury may be is a question that must be resolved one consumer at a time. Although compensatory damages may be awarded to redress negligence, while statutory damages require wilful conduct, introducing the "easier" negligence theory would preclude class treatment. Common questions no longer would predominate, and an effort to determine a million consumers' individual losses would make the suit unmanageable."). The *Murray* court further noted that the statutory damages available in that case were capped at $1,000, and stated that "Rule 23(b)(3) was designed for situations such

17

as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Id*. at 953 (citation omitted). Thus, it was the relatively low amount of the statutory damages in *Murray* that led the court to conclude that class certification might be appropriate in that case. Here, however, the maximum statutory damages available in this case under the ACPA are $100,000. Thus, as in the *Andrews* case, noted above, the concern that plaintiffs would not have the incentive to sue individually is not present in the instant case. *Andrews*, 545 F.3d at 577-78.

Finally, the court also notes that the plaintiffs seek to resolve relatively novel legal theories in one case with one throw of the dice as to potentially hundreds of thousands of claims. The Seventh Circuit has voiced concerns with this approach. *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 2008 WL 4709500, at *2 (7th Cir. Oct. 28, 2008)("When enormous consequences turn on the correct resolution of a complex factual question, the risk of error in having it decided once and for all by one trier of fact rather than letting a consensus emerge from several trials may be undue.")(citations and internal quotation marks omitted).

For these reasons, the court finds that a class action is not the superior means for adjudicating the putative class members' trademark-related claims.

> b.      23(b)(2)

As an alternative to Rule 23(b)(3) certification, the plaintiffs also seek to have the class certified under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000). The court has just discussed in detail the individual inquiries that the plaintiffs' proposed classes would require; accordingly, Rule 23(b)(2) relief is not appropriate in this case.

Moreover, in order for Rule 23(b)(2) to be relied upon, any monetary relief must only be incidental to the injunctive relief sought. *Id*. at 581 (citation omitted). In other words, Rule 23(b)(2) requires that injunctive relief be the "predominate" relief sought. *Id*. at 580-81. The plaintiffs' assertion that their primary claim is injunctive versus monetary is belied by an argument in their response to the motion to dismiss. Specifically, the plaintiffs argued that proceedings under the UDRP are not satisfactory because *monetary* damages are not available in UDRP proceedings. If, as the plaintiffs now argue, all the relief that any of the plaintiffs wants is injunctive relief, then they can obtain a much swifter resolution through UDRP proceedings or simply by using Google's complaint procedures to stop use of any of the purportedly offending

domains. Indeed, in order to resolve the plaintiffs' motion for preliminary injunction with little court involvement, the defendants have already blocked a list of over 400 domain names to which the named plaintiffs objected. If injunctive relief is the "predominate" relief they seek, the plaintiffs have gotten what they asked for. Further, Google states that it will not block any offending domain names that are presented to it by other putative class members through Google's complaint procedures.

The plaintiffs contend that "incidental" (in that monetary relief must only be incidental to the injunctive relief sought) only means mechanical or "without the need for individual calculation," but they have failed to demonstrate that such a mechanical calculation can be made.

Finally, as the defendants note, the requested relief, an injunction barring the use of "any domain name that incorporates, in whole or in part," any putative class member's name or mark would be overbroad. Simply because a domain name may include a particular mark does not mean that the domain name violates the trademark laws. *See, e.g., Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1045 (N.D. Ill. 2001)(in context of preliminary injunction, finding that "Trans Union is likely to succeed on the merits of its infringement claim with respect to the transunioncredit domain name" but that "Trans Union has not demonstrated much of a likelihood of success on the merits of its infringement claim with respect to the creditbureautransunion domain name").

Based on all of the above, the court concludes that class certification under Rule 23(b)(2) is not appropriate.

      c.      Rule 23(b)(1)(A)

The plaintiffs also, in the alternative, seek certification under Rule 23(b)(1). Prior to addressing the substance of the request, the court notes two concerns it had with this section of the plaintiffs' briefs. First, the court remarks at the outset that the plaintiffs' position with respect to certification under this section is cursory and confusing. The section heading in the plaintiffs opening brief states that "[t]he Class also satisfies the Requirements of Rule 23(b)(1)." But Rule 23(b)(1) has two independent subsections (A) and (B), and the text of the plaintiffs' opening motion substantively discusses only subsection (A). However, the plaintiffs conclude the section by generally stating that "[a] Rule 23(b)(1) class is clearly appropriate here." Motion for Class Certification at 30, Dkt. #197. Because the plaintiffs discuss only Rule 23(b)(1)(A), this is the only subsection the court will address.

Second, the court notes that in order to avoid the defendants' argument that certification of a class under Rule 23(b)(1)(A) is inappropriate in a case where the plaintiffs seek money damages, the plaintiffs, in their reply, contend that any relief under a Rule 23(b)(1) certification order would be limited to injunctive relief. Plaintiffs' Reply at 22. Again, the court is confused-- do the plaintiffs want monetary damages or not? In one section of the brief the plaintiffs ask for damages and state that a UDRP proceeding that would provide only injunctive relief is

insufficient. However, in this section, they contend that they are seeking only injunctive relief. The court is extremely troubled by the fact that the plaintiffs' requests for relief seem to change based on exigencies of the legal argument at hand. Nevertheless, the court will address the plaintiffs' argument under this section to the extent possible given the inconsistencies.

Having dealt with the two matters of concern, the court now turns to the substance of plaintiffs' request for certification under Rule 23(b)(1)(A). Rule 23(b)(1)(A) requires that class certification is appropriate if the requirements of Rule 23(a) have been met and "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." According to the plaintiffs, certification under this subsection is appropriate because "[u]nder the Deceptive Domain Scheme each member of the putative class suffers from the exact same statutory violations" such that "[a]ll members of the putative class must be treated alike on these similar matters."

But as discussed in detail above, the class members cannot be treated alike because of the requisite individual inquiries regarding ownership, distinctiveness and the effect of the affirmative defenses that are inherent in a trademark-related action. Indeed, contrary to the "risk" of inconsistent or incompatible adjudications, it is certain that thousands of individual trademark cases would produce varying results because the analysis is specific to the marks and domain names at issue and the facts of each particular case. Such different results do not implicate Rule 23(b)(1)(A) in this case because they would not establish incompatible standards of conduct for the defendants as required by the language of Rule 23(b)(1)(A). In other words, different results do not "trap [a defendant] in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker v. Houston*, 341 F. Supp. 1124, 1131 (S.D. Tex. 1971). The necessary legal analysis will almost certainly lead to situations where some of the parked defendants' domain names do not violate the trademark laws while some perhaps do. But again, such a result is due to the varying factual scenarios, and does not create "incompatible standards of conduct" for the defendants. Thus, Rule 23(b)(1)(A) is not implicated.

Further, to the extent that the plaintiffs are only seeking injunctive relief, it appears that class certification, if it were to be allowed, would proceed under Rule 23(b)(2). But, as discussed above, the court has already denied class certification under that section.

## III.   Conclusion

The plaintiffs point out that the court in *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369 MHP, C 04-1671 MHP 2005 WL 1287611, at *7 (N.D. Cal. Jun. 1, 2005), concluded that "individual issues" such as ownership, registration, and actual damages, did not preclude class certification in that case. The *Napster* court, in its discretion, concluded that the "shared factual predicate" (*i.e.*, that the claims of the class are "uniformly premised upon the

uploading or downloading of a copyrighted work by Napster users") and the "host of common legal issues" did not preclude class certification in that case.  *Id*.

However, this court must determine in its own discretion whether the particular facts of this case satisfy the requirements of Rule 23(b)(3), especially with respect to the likely difficulties of managing a class action of this scale with the possibility of lengthy discovery and numerous hearings focused on a multitude of individual issues.  In this court's view, the possibility of hundreds if not thousands of individual hearings related to ownership, distinctiveness and the applicability of affirmative defenses, including managing probable discovery to be conducted prior to those hearings, precludes a finding that a class action is a superior method of adjudicating the trademark-related claims, as required by Rule 23(b)(3).

Indeed, it is difficult for this court to comprehend any circumstances by which the plaintiffs could properly obtain class certification of their trademark-related claims.  Moreover, the lack of uniformity with respect to the 50 states' laws precludes certification of any class as to the state law unjust enrichment claim.

Nor, as described above, is certification appropriate under Rule 23(b)(2) or 23(b)(1)(A).

Accordingly, the court denies the plaintiffs' motion for class certification [#197-1].


**ENTER:**

**Date: December 18, 2008**

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Court**