**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VULCAN GOLF, LLC, JOHN B. SANFILIPPPO & SONS, INC., BLITZ REALTY GROUP, INC., and VINCENTE E. "BO" JACKSON, | ) Case No. 07 CV 3371 ) ) ) ) ) The Honorable Blanche M. Manning |
| Plaintiffs, | ) ) |
| v. | ) ) |
| GOOGLE INC., | ) ) |
| Defendant. | ) ) ) ) ) ) ) ) |

**GOOGLE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO BE FILED UNDER SEAL**

I.    INTRODUCTION

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), applies only to persons or entities who buy, sell, or own (i.e., "register, traffic in, or use") domain names. Litigants repeatedly have asked courts to expand the reach of the ACPA to all manner of other entities who do all manner business with domain registrants, just as Plaintiffs now ask this Court to do. Those courts have uniformly and correctly rejected those requests, and this court should too.

Plaintiffs seek to obscure the simple facts of this motion. Plaintiffs describe how Google processes requests for, formats, and serves ads; how Google tracks the effectiveness of those ads;  how Google runs web page hosting services that are not at issue in this litigation; how Google spends millions on servers; how Google selects keywords; and on and on and on.[1]

What Plaintiffs' opposition *fails* to include, however, is either of the two things required to avoid summary judgment. *First*, Plaintiffs offer no evidence to rebut the undisputed fact that Google neither registered nor trafficked in any domain name at issue in this case, or that Google was the "registrant's authorized licensee" as that term is used in the ACPA. And *second,* Plaintiffs fail to identify any caselaw to support the proposition that ACPA liability can extend to a party in Google's position, who provides advertisements for display on websites run by others.

---

[1] As set forth in Google's Objections to Evidence Submitted by Plaintiffs ("Objections") accompanying this memorandum, Plaintiffs base those arguments almost entirely on unauthenticated hearsay documents, submitted without any attempt to authenticate them and without any sworn testimony. Those materials are thus, in addition to being irrelevant, inadmissible.

## II.     ARGUMENT

This is a simple motion: the ACPA strictly limits liability to the domain name registrant, "that registrant's authorized licensee," and anyone who buys or sells the domain name. Google serves none of those roles, as the undisputed facts set forth in Google's opening brief show. It was the Parking Company Defendants ("PCDs") and their customers that registered the domains at issue, and licensed them: not Google. The plaintiffs have received full value for their claims from the PCDs and settled those claims. Now plaintiffs attempt to pin the very same liability on Google, which merely operates an automated system to provide relevant advertisements in response to third party requests.

This Reply first responds to Plaintiffs' arguments that Google is "the domain name registrant or that registrant's authorized licensee," and thus cannot be liable for "using" a domain name under the ACPA. It then explains that Google does not "traffic in" domain names, and that no court has ever read the ACPA to sweep as broadly as Plaintiffs urge. Finally, to the extent Plaintiffs are arguing that Google is secondarily liable for ACPA violations committed by the PCDs or their customers, this Reply explains that no such claim of secondary ACPA liability was (or could have been) pled, because there is no secondary liability under the ACPA.

**A.     Plaintiffs have not disputed the facts showing that Google is not "the domain name registrant or that registrant's authorized licensee" with respect to any domain name at issue in this lawsuit.**

Plaintiffs' principal argument is that Google is liable under the ACPA because it somehow "used" the domain names at issue. *See* Plaintiffs' Memorandum of Points and Authorities In Response to Defendant Google, Inc.'s Motion for Summary Judgement ("Opp.") at 2-12. They expend many pages conjuring up an alleged factual issue as to whether Google "used" the domain names at issue. But the factual disputes they attempt to create are immaterial: under the ACPA, a defendant can be liable for "using" a domain name "only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D).

2

The undisputed facts show that Google is neither the domain name registrant nor that registrant's authorized licensee with respect to any domain name at issue in this case.

### 1. Plaintiffs agree that Google is not "the domain name registrant" with respect to any domain name at issue in this lawsuit.

The domain name registrant is the party who chooses the domain name, and pays a registrar for a domain name registration. Google is not a registrant (nor a registrar) with respect to any of the domain names at issue in this case. Plaintiffs admit that "Google has never registered any of the domain names at issue, and plays no role in the registration of those domains." Plaintiffs' Response to Google's Rule 56.1 Statement ("56.1 Response") ¶ 35.[2] Thus, Google cannot be liable as "the domain name registrant," and the only remaining question is whether Google is "that registrant's authorized licensee."

### 2. Google is not the "registrant's authorized licensee" with respect to any domain name at issue in this lawsuit, as that term is used in the ACPA.

The undisputed facts show that Google is not a "registrant's authorized licensee," as used in the ACPA. The parties have diverging interpretations of what it means to be an "authorized licensee" under the ACPA, but the statute's legislative history mandates adoption of Google's proposed interpretation. Because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and because the types of services Google provides are those which Congress intended to exclude from ACPA liability, Google is not an "authorized licensee."

#### a. The "registrant's authorized licensee" provision of the ACPA is a substantive limitation on the scope of liability.

---

[2] Plaintiffs' response with respect to this paragraph of Google's Statement Of Material Facts For Which There Is No Genuine Issue And That Entitle Defendant To Partial Summary Judgment (Google's Rule 56.1 Statement") discusses only whether or not Google "operates" certain websites, and does not dispute Google's assertion that it has not registered any of the domain names at issue in this lawsuit.

The term "registrant's authorized licensee" is not defined in the ACPA. In its Opening Brief, Google has interpreted that term Google interpreted the term so as to give it substance and meaning, arguing that in the context of the ACPA the "license" must be one to use the domain name in question as the domain name for one's website. Google Opening Br. at 17. Plaintiffs, by contrast, argue that the "the domain name registrant or that registrant's authorized licensee" language does not place any substantive limitation on the scope of ACPA liability, stating that "ACPA liability extends to all who 'use' an infringing domain in the manner proscribed by the ACPA." Opp. at 12.

The court is thus faced with a question of statutory interpretation. If the Court finds that the term "registrant's authorized licensee" is amenable to more than one meaning and is thus ambiguous, the Court should look to the legislative history to resolve the ambiguity. Indeed, Plaintiffs quoted at length from the Congressional Record in an attempt to support their view of the scope of the ACPA. *See* Opp. at 2-3. But as shown below, the relevant legislative history confirms that Google cannot be a "registrant's authorized licensee" as the ACPA uses that term.

Early drafts of the ACPA did not include the limitation of "use" liability which appears in 15 U.S.C. § 1125(d)(1)(D). That provision was added to the bill due to concerns that liability for "use" was too broad, and that unless its scope was limited, the bill "would have a number of unintended consequences that could hurt rather than promote electronic commerce." 145 Cong. Rec. S10517 (daily ed. Sept. 8, 1999) (statement of Sen. Leahy). During the floor debates on the ACPA, Senator Hatch proposed amending the bill to state that liability for "use" be limited to "the domain name registrant or that registrant's authorized licensee." In discussing this amendment, Senator Hatch expressly stated that parties like Google were not intended to be held liable under the ACPA:

> In addition, the Senate is considering today an amendment I am offering with Senator LEAHY to make three additional clarifications. First, our amendment will clarify that the prohibited "uses" of domain names contemplated by the bill are limited to uses by the domain name registrant or his authorized licensee and **do not include uses by others, such as in hypertext links, directory publishing, or search engines**.

4

145 Cong. Rec. S10516 (daily ed. Sept. 8, 1999) (statement of Sen. Hatch) (emphasis added). *See also id.* at S10517 (statement of Sen. Leahy) ("Uses of infringing domain names that support liability under the legislation are expressly limited to uses by the domain name registrant or the registrant's authorized licensee. This limitation makes clear that 'uses' of domain names by persons other than the domain name registrant for purposes such as hypertext linking, directory publishing, or for search engines, are not covered by the prohibition.").

Legislative history from the House, as well, confirms that Google cannot be liable as the "registrant's authorized licensee:"

> Paragraph 1(D) further clarifies that a use of a domain name shall be limited to a use of the domain name by the registrant or his or her authorized licensee. This provision limits the right **to use the domain name as a means to infringe on another's other bona fide trademark rights**.

H. R. Rep. No. 106-412 at 13-14 (1999) (emphasis added). Thus, only those who are licensed to use the domain name "as a means to infringe on another's other bona fide trademark rights" come within the meaning of the term "authorized licensee," as that provision's framers understood it.

This legislative history resolves any ambiguity in the meaning of the term "registrant's authorized licensee" as that term is used in the ACPA. Contrary to Plaintiffs' arguments, the "registrant's authorized licensee" provision was intended by Congress to place a substantive limitation on ACPA liability, in order to avoid unintended consequences for innocent third-party service providers like Google whose services are sometimes misused. *See Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp. 2d 678, 683 (D. Md. 2001) (observing that the "registrant's authorized licensee" provision "strictly limits liability"). The legislative history shows that, as Senators Hatch and Leahy stated, the term "authorized licensee" is not so open-ended as to impose liability on "uses by others, such as in hypertext links, directory publishing, or search engines" such as Google. 145 Cong. Rec. S10516 (statement of Sen. Hatch). And it shows that, in order to be an "authorized licensee," one must be licensed by the domain name registrant "to use the domain name as a means to infringe on another's other bona fide trademark

rights." H. R. Rep. No. 106-412 at 14 (1999).

### b. The undisputed facts confirm that Google is not an "authorized licensee" as that term is used in the ACPA.

The facts about Google's relationship with its AFD partners Sedo, Oversee, iREIT, and Dotster are not in dispute: indeed, all of the relevant contracts are before the Court. AThe relationship between Google and the accused domain names is too attenuated for imposition of ACPA liability on the basis that Google is an "authorized licensee."



*Cf.* H. R. Rep. No. 106-412 at 13-14 (1999) (an authorized licensee is one who is licensed to use the domain name "as a means to infringe on another's other bona fide trademark rights").

As Google also noted in its opening brief:



---



Google Opening Br. at 6 (emphasis added) (footnotes omitted). These are precisely the sorts of uses "in hypertext links, directory publishing, or search engines" that Congress intended to exclude from ACPA liability. Imposing liability for providing this service would "hurt rather than promote electronic commerce." 145 Cong. Rec. S10517 (daily ed. Sept. 8, 1999) (statement of Sen. Leahy).

      **c.    Plaintiffs' attempts to manufacture factual disputes are unavailing.**

Section III-B of the Opposition is devoted to the quotation, frequently without explanation, of numerous documents Google produced in discovery. Each of these arguments either deals with domain names not even at issue in this lawsuit or is merely an attempt to recharacterize undisputed facts set forth in Google's Opening Brief.

In section III-B-i of their Opposition, Plaintiffs argue that Google's contracts with Sedo, Oversee, iREIT, and Dotster conflict with the arguments made by Google. But those very contracts were discussed in the opening brief in detail. Google Opening Br. at 8-9, 17-18. The acts which Google undertook pursuant to those contracts with Sedo, Oversee, iREIT, and Dotster do not make it an "authorized licensee." [REDACTED] Thus, the contracts Plaintiffs cite do nothing to refute the arguments set forth in Google's opening brief.

In section III-B-ii of their Opposition, Plaintiffs allege that "it is Google's use and processing of the domains that provides the advertising on these parked pages." Opp. at 5-6. This is not a revelation: as Google has established, Google receives requests for advertisements from its AFD partners and responds to them, interpreting the domain name included in the request in order to generate a set of relevant advertisements for display. Opening Br. 3-9. Google provides the advertising for parked domains, just as it provides the advertising for the

New York Times and the Chicago Tribune—but, as discussed in the Opening Brief, Google no more "uses" the domain names at issue in this case than it "uses" chicagotribune.com. Opening Br. 16-17.



In section III-B-iv of their Opposition, Plaintiffs allege that some domain name owners in the AFD program choose to point their DNS records at Google's servers. Plaintiffs have provided no support, however, for the incorrect proposition that any of the domain names *at issue in this case*—that is, those named in the complaint—were ever pointed at Google's servers, rather than operated by Sedo, Oversee, iREIT, or Dotster. *See* Koppula Decl. ¶ 12 (Google merely provided an XML feed to the PCDs, and thus did not host the domain names at issue). The complaint alleges otherwise, Third Am. Compl. ¶ 139, and Plaintiffs have come forward with no evidence showing that these particular domains ever pointed at Google's servers. This case is no longer a putative class action, and it is not sufficient for Plaintiffs to gesture generally at Google's practices with respect to any domain. Plaintiffs must instead demonstrate a genuine issue of material fact with respect to the domain names at issue, and they have not done so.

In section III-B-v of their Opposition, Plaintiffs allege that Google kept records of activity on parked pages displaying Google ads for the purpose of reporting on advertising performance to the registrants (who own and operate the domains). This is immaterial. Of course, in order to appropriately bill advertisers and pay website owners, Google necessarily kept

records about advertising activity. That Google accounts for activity relating to advertisements for that it is paid to display on the Internet, whether on "parked" pages or not, does nothing to establish that Google was the "authorized licensee" of any of the domain names at issue.

[redacted]

In short, Plaintiffs attempt to muddy the waters with a mass of nearly incomprehensible technical arguments about facts that actually has no bearing on the question before the Court. Quite simply, there are no genuine issues of material fact precluding this Court from holding on summary judgment that Google is not an "authorized licensee."

**B.      Google Does Not "Traffic In" Domain Names.**

Plaintiffs' argument for the "traffics in" prong of ACPA liability is even more strained. The term "traffics in" has its ordinary and plain English meaning: "a direct transfer or receipt of ownership interest in a domain name to or from the defendant." *Ford Motor Co. v. GreatDomains.com, Inc.*, 177 F.Supp. 2d 635, 645 (E.D. Mich. 2001). The multiple courts and cases cited in Google's Opening Brief (at 12-14) uniformly read the statute in this way.

Plaintiffs ignore that case law, cite no contrary law, and still ask this Court to distort the words "traffic in" beyond all recognition: "To wit, as detailed above, Google licenses often on an exclusive basis the traffic from AFD domains, including infringing domains." Opp. at 12. Plaintiffs essentially assert that receiving "traffic" *from* a domain is the same as selling or acquiring an ownership interest *in* that domain. Under this logic, receiving a phone call is the same as acquiring an ownership interest in the company from which the call came, or the phone company that connected you.

9

"Traffics in" means just what it says, and Google does not traffic in domain names.

### C. No court has ever construed the ACPA as broadly as Plaintiffs urge.

Because Plaintiffs cannot establish that Google is a domain name registrant, that registrant's authorized licensee, or a domain name trafficker, they instead seek to convince the Court to expand the reach of the ACPA beyond its express terms. To that end, Plaintiffs purport to identify several cases supporting their reading of the ACPA. Plaintiffs are flatly wrong. No case, either cited by Plaintiffs or otherwise, has expanded the ACPA beyond the domain name registrant, that registrant's authorized licensee, or a domain name trafficker.

Plaintiffs rely primarily on *Verizon v. Navigation Catalyst Systems*, 568 F. Supp. 2d 1088 (C.D. Cal. 2008) for the proposition that "domain registration was not required for liability under the ACPA." Opp. at 10. *Navigation Catalyst*, however, says nothing of the sort. To the contrary, the defendant in that case, Navigation, was the registrant, and the court held it had "register[ed] hundreds of thousands of domain names." 568 F.Supp. 2d at 1092. The court then went on to consider Navigation's argument that, because it was "tasting" and returning many of the domain names during the "Add Grace Period," it was not actually a registrant for ACPA purposes.[4] The court rejected that argument, holding that "tasting" was registration for ACPA purposes, and noting that the registrant enjoyed full use of each domain name during the grace period. *Id*. *Navigation Catalyst* did not—as Plaintiffs claim—extend ACPA liability beyond registrants.

Neither did *Verizon v. Onlinenic, Inc.,* No. C 08-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009), the second case on which Plaintiffs rely. That case involved the registration, by

---

[4] Domain tasting was a practice (now barred) whereby a registrant could sign up for a domain name, use it for up to 5 days, and then return it to the registrar without having to pay anything. By setting up several shell companies, unscrupulous companies could string together *seriatim* grace periods indefinitely (a practice called "domain kiting") without ever having to pay registration fees.

the defendant, of nearly *a million* infringing domain names:

> Verizon has provided evidence that OnlineNIC "operates a massive cybersquatting operation," having registered and used over 900,000 domain names, many of them having been "kited" and thus rendered difficult to detect. To reveal the extent of OnlineNIC's cybersquatting activities, Verizon selected twenty-six famous marks and sought to identify domain names registered by OnlineNIC that infringed them. Verizon discovered that OnlineNIC **had registered an extraordinary 14,700 domain names that infringed the mere twenty-six representative marks selected**.

*Id.* at *5 (emphasis added); *see also id.* at *3 ("OnlineNIC registered and monetized at least 663 domain names that are identical or confusingly similar to Verizon's marks").

Finally, Plaintiffs turn to *Solid Host, NL v. Namecheap, Inc.*, No. CV 08-5414, 2009 WL 2225726 (C.D. Cal. May 19, 2009) as support for the proposition that, rather than applying "only to domain registrants . . . recent cases [sic] have applied ACPA to all parties that use infringing domains." Opp. at 12. But *Solid Host* says nothing even close to that. Instead, *Solid Host* involved claims against an anonymous registrant ("Doe") and NameCheap, which provided anonymization services. NameCheap moved to dismiss several claims against it, including an ACPA claim and a claim for contributory trademark infringement. In addition to the anonymization service at issue, NameCheap also provided registrar services, and argued that its status as a registrar granted it blanket immunity under the ACPA. The court rightly rejected that claim, holding that immunity for providing registration services did not extend to other, non-registration acts by the same company. But the court did not "appl[y] ACPA to" NameCheap. To the contrary, the court *dismissed* the ACPA claim against NameCheap. In so doing, the court noted that "the legislative history of the ACPA . . . makes clear that the statute's scope is narrow." *Id.* at 26 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 110 F.Supp. 2d 420, 426 (E.D. Va. 2000)). Similarly, the *Solid Host* court held that "uses" under the ACPA is expressly limited to "the domain name registrant or the registrant's authorized licensee" (*id.* at

11

*9, quoting *Lockheed Martin Corp. v. Network Solutions, Inc.,* 141 F.Supp. 2d 648, 649 (N.D. Tex. 2001))—a holding inexplicably cited by Plaintiffs as an "acknowledgement the term 'use' has been interpreted broadly in cases involving the internet and domain names." Opp. at 12.[5]

In short no court has *ever* extended ACPA liability to *anyone* other than the registrant. In each of the cases mischaracterized by Plaintiffs, the ACPA claims were either directed to the registrant itself, or dismissed. This is the correct result. By its express terms, the ACPA is a narrow provision, imposing substantial statutory damages, absent any proof of confusion, but only for the specific act of registering domain names in bad faith. The statute *expressly* bars the expansive scope Plaintiffs urge for "use" liability. The argument that "the ACPA was not targeted to a particular category of defendants . . . [r]ather, ACPA liability extends to all who 'use' an infringing domain" (Opp. at 12) is flatly wrong. It is directly contrary to the plain language of the statute: "A person shall be liable for using a domain name . . . only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. §1125(d)(1)(D).

Whether Google "uses" any of the domain names at issue is wholly irrelevant. Because Google is neither the registrant nor its licensee, the ACPA's "use" provisions simply do not apply to it, and thus this Court need not determine what would or would not constitute "use" of a domain name. Plaintiffs' claim that "there are genuine issues of material fact as to whether Google uses the domains" misses the point entirely.

**D.  There is No Contributory Liability for ACPA Violations.**

The balance of Plaintiffs' Opposition critiques Google's trademark enforcement procedures and argues that Google had knowledge of the activities of the former PCDs,

---

[5] The *Solid Host* court denied NameCheap's motion to dismiss contributory trademark infringement claims against it. But the instant motion challenges only Plaintiffs' ACPA claims, not their trademark infringement claims.

apparently in support of a contributory liability claim for the PCDs' alleged ACPA violations.

There are several problems with this approach. The first is the most obvious: Plaintiffs have not *pled* a claim for contributory ACPA violations, and thus *a fortiori* Google does not herein seek summary adjudication of such a claim.[6]

More fundamentally, there is no such thing as contributory liability for ACPA violations: the statute expressly extends liability only to those who register or traffic in domain names, not others who are alleged to have aided or encouraged that conduct. If courts were free to create secondary liability where the statute has not authorized it, the ACPA's express limitation on "use" liability would be rendered meaningless: anyone other than the registrant could be liable for all manner of "use" of a domain name simply by recasting that use as a "contributory" violation. If Congress had intended liability under the ACPA to include contributory liability, it would have said so. But rather than doing so, or even remaining silent, Congress expressly indicated its intent to limit liability to registrants. It is thus unsurprising that no court has found (or created) contributory liability under the ACPA.

Even if this Court were inclined to find an implied claim for contributory ACPA violations in Plaintiffs' thrice-amended complaint, recent Supreme Court precedent makes clear that courts may not expand vicarious liability for statutory violations beyond "traditional" limits: absent express Congressional authorization, vicarious liability can be found only in employer-employee and principal-agent relationships. As the Court in *Meyer v. Holley*, 537 U.S. 280 (2003) explained in reversing a finding of vicarious liability outside those limits, "[C]ourts ordinarily should determine that matter in accordance with traditional principles of vicarious liability—unless, of course, Congress, better able than courts to weigh the relevant policy considerations, has instructed the courts differently." *Id*. at 290-91. *See also Central Bank of*

---

[6] Plaintiffs did plead claims for Contributory Trademark Infringement. Google, however, has not moved on those claims, and they are not at issue here.

*Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) (rejecting expansion of implied 10b-5 cause of action to aiding and abetting). Here, Congress has not "instructed the courts" to add vicarious liability to the ACPA, and thus the courts cannot do so.

Finally, even if there were such a thing as contributory liability for ACPA violations, Plaintiffs have adduced no facts that would support such a finding here. As Google established in its Opening Brief, it has a comprehensive notice-and-takedown trademark policy wherein any trademark holder can have Google "fail list" any domain name receiving ads from its system merely by asking. Plaintiffs, for reasons surpassing understanding, have steadfastly refused to use that simple expedient. As Google pointed out in its Opening Brief, there can be no ACPA liability absent a showing of bad faith, and there can be no bad faith absent knowledge. If Plaintiffs cannot be bothered to tell Google they claim trademark rights in certain words, or that they object to PCDs using variants of those words, Google has no way of knowing. As soon as Google knows, it blacklists whatever URLs any trademark holder requests. And just as there can be no ACPA liability without bad faith, there can be no contributory liability (whether styled contributory trademark infringement or contributory ACPA violations) without knowledge.

Plaintiffs response to this point is nothing short of astonishing. In a footnote, Plaintiffs claim that they actually *have* "availed themselves" of Google's trademark enforcement policy, which they label "largely illusory." Opp. at 13 n.10. But Plaintiffs have done nothing of the sort: when they tell this Court that they have "availed themselves" of Google's "fail list," what they mean is that *Google* independently and proactively responded to Plaintiffs' lawsuit by placing domain names objected to by Plaintiffs on its fail list, in response to Plaintiffs' pleadings and not any requests lodged by Plaintiffs directly with Google using Google's complaint system. Plaintiffs affirmatively decided *not* to avail themselves of that simple expedient, hoping to increase the perceived "damages" in their lawsuit instead. And Plaintiffs' claim that the fail list

14

is illusory is similarly disingenuous: they note that Google added "fishernutrecipes.com" to the fail list (again, without any request from Plaintiffs, and as soon as Plaintiffs identified it in their pleadings), but then complain that "Google currently continues monetizing" a *different* domain name, fishernut<u>s</u>recipes.com. One letter may not seem like a big difference, but computers are literal. Plaintiffs Opposition is the first time they have laid claim to that domain name, and once again Google added it to the fail list in response. Plaintiffs never once made any effort to use the procedures created by Google, and have never identified any instance in which they notified Google of any domain name that Google did not block. The only thing "illusory" here is Plaintiffs' claim to have any desire to stop the conduct upon which their entire suit is based.

### III. CONCLUSION

The undisputed facts show that Google does not register, traffic in, or use any of the domain names at issue. Accordingly, Google asks this Court to enter judgment in Google's favor on Plaintiffs' Fourth Cause of Action.

Dated: December 21, 2009

Respectfully submitted,

GOOGLE INC.

By: /s/ Michael H. Page
One of its Attorneys

Joseph J. Duffy
Jonathan M. Cyrluk
Mariah E. Moran
Stetler & Duffy, Ltd.
11 South LaSalle Street
Suite 1200
Chicago, Illinois 60603

Michael H. Page
Joseph C. Gratz
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, California 94111

15

**CERTIFICATE OF SERVICE**

  I, Michael Page, an attorney, certify under penalty of perjury that I caused a copy of the forgoing document to be served on all counsel of record via PDF and U.S. Mail this 21st day of December, 2009.

                 /s/ Michael H. Page
                 One of the Attorneys for *Google Inc.*