IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VULCAN GOLF, LLC, JOHN B.     )
SANFILIPPPO & SONS, INC., BLITZ   )
REALTY GROUP, INC., and VINCENT E. )
"BO" JACKSON,      )
         )   Case No. 07 CV 3371
    Plaintiffs,    )
         )
v.         )   The Honorable Blanche M. Manning
         )
GOOGLE INC.,      )
         )
   Defendant.    )
         )
         )

**PLAINTIFFS' RESPONSE TO**
**GOOGLE'S RULE 56.1 STATEMENT**

VULCAN GOLF, LLC, JOHN B.SANFILIPPPO & SONS, INC., BLITZ, REALTY

GROUP, INC., and VINCENT E. "BO" JACKSON, by their attorneys, and pursuant to Local

Rule 56.1, respectfully submit the following Response to Google's Statement of Material Facts.

**PARTIES**

1.    Plaintiff Vulcan Golf LLC is an Illinois Limited Liability Company with its

principal place of business located at 2701 DuKane Drive, St. Charles, Illinois 60174.

**Response:** Admit.

2.    Plaintiff John B. Sanfilippo & Sons Inc., is a Delaware Corporation with its

principal place of business located at 1703 N. Randall Road, Elgin, Illinois 60123.

**Response:** Admit.

3.     Plaintiff Blitz Realty Group, Inc. was until February 27, 2009 an Illinois corporation with its principal place of business at 1245 Executive Place, Geneva, Illinois 60134. The corporation was dissolved on February 27, 2009. (Page Decl. Ex. A-1.)

**Response:** Admit.

4.     Plaintiff Vincent E. "Bo" Jackson resides in the Northern District of Illinois and is a citizen of Illinois.

**Response:** Admit.

5.     Defendant Google Inc. is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**Response:** Admit.

## JURISDICTION

6. Google has admitted that this Court has personal jurisdiction over it for purposes of this case.

**Response:** Admit.

7. This Court has subject matter jurisdiction over Plaintiffs' Fourth Cause of Action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

**Response:** Admit.

## FACTUAL BACKGROUND

8.     Google's AFD product is designed to provide relevant search results and advertisements to website owners, who typically display those results on websites that have been registered but not yet developed. (Declaration of Prashanth Koppula in Support of Google's Motion For Partial Summary Judgment ("Koppula Decl."),¶2-3.)

**Response:** Dispute.  AFD did not historically provide relevant search results. Rather, AFD pages showed advertisements only, without search results. (Google Doc. 2334) Google's presentation for ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ (Google Doc. 2604)   Google did not mention "search results" when it listed ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ (Google Doc. 2257)   (See also Google Doc. 3719 ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Currently, AFD Landing Pages such as FisherNutsRecipes.com (attached hereto as Exhibit A) only show ads.  AFD is not for "website owners" – it is only for domain owners with unused domains.   Google's current description of AFD   states:  "AdSense for domains allows publishers with unused domains to help users reach relevant information by presenting content on the domains." https://www.google.com/adsense/support/bin/answer.py?answer=105924 .

9. In the past, typing the URL of such undeveloped domains would result in either an error message or (if the owner had created such a page) a placeholder page saying the site was "under construction" or the like. AFD allows the website owner to instead display a page containing search results and advertisements relevant to the URL entered by the user, just as Google Search displays results relevant to the search term entered by the user. (Koppula Decl. ¶4.)

**Response:** Dispute.  See response to 8 above.  In addition, the AFD Landing Pages and Results Pages do not display "just as Google Search" displays search results.  Unlike "Google Search" results, Google AFD Landing Pages ███████████████████████ ████████████████ (Google Doc. 2433 stating: ███████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████

10.    Rather than leave a domain name unused, the registrant can instead "park" that name with a company such as Sedo. (Koppula Decl. ¶ 4.)

**Response:** Dispute.  Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.  However, since the inception of AFD, formerly known as "DomainPark" (see http://web.archive.org/web/20040323053423/www.google.com/domainpark/index.html), domain owners could "park" a domain directly with Google, in addition to companies such as Sedo and Oversee.  Google has continuously sought out "large domain portfolio owners" to use AFD stating:  "AdSense for domains is currently available to large domain portfolio owners.  If you would like to submit your portfolio to be considered for the AdSense for domains program, please fill out the information request form on the contact us  page. If your portfolio meets the AdSense for domains requirements, a Google representative will get back to you shortly." See: http://web.archive.org/web/20080527113719/www.google.com/domainpark/faq.html .

Google has described AFD as the "industry's premier parked page service" and has stated that Google "is seeking new partnerships with large domain portfolios owners." See: http://web.archive.org/web/20080527113719/www.google.com/domainpark/faq.html .

Google continues to invite partners to park domains directly on Google servers.  In a publicly available document on Google.com,  entitled "Domain Set-up Guide", Google states that "This guide is intended to assist with pointing your domains to Google's servers, allowing us to display Google ads on your domains."   See https://www.google.com/adsense/support/bin/answer.py?answer=76049.  Pointing domains to Google's servers is accomplished by listing Google IP Addresses such as "216.239.32.21," "216.239.34.21,"  "216.239.36.21,"  "216.239.38.21" as the A Records for the domain along with simply a user id assigned by Google.  This is explained by Google on its webpage titled "AdSense for Domains Quick Start Guide" located at https://www.google.com/adsense/support/bin/answer.py?answer=100301.   Google further explains that once a customer's domain is so configured then: "Presto! We'll   [referring to Google's AFD service will] start serving ads to traffic".   See https://www.google.com/adsense/support/bin/answer.py?answer=76049.   If a partner follows those directions, Google proclaims "Congratulations! Your domain is now configured to point to Google."  See Id. 7.

Google further solicits domain parking on an *exclusive* basis.  Google's disclosed AFD Contracts state: ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ (Google Doc. 2138)

Furthermore, when users request certain AFD sites, users are directed to Google-owned URLs.   Google describes this ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████  ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████  (Google Doc. 3182)   Oingo.com is owned by Google.  See WHOIS, attached hereto as Exhibit B.

Google's responsibility for the servers to support AFD is confirmed by Google's substantial spending on AFD servers. ██████████████████████████████████████ ████████████████████████  (Google Doc 3804)  By 2006, ██████████████████████ ████████████████████████████  (Google Doc. 2334)

11. Under a typical parking arrangement, the registrant continues to own the domain name, but "points" anyone typing that domain name into a browser to a web page hosted by an AFD partner. (Koppula Decl. ¶4.)

**Response:** Dispute.   Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.  See response to 10 above.

12. When a user types a domain name into her browser, the browser forwards that URL to a central Domain Name Server ("DNS"). (Koppula Decl. ¶7.)

**Response:** Admit.

13. The registrant has previously parked that domain with an AFD partner by giving the DNS system an IP address for the domain name that points to a server operated by the AFD partner. (Koppula Decl. ¶7.)

**Response:** Dispute.  Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.   See Response to 10 above.

14. The DNS server looks up the IP address, and directs the user's request to the AFD partner's server. (Koppula Decl. ¶ 7.)

**Response:** Dispute.  Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.   See Response to 10 above.

15. When the AFD partner receives the request, it in turn makes a request to Google for advertising content. (Koppula Decl. ¶ 7.)

**Response:** Dispute. Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.  See Response to 10 above.

16.  Google  receives  and  responds  to  millions  of  AFD  content  requests  a  day  from  its AFD customers, sometimes referred to as "AFD partners." (Koppula Decl. ¶ 13 & 15.)

**Response:** Dispute.  Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly.  See Response to 10 above.  Google does far more than respond to AFD content requests.   In internal documents, ███████████

███████████████████████████████████████████████

███████████████████████     █████████████████████

███████████████████████████████████████████████

█████████████████  Google  Doc. 2532.   In its AFD new employee handbook, ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

(Google Docs. 2297-2299)

Google manages and controls all aspects of the advertising process in the AFD program. See http://adwords.google.com Google, and not AFD partners, managed relationships with current and potential advertisers, received requests to purchase advertising, and handled customer service pertaining to advertising sales.   See http://adwords.google.com; Google, and not AFD partners, ███████████████████████████████████████████████ ████████████████████ (Google Docs. 2035, 2137, and 2153) ████████████████ ██████████████████████████ (Google Docs. 2523-2524, and 2574) █████████████ ████████████████████████████████ (Google Doc. 1415) ███████████████ ███████████████████████████████████████ (Google Docs. 2517 and 2574). ███████████████████████████████████ (Google Docs. 2035-2036)

To the extent that a Google partner may propose a change of the visual appearance of the site ███████████████████████████████████████████████████ (see Google Docs. 3708-3709 █████████████████████████████████████████████ ██████████████████████████████████████████

Google designed two distinct types of Landing Pages.   Some domains were designated for ██████████████████████████████████████████ (Google Doc. 2536) Others were designated for ███████████████████████████████████ ██████████ (Google Doc. 2539)   Google, and Google alone, decided which format of page to serve on a given domain.

Google's contracts with AFD partners further confirm Google's exclusive right to design and control landing pages.   These contracts state that ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ (Google

Docs. 2035-2036; See also, Google Docs. 2137-2138: ████████████████████; Google

Docs. 2153-2154: ████████████████████)   Google's ████████████████

contracts with 3PHs also confirm ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ (Google Doc. 4013)

17.   Those customers include companies such as the former Parking Company Defendants. Google refers to its AFD customers that host domains owned by others as Third Party Hosts, or "3PHs." (Koppula Decl. ¶ 3.)

**Response:** Dispute. Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly. See Responses to 10 and 16 above. Customers also include "registrars" and "individual name owners." (Google Doc. 2531)

18.   Typical AFD partners either host domains registered and owned by others, or domains the AFD partner itself owns, or both. (Koppula Decl. ¶ 3.)

**Response:** Dispute. Google incorrectly implies that it does not allow domain owners to "park" domains on Google servers or with Google directly. See Responses to 10 and 16 above.

19.     Each AFD request contains several pieces of information, based upon which Google's systems decide what content to send back to the originator. First, it includes the URL or domain name that the original user typed. (Koppula Decl. ¶ 8.)

**Response:**   Dispute.   Google AFD is not a completely automated system providing advertising content.   Google employees unilaterally and manually review domain names to optimize and transform the Landing Pages without an AFD partner's specific approval or even knowledge ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ (Google Doc. 2415) ████████████████████████

████████████████████████ One example is where ████████

████████████████████████████████████████████

████████████████ (Google Docs. 2574-2577)

Google employees also performed tests and experiments, including changes to templates, designs, images and other elements.  See Google Doc 3544 ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

The AFD system does not require "several pieces of information" and can function based on the URL alone and the Publisher ID to create associated HTML Landing Pages and ads supplied by Google. See AFD "Domain Set Up Guide" located at https://www.google.com/adsense/support/bin/answer.py?answer=76049. Google "processes" the URL thru "stripping", "segmentation" and "contextual processing" whereby Google then creates and "returns an HTML page to the user, which contains contextual ads and related content." The Google documents ████████████████████████████████████████████ The Google documents ████████████████████████████████████ describe ████████████████████████████████████████████ ████████████████████████████████ (Google Docs 2532-2534)

20.     Second, it contains a Partner Identifier, together with either "0&0" if the partner owns and operates the domain itself or "AFD partner" if the domain is a parked domain owned by a third party. (Koppula Decl. ¶ 8.)

 **Response:** Dispute.  Google AFD is not a completely automated system.  See response to 19 above.

21.     Third, it contains up to four optional additional keywords that the partner may add to assist Google in determining what sort of content to return. (Koppula Decl. ¶ 8.)

 **Response:** Dispute.  Google AFD is not a completely automated system. See response to 19 above.

22.     And Fourth, it contains a specification for the format in which the content is to be returned (HTML, XML, or JavaScript). (Koppula Decl. ¶ 8.)

**Response:** Dispute.   Google AFD is not a completely automated system providing advertising content. See response to 19 above.

23. Based on the information contained in the AFD request, Google returns to the AFD partner a file, usually in an XML-based format, of responsive content. (Koppula Decl. ¶9.)

**Response:** Dispute. Google either creates the HTML that displays the advertisements, or controls and approves that HTML.  The standard "Terms and Conditions - AdSense for Domains" state: ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ (Google Docs. 2035-2036)       Furthermore, when users request certain AFD sites, users are directed to Google-owned URLs.   Google describes that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (Google Doc. 3182)   Oingo.com is owned by Google.  See  WHOIS, attached hereto as Exhibit B.  Google's responsibility for the servers to support AFD is confirmed by Google's substantial spending on AFD servers█████████████████████████████████████

█████████████████████████ (Google Doc. 3804)

██████████████████████████████████ (Google Doc. 2334)

24.  Google selects search results that relate to the domain name and optional keywords.(Koppula Decl. ¶ 10.)

**Response:** Dispute.  Historically, Google did not provide search results to AFD Landing Pages but only provided ads.  See response to 8 above.

25. Google also selects Sponsored Links (advertisements) that relate to the URL and keywords. (Koppula Decl. ¶ 9.)

**Response:** Dispute. Google solely and exclusively selects ads that relate to the domain names.  See responses to 8 and 9 above.  As to any keywords the partner may have suggested, Google has the completely authority to disregard the keywords.  See Responses to 19 and 21 above.

26. Google also selects Related Searches, which are suggested Google Search queries that the user might find helpful. (Koppula Decl. ¶ 13.)

**Response:** Dispute. AFD did not historically provide relevant search results.  See responses to 8, 9 and 21 above.

27. And finally, Google includes the specified number of "Popular Categories, "which are common search terms not necessarily related to the entered URL. (Koppula Decl. ¶ 13.)

**Response:** Dispute.   AFD did not historically provide relevant search results.  See responses to 8, 9 and 21 above.

28. Google then sends the selected content back to the AFD partner, in the requested format. For each of the four PCDs in this litigation, and for all of the domain names at issue here, Google sent back a chunk of XML code, which the AFD partner then plugged into its own HTML page and in turn sent it on to the original user. (Koppula Decl. ¶ 12 & Ex.C.)

**Response:** Dispute.  For at least some of the domains at issue in this litigation, the user's web browser obtained HTML results directly from a Google server at a Google URL and the resulting HTML page was created, served, and hosted by Google, not by any AFD partner.  For examples see: "BoJackson.net" (Screenshot from Oct. 24, 2007 attached as Exhibit C), "BooJackson.com" (Screenshot from Dec. 22, 2007 attached as Exhibit D), and "BoJacksonRacing.net" (Screenshot from Oct. 25, 2007 attached as Exhibit E).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ (Google Docs. 3708-3709)

29. If the AFD partner has requested results in HTML format, Google uses the requested content to create a web page, in a standardized format, with the original requested URL as a headline and the requested search results, ads, and other links arrayed on the page. That page is then forwarded on to the original user. (Koppula Decl. ¶ 12.)

**Response:** Dispute.  Historically, there were no "search results" on these Landing Pages.  See response to 8 above.  The standard AFD "Terms and Conditions" state ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Google Docs. 2035-2036)

30.    For the XML version used by all of the PCDs in this case, the sequence looks like this Custom web server (Koppula Decl. ¶ 17 & Ex. C-l):

A. User types in domain name

B. Redirect to Domain holder's web server.

C. Request XML feed from AFD

    **Response:** Dispute.   For at least some of the domains at issue in this litigation, the user's web browser obtained HTML results directly from a Google server at a Google URL.  See Responses to 8, 21, 28 and 29 above.

    31.    The entire process-the user entering the URL into her browser, the browser sending the URL to the DNS server, and then on to the AFD partner, the AFD partner formatting and sending an AFD request to Google, Google selecting the appropriate content, formatting it, and sending it back to the AFD partner, and the AFD partner in turn creating and sending the page back to the original user-takes place in less than one second, millions of times a day. (Koppula Decl. ¶9.)

    **Response:** Dispute.   For at least some of the domains at issue in this litigation, the user's web browser obtained HTML results directly from a Google server at a Google URL.  In the relevant period, there was no "content" on these Landing Pages, but rather only advertisements. Furthermore, disputed as to the level of human involvement in the process. Google employees manually performed numerous transformations in attempts to increase the revenue generated at the pages.  See responses to 8, 21, 19, 28 and 29 above.

    32. Once the original user receives the HTML page from the AFD partner, she might or might not click on one of the Sponsored Links she sees. If she does, the advertiser who placed that ad will be billed a few cents (an amount determined by complex auction-style algorithms), and that revenue will be split between Google and the AFD partner. (Koppula Decl. ¶ 2.)

    **Response:** Dispute.  The internet user may receive a response directly from Google, not from an AFD partner.  See responses to 21 and 28 above.

33. Until Google receives a given AFD request, it has no knowledge of what domain names are owned by or parked with any of its partners; it learns that information only as it comes in the AFD request. (Koppula Decl. ¶ 6.)

**Response:**  Disputed.  Prior to anyone typing a domain name into an address bar, domain owners submit domain names to Google for approval.   Until 2008, Google directed parties interested in joining AFD to provide Google with a list of their domains for Google to review: "If you would like to submit your portfolio to be considered for the AdSense for domains program, please fill out the information request form on the contact us page. If your portfolio meets the AdSense for domains requirements, a Google representative will get back to you shortly."   See http://web.archive.org/web/20080224110159/http://www.google.com/domainpark /faq.html.  This page has now been removed from Google.com for reasons unknown to plaintiffs. Furthermore,  Google has now implemented an AFD submission process for single domain owners which specifically requires submitting each domain for Google's advance approval.  See https://www.google.com/adsense/support/bin/answer.py?answer=105483: "What do the AdSense for domains status messages mean? When validation of your domains is pending, you'll see the status next to each one to indicate the domain's standing with our system. Verifying Domain and Checking Policy Compliance: Your domain was just added and is waiting for approval." Internal documents reveal that Google also performed "domain by domain" reviews for AFD. See Google Doc. 4008 stating ███████████████████████████████████████ ██████████████████

When an individual AFD partner configures a domain to show AFD ads, Google learns the name of the domain, and has the opportunity to validate and approve the domain: "What do the AdSense for domains status messages mean? When validation of your domains is pending, you'll

see the status next to each one to indicate the domain's standing with our system. Verifying Domain and Checking Policy Compliance: Your domain was just added and is waiting for approval."  See https://www.google.com/adsense/support/bin/answer.py?answer=105483

In its AFD "Troubleshooter" Google states:  "We use a combination of automated signals and manual reviews to screen domains for compliance with our AdSense for domains policies, and we may disapprove any domain which we believe to be in violation of these policies." https://www.google.com/adsense/support/bin/answer.py?answer=134827

34. In the course of any month, Google receives AFD requests containing millions of unique domain names. (Koppula Dec ¶5.)

**Response:** Admit.

35. Google does not own or operate any of the domains that receive AFD content: indeed, Google's AFD partners usually don't own them either. Google has never registered any of the domain names at issue, and plays no role in the registration of any of those domains. (Koppula Decl. ¶ 6;  Page Decl. Ex. F.)

**Response:** Dispute.  Google does "operate" the domains in the AFD program by the express terms of its standard AFD contract.  The "Terms and Conditions - AdSense for Domains" states:  ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████    (Google Doc. 2035)    The Terms and Conditions further state ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ (Google Doc.
2036).  By 2005, Eytan Elbaz, the head of Google's Domain Channel, boasted  to domain owners
at  an  invitation-only  domain  conference.████████████████████████████████████
████████████████  (Google Doc. 3733)   He went on to confirm Google's ████████
████████████████████████████████████████████████████████████
████████████████████████████████████████ (Google
Doc. 3738)

36. Google has no role in selecting the names of those domains. Google does not host any
of those domains. Google is not involved in any transaction regarding ownership or control of
those domains in any way. None of the domain names has ever pointed to an IP address owned
or operated by Google. Google's advertising content is requested by the AFD partner, in the
quantity and format specified by the AFD partner. Google, in short, has only one relationship
with the domains at issue in this case: when requested, Google sent advertising content to the
operators of those domains. (Koppula Decl. ¶ 2-6.)

**Response:** Dispute.   Google  does  host  AFD  domains.   See  response  to  10  above.
Google operates the domains.  See response to 35 above.  Google takes domains that have no
other  useful  purpose  and  thru  its  AFD  program  uses  that  domain  for  its  monetary  benefit.
Google through its AFD program acquires a license to use the domains including the right to
sublicense the domain and controls domain to the extent that ads provided by Google ████████
████████████████████████████████████████████████████████████
████████████████████████████████  See response to 35 above and Google Docs.
2035-2036.

37.     Google's contracts with each of the PCDs confirm Google's limited role as a provider of advertising content to the third parties who host parked websites. (Page Decl. Ex. B, C, D,E.)

**Response:** Dispute. The contracts are to the contrary and confirm Google's extensive role in controlling and using the domains. ██████████████████████████████ ██████████████████████████████████████████████████████ ██ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ (Google Docs. 2035-2036: AFD contract with Snapnames; Google Docs. 2137-2138: AFD contract with IREIT; Google Docs. 2153-2154: AFD contract with Dotster.)

████████████████████████████████████ Google's control over landing pages: ██████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████ (Google Docs. 2035-2036, emphasis added: AFD contract ████████████ Google Docs. 2137-2138: AFD contract ██████████ Google Docs. 2153-2154: AFD contract ████████████

Google's contracts concerning "Third Party Sites" specifically state that ██████████████ ██████████ For example ████████████████ (Google Docs. 1992-2002) which states ████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ (Google

Doc. 1999, emphasis added)   Dotster's Amendment to include Third Party Hosting  contains the

same provision.  (Google Docs. 2158-2160)

In the ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ (Google Doc. 1994,

emphasis added).

38.      In these agreements, Google agrees to provide advertisements in response to an AFD request (which the agreements refer to as "AFD Valid Queries"). (Page Decl. Ex. B-28¶ 3.5(a)(i).)

**Response:**   Dispute.  The implication that Google provides specific ads at the specific request of an AFD customer is inaccurate.  As detailed above, Google has extensive control over the entire AFD process, indeed AFD would not work if it were otherwise.  See response to 35, 36 and 37 above.   Google tracks page views, queries, and revenue for each domain under its

management.  Google's efforts to increase AFD revenue are borne out in internal analyses of AFD growth.  For example, ███████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

(See Google Doc. 3858 listing by year the dramatic increase in Google AFD "ServerRevenue", Google AFD "PageViews" and AFD Queries)

Google tabulated each domain's traffic in great detail.  Google engages in such extensive analysis to show its partners how Google is using the domain names and to maximize revenue.  For example, ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████ (Google Doc. 2574)

39.     The AFD partners do not transfer ownership or control of any URLs to Google; in fact, the contract states that the only URLs to which the agreement applies are "URLs in respect of which Customer is the Registrant" and URLs "in respect of which Customer is and shall continue to be expressly and exclusively authorized by the Registrant" to place advertisements. (Page Decl. at B-3 ~1.1 (definition of "Authorized URL") & B-23 ~ 3.l(a) (Sedo may only display ads at "Authorized URLs").)

   **Response:** Dispute.  AFD partners do transfer ownership or control of the domains to Google who uses the domains.  See responses to 35, 36 and 37 above.

40.     The agreements do not apply to any domain names owned or controlled by Google. To avoid any doubt, the term "Registrant" is defined in the contracts as "the exclusive, official and undisputed registered owner of a URL." (Page Decl. at B-20 ~ 1.1 (definition of "Registrant")

**Response:**   Google has extensive "control" over the domains.   See responses to 35, 36 and 37 above.

41.    In the agreements, the AFD partners guarantee to Google that the URLs for which they submit AFD requests do not violate "any third party rights," such as trademark rights. (Page Dec. at Ex. B-34 ¶ 5.2.)

**Response:** Dispute.   The Google documents demonstrate that trademark rights have been a known and yet unaddressed concern at Google for years.   Indeed, Google has admitted that it continues to use infringing domains even after trademark owners complain.   In a ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ (Google Doc. 3819)   In other words, even after a trademark owner's complains, and even after Google confirms that a domain contains a distinctive trademark term, Google will continue to show ads on the domain.   Google thus continues to use the domain – to show advertisements and to generate revenue.

Google's internal documents also demonstrate that for years, Google knew it was licensing, using and earning revenue from trademark-infringing AFD Domains.   In ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████ (Google Doc. 3840.)   In a ███████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ (Google Doc. 3857)  Google's

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

(Google  Doc.  3837)   Elaborating  on ██████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████ (Google  Doc.  3841)   The

document  continues ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ (Google  Doc.

3841)

Google  even  attempted  to  assess ███████████████████   In a slide

captioned ███████████████████████████████████████████████

████████████████████████████████████ (Google Doc. 3846)

These  large  estimates  reveal  the  breadth  of  typosquatting  within  AFD.   See also  Google  Doc.

3130  a █████████████████████████████████████████████████

████████████████████████████████████ Another  AFD  document

estimates ████████████████████████████████ (Google Doc. 2363)   In

a  document  entitled ██████████████████████████████████████

███████████████████████████████████████ (Google Docs. 2315 and 3281)   Over

and  over,  Google  staff  admitted ███████████████████████████

(Google Doc. 3124)

Google made a concerted effort to keep trademark holders and the public from discovering that Google was the operator of the AFD pages being served at Deceptive Domains by not allowing Google branding on the AFD pages. At ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ (Google Doc. 2433)

Google does have a ███████████████████████ One email commented: ███ ████████████████████████████████████████████ ████████████████████ (Google Doc. 3135)  See also Google Doc. 2281: ███████ ██████████████████████████████████████ Yet it seems this ███████████ was never fully implemented – letting Google continue to use infringing domains with impunity.

42. The Sedo, Oversee, and iREIT contracts contain no mention of any license relating to a domain name. (Page Dec. Ex. B, Ex. C, Ex. D.)

**Response:** Dispute.   The contracts with Oversee and IREIT contain specific license rights relating to domain names.  See Response to 37 above.

43.    The Dotster contract does mention such a license - but states that the license is limited to acts necessary in "performing the AFD Service, as contemplated under this Agreement," (Page Dec!. Ex. E-3 ~ 5(B» and the agreement expressly prohibits the use of any domain name that infringes a third party's trademark rights. (Page Dec. Ex. E-7 ¶1.3.)

**Response:**  Dispute.  The contract between Google and Dotster gave Google an express license to use, and complete control over, the Dotster Domain names.  See Response to 37 above.

44.     Google has terminated the Dotster contract, since Dotster no longer parks domains, having sold that division of their business, known as RevenueDirect, to Sedo. (Press Release, *Sedo Acquires RevenueDirectfrom Dotster, at* http://www.sedo.com/links/showhtm!.php3?1d=2320&language=us (Feb. 25,2009).)

**Response:** Admit.

Dated: January 8, 2010                                     Respectfully submitted,


                                                          /s/Robert M. Foote
                                                          Robert M. Foote, Esq. (#03124325)
                                                          Craig S. Mielke, Esq. (#03127485)
                                                          Matthew J. Herman, Esq. (#06237297)
                                                          Foote Meyers Mielke & Flowers, LLC
                                                          3 North Second Street
                                                          Suite 300
                                                          St. Charles, Illinois 60174
                                                          Tel. No.: (630) 232-6333
                                                          Facsimile: (630) 845-8982

                                                          Kathleen C. Chavez, Esq. (#6255735).
                                                          Chavez Law Firm, P.C.
                                                          3 North Second Street
                                                          Suite 300
                                                          St. Charles, Illinois 60174

                                                          *Attorneys for Plaintiffs*